Leah C. Lively, OSB No. 962414
leah.lively@ogletreedeakins.com
David P.R. Symes, OSB No. 961350
david.symes@ogletreedeakins.com
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500
Portland, OR  97201
Telephone:    503.552.2140
Fax:              503.224.4518

Attorneys for Plaintiff Wells Fargo Bank, N.A.

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# EUGENE DIVISION

| | |
|---|---|
| WELLS FARGO BANK, N.A.,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW G. CLARK,<br><br>Defendant. | Case No.: _____<br><br>**COMPLAINT AND APPLICATION FOR INJUNCTIVE RELIEF, INCLUDING APPLICATION FOR PRELIMINARY INJUNCTION** |

Plaintiff Wells Fargo Bank, N.A. hereby brings the following Complaint and Application for Injunctive Relief, including Application for Preliminary Injunction, against defendant Andrew G. Clark for his misappropriation of Wells Fargo's trade secrets and confidential customer information, and requests that the Court enter judgment against Clark for breach of contract, misappropriation of trade secrets, and violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

## PARTIES

1.        Wells Fargo Bank, N.A. is a federally-chartered National Banking Association

1 - COMPLAINT AND APPLICATION FOR
INJUNCTIVE RELIEF, INCLUDING
APPLICATION FOR TEMPORARY
RESTRAINING ORDER

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone:  503.552.2140 | Fax: 503.224.4518

EXHIBIT 1
Page 1 of 17

that is organized and exists under the National Banking Act. Its main office is in Sioux Falls, South Dakota.

2.    Upon information and belief, Clark is a citizen of the State of Oregon.

3.    Beginning in September 2009 and until June 28, 2011, Clark worked in Oregon as an employee of Wells Fargo.[1]

4.    Clark's last known home address is in Eugene, Oregon.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction of this matter under 28 U.S.C. § 1331 (federal subject matter jurisdiction) because Wells Fargo brings claims arising under a federal statute, the Computer Fraud and Abuse Act, codified at 18 U.S.C. § 1030(g).

6.    The Court has jurisdiction over the remaining, state-law based causes of action under 28 U.S.C. § 1367 (supplemental jurisdiction).

7.    Finally, the Court also has independent jurisdiction over the subject matter of the action pursuant to 28 U.S.C. § 1332, because the parties are diverse and the loss of goodwill to Wells Fargo alone will greatly exceed $75,000.

8.    The Court has personal jurisdiction over Wells Fargo because it conducts business in this district and because it consents to jurisdiction of this Court for purposes of this action.

9.    The Court has personal jurisdiction over Clark because he resides in Oregon, he worked as an employee for Wells Fargo in Oregon, and the acts giving rise to the action occurred in Oregon.

10.    Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391 because Clark is a resident of the State of Oregon, a substantial part of the events giving rise to the claim occurred in this judicial district, and Clark is subject to personal jurisdiction in this judicial district.

## FACTS COMMON TO ALL CLAIMS

---

[1] Clark was hired by Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A.

2 - COMPLAINT AND APPLICATION FOR
INJUNCTIVE RELIEF, INCLUDING
APPLICATION FOR TEMPORARY
RESTRAINING ORDER

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

EXHIBIT 1
Page 2 of 17

**A.**    **Wells Fargo's Confidential Trade Secrets and Customer Information.**

11.    Wells Fargo engages in a variety of financial services, including the origination and servicing of residential mortgage loans.

12.    In connection with its mortgage business, Wells Fargo acquires personal, non-public financial and personal information from customers.

13.    Wells Fargo has expended a great deal of time, effort, and resources to protect such confidential information.

14.    Wells Fargo maintains an Information Security Guidance Matrix, setting out certain Wells Fargo policies regarding information security.  The policy requires that all laptop and desktop computers be encrypted.  It further requires that any confidential email sent externally be encrypted, and that any restricted information sent via email be encrypted.  The policy forbids the sending of any Wells Fargo information to or from an employee's home email address.  Only Wells Fargo-approved software may be used.  These policies and/or procedures were applicable to Clark.

15.    Wells Fargo's 2011 Team Member Handbook, which also applied to Clark, contained an "Information Security Policy Overview," which expressly prohibits "[p]osting proprietary content in unapproved or personal websites, blogs, chat rooms, or other social media websites."  That policy further required all employees to preserve consumer trust and business integrity by protecting company and consumer information.  The policy describes protections for all non-public information, including consumer data, which would be classified as for "internal use" only, confidential, or restricted.  Employees are required to "take appropriate measures to safeguard company and consumer information from inappropriate use, access, alteration, disclosure, or destruction.  The Information Security Policy Overview also instructed employees that data "may not be copied or transmitted outside the company without a predefined business need, and then only in an authorized manner."  It further provides that, "[u]pon termination of employment, no team member shall remove, copy, or destroy such software or data from

3 - COMPLAINT AND APPLICATION FOR
INJUNCTIVE RELIEF, INCLUDING
APPLICATION FOR TEMPORARY
RESTRAINING ORDER

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone:  503.552.2140 | Fax: 503.224.4518

EXHIBIT 1
Page 3 of 17

company systems."

16.      Clark received training on "Protecting Wells Fargo Information" in 2009 and 2010.  Clark also signed an acknowledgement that he understood Wells Fargo's Information Security Policy, would read it, and was expected to abide by its provisions.

17.      Wells Fargo's Agreement Regarding Trade Secrets, Confidential Information, Non-Solicitation, And Assignment of Inventions prohibits employees from unauthorized disclosures or use of confidential information.  Wells Fargo's Information Security Policy also prohibits such unauthorized disclosures.

**B.      Clark's Employment at Wells Fargo and Clark's Agreements with Wells Fargo as to the Confidentiality of Certain Information.**

18.      Clark began working for Wells Fargo in Eugene, Oregon, on or about September 1, 2009, as a Home Mortgage Consultant.

19.      On September 10, 2009, Clark executed an "Employment Agreement" with Wells Fargo.  That agreement contains a section entitled "Confidential and Proprietary Information," in which Clark promised and agreed, *inter alia*, as follows:

> (a)      Employee [Clark] agrees that all file materials and information of Employer [Wells Fargo], including, but not limited to loans, accounts, contracts, data, records, appraisals and comparable appraisals, financial information, software, customer leads and lists developed and/or delivered to Employee by Employer, product information, strategic business plans, business methodology and processes, and cost and pricing policies are confidential and proprietary information (hereinafter "INFORMATION") and the sole property of Employer.  All INFORMATION shall remain the property of Employer, even if Employee terminates his/her employment, whether voluntarily or involuntarily.  Upon notice of termination, Employee's physical taking or removal of the actual file materials and/or INFORMATION including but not limited to loan files, from Employer's premises shall be a material breach of this Agreement.

> (b)      Employee further agrees to: 1) maintain the INFORMATION in confidence; 2) use an appropriate degree of care to maintain the INFORMATION as secret; 3) use the INFORMATION only in the course of his/her employment with Employer; and 4) deliver to Employer all notes, copies, packages, computer discs/drives/storage and all other materials containing any portion of the INFORMATION at Employer's request.

Clark's Employment Agreement, Exhibit 1, ¶ 6.

4 - COMPLAINT AND APPLICATION FOR
INJUNCTIVE RELIEF, INCLUDING
APPLICATION FOR TEMPORARY
RESTRAINING ORDER

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone:  503.552.2140 | Fax: 503.224.4518

EXHIBIT 1
Page 4 of 17

20.       Wells Fargo provided Clark with a laptop computer for use in his employment; his Employment Agreement contained the following provision regarding that computer:

> **Lap-Top Computer**:   Upon commencement of employment, employees in certain job classifications may be issued a lap-top model computer.   Such computer and all software therein is the property of Employer and is intended for business use only.   Employee agrees to abide by all of Employer's policies and procedures regarding the use of the lap-top computer, as more fully set forth in the Wells Fargo Home Mortgage Laptop Policies and Procedures.   Employee also agrees to reimburse Employer one hundred percent (100%) for any and all loss or damage to the computer.   By his/her signature on this Agreement, Employee agrees that Employer may withhold the replacement cost of the laptop computer from any compensation due to Employee.   However, Employer shall not be prohibited from making a claim against Employee to recover any amount due Employer by Employee, whether or not Employee is due sufficient compensation for Employer to recover any amount due Employer by Employee.   In exchange for authority to receive from and use computer software of Employer, Employee agrees to cease using and return all copies of any software provided by Employer upon Employee's termination of employment for any reason.

Exhibit 1, ¶ 9.

21.       On September 10, 2009, Clark also executed the Wells Fargo Agreement Regarding Trade Secrets, Confidential Information, Non-Solicitation, and Assignment of Inventions (the "Confidentiality Agreement").   In the Confidentiality Agreement, Clark promised and agreed, *inter alia*, as follows:

> During the course of my employment I may acquire knowledge of the Company's Trade Secrets and other proprietary information relating to its business methods, personnel, and customers (collectively referenced as "Confidential Information.")
> *                                      *                                      *
> The Company's Trade Secrets include but are not limited to, the following:
> ◦       the names, address, and contact information of the Company's customers and prospective customers, as well as any other personal or financial information relating to any customer or prospect, including, without limitation, account numbers, balances, portfolios, maturity dates, loans, policies, investment activities and                                                                                   objectives;
> ◦       any information concerning the Company's operations, including without limitation, information related to its methods, services, pricing, finances, practices, strategies, business plans, agreements, decision-making, systems, technology, policies, procedures, marketing, sales, techniques and processes;
> *                                      *                                      *
> I agree that Confidential Information of the Company is to be used by me solely and exclusively for the purpose of conducting business on behalf of the Company. I am expected to keep such Confidential Information confidential and not to divulge or disclose this information except for that purpose.   If I resign or am terminated from my employment for any reason, I agree to immediately return to the Company all Records and Confidential Information, including information

5 - COMPLAINT AND APPLICATION FOR
INJUNCTIVE RELIEF, INCLUDING
APPLICATION FOR TEMPORARY
RESTRAINING ORDER

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone:  503.552.2140 | Fax: 503.224.4518

EXHIBIT 1
Page 5 of 17

maintained by me in my office, personal electronic devices, and/or at home.

Clark's Confidentiality Agreement, Exhibit 2, Section II.

22.      As a Home Mortgage Consultant, Wells Fargo provided Clark with access to and/or facilitated his access to personal, non-public financial information of the Wells Fargo customers whose loan applications he handled.  Wells Fargo would not have provided Clark with this information or facilitated his receipt of such information, but for his execution of the Employment Agreement and the Confidentiality Agreement.

23.      On June 2, 2011, Clark was formally disciplined by Wells Fargo for inappropriate and unprofessional behavior in the workplace.  The discipline related, in part, to Clark's misuse of Wells Fargo's email systems.

24.      Between June 7 and 9, 2011, Clark sent non-work-related emails to multiple employees at Wells Fargo.  Some of those non-work-related emails concerned subjects that were inappropriate for the workplace, such as the "Bovine Freedom Movement," Che Guevara, "Arabs," the enslavement of African-Americans, "genocide and burning," and the history of stagecoaches and horses.  On June 7, 2011, Elise Reiser, of Wells Fargo's Human Resources department, advised Clark that his emails violated provisions of Wells Fargo's employee handbook and its policy regarding electronic communications.  She explained that such material was "not relevant to [his] job at Wells Fargo," and informed Clark that he "should not be utilizing Wells Fargo's electronic systems for these types of communications."

25.      Despite the warnings during the month of June 2011, Clark continued to send inappropriate emails or forward emails to Ms. Reiser and other Wells Fargo employees, including emails about the "Bovine Freedom Movement," Jesus Christ, Judaism, and the Lord's Prayer.

26.      On June 27, 2011, Ms. Reiser contacted Clark to, among other issues, direct him to stop sending such personal emails in violation of Wells Fargo policies and her previous instructions.  Clark yelled at Ms. Reiser in response, "I don't have to do shit.  I am going to

6 - COMPLAINT AND APPLICATION FOR
INJUNCTIVE RELIEF, INCLUDING
APPLICATION FOR TEMPORARY
RESTRAINING ORDER

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone:  503.552.2140 | Fax: 503.224.4518

EXHIBIT 1
Page 6 of 17

fucking court."

27.     As a result of Clark's repeated unprofessional conduct, Wells Fargo advised Clark on June 28, 2011, that his employment was terminated.

**C.   Early August 2011: Wells Fargo Becomes Aware that Clark Is Maintaining a Website on Which He Has Posted Confidential Information.**

28.     Wells Fargo issued Clark a laptop computer at the commencement of his employment for exclusive use in connection with his job duties as a Home Mortgage Consultant. On or about the day of Clark's termination, June 28, 2011, Wells Fargo requested that the laptop immediately be returned to the Company consistent with stated policy.  Clark did not return the laptop.  Thereafter, counsel for Wells Fargo reiterated the request on July 22, 2011.  It was not until August 1, 2011, that two unidentified individuals dropped the laptop off at Clark's former work location in Eugene, Oregon.  The laptop, which came wrapped in a paper bag, was seriously damaged.  The laptop could not be opened and every portal on the laptop appeared compromised.

29.     Wells Fargo is in the process of retaining a computer forensic specialist to determine the extent of damage to the computer's hard drive, whether any external drives were inappropriately attached to the computer, and whether any confidential or proprietary data was downloaded or scrubbed from the laptop.

30.     On or about August 2, 2011, the website www.wfopsreport.com, entitled "Wells Fargo Homepage Crimepage," came to Wells Fargo's attention.  *See* Exhibit 3, home page of www.wfopsreport.com, (last visited August 4, 2011).  Wells Fargo alleges, on information and belief, that www.wfopsreport.com is maintained by Clark, because a number of documents posted on that site claim to have been authored by him, the website contains a notarized copy of a statement signed by Clark, and because Clark has sent Wells Fargo employees and the undersigned counsel emails originating from the address "aclark@wfopsreport.com," which shares a domain name with the "Wells Fargo Homepage Crimepage."   Wells Fargo further

7 - COMPLAINT AND APPLICATION FOR
INJUNCTIVE RELIEF, INCLUDING
APPLICATION FOR TEMPORARY
RESTRAINING ORDER

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone:  503.552.2140 | Fax: 503.224.4518

EXHIBIT 1
Page 7 of 17

alleges, on information and belief, that the website was created on or around July 14, 2011, well after Clark was terminated from his employment at Wells Fargo, but before he remitted the laptop to Wells Fargo on August 1, 2011. Wells Fargo further alleges, on information and belief, that Clark transmitted confidential and proprietary bank information and financial records from his Wells Fargo-issued laptop or preserved information found on his Wells Fargo-issued laptop to www.wfopsreport.com or to another computer and then to www.wfopsreport.com.

31.     As of July 14, 2011, Clark was not employed by Wells Fargo, but was contractually required to protect the confidentiality of personal, non-public financial information of Wells Fargo customers, as well as other proprietary information protected under his Employment Agreement and Confidentiality Agreement.

32.     When Wells Fargo accessed "www.wfopsreport.com," on August 2, 2011, it discovered that it contained links to documents, consisting of hundreds of pages, some of which contained private customer information, including Wells Fargo customers' names, addresses, details of loans for which customers had applied, and other information protected by Clark's Employment Agreement and Confidentiality Agreement.

33.     On August 3, 2011, counsel for Wells Fargo emailed, overnight-mailed, and hand delivered to Clark a letter demanding that he remove from www.wfopsreport.com: (1) all personal, non-public financial information of Wells Fargo customers; and (2) all other information protected under his Employment Agreement and Confidentiality Agreement. Wells Fargo demanded that Clark do so by 3:00 p.m. on August 4, 2011. As of the time this document was filed, Clark had failed to remove the confidential information from the website.

34.     In its August 3, 2011, correspondence, Wells Fargo further demanded return of all information protected under Clark's Employment Agreement and the Confidentiality Agreement. As of the time this document was filed, Clark had not returned that information to any representative of Wells Fargo.

8 - COMPLAINT AND APPLICATION FOR
INJUNCTIVE RELIEF, INCLUDING
APPLICATION FOR TEMPORARY
RESTRAINING ORDER

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone:  503.552.2140 | Fax: 503.224.4518

EXHIBIT 1
Page 8 of 17

**D.    Immediate and Irreparable Harm to Wells Fargo.**

35.    The information which Clark has misappropriated includes, at least, non-public, confidential financial information of Wells Fargo's customers.

36.    The dissemination of this information will cause immediate injury to Wells Fargo's customers and to Wells Fargo's goodwill.

37.    Although Wells Fargo is entitled to an award of compensatory damages in the form of money, such award will be inadequate to compensate Wells Fargo for its loss of goodwill.

38.    Neither Clark nor any third party has any right to receive or use this confidential information.

39.    The return of this information will leave Clark or any third party no worse off than they were before the misappropriation.

40.    The public interest will be served by preventing the unauthorized disclosure of personal, non-public, and confidential financial information of Wells Fargo's customers.

## FIRST CAUSE OF ACTION

## INJUNCTIVE RELIEF

41.    Wells Fargo hereby realleges and incorporates by reference the allegations contained in paragraphs 1-40 as if set forth in full herein.

42.    By virtue of the foregoing, Wells Fargo has demonstrated: (1) a likelihood of success on the merits; (2) that Wells Fargo would be irreparably injured in the absence of injunctive relief; (3) that a balancing of the equities favors the issuance of an injunction against Clark; and (4) that the public interest favor the issuance of an injunction against Clark.

43.    Unless Clark is: (1) temporarily and permanently enjoined from using the confidential information he has misappropriated; (2) temporarily and permanently enjoined from disclosing to any third party Wells Fargo's trade secrets and confidential information; and (3) required immediately to account for and return to Wells Fargo the trade secrets and

9 - COMPLAINT AND APPLICATION FOR
INJUNCTIVE RELIEF, INCLUDING
APPLICATION FOR TEMPORARY
RESTRAINING ORDER

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone:  503.552.2140 | Fax: 503.224.4518

EXHIBIT 1
Page 9 of 17

confidential information he has misappropriated, Wells Fargo will suffer irreparable harm.

44.        Wells Fargo is entitled to and seeks:

a)  A temporary and permanent injunction ordering that:

1.      Clark and all others who are in active concert or participation with Clark shall be immediately ENJOINED from directly or indirectly using or disclosing to any third parties Wells Fargo's trade secrets and confidential information, specifically including, but not limited to, any information concerning current or former customers of Wells Fargo or any Wells Fargo subsidiaries.  This includes removing Wells Fargo's trade secrets and confidential information, specifically extending to, but not limited to, any information concerning current or former customers of Wells Fargo or any Wells Fargo subsidiaries, from any public forum, including any website, on which Clark has posted or otherwise disseminated this confidential information.

2.      Clark shall identify, in writing to Wells Fargo, all of Wells Fargo's trade secrets and confidential information in his possession, custody, or control, specifically including, but not limited to, any information concerning current or former customers of Wells Fargo or any Wells Fargo subsidiaries.

3.      Clark shall disclose to Wells Fargo, in writing, the identity of any person, entity, or destination, including but not limited to, internet websites to which Clark transmitted, posted, or communicated Wells Fargo's trade secrets and confidential information, specifically including, but not limited to, any information concerning current or former customers of Wells Fargo or any Wells Fargo subsidiaries.

10 - COMPLAINT AND APPLICATION FOR
INJUNCTIVE RELIEF, INCLUDING
APPLICATION FOR TEMPORARY
RESTRAINING ORDER

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone:  503.552.2140 | Fax: 503.224.4518

EXHIBIT 1
Page 10 of 17

4. Clark shall immediately return to Wells Fargo the originals and all copies of paper documents containing or constituting Wells Fargo's trade secrets and confidential information, specifically including, but not limited to, any information concerning current or former customers of Wells Fargo or any Wells Fargo subsidiaries.

5. Clark shall preserve, without disseminating or altering, all electronic files containing or constituting Wells Fargo's trade secrets and confidential information, specifically including, but not limited to, any information concerning current or former customers of Wells Fargo or any Wells Fargo subsidiaries, that are stored on any electronic storage device in his possession, custody, or control.

6. Wells Fargo is granted leave to commence discovery immediately in aid of preliminary injunction proceedings before the Court;

7. The requirement of Wells Fargo to post a bond be waived;

b) Reimbursement for its costs, expenses and attorney's fees; and

c) That the Court award such other and further relief as the Court deems just and reasonable.

## SECOND CAUSE OF ACTION

## MISAPPROPRIATION OF TRADE SECRETS

45. Wells Fargo hereby realleges and incorporates by reference the allegations contained in paragraphs 1-40 as if set forth in full herein.

46. The information concerning Wells Fargo's customers and their loan applications constitutes a trade secret and is protected pursuant to Oregon Revised Statutes Section 646.463. This information:

11 - COMPLAINT AND APPLICATION FOR
INJUNCTIVE RELIEF, INCLUDING
APPLICATION FOR TEMPORARY
RESTRAINING ORDER

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone:  503.552.2140 | Fax: 503.224.4518

EXHIBIT 1
Page 11 of 17

1.      Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

2.      Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

47.      Clark acquired his knowledge of the aforesaid information in the course of a confidential relationship.

48.      Clark disclosed the aforesaid information without Wells Fargo's express or implied consent and/or without its customers' express or implied consent, despite the fact that Clark knew or had reason to know that his knowledge of the information was acquired under circumstances giving rise to a duty on Clark's part to maintain its secrecy or limit its use.

49.      Clark disclosed the aforesaid information even though he owed a duty to Wells Fargo and to Wells Fargo's customers to maintain its secrecy or limit its use.  Clark's use and disclosure of that information constitutes a breach of Clark's Employment Agreement and Confidentiality Agreement with Wells Fargo.

50.      Clark's continued use and dissemination of Wells Fargo's trade secrets is in bad faith, particularly after August 3, 2011, on which date he received notice that his actions constituted a breach of his Employment Agreement and Confidentiality Agreement.

51.      Wells Fargo has suffered and will suffer injury as a result of Clark's misappropriation of Wells Fargo's trade secrets and confidential information.

52.      Money damages will not adequately compensate Wells Fargo for its injury.

53.      Wells Fargo requests that the Court enter judgment in its favor against Clark on its claim of misappropriation of trade secrets and award it: (1) compensatory damages in an amount to be proven at trial; (2) injunctive relief as described in Wells Fargo's first cause of action; (3) attorney's fees pursuant to Oregon Revised Statute Section 646.467; and (4) such other and further relief as the Court deems just and proper.

12 - COMPLAINT AND APPLICATION FOR
INJUNCTIVE RELIEF, INCLUDING
APPLICATION FOR TEMPORARY
RESTRAINING ORDER

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone:  503.552.2140 | Fax: 503.224.4518

EXHIBIT 1
Page 12 of 17

### THIRD CAUSE OF ACTION

### BREACH OF CONTRACT – SPECIFIC PERFORMANCE

54.      Wells Fargo hereby realleges and incorporates by reference the allegations contained in paragraphs 1-40 as if set forth in full herein.

55.      Clark has willfully, intentionally, in bad faith, and in gross violation of express contractual provisions and accepted standards of business ethics and integrity, breached both his Employment Agreement and his Confidentiality Agreement by misappropriating confidential information and disclosing it to third parties.

56.      As a direct and proximate result of Clark's actions, Wells Fargo has suffered and is suffering injury including, among other things, threats to the integrity of its trade secrets and confidential information, loss of goodwill and business reputation, present and future economic loss, and other irreparable damages for which it has no adequate remedy at law.

57.      Wells Fargo requests that the Court enter judgment in its favor against Clark on its cause of action for breach of contract and specifically enforce such contract by, among other things, issuing temporary and permanent injunctions as described in Wells Fargo's first cause of action.

### FOURTH CAUSE OF ACTION

### BREACH OF CONTRACT – DAMAGES

58.      Wells Fargo hereby realleges and incorporates by reference the allegations contained in paragraphs 1-40 as if set forth in full herein.

59.      Wells Fargo seeks damages against Clark for breach of contract.

60.      Clark has willfully, intentionally, in bad faith, and in gross violation of express contractual provisions and accepted standards of business ethics and integrity, breached both his Employment Agreement and his Confidentiality Agreement by misappropriating confidential information and disclosing it to third parties.

61.      As a direct and proximate result of Clark's actions, Wells Fargo has suffered and

13 - COMPLAINT AND APPLICATION FOR
INJUNCTIVE RELIEF, INCLUDING
APPLICATION FOR TEMPORARY
RESTRAINING ORDER

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone:  503.552.2140 | Fax: 503.224.4518

EXHIBIT 1
Page 13 of 17

is suffering injury including, among other things, threats to the integrity of its trade secrets and confidential information, loss of goodwill and business reputation, present and future economic loss, and other irreparable damages for which it has no adequate remedy at law.

62.    Wells Fargo requests that the Court enter judgment in its favor against Clark on its claim of breach of contract and award it: (1) compensatory damages in an amount to be proven at trial; (2) its costs, expenses, and attorney's fees; and (3) such other and further relief as the Court deems just and proper.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE COMPUTER FRAUD & ABUSE ACT

### (18 U.S.C. § 1030, *et seq.*)

63.    Wells Fargo hereby realleges and incorporates by reference the allegations contained in paragraphs 1-40 as if set forth in full herein.

64.    The Computer Fraud and Abuse Act is codified at 18 U.S.C. Section 1030, *et seq*. It makes it a violation of the law to "intentionally accesses a computer without authorization or [to] exceed[] authorized access, and thereby obtain[]" "information contained in a financial record of a financial institution," or "information from any protected computer."

65.    Wells Fargo is a financial institution under the meaning of 18 U.S.C. Section 1030(e)(4), because it is a member of the Federal Deposit Insurance Corporation, and deposits are insured by the Federal Deposit Insurance Corporation.  Clark's laptop and other computer systems to which he had access at Wells Fargo were protected computers involved in interstate or foreign communications.

66.    Wells Fargo has a private right of action under the Computer Fraud and Abuse Act pursuant to Section 1030(g), which provides that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief" if the conduct "involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V)." of Section 1030(c)(4)(A)(i).

14 - COMPLAINT AND APPLICATION FOR
INJUNCTIVE RELIEF, INCLUDING
APPLICATION FOR TEMPORARY
RESTRAINING ORDER

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone:  503.552.2140 | Fax: 503.224.4518

EXHIBIT 1
Page 14 of 17

Under Section 1030(a)(4)(A)(i)(I), a civil action may be maintained upon a showing of a "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value."

67.     Upon information and belief, Clark acquired some of Wells Fargo's customer information, trade secret information, or other information or property owned by Wells Fargo by intentionally accessing, without Wells Fargo's authorization, a protected computer owned by Wells Fargo, through which Wells Fargo provides electronic communication service to its employees and authorized users throughout the United States and worldwide, and on which Wells Fargo stored the confidential customer information, trade secret information, or other information or property, both temporarily incidental to the electronic transmission thereof and for purposes of archiving and backup protection of such information and communications. On information and belief, Clark wrongfully obtained some of the confidential customer information and trade secret information while that information was stored on Wells Fargo's systems.

68.     Upon information and belief, by his foregoing actions, Clark intentionally exceeded any authorized access to Wells Fargo's protected computers and/or engaged in unauthorized access to Wells Fargo's protected computers, and thereby obtained protected information and other electronic information stored on Wells Fargo's computers involved in interstate or foreign communication.

69.     Upon information and belief, by his foregoing actions, Clark intentionally accessed Wells Fargo's protected computers without authorization, and as a result of such conduct, caused and is causing, or recklessly caused and is causing, damage and loss to Wells Fargo that exceeds $5,000 in value. Specifically, Wells Fargo has suffered loss in that it was forced to engage legal counsel in responding to the offense, will incur significant cost in retaining a forensic expert to conduct a damage assessment and to restore the data, program, system or information on the laptop to its condition prior to Clark's offense. Furthermore, Clark's conduct has exposed Wells Fargo to potential violation of the Gramm-Leach-Bliley Act (a violation of which may carry substantially monetary penalties) and claims by Wells Fargo

15 - COMPLAINT AND APPLICATION FOR
INJUNCTIVE RELIEF, INCLUDING
APPLICATION FOR TEMPORARY
RESTRAINING ORDER

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

EXHIBIT 1
Page 15 of 17

customers under that Act.

70.     The actions of Clark constitute violations of the Computer Fraud and Abuse Act.

71.     Wells Fargo requests that the Court enter judgment in its favor against Clark on its claim of violation of the Computer Fraud and Abuse Act and award it: (1) compensatory damages in an amount to be proven at trial; (2) its costs, expenses, and attorney's fees; and (3) such other and further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Wells Fargo requests that the Court enter judgment:

1. In favor of Wells Fargo and against defendant Clark on Causes of Action One through Five;

2. Enjoining and restraining Clark from any further violations of his contractual and common law duties not to misappropriate trade secrets and confidential information of Wells Fargo, consisting of at least confidential customer information;

3. Ordering Clark to remove from the www.wfopsreport.com website (and any other public forum) any trade secrets and confidential information of Wells Fargo, consisting of at least confidential customer information;

4. Ordering Clark to account for and return all copies of trade secret and confidential information he has misappropriate from Wells Fargo;

5. Awarding damages to Wells Fargo for Clark's breach of his contractual and common law duties not to misappropriate its trade secrets or confidential information;

6.     Awarding damages to Wells Fargo on the basis alleged in the Complaint;

7.     Awarding Wells Fargo pre-judgment and post-judgment interest;

8.     Awarding Wells Fargo its costs, expenses, and attorney's fees;

16 - COMPLAINT AND APPLICATION FOR
INJUNCTIVE RELIEF, INCLUDING
APPLICATION FOR TEMPORARY
RESTRAINING ORDER

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone:  503.552.2140 | Fax: 503.224.4518

EXHIBIT 1
Page 16 of 17

9.       Awarding Wells Fargo such other and further relief as the Court deems just and

reasonable.

Dated:  August 5, 2011.

**OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.**

By:   /s/ Leah C. Lively
         Leah C. Lively, OSB No. 962414
         leah.lively@ogletreedeakins.com
         503.552.2140
         Attorneys for Plaintiff Wells Fargo Bank,
         N.A.

10736108.2 (OGLETREE)

17 - COMPLAINT AND APPLICATION FOR
INJUNCTIVE RELIEF, INCLUDING
APPLICATION FOR TEMPORARY
RESTRAINING ORDER

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone:  503.552.2140 | Fax: 503.224.4518

EXHIBIT 1
Page 17 of 17

**U.S. Department of Labor**  Office of Administrative Law Judges
90 Seventh Street – Suite 4-800
San Francisco, CA 94103

(415) 625-2200
(415) 625-2201 (FAX)



**Issue Date: 09 August 2012**

CASE NO.:    2012-SOX-00003

*In the Matter of:*

ANDREW CLARK,
            Complainant,

v.

WELLS FARGO HOME MORTGAGE,
            Respondent.

Before:        Richard M. Clark
               Administrative Law Judge

<u>DECISION AND ORDER GRANTING RESPONDENT'S</u>
<u>MOTION FOR SUMMARY DECISION</u>

        This case arises under Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, Title VIII of the Sarbanes-Oxley Act of 2002 ("Sarbanes Oxley" or "SOX"), 18 U.S.C. § 1514A, and the implementing regulations found at 29 C.F.R. § 1980.

        On June 19, 2011, Andrew Clark ("Complainant") filed a formal complaint with the Department of Labor's Occupational Health and Safety Administration ("OSHA"). Complainant alleged that his employer, Wells Fargo Home Mortgage ("Respondent"), violated the employee protection provisions of Section 806 of Sarbanes Oxley and the Consumer Financial Protection Act of 2010 and Section 1057 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank"), 12 U.S.C. § 5567, and other related legislation. That claim was amended to include his June 2011 termination by Respondent. According to OSHA, on October 8, 2011, Complainant filed a second complaint against Respondent for "illegal jailing as retaliation." On October 19, 2011, following an investigation by the Department, OSHA found that the claim was not covered under the Dodd-Frank Act and that "there [was] no reasonable cause to believe that Respondent violated SOX." It found that "[a] preponderance of the evidence indicates that Complainant's protected activity was not a contributing factor in either the discipline or termination of his employment." Complainant refuted these findings by letter dated November 1, 2011.

        On June 13, 2012, Respondent filed a Motion for Summary Decision and to Strike Complainant's November 1, 2011, letter ("Motion") pursuant to 29 C.F.R. § 18.40. The Motion argues that (1) the November 1, 2011, letter sent by Complainant does not constitute a timely

EXHIBIT 2
Page 1 of 26

objection to the Department's finding and should therefore be stricken in its entirety, and the matter dismissed, and (2) even if the Secretary's findings are reviewed, Complainant cannot make a *prima facie* case that Respondent violated Sarbanes Oxley, and Respondent is therefore entitled to summary decision as a matter of law.

On July 11, 2012, this Office issued an order informing Complainant, who is appearing *pro se*, of his right to respond to Respondent's Motion and granting him an extension of time for which to do so. Complainant responded with a series of motions received on July 20, 2012, including a Motion to Deny Respondent Motion to Dismiss and for Summary Decision ("Opposition Motions").

For the reasons stated below, this Decision grants Respondent's Motion for Summary Decision due to Complainant's failure to set forth sufficient information from which to find a *prima facie* case of workplace retaliation.

## I.    Background

A.    The Acts

Congress enacted Sarbanes Oxley on July 30, 2002, as part of a comprehensive effort to combat corporate fraud. *Sylvester v. Parexel Int'l, LLC*, ARB No. 07-123, slip op. at 8 (ARB May 25, 2011). Included in the Act were whistleblower protection provisions, which were intended to respond to a "culture, supported by law, that discourage[d] employees from reporting fraudulent behavior not only to the proper authorities . . . but even internally." S. Rep. No. 107-146, at 5 (2002). Section 806 of SOX extends these whistleblower protections to "employees of publicly traded companies." 18 U.S.C. § 1514A(a); 29 C.F.R. § 1980. It prohibits covered employers from discharging, demoting, suspending, threatening, harassing, or in any other manner discriminating against employees who provide information or otherwise assist their supervisors, Congress, or a federal agency in an investigation regarding conduct that the employee reasonably believes is a violation of 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire, radio, TV fraud), 1344 (bank fraud), 1348 (securities fraud), any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law related to fraud against shareholders. 18 U.S.C. § 1514A; 29 C.F.R. § 1980.100.

The Dodd-Frank Act was enacted on July 21, 2010, as "[a]n act to promote the financial stability of the United States by improving accountability and transparency in the financial system." Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203 (2010); 124 Stat. 1376. Section 1057 of the Dodd-Frank Act prohibits covered employers from discharging or discriminating against any covered employee because that employee has provided information to the employer or government authorities regarding what he reasonably believes to be a violation of the Act's Bureau of Consumer Protection ("Bureau") subchapter or any provision of law subject to the Bureau's jurisdiction. 12 U.S.C. § 5567.

EXHIBIT 2
Page 2 of 26

B.    Complainant's Employment with Respondent

On September 10, 2009, Complainant was hired as a Home Mortgage Consultant ("HMC") by Respondent in Eugene, Oregon. Motion, Attachment 5, Ex. 5. Complainant wrote that he has 30 years of experience in the mortgage lending business, including work at a local Oregon brokerage prior to his work for Respondent. Motion, Attachment 5, Ex. 22 at 2; Opposition Motions. Complainant signed an Employment Agreement and a Team Member Acknowledgement indicating that he had received *The Handbook for Wells Fargo Team Members*, which contained the Code of Ethics and Business Conduct, the Information Security Policy, and the Electronic Human Resources Systems Authorization. Motion, Attachment 5, Ex. 8.

All indications were that after an initial adjustment period in 2009, Complainant was successfully acclimating himself into Respondent's business culture, and producing at a rate that was in line with or exceeding that of other HMCs. *See* Motion, Attachment 5, Ex. 10 at 3, 7, 16 (supervisor Alan Martin writing in performance evaluations that "2010 was a great step forward for [Complainant] in regards to [his] personal production;" "[Complainant] not only wethered [sic] the storm, he adapted, and found ways to excel.")

In early 2011, Complainant alleged that, given the new legal and regulatory environment surrounding mortgage lending, he received mandatory online video training about the Dodd-Frank Act. Opposition Motions. In March 2011, all HMCs, including Complainant, were converted to non-exempt employees and given new compensation plans and detailed time-tracking systems because of the new regulatory environment. *See* Motion, Attachment 5, Ex. 6, Ex. 7, Ex. 14 at 23, Ex. 56 at 2. These changes took effect in April 2011. The timing of these changes roughly corresponded with changes in Complainant's behavior in April 2011. *See* Motion, Attachment 5, Ex. 11 at 1 ("Mr. Martin writing in response to forwarded April 15, 2011, email that "this is about when [Complainant's] personality started to change.")

C.    Change in Behavior and Complaint

On April 15, 2011, Complainant sent an email message to Branch Sales Manager and supervisor Alan Martin and to several co-workers entitled "Screwed Beyond Comprehension." Motion, Attachment 5, Ex. 11 at 4. After a week of "major marketing," Complainant lamented that Respondent's current mortgage rates were "so far out of the market it is not even funny" and that he was "totally screwed." *Id.* When a co-worker challenged Complainant's assertion in part, Complainant responded "I don't really give a cockroaches [sic] arse [sic]. I don't give a flyf#ke [sic] what the ##$$%$ [sic] they think, I will persistently wear them down like a bad case of aids, who cares, they never send me crap how could it go downhill from there?" *Id.* at 2. This was the first instance of an inappropriate email sent by Complainant in the record. His supervisor, Alan Martin, told Complainant he did not want "this type of whining and email vulgarity to be part of [his] branch's culture." Motion, Attachment 5, Ex. 12 at 1. According to Mr. Martin, Complainant responded that he was not whining, but that his email was meant to be funny, and he was simply "deflating [himself] from being incorrect in a major marketing faux pas." He asked Mr. Martin for a hug. Motion, Attachment 5, Ex. 13 at 1.

EXHIBIT 2
Page 3 of 26

On April 17, 2011, Complainant sent a letter to Mark Oman, Respondent's Senior Executive Vice President of Home and Consumer Finance, alleging that Respondent's retail mortgage interest rate and fees appeared to be materially higher than other mortgage sources, and that, through referrals based on relationship marketing or theoretical factors such as security or brand name, Respondent was potentially "steering" customers to loans with higher rates and fees. Motion, Attachment 5, Ex. 14 at 1. Complainant also complained of company inefficiencies from his management that were purportedly detrimental to Respondent, and costing it millions of dollars. *Id.* In a subsequent April 26, 2011, email attachment sent to Tim Grochala, Mr. Martin, and Area Sales Manager Doug Grenz, Complainant wrote that "[t]here is absolutely no doubt in my mind that under all these circumstances a judge/jury would indeed consider [this activity] steering," and even if they did not, it would take a great amount of paperwork and time for a judge to sort this all out. Motion, Attachment 5, Ex. 21 at 2, Ex. 27 at 1-2. Days later, in an email to Respondent's Human Resources department ("HR"), Complainant further explained that using "relationship marketing" and nonfinancial factors such as trust and sense of security to attract potential mortgage buyers to Respondent's higher cost loans could constitute illegal steering. Motion, Attachment 5, Ex. 36 at 1. Complainant noted that he feared being sued for steering, and because he lacked the resources to defend himself, he felt the need to bring this issue to Respondent's attention. Motion, Attachment 5, Ex. 21 at 2.

On April 25, 2011, Complainant met with his supervisor, Mr. Martin. According to Complainant, he told Mr. Martin that he had reported two significant issues to Wells Fargo management and was nervous about potential repercussions. Motion, Attachment 5, Ex. 22 at 2. This is the first evidence in the record of Complainant telling his supervisor Mr. Martin of his internal complaints. He told Mr. Martin that all of his actions were carried out to benefit Wells Fargo. *Id.* Complainant claimed that Mr. Martin threatened his employment on account of using unapproved marketing materials. *Id.* However, Mr. Grenz denied that Mr. Martin made any such threat, and claimed that Mr. Martin would have needed to obtain his approval before taking any disciplinary action against Complainant, which, according to Mr. Grenz, Mr. Martin did not seek in April 2011. *Id.*; Motion, Attachment 5, Ex. 21 at 1, Ex. 35 at 1; Grenz Decl. ¶ 5. After the meeting, Mr. Martin immediately emailed his manager Mr. Grenz suggesting that Complainant had "gone off the deep end," and recalled that Complainant spent 45 minutes telling him about a letter and documentation he had sent "to people in the highest places." Motion, Attachment 5, Ex. 19 at 2. He also alerted HR about this meeting. *Id.*

Mr. Martin had a different recollection of the meeting than Complainant. According to Mr. Martin, Complainant told him he got the idea for his actions from the TV comedy South Park. *Id.* He felt that Complainant's complaints were rooted in the new compensation system, and that Complainant "seem[ed] to believe that if he can't make a large income per year in doing [the new 3 step business process], then [Respondent] will owe him income through going to court and legal proceedings." Motion, Attachment 5, Ex. 24 at 1. Mr. Martin observed that Complainant's demeanor had changed drastically and that it was affecting the productivity of other mortgage consultants in the office. *Id.* He was concerned that security may need to step in to resolve the issue. *Id.*

Shortly after the meeting, Complainant emailed Mr. Grenz and hoped they could "forget about the meeting" and that he was "not asking [Mr. Grenz] to do anything at all." Motion,

4

EXHIBIT 2
Page 4 of 26

Attachment 5, Ex. 20 at 3. In an email to Mr. Grenz, Complainant also suggested that he was experiencing personal and financial difficulties, but that he could deal with his personal issues later, and that "as soon as [he] massively ramp[ed] up production [his] concerns [would] no doubt go away." *Id., see also* Motion, Attachment 5, Ex. 35 at 1-2.

On April 28, 2011, Complainant had an unscheduled meeting with the Area Sales Manager, Mr. Grenz. According to Mr. Grenz, Complainant believed that, because Respondent's retail rates were .50% higher than his wholesale rates, as a retail HMC, he was being required to "steer" his customers illegally to a higher priced product. Motion, Attachment 5, Ex. 25 at 1. Mr. Grenz stated that Complainant had a "strategy," and that much like military strategy, he had every scenario covered including his own murder, had put "false flags" in place, and expected to be handsomely compensated by Respondent in the amount of $50 million for this information, or, in the alternative, he would pursue legal action after he was wrongfully terminated by Respondent. *Id.* at 1-2. Mr. Grenz recalled that Complainant became emotional over a refund on a loan where he had lost the commission, and also suggested that he was having financial difficulties because of mounting spousal support payments, and had to do whatever it takes to make a living in light of these rising costs. *Id.* In their meeting, Complainant also expressed displeasure over the new corporate parking policy, Mr. Martin's past suggestion that Complainant move to the Springfield, Oregon, office if he didn't like the new policies, and his dislike for District Manager Kyle Banks who took away "all dignity" from his team members. *Id.* Mr. Grenz alerted others in the company of this meeting.

From April to July 2011, Complainant repeatedly expressed his desire to resolve this situation, preferably through some "mutually satisfactory agreement" that would allow him to "move along elsewhere and forget all this immediately." Motion, Attachment 5, Ex. 40 at 1. On May 9, 2011, Complainant emailed Elise Resier, Respondent's Employee Relations Manager, about a potential settlement. Motion, Attachment 5, Ex. 85 at 1. He requested 20 years of pay at $250,000 annually, $2 million for his employment complaint, and a complete non-disclosure of the terms of the settlement. *Id.* Complainant explained that the information he provided to Respondent had "large value," that he was an above-average "[p]roducer" in the Oregon market, that he feared that he was engaging in illegal "steering," that his employment was "directly threatened" by Respondent," and that his manager had created an "abusive" work environment that discouraged him from providing valuable input to the company. *Id.* On or around May 12, 2011, Ms. Reiser referred Complainant's complaints to a subject matter expert on steering. Motion, Attachment 5, Ex. 44 at 1. Complainant contends, however, that because Ms. Reiser had no expertise on these issues that Respondent had used improper channels for communicating violations. Opposition Motions at 10.

In May 2011, in light of his recent erratic behavior, Respondent conducted a criminal background check on Complainant. Its inquiry revealed two felony charges for robbery and burglary in Bent County, Oregon, dating from 1979 for a man named Andrew Clark. Motion, Attachment 5, Ex. 31 at 2. In September 2009, prior to his employment with Respondent, Complainant denied that he had ever been convicted of a felony within the past 10 years, or of any crime involving dishonesty or breach of trust such as theft or falsification. Motion, Attachment 5, Ex. 64 at 4. In June 2011, Respondent contacted Complainant about his potential criminal background. Motion, Attachment 5, Ex. 32. In a handwritten note of unknown origin,

EXHIBIT 2
Page 5 of 26

Complainant allegedly admitted some transgressions in the distant past, although he claimed the charges were expunged. Motion, Attachment 5, Ex. 65. Complainant now feels that these charges were manufactured and used to retaliate against him. Opposition Motions at 10.

In May 2011, Complainant submitted an ethics report with Respondent's Ethics Hotline alleging possible steering violations. *See* Motion, Attachment 5, Ex. 48 at 1. Complainant expressed concern about Respondent purportedly charging a .25% higher interest rate than competitors on retail loans, because it forced him to either close a loan for a higher interest rate or "steer" customers to competitors. *Id.* Complainant was also concerned about the new requirement that he track his overtime hours. *Id.* Between the new time tracking practices and the steering concerns, Complainant believed that he was unable to make sales or commissions in April 2011. *Id.* He stated his intention to contact federal agencies about the problem, requested compensation for his work in April 2011, and referred to himself as a "whistleblower" who should be rewarded and compensated as such. *Id.*

On or around May 23, 2011, Ms. Reiser said that she spoke to Complainant and informed him that Respondent's Legal Department had reviewed his concerns and found that Respondent was operating within the new legal rules and regulations. Reiser Decl. ¶ 7. She scheduled a follow up conversation with Liz Bryant, Complainant's fourth-tier manager, to further discuss his complaints, and thanked him for bringing his concerns forward. *Id.*

In a May 24, 2011, email to Mr. Grenz and a subsequent email to Ms. Reiser, Complainant raised a new issue, suggesting that Respondent was engaging in fraud by entering transactions as "face-to-face" interactions even when contact occurred over the telephone. Motion, Attachment 5, Ex. 49 at 1, Ex. 56 at 2-3. Mr. Grenz denied ever instructing Complainant or other HMCs to improperly record a phone call as a face-to-face meeting, and was not aware of any contrary assertions by Mr. Martin. Grenz Decl. ¶ 4. Complainant made loose comparisons between Respondent's current situation and that of the one-time accounting firm Arthur Anderson, made passing references to the plight of peasants in Potemkin and to Schindler's List, and again expressed a desire to be paid for his work. Motion, Attachment 5, Ex. 49 at 1. Complainant said he planned to file a report with the FBI regarding this fraud. *Id.* Other emails sent by Complainant to Ms. Reiser on May 24, 2011, expressed his fear of being sued, terminated, or de-licensed by Respondent, while Respondent could shift blame to Complainant and use its monetary and legal resources to defend itself. Motion, Attachment 5, Ex. 52 at 1. On the same day, Mr. Martin sent an email to Mr. Grenz and Ms. Reiser noting that, although his co-workers did not view Complainant as a physical threat, they were growing tired of listening to his "commotion." Motion, Attachment 5, Ex. 55 at 1.

On May 25, 2011, Respondent sent Complainant an email clarifying his compensation structure. Motion, Attachment 5, Ex. 56 at 1. Ms. Reiser explained that he was paid $12 per hour for each hour worked, and also received commissions and bonuses only to the extent they exceeded this hourly pay. *Id.* Respondent assured Complainant that he would never earn less than $12 per hour for each hour worked, and that this compensation structure was in compliance with federal and state regulations. *Id.* Complainant felt that this payroll structure was initiated to retaliate against him and to "starve the worker honestly reporting" violations. Opposition Motions at 10.

6

EXHIBIT 2
Page 6 of 26

On or about May 25, 2011, Complainant filed violations with the FBI and Portland office of the Department of Labor. Opposition Motions at 7. On May 26, 2011, Complainant told his supervisor Mr. Martin that he would return to his work and let others, including the FBI and Department of Labor, handle his larger concerns. Motion, Attachment 5, Ex. 58 at 1. He promised to enter sales calls that he believed were "compliant with Dodd-Frank/SAFE," but would only work "strictly within the law." *Id.* On May 31, 2011, Complainant left a voice message with Ms. Reiser saying "[e]verything is good actually. I obviously want to withdraw my complaints. I finished the job that I had set out to do . . . for the company of course." Motion, Attachment 5, Ex. 59 at 1 (ellipsis in original). Complainant also said "it all gets down to the whistleblower laws and (*word unknown*) rights and defensibility . . . [s]o anyway, everything is cool." *Id.*

However, problems with Complainant's conduct continued. On June 1, 2011, Mr. Martin sent an email to Ms. Reiser writing that Complainant's "appearance and demeanor appeared to be sloppy." Motion, Attachment 5, Ex. 60 at 1. According to Mr. Martin, he encountered Complainant at a retail bank store, and Complainant seemed "extremely agitated," and was trembling, animated, and very loud when he spoke. *Id.* Mr. Martin recalled that three times Complainant came close to him and reached to "touch/grab" his elbow. *Id.* This occurred in a public setting where customers were present. *Id.* On the whole, Mr. Martin found that Complainant's conduct had become increasingly unprofessional since April 2011, and described his conduct at this encounter as abrasive and confrontational. *Id.* On the same day, Mr. Martin wrote that he found Complainant telling his whistleblower story to a co-worker, and when Mr. Martin told Complainant that he felt it was inappropriate to continue discussing these issues, Complainant placed a "firm hand on [his] back," and asked Mr. Martin if this was the time when he would be fired. Motion, Attachment 5, Ex. 62 at 1.

D.    Formal Warning

On June 2, 2011, Complainant received a formal warning from Mr. Martin for a violation of Respondent's Workplace Conduct/Professionalism policy. Motion, Attachment 5, Ex. 66 at 1. Mr. Grenz stated that he "believed that [Complainant] was abusing [Respondent's] electronic system, and was also creating an uncomfortable and disruptive working environment for his coworkers." Grenz Decl. ¶ 6. Specifically, Mr. Martin referenced his encounter with Complainant at the retail bank store where Complainant touched Mr. Martin and spoke very loudly, and the fact that several of his co-workers stated that Complainant's conversations were interfering with their ability to work. *Id.*; *see* Ex. 17 (co-worker Ms. Adair discussing "unusual behavior" by Complainant and that she wanted "nothing to do with it"); Ex. 65 (Mr. Martin's notes that co-worker named Brad thought Andy was acting "unstable"). Ex/ 74 ("mission accomplished" email regarding his whistleblower efforts distributed to co-workers). Specifically, Mr. Martin quoted the *Wells Fargo Team Member Handbook* in his written warning, which instructs employees to conduct themselves in the utmost professional and appropriate manner at all times.[1] *Id.* He warned that future violations of this or other company

---

[1] According to the January 2011 *Wells Fargo Team Member Handbook*, employee actions "must always reflect the highest possible standards of business conduct and ethics." Motion, Attachment 5, Ex. 4 at 5. "Unprofessional and inappropriate workplace behavior is any conduct that violates the policies in this section of [the] handbook," and "includes but is not limited to outburst, yelling, rudeness, or annoying conduct that interferes with another team

7

EXHIBIT 2
Page 7 of 26

policies could result in "further corrective action, up to and including termination of employment."[2]  *Id.* at 2.  Mr. Martin gave Complainant the contact information for Respondent's Employee Assistance Counseling in case he wished to further discuss work and personal issues. *Id.*

Complainant, Mr. Martin, and Mr. Grenz all discussed the formal warning on the afternoon of June 2, 2011.  Motion, Attachment 5, Ex. 67 at 1.  According to Mr. Martin, Complainant repeatedly agreed that his work conduct was inappropriate, and although he did not appear to read the full warning, Complainant signed the warning, and noted that "this is more than fair."  *Id.*  Mr. Martin recalled Complainant saying "[t]his whole thing started out as green, and it wasn't until I got [two-thirds] of the way into it that I realized how bad that was."  *Id.*  Mr. Grenz allegedly informed Complainant that his complaints were being reviewed by various departments of Respondent, and Complainant seemed very appreciative that the issues he raised were being reviewed.  *Id.*  According to Mr. Martin, Complainant revealed that he was having some personal issues with his ex-spouse over child support payments and that his bank accounts had been "cleaned out."  *Id.*  Complainant began to "lightly sob" over these personal issues.  *Id.*  Mr. Martin described Complainant as "lost" and "overwhelmed," and worried that his own "professed 'paranoia'" would continue to be a problem for him.  *Id.* at 2.  Mr. Grenz had a similar impression of the meeting.  Motion, Attachment 5, Ex. 68 at 1.  He wrote that Complainant repeatedly agreed with the warning and appeared very upset over a recent alimony dispute with his ex-wife, which required him to pay $5,500 per month in alimony, and meant that all of his salary was being seized by court order.  *Id.* at 2.  Mr. Grenz did not believe Complainant was a danger to the workplace, but felt that he was "unable to cope with what was happening in his personal life."  *Id.*

After the meeting, Complainant wrote to Ms. Reiser that "I no longer have unreported concerns and Management has provided satisfactory answers."  Motion, Attachment 5, Ex. 69 at 1.  He noted that "it now appears likely there will soon be some form of federal action . . . to 'put off' the whistleblower thing and investigate what information is being sucked out of companies and for what purposes.  I am only one of many all over the country actively reporting this as a national securirty [sic] concern."  *Id.*

Shortly after his formal warning, and throughout June 2011, a series of bizarre emails followed from Complainant to several of Respondent's employees including Ms. Reiser and Mr. Martin.  Through company email, Complainant sent a series of messages with confusing and seemingly important subject headers that ultimately discussed Jesus and the bible, compared his persecution to people of Jewish faith, linked to video footage of the Bovine Freedom Movement, and opined on the Indian race, ethanol, modern warfare, the historical value of stagecoaches, and the heartland of America.  *See, e.g.* Motion, Attachment 5, Ex. 2, Ex. 33, Ex. 51 at 2, Ex. 70 at 1-

---

member's ability to perform his or her job."  *Id.* at 8.  Employees are instructed to "use good judgment in making sure that [their] behavior supports our company standards of professionalism . . . [f]ailure to do so can be grounds for corrective action, which may include termination of your employment."

[2] According to the January 2011 *Wells Fargo Team Member Handbook*, "employment with a Wells Fargo company has no specified term or length; both you and Wells Fargo have the right to terminate your employment at any time, with or without advance notice and with or without cause.  This is called 'employment at will.'"  Motion, Attachment 5, Ex. 4 at 3.  Complainant's employment agreement also stated that his employment was "at will."  Motion, Attachment 5, Ex. 5 at 1.

EXHIBIT 2
Page 8 of 26

4, Ex. 80, Ex. 84. Complainant was told by several of Respondent's employees that, according to the Wells Fargo Handbook, the company email system should not be used for this purpose.[3] *See, e.g.* Motion, Attachment 5, Ex. 70 at 1, 4. Mr. Martin repeated his warning that "continued violations will lead to additional corrective action including termination." *Id.* at 1.

On June 10, 2011, Complainant had a follow up phone call with Ms. Reiser and Ms. Bryant regarding his complaints. Reiser Decl. ¶ 8. According to Ms. Reiser, Ms. Bryant had prepared detailed talking points to address Complainant's concerns and explain why Respondent believed that they were not in violation of the current rules and regulations. *Id.*; *see* Motion, Attachment 5, Ex. 53. Ms. Reiser reported that Complainant acted in a condescending, disrespectful, and difficult manner throughout this call, and did not appear interested in Ms. Bryant's answers. Reiser Decl. ¶¶ 9-10; *see* Motion, Attachment 5, Ex. 72 at 1. Ms. Reiser felt that his behavior was inappropriate and unprofessional. *Id.* The irrelevant emails continued.

Also on June 10, 2011, Complainant raised yet another concern regarding a home appraisal issue. *See, e.g.* Motion, Attachment 5, Ex. 73. Complainant said that he was told by Respondent that he was not in compliance with Dodd-Frank for his direct communications to the appraiser in the Hayen loan. *Id.* at 4; *see* Ex. 53 at 2 (suggesting direct communication with appraiser is not permitted). According to Mr. Martin, Respondent did not continue to pursue this loan, and the issue was resolved. *Id.* Complainant believed that the issues had not been resolved, feared legal troubles, and repeated that he hoped to reach an internal resolution, but those hopes were "waning." *Id.*

On June 14, 2011, Mr. Martin received a forwarded email that Complainant had sent to his co-workers. The email, originally sent on May 31, 2011, was entitled "Mission Accomplished." *See, e.g.* Motion, Attachment 5, Ex. 74 at 2. It detailed that, beginning on April 15, 2011, Complainant began looking at internet forums and found that several Wells Fargo employees "all over were waiting for some reward they thought they could get form the government." *Id.* He claimed that all of his actions and reports were designed to give him and Respondent "tam qui" rights to all possible violations. *Id.* According to Complainant, his May 25, 2011, filing, internal reporting, and FBI report "all were necessary to positively perfect the claim." *Id.* Complainant was convinced that he had a duty to report the "first transaction occurrence of anything 'odd'" to the FBI as a "first-line defense against company risk." *Id.* On June 14, 2011, Complainant emailed Mr. Martin, denying he had a "master plan," and stating that he thought Respondent was not responding to his complaints and perhaps concealing information. *See, e.g.* Motion, Attachment 5, Ex. 75 at 2. Complainant hoped to speak with an expert on Dodd-Frank regarding his concerns, and once again expressed his desire to find a "nice tidy way" to resolve this matter and to "call it a company success story" without seeking legal recourse. *Id.*, Ex. 76 at 1. Complainant told Mr. Martin that he was "scared" and intimidated, and therefore required to "take the next step as a defensive position." *See, e.g.* Motion, Attachment 5, Ex. 76 at 1. He pleaded for a "graceful" way out through some sort of internal resolution, and stated that "this is really all something we can laugh about its [sic] so funny in a lot of ways." *Id.* He said that he reported violations to the FBI and Department of Labor to

---

[3] According to the handbook, "electronic communication . . . must be handled in a professional manner." Motion, Attachment 5, Ex. 4 at 8. "Appropriate use of systems and features, as well as the appropriate content of electronic communication, is required." *Id.* at 17.

9

EXHIBIT 2
Page 9 of 26

"protect the company," and also sent this information to the "very top levels" of Respondent's company, but never let lawyers touch company information or his writings because "we are family." *Id.* Complainant was convinced of the righteousness of his actions, and said the non-righteous go to court. *Id.* Complainant referred to himself as a "rat," was hopeful that he would be rewarded for his actions, and felt that "this could all make such a pretty picture, its [sic] all in the spin." *Id.* at 4. On June 19, 2011, Complainant filed this action with OSHA. Motion, Attachment 5, Ex. 1 at 1.

Mr. Martin and Mr. Grenz met with Complainant on June 21, 2011, regarding his June 14, 2011, email chain. *See, e.g.* Motion, Attachment 5, Ex. 79. According to Mr. Grenz, Complainant felt scared over the threat of losing his employment. *Id.* Complainant communicated that he had received a graceful way out from Respondent, but would not elaborate further as to what that meant. *Id.* Complainant again expressed displeasure over the new time tracking system and the new scrutiny of his daily work activities. *Id.* According to Mr. Grenz, Complainant's final comment at that meeting was that "I'm the best actor there is. I can be the grieving Jew one day and the grieving Muslim the next day. I can turn that switch off and then be normal Andy like today." *Id.*

On June 27, 2011, when Ms. Reiser again asked Complainant to stop sending irrelevant emails, he replied "I don't have to do shit. I am going to fucking court." Motion, Attachment 5, Ex. 80 at 17, Ex. 82 at 1.

E.    Termination and Subsequent Developments

On June 28, 2011, Complainant was terminated for violating Respondent's workplace conduct and professionalism policy. Grenz Decl. ¶¶ 9-10. Mr. Grenz stated that:

> [Complainant's] unprofessional, profane, and disrespectful behavior was unacceptable. Given the number of prior conversations in which I had clearly reminded [Complainant] of [Respondent's] (and my) expectations regarding appropriate workplace conduct, I concluded that [Complainant] had no intention of conducting himself in a professional manner. I terminated him on June 28, 2011.

Grenz Decl. ¶ 9.

Mr. Grenz declared that his decision to fire Complainant:

> had absolutely nothing to do with any reports or questions he raised about [Respondent's] rate spreads, logging of sales activities or compensation . . . I would have taken or approved the same disciplinary action for any other HMC who engaged in similar belligerent and unprofessional behavior, regardless of any internal reports or complaints. When [Complainant] repeatedly ignored all guidance and suggestions toward improvement, I determined that my only option was to terminate him.

Grenz Decl. ¶ 10.

10

EXHIBIT 2
Page 10 of 26

Complainant asked Tim O'Hara of Respondent's Corporate HR to conduct a review of his termination. Motion, Attachment 5, Ex. 51 at 6. In a July 5, 2011, email to Mr. O'Hara, Complainant reiterated his objective to come to "some agreeable terms" with Respondent. Motion, Attachment 5, Ex. 51 at 4. Complainant wrote, "I am relatively cheap, flexible, and can posture all within the framework of any objective of pretty much anyone. It would be great if you could find some nice fast way for this to work out, let me legally assign the tam qui rights and absolve the company in the fashion required." *Id.* He wrote that without this, he had "no choice but to very quickly move to the next steps on a personal basis. I do not believe in using the legal system to resolve disputes, I considered it a last and painful course of action which is why I am anxious for a mutually favorable outcome." *Id.*

Since Complainant's discharge, he has returned to Respondent's facilities. Complainant was subsequently arrested by the City of Eugene, Oregon, police for second degree criminal trespassing on Respondent's property. Motion, Attachment 6. Complainant contends that Respondent conspired with the police, hired additional security to justify planned police involvement, ordered a police "well-being" visit to his home on July 18, 2011, and ordered his "SWAT kidnapping." Opposition Motions at 5, 9, 11. Complainant contends that this arrest was unwarranted, torturous, and retaliatory in nature. *Id.*

On July 24, 2011, Complainant sent an email to Respondent's counsel that said, "[m]y favorite spoof was filing the May 25 report which is a workof [sic] art and then another one personally [sic] that looked a little crazy." Motion, Attachment 5, Ex. 57 at 1. In August 2011, Complainant sent several inappropriate emails to Respondent's counsel about a potential sexual encounter, and left a voice message suggesting Complainant had been seeking information about Respondent's counsel's family. Motion, Attachment 8 at 2-3, 44-46. Respondent's counsel also contends he sent several inappropriate faxes to her firm, although Complainant questions the authenticity of these faxes, states they are irrelevant, and contends they were fabricated to retaliate against him and to entrap him as a guilty party in these proceedings. *Id.* at 2; Opposition Motions at 7, 12.

After Complainant's termination, Respondent has brought suit against Complainant in a different forum, the District Court of Oregon, seeking a temporary restraining order and injunction that would halt Complainant's use of a personal website to divulge Respondent's company information. Motion, Attachment 4. Judge Hogan found that Complainant disclosed Respondent's trade secrets and confidential information publicly through his website, wfopsreport.com in violation of his Employment Agreement and the Computer Fraud and Abuse Act. *Id.* On August 11, 2011, Judge Hogan granted a temporary restraining order against Complainant enjoining this disclosure and ordering the return to Respondent of all confidential information. *Id.* at 3-4. On August 28, 2011, Judge Hogan granted a preliminary injunction enjoining Complainant from publishing, disclosing, or retaining Respondent's trade secrets, confidential information, and equipment. *Id.* at 15. That order found that Complainant had destroyed the computer Respondent gave him, and had, since July 14, 2011, been using his own website to upload Respondent's proprietary information. *Id.* at 8-9. Images submitted by Respondent showed that Complainant's work computer had been destroyed. Motion, Attachment 7. In a July 24, 2011, email to Respondent's counsel, Complainant said that he feared Respondent would "alter " his computer, refused to return it, and said it had been

11

EXHIBIT 2
Page 11 of 26

"'killed.'"  Motion, Attachment 5, Ex. 57 at 2.  Complainant maintains that no non-public data was released through his website.  Opposition Motions at 3.

## II.    Summary Decision Legal Standard

In cases before this Office, the standard for summary decision is analogous to that developed under Rule 56 of the Federal Rules of Civil Procedure.  *Mara v. Sempra Energy Trading, LLC*, ARB No. 10-051, slip op. at 5 (ARB June 28, 2011); *Frederickson v. The Home Depot U.S.A., Inc.*, ARB No. 07-100, slip op. at 5 (ARB May 27, 2010).  Under 29 C.F.R. § 18.40(d), an administrative law judge may enter summary judgment for either party if the pleadings, affidavits, material obtained by discovery, or other materials show there is no genuine issue as to any material fact and the party is entitled to summary decision as a matter of law. *Mara*, ARB. No. 10-051, at 5.  "A genuine issue of material fact is one, the resolution of which could establish an element of a claim or defense and, therefore, affect the outcome of the litigation."  *Frederickson*, ARB No. 07-100, at 5-6 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  The primary purpose of summary judgment is to isolate and promptly dispose of unsupported claims or defenses.  *Catrett*, 477 U.S. at 323-24.

If the party moving for summary decision demonstrates an absence of evidence supporting the non-moving party's position, the burden shifts to the non-moving party to prove the existence of a genuine issue of material fact that might affect the outcome of the case and is supported by sufficient evidence.  *Miller v. Glenn Miller Prods.*, 454 F.3d 975, 987 (9th Cir. 2006).  The non-moving party may not rest upon the mere allegations of his or her pleadings, but must instead set forth "specific facts" showing there is a genuine issue of fact for hearing.  29 C.F.R. § 18.40(c); *Mara*, ARB. No. 10-051, at 5; *Frederickson*, ARB No. 07-100, at 6.  Where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial," there is no genuine issue of material fact, and the moving party is entitled to summary decision.  *Catrett*, 477 U.S. at 322-23.  In assessing a motion for summary decision, the administrative law judge must consider the record in the light most favorable to the non-moving party and draw all inferences in favor of the non-moving party.  *Mara*, ARB. No. 10-051, at 5; *Frederickson*, ARB No. 07-100, at 6.

## III.    Analysis

### A.    The Limited Scope of this Proceeding

Complainant has alleged causes of action under the Sarbanes Oxley[4] and Dodd-Frank Acts.[5]  The provisions at issue were meant to protect whistleblower employees who engaged in protected activity under the Acts, and suffered an adverse action on account of their endeavors.

---

[4] Under Sarbanes Oxley, a person who alleges retaliatory discharge or discrimination may seek relief by filing a complaint with the Secretary of Labor.  18 U.S.C. § 1514A(b)(1)(A); *see* 29 C.F.R. § 1980.103(c).  Congress authorized the Assistant Secretary of Labor to issue "written findings" on the complaint, and the complainant may object to those findings and request a hearing by an administrative law judge ("ALJ").  29 C.F.R. § 1980.105. Assuming jurisdiction is proper, Congress ceded adjudicatory authority to the ALJ to conduct a *de novo* review of

12

EXHIBIT 2
Page 12 of 26

Therefore, while congress has ceded authority to the Department of Labor to investigate whistleblower complaints under both the Sarbanes Oxley Act and the Dodd-Frank Act, this authority is limited, and does not extend to complaints made against non-employers. *See* 18 U.S.C. § 1514A; 12 U.S.C. § 5567.

Here, in his November 1, 2011 Objections to OSHA's findings, and subsequent Opposition to Respondent's Motion, Complainant has made several complaints against the City of Eugene, Oregon Police Department, and the United States District Court for the District of Oregon. References were also made by Complainant to records on PACER from district court proceedings, to which this Office does not have access, and which are not relevant to the proceedings here. *See* Opposition Motions at 2, 5. Complainant also complained of battery by process on the part of Respondent's law firm in district court and in this Office, the use of district court for a Strategic Lawsuit Against Public Participation ("SLAPP suit") against him, both of which are charges this Office lacks the authority to address. *Id.* at 3-5, 12. He also referenced garnishment of his wages in spousal support proceedings, a guardianship proceeding, Google-based defamation, Respondent's role in an illegal kidnapping by SWAT team, Respondent's possible role in the delivery of illegal human organs to the United States, and allegations under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *Id.* at 3-6, 11.

None of these complaints fall within the purview of Sarbanes Oxley or Dodd-Frank for two reasons. First, several of the accused parties were never employers of Complainant, and therefore are outside of the employment relationship presupposed in the whistleblower protection statutes. *See* 18 U.S.C. § 1514A; 12 U.S.C. § 5567. There is no evidence in the record suggesting that Respondent was conspiring with any of these parties, as Complainant contends. Second, this Office lacks jurisdiction over these causes of action, as it is not a court of general jurisdiction, and lacks authority to hear RICO, battery by process, defamation, spousal support, guardianship, or kidnapping causes of action.

Additionally, Complainant lists several allegedly retaliatory actions by Respondent that occurred after he was terminated on June 28, 2011, and "became deadly." Opposition Motions at 6-7, 10-11. However, these actions are beyond the scope of this Decision, because they occurred after the employee-employer relationship was terminated, when Complainant was no longer a protected "employee" under either Act. *See* 18 U.S.C. § 1514A; 12 U.S.C. § 5567.

---

the findings, and hear the case on the merits. *Id.* § 1980.109(c). The ALJ can "provide all relief necessary to make the employee whole" or to deny the complaint. *Id.* § 1980.109(d)(1). While the Department of Labor is vested with this authority, the whistleblower protection provisions of Sarbanes Oxley, however, only extend to "employees of publicly traded companies" who suffer an adverse action at the hands of their employers. *Id.* § 1514A(a); *see* 29 C.F.R. § 1980.103.

[5] Under the Dodd-Frank Act, Congress authorized a person who alleges retaliatory discharge or discrimination to file a complaint with the Secretary of Labor. 12 U.S.C. § 5567(c). The Secretary of Labor has the authority to initiate an investigation of the complaint and to issue a preliminary order or findings on the matter. *Id.* § 5567(c)(2)(A)(i). Either party may object to these findings and request a hearing on the record. *Id.* § 5567(c)(2)(C). However, like Sarbanes Oxley, Section 1057 of the Dodd-Frank Act extends protection only to "covered employee[s]" of service providers who engage in protected activity and suffer an adverse action propagated by their employer. 12 U.S.C. § 5567.

13

EXHIBIT 2
Page 13 of 26

Consequently, this Decision will only consider issues related to Sarbanes Oxley and Dodd-Frank.

**B.    Motion to Strike**

Respondent first argues that Complainant's November 1, 2011, objections to OSHA's findings fail to challenge any specific finding made by OSHA, and should therefore be stricken in their entirety, and Complainant's complaint should be dismissed. Motion at 2-4.

Under 29 C.F.R. § 1980.106(a):

any party who desires review, including judicial review, of the findings and preliminary order. . . must file any objections and/or a request for a hearing on the record within 30 days of receipt of the findings and preliminary order pursuant to § 1980.105(b). The objections, request for a hearing, and/or request for attorney's fees must be in writing and state whether the objections are to the findings, the preliminary order, and/or whether there should be an award of attorney's fees.

In this case, OSHA issued its findings on October 19, 2011. Motion, Ex. 2. On November 1, 2011, Complainant issued a letter to the Chief Administrative Law Judge opining that "the findings on subject case dated October 19, 2011 [were] completely incorrect." *Id.*, Ex. 3. Complainant then listed three separate objections, including Respondent's alleged coordination with the City of Eugene Police on his arrest, Respondent's alleged requests for personal phone records and computer equipment from Complainant, and the Department of Labor's right to regulate the language and content of Complainant's speech. Complainant has, at the very least, generally objected to the findings of the Labor Secretary through a timely letter. Respondent offers no legal authority as to why to letter should not be construed as an objection to the Secretary's findings and why this Office should not review the October 19, 2011, findings of the Secretary. Therefore, the request to strike is denied and this Motion will be evaluated on the merits.

**C.    Motion for Summary Decision**

In the alternative, Respondent moves for summary decision, arguing that Complainant has failed to make a *prima facie* case to prevail on his SOX claim. Motion at 20.

Complainant filed this claim on June 19, 2011, under Sarbanes Oxley and the Dodd-Frank Act. Motion, Attachment 5, Ex. 1 at 1. However, the Dodd-Frank Act was enacted on July 21, 2010, and the whistleblower protection provision did not become effective until July 21, 2011.[6] On July 11, 2011, OSHA advised Complainant that it lacked jurisdiction to investigate

---

[6] Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376, § 1058 ("This subtitle shall become effective on the designated transfer date"); 12 U.S.C. § 5582 (designated transfer date parameters); 75 Fed. Reg. 57252-02 (Sept. 20, 2010) (Secretary of Treasury Geithner setting transfer date to July 21, 2011); *see Mahood v. Advanced Motor Devices*, No. 2012-CFP-00001, slip op. at 1 (Jan. 31, 2012) ("OALJ jurisdiction over whistleblower claims under the [Dodd-Frank] Act became effective on the 'designated transfer date' which was set as of July 21, 2011. Thus, the OALJ has no jurisdiction over a complaint under the Act that alleges protected activity and adverse employment actions that occurred prior to July 21, 2011.")

14

EXHIBIT 2
Page 14 of 26

complainant under Dodd-Frank. It did, however, address the complaint under SOX. Motion, Attachment 5, Ex. 1 at 1. Complainant contends that corporate retaliation via "SWAT kidnapping" and "SLAPP filings" occurred after July 21, 2011, Opposition Motions at 8, but, as discussed above, this Office does not have authority to rule on those issues, and furthermore, the record established that both Complainant's formal warning and termination occurred in June 2011. No employment relationship existed after June 28, 2011, and Complainant could therefore not have suffered a cognizable adverse action after July 21, 2011, the date the Dodd-Frank employee protection provisions became effective. Therefore, only the SOX complaint will be addressed here.

Respondent is a division of Wells Fargo Bank. Wells Fargo Bank is a company within the meaning of Sarbanes Oxley, in that is has a class of securities registered under section 12 of the Securities and Exchange Act of 1934, codified at15 U.S.C. § 78*l*. 18 U.S.C. § 1514A; 29 C.F.R. § 1980.101. As an integrated subsidiary of Wells Fargo Bank, Respondent is a covered employer under SOX. 18 U.S.C. § 1514A. As an individual who formerly worked for Respondent, Complainant is a covered employee under SOX. 29 C.F.R. § 1980.101.

To prevail in a SOX claim, Complainant must prove by a preponderance of the evidence that (1) he engaged in protected activity under the Act, (2) Respondent knew or suspected that the Complainant engaged in the protected activity, (3) Complainant suffered an adverse action, and (4) the circumstances were sufficient to demonstrate that the protected activity was a contributing factor in the adverse personnel action against Complainant. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996 (9th Cir. 2009); 29 C.F.R. § 1980.104(e)(2); *see* 49 U.S.C. § 42121(b)(2)(B)(i); *Zinn v. Am. Comm'l Lines, Inc.*, ARB No. 10-029, slip op. at 5-6 (ARB Mar. 28, 2012). The complaint need not take any particular form, but will be dismissed unless complainant alleges the existence of material facts and evidence to make a *prima facie* showing of these four elements. 29 C.F.R. §§ 1980.103(b), 1980.104(e)(1)-(2). These elements will be scrutinized in turn, in light of the relevant summary decision standard.

1.    Protected Activity

Under 18 U.S.C. § 1514A(a)(1) of Sarbanes Oxley, protected activity is defined as:

> any lawful act done by the employee − (1) to provide information . . . regarding any conduct which the employee reasonably believes constitutes a violation of [18 U.S.C. §§] 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance if provided to . . . a person with supervisory authority over the employee. . . .

*Id.*; *see also Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996 (9th Cir. 2009). The Ninth Circuit, relying on an Administrative Review Board ("ARB") decision called *Platone v. FLYi, Inc.*, ARB No. 04-154, slip op. at 17 (Sept. 29, 2006), has held that a complainant's actions must "'definitively and specifically' relate to [one] of the listed categories" of violations within 18 U.S.C. § 1514A(a)(1), although complainant need not cite directly to the statute he believes was

15

EXHIBIT 2
Page 15 of 26

violated. *Van Asdale*, 577 F.3d at 996 (internal citation omitted). However, the ARB, sitting *en banc*, has recently taken issue with the "definitive and specific" evidentiary standard set forth in *Platone*, arguing that such a heightened standard is in conflict with the legislative intent and plain language of SOX to protect "all good faith and reasonable reporting of fraud." *Sylvester v. Parexel Int'l, LLC*, ARB No. 07-123, slip op. at 17-18 (ARB May 25, 2011) (citing 148 Cong. Rec. S7418-01, S7420 (daily ed. July 26 2002)); *see* 18 U.S.C. § 1514A ("no company may discharge an employee because of any lawful act he "reasonably believes" constitutes a violation). While the "definitive and specific" standard is thereby in doubt, both the ARB and the Ninth Circuit agree that to trigger the protections of the Act, the "focus is on whether the employee reported conduct that he or she *reasonably believes* constituted a violation of federal law" that is related to one of the violations listed in Section 806 of SOX. *Sylvester*, ARB No. 07-123, at 19 (emphasis in original); *see Van Asdale*, 577 F.3d at 1000. Specifically, "an employee must . . . have (1) a subjective belief that the conduct being reported violated a listed law, and (2) this belief must be objectively reasonable." *Van Asdale*, 577 F.3d at 1000; *accord Day v. Staples, Inc.*, 555 F.3d 42, 55 (1st Cir. 2009); *Sylvester*, ARB No. 07-123, at 14; *Zinn*, ARB No. 10-029, slip op. at 7. A reasonable but mistaken belief that respondent's conduct constitutes a violation of the applicable law can constitute protected activity. *Van Asdale*, 557 F.3d at 1002; *Sylvester*, ARB No. 07-123, at 16.

It is not clear here which of the six enumerated categories of violations under SOX Complainant contends that Respondent violated. While the ARB has recently reversed its course in *Platone* and held that a complaint need not definitively or specifically relate to one of the enumerated categories of violations, need not approximate every element of the fraud, and has also held that a reference to shareholder or investor (securities) fraud is not required to establish protected activity under SOX, the complaint must still generally address or relate to one of the enumerated categories of corporate fraud set forth in Section 806 of the Act. *Sylvester*, ARB No. 07-123, at 19-21, 23 (disagreeing with level of specificity required in *Platone*, *Allen*, and *Day*, but still conducting inquiry into type of fraudulent activities alleged by complainant). Here, Complainant alleged that Respondent engaged in illegal steering of customers to mortgages, propagated "fraud" in the mislabeling of telephone transactions with customers as face-to-face transactions, and had improper direct contact with an appraiser in violation of Dodd-Frank. He also alerted Respondent of perceived management inefficiencies and expressed his displeasure with the new compensation and time tracking systems. Even if read broadly, none of the alleged violations appear to fall into the six general categories of fraud covered under SOX. 18 U.S.C. § 1514A(a)(1).

In his various concerns expressed via letter and email to Respondent, Complainant did not reference the Sarbanes Oxley Act; instead, his primary focus was on the Dodd-Frank Act, which as explained above, was not actionable at the time of his termination. In his complaint to OSHA, Complainant did not cite to specific conduct on the part of Respondent that violated SOX; rather, he, in a conclusory manner, alleged a violation of Sarbanes Oxley. The only time Complainant mentioned "fraud" was when he stated he was told to record telephone meetings as face-to-face meetings when documenting sales calls. That bare allegation, which has been denied by Respondent, without more, does not generally fall into the category of corporate fraud. The alleged "steering" concerns and concerns over improper contact with an appraiser on the Hayen loan are not covered by SOX, but rather by the Truth in Lending Act added as part of the

16

EXHIBIT 2
Page 16 of 26

Dodd-Frank Act's Mortgage Reform and Anti-Predatory Lending Act. 15 U.S.C. § 1639b(c) (steering); 15 U.S.C. § 1639e (appraisal independence requirements). The alleged poor company management by Complainant's supervisors, while potentially damaging to the value of the company, is not the type of conduct that has been construed to constitute fraud against shareholders, or any other type of fraud for that matter. Company inefficiency, in itself, is not fraudulent.

Even if we assume, for the sake of argument, that Complainant's violations fell near the bounds of the listed categories of fraud under SOX, to constitute protected activity and trigger SOX's protections, Complainant must "reasonably [believe]" that the complained-upon "fraud" constitutes a violation of Sarbanes Oxley by satisfying the two part-test reasonableness test set forth in *Van Asdale* and *Sylvester*. 18 U.S.C. 1514A(a)(1); *Van Asdale*, 577 F.3d at 1000; *Sylvester*, ARB No. 07-123, at 14-15.

To satisfy the subjective component of this test, the complainant must have an actual, good faith belief the conduct he complained of was a violation of relevant law. *Day*, 555 F.3d at 54 n. 10; *Sylvester*, ARB No. 07-123, at 14. The legislative history of SOX makes clear that its protections were "intended to include all good faith and reasonable reporting of fraud," even if that belief is mistaken, and that "there should be no presumption that reporting is otherwise, absent specific evidence." *Van Asdale*, 577 F.3d at 1001-02 (citing 148 Cong. Rec. 57420 (daily ed. July 26, 2002)). Absent evidence that employee's complaints were made in bad faith, the subjective component is satisfied; it is irrelevant whether the fraud actually occurred. *Id.* at 1002; *Day*, 555 F.3d at 54. Here, based on the totality of the evidence, Complainant has not set forth "specific facts" to demonstrate that there is a genuine dispute of material fact over whether his complaint was subjectively reasonable. 29 C.F.R. § 18.40(c); *Mara*, ARB. No. 10-051, at 5; *Frederickson*, ARB No. 07-100, at 6. When read in isolation, Complainant's assertion by email to Mr. Grenz that "[t]here is absolutely no doubt in my mind that under all these circumstances a judge/jury would indeed consider [this activity] steering" suggests that his steering complaints were made in good faith, under the reasonable belief that Respondent was engaging in illegal activity. However, that statement is contradicted by Complainant's own words just days later, when, after meeting with his supervisors, he emailed Mr. Grenz and hoped they could "forget about the meeting" and told Mr. Grenz he was "not asking [him] to do anything at all." While Complainant sporadically seemed convinced of the righteousness of his actions, and claimed that his complaints were made for the benefit of the company, he contradicted himself on several occasions. His repeated, contradictory statements establish that the complaints were not made in good faith, but as part of a larger plan to obtain compensation from Respondent.

Complainant often seemed intent on using his complaints as leverage to obtain a sizable settlement from Respondent. On April 28, 2011, according to Mr. Grenz, Complainant told him that he had a "strategy," and hoped to receive compensation in the amount of $50 million from Respondent. On May 9, 2011, he asked Ms. Reiser for $2 million plus an annual salary in an undisclosed settlement for raising his complaint. In his May 2011 ethics report, Complainant wrote that he wanted to be protected and rewarded as a whistleblower. Complainant repeatedly expressed his desire to Mr. Martin and Mr. Grenz to resolve his complaints in a "tidy" and "graceful" way, to be paid or rewarded for his work, and threatened to take "the next step" of legal action if the issues could not be resolved. After his termination, Complainant asked Mr.

EXHIBIT 2
Page 17 of 26

O'Hara if they could "find some nice, fast way to work this out," that he was relatively cheap and flexible, and that without such an agreement he would have "no choice" but to resort to the legal system for resolution. While the efforts to be compensated for his complaints do not conclusively establish that the complaints were not made in good faith under a reasonable belief of fraud, collectively, these efforts suggest that Complainant's complaints may have been a form of bribery or part of a larger scheme to obtain compensation from Respondent. This is particularly true given the unfortunate personal financial obligations Complainant faced due to his rising monthly alimony costs, and Mr. Grenz's recollection that Complainant told him he had to do whatever it takes to make a living.

There are four pieces of evidence that further suggest Complainant's complaints were a fabrication that were not rooted in a subjective, good faith belief of fraud. In May 2011, Mr. Martin wrote that Complainant told him he got the idea for his actions from the comedy South Park. Second, On June 21, 2011, while meeting with Mr. Martin and Mr. Grenz, Complainant said, "I'm the best actor there is. I can be the grieving Jew one day and the grieving Muslim the next day. I can turn that switch off and then be normal Andy like today." Third, Complainant later told Respondent's counsel that his "favorite *spoof* was filing the May 25 report which is a workof [sic] art and then another one personally [sic] that looked a little crazy." (emphasis added). Fourth, Mr. Grenz also recalled that Complainant spoke of a master strategy, in which he hoped to be compensated for his complaints and had every contingency covered, much like military strategy. Together, these comments suggest that Complainant's purported violations did not arise out of a good faith, reasonable belief on fraud, but as part of a strategic plan against Respondent that was rooted in deceit and as derived a means of supplementing his income. Complainant has not offered any other evidence to refute or counter the reasonable interpretation of the evidence offered by Respondent in support of the motion for summary decision.

Additionally, on May 31, 2011, and in early June, Complainant suggested to Ms. Reiser that he wished to withdraw or no longer had concerns about Respondent's conduct. In late April 2011, after discussing with his complaints with his supervisors, Complainant asked Mr. Grenz to "forget about the meeting" and asked him not to pursue any action on the complaints. These repeated withdrawals and changes of heart indicate that Complainant did not consistently, actually, and reasonably believe that Respondent was engaging in a violation of the law.

While summary decision is inappropriate where there is a genuine dispute of material fact, Respondent has set forth facts to demonstrate that Complainant did not subjectively believe that the conduct he reported violated Sarbanes Oxley, and Complainant has not offered "specific facts" to rebut these assertions. 29 C.F.R. § 18.40(c). Although given an extension of time to reply, in his Opposition Motions, Complainant does very little to explain how his complaints were reasonably related to the corporate fraud covered by Sarbanes Oxley. Instead, the incidents Complainant appears to be focused on in his Opposition Motions are outside the scope of this Decision. Construing the record in the light most favorable to Complainant, *Mara*, ARB. No. 10-051, at 5; *Frederickson*, ARB No. 07-100, at 6, in light of his repeated, self-contradictory statements against his own belief of fraud, he has not made a sufficient showing that the violations he raised were subjectively reasonable. *Catrett*, 477 U.S. at 322-23; 29 C.F.R. § 18.40(c). Even if his belief of illegal activity was mistaken, the record established that the complaints were not made in good faith, but as part of a plan to be compensated by Respondent.

18

EXHIBIT 2
Page 18 of 26

Further, Complainant's beliefs are also not objectively reasonable. To satisfy the objective component of this test, complainant must have an objectively reasonable belief that the conduct complained of constituted a violation of the law set forth in 18 U.S.C. § 1514A. The objective component is evaluated using a reasonable person standard, "based on the knowledge available to a person in the same factual circumstances with the same training and experience as the aggrieved employee." *Sylvester*, ARB No. 07-123, at 15. This standard closely approximates the standard applicable to Title VII retaliation claims. *Id.* The complainant need not provide a citation to the precise legal provision in question, and need not show there was an actual violation of the provision at issue; rather, he must show that belief of the purported violation was reasonable given the most general elements of the fraud. *Sylvester*, ARB No. 07-123, at 15 ("a complainant can have an objectively reasonable belief of a violation of the laws in Section 806 . . . even if the complainant fails to allege, prove, or approximate specific elements of fraud . . . [i]n other words, a complainant can engage in protected activity under Section 806 even if he or she fails to allege or prove materiality, scienter, reliance, economic loss, or loss causation.") This is a mixed question of law and fact; if there is a genuine issue of material fact, it cannot be decided as a matter of law, but if no reasonable person could have believed the facts amounted to a violation, it may be decided as a matter of law. *Welch v. Chao*, 536 F.3d 269, 277-78 n.4 (4th Cir. 2008); *Allen v. Admin. Review Bd.*, 514 F.3d 468, 477 (5th Cir. 2008); *see Sylvester*, ARB No. 07-123, at 15.

Here, after a thorough examination of the record, Complainant alleged four potentially actionable violations by Respondent: the steering violation, "fraud" in reporting phone sales calls as face-to-face contact, inefficient mismanagement of company time, and Complainant's own violation for direct communication with an appraiser. As discussed above, his other complaints, including Respondent's role in his arrest by the Eugene Police Department, and his objections to the district court proceedings against him, are either unsubstantiated, beyond the scope of this Office's authority, and/or beyond the scope of Sarbanes Oxley, which pertains to actions against an employee by its employer. Although Complainant is not a lawyer, his considerable, thirty years of experience in mortgage lending business and training are considered in this analysis. *Sylvester*, ARB No. 07-123, at 15. For all four of these complaints, no fact finder could find that a person of like training and experience could have an objective, reasonable belief that the conduct was a violation of Sarbanes Oxley.

With respect to the alleged steering, Complainant initially explained to Mr. Oman, Respondent's Senior Executive Vice President of Home and Consumer Finance, that offering mortgages with higher rates and fees than its competitors based on relationship marketing or other factors such as brand name and security may constitute illegal steering. "Steering" actually refers to the practice of coercing a prospective borrower to a specific lender or type of loan so that the originator of the loan will receive greater compensation. *See* 15 U.S.C. § 1639b(c)(1). Complainant later described the potential steering as charging .25% more interest than competitors, which forced him to either close a loan for a higher rate or "steer" the customer to competitors. However, he also argued that because Respondent's retail rates were .50% higher than its wholesale rates, he was therefore required to "steer" his customers to a higher priced retail product. Complainant's allegations of steering all describe the alleged offense in an inconsistent manner. Complainant argues that charging higher rates than its competitors based

19

EXHIBIT 2
Page 19 of 26

on brand or reputation may constitute steering, that steering to competitors may constitute steering, or that charging retail, rather than wholesale rates, may constitute steering. This inconsistency suggests that Complainant was not aware of what actually constituted steering under the law, or that he hoped to describe steering in multiple ways, hoping one of the allegations would resonate with Respondent or in court. While Complainant need not set forth in vivid detail all of the elements of steering to have an objectively reasonable complaint, the fact that he could not even define it in a consistent manner undermines the reasonableness of his allegations.

Additionally, mortgage originators are also prohibited from steering consumers to residential mortgages that the consumer lacks the reasonable ability to repay, or has predatory characteristics or effects. *Id.* § 1639b(c)(3). Complainant's allegations are devoid of facts alleging Respondent was engaged in any of this conduct or other seemingly illicit conduct. With respect to the compensation structure of sales, Ms. Reiser told Complainant that, under Respondent's new system, he would receive an hourly fee plus commission for sales, and that this the "fee plus commission" compensation structure was in compliance with federal and state regulations. Furthermore, an objectively reasonable person who has sold mortgages for thirty years would not find anything illegal or objectionable about charging a slightly higher interest rate than another lender, although it may have made it more difficult for Complainant to sell Respondent's products. That, in itself, is the nature of competitive markets in a capitalist society; lenders are different companies, they set their own rates that are generally in line with the market, but like any other sector, the rates vary from firm to firm. When Ms. Bryant tried to explain the company's view that there was no violation, Complainant did not appear interested in this explanation, and Complainant's belief of potential steering should have become less reasonable had he listened to Respondent's explanation. *See Day*, 555 F.3d at 58 ("[a] company's explanations given to the employee for the challenged practices are also relevant to the objective reasonableness of an employee's belief in shareholder fraud:" belief of fraud becomes less reasonable as complainant is given explanations by the company). Furthermore, steering is not an offense covered under Sarbanes Oxley; rather it is a component of the Dodd-Frank Mortgage Reform and Anti-Predatory Lending Act. 15 U.S.C. § 1639b(c).

Although the ARB's recent decision in *Sylvester* is instructive, unlike the complainant in *Sylvester*, Complainant here has failed to draw even a generalized connection from the alleged steering to the six enumerated categories of violations in Section 806 of SOX. 18 U.S.C. § 1514A. In *Sylvester*, the two complainants alleged fraud in the form of failing to disclose clinical data to shareholders, which they alleged was an attempt to maximize the profits of the company, thereby impacting shareholder value, and further argued could constitute mail or wire fraud, as the data was reported as accurate through U.S. mail and wire communications such as the Internet. *Sylvester*, ARB No. 07-123, slip op. at 5-6. The ALJ dismissed the complaints pursuant to FRCP 12(b)(1), but the ARB reversed, finding these complaints sufficient to plead protected activity under SOX and consequently sufficient to defeat the motion to dismiss because they "describe[d] how the allegedly fraudulent activities relate to the financial status of the company" and also "state[d] that those activities relate[d] to one or more of the six enumerated categories of violations in SOX Section 806, with a specific emphasis on mail and wire fraud." *Id.* at 23. Here, however, Complainant has failed to explain how the alleged steering constituted any type of fraud under SOX. Furthermore, unlike *Sylvester*, where the allegations were

20

EXHIBIT 2
Page 20 of 26

sufficient to survive a motion to dismiss the complaints, the procedural posture in this case is different: this case is at the summary decision stage, beyond the pleadings stage, which is a more rigorous standard, where the non-moving party may not rest upon the mere allegations of his or her pleadings, but must instead set forth "specific facts" showing there is a genuine issue of fact for hearing. 29 C.F.R. § 18.40(c); *Mara*, ARB. No. 10-051, at 5; *Frederickson*, ARB No. 07-100, at 6.  This is not to say that Complainant had to identify specific statutory provisions or regulations when complaining of Respondent's conduct., or set forth the specific elements constituting the alleged fraud. *Sylvester*, ARB No. 07-123, slip op. at 22; *see Day*, 555 F.3d at 55-56.  However, given Complainant's extensive experience in banking and his training, a similarly situated person in similar factual circumstances could not reasonably believe that Respondent's charging of higher rates than competitors would constitute illegal steering.

With respect to the alleged fraudulent reporting of sales calls, Complainant has set forth few details substantiating this claim.  Complainant's allegations that he was told to record telephone conversations as face-to-face interactions is a bare allegation devoid of factual support in the record.  There is no indication from Complainant that Respondent encouraged this incorrect documentation of sales encounters, or intended to engage in this type of "fraud."  In fact, Mr. Grenz denied in his declaration ever instructing Complainant or other HMCs to improperly record a phone call as a face-to-face meeting, and was not aware of any contrary assertions by Mr. Martin.  Complainant did not put forth any evidence or "specific facts" further explaining this allegation of "fraud" in his Opposition Motions.  Again, unlike the complainant in *Sylvester*, Complainant here has failed to draw even a generalized connection between this alleged "fraud" and the six enumerated categories of violations in Section 806 of SOX.  18 U.S.C. § 1514A; *see Sylvester*, ARB No. 07-123, slip op. at 6, 23.

On the issue of Complainant's criticisms of upper level mismanagement and their perceived inefficiencies, Complainant has set forth little or no facts to evaluate these claims.  Complainant alleged that his managers spend all day attending conferences, emailing materials, and talking amongst themselves, rather than making sales, which he alleged had a detrimental effect on the company.  Complainant did not reference this violation in his Opposition Motions, or explain why this constitutes fraudulent activity.  Furthermore, inefficient use of time is not in itself fraudulent.  No similarly situated person would find it objectively reasonable to believe that Respondent's decision of what tasks their managers perform on a daily basis is a violation of the law. *See Day*, 555 F.3d at 57 (general or conclusory accusations of accounting violations insufficient to survive summary judgment); *Welch*, 536 F.3d at 279 (conclusory, general statements insufficient to establish objective belief of protected activity).

With respect to Complainant's direct contact with an appraiser, it was Complainant's own conduct that led to improper communications with the loan appraiser on the Hayen loan.  According to Mr. Martin, Respondent notified Complainant that his conduct was in violation of Dodd-Frank, and Respondent acted accordingly by not pursuing that loan further.  Respondent took corrective action in this scenario, and was not responsible for the communication; Complainant was.  Furthermore, this conduct is not an offense covered under Sarbanes Oxley; rather it is was an amendment to the Truth in Lending Act added as part of the Dodd-Frank Act's Mortgage Reform and Anti-Predatory Lending Act.  15 U.S.C. § 1639b(e).

21

EXHIBIT 2
Page 21 of 26

On the whole, Complainant has failed to show that his belief of Respondent's violations were objectively reasonable. *Sylvester*, ARB No. 07-123, at 15. Because Complainant proffered little or no evidence sufficient to generate a genuine issue of material fact that his complaints were generally the type of fraud covered by SOX, or were objectively or subjectively reasonable, he cannot demonstrate that he engaged in protected activity. Summary decision is therefore appropriate for Respondent. *Day*, 555 F.3d at 58; *Reamer v. Ford Motor Co.*, ARB No. 09-053, slip op. at 6 (July 21, 2011) (granting summary decision where complainant could not show he engaged in protected activity).

## IV.    Order

For these reasons, Respondent's Motion for Summary Decision is **GRANTED**. The matter is dismissed.

*Richard Mclark*

RICHARD M. CLARK
Administrative Law Judge

*San Francisco, California*

**NOTICE OF APPEAL RIGHTS**: To appeal, you must file a Petition for Review ("Petition") with the Administrative Review Board ("Board") within ten (10) business days of the date of the administrative law judge's decision. *See* 29 C.F.R. § 1980.110(a). The Board's address is: Administrative Review Board, U.S. Department of Labor, Suite S-5220, 200 Constitution Avenue, NW, Washington, DC 20210. In addition to filing your Petition for Review with the Board at the foregoing address, an electronic copy of the Petition may be filed by e-mail with the Board, to the attention of the Clerk of the Board, at the following e-mail address: ARB-Correspondence@dol.gov.

Your Petition is considered filed on the date of its postmark, facsimile transmittal, or e-mail communication; but if you file it in person, by hand-delivery or other means, it is filed when the Board receives it. *See* 29 C.F.R. § 1980.110(c). Your Petition must specifically identify the findings, conclusions or orders to which you object. Generally, you waive any objections you do not raise specifically. *See* 29 C.F.R. § 1980.110(a).

At the time you file the Petition with the Board, you must serve it on all parties as well as the Chief Administrative Law Judge, U.S. Department of Labor, Office of Administrative Law Judges, 800 K Street, NW, Suite 400-North, Washington, DC 20001-8002. The Petition must also be served on the Assistant Secretary, Occupational Safety and Health Administration and the Associate Solicitor, Division of Fair Labor Standards, U.S. Department of Labor, Washington, DC 20210.

EXHIBIT 2
Page 22 of 26

You must file an original and four copies of the petition for review with the Board, together with one copy of this decision. In addition, within 30 calendar days of filing the petition for review you must file with the Board: (1) an original and four copies of a supporting legal brief of points and authorities, not to exceed thirty double-spaced typed pages, and (2) an appendix (one copy only) consisting of relevant excerpts of the record of the proceedings from which the appeal is taken, upon which you rely in support of your petition for review.

Any response in opposition to a petition for review must be filed with the Board within 30 calendar days from the date of filing of the petitioning party's supporting legal brief of points and authorities. The response in opposition to the petition for review must include: (1) an original and four copies of the responding party's legal brief of points and authorities in opposition to the petition, not to exceed thirty double-spaced typed pages, and (2) an appendix (one copy only) consisting of relevant excerpts of the record of the proceedings from which appeal has been taken, upon which the responding party relies, unless the responding party expressly stipulates in writing to the adequacy of the appendix submitted by the petitioning party.

Upon receipt of a legal brief filed in opposition to a petition for review, the petitioning party may file a reply brief (original and four copies), not to exceed ten double-spaced typed pages, within such time period as may be ordered by the Board.

If no Petition is timely filed, the administrative law judge's decision becomes the final order of the Secretary of Labor pursuant to 29 C.F.R. § 1980.109(c). Even if you do file a Petition, the administrative law judge's decision becomes the final order of the Secretary of Labor unless the Board issues an order within thirty (30) days after the Petition is filed notifying the parties that it has accepted the case for review. *See* 29 C.F.R. §§ 1980.109(c) and 1980.110(a) and (b).

EXHIBIT 2
Page 23 of 26

EXHIBIT 2
Page 24 of 26

### SERVICE SHEET

Case Name:  CLARK_ANDREW_v_WELLS_FARGO_HOME_MOR_

Case Number: **2012SOX00003**

Document Title: **Decision and Order Granting Respondent's Motion for Summary Decision**

I hereby certify that a copy of the above-referenced document was sent to the following this 9th day of August, 2012:


*Vivian Chan*
**VIVIAN CHAN**
LEGAL ASSISTANT

Andrew Clark
3270 Stoney Ridge Road
EUGENE OR 97405
        *{Hard Copy - Regular Mail}*

Wells Fargo Home Mortgage
100 East Broadway
EUGENE OR 97401
        *{Hard Copy - Regular Mail}*

Leah Lively, Esq.
Ogletree Deakins
Attorney for Wells Fargo Home Mortgage
222 SW Columbia Street, Suite 1500
PORTLAND OR 97201
        *{Hard Copy - Regular Mail}*

Dean Ikeda
Regional Administrator
U.S. Department of Labor / OSHA
300 Fifth Ave., Suite 1280
SEATTLE WA 98104
        *{Hard Copy - Regular Mail}*

Associate Regional Solicitor
U.S. Department of Labor
Office of the Solicitor
300 Fifth Ave., Suite 1120
SEATTLE WA 98104
        *{Hard Copy - Regular Mail}*

Associate Solicitor
Division of Fair Labor Standards
U. S. Department of Labor
Room N-2716, FPB
200 Constitution Ave., N.W.
WASHINGTON DC 20210
        *{Hard Copy - Regular Mail}*

Deputy Director
Division of Enforcement
U.S. Securities and Exchange Commission
100 F Street, N.E.
WASHINGTON DC 20549
        *{Hard Copy - Regular Mail}*

EXHIBIT 2
Page 25 of 26

**SERVICE SHEET** continued (2012SOX00003 Case Decision)     Page: 2

Director
Office of the Whistleblower Protection Program
U S Department of Labor, OSHA
Room N 3112 FPB
200 CONSTITUTION AVE NW
WASHINGTON DC 20210
        *{Hard Copy - Regular Mail}*

EXHIBIT 2
Page 26 of 26

FILED 05 OCT '12 14:22 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

WELLS FARGO BANK, N.A.;          )
                                 )
                  Plaintiff,     )     Case No. 6:11-cv-06248-HO
                                 )
            v.                   )     ORDER
                                 )
ANDREW G. CLARK;                 )
                                 )
                  Defendant.     )
_____)

### **Introduction**

Currently before the court are: defendant's (Clark): Motion for Separate Trial [#102], Motion to Refer [#103]; Motion to Enter Audio Recording [#116]; Motion to Enter Correspondence [#117]; Motions to Compel [#118; #119; #130]; Motion to Unseal [#124]; and Motion to Suspend [#131] and plaintiff's (Wells Fargo) Motion for Summary Judgment and for Entry of Permanent Injunction [#105]; and Second Motion for Contempt [#113].

### **Background Summary**

Plaintiff, Wells Fargo, employed defendant Clark as a Home

ORDER - p.1

EXHIBIT 3
Page 1 of 18

Mortgage Consultant from September 1, 2009, until he was terminated
for "repeated unprofessional conduct" on June 28, 2011. [#1-pp.4-
5]. Defendant subsequently launched a website which publicly
disclosed some of plaintiff's trade secret and confidential
information.

Plaintiff filed a Motion for a Temporary Restraining Order
which the court granted on August 10, 2011. [#10]. After oral
argument on August 22, 2011, the court granted plaintiff's Motion
for Preliminary Injunction which, *inter alia,* enjoined defendant
from further disclosure of plaintiff's trade secret and confidential
information and ordered him to return any and all documents
containing plaintiff's trade secrets and confidential information.
[#23].

On November 3, 2011, plaintiff filed a Motion for Contempt
[#32], which was denied in part and granted in part - both at oral
argument and in a written order, the court warned defendant that he
was prohibited from re-posting any confidential material and must
limit his communications to plaintiff's law firm in Portland,
keeping those to a strictly professional tone. [#72].

## Discussion

### 1. Plaintiff's Motion for Summary Judgment and Permanent Injunction [#105]:

Plaintiff moves for summary judgment on its First[1], Second[2] and

---

[1]    Plaintiff's First cause of action seeks injunctive
(continued...)

ORDER - p.2

EXHIBIT 3
Page 2 of 18

Third[3] causes of action and requests that the court issue an order making permanent the existing preliminary injunction. [#105].

### a) Legal Standard for Summary Judgment

Summary judgment may be granted if the pleadings show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed.R.Civ.P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All justifiable inferences must be viewed in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

However, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but must produce specific facts, as provided by Rule 56(e), showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding

----

[1] (...continued)
relief enjoining defendant from using or disclosing the confidential information he misappropriated, requiring that he identify the trade secrets and confidential information in his possession and those to whom he had disclosed that material; ordering him to return all originals and copies of the material and preserve all electronic files that contained any confidential material or trade secrets. [#1-pp.9-11].

[2]     Plaintiff's second cause of action seeks declaratory judgment against defendant on plaintiff's claim of misappropriation of trade secrets and an award of compensatory damages and attorney fees. [#1-pp.11-12].

[3]     Plaintiff's third cause of action seeks declaratory judgment against defendant for breach of contract and an order enforcing specific performance of the contract. [#1-p.13].

ORDER - p.3

EXHIBIT 3
Page 3 of 18

summary judgment. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir.2002). Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

While *pro se* litigants are not held to the same standard as attorneys, a *pro se* litigant is not entirely immune from the civil rules of procedure. *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir.1987). Although the court must construe the pleadings liberally, *pro se* litigants must follow the same rules of procedure that govern other litigants. *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir.1995) ("Although we construe pleadings liberally in their favor, *pro se* litigants are bound by the rules of procedure."). Because this is a motion for summary judgment which if granted will dismiss the action, the court has given defendant notice as required under *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir 1987) *overruled on other grounds* 154 F.3d 952 (9th Cir. 1998)(*en banc*).

(b)  Undisputed Facts:

The following undisputed facts are gleaned from the pleadings and previous testimony:

(1)  Defendant worked for plaintiff from September 1, 2009 until plaintiff terminated his employment on June 28, 2011.

(2)  Upon beginning his employment with plaintiff, defendant executed an employment agreement with plaintiff which contained a

ORDER - p.4

EXHIBIT 3
Page 4 of 18

section entitled "Confidential and Proprietary Information[4]."

(3) At that same time, defendant also executed an agreement with plaintiff regarding trade secrets and confidential information in which he agreed to use the confidential information "solely and exclusively for the purpose of conducting business on behalf of the Company.". [#106-pp.3-4; #4-Ex.2].

(4) Defendant was formally disciplined by plaintiff for misuse of Wells Fargo's email systems and unprofessional behavior in the workplace beginning on June 2, 2011 and continuing through June up to and including his termination on June 28, 2011. [#106-pp.4-5; #4].

---

[4]    The clause stated:

(a) Employee [Clark] agrees that all file materials and information of Employer [Wells Fargo], including, but not limited to loans, accounts, contracts, data, records, appraisals and comparable appraisals, financial information, software, customer leads and lists developed and/or delivered to Employee by Employer, product information, strategic business plans, business methodology and processes, and cost and pricing policies are confidential and proprietary information (hereinafter "INFORMATION") and the sole property of Employer.   All INFORMATION shall remain the property of Employer, even if Employee terminates his/her employment, whether voluntarily or involuntarily.   Upon notice of termination, Employee's physical taking or removal of the actual file materials and/or INFORMATION, including but not limited to loan files, from Employer's premises shall be a material breach of this Agreement.

(b) Employee further agrees to: 1) maintain the INFORMATION in confidence; 2) use an appropriate degree of care to maintain the INFORMATION as secret; 3) use the INFORMATION only in the course of his/her employment with Employer; and 4) deliver to Employer all notes, copies, packages, computer discs/drives/storage and all other materials containing any portion of the INFORMATION at Employer's request.
[#106-p.3; #4-Ex1-¶II].

ORDER - p.5

EXHIBIT 3
Page 5 of 18

(5)   Immediately following his termination, defendant filed a whistle-blowing complaint with the Department of Labor which was dismissed on August 9, 2012.  [#107-Ex.3].

(6)   On or about August 2, 2011, plaintiff became aware of defendant's website[5] entitled Wells Fargo Homepage Crimepage which contained links to documents containing private customer information including Wells Fargo customer names, addresses, loan numbers and other confidential information.  [#3-Ex.4].

(7)   The court issued a temporary restraining order on August 10, 2011. [#10]

(8) Defendant temporarily removed the confidential information but did not comply with the rest of the court's order requiring him to return plaintiff's documents and disclose the identity of the persons and websites to whom he communicated the confidential information. [#106-pp.7-8].

(9) As a result, plaintiff sought a preliminary injunction which, after oral argument by both parties, the court granted on August 23, 2011.  [#23].

(10)  By September 9, 2011, defendant had removed all of the confidential information from his website.  [#35-¶6].

(11) On October 11, 2011, plaintiff discovered that defendant had re-posted all of the information subject to the preliminary

_____

[5]      At oral argument defendant admitted that he created and maintained this website.

ORDER - p.6

EXHIBIT 3
Page 6 of 18

injunction and specified in plaintiff's September 13, 2011, letter
to defendant. [#107-Ex.4 Lively Decl III].

(12)   On November 3, 2011, plaintiff filed a Motion for
Contempt and Order requiring defendant to comply with standards of
professionalism in all communications.   [#32].

(13) In light of defendant's *pro se* status the court denied
plaintiff's Motion for Contempt however, defendant was sternly
admonished by the court both orally and in the court's written
order.   [#70; #72].

(14) Defendant has recently resumed sending inappropriate and
offensive emails, letters and faxes to plaintiff's counsel, to his
former manager and to other clients and offices of plaintiff's
counsel.

   (c)   Permanent Injunction:

   To be entitled to a permanent injunction, the party seeking the
injunction must actually succeed on the merits. *Amoco Prod. Co. v.
Village of Gambell,* 480 U.S. 531, 546 n.12 (1987).   The party must
also show that there is no adequate remedy at law.   *Continental
Airlines v. Intra Brokers, Inc.*, 24 F.3d 1099, 1102 (9th Cir.1994).
If there is the possibility of future wrongful conduct, a legal
remedy is inadequate.   *Orantes-Hernandez v. Thornburgh*, 919 F.2d
549, 564 (9th Cir.1990).

   In seeking a permanent injunction, Wells Fargo must
demonstrate: (1) that it has suffered an irreparable injury; (2)

ORDER - p.7

EXHIBIT 3
Page 7 of 18

that remedies available at law, such as monetary damages, are
inadequate to compensate for that injury; (3) that, considering the
balance of hardships between the plaintiff and defendant, a remedy
in equity is warranted; and (4) that the public interest would be
served by a permanent injunction. *eBay Inc. v. MercExchange, LLC.*,
547 U.S. 388, 391 (2006). The decision to grant or deny permanent
injunctive relief is within the equitable discretion of the district
court. *Id.*

Protected trade secrets are defined by state law as:

"information, including a drawing, cost data, customer list,
formula, pattern, compilation, program, device, method,
technique or process that:
    (a) Derives independent economic value, actual or
potential, from not being generally known to the public or to
other persons who can obtain economic value from its disclosure
or use; and
    (b) Is the subject of efforts that are reasonable under
the circumstances to maintain its secrecy.

ORS 646.461(4).

I find that the confidential information at issue in this
matter are protected trade secrets. *IKON Office Solutions v.
American Office,* 178 F.Supp.2d 1154, 1167 (D.Or.2001), aff'd, 61
Fed.Appx. 378 (9th Cir.2003)(list of customers can constitute a
trade secret); see also 15 U.S.C. §§6801-09 (Gramm Leach Bliley
Act). There is no genuine issue of material fact regarding
defendant's misuse of plaintiff's trade secrets or his breach of his
employment contracts – his employment agreement and his
confidentiality agreement.

ORDER – page 8

EXHIBIT 3
Page 8 of 18

A financial institution is legally prohibited from disclosing
nonpublic personal information to a non-affiliated third party.   15
U.S.C. §6802.   Such disclosure may subject the financial institution
to enforcement actions under subtitle B of the Consumer Financial
Protection Act of 2010, by the Bureau of Consumer Financial
Protection, the Federal functional regulators, the State insurance
authorities, and the Federal Trade Commission.   15 U.S.C. §6805.
Defendant's publication of confidential customer information
therefore not only exposed plaintiff to adverse enforcement
action(s) but also to loss of reputation and customer good will.

Defendant has clearly demonstrated an unwillingness to cease
his website publications even after this suit was filed and a
preliminary injunction was issued.   Absent permanent injunctive
relief, plaintiff would be forced to repeatedly file suit every time
defendant republishes this confidential information.   *Continental
Airlines, Inc. v. Intra Brokers, Inc.*, 24 F.3d 1099, 1104-05 (9th
Cir.1994)("the multiplicity of suits necessary to be engendered if
redress was sought at law, all establish the inadequacy of a legal
remedy and the necessity for the intervention of equity").

Furthermore, the balance of hardships weighs strongly in
plaintiff's favor.   Defendant has no legitimate interest in
publishing the confidential information.   I find that without
permanent injunctive relief, plaintiff will suffer irreparable harm
to both it's reputation and it's consumers' privacy as a result of

ORDER - page 9

EXHIBIT 3
Page 9 of 18

defendant's continued publication of confidential customer information. Thus, the public interest is well served by the issuance of a permanent injunction preventing such misappropriation and publication. *T-Mobile, USA, Inc., v. Terry,* 2012 WL 1409287, *10 (2012).

For the reasons stated above, the following permanent injunction is therefore entered:

1. Defendant Clark, and all others in active concert or participation with him and who received actual notice of this Preliminary Injunction, are permanently enjoined from directly or indirectly using or disclosing to any third parties, plaintiff Wells Fargo's trade secrets and confidential information, specifically including, but not limited to, any information concerning current or former customers of Wells Fargo or of any Wells Fargo subsidiaries. This specifically includes removing Wells Fargo's trade secrets and confidential information, such as any information concerning current or former customers of Wells Fargo or any Wells Fargo subsidiaries, from any public forum, including any website, on which defendant has posted or disclosed this confidential information.

2. Within a reasonable time (not to exceed ten business days), of receiving actual notice of this Injunction, defendant shall identify in writing to plaintiff all of it's secrets and confidential information remaining in his possession, custody, or control, specifically including, but not limited to, any information

ORDER - page 10

EXHIBIT 3
Page 10 of 18

concerning current or former customers of Wells Fargo or of any Wells Fargo subsidiaries.

3.    Within a reasonable time (not to exceed ten business days), of receiving actual notice of this Injunction, defendant shall give plaintiff written notice of the identity of any person, entity, or destination, including but not limited to internet websites, to which defendant transmitted, posted, or communicated Wells Fargo's trade secrets and confidential information, specifically including, but not limited to, any information concerning current or former customers of Wells Fargo or of any Wells Fargo subsidiaries.

4.    Within a reasonable time (not to exceed ten business days), of receiving actual notice of this Injunction, defendant shall immediately return by certified mail to plaintiff's counsel, Ogletree, Deakins, Nash, Smoak & Stewart, P.C.,all originals and copies of paper documents containing or constituting Wells Fargo's trade secrets and confidential information, specifically including, but not limited to, any information concerning current or former customers of Wells Fargo or of any Wells Fargo subsidiaries.

5.    Defendant shall preserve all electronic files containing or constituting Wells Fargo's trade secrets and confidential information, specifically including, but not limited to, any information concerning current or former customers of Wells Fargo or of any Wells Fargo subsidiaries, that are stored on any electronic storage device in his possession, custody, or control.

ORDER - page 11

EXHIBIT 3
Page 11 of 18

(d)  Plaintiff' Second Motion for Contempt Order [#113]:

Plaintiff moves the court for an order finding defendant in contempt of the court's previous order [#72], and requiring defendant to comply with standards of professionalism in all his communications with Wells Fargo and its counsel. [#113].  In support of its motion, plaintiff asserts that despite repeated warnings, defendant is willfully ignoring the court's direct order to limit communication to plaintiff's Portland firm and to professional content.

Specifically, plaintiff alleges that on January 31, 2012, two weeks after the court's order was issued, defendant resumed sending voluminous, numerous[6] faxes that have little to no bearing upon this proceeding or any other legal issue between plaintiff and defendant, to Ogletree Deakins offices other than that of plaintiff's counsel in Portland, Oregon.  [#115- p.2,¶¶3-4].  Subject lines of defendant's  communications include, "What the Hell is wrong with you people?" and "Nuclear Attacks and Deathcamps[sic]," and the content includes language such as, "I hope what you did to me happens to you or your kids. I really do so you can FEEL it. But…I will do all I can to ensure you feel it. You will suffer as you made me. You are all sick animals and you must all be dealt what you dealt to me." [#115- Ex.2].

---

6      From February 1, 2012, to August 20, 2012, Clark sent more than 200 combined emails and faxes to Ogletree Deakins. [#115- ¶4].

ORDER - page 12

EXHIBIT 3
Page 12 of 18

Further, on February 3, 2012, Ms. Lively reviewed defendant's website of www.wfopsreport.com and determined that customer information remained linked to the website. [#115-p.2,¶ 6]. That same day, Ms. Lively sent defendant a letter directing him to immediately remove the customer information and also instructing him to cease sending correspondence to other than the Portland, Oregon offices of counsel in this case. [#115-Ex.3]. On or about February 8, 2012, Ms. Lively determined that the customer information had been removed from defendant's website. [#115-p.2,¶ 8].

However, on March 2, 2012, defendant sent Ms. Lively an email stating, "Due to the gruesome death scene involving a cal poly attorney and the fixation of emotional control as a substitute for Evidence, I was compelled to Create just yesterday the above Video production featuring the Beatles as theme music[,]" along with a link to a Youtube.com video. [#115-Ex.4]. On several occasions prior defendant had referred to Ms. Lively's graduation from Cal Poly (as listed on her firm biography). [#115-pp.2-3,¶ 10 and Ex. 5]. Ms. Lively, in viewing the link, saw a scene depicting a woman impaled in the chest with the caption "Cal Poly law graduate." [#115-p.2,¶ 9]. Defendant's current website www.osunriseusa.com, refers to "Bitch of the Week, from Cal Poly Law School and Brothel: Ms. Leah Livelinsky[,]" as well as other offensive statements. [#115-Ex. 6].

On March 17, 2012, defendant sent an email to at least two

ORDER - page 13

EXHIBIT 3
Page 13 of 18

attorneys at Ms. Lively's former law firm as well as to attorneys at various other firms in Portland. [#115-Exs. 7, 8]. On April 13, 2012, defendant sent a fax to Alan Martin (his former manager at Wells Fargo), and to Wells Fargo Employee Relations Manager, Tim O'Hara, telling Mr. O'Hara to "get on it," discussing court and filings, and stating "seems that is just one more way that courts 'screw' the citizen." [#115-Ex. 9].

That same day, Ms. Lively sent defendant another letter reminding him to only communicate with counsel of record and in a professional manner. [#115-Ex. 10]. However, on June 20, 2012, defendant refused to limit his communications saying "I do not owe you people any particular style of communications"; threatened to start certified mailings to plaintiff's external board and faxed Wells Fargo Executive Vice President, Patricia Callahan, complaining about his termination. [#115 Exs. 11;12]. On June 25, 2012, plaintiff sent defendant a letter delineating his specific inappropriate communications, reminding him of the court's order, and informing him that if he did not cease violating the Order, Wells Fargo would move for an order of contempt. [#115- Ex. 30].

On or around July 19, 2012, defendant sent his former manager Alan Martin, a package that contained highly offensive and inappropriate statements concerning Mr. Martin's alleged personal life and making offensive criminal accusations against Mr. Martin. [#108-Ex.1].

ORDER - page 14

EXHIBIT 3
Page 14 of 18

On July 31, 2012, Clark sent three emails directly to Ms. Lively's administrative assistant (not copying Ms. Lively or any other lawyer), soliciting her to "[c]onsider switching your affiliations. View my material posted, all first hand…Stop putting out for the Warmongers and Criminals who Profit from War of any kind…including Ogletree Deakins[,]" and "If you want I can send you Professional looking Trifold marketing brochures to distribute via our interoffice mail. I am working on postcards mailed to all Ogletree Deakins staff nationwide announcing the Plans." [#115-Ex.13]. Defendant followed this with a vaguely threatening email to Ms. Lively stating,"You freaks are going down. There will be nothing left. You will be living in tents eating bugs for what you did. Ms. Lively: get ready for buying clothing at the Salvation Army Counters after the 5 year stretch. . . . Such is the War of the Apocalypse. I told you: RAND Parents. Strat Ops….blah blah, all true." [#115-Ex.14].

On August 8, 2012, defendant sent Ms. Lively another threatening and vulgar email. [#115-Ex. 15]. The same day, defendant sent Ms. Lively another more offensive email. [#115- Ex. 16]. On August 22, 2012, defendant sent Ms. Lively an email entitled "I made Wells Fargo contact" in which he stated "I made Executive VP contact out of San Francisco . . .". [#115-Ex. 17].

In the last three weeks of August alone, defendant sent faxes to at least three different external clients of Ogletree Deakins,

ORDER - page 15

EXHIBIT 3
Page 15 of 18

(none of which have any connection to Wells Fargo or this case), as well as at least ten faxes to at least six different offices of Ogletree Deakins.  [#115-Ex. 18].  After plaintiff filed its Motion for Summary Judgment on August 22, 2012, defendant responded by sending Ms. Lively eight separate, unprofessional e-mails as well as multiple faxes to Ogletree Deakins offices in Atlanta, Georgia, Columbia, South Carolina, and Greenville, South Carolina.

Contempt power inherent in Article III courts, gives district courts the power to hold in civil contempt, any person who willfully disobeys a specific and definite order requiring him to do or to refrain from doing an act.  *Michaelson v. U.S. ex rel. Chicago, St. P., M., & O.R. Co.,* 266 U.S. 42, 65-66 (1924); see also *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146 (9th Cir. 1983).

Civil contempt, a remedial punishment, is for the benefit of the complainant, whereas criminal contempt is a punitive measure to vindicate the court's authority.  *Gompers v. Bucks* 221 U.S. 418, 441 (1911).  Civil contempt is a refusal to do an act the court has ordered for the benefit of a party; the sentence is remedial.  *In re. Sepquoia Auto Brokers Ltd., Inc.,* 827 F.2d 1281, 1283 (9th Cir. 1987).  Criminal contempt is a completed act of disobedience; the sentence is punitive to vindicate the authority of the court.  *Id.*

Under Oregon law, "[t]he power of a court to impose a remedial or punitive sanction for contempt of court is an inherent judicial power."  ORS 33.025(1).  A "contempt of court" includes willful

ORDER - page 16

EXHIBIT 3
Page 16 of 18

disobedience of a court's orders.  ORS 33.015(2)(b).  The remedial

sanctions authorized include *inter alia,* confinement of not more

than six months or payment of all or part of any attorney fees

incurred by a party as the result of a contempt of court.  ORS

33.105(b)and (e).  Compensatory sanctions may be paid to the party

moving for contempt to compensate for injuries resulting from the

contempt.  *General Signal v. Donallco,* 787 F.2d 1376, 1380 (9th

Cir.1986).  The amount of compensatory sanctions is determined by

the actual costs incurred by the moving party*. Id.*

        The court has both orally and in a written order, instructed

defendant of the seriousness of his actions and sternly reminded him

that subject to the injunction ordered by this court, he is not to

re-post any confidential material, is to limit his communications to

plaintiff's counsel's firm in Portland and to keep those to a

strictly professional tone.  [see e.g., #72].  Plaintiff's first

Motion for Contempt [#32] was denied however, defendant was reminded

that the court would not treat any further violation of its orders

lightly.

        Defendant has repeatedly, willfully ignored the court's

admonishments regarding professional communications as well as the

court's orders prohibiting his publication of plaintiff's trade

secrets.  Similarly, defendant has continued to communicate with

plaintiff's counsel in a harassing, vulgar and threatening manner,

willfully ignoring reasonable requests to conform his communications

ORDER - page 17

EXHIBIT 3
Page 17 of 18

to a professional standard.

Plaintiff's Motion for order of Contempt is therefore granted.
Defendant is ordered to pay reasonable attorney fees and costs that
plaintiff has incurred from it's second motion for contempt.
Plaintiff will prepare a detailed bill of costs and submit it to the
court to enable determination of the amount of defendant's
compensatory sanction.

### Conclusion

As stated above, plaintiff's Motion for Summary Judgment and
for Entry of Permanent Injunction [#105] is GRANTED to the extent
detailed above.  Plaintiff's Second Motion for Order of Contempt
[#113] is GRANTED.  All other pending motions are DENIED as moot.

IT IS SO ORDERED

DATED this _____ day of October, 2012.

UNITED STATES DISTRICT JUDGE

ORDER - page 18

EXHIBIT 3
Page 18 of 18

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A.; | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 6:11-cv-06248-HO |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| ANDREW G. CLARK; | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### **Introduction**

This court granted plaintiff's Second Motion for Contempt
[#113] on October 5, 2012. [#135].  Plaintiff now moves for attorney
fees. [#137].

### **Background Summary**

Plaintiff, Wells Fargo, employed defendant Clark as a Home
Mortgage Consultant from September 1, 2009, until he was terminated
for "repeated unprofessional conduct" on June 28, 2011.  [#1-pp.4-
5].  Defendant subsequently launched a website which publicly
disclosed some of plaintiff's trade secret and confidential

ORDER - p.1

EXHIBIT 4
Page 1 of 3

information.

This court issued a permanent injunction enjoining defendant from disclosure of plaintiff's trade secret and confidential information and ordering him to return any and all documents containing plaintiff's trade secrets and confidential information, on October 5, 2012.  [#135].  In the same order the court granted plaintiff's second motion for contempt and ordered defendant to pay reasonable attorney fees and costs incurred from plaintiff's second motion for contempt.

Plaintiff's Motion for Attorney Fees is currently before the court.  [#137].

### Discussion

Contempt power inherent in Article III courts, gives district courts the power to hold in civil contempt, any person who willfully disobeys a specific and definite order requiring him to do or to refrain from doing an act.  *Michaelson v. U.S. ex rel. Chicago, St. P., M., & O.R. Co.,* 266 U.S. 42, 65-66 (1924);see also *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146 (9th Cir. 1983).  Civil contempt is a refusal to do an act the court has ordered for the benefit of a party; the sentence is remedial.  *In re. Sepquoia Auto Brokers Ltd., Inc.,* 827 F.2d 1281, 1283 (9th Cir. 1987).

Under Oregon law, "[t]he power of a court to impose a remedial or punitive sanction for contempt of court is an inherent judicial power."  ORS 33.025(1).  A "contempt of court" includes willful

ORDER - p.2

EXHIBIT 4
Page 2 of 3

disobedience of a court's orders.   ORS 33.015(2)(b).   Compensatory

sanctions may be paid to the party moving for contempt to compensate

for injuries resulting from the contempt.   *General Signal v.*

*Donallco,* 787 F.2d 1376, 1380 (9th Cir.1986).   The amount of

compensatory sanctions is determined by the actual costs incurred by

the moving party.   *Id.*

The court granted plaintiff's second motion for contempt when,

despite repeated warnings and instruction, defendant continued to

communicate with plaintiff's counsel in a harassing, vulgar and

threatening manner, and willfully ignored reasonable requests to

conform his communications to a professional standard.   Together

with it's motion, plaintiff has submitted a detailed cost bill for

the court's consideration.

After thorough examination of the time sheets and bill of

costs, [#139-1], I find plaintiff's request for fees are reasonable.

<u>CONCLUSION</u>

Plaintiff's motion for attorney fees and costs [#137] is

GRANTED.   Plaintiff is hereby awarded attorney fees in the amount of

$2,088.45.   This action is dismissed.

IT IS SO ORDERED

DATED this   2   day of  November  ~~October,~~  2012.

_____

UNITED STATES DISTRICT JUDGE

ORDER - p.3

EXHIBIT 4
Page 3 of 3

FILED 03 SEP '13 09:02 USDC-ORE

**United States District Court District of Oregon – Eugene Oregon Division**

**Andrew G. Clark, Plaintiff Pro Se**

3270 Stoney Ridge Rd Eugene, OR 97405
541 513 3915   541 636 - 5662

Case : 6:13- 01546- AA

    **v.**

**Wells Fargo Bank, N.A    (WFB)**

1300 S.W. 5th Ave. 20th Floor Portland OR 97201

Martin Ogno Security Worker

Donald Pearson, Bank President

**Complaints:**

Violations of 18 U.S.C. § 1961, et seq.

**Ogletree Deakins Nash Smoak and Stewart**

Attorneys Leah Lively, David P.R. Symes, Elizabeth

Falcone, Amanda Bollinger and others.

222 SW Columbia Street  #1500 Portland OR 97201

Managing Partner Kim Ebert

111 Monument Circle # 4600
Indianapolis, IN 46204

Christopher Mixon, General Counsel
401 Commerce Street # 1200 Nashville, TN 37219

Violations of 18 U.S.C. § 241 & 242

Violations of 42 U.S.C § 1983

Defamation, Libel, False Light Invasion of
   Privacy

Gross Negligence

**Wells Fargo Home Mortgage  (WFHM)**

P.O. Box 10335  Des Moines, IA 50306-0335

Franklin Codel, Executive Vice President

William Hunnicutt Conflict Resolution Attorney

Michael Heid, President of WFHM

Violations of Workplace Protection Laws

Conspiracy

**Wells Fargo and Company (WFC)**

420 Montgomery Street   San Francisco, CA  94104

Responsible Corporate Officers:

James Strother Sr. Executive Vice President

 General Counsel-Legal Group

John Stumpf,  Chief Executive Officer

**Demand for Jury Trial**

**Securitas Corp.** c/o Responsible Corp. Officer

2 Campus Dr. Parsippany, New Jersey 07054-4400

Denis R. Brown Chief Executive Officer

ORX600008528

EXHIBIT 5
Page 1 of 41

## **Table of Contents**

**Page**

3     Jurisdictional Allegations

3     General Allegations

4     Factual Basis: Claims for Relief

23    COUNT I: Racketeering Violations under 18 U.S.C. § 1961, et seq.
       Kidnapping as defined by 18 U.S.C. § 1201

24    COUNT 2: Racketeering Violations under 18 U.S.C. § 1961, et seq.
       Obstruction of Justice as defined by 18 U.S.C. § 1512 and 1513

27    COUNTS 3 through 9: Racketeering Violations under 18 U.S.C. § 1961, et seq.
       "Sarbanes-Oxley" Concealment and Obstruction Provisions: 18 U.S.C. § 1519

28    COUNT 10: Civil Rights / Constitutional Violations against 42 U.S.C. § 1983

33    COUNT 11: Defamation, Libel and/or False Light Invasion of Privacy

35    COUNT 12: Substantive Due Process Violations of 42. U.S.C. § 1983

37    COUNT 13: Defendant Workplace Violations Affecting Plaintiff

38    COUNT 14: Gross Negligence of Defendants

39    COUNT 15: Conspiracy to Commit All Charges

41    Jury Trial

41    Prayer for Relief

**Jurisdictional Allegations**

1. Plaintiff brings this action pursuant to 42 U.S.C. § 1983, 18 U.S.C. § 1964, the United States Constitution, the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and other pendent statutory and state common laws.

2. This Court has jurisdiction of Plaintiffs' federal law claims pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a). Plaintiff requests random assignment to a Judge who did not participate in District Court 6.11.cv.6248.HO.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b-2 and/or c-2). It is the Judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. The entities named in the complaint with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question. All entities have Oregon offices/agents.

**General Allegations**

4. Plaintiff is a Pro Se litigant. He was employed as a mortgage originator at Wells Fargo Home Mortgage (WFHM) at 100 E. Broadway Eugene, OR 97405 from c. September 2009 – June 2011. That office was not in a Wells Fargo Bank (WFB). Wells Fargo Bank became involved as alleged via use of their bank security staff. Wells Fargo and Company (WFC) is responsible for the activity of the subsidiary operations.

5. Ogletree, Deakins, Nash, Smoak, and Stewart (Ogletree Deakins) is a national employer law firm. They were contracted by WFHM, WFB, and/or WFC. Their Portland Oregon office staff Leah Lively, David P.R. Symes, Amanda Bollinger, and Elizabeth Falcon are the attorney reasonably known to Plaintiff to have perpetrated the events or omissions giving rise to the

9-3-13 Andrew G. Clark  Pro Se v. Wells Fargo et al, Ogletree Deakins et al, and Securitas Corp. et al      - 3 -

EXHIBIT 5
Page 3 of 41

claims. Kim Ebert is a managing partner in the Ogletree Deakins Indianapolis office. Christopher Mixon is General Counsel for Ogletree Deakins and operates out of their Nashville, office. They are RCOs who were aware of the activity of their Portland Office and instead of investigating and remediating they aided, abetted, and conspired the majority of the illegal actions.

6. Securitas Corporation is a nationwide contractor of security services. Their agents named perpetrated a falsified police call-in upon encouragement or request of Wells Fargo (et al). They can be heard on legally obtained police dispatch audio falsely reporting bank. Their actions and omissions were limited as compared to the other Defendants. They played a key role in the overall events. It is necessary to hold the RCOs of Securitas Corp. partly responsible in order to punish Securitas and to prevent them from using similar methods against other any citizen.

6-a. The individuals named at each entity are most responsible or culpable based upon tangible, objective evidence and/or application of the *Park Doctrine* defining "responsible corporate officers" (RCO).

### Factual Basis for Complaint

7. Plaintiff was a mortgage originator with 30 years in the industry, 13 of them with Fannie Mae in Washington DC and the rest at several different local mortgage providers. The last two years were at WFHM in Eugene, OR. It is a lowest-level position with a $12/hour base. Plaintiff earned $200,000 mostly in commissions in his last full year of employment at WFHM, consistent with his earnings over the prior 10 years. Plaintiff also holds Certified Public Accounting credential but does not practice. Plaintiff was a well-regarded professional in his relatively small area. His long-term earning record indicates community satisfaction.

8. Dodd-Frank Act and related internal WFHM training demanded the low-level employee report suspected fraud of any form internally and then externally if it is not being addressed by

9-3-13 Andrew G. Clark Pro Se v. Wells Fargo et al, Ogletree Deakins et al, and Securitas Corp. et al      - 4 -

EXHIBIT 5
Page 4 of 41

the corporation. The Federal Bureau-Investigation (FBI) was named as one of the agencies to go to with any suspicion of corporate wrongdoing of any form.

8. The "SAFE Act" mandated all mortgage originators be licensed or registered. Plaintiff was subjected to the SAFE Act lifetime background check and he was awarded his unique SAFE Act identifier on 4-19-11. The unique SAFE Act identifier is akin to a license to originate mortgage loans. It was a new law with broad mandates of the licensee/registrant.

9. Plaintiff, the lowest level customer contact employee, identified operational and financial issues that required reporting as they affected WFHM, WFB, and WFC. He reported first to his manager who wrote on company email "stop whining". He reported above the level of the perceived problem in accordance with WFC policy as. He reported formally in a detailed letter to Mark Oman, then Executive Vice President of WFHM who by coincidence completed his retirement three weeks later. The letter triggered an immediate security response. Within a week he was called to a 'plan meeting' by his manager. There was no plan. His manager told him he needed psychological help and told him to quit. Plaintiff did not quit and was not terminated at that time. Oregon is an 'employment at will' state.

10. Plaintiff entered the human resources process upon suggestion of a local district manager. He was not satisfied with the WFHM answer to his very simple but serious specific job concerns that had importance to all of WFHM. They were not interpersonal concerns but that is how the Des Moines telephone human resources department treated them. The human resource personnel have no knowledge of the job function as regulated by the SAFE Act and WFHM policy and systems. The actual activity of Wells Fargo Human Resources as it was applied in Plaintiff's situation was insulting and demeaning as they had no job knowledge. It is a process used to conceal and to collect information for later use against the employee-reporter.

11. Plaintiff noticed with dismay that most of his mortgage loans in process (upon which he earned commissions when funded) were suddenly being scrutinized on a disparate basis by

9-3-13 Andrew G. Clark  Pro Se v. Wells Fargo et al, Ogletree Deakins et al, and Securitas Corp. et al    - 5 -

EXHIBIT 5
Page 5 of 41

higher level WFHM underwriters. He also documented other highly disparate treatment by the human resource department. Plaintiff attempted to notify WFC management via telephone and email while employed. In late April 2011, he was advised by the human resource contact that all his emails anywhere in the corporation were channeled directly to her by the system and were not seen by the intended recipients. Those internal, channeled emails were later presented to Courts by the Defendants against Plaintiff as if they had been seen by the RCOs.

12. In early May 2011 Plaintiff explained to the human resources contact he was of Jewish ethnicity and he felt ethnically offended when he was told to stop whining and told to seek treatment for mental conditions "diagnosed" by his manager. He explained on email and telephone he "felt like a Jew on the wagon train to be burned". Incredibly, he was referred to Peggy Burns, MFT in San Francisco who research indicated was a Christian/Catholic mental health worker on WF tab. Plaintiff researched on internet and discovered the human resource representative was almost certainly a conservative, activist Catholic in the Des Moines area. Plaintiff made contact with Ms. Burns as requested. He explained he did not need her assistance and she said "oh but I think you do". Plaintiff thanked her for her time and terminated the call. He mentioned it to the WFHM human resources representative and she chuckled about it. Plaintiff found it amusing on one level but ghastly on a higher level as it could be inflicted upon others later who do not have Plaintiff's very non-typical sense of humor.

13. WFHM has a subsidiary or related entity known as RELS that provides credit reports and appraisals for the WFHM loans. Plaintiff received an email accusing the crime of fraud in violation of Dodd-Frank for undue influence on an appraiser. That was incorrect and Plaintiff asked for a retraction letter, assuming it would one day potentially affect his SAFE Act license/registration. WFHM refused to provide the letter of retraction of 'criminal' charges. He explained to the human resource he considered that akin to Crystal Night in Nazi Germany and that his Jewish ethnicity required he pursue it as a presumably existential threat to his livelihood and ability to originate mortgage loans in the future. He also consistently explained he felt deeply offended with the racial and mental health profiling activity against anyone.

9-3-13 Andrew G. Clark Pro Se v. Wells Fargo et al, Ogletree Deakins et al, and Securitas Corp. et al     - 6 -

EXHIBIT 5
Page 6 of 41

14. A company email copied to Howard Atkins, long time Executive Vice President was returned to Plaintiff in late May 2011. Plaintiff, the lowest level worker, researched it quickly online and determined that Atkins was fired amidst significant mystery and controversy for refusing to sign the financial statements. Plaintiff also learned Atkins was Jewish and seemed to have had similar or related concerns Plaintiff had detailed from the lowest level. That inflamed the Plaintiff under the circumstances and he decided to compile a report to the most detailed level possible for the lowest level worker to provide and walk it over...in person...to the local office of the Federal Bureau-Investigation (FBI) while employed on 5-25-11. A copy was received by Department of Labor (DOL), Portland OR office and offered to Plaintiff's manager.

15. c. May 23, 2011 Plaintiff advised the human resources representative he was going to compile the FBI report the following week. All material for the report was stored on Plaintiff's company-issued laptop. He was able to compile it and file it with Agencies 5-25-11. The following day, by coincidence perhaps, the company laptop issued new to Plaintiff just months before became inoperable. Given the number of WF staff and laptops, there was a department that quickly issued another but it lacked all the files that were on the inoperable laptop. Plaintiff accepted it was a coincidence but considered that maybe it was not as all responsible companies use standard technology to allow company laptops to be remotely disabled.

16. Plaintiff was working on the newly received company laptop at his home. He determined that the camera in the laptop was remotely activated and provided all the technical details to the Des Moines human resources contact. She again chuckled and the icon that appeared briefly when it activated disappeared. Plaintiff did not dispute its technical legality, he questioned it as it related to his detailed report to FBI and Dodd-Frank/SAFE Act mandates.

16. The following week (first week of June 2011) Plaintiff was placed on employment probation. Unrelated and separate from the probation, he received a call and email from a human resource contact in Denver CO who accused him of Armed Robbery and Theft in 1979.

He explained to her he passed the lifetime background check and was SAFE Act Registered by government processes. Plaintiff contacted the Ethics Hotline because it was a "pretexting call". He also reported it and the related investigation to be "retaliation" under Sarbanes-Oxley and it was accepted by OSHA and assigned a number c. June 25, 2011. Plaintiff later learned the 1979 erroneous crime material had been entered into the District Court and/or Labor Court. Thus, Defendants did knowingly and deliberately manufacture criminal records that are not in public records and used them in Courts and even to the local police in 2013. By contrast, Defendants did NOT include Plaintiff's CPA credential or the fact he was a long-term high producing mortgage originator. Defendants cherry-picked all information provided to Courts and others in order to defame and conceal the matters duly reported by Plaintiff to local FBI and other Agencies as part of their deliberate, concerted effort to tamper with and retaliate against him.

17. By that time, Plaintiff felt lied to and deceived at every turn by WFHM so he was 'googling' all contacts. He was horrified to discover the Denver human resources representative shared the same conservative Catholic persuasion as the Des Moines contact. Plaintiff considered it was a coincidence but given how wrong it felt at the time to Plaintiff given the matter of Peggy Burns, MFT he felt it could be deliberate. He asked for but did not receive a clear answer. Plaintiff is not including civil rights violations regarding the events. He is including them to demonstrate the level of determination: "Never Again" and "Respond at First Sign".

18. Plaintiff has significant experience and knowledge of computer systems, system implementation, and what is sometimes called "system obfuscation". WFHM was rolling out a new mortgage origination system and imaging system called CORE/ELF. The matter of the possible 'laptop spying' caused Plaintiff to begin detailed research online into the activities of an entity then called Wells Fargo India Solutions, which was based in Hyderabad and Bangalore, India. He studied job postings, equipment used, affiliate relationships then with entities such as Global Spectrum, STAR India, Magnum Productions, and many possible but rather likely scenarios and risks such relations can facilitate due to the system obfuscation. Low level financial staff must report reasonably documented 'first person standing' suspicions, they are

9-3-13 Andrew G. Clark  Pro Se v. Wells Fargo et al, Ogletree Deakins et al, and Securitas Corp. et al      - 8 -

EXHIBIT 5
Page 8 of 41

not expected to prove them or even have evidence, which Plaintiff did. The ELF imaging system was 'down' for an extended period. Plaintiff determined nearly as a certainty the development work was being performed in India and felt that Americans may object if their financial or filmed transactions or activity was offshore. Despite possible legality the common person would object or question the possibility. The India Operations were the global security providers for Wells Fargo as a whole at that time. It was a 'nerve center operation', not a call center. During the same period, he determined that Wells Fargo had potentially problematic-to-national-security links between the India Operations and the HSBC affiliation, affiliations of Wells Fargo executives to an entity called Shanghai Commercial, and possible tax haven activity on Mauritius. He reported the matters to the Hyderabad and Bangalore Consulates in June 2011 which is a possible way of Central Intelligence Agency Reporting. Plaintiff later faxed material to the CIA central fax number shown on their website. Plaintiff's concern was such he personally contacted Avid Modjatbai, then Executive Vice President of Technology on her cell phone. Ms. Modjatbai was the only executive to personally answer her telephone. She asked him to forward concerns to one of her office staff members, which Plaintiff did. Within weeks, Ms. Modjatbai was, by coincidence, reassigned and on July 7, 2011 Reuters News from India, again by coincidence, reported the 'de-risking' of the Wells Fargo Hyderabad Operation.

19. Plaintiff was terminated from employment June 28, 2011 after becoming exasperated with the telephone human resource contact in Des Moines. He utilized one of the most commonly and broadly used words in the English language with the telephone-only Des Moines human resource contact which was the event used to justify termination of employment. Plaintiff wondered why that did not happen months prior in an employment-at-will state such as Oregon, . His concern at that point in time was possible problems obtaining an independent SAFE License because of the Wells Fargo allegations of fraud via their RELS subsidiary.

20. After employment, Plaintiff became more determined to obtain a measure of justice for the ordeal as he then realized their actions likely affected future employment due to the SAFE Act. However: at that point, the 'in your face' perceived ethnic offense became the focus, along with

9-3-13 Andrew G. Clark Pro Se v. Wells Fargo et al, Ogletree Deakins et al, and Securitas Corp. et al    - 9 -

EXHIBIT 5
Page 9 of 41

Plaintiff's perception the significant operation detail he provided while in human resource process was stolen and used by WF as they were 'burning the Jew'.  Pro Se Plaintiff realizes that may sound obsessive or paranoid to some until they really understand and empathize with the totality of the fear and worry and disgust at that time coupled with the vulnerability of <u>any</u> low-level worker.  Plaintiff has a creative and possibly offensive way of coping with extremely debilitating situations:  exercising First Amendment obligations of speech, sometimes duly outraged but never in an illegal or threatening fashion.

21. To appreciate how the fear affects thinking, consider the anguish experienced just with the simple act of returning their worthless laptop that has no data stored on it.  Policy is to return it to the office but Plaintiff had been told not to trespass.  He was then told via email from a Minneapolis WFHM human resource contact to bring it to FBI.  He was told via email by the OSHA representative in Seattle to bring it to the nearest Department of Labor office even though it had already been returned to the Eugene OR workplace.  All those emails were filed with FBI on 7-27-11, in person at the Eugene OR office.  They were also filed with many other agencies over the course of the past two years.  The conflicting requests where to bring the laptop coupled with all other circumstances cause extreme fear and paralysis.  Plaintiff arranged with others to return it to the office.  WF claimed it was destroyed in the return process.  It was a worthless, obsolete 'dumb terminal' worth c. $100 or less and commonly damaged in employee's vehicles if left in the sun too long for example.

22. On July 18, 2011 Plaintiff arrived home and noticed a City of Eugene police squad car parked in front of his home and two large police officers in uniforms peering through the side windows.  He approached the police and asked what was going on, they asked if he was Andy Clark and <u>they said they were sent by Wells Fargo on a "well-being visit" regarding an email referencing genocide</u>.  That home visit audio and email is legally posted on www.RisePatriot.com or www.osunrise.com.  Police are heard morphing their "well-being visit" into a "trespass warning".  Plaintiff was detained in  home under false pretenses by uniformed armed police in the evening at home.  That is not a typical response to email to a designated Wells Fargo

EXHIBIT 5
Page 10 of 41

Human Resource contact in Minneapolis. It is far from the level of dedicated service involving a large platoon of police other citizens would receive for an email. The email in question is in a business tone, communicating serious business facts. Police do not normally enforce email in similarly situated citizens. Police normally do not enforce interstate business communication.

23. Within an hour of the 7-18-11 police visit, Plaintiff went to police headquarters to order a copy of the in-home audio. That entire interaction is posted with officially obtained from City of Eugene, OR. Police are heard on their audio discussing in no uncertain terms what Wells Fargo had communicated to them regarding Plaintiff as a threat. Police are heard on that audio saying "if you can wrap your head around it, Wells Fargo let him go for acting crazy. He says he is in contact with the FBI and CIA...." Plaintiff had in fact been in contact with both agencies. That shows how early-on Defendants corrupted, obstructed, and concealed material duly reported by then to FBI, etc. WF also hired special guards, which terrified the staff working there because they knew Plaintiff was benevolent and harmless. They were afraid of the guards according to later accounts. It was a small mortgage office not in a bank. At any given time fewer than five staff total would be in the office. The guards were hired to 'paint' a threat. Plaintiff had a perfect prior record of pacifism and non-violence.

24. On July 27, 2011 Plaintiff augmented his FBI report with the police interaction and with other operational concerns that he had determined since the 5-25-11. That was filed in person with affidavit and statement of qualifications and sound mind. On July 28, 2011 Securitas Agents Christensen and "Brin" are heard on the police dispatch audio falsifying a police call of "trespass" and portraying it as a bank threat.

25. On July 29, 2011 at approx. 6 pm, two police arrived at Plaintiff's home to arrest him. He did not ask to see the warrant and he is heard on police car video assuming it was a mistake caused by Wells Fargo. There was a k-9 assist. Two SUV and two squad cars were involved from Eugene West Side SWAT. The charge was 2nd degree municipal trespass. Plaintiff was marched in chains and no shoes for a block in front of neighbors in the evening and taken to jail

holding for 18 hours. The trespass charges were later dismissed without hearing. As described below, Plaintiff later received the police reports and they are clear: Martin Ogno of Wells Fargo Bank security in Portland Oregon obstructed and corrupted the FBI processes to falsely transmit a bank threat to the local police. Discovery and the common sense of the reasonable person will show Eugene OR Police do not respond to second degree trespass allegation called in by hired security guards the day before with that level of force, at-home after fact "arrest" and subsequent jailing.

26. On July 31 2011, Plaintiff determined that he had to purse legal remedy so he placed the FBI filing on a secure archiving host called Simplicato under the obscure name: www.wfopsreport.com. He never had or made a website previous to that need to communicate detailed material. He IMMEDIATELY advised Ogletree Deakins of location and purpose. He also placed it under confusing, self-effacing material knowing that c. 85% of people who might look at a website do not go beyond the first page.

27. Within two days he received a threat from Ogletree Deakins he would be sued for posting the information. They would have been unaware had Plaintiff not notified them as a courtesy. He removed the material within 24 hours but was unaware that removing the link did not remove the material so he corrected that immediately upon knowledge. He placed the material back online using crude password protection which Ogletree Deakins "hacked" into. Within days they obtained a vague temporary injunction and used it to frighten the owner of his secure web archiving host so as to terminate hosting.

28. Concurrent to that communication, vehicles came frequently to Plaintiff's home. After the police action the prior week, he was terrified and generally avoided answering the door. Around August 8, 2011 he became so frightened he left his home for several days while another person answered the door. It was seemingly endless piles of boilerplate legal filings against him in District Court on Emergency Basis.

EXHIBIT 5
Page 12 of 41

29. He also received them via email and mail and had to correlate the three sets of sometimes different material. He placed calls to attorney for defense but none returned his calls within the three weeks between the boilerplate filing and the first hearing. The volume of Defendant's boilerplate filings was so extreme an attorney could not possibly grasp it and defend it in three weeks, especially in Eugene OR which lacks a financial industry and lacks specialty attorney. He was forced to go to the first hearing undefended but he carefully and totally evidenced the actual facts, none of which were heard in the less-than-an-hour-total court hearings neither of which discussed underlying facts. After hearing, Plaintiff could not locate an attorney in this small area who had the skills to defend him and also did not have 'conflicts of interest' that prevented them from defending Plaintiff.

30. Wells Fargo Bank instituted the District Court Civil lawsuit in August 2011. Plaintiff did not notice that detail until May 2013 and called Donald Pearson, President of Wells Fargo Bank for Oregon. He was adamant the Bank would not be involved in any matter related to a mortgage company worker.  Plaintiff does not hold Mr. Pearson to that as it is a detail of which he may not have been aware, either.  Based upon Mr. Pearson's adamant statement, it is possible Wells Fargo Bank did not provide to Ogletree fully-informed authorization of the lawsuit based on facts known to Defendants.

31. Plaintiff was charged in District Court with "releasing confidential Wells Fargo mortgage account numbers". Wells Fargo attorney were not aware the mortgage loan number is a public record recorded on the Wells Fargo trust deeds and thus is not confidential. Plaintiff evidenced in writing to the Court in advance of hearing there were no cyber-offenses as accused and in fact they were impossible due to Wells Fargo system security. Plaintiff questioned their lack of damages sufficient for District Court. Defendants accused breach of contract. It is a catch-all employment contract that does not account for reporting corporate criminality.

32. Plaintiff asked for at the hearing and received within 30 days a list of the offending data and was given a list of approximately 10 public loan records, mostly repeating the same

9-3-13 Andrew G. Clark  Pro Se v. Wells Fargo et al, Ogletree Deakins et al, and Securitas Corp. et al      - 13 -

EXHIBIT 5
Page 13 of 41

numbers which included several declined loans (meaning they were not Wells Fargo customers). It was a minimal amount of public records within an FBI filing placed on a disclosed site. None of the extensive evidence Plaintiff submitted prior to the first hearing was Heard in Court and it appears as if much of it was sealed in PACER without a hearing based on the incorrect statement there were confidential records. Plaintiff was also asked in Court to provide trade secrets and names of any accomplices....as if the $12/hour base worker could possibly have any trade secrets of Wells Fargo Home Mortgage (et al) or is likely to have accomplices. As can be seen from the court records, the lack of ability to disclose secrets and accomplices was used as allegation of guilt by Defendants.

33. A human being has limits to the perceived abuse he or she can tolerate. Plaintiff has a $5,500 per month spousal support obligation relating to mentally retarded offspring affected with Fragile X syndrome. On August 10, 2011 all his available cash was garnished from his bank account by his ex-wife's attorney and Plaintiff lacked funds for an attorney even if one could have been located. Within 30 days a complex family court action to remove longstanding guardian of a retarded adult offspring was consummated. It was precipitated by the Wells Fargo et al actions and possibly conspired informally via attorney affiliations. At the least, the action was an effect of Wells Fargo et al actions against Plaintiff. Audio of that hearing is posted: www.RisePatriot.com, it is a very poignant audio towards the end and acts to catalog Plaintiff's emotional destruction.

34. It took six months to finally get a spousal support reduction hearing. Audio of that proceeding is also posted. Despite no job the $5,500 was not reduced and the Wells Fargo matter is clearly heard in the audio to be intertwined in the spousal support matter. The actions of the judge are not within the law or logic as any reasonable person would feel when they listen to the audio recordings and consider how THEY would obtain that level of cash each month even if employed. It was either an effect of or caused by Wells Fargo (et al) actions against Plaintiff.

35. In the same timeframe as the Guardian Removal action, Plaintiff received the City of Eugene police reports. There was no evidence of trespass and the warrants appeared after-fact. The police reports contain disgusting innuendo provided to them by Wells Fargo. It was written in police reports that "(Plaintiff) threatened to rape his bosses". In a later arrest affidavit, it was re-worded to "threatened to sexually assault area managers". The police reports also show Plaintiff was placed on an "internal only list for police use" of possible violent and/or sexual offenders. The statements were ascribed to "un-named witnesses" at first. There were only two managers of any sort within 100 miles at that time, both male and neither reported any form of rape threat. Please be mindful those allegations were contained within a police report relating to Wells Fargo manufactured trespass charges which involved SWAT resources, a night arrest, and jailing…. later dismissed.

36. Plaintiff discovered within the police reports that Martin Ogno, security worker at Wells Fargo Bank in Portland OR had lied to police about Plaintiff's FBI filings. Ogno claimed to police he had been in contact with FBI and "they did not take Clark's reports seriously". The augmented report was approximately 175 pages. It was the 5-25-11 report re-filed with other suspicions. Martin Ogno lied about FBI contact with the effect of intensifying police response. That represents Defendant's corruption of the FBI process in order to deceive local police into undue action not inflicted upon others similarly situated and to conceal a federal crime report.

37. Plaintiff at that point in time, October 2011, was psychologically affected as any human being would be by the actual EFFECTS of Wells Fargo (et al) actions against him. He wrote scores of letters to City of Eugene Prosecutor who eventually dropped the entirely manufactured municipal charges. It caused Pro Se to be unable to comprehend much less defend in District Court and Labor Court, where he had filed a retaliation complaint under Sarbanes-Oxley while employed.

38. In October 2011 Plaintiff obtained and processed the audio/video from City of Eugene Police of all the July 2011 "arrest event" material. They are posted: www.RisePatriot.com. It

9-3-13 Andrew G. Clark Pro Se v. Wells Fargo et al, Ogletree Deakins et al, and Securitas Corp. et al     - 15 -

EXHIBIT 5
Page 15 of 41

clearly proves police were unduly influenced by Wells Fargo and performed police action very far from their policy and far from what is available to similarly situated citizens. The police audio and records from 7-2011 clearly proved the early conspiracy amongst Defendants.

39. Plaintiff's polite letters did not get answered. Just as his while-employed emails were channeled to Des Moines human resources and only seen there, he discovered that government agencies also channeled issues to other agencies who in turn would do the same. Plaintiff at times then started using "metaphoric communication" with the government agencies and with the non-responsive Ogletree Deakins attorneys in Portland OR. Virtually all of it was via fax. All had predominate underlying factual matters . It was always identity-disclosed with his home telephone number, name, and address on each.

40. Plaintiff's emotionally-pretexted fax material was placed into District Court, under seal in October 2011. There is no relationship between long-after-employment fax material to Ogletree Deakins, etc. and the contrived, bogus charges they presented to the District Court. There as a full-court hearing devoted to the fax material and again Plaintiff implored to the Court he was unable to understand the charges, they were wrongful, and he was undefended. He had previously alleged the District Court action was a Strategic Lawsuit Against Public Participation (SLAPP) which Wells Fargo et al denied. Time has shown it to be malicious prosecution of SLAPP, just part of Defendant's overall concealment and obstruction of justice.

41. District Court and Labor Court were timed together by Ogletree Deakins. There appeared to be no limits whatsoever on their ability to corrupt and subvert each and every legal protection of a citizen and human being using vast numbers of attorney, as needed. None of the very simple issues were heard by a Court. In all that time and attorney action, nothing of substance was heard by the court despite pleas of Plaintiff that Court was being used as a concealment mechanism. The EFFECT due to internet search is permanent unemployment in profession. The related manufactured and dismissed crime aggravated that as 'jail mugshots' are commonly shared within the community, particularly amongst and by the children of the

affected adults. Meanwhile, actual, simple facts were buried in courts. Plaintiff had no defense attorney, no trial and the courts were drowned in piles of irrelevant legal boilerplate. Plaintiff's outraged, emotionally pretexted, factual but irrelevant faxes were systematically collected by Ogletree Deakins who placed them in all the courts in order to defame Plaintiff and to conceal Defendant's crimes, actions, and omissions along with underlying facts. The faxes were irrelevant to the case in front of District Court as was all of Defendants inputs and actions.

42. Plaintiff agreed in May 2012 to mediate and allowed the Judge of the District Court to be his mediator. The mediation session July 2012 lasted c. 35 minutes and Plaintiff determined the Judge had absolutely no working knowledge of even the most basic facts of the case. It appears Defendants corrupted the district court so badly they wrote the Court findings for the judge to sign without hearing or consideration of the underlying tangible, simple, factual evidence. Plaintiff was offered a small amount of cash but not the removal of the bogus District Court action and not the investigation/remediation of the illegal/improper police action from the prior year. The Judge said otherwise he would order a Trial. Plaintiff felt it was said in a threatening tone. He thanked the Judge for his time and requested a Trial or further mediation. Neither happened and at the worst possible time given all else happening to Plaintiff judgments were entered against the evidence and with no hearing of any form and the judge retired.

43. In February 2012 Plaintiff finally received Court hearing of his $5,500 per month spousal support and related reduction request. Against logic and facts it was not reduced. The audio of the court hearings is posted: www.RisePatriot.com. It shows how the Wells Fargo matter interfaced with and impacted that court result and was precipitated by the outrageous and illegal conduct of Defendants. In August 2012 Plaintiff received a Sheriff Sale notice against his freely owned home for non-payment of spousal support. Plaintiff, at cost, liquidated his last remaining financial asset, a 401-k, in order to avert the foreclosure action.

44. In the same month, Plaintiff received notice there would be no hearings by the District Court and he was considered 'guilty'. The Labor Court responded similarly. Plaintiff hired a

EXHIBIT 5
Page 17 of 41

local attorney named Barry Davis who promised to emplace an appeal. He demanded a very large retainer (over $10,000) and over the next 7 month (September 2012 – April 2013) had done nothing for Plaintiff on the District Court appeal and in fact had been regularly communicating with Leah Lively of Ogletree Deakins. The effect was to deny Plaintiff appeal rights due to time limitations, completely against what he was told by attorney, Barry Davis.

45. In early May 2013 Plaintiff received another Sheriff Sale notice against his freely owned home for spousal support. He determined Barry Davis had done nothing whatsoever, including not filing for modification of spousal support. Plaintiff collected all the material he provided to Mr. Davis, who had organized it in chronological order in a large notebook but had done nothing else regarding the District Court and Plaintiff's overall problem with the $5,500 per month support. Plaintiff was compelled to borrow the funds from his elderly parents.

46. Plaintiff, by May 2013 had everything taken from him over a two year period and his ability to earn had been removed. He increased his legal, personal fax activity from his home telephone number. He felt he had no other options and frequently referred to feeling like a "Jew on the train to the death camps". The blind trust in Barry Davis and Mr. Davis' deceit caused extreme emotional distress in Plaintiff as he realized he should have demanded results much sooner from Mr. Davis and had let too much time go by in false hope.

Plaintiff faxed many non-commercial communications mostly to government agencies, news agencies, and groups of attorney from June 1 – July 25 2013. The fax numbers were obtained by Plaintiff via the various websites. He received approximately 10 calls from recipients asking to be taken off the mailing list. Plaintiff explained that he would remove their number, which he then did. He also tried to confirm from each caller they were not receiving very many from him. All agreed they had not but asked to be taken off the list. He also explained to each of the few callers that: a) it is possible their number will be re-acquired via another website b) he lacks staff resources c) in addition, he suggested to each they "block" his home number to absolutely ensure no more faxes.

EXHIBIT 5
Page 18 of 41

47. The faxing was nationally but focused on the east coast and California as that is where Plaintiff perceived the news agencies, government offices, and Dodd-Frank/SAFE Act attorney are. Plaintiff did receive many form letters from various agencies and organizations thanking him for his correspondence and indicating they cannot be of assistance.

48. Plaintiff also filed very large and comprehensive reports with various agencies of the government in June 2013. Those include a TCR-supported SEC whistleblower report. Plaintiff held off filing the report with the FBI due to his well-evidenced perception it could damage Ms. Lively, Ogletree Deakins, and Wells Fargo. His messages clearly and repeatedly implored for a solution outside of the Courts and outside the Agencies. His messages clearly and repeatedly explained or indicated in some fashion his disgust with being forced to formally name people as criminals in an FBI report along with reasonable evidence and then pursue civil recovery.

49. On July 18, 2013 two plain clothes police officers arrived at Plaintiff's home. They produced cards showing they were with the Eugene Police Violent Crimes division and were investigating a FAX threat to Ogletree Deakins and attorney Leah Lively. Plaintiff was cooperative and calm but very outraged. Police did not show him any of the faxes but described one that was felt to be threatening and told Plaintiff that if he faxed any more, it would be pursued as "criminal stalking" by the Eugene Violent Crimes unit. Plaintiff denied it was threatening at all. He also told police that it seemed absurd and wrongful to him that once again high levels of police resource were being expended on fax communication matters between a citizen and a business over 100 miles from Plaintiff. Plaintiff repeatedly opined to Police their visit was wrongful, was not supported by the Law, and was not supported by Policy. Mostly: Plaintiff noted the obvious repeatedly - Police simply do not normally go to people's homes over faxes in absence of any form of physical threat, especially violent crimes unit detectives who are presumed to have more immediate threats involving their respective communities to investigate.

50. Plaintiff agreed to not fax anymore to Ogletree Deakins in Portland Oregon despite his belief that Police had no right to make such a restriction of the verbal-only expression of emotion and facts. Plaintiff repeatedly noted to police anyone who does not want a fax should also take the simple step of blocking his. It takes under a minute. Corporations such as Defendants often use 'fax routers' or have office support 'picking up faxes from the machine'. It is normally assigned to a low-level staff member. The police detective was adamant people and companies should not be expected to block numbers and instead he thought it was appropriate to expend massive taxpayer-funded police resources on it. The police treatment was completely the opposite of how similarly situated complaints by other citizens are handled by police. Wells Fargo et al and Agents such as Ogletree Deakins (i.e. Defendants) lied to police and used undue influence upon police to perform police actions against Plaintiff far from normally available to similarly situated citizens with business fax or email issues.

51. Plaintiff, predictably, was consumed by the repeated outrage of police, especially violent crimes. The faxes are factual, non-threatening, self-effacing, and somewhat random. 15 pages of 208 pages of faxes over a year had the Olgetree Deakins Portland fax-stamp, the rest did not including most used as basis for stalking charges. Olgetree Deakins et al did not allege any form of personal contact or attempts at personal contact. Police could not satisfactory-to-Plaintiff explain how words alone sent in the context described to a business could possibly warrant "stalking" investigation or arrest so far outside the police attention given to others.

52. Plaintiff sent many more faxes after 7-18-13, all non-threatening and mostly to the east coast to avoid any possible confusion with the police "orders". Plaintiff faxed to several offices of the FBI for example, asking them to investigate and advising them the comprehensive crime report was sent to Director's Office, FBI and it needed to be looked at in overall context of the 5-25-11 and 7-27-11 "evidence parking".

53. Plaintiff, on 7-23-2013 among other lists sent a complaint to his short fax mailing list of local police auditor and police advisory committee members. The FAX was non-threatening. It

clearly expressed Plaintiff's disgust with the Wells Fargo/Ogletree Deakins use of local police in people's homes to criminalize him, an honest worker who reported in detail correctly to the Government, including a genuine report of significant, major Federal Crime to the FBI.

54. The list long contained the fax number of Ogletree Deakins in Portland OR. Plaintiff had put it there over a year prior for a particular fax at that time and did not remove it then. On July 23, 2013 Plaintiff received a call from Eugene Violent Crimes unit to confirm with Plaintiff he sent a fax against police "orders". Plaintiff checked his fax log with police on the telephone and said that he had in error and explained the circumstances of the error given the very high volume of communications, all without assistance. Plaintiff was, predictably enough, outraged again by the fact of instant police response to such a trivial Ogletree Deakins workplace issue that was best solved via call blocking, not the massive police involvement of the type not available to typical citizens with similar, distant business-only FAX related to serious FBI filings.

55. On July 25, 2013 at approximately 4 pm, Plaintiff received a call from Eugene Police Violent Crimes unit and was told to meet the detectives because they need to arrest him. Plaintiff did as directed, was arrested and charged with ten (10) counts of "stalking" which in Oregon are Class A misdemeanors punishable by up to a year in jail and fines. There is and was no personal threat as Ogletree Deakins/Leah Lively testified, it was an entirely pretexted, manufactured police activity. It was similar to the first incident in 7-2011 only they had more time to pretext (cause) the illusion of a fax threat and falsely accuse a much more serious crime completely out of proportion to harmless words on paper to an office which could have blocked the number in under one minute. It was an entrapment activity perpetrated by Defendants.

56. Due to the unique and capricious pre-trial services system in Lane County Oregon, 10 charges automatically cause very high risk assessment, high bails , and harsher jail treatment. The pre-trial services staff have ability to over-ride the system results but they did not due to corruption and misinformation provided by Defendants. They were advised by Plaintiff while he was in jail the charges were duplicates and there was no physical threat. Plaintiff also

9-3-13 Andrew G. Clark  Pro Se v. Wells Fargo et al, Ogletree Deakins et al, and Securitas Corp. et al      - 21 -

EXHIBIT 5
Page 21 of 41

noticed the same erroneous criminal data from 1979 "dug up" by Wells Fargo et al in May 2011. That also caused heightened risk assessment, higher bail, and more restrictive jailing.

57. Plaintiff was held in brutal, high-risk jail conditions for six days. He was confined in an 8 x 10 foot cell 22/24 hours per day and was denied adequate medical care for his high blood pressure condition. Lights were 24/7. The loud noise was continuous.  Bail was set at $200,000 and plaintiff's elderly parents once again became involved. That caused unimaginable and abject emotional distress to his elderly parents. Plaintiff, due to the automated pre-trial services program was also required to wear an electronic ankle bracelet, despite the confirmed fact of a fax-only business dispute that totally lacked any personal interface.

58. Once again, the "jail mugshots" of the Plaintiff, this time a multiple stalker, are plastered all over the internet. Only the charges are listed and the accused is presumed and treated as guilty in advance of any hearing.  The ankle bracelet is extremely destructive to personal and family relationships.  No matter what the outcome of Trials...the internet arrest mugshot pictures and initial arrest charges are all most people will ever see due to the way internet search engines works.    The commercialization of the record and the public fascination with the sensational cause the search algorithms to favor the mugshots and initial arrest record.

59. The Court must consider obvious reality of the internet age.  It is generally known that personal contacts, employers, and family members commonly "Google" others.  The immense defaming and illegal actions against Plaintiff have immediate effects.  Family members are deeply hurt by it.  Potential personal contacts are scared.  Employers normally have policy (official or de facto) that renders anyone with any form of adverse internet presence unemployable. The problem of permanent Ghettoization due to a simple arrest event alone is new within the last 10 years but escalated greatly in the last 5 years due to massing of high speed internet and the explosion of mobile devices which allows more people to more easily ` access the record to be. There is no way to escape the later effects of an arrest event.  Plaintiff is a victim of a specific and large problem the Laws and the American Justice System never

envisioned: permanent Ghettoization due to internet defaming deliberately perpetrated by Wells Fargo et al and their Agents such as Ogletree Deakins.

## COUNT 1

Racketeering Violations under 18 U.S.C. § 1961, et seq.

Wells Fargo, Ogletree Deakins, Securitas and Employees Named in Complaint

Kidnapping as defined by 18 U.S.C. § 1201 (a)(1), (b), (c), (d)

60. Plaintiff alleges again and incorporates by reference allegations set forth in each of the preceding and following paragraphs of the Complaint as if set forth fully herein.

61. All Defendants named were participants or compensated agents of an enterprise known variously as Wells Fargo Home Mortgage, Wells Fargo Bank, or Wells Fargo and Company and their participation by action or omission is on-going prior to and since the beginning of events leading to this Complaint. All Defendants are large national corporations involved in interstate and international commerce.

62. Plaintiff was involuntarily removed from his home by police acting under the color of legal police authority. The facts presented show the police activity was conspired and manufactured by Defendants on a deliberate, planned basis. The facts show that Defendants actively corrupted local police with falsifications, innuendo, and abuse of authority to induce them to perform Plaintiff's removal from his home and related jailing.

63. The same kidnapping activity occurred at least twice over the last two years to Plaintiff as a result of the Defendant's continued actions. The same general methods were used by the Defendants both times. As described, the kidnapping events were 7-29-11 and 7-25-13.

64. Defendants all have a monetary, professional, and/or political benefit in kidnapping Plaintiff
to terrorize and destabilize him in order to conceal their illegal activity. Defendants all are part
of national organizations engaged in interstate and international business.

65. Their actions and the effects of their actions fully meet the definitions of kidnapping
described in 18 U.S.C. § 1201. The 7-29-11 holding period was 18 hours, not 24. The objective
of the kidnapping event was to terrorize for economic or political purposes. Per 18 U.S.C. §
1201 (b) kidnapping investigation does not require 24 hour holding.

### COUNT 2

Racketeering Violations under 18 U.S.C. § 1961, et seq.

Wells Fargo, Ogletree Deakins, Employees Named in Complaint

18 U.S.C. §§ 1512 Obstruction of Justice Tampering with Witness, Victim, or Informant

18 U.S.C. §§ 1513 Retaliation Against Witness, Victim, or Informant

66. Plaintiff alleges again and incorporates by reference allegations set forth in each of the
preceding and following paragraphs of the Complaint as if set forth fully herein.

67. All Defendants named were participants or compensated agents of an enterprise known
variously as Wells Fargo Home Mortgage, Wells Fargo Bank, or Wells Fargo and Company and
their participation by action or omission is on-going prior to and since the beginning of events
leading to this Complaint. All Defendants are large national corporations involved in interstate
and international commerce. Defendants perpetrated many instances of Obstruction of Justice.

### 18 U.S.C. §§ 1512

68. Plaintiff did file detailed material, the best available to the lowest level worker, to the FBI as
described in previous paragraphs. Defendants were aware of the filing and thus any and all
subsequent actions against Plaintiff represent tampering and retaliation.

EXHIBIT 5
Page 24 of 41

69. The FBI filing and reasonably supported suspicions constitutes information in accordance with 18 U.S.C. § 1512 (3) as does the 5-25-11 Department of Labor filing of the same information provided to FBI.  18 U.S.C. §§ 1512 (f) specifies an official proceeding need not be pending or about to be instituted at the time of the offense; and the testimony, or the record, document, or other object need not be admissible in evidence or free of a claim of privilege.

70. Defendants did knowingly intimidate, threaten, corruptly persuade other persons and engaged in misleading conduct towards Plaintiff with intent to:

(1) influence, delay, or prevent the testimony of any person in an official proceeding;

(2) cause or induce others to withhold testimony, or withhold a record, document, or other object, from an official  proceeding;

(3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal Offense as Plaintiff's FBI (and other agency) filings clearly described to FBI for investigation.

71. Improper sealing of PACER and/or sealing of material in PACER not authorized to be Sealed represents an example that Defendants did corruptly alter, destroy, mutilate, or conceal a record, document, or other object, or attempted to do so, with the intent to impair the object's integrity or availability for use in an official proceeding.  Defendants did otherwise obstruct, influence and impede the official proceedings.

72. Defendants did intentionally harass Plaintiff via several police actions at his home and by malicious prosecution of groundless civil and criminal offenses.  It is obvious to the reasonable person by reading the fax material Plaintiff sent to Defendants in June and July 2013 warned the parties of an upcoming, large filing to FBI.  It is also obvious it was something Plaintiff preferred to work out with Defendants otherwise.  Ogletree Deakins use of police described in prior paragraphs to charge that as "stalking" is among the large amount of evidence that Defendants did intentionally harass Plaintiff in order to:  hinder, delay, prevents, or dissuade

Plaintiff's reporting to a law enforcement officer or judge of the United States the commission or possible commission of a Federal offense which included reasonably supported detail that could cause their arrest and/or criminal prosecution in connection with Federal offenses as enumerated within this Complaint, the FBI filings, and the other Agency filings.

## 18 U.S.C. §§ 1513

73. Defendants did knowingly, with the intent to retaliate, cause action harmful to Plaintiff, including interference with his lawful employment or livelihood for providing to a law enforcement officer (FBI) truthful information relating to the commission or possible commission of any Federal offense, referring to the FBI reports.

74. Defendants Ogletree Deakins et al, their employees and agents are a national employment law firm. They have a greater responsibility to follow the law and insist their Client (Wells Fargo et al) also abide by the law. They also can be presumed to have known that the SAFE Act mortgage originator license is most likely not available to Plaintiff due to their actions and omissions as described. Nevertheless: Plaintiff was also a salesperson in a small community so their defaming activity was deliberately calculated to cause permanent unemployment of Plaintiff in order to retaliate for and to tamper with his filings to the FBI and other Agencies. The result of Defendant's actions is complete lack of ability to be employed due to internet access of their false and defaming information by personal contacts, family, and employers.

(Complaint continues on page 27)

9-3-13 Andrew G. Clark Pro Se v. Wells Fargo et al, Ogletree Deakins et al, and Securitas Corp. et al     - 26 -

EXHIBIT 5
Page 26 of 41

## Counts 3, 4, 5, 6, 7, 8, 9

Racketeering Violations under 18 U.S.C. § 1961, et seq.

Wells Fargo, Ogletree Deakins, Employees Named in Complaint

### 18 U.S.C. §§ 1519

### Destruction, Alteration, or Falsification of Records in Federal Investigations

76. Plaintiff alleges again and incorporates by reference allegations set forth in each of the preceding and following paragraphs of the Complaint as if set forth fully herein.

77. All Defendants named were participants or compensated agents of an enterprise known variously as Wells Fargo Home Mortgage, Wells Fargo Bank, or Wells Fargo and Company and their participation by action or omission is on-going prior to and since the beginning of events leading to this Complaint.  Defendants perpetrated many violations against Plaintiff over time.

78. Defendant knowingly altered, destroyed, mutilated, concealed, covered up, falsified, or made false entries in records, documents, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of matters within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case.  Defendants are being charged with one count of violation of 18 U.S.C. §§ 1519 relating to significant information reports made by Plaintiff to each of the following Agencies from May 2011 – July 2013 relating to his Complaints:

      Count 3:  Federal Bureau-Investigation

      Count 4:  Central Intelligence Agency (CIA)

      Count 5:  Securities and Exchange Commission (Accepted Whistleblower Investigation)

      Count 6:  Senate Banking Committee

      Count 7:  Department of Labor, Office of Fraud and Labor Racketeering

      Count 8:  Attorney General's Office, Department of Justice

      Count 9:  Board of Governors - Federal Reserve

**COUNT 10**

Violations of 42 U.S.C. § 1983: Free Speech and Free Press, Abuse of Process, Malicious
Prosecution, Defamation, Equal Protection, and Law Enforcement Retaliation

79. Plaintiff alleges again and incorporates by reference allegations set forth in each of the
preceding and following paragraphs of the Complaint as if set forth fully herein.

80. All Defendants named were participants or compensated agents of an enterprise known
variously as Wells Fargo Home Mortgage, Wells Fargo Bank, or Wells Fargo and Company and
their participation by action or omission is on-going prior to and since the beginning of events
leading to this Complaint. All Defendants are large national corporations involved in interstate
and/or international commerce.

81. At all times material hereto, all Defendants were acting under color of law and in their
capacity as employees or agents of Defendants.

General Statement Regarding Violation of Rights: Civil v. Criminal Protection

82. Plaintiff was placed into District Court for civil offenses as described in previous paragraphs
and as a matter of record. Numerous constitutional protections are no longer readily available
in civil proceedings. The Court, with a series of cases beginning in the 1990s, starting
with *United States v. Ursery*, returned to the original dichotomy between civil and criminal
constitutional protection. *Ursery* and its progeny abrogated the lenient constitutional
interpretation established in *Halper*. Following *Halper*'s short lived precedent, *Ursery* again
introduced a two-prong test, originally articulated in *United States v. Ward*, 448 U.S. 242
(1980). The *Ward* test, overall, limits the constitutional protection provided in civil
cases. The *Ward* two-prong test helps determine whether a penalty is sufficiently punitive to
rise to that of a quasi-criminal punishment. The first prong ascertains Congress' intent to label
a penalty as civil or criminal. *Id*. at 248--49. Where Congress establishes a civil penalty, the

9-3-13 Andrew G. Clark  Pro Se v. Wells Fargo et al, Ogletree Deakins et al, and Securitas Corp. et al      - 28 -

EXHIBIT 5
Page 28 of 41

second prong looks to whether the statutory scheme is so punitive as to require procedural protection ordinarily given in criminal proceedings. Deference is given to legislative intent and "only the clearest proof [can] suffice to trigger constitutional protection in civil cases."

83. The Court could not possibly have envisioned the effects on Citizens and less-powerful entities of internet defaming and ghettoization in advance of fact-finding, hearings, or trials. The Ward Test was not applied to the District Court Civil action against Plaintiff (6.11.cv.6248.ho) but circumstances show that Ward should have applied. The effect of such litigation against a licensed financial worker has quasi-criminal effects and he should have been appointed suitable counsel and enjoyed all Constitutional protections.

84. The Court could also not have envisioned or even imagined the advance destabilization caused by "internet defaming" and the publication of the arrest "mugshots" with summaries of charges and no detail. Meanwhile, major employment attorney such as Ogletree Deakins recommend policy to employers that dissuade hiring of anyone who has any form of internet presence questionable or objectionable to hiring managers or perceived to be against policy.

85. The result speaks for itself. Corporations are able to use the Police and Courts to inflict punishment on workers and conceal their illegal actions. Sometimes punishment of workers is needed but it must conform to the law. It cannot be inflicted in the deliberate, planned and malicious fashion demonstrated by Defendants. They exploited recent technology and people's perceptions of others based on personal caution that cause such action to have the same or worse and more immediate effects as Criminal Proceedings. The below Complaints do not assume application of the Ward Test, which would yield more Complaints.

### First Amendment Violations

#### State of Oregon Constitution Article 1 Section 8 and subsequent interpretations.

86. Police were used twice by Defendants as the reason given to go to Plaintiff's home and to effect arrest of Plaintiff as described. The reason for the first visit and then arrest was a harmless email regarding serious business topics. The reason for the next arrest and jailing activity was entirely due to factual fax material allegedly sent to Defendants.

9-3-13 Andrew G. Clark Pro Se v. Wells Fargo et al, Ogletree Deakins et al, and Securitas Corp. et al      - 29 -

EXHIBIT 5
Page 29 of 41

87. Words alone are generally not justification to charge others with crime and to cause their arrest, jailing, and the downstream effects on a citizen of such actions. Plaintiff was jailed based solely upon words and emotional art to a place of business relating to the business. In both cases whoever claimed a "threat" lived and worked over 100 miles from Plaintiff and had obvious political and pecuniary interests in the results of their actions and omissions.

88. A vague temporary injunction was used to shut down Plaintiff's disclosed website. That activity is a further example of violation of free speech as well as being one of their many components of concealment and obstruction of justice as charged within this Complaint.

### Fourth Amendment Violations

89. The Defendants directed and influenced police action against Plaintiff that were and are in violation of Fourth Amendment protections against unreasonable use of police powers.

### Fifth Amendment Violations

90. Plaintiff was prosecuted on emergency basis in District Court. The immediate and long term social and economic effects equal or surpass the effects of criminal prosecution against a criminal. It was a quasi-criminal proceeding as part of the overall obstruction of justice and other Complaints against Defendants. The use of fax communication to obtain "contempt of court charges" against Plaintiff in the District Civil matter involving Defendants is a matter of record. The subsequent use of it to do the same in State courts with fax material via "stalking" charges has been demonstrated.

91. Defendants had no right or business reason to place material into Courts unrelated to the charges that acted to incriminate him or cause others to color him guilty. Fax material is one such example as it had no relationship to the Defendant's charges against Plaintiff in the Court. Faxes and telephones are now very easy to 'block' as described elsewhere in this Complaint. It

is also very easy to manufacture fax material and use it against others, a factor that could apply in other cases. It was a violation of protections against self-incrimination. It was an emotional entrapment activity performed by very powerful corporate entities against the undefended Citizen. The wrongful conduct of Defendants alleged herein constitutes violations of the United States Constitution, including but not limited to Amendments I, IV, V, and XIV, in that Plaintiff was deprived of privileges and immunities guaranteed to all citizens of the United States, was subjected to law enforcement retaliatory conduct, invasion of privacy, malicious and selective prosecution, and was prosecuted civilly and criminally without proper cause, with an unconstitutional motive and malice, and without equal protection or due process in an attempt to chill Plaintiff's free speech, and to intimidate, harass, and discredit Plaintiff's FBI and other Agency information filings and whistleblower actions.

92. Defendants treated Plaintiff, as a class of one, differently from others similarly situated. Upon information and belief, no other citizen of Lane County has ever been treated in such an illegal manner and under color of the law for matters such as business emails or faxes to distant business.

93. There is no rational basis for the difference in Defendants' treatment of Plaintiff from others similarly situated. As a direct and proximate result of Defendants' wrongful conduct as alleged herein, Plaintiff's constitutional rights were violated and he has suffered harm and has been injured. The wrongful conduct of these Defendants as alleged herein was undertaken with malice and/or with improper and unconstitutional motives in an attempt to interfere with conduct protected by the Constitution. Plaintiff was investigated, prosecuted civilly and criminally, intimidated, harassed, and coerced by or at the behest of Defendants for improper unconstitutional motives, was treated differently than others similarly situated, and was subjected to improper abuse of process and power for improper motives, without proper or probable cause, and with malice and with clear political and pecuniary motivation.

EXHIBIT 5
Page 31 of 41

94. Plaintiff was subjected to Defendants' wrongful and unconstitutional conduct as alleged herein in a particularly egregious, conscience-shocking manner. The Defendant's use of local police against Plaintiff must be of extreme concern to the Court due to the applicability of the method elsewhere against anyone. It is especially troubling that local police showed fealty and a sense of affiliation to Defendants that is not afforded to Plaintiff or other typical citizens.

95. The acts and omissions of Defendants acting in their individual capacity and under color of law as alleged herein, were malicious, punitive, and in reckless disregard of Plaintiff's Rights.

96. As a result, punitive damages in an amount to be determined by a jury should be awarded against Defendants to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future.

Eighth Amendment – Protection Against Cruel and Unusual Punishment

The Court must understand the immense social problem that is completely contradictory to American Jurisprudence. Immediate and total effect of internet defaming in advance of court determinations constitutes de facto Cruel and Unusual Punishment. Whether found guilty or not, the social stigma and lack of employment is instant and total upon arrest or filing of District Civil employment charges. The courts have not considered this aspect as it relates in particular to situations where powerful entities such as Defendants use very significant resources against the undefended low level worker. The immediate effect is extremely punishing economically, socially, and in all other fashions. In case of Plaintiff, jailing and Defendant-induced use of ankle bracelet monitor is intrusive in a dirty way and totally halts any form of normal human interaction without providing any proven protection to anyone. They are inappropriate to the un-tried peaceful citizen. Plaintiff asks the Court to consider the effects of Defendant's long-term, planned actions and omissions and realize their methodology is used against others all the time as a business model they perceive to be effective when in fact it is highly illegal and very punishing to the low level worker. Defendants may be perpetrating the same all over.

9-3-13 Andrew G. Clark  Pro Se v. Wells Fargo et al, Ogletree Deakins et al, and Securitas Corp. et al     - 32 -

EXHIBIT 5
Page 32 of 41

Plaintiff was hauled out his home, chained and jailed and forced to endure legal processes manufactured by Defendants while lacking employment due to their actions. The effect on career and social relationships was immediate and total Ghettoization. This is presented to the Court in order to obtain a ruling that broadens the use and loosens the requirements of the Ward test to better protect citizens and weaker entities placed into courts by larger entities such as Defendants who do it as part of their ongoing criminal activity as Complained.

### COUNT 11

#### Defamation, Libel, and/or False Light Invasion of Privacy

97. Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding or following paragraphs of the Complaint as if set forth fully herein.

98. Defendants caused the police actions that resulted in extreme defaming within the community due to internet access of the records in advance of facts, as described in prior paragraphs.

99. Defendants published significant incorrect criminal data in various public court records as described in prior paragraphs. Defendants obtained the material and used it knowing it was incorrect and with the sole purposes of defaming Plaintiff as part of their Obstruction of Justice charges filed within this Complaint.

100. Common internet search engines such as Google, Yahoo, Bing, etc., when provided with just a name and city (for example) will show any related PACER records among the first choices. Placing material into PACER or sealing PACER selectively therefore constitutes "publication" that has far greater access and longevity than traditional publication. Defendants collected emotional fax material they attributed to Plaintiff from their office fax machines and placed it into Courts. The material had no relevance to the charges or evidence in front of the Courts. Defendants sealed significant amounts of factual evidence in PACER without hearing. That acts to defame Plaintiff by leaving a "one-sided" record in PACER and acts to conceal Evidence.

9-3-13 Andrew G. Clark  Pro Se v. Wells Fargo et al, Ogletree Deakins et al, and Securitas Corp. et al      - 33 -

EXHIBIT 5
Page 33 of 41

101. Plaintiff's website presentation of the same data does not constitute "publication" in the same context because: 1) Plaintiff can remove it at any time. Material in PACER and other official systems is permanent and/or difficult to remove. 2) Users of data such as employers or personal contacts will, presumably, be more interested in official records and not material on a personal website which is removable as noted. 3) Internet search engines favor commercial and official information and put low priority on rarely visited personal websites.

102. Defendants' statements made and/or released in District Court or the OSHA proceeding as alleged herein were knowingly false, defamatory, and disparaging. They cherry-picked information to defame, such as not disclosing Plaintiff's credentials which included his CPA certificate and related experience and the SAFE ACT Registration to originate 'loans'. The omission of such facts constitutes the offenses set forth in this Charge.

103. Defendants are responsible for the publication of the false and misleading statements and irrelevant emotional material in the PACER system and records of the OSHA proceeding. Defendants caused the false and defamatory statements to be published with knowledge of their falsity and/or with reckless disregard as to their truth or falsity and without relationship to the matters in front of the Courts.

104. Defendants' false and defamatory statements were directed to the honesty, integrity, and reputation of Plaintiff constituting defamation per se.

105. As a direct and approximate result of Defendants' false and defamatory statements, Plaintiff has been damaged in an amount to be proven at trial. As a direct and proximate result of the conduct described in this Complaint, Plaintiff suffered irreparable harm, including damage to his reputation and good name, suffered severe emotional distress, adverse physical maladies and manifestations, family and personal relationships, and physical injury and/or harm.

EXHIBIT 5
Page 34 of 41

106. The acts and omissions of Defendants acting in individual and/or group capacity under color of law as alleged herein, were malicious, punitive, and in reckless disregard of Plaintiff's rights.

107. Defendant's conduct, which was performed in their capacity as private citizens and/or as a group, was done with the intent to harm Plaintiff in conscious disregard of causing significant harm to Plaintiff.  Defendants acted deliberately, overtly, and dishonestly.  Their motives were political and pecuniary and so improper and their conduct so oppressive, outrageous, and intolerable that punitive damages are warranted.

108. As a direct and proximate result, punitive damages in an amount to be determined by a jury should be awarded against the Defendants to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future.

**COUNT 12**

Violation of 42 U.S.C. § 1983—Substantive Due Process

109. Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of the Complaint as if set forth fully herein.

110. Defendants' conduct as alleged herein violates the laws of the United States:  Conspiracy against Rights, in violation of 18 U.S.C. § 241;  under color of Law, in violation of 18 U.S.C. § 242; and all other violations and/or crimes as specified within the Charges of this Complaint or arising from them in the future.

111. At all times material hereto, all Defendants were acting under color of law and in their capacity as employees and/or agents of Defendants.  The wrongful conduct of Defendants alleged herein also constitutes violations of the United States Constitution, including but not limited to Amendments I, IV, V, and XIV, in that Plaintiff was deprived of privileges and

immunities guaranteed to all citizens of the United States, was subjected to retaliatory conduct, invasion of privacy, malicious and selective prosecution, and was sued civilly and criminally without proper cause, with an unconstitutional, pecuniary/political motive and malice, and without equal protection or due process in an attempt to chill Plaintiff's free speech, and to intimidate, harass in order to discredit Plaintiff's FBI and other Agency filings, and exact revenge for and to conceal duly reported financial misconduct in accordance with Law affecting his employment and livelihood.

112. As a direct and proximate result of Defendants' wrongful conduct as alleged herein, Plaintiff's constitutional rights were violated and he has suffered and has been injured. The wrongful conduct of the Defendants as alleged herein was undertaken with malice and/or with improper and unconstitutional motives.

113. The acts and omissions of the Defendants acting in their individual capacities and under color of law as alleged herein, were malicious, punitive, and in reckless disregard of Plaintiff's rights.

114. In its totality, Defendants' entire course of conduct against Plaintiff as set forth in the preceding allegations of the Complaint (and all other allegations that may arise) was arbitrary, irrational, extreme, outrageous, unjustified by any governmental interest, beyond all possible realms of decency; it also shocks the conscience and constitutes a gross abuse of individual, corporate and collective authority. Their tactics are tantamount to an expensive "mob hit" on the law-abiding citizen and whistleblower-employee who reported in advance to FBI, etc.

115. As a result, punitive damages in an amount to be determined by a jury should be awarded against the Defendants to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future against others.

**Count 13**

Violations of Occupational Safety and Health Act of 1970 (Public Law 91-596)
Violations of ORS 654.001 "Oregon Safe Employment Act"

116. Plaintiff re-alleges and fully incorporate the allegations set forth in each of the preceding and following paragraphs of this Complaint

117. Plaintiff was affected and harmed as described within the complaint by Defendant violations of cited employment law. Defendants both involved police and security forces in the workplace that represented a grossly unreasonable response to their strategically-imagined threats and to fax communication to and within the workplace. WFB, WFHM, WFC used guards to "paint" a threat after employment to further their overall conspiracy, actions, and omissions as described within this Complaint. That frightened and confused the workers. It created an unsafe workplace as police and sometimes the guards were armed which increases the probability of accidental shootings (for example).

118. Both Defendants responded illegally to fax material to their offices by not responding in a reasonable fashion as provided for by the Law. The common person when confronted with an unwanted but identified fax communication, telephone call, or email first simply "blocks" the incoming telephone number/email address or promptly destroys irrelevant fax material. In this case, Defendants are shown to:   1) emotionally pretext a fax response by Plaintiff
( 2) have accepted or routed the faxes elsewhere  (3) placed them into court in order to defame and punish Plaintiff   (4) then claimed they were a workplace stalking threat and once again involve armed police response. It is a form of harassment perpetrated by the Defendants.

119. Workplaces such as Ogletree Deakins have the obligation under the laws cited to use reasonable methods to ensure workplace safety. Blocking a fax number normally takes one minute or less and has no marginal cost to a company as a low level staff can perform the

function in the course of their duties.  Instructing low level staff to destroy irrelevant, unwanted fax material upon receipt and to not discuss it with others is another solution.   Use of police and trumped up criminal charges against Plaintiff represents an unreasonable and illegal response that endangers the workers and the general public.

### COUNT 14

#### Gross Negligence

120. Plaintiff re-alleges and fully incorporates the allegations set forth in each of the preceding and following paragraphs of this Complaint.

121. Defendants have both statutory and lawful duties of care to Plaintiff and all citizens when performing the functions of their positions. Defendants owe a duty of care to Plaintiff with respect to conducting criminal and/or civil accusations investigations and prosecutions.

122. Defendants are legally responsible for the management of the civil processes they file against citizens and/or criminal and/or the filing of police reports based upon accurate information.  That includes the establishment and implementation of policies, procedures, and protocols that govern the fact-finding and litigation against worker-citizens, processing, handling, and management of civil processes and police reports against citizens and litigation against the citizen-worker within their control. Their responsibility includes making certain that such policies, procedures, and protocols satisfy all federal and state standards which apply to banking and mortgage originations and all other laws.

123. Defendants are legally responsible for the screening, hiring, training, retaining, and supervision of all employees and agents who have responsibility for the investigation, processing, handling, and management of civil and/or criminal allegations and civil certain that such screening, hiring, training, retaining, and supervision of such employees and agents satisfy all federal and state standards, including the SAFE Act, Dodd-Frank Act, Sarbanes-Oxley, etc.

124. Defendants breached their duties owed to Plaintiff, as alleged in this Complaint, by (inter alia), failing to conduct the duties of their positions with reasonable care; failing to establish and implement proper policies, procedures, and protocols governing the investigation, processing, handling, and management of civil and/or criminal allegations and civil prosecutions in their control; and failing to properly screen, hire, train, retain, and supervise employees and agents who have responsibility for the investigation, processing, handling, and management of criminal complaints to the police regarding citizen-workers and litigation that is within their control and by which they profit.

125. Defendants' breaches of their duties owed to Plaintiff directly and proximately caused Plaintiffs to suffer damages in an amount to be proven at trial.

## COUNT 15

### Conspiracy Against Rights, Violations of 18 U.S.C. § 241

126. Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding and following paragraphs of the Complaint as if set forth fully herein.

127. The wrongful conduct of the Defendants, as alleged herein, was undertaken pursuant to an agreement or meeting of the minds among them. Defendants acted in concert to violate Plaintiff's constitutional rights, chill his free speech and retaliate, discredit, defame and conceal his detailed Agency reports, and to intimidate, harass, and exact revenge for prior reporting of suspicions of their crime to FBI (etc.) in accordance with law and in pursuit of his rights.

128. During at least part of the time in which the acts of conspiracy were engaged in, the Defendants were acting outside the course and scope of their employment because they were acting solely to further their own personal, political, or pecuniary interests in a manner that was actually detrimental to their respective employers.

129. Defendants' acts and/or omissions as alleged herein to defame, pursue and conduct the criminal allegations and civil litigation of Plaintiff, were undertaken pursuant to a conspiracy among the Defendants to cause injury to Plaintiff and to violate his constitutional rights and to continue to tamper with and retaliate for the earlier FBI filings in accordance with the Law in order to conceal and obstruct justice as demonstrated by their egregious actions and omissions.

130. As a direct and proximate cause of the Defendants' conspiracy, Plaintiff was damaged as set forth within the Complaint. His ability to perform his family responsibility relating to retarded adult offspring was affected along with his livelihood and all other aspects of the life he worked hard for so long to achieve. His ability to provide his retarded adult offspring health and dental insurance and other care has been obliterated. His constitutional rights were violated by Defendants. His own ability to survive was jeopardized by Defendants as described.

131. The acts and omissions of the Defendants in furtherance of their conspiracy, acting in their individual or collective capacities and under color of law, were malicious and/or in reckless disregard of Plaintiff's rights.

132. The acts and omissions of the Defendants acting in their individual capacity and under color of law as alleged herein, were to further their personal and political agendas and were malicious, punitive, and in reckless disregard of Plaintiff's rights.

133. As a result, punitive damages in an amount to be determined by a jury should be awarded against the Defendants to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future.

EXHIBIT 5
Page 40 of 41

**JURY TRIAL**

Plaintiff hereby requests a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for damages for judgment, jointly and severally, against Defendants as follows:

(a) General damages in an amount to be proven at trial;

(b) Punitive damages in an amount deemed just and reasonable as to the causes of action alleged herein;

(c) Costs and attorneys' fees against all Defendants as to the causes of action alleged under the Constitution and laws of the United States, pursuant to 42 U.S.C. § 1988;

(d) Treble damages and attorneys' fees against all Defendants as to the causes of action alleged under 18 U.S.C. § 1961, et seq.

(e) The costs of litigation;

(f) All remedies provided by 42 U.S.C. § 1983, 18 U.S.C. § 1961, et seq; and

(g) Such other and further relief which may seem just and reasonable under the circumstances.


RESPECTFULLY SUBMITTED AND SWORN TO this _____ day of September, 2013


_____

Andrew G. Clark Pro Se

3270 Stoney Ridge Rd.

Eugene, OR 97405

541-510-3915    541-636-3662

**Steven W. Seymour, OSB No. 75332**
SWS@SamuelsLaw.com
SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, Oregon  97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

Of Attorneys for Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Leah Lively,
David P.R. Symes, Elizabeth Falcone, Amanda Bolliger, Kim Ebert, and
Christopher Mixon

IN THE UNITED STATES DISTRICT COURT OF THE STATE OF OREGON

DISTRICT OF OREGON

Eugene Division

| | |
|---|---|
| ANDREW CLARK,<br><br>                                Plaintiff,<br><br>                    v.<br><br>WELLS FARGO BANK, N.A., et al,<br><br>                                Defendants. | NO. 6:13-cv-01546-AA<br><br>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR APPOINTMENT OF GUARDIAN AD LITEM FOR PLAINTIFF, OR IN THE ALTERNATIVE, FOR DISMISSAL<br><br>Pursuant to Federal Rule of Civil Procedure 17(c)<br><br>Request for Oral Argument |

## 1.  INTRODUCTION

The plaintiff is mentally incompetent to understand the meaning and effect of the legal

proceedings he has instituted.  As a consequence, the court should set these matters for a hearing

for the purpose of the determining whether there is cause to appoint a guardian ad litem.  If the

court orders a mental examination, and the plaintiff refuses to cooperate, the court should dismiss

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

07180-00002:356763

EXHIBIT 6
Page 1 of 13

the plaintiff's complaint.

## 2. BACKGROUND

Clark (55) is a former employee of Wells Fargo. He was hired in September 2009 as a home loan officer in Eugene, Oregon.

In about April 2011, Clark began exhibiting signs of erratic behavior. At that time, he was disciplined by Wells Fargo for unprofessional conduct in the workplace.

In May 2011, Clark filed a Department of Labor complaint[1] against Wells Fargo for alleged violation of the Sarbanes-Oxley Act. Ogletree, Deakins, Nash, Smoak & Stewart, P.C. (hereinafter "Ogletree") was hired by Wells Fargo to defend that complaint.

Clark's erratic behavior continued. He was disciplined on June 2, 2011, for workplace behavior (altercation with his supervisor) and was terminated on June 28, 2011.

In July 2011, Clark was cited for trespass at his former place of employment.

In August 2011, Wells Fargo learned that Clark was posting confidential Wells Fargo customer information on his public website. His refusal to remove that confidential information led to Ogletree filing a complaint for injunctive relief in federal court on the behalf of Wells Fargo. The lawsuit sought a temporary restraining order, preliminary injunction and permanent injunction. Ogletree was successful in obtaining a temporary restraining order and preliminary injunction requiring Clark to remove the confidential client information, which he eventually did.

During the litigation, Clark, appearing pro se, engaged in a pattern of offensive, obscene, sometimes lurid, and often hostile communications with Ogletree and their client, Wells Fargo. Some of these communications were styled as "pleadings" and many of them were direct communications to the Ogletree attorneys and staff.

---

[1]  Clark's claim was filed under Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, Title VII of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A, and the implementing regulations found at 29 C.F.R. § 1980.

Page 2 -  MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR APPOINTMENT OF GUARDIAN AD LITEM FOR
PLAINTIFF, OR IN THE ALTERNATIVE, FOR DISMISSAL

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

07180-00002:356763

EXHIBIT 6
Page 2 of 13

The DOL case was dismissed on August 9, 2012 on Wells Fargo's Motion for Summary Decision. The federal case was resolved in Wells Fargo's favor on its motion for summary judgment on October 5, 2012. In that case, Judge Hogan issued a permanent injunction prohibiting Clark from posting confidential client material on his public website, and found Clark in contempt, based on his inappropriate communications.

Resolution of these cases did not, however, abate Clark's deluge of offensive and threatening communications to Ogletree and its attorneys. Clark's communications continued on an almost daily basis through his arrest on July 25, 2013. At that time, the tone and content of his communications appeared to be growing more aggressive.

Clark sent these communications, not only to Ogletree's Portland office, but also to several of their offices around the United States. These communications have also been sent to random attorneys in Oregon and other states and to the Oregon State Bar.

By May 2013, there was no reason to believe that these communications will cease without judicial intervention. Therefore, on May 30, 2013, plaintiff's course of conduct against Ogletree and one of its attorneys, Leah Lively (hereinafter, collectively, the "Victims") was presented to Detective Anthony D. Veach, Violent Crimes Unit, Eugene Police Department (Exhibit 1, with redactions for Victims' protection). After further investigation, Detective Veach and counsel for the Victims presented this case to the Lane County Prosecutor, who issued a 10-count criminal complaint against the plaintiff for stalking Ogletree Deakins and Leah Lively (Exhibit 2).

Plaintiff was arrested on July 25, 2013 and eventually released on $200,000 bail with conditions prohibiting him from contacting the Victims and limiting his mobility to the Eugene area (Exhibit 3). This federal lawsuit followed.

Page 3 -   MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR APPOINTMENT OF GUARDIAN AD LITEM FOR
PLAINTIFF, OR IN THE ALTERNATIVE, FOR DISMISSAL

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

07180-00002:356763

EXHIBIT 6
Page 3 of 13

### 3.  FACTS WHICH RAISE ISSUES OF COMPETENCY

**A.    Plaintiff's Conduct During Prior Litigation.**

During the Department of Labor and federal court proceedings which concluded in late 2012, the plaintiff engaged in unconscionable conduct which not only confused and often offended the tribunals, but also failed to articulate a cogent advocacy on the plaintiff's own behalf.

The following are some examples of the plaintiff's pleadings in those proceedings:

1.    From the Department of Labor case no. 2012-SOX-00003:

a.    Clark's Motion for Reinvestigation of Initial Retaliation Complaint; Exhibit 4.

b.    Clark's Motion to Find an Attorney in Contempt of Court and Sanction with Prejudice (including a motion for DOL/OSHA investigation into specific corruption of DOL in this case by Leah Lively) Exhibit 5.

2.    From U.S. District Court Case No. 6:11-cv-6248-HO:

a.    Clark's Motion for Separate Trial (Application of Anti-Cartel; Application of R.I.C.O.; Regulations Against Plaintiff and/or Securitas, Inc., Joindered (sic)).  Exhibit 6.

b.    Clark's Affidavit and Motion to Augment Record (including Motion to Remand to Congress for Hearing) Exhibit 7.

**B.    Plaintiff's Conduct Outside and After Prior Litigation.**

During and after the prior litigation, plaintiff has engaged in repeated and unwanted contact with Ogletree which has caused Ogletree, and its attorneys and staff, reasonable apprehension regarding the personal safety of the Ogletree attorneys and staff.  That evidence consists, in material part, of the following written and video communications, which are attached as Exhibits 8 through 30:

Page 4 -  MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR APPOINTMENT OF GUARDIAN AD LITEM FOR
PLAINTIFF, OR IN THE ALTERNATIVE, FOR DISMISSAL

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

07180-00002:356763

EXHIBIT 6
Page 4 of 13

8.    Undated fax which reads in part:

"ATTORNEY OGLETREE DEAKINS:   CHILD RAPISTS.
CHILD KILLERS.  Your Child is NEXT."

9.    Email dated March 8, 2012 10:56 a.m. which reads in part:

"I hope what you did to me happens to you or your kids.  I
really do so you can FEEL it.  . . You will suffer as you made
me.  You are all sick animals and you must all be dealt what you
dealt to me."

10.    Email dated June 20, 2012 1:06 a.m. which reads in part:

"You are abject criminals of the very most obvious sort.  I am
not talking about "torts" . . . you are Criminals.  Your action is
SLAPP and it is tandem to RICO.  And then YOUR FIRM tries
to BURN ME MORE?  Bring it ON, Ms. Lively. . . Bring it On
if that is what YOU want."

11.    Email dated August 2, 2012 6:30 p.m. which reads in part:

"You freaks are going down.  There will be nothing left.  You
will be living in tents eating bugs for what you did.  Ms. Lively:
get ready for buying clothing at Salvation Army Counters after
the 5 year stretch."

12.    Email dated August 8, 2012 10:39 p.m. which reads in part:

"Bunch of sick fuks (sic), you will get your payback each day as
you have to live with yourself.  Not much longer kiddos, not
much longer.  Infowars are ON pigs!  Thank you for stealing
and crushing.  You all suck except people who want to look at
this horror and actually help.  thanks u."

13.    Fax dated 9/26/2012 12:21 p.m. which reads in part:

"Never again will a Jewish Person or Any Person be the Victim
of a Crime Against Humanity without Apocalyptic Response.
Now I am impoverished by Wells Fargo, they refuse to politely
Settle the Matter and acted to destroy me utterly."

14.    Fax dated April 05, 2013 1:22 a.m. which reads in part:

"4.4.13, Hate-O-Gram . . . Charges Against Portland Attorneys
Leah Lively, David Symes and Wells Fargo Security Agent
Martin Ogno.  It is possible Leah Lively's husband was
involved. . .

Page 5 -   MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR APPOINTMENT OF GUARDIAN AD LITEM FOR
PLAINTIFF, OR IN THE ALTERNATIVE, FOR DISMISSAL

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

07180-00002:356763

EXHIBIT 6
Page 5 of 13

They are the worst of the many anal worms who attacked me. They go first. It will taken (sic) down to the level of the process server. The Bar Association is going to be decertified. The local judges will be shipped out on rail after tar and feathering. One of the sickest most disgusting blots on the planet is the used-tampon of a beast named Leah Lively who is a filthy stinking corporate whore with intellectual Ebola. She thinks she is pretty. She is Ghastly Ugly. Her ugliness inside is so horrific it ruins an otherwise decent looking woman. . . Bust them, impoverish them, put them on the streets . . . I will start all-out-legal-war shortly due to necessity."

15.     Fax dated 4/13/2013 6:57 a.m. which reads in part:

"4.12.2013 Christopher Mixon Ogletree Deakins et al . . . I must now ramp up neutralization of legal opposition forces. There is no doubt in my mind all Attorney at Ogletree Deakins with CLIENTS will be finding another place to work within 30 days leaving the rest stuck with all the bills and no income and you and your families will possibly die on the streets. . . That is what shall be delivered to you and all who did Wrong to Me. What you dished out will be served Cold and in Spades and Beyond Comprehension."

16.     Fax dated 4/18/2013 8:51 a.m. which reads in part:

"Ogletree Attorney are Know-Nothing Perverted Anal Worms Who Rape, Kill, and Eat our Children . . . **Workers: Lock & Load NOW – Annihilate Stupid Overpaid Management.**"

17.     Fax dated 4/20/2013 10:10 a.m. which reads in part:

"BLAME: Ogletree Deakins Employment Law . . . They are a mindless, expensive, know-nothing Boilerplate Legal Filing Dumping Machine. Their piles of legal crap may impress the uneducated but it is treasonous tripe from the Rotted Fetid Ogle Tree. They are the Death of Intellect, the Death of the Worker. They are the Death of their Clients and all of America. Their rapacious tyranny must End. Drown them in Feces. Thank you very much."

18.     Fax dated 4/21/2013 12:15 a.m. which reads in part:

"Ogletree Deakins Attorney are cheating fee-gouging Pus-Filled Anal Worms of Holocaust. They are expensive, know-nothing Gaping Legal Rectums Grunting Out Fecal Filings in Courts. Their boilerplate piles of random idiocy may impress others as stupid as them but it is treasonous Ebola-infected tripe from the Rotted Ogle Tree of Homicide. They are the Death of Intellect, the Death of the Worker. They are the Death of their Clients and all of America. Ogletree rapacious tyranny by fear and

Page 6 -   MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR APPOINTMENT OF GUARDIAN AD LITEM FOR
PLAINTIFF, OR IN THE ALTERNATIVE, FOR DISMISSAL

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5ᵗʰ Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

07180-00002:356763

EXHIBIT 6
Page 6 of 13

degradation of the American Worker must End."

19.   Fax dated 4/24/2013 7:53 a.m. which reads in part:

"Leah and Ogletree: There is a lot more to this meets the eye. This was among correspondence sent to Ms. Lively. I will let her show you the **hilarious ones where I suggested we drop the case and have loving sexual relations instead.**"

20.   Fax dated 4/24/13 8:15 a.m. which reads in part:

"Leah and Ogletree: There is a lot more to this meets the eye. This was among correspondence sent to Ms. Lively. I will let her show you the **hilarious ones where I suggested we drop the case and have loving sexual relations instead**. They were socially appropriate but direct. . . She and all others are "hung" by the "Cherry Picker Fallacy."

21.   Fax dated 4/27/2013 10:00 a.m. which reads in part:

"Leah Lively, Ogletree Deakins Attorney are going to be Toasted. At a minimum they will be disbarred and shamed until they turn to dirt. More likely: life in prison or the death penalty. You think I am kidding? I am not. I have not heard from them on Settling this . . . not from Wells Fargo et al either. *I will wait a short time then you will Be Punished Severely*."

22.   Fax dated 4/27/2013 10:59 a.m. which reads in part:

"Ogletree Deakins and most attorney are fee-pretexting, fee-gouging Highwaymen of the lowest order. . . Let us make an example of them using Tar and Feathers first followed by hanging or firing squad . . . or at least disbarment and imprisonment."

23.   Fax dated 4/28/2013 4:17 p.m. which reads in part:

"Ogletree Deakins attorney are mean Faggots. . . **They use time-tested "Child Rape Concealment Tactics" . . . Once you see it for what it is, you will want them put to death. It is that bad: what they do and coordinated for the "Bank" should subject them to the Death Penalty.** It is such a novel, horrific crime that is appropriate. . . That allows speedy execution of the Perpetrators of Holocaust (Leah Lively and her cohorts). It allows them to be Hanged by the Neck Until Dead as we laugh but I think an Electric Chair would make better Youtube Art." (Note Exhibits 17, 18, 19, 20 and 22 references to a Youtube video which includes an image of an actor suffering death on an electric chair)

Page 7 -   MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR APPOINTMENT OF GUARDIAN AD LITEM FOR
PLAINTIFF, OR IN THE ALTERNATIVE, FOR DISMISSAL

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

24.   Fax dated 5/6/2013 10:24 p.m. which reads in part:

> "All attorney involved in this matter acted illegally and due to my Agency filing there is absolutely no exit and no escape for what Ogletree/Wells Fargo perpetrated unless we Work Together for Progress."

25.   Fax dated 5/7/2013 8:33 a.m. which reads in part:

> "NEW MUSIC ART Tool:  "Liars, Lawyers what's the Difference" with Extremely BLOODY VAMPIRE Attorney Footage @ about 2 minutes until the end.  <u>Art Film depicts District Court, The Judge oozes Blood from its freshly bitten arm into the Female Attorney's Mouth.  Another Female Attorney is smearing Blood all over herself in open COURT wearing almost nothing</u>. . .
>
> Dear Ms. Lively: . . .
>
> Nobody wants to think of a really good looking woman as a Felon subject to Life in Prison or the Death Penalty but that is your new reality."  (See Exhibit 22 which links to the referenced video.)

26.   Fax dated 5/7/2013 9:38 a.m. which reads in part:

> "<u>Art Film depicts District Court.  The Judge oozes Blood from its freshly bitten arm into the Female Attorney's Mouth. Another Female Attorney is smearing Blood all over herself in open COURT wearing almost nothing</u>. . .
>
> Dear Ms. Lively: . . .
>
> **The simplest solution is usually correct.  If you did that, it is <u>my opinion</u> that Specific act of Genocide for economic/political reasons tied into the Kidnapping, Concealment, and the arguably-treasonous violation of Dodd Frank/SOX in context with my Wells Fargo India Solutions reporting is what propels this matter into something so criminal, so novel, that it will require application of the Death Penalty on a Liberal Basis."**

27.   Fax dated 5/8/2013 7:27 a.m. which reads in part:

> "<u>Art Film depicts District Court.  The Judge oozes Blood from its freshly bitten arm into the Female Attorney's Mouth. Another Female Attorney is smearing Blood over herself in open COURT wearing a swimsuit</u>. . .
>
> Ms. Leah Lively Attorney Ogletree Deakins . . .

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

07180-00002:356763

EXHIBIT 6
Page 8 of 13

*I think Attorney REALLY screwed up. Let's compound it with an Act of Genocide to Retaliate. . .* Leah Lively:  Literally this- if you personally coordinated this by calling up security at Wells Fargo Bank in Portland to mess with mortgage biz in Eugene and then take my family away, you will be Dealt the Death Penalty if possible under the Law for your disgusting, treasonous, sickening coordinated act of Holocaust.  Disbarment is going to happen.  You appear to be the worst type of Bank Robber, Kidnapper, and Manipulator.  You are a blight upon the entire human race the likes never before seen if you actually did what it seems that you did."

28.   Fax dated 5/9/2013 5:33 p.m. which reads in part:

"URGENT UPDATE LEAH LIVELY/OGLETREE DEAKINS

" . . . my recent Vampire Video which was a Grave Yard Hit . . . over 12,000 views in just a couple days.  It is on sites or on youtube channel RisePatriot.  It can be "our song".  <3 4 u"

29.   Email dated May 17, 2013 7:32 p.m. Subject:

Andrew Clark dead at Albertson's Supermarket. http://www.youtube.com/watch?v=_Vb--OfEYwQ:)  This video is referenced in Exhibits 17, 18, 19, 20 and 21 and shows the scenes referenced in those Exhibits.  Screen shots of those scenes are attached to Exhibit 22.

30.   Fax dated 5/23/2013 1:22 p.m. which reads in part:

"Ogletree Deakins attorney Leah Lively . . . caused a police and SLAPP action against me. . . .  I have no option and in fact have the obligation to return in spades what Oppressors deal out . . . until a victim's last breath.  As I have written and said hundreds of times during the corporation/community anti-Sementic profiling and cleansing . . . Never Again.  This Jew will not go quietly.  I will scream loudly, clearly, daily . . . and I will make sure to bring as many of my oppressors with me to the same legal graveyard of ghettoization and defaming . . . endless lawsuits against you and your companies and massive negative publicity.  Endless 'smearing.'  . . .  The innocent-but-rich executives will be "perp-walked and then sent to prison."

Another uncommon feature of Clark's campaign was its sheer volume.  The communications with the more threatening aspects are outlined above.  However, over the course of this campaign, Clark sent over 2,500 communications to Ogletree and other third parties.  This overwhelming barrage has been intimidating and bizarre if only because of the

Page 9 -   MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR APPOINTMENT OF GUARDIAN AD LITEM FOR
PLAINTIFF, OR IN THE ALTERNATIVE, FOR DISMISSAL

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

energy and intensity required to provide it.

**C.    Plaintiff's Repeated Complaints to the Securities and Exchange Commission, the Federal Bureau of Investigation, Congress and other Federal Agencies.**

Since the resolution of the prior litigation, plaintiff has purported to continue to file massive complaints with several federal agencies, the purpose of which is not ascertainable from those filings.  As examples, the following communications from plaintiff are provided:

A.    Filed with the Securities and Exchange Commission.

Plaintiff has purportedly filed the following complaints with the Securities and Exchange Commission as shown by the following exhibits:

(1)    Correspondence to SEC Chairman and Commissioners dated 5/31/13, Exhibit 31;

(2)    Report to United States Securities and Exchange Commission:    Wells Fargo/Andrew Clark dated 5/22/13, Exhibit 32;

(3)    Correspondence with a facsimile date of 5/21/2013, Exhibit 33;

(4)    Report to the United States Securities and Exchange Commission with a facsimile date of May 22, 2013, Exhibit 34;

(5)    Report to the United States Securities and Exchange Commission with a facsimile date of 5/24/2013, Exhibit 35;

(6)    Correspondence to SEC Chairman and Commissioners with a facsimile date 6/2/2013, Exhibit 36; and

(7)    Correspondence to Sean McKessy, Chief, SEC Office of the Whistleblower, dated 7/8/13, Exhibit 37.

B.    To the Attorney General of the United States, the following:

(1)    Correspondence dated 6/3/13, Exhibit 38;

(2)    Correspondence dated 6/6/13, Exhibit 39; and

(3)    Correspondence dated 6/28/13, Exhibit 40.

Page 10 - MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR APPOINTMENT OF GUARDIAN AD LITEM FOR
PLAINTIFF, OR IN THE ALTERNATIVE, FOR DISMISSAL

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

C.    Correspondence to the Senate Committee on Banking, Housing and Urban Affairs dated July 8, 2013, Exhibit 41.

D.    Correspondence to the Office of Labor Racketeering and Fraud Investigations, Department of Labor, dated 7/2/13, Exhibit 42.

E.    Correspondence to Richard S. Clark, Deputy Assistant Inspector General, dated 6/10/13, Exhibit 43.

F.    Correspondence to the Office of the Comptroller of the Currency, dated 6/7/13, Exhibit 44.

G.    Correspondence to the Central Intelligence Agency dated 4/2/2013, Exhibit 45.

### 3.  COURT'S AUTHORITY TO DETERMINE COMPETENCY

Once a factual issue has been raised as to whether a plaintiff is mentally competent to understand the meaning and effect of legal proceedings he has instituted, the court has the authority to conduct an inquiry regarding his competency.  That authority is based on a grant of power under Fed.R.Civ.P. 17(c), to determine whether a guardian ad litem should be appointed to represent a litigant in the pending civil action.  *Cintje v. Government of the Virgin Islands*, 95 F.R.D. 430, 431-432 (D.V.I. 1982).

When the competency of a party is raised, a court may require that party to submit to psychiatric examination, so that the court may have a medical basis for its decision on the necessity of appointing a guardian ad litem.  *Cintje* at 432.

If a party plaintiff refuses to submit to a court-ordered mental examination regarding his competency, the court may dismiss his complaint.  *Bodner v. Bodner*, 441 F.2d 1103, 1104 (5th Cir. 1971); *Cintje* at 432.

Further, the plaintiff's complaint is subject to dismissal if he refuses to permit a court-appointed guardian ad litem to act on his behalf.  *Gale v. Wagg*, 140 F.Supp. 6, 9 (E.D. Mich. 1956).

Page 11 - MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR APPOINTMENT OF GUARDIAN AD LITEM FOR
PLAINTIFF, OR IN THE ALTERNATIVE, FOR DISMISSAL

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

07180-00002:356763

EXHIBIT 6
Page 11 of 13

### 4. CONCLUSION

For the above reasons, the court should initiate proceedings to determine whether the plaintiff should be appointed a guardian ad litem.


Dated this 26th day of September, 2013.

SAMUELS YOELIN KANTOR LLP


By: /s/ Steven W. Seymour
STEVEN W. SEYMOUR, OSB No. 75332
Telephone: 503-226-2966
Facsimile: 503-222-2937
SWS@SamuelsLaw.com

Of Attorneys for Defendants Ogletree,
Deakins, Nash, Smoak & Stewart, P.C.,
Leah Lively, David P.R. Symes,
Elizabeth Falcone, Amanda Bolliger,
Kim Ebert, and Christopher Mixon


Page 12 – MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR APPOINTMENT OF GUARDIAN AD LITEM FOR
PLAINTIFF, OR IN THE ALTERNATIVE, FOR DISMISSAL

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

07180-00002:356763

EXHIBIT 6
Page 12 of 13

## CERTIFICATE OF SERVICE

I hereby certify that, on the date set forth below, I caused a true, exact, and full copy of the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR APPOINTMENT OF GUARDIAN AD LITEM FOR PLAINTIFF, OR IN THE ALTERNATIVE, FOR DISMISSAL** to be served on each of the following parties or persons:

> Andrew G. Clark Pro Se
> 3270 Stoney Ridge Road
> Eugene, OR 97405

by the following method:

☒  First Class Mail, postage prepaid          ☐  Hand Delivery

☐  Facsimile Transmission                     ☐  Overnight Delivery

☐  Electronic Mail

DATED:   September 26, 2013

SAMUELS YOELIN KANTOR LLP

By: /s/ Steven W. Seymour
STEVEN W. SEYMOUR, OSB No. 75332
Telephone: 503-226-2966
Facsimile: 503-222-2937
SWS@SamuelsLaw.com

Of Attorneys for Defendants Ogletree,
Deakins, Nash, Smoak & Stewart, P.C.,
Leah Lively, David P.R. Symes,
Elizabeth Falcone, Amanda Bolliger,
Kim Ebert, and Christopher Mixon

Page 1 – CERTIFICATE OF SERVICE

EXHIBIT 6
Page 13 of 13

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANDREW G. CLARK,

        Plaintiff,

    v.

WELLS FARGO BANK, N.A.,
WELLS FARGO HOME MORTGAGE,
and WELLS FARGO AND COMPANY,

        Defendants.

Case No. 6:13-cv-01546-AA
OPINION AND ORDER

_____

Andrew G. Clark
3270 Stoney Ridge Road
Eugene, Oregon 97405
    Pro se plaintiff

Christian Rowley
Peter D. Urias
Seyfarth Shaw LLP
560 Mission Street, Suite 3100
San Francisco, California 94105

David C. Campbell
Sharon C. Peters
Williams Kastner & Gibbs, PLLC
888 S.W. Fifth Avenue, Suite 600
Portland, Oregon 97204
    Attorneys for defendants

Page 1 - OPINION AND ORDER

EXHIBIT 7
Page 1 of 19

AIKEN, Chief Judge:

Defendants Wells Fargo Bank and Wells Fargo Home Mortgage[1] (collectively "Wells Fargo") move to dismiss plaintiff Andrew Clark's complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, Wells Fargo's motion is granted and this case is dismissed.

## BACKGROUND

Beginning in September 2009, Clark was employed by Wells Fargo as a mortgage originator. At some point during his tenure at Wells Fargo, Clark began compiling reports regarding the bank's alleged violations of the Sarbanes-Oxley and Frank-Dodd Acts; he transmitted this information both internally and to various government agencies, including the Federal Bureau of Investigation and Central Intelligence Agency. In June 2011, Clark was terminated for repeatedly displaying unprofessional conduct. He then posted Wells Fargo's confidential and proprietary records, including private customer information, on his website.

On July 18, 2011, the Eugene Police Department contacted Clark at his home because Wells Fargo reported that he was trespassing and had sent an email referencing genocide. Police officers warned Clark to avoid Wells Fargo property in the future. On July 29, 2011, the police arrested Clark for second degree municipal trespass. Plaintiff was held in the Lane County jail for 18 hours before being released. The trespass charge was later dismissed.

---

[1] Clark elected not to serve the other listed Wells Fargo entity – i.e. Wells Fargo and Company – because he no longer perceives it as a necessary party. Defs.'s Mem. in Supp. of Mot. Dismiss 4, 16; Pl.'s Resp. to Mot. Dismiss 2, 18. Accordingly, pursuant to Clark's stipulation, Wells Fargo and Company is dismissed as a defendant from this action.

Page 2 - OPINION AND ORDER

EXHIBIT 7
Page 2 of 19

In August 2011, Wells Fargo commenced a lawsuit seeking to enjoin Clark from publishing, controlling, disclosing, or retaining any of its equipment, confidential customer information, or trade secrets. Clark filed numerous motions, which, amongst other things, attacked Wells Fargo's counsel, Ogletree, Deakins, Nash, Smoak and Stewart, P.C. ("Ogletree"), and alleged that Wells Fargo was engaging in racketeering and retaliation; the Court denied each of Clark's motions. The Court, however, permitted Wells Fargo to file documents reflecting Clark's inappropriate correspondences under seal.

On October 5, 2012, after two hearings, the Court granted summary judgment in favor of Wells Fargo and entered a permanent injunction. See generally Wells Fargo Bank, N.A. v. Clark ("Clark I"), 2012 WL 4794156 (D.Or. Oct. 5, 2012). At that time, the Court held Clark in contempt for failing to "comply with standards of professionalism in all his communications with Wells Fargo and its counsel." Id. at *5-7. Clark sent hundreds of emails and faxes to Ogletree, some of which were threatening and/or obscene, and all of which "had little to no bearing upon [any] legal issue between plaintiff and defendant," despite being repeatedly instructed by the Court "to limit his communications to plaintiff's counsel's firm in Portland and to keep those to a strictly professional tone." Id. Thereafter, the Court denied several motions for reconsideration filed by Clark. See generally Wells Fargo Bank, N.A. v. Clark ("Clark II"), 2013 WL 2038561 (D.Or. May 14, 2013).

On July 18, 2013, police officers arrived at Clark's home to interview him about certain faxes and emails he had sent Ogletree and one of its attorneys, Leah Lively. Although Clark denied that

Page 3 - OPINION AND ORDER

EXHIBIT 7
Page 3 of 19

the communications at issue were threatening, officers warned him
if he continued to communicate inappropriately with Ogletree and
Lively, he may be criminally charged with stalking. On July 23,
2013, Clark sent another fax to Ogletree and Lively in
contravention of police orders. On July 25, 2013, Clark was
arrested and charged with ten counts of stalking; he was jailed for
six days and released with an electronic ankle bracelet after
posting bail.

On August 3, 2013, Clark initiated this lawsuit against Wells
Fargo, Ogletree, and Securitas Corporation ("Securitas"), as well
as certain individually named employees, alleging: (1) violations
of the Racketeer Influenced and Corrupt Organizations Act ("RICO")
(claims one through nine); (2) deprivation of his First, Fourth,
Fifth, Eighth, and Fourteenth Amendment rights in violation of 42
U.S.C. § 1983 (claims ten and twelve); (3) defamation (claim
eleven); (4) violations of the Occupational Safety and Health Act
("OSHA") (claim thirteen); (5) gross negligence (claim fourteen);
and (6) a conspiracy against constitutional rights in violation of
18 U.S.C. §§ 241, 242 (claim fifteen).[2] That same day, Clark
effectuated service on Ogletree and Securitas.

On September 26, 2013, Ogletree moved to dismiss Clark's
complaint or, alternatively, appoint a guardian ad litem. On
October 21, 2013, Securitas filed a motion to dismiss Clark's
claims. On October 24, 2013, pursuant to notification by the Lane

---

[2] Clark additionally lists libel, false light, invasion of
privacy, and violations of the Oregon Safe Employment Act as
causes of action without any specific allegations in support
thereof. The Court therefore declines to address these claims
further.

Page 4 - OPINION AND ORDER

EXHIBIT 7
Page 4 of 19

County Circuit Court, the Court stayed these proceedings pending resolution of the criminal stalking charges brought by Ogletree and Lively. On January 9, 2014, Clark entered into a plea agreement, which, in relevant part, precludes him from contacting Ogletree or its attorneys, except through counsel, for ten years.

On January 31, 2014, the Court resolved several motions filed by Clark. Notably, the Court dismissed Securitas and all of the individually named defendants pursuant to Clark's stipulations. Moreover, based on the terms of the plea agreement entered into by Clark and the Lane County District Attorney's Office, the Court also dismissed Ogletree from this lawsuit unless and until Clark retains counsel, leaving Wells Fargo as the only remaining defendant. Accordingly, the Court denied Securitas's and Ogletree's motions to dismiss is moot. On April 29, 2014, Clark effectuated service on Wells Fargo. On May 20, 2014, Wells Fargo moved to dismiss Clark's complaint.

## STANDARD OF REVIEW

Where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). For purposes of a motion to dismiss, the complaint is liberally construed in favor of the plaintiff and its allegations are taken as true. Rosen v. Walters, 719 F.2d 1422, 1424 (9th Cir. 1983). Bare assertions, however, that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." Ashcroft v. Iqbal, 556 U.S.

Page 5 - OPINION AND ORDER

EXHIBIT 7
Page 5 of 19

662, 681 (2009). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012).

## DISCUSSION

Wells Fargo contends that, "[g]iven Clark's failure to allege plausible facts supporting his claims, Clark's complaint and each Count thereof should be dismissed for failure to state a claim." Defs.'s Mem. in Supp. of Mot. Dismiss 3. In the alternative, "Wells Fargo joins Ogletree's Motion to Appoint a Guardian ad Litem, pursuant to Fed. R. Civ. P. 17(c), due to Clark's well-documented history of mental instability and harassment of opposing counsel." Id. at 16.

I.    Preliminary Matters

Three factual issues merit clarification before the Court reaches the substantive merits of Wells Fargo's motion.

A.    Remaining Parties

Clark asserts repeatedly that Ogletree and the Eugene Police Department are agents of or engaged in a conspiracy with Wells Fargo. See, e.g., Pl.'s Resp. to Mot. Dismiss 2, 32[3]; see also Compl. ¶¶ 50, 59, 62. Although Clark concludes that an agency relationship exists, none of his factual allegations demonstrate

---

[3] Ordinarily, "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Nevertheless, in light of Clark's pro se status, and in order to provide the most complete review of this dispute, the Court considers new allegations contained in Clark's opposition, as well as the "evidence" he cites from his website, www.risepatriot.com, in evaluating Wells Fargo's motion.

Page 6 - OPINION AND ORDER

EXHIBIT 7
Page 6 of 19

that the investigating officers or Ogletree were subject to the control of Wells Fargo, except to the extent Ogletree performed legal services on behalf Wells Fargo. See Eads v. Borman, 351 Or. 729, 735-36, 277 P.3d 503 (2012) (defining an agency relationship). Likewise, his assertions concerning a conspiracy are vague and conclusory, such that they lack the requisite specificity to be considered plausible. Regardless, as Clark acknowledges, Ogletree is no longer a party to this lawsuit. Further, the Eugene Police Department and/or the City of Eugene are not, and never have been, named as defendants. Thus, neither Ogletree's nor the police's alleged actions are actionable at this stage in the proceedings.

   B.   Underlying Criminal Conviction for Stalking

   Clark devotes considerable portions of his complaint and response to collaterally attacking his criminal conviction for stalking. See, e.g., Pl.'s Resp. to Mot. Dismiss 10-11, 21; see also Compl. ¶¶ 21, 51, 59. Clark also filed a motion with this Court impugning his plea deal and indicating that he would appeal that conviction. See generally Pl.'s Mot. to Augment the Record.

   Initially, this Court is without authority to overturn or otherwise alter a state court judgment in this context. See Weems v. Or. Univ. Sys., 2012 WL 4093539, *3-4 (D.Or. Sept. 17, 2012), aff'd, 2014 WL 1409992 (9th Cir. Apr. 14, 2014) (explaining the Rooker-Feldman doctrine, which "bars any suit that seeks to disrupt or undo a prior state-court judgment, regardless of whether the state court proceeding afforded the federal court plaintiff a full and fair opportunity to litigate [his] claims") (citations and internal quotations omitted).

   Further, because Clark was criminally convicted, the alleged

Page 7 - OPINION AND ORDER

EXHIBIT 7
Page 7 of 19

actions of Wells Fargo that precipitated his arrest are not litigable at this time. This is especially appropriate given that, as discussed above, there are no well-pleaded allegations indicating that Wells Fargo was responsible for or involved in the charges Ogletree and Lively filed against him. In other words, any allegations of kidnaping or wrongdoing relating to this event are not plausible. In fact, Clark's plea agreement, wherein he stipulated to one count of stalking, establishes that Ogletree's and Lively's complaints, as well as the actions of law enforcement in charging him and taking him into custody, were legally valid. Accordingly, Clark's claims that are premised on his July 2013 interactions with the police and subsequent arrest and criminal conviction fail.

C.   Previous Lawsuit with Wells Fargo

Clark's claims are based, in part, on the alleged injustices he suffered pursuant to his previous litigation with Wells Fargo, including the fact that the Court permitted Ogletree to file certain documents under seal. See, e.g., Compl. ¶¶ 9-32, 39-42, 44; see also Pl.'s Resp. to Mot. Dismiss 38. Clark, however, did not appeal that lawsuit. In any event, because those issues were previously litigated between the same parties and resulted in a final judgment, they cannot form the basis of this action. See generally Clark I, 2012 WL 4794156 (D.Or. Oct. 5, 2012); see also Clark II, 2013 WL 2038561 at *1 (denying Clark's motions regarding a mistrial, RICO claims, and to unseal PACER accounts); Siegel v. Fed. Home Loan Mortg. Corp., 143 F.3d 525, 528-29 (9th Cir. 1998) (claim preclusion, also known as res judicata, "bars all grounds for recovery that could have been asserted, whether they were or

Page 8 - OPINION AND ORDER

EXHIBIT 7
Page 8 of 19

not, in a prior suit between the same parties on the same cause of action") (internal citation omitted). As such, to the extent this lawsuit involves related claims or causes of action, res judicata precludes re-litigation of those issues.

II.  Racketeer Influenced and Corrupt Organizations Act Claims

Clark alleges that Wells Fargo violated RICO by "actively corrupt[ing] local police with falsifications, innuendo, and abuse of authority to induce them to perform Plaintiff's removal from his home and related jailing," such that "their actions fully meet the definitions of kidnaping described in 18 U.S.C. § 1201." Compl. ¶¶ 62, 65. In addition, Clark asserts that Wells Fargo improperly filed documents under seal in its previous lawsuit, retaliated against him for "providing . . . the FBI [with] reports," and "intentionally harassed [him] by malicious prosecution of groundless civil and criminal offenses." Id. at ¶¶ 70-73, 78.

RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c); see also 18 U.S.C. § 1961(1) ("racketeering activity" includes any act "indictable" under certain enumerated federal criminal statutes).[4] To state a RICO claim, "a plaintiff

---

[4] Clark opposes dismissal, in part, because "the State of Oregon has its own set of Racketeering and Kidnaping laws [and Wells Fargo] has not discussed that aspect." Pl.'s Resp. to Mot. Dismiss 37. Clark's complaint only alleges claims under the federal RICO statute, such that it was unnecessary for Wells Fargo to brief Oregon's racketeering requirements. See, e.g., Compl. ¶¶ 60-78. In any event, any state law racketeering claims fail for the same reasons as Clark's federal RICO claims.

Page 9 - OPINION AND ORDER

EXHIBIT 7
Page 9 of 19

must plead facts establishing: (1) that the defendant; (2) through the commission of predicate criminal acts which constitute a pattern of racketeering activity; (3) directly or indirectly invests in, or maintains an interest in, or participates in; (4) an enterprise." See Hogan v. NW Trust Servs., Inc., 2010 WL 1872945, *10 (D.Or. May 7, 2010), aff'd, 441 Fed.Appx. 490 (9th Cir. 2011) (citation omitted). A pattern of racketeering "must be based on at least two acts of racketeering, must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." Cooper Indus., Inc. v. Lagrand Tire Chains, 205 F.Supp.2d 1157, 1165 (D.Or. 2002) (citations omitted).

Clark's RICO claims are defective in many respects. First, because Wells Fargo is the only remaining defendant, Clark's complaint fails to allege the existence of both a "person" and a distinct "enterprise," the affairs of which that "person" improperly conducts. See Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161-66 (2001) (explaining distinctness requirement). Second, Clark does not plead what was specifically communicated by Wells Fargo to the police or Ogletree, or when and by what means the alleged misrepresentations took place. See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004) (RICO claims based on a false representation must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation") (citation and internal quotations omitted). Third, although Clark makes general and conclusory statements about the predicate acts of tampering, destruction or falsification of records, and retaliation, he nonetheless neglects to provide the required specificity.

Page 10- OPINION AND ORDER

EXHIBIT 7
Page 10 of 19

Regarding his allegations concerning the predicate act of kidnaping, the only direct wrongdoing that Clark alleges against Wells Fargo is contacting the Eugene Police Department. See Pl.'s Resp. to Mot. Dismiss 33 ("I am not including the City of Eugene police as participants in RICO [instead] I allege and evidence that Defendant transmitted lies and used various forms of undue influence to affect illegitimate and illegal police activity"). Given that the police have an independent duty to investigate any report of potential criminal activity, this allegation is inadequate to state a RICO claim against Wells Fargo. See Kahre v. Damm, 342 Fed.Appx. 267, 268 (9th Cir. 2009) (legitimate law enforcement activity cannot serve as the basis of a RICO claim). In any event, Clark cannot establish the predicate act of kidnaping because he was not transported across state lines, which is a requisite element. See 18 U.S.C.§ 1201(a)(1).

Even if Clark's allegations of lawful arrest and litigation conduct are construed as predicate acts, he fails to evince a pattern of racketeering activity. Indeed, his complaint refers to a single scheme perpetrated by Wells Fargo: "Defendants all have a monetary, professional, and/or political benefit in kidnaping Plaintiff to terrorize and destable him in order to conceal their illegal activity." Compl. ¶ 64; see also SIL-FLO, Inc. v. SFHC, Inc., 917 F.2d 1507, 1516 (10th Cir. 1990) (pattern of illegal activity requirement unsatisfied where, "[w]hile the plaintiffs may have alleged a closed-ended series of predicate acts, they constituted a single scheme to accomplish 'one discrete goal,' directed at one individual with no potential to extend to other persons or entities"). Similarly, Clark does not assert facts

Page 11- OPINION AND ORDER

EXHIBIT 7
Page 11 of 19

sufficient for the Court to conclude that there is any continuing threat of criminal activity; he neither outlines any ongoing relationship with Wells Fargo, outside of this lawsuit, nor asserts that Wells Fargo engaged in these allegedly wrongful practices as "a regular way of conducting [their] ongoing legitimate business[es]." H.J. Inc. v. N.W. Bell Tel. Co., 492 U.S. 229, 242 (1989). For these reasons, Wells Fargo's motion is granted as to Clark's RICO claims.

III. 42 U.S.C. § 1983 Claims

Clark next asserts that Wells Fargo deprived him of his substantive and procedural constitutional rights, in violation of 42 U.S.C. § 1983, by reporting: (1) inaccurate information to the police, which resulted in his arrest and "internet defaming" via "the publication of the arrest 'mugshots' with summaries of charges"; and (2) to the District Court that he had sent threatening faxes and emails, which resulted in him being held in contempt. Compl. ¶¶ 79-96, 109-15.

To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that: (1) the conduct complained of deprived him of an existing federal constitutional or statutory right; and (2) the conduct was committed by a state actor or a person acting under color of state law. See L.W. v. Grubbs, 974 F.2d 119, 120 (9th Cir. 1992), cert. denied, 508 U.S. 951 (1993). In other words, there is no right to be free from the infliction of constitutional deprivations by private parties, "no matter how discriminatory or wrong." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (citation and internal quotations omitted). Courts employ "four different criteria" to identify state action: (1) public function;

Page 12- OPINION AND ORDER

EXHIBIT 7
Page 12 of 19

(2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus. <u>Kirtley v. Rainey</u>, 326 F.3d 1088, 1092 (9th Cir. 2003) (citations and internal quotations omitted).

Even assuming that Wells Fargo's alleged actions violated an established right, Clark's 42 U.S.C. § 1983 claims fail because he neglected to allege the requisite state action. Indeed, beyond concluding that "all Defendants were acting under color of law," Clark does not address how the state was involved in the alleged violation of his constitutional rights. Compl. ¶ 81. In any event, a private bank and its employees function to provide financial services to the community. This function, however, is not "traditionally and exclusively governmental." <u>Kirtley</u>, 326 F.3d at 1093; <u>see also</u> <u>Flagg Bros., Inc. v. Brooks</u>, 436 U.S. 149, 158 (1978) ("[w]hile many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State'"). Further, neither Wells Fargo nor its employees are appointed or paid by the state, and they act independently thereof. <u>See</u> <u>Parks Sch. of Bus., Inc. v. Symington</u>, 51 F.3d 1480, 1486 (9th Cir. 1995) (no joint action exists where "benefits of [state-law designated loan guarantor] flow directly to students, not to the state itself," even while "in a broad sense" conferring public benefits).

The state also does not direct a specific outcome in regard to the services Wells Fargo provides or the actions Wells Fargo takes in regard to its staff; rather, those decisions lie within Wells Fargo's discretion. <u>See</u> <u>Mathis v. Pac. Gas & Electric Co.</u>, 75 F.3d 498, 503-04 (9th Cir. 1996) (no state action where the plaintiff failed to present evidence that state officials participated in the

Page 13- OPINION AND ORDER

EXHIBIT 7
Page 13 of 19

actual decision to terminate him). As Clark points out, Wells Fargo is regulated by the government and is qualified to provide financial services pursuant to federal and state law. See Pl.'s Resp. to Mot. Dismiss 13. Yet "the mere fact that a business is subject to state regulation does not by itself convert its action into that of the State." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982). Moreover, Clark does not allege that the police participated in Wells Fargo's administration of financial services or in the development or implementation of Wells Fargo's polices.

In other words, Clark's contention that Wells Fargo, or Ogletree as its agent, and the Eugene Police Department were acting in concert with each other amounts to nothing more than a description of a citizen making a complaint and the officer making an independent judgment that an arrest was warranted. See Levi v. Safeway, 1994 WL 706341, *3-4 (N.D.Cal. Dec. 12, 1994), aff'd, 94 F.3d 652 (9th Cir. 1996) (no state action where, although the plaintiff "generally alleges multiple conspiracies to violate his rights [between the defendant, a private corporation, and the police], he has not stated any facts to support his conclusory allegations that these conspiracies existed"); see also Collins v. Womancare, 878 F.2d 1145, 1155 (9th Cir. 1989), cert. denied, 493 U.S. 1056 (1990) ("merely complaining to the police" or "executi[ng] a sworn complaint which forms the basis of an arrest" does "not convert a private party into a state actor") (citations omitted). In sum, Clark does not plausibly assert, nor can he, that the state has so far insinuated itself into a position of interdependence with or control over Wells Fargo that it could be considered a joint participant in the challenged conduct. See

Page 14- OPINION AND ORDER

EXHIBIT 7
Page 14 of 19

Torabi v. Wash. Mut. Bank, 2013 WL 6229349, *4 (S.D.Cal. Dec. 2, 2013) (private banks are ordinarily not state actors for the purposes of a 42 U.S.C. § 1983 claim). Wells Fargo's motion is granted as to Clark's 42 U.S.C. § 1983 claims.

IV.   Defamation Claim

Clark contends that Wells Fargo "caused the police actions that resulted in extreme defaming within the community due to internet access" and "collected emotional fax material they attributed to Plaintiff from their office fax machines and placed it into Courts." Compl. ¶¶ 97-108. Clark elaborates upon these allegations in his opposition, explaining that the first instance of defamation relates to a 1979 criminal conviction that Ogletree raised during his previous lawsuit with Wells Fargo; the second instance of defamation transpired via the allegedly false statements Wells Fargo or Ogltetree made to police officers. Pl.'s Resp. to Mot. Dismiss 46-47.

To allege a claim for defamation, the complaint must assert facts sufficient to establish that the defendant published to a third person a false and defamatory statement about the plaintiff. Marleau v. Truck Ins. Exchange, 333 Or. 82, 94, 37 P.3d 148 (2001). An absolute privilege exists, however, where the publication was consented to or made in the context of a judicial or quasi-judicial proceeding. Wallulis v. Dymowski, 323 Or. 337, 348-49, 918 P.2d 755 (1996) (citations omitted).

As a preliminary matter, in part because Clark never details what Wells Fargo communicated to whom, it is not clear from the face of his complaint that the allegedly defamatory statements were, in fact, false. Specifically, Clark does not dispute that he

Page 15- OPINION AND ORDER

EXHIBIT 7
Page 15 of 19

participated in criminal proceedings in 1979 or authored and sent the communications underlying the contempt order and his stalking conviction. See generally Compl.; see also Pl.'s Resp. to Mot. Dismiss 46 (noting only that his previous criminal "matters were legally expunged in the State of Oregon"). Regardless, the defamatory publications identified by Clark occurred during judicial proceedings and/or appear on his website. As such, assuming these allegedly defamatory actions can be properly attributed to Wells Fargo, Wells Fargo is protected by absolute privilege.

Finally, to the extent Clark attempts to distinguish his publication of the allegedly defamatory material from that of Wells Fargo, his argument is unavailing. Clark asserts "[a]ny content I placed on the Internet can be instantly removed by me [such that it] is not permanently defaming." Pl.'s Resp. to Mot. Dismiss 15. Yet permanence, or lack thereof, is not an element of defamation. Accordingly, the fact that Clark can remove content from his website but not a criminal database or court record is immaterial. Therefore, Wells Fargo's motion to dismiss is granted in this regard.

V.   Occupational Safety and Health Act Claim

Clark also alleges that Wells Fargo violated OSHA by refusing to block his fax number and employing "police and security forces in the workplace," both of which represented "grossly unreasonable response[s]" to his correspondences. Compl. ¶¶ 117-19. "OSHA does not provide a private right of action for employees to bring claims in federal court based on alleged violations of its provisions or associated regulations." Jacobsen v. N.Y.C. Health & Hosps. Corp.,

Page 16- OPINION AND ORDER

EXHIBIT 7
Page 16 of 19

2013 WL 4565037, *7 (S.D.N.Y. Aug. 28, 2013) (collecting cases);
Boyd v. Accuray, Inc., 2012 WL 4936591, *6 (N.D.Cal. Oct. 17, 2012)
("OSHA does not provide a private right of action"). Thus, Wells
Fargo's motion is granted as to Clark's OSHA claim.

VI.   Negligence

    Clark asserts that Wells Fargo was negligent in performing its
"duties of care to Plaintiff with respect to conducting criminal
and/or civil accusations" and are "legally responsible for . . .
the filing of police reports based on accurate information." Compl.
¶¶ 121-22.

    To state a negligence claim under Oregon law, plaintiff must
establish "(1) a duty that runs from the defendant to the
plaintiff; (2) a breach of that duty; (3) a resulting harm to the
plaintiff measurable in damages; and (4) causation, i.e., a causal
link between the breach of duty and the harm." Swanson v. Coos
Cnty., 2009 WL 5149265, *5 (D.Or. Dec. 22, 2009) (citing Stevens v.
Bispham, 316 Or. 221, 227 851 P.2d 556 (1993)). Whether a duty
exists is a question of law to be determined by the court. Brown v.
Far W. Fed. Sav. & Loan Ass'n, 66 Or.App. 387, 392, 674 P.2d 1183
(1984) (citation omitted). Generally, no duty exists where "a
private citizen merely lays the facts before a police officer and
the officer, relying on his judgment and discretion, makes an
arrest." Id. at 390 (citation omitted). Due to public policy
considerations, a person who mistakenly summons the police "cannot
be held liable for damages due to negligence in reporting the crime
or instigating the arrest." Id. at 392 (citation omitted).

    Here, the Court finds that these public policy considerations
preclude the imposition of a duty on Wells Fargo or its employees

Page 17- OPINION AND ORDER

EXHIBIT 7
Page 17 of 19

to investigate further Clark's purported criminal conduct before calling the police. Despite concluding that Wells Fargo's intent was malicious and retaliatory, there are no well-plead allegations evincing that Wells Fargo called the police in bad faith or otherwise did not reasonably believe that Clark imposed a threat or was trespassing. See Dauven v. U.S. Bank Nat'l Ass'n, 2010 WL 2640119, *6-10 (D.Or. June 7), adopted by 2010 WL 2640115 (D.Or. July 1, 2010). In fact, although Clark never specifically articulates what was false about Wells Fargo's communications with the police, there is no indication from the general factual recitations in Clark's complaint that Wells Fargo's statements were defamatory or otherwise inaccurate. Clark therefore cannot state a claim for negligence and Wells Fargo's motion is granted as to this issue.

VII. Conspiracy Against Constitutional Rights Claim

Lastly, Clark alleges that Wells Fargo violated 18 U.S.C. §§ 241 and 242 by engaging in a criminal conspiracy to defame him, deprive him of his rights, and impair "[h]is ability to preform his family responsibility relating to retarded adult offspring" and earn a livelihood.[5] Compl. ¶¶ 128-32. As criminal statutes, 18 U.S.C. §§ 241 and 242 do "not provide a person with a private right of action to pursue a claim for civil liability." Cooper v. Welsh, 2010 WL 3943000, *4 (E.D.Cal. Oct. 1, 2010) (citing Allen v. Gold

---

[5] Clark's complaint refers exclusively to 18 U.S.C. §§ 241 and 242; however, his response also cites to 42 U.S.C. §§ 241 and 242. See Pl.'s Resp. to Mot. Dismiss 17. The Court presumes that this was a clerical error and that Clark intended to exclusively assert a claim under 18 U.S.C. §§ 241 and 242, as 42 U.S.C. §§ 241 and 242, which govern public health research and funding, are inapplicable here. See Pl.'s Am. Resp. to Mot. Dismiss 2.

Page 18- OPINION AND ORDER

EXHIBIT 7
Page 18 of 19

Country Casino, 464 F.3d 1044, 1048 (9th Cir. 2006), cert. denied,
549 U.S. 1231 (2007); Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th
Cir. 1980)). As such, Wells Fargo's motion is granted.

### CONCLUSION

Wells Fargo's motion to dismiss (doc. 48) is GRANTED and this
case is DISMISSED. Clark's request for oral argument is DENIED as
unnecessary.

IT IS SO ORDERED

Dated this ___/___ of June 2014.

_____
Ann Aiken
United States District Judge

Page 19- OPINION AND ORDER

EXHIBIT 7
Page 19 of 19

## United States District Court for the State of Oregon

Wayne Morse Courthouse  405 East Eighth Ave. Eugene, OR 97401

Case Number: 6 14- CV - 01103 -TC

**Plaintiff: Andrew G. Clark**
3270 Stoney Ridge Rd.  Eugene, OR 97405
541.510.3915

Complaint Filed Under:
Civil Rights Violations 42 USC 1983
Civil Racketeering 18 USC 1964(c)
JURY TRIAL OR MEDIATION
DEMANDED

**Defendants:**

**City of Eugene, Oregon** Police Department/Police Auditor
Served to Mayor's Office  125 E. 8th Avenue  Eugene, OR 97401 *

**Lane County, Oregon** – Sheriff's Department and Jail
Served to Lane County Commissioners Public Window
125 E. 8th Avenue  Eugene, OR 97401 *

**State of Oregon** – District Attorney's Office for Lane County
and Pre-Trial Release Office.
Served to Public Window of District Attorney's Office
125 E. 8th Avenue  Eugene, OR 97401 *

Mailed to Director of the Oregon Dept. Administrative Services
Department of Administrative Services Executive Building
155 Cottage St. NE, U20  Salem 97301-3972 *

**Alex Gardner** – District Attorney for Lane County
Served to Public Window of District Attorney's Office *

**Wells Fargo Bank, NA**  Registered Agent for Oregon
Corporate Service Company 285 Liberty Street NE
Salem, OR 97301  via process server.

*Rule 4 (j) Serving a Foreign, State, or Local Government. (2) State or Local Government. A state, a municipal corporation,
or any other state-created governmental organization that is subject to suit must be served by: (A) delivering a copy of the
summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that
state's law for serving a summons or like process on such a defendant (ORS 30.275)

**Defendants**: Individuals know or suspected to be participants will be identified within this Notice of

Claim in order to provide a legal basis for racketeering claims which require known human 'actors' to be

identified in a Complaint against the organization which employs them.  I reserve the right to litigate

individuals in addition to any and all city, county, state or federal agencies not currently included.

Complaint: Clark v. City of Eugene, Lane County, State of Oregon et al, Wells Fargo Bank NA        Page 1 of 26

9117

EXHIBIT 8
Page 1 of 30

## Jurisdiction

District Court is the correct Court for this Complaint for these primary reasons:

1. It involves several Questions of Federal Law and Rights and Obligations Under the Constitution of the United States as well as the State of Oregon.

2. One of the defendants, Wells Fargo Bank is a company involved in interstate commerce and its headquarter office is located outside of Oregon.

**Sample Justice Department Publication Applicable to this Complaint of Civil Racketeering**
**http://www.justice.gov/usao/eousa/foia_reading_room/usam/title9/civrico.pdf**

## Plaintiff Statement Regarding Judicial Assignment:

Plaintiff was recently involved in a tangentially related  case 6.13.cv.01546.AA, to be Appealed. Plaintiff respectfully Demands of the Court to appoint a different Judge to this Complaint.

**Evidence Presentation Site:  www.RisePatriot.com**:  Only in the last several years has technology advanced to make such a presentation is possible.  It is an integral part of my Claims as it allows the Defendants to view and discuss the evidence with me.  So far, there is no indication they have in any meaningful and total context.  It is official police material, legally obtained and posted for review.  It is included here as if this were a hyperlinked PDF in an electronic filing.  I will expect that any attorney who responds to this material will respond to the evidence that is presented rather that submitting obstructive filings to avoid Discovery and Trial.  I assert for the record:  if a licensed attorney in any capacity files or accepts Defendant responses to dismiss my Complaint that do not specifically address the evidence presented to them implicates that attorney in the Racketeering being alleged and documented.   There is no known-to-me precedent for such an evidence presentation in a civil Complaint by a Citizen against corporate and government entities that includes such a complete papertrail and reasonable proof of allegations.   Actual Evidence will be Heard by a Court, not obstructed.

## Jury Trial Demanded.       Complaint - Claims for Relief of

Civil Rights Violations under 42 USC 1983.  Repeated violations of 18 USC 241 and 242 against me that constitute Conspiracy Against Rights under color of law.  Fabrication of crime and evidence.

Complaint:  Clark v. City of Eugene, Lane County, State of Oregon et al, Wells Fargo Bank NA        Page 2 of 26

EXHIBIT 8
Page 2 of 30

S. 1964(c)  Civil Racketeering and knowing participation in Kidnapping to Terrorize for
Political/Economic Motivations.  Corporate corruption and use of police and prosecutor to enforce civil
matter is a gangland tactic used by organized crime.  What police and prosecutor perpetrated based on
lies and fealty is exactly what the Mobs used to do prior to RICO enforcement.  Police and Prosecutor
activity are proven to be entirely corporate driven for the clear pecuniary motivations of the corporation.

Defamation, Negligence, Dereliction of Duty, Failure to Train and Supervise, Invasion of Privacy

Police Emotional Entrapment Activities, Malicious Prosecution, Battery by Legal Processes, Police
Practice of Medicine (Psychiatry) without qualification or license.

Arrest and imprisonment based on knowingly false evidence.
Excessive bail and illegal pre-release conditions, unconstitutional search/seizure of computers.

Coercion and Duress;  battery by Legal Processes, Waste of Public Resources (claim as a taxpayer)

Novel Claims and Facts: Participation in Corporate Espionage and Organized Domestic Terrorism.

**A Factual Basis for Relief under the Above Claims Exists as Summarized and further detailed in
court filed material and official material posted www.RisePatriot.com.  The material is an
integral part of the Case Presentation and will be submitted to Court in various formats as it fully
supports Factual Statements relay the circumstances that support the charges for Trial.**

**Summary Version: twice in a two year period I was removed from my home by police who acted
against the law based on Wells Fargo or their Agent's falsified threat reports and jailed. That
constitutes 'kidnapping' perpetrated upon me and/or concealed by the Defendants within a two
year period which constitutes Racketeering.  Police acted as Agents "directed by" Wells Fargo as
demonstrated in their own words  with official material, posted on www.RisePatriot.com .**

1. I worked for Wells Fargo Home Mortgage in Eugene Oregon in 2011.  I reported significant
   suspected and evidenced technical business irregularities to local Federal Bureau-Investigation
   per law and Wells Fargo and Company policy.  I was terminated 6.28.11.

Complaint:  Clark v. City of Eugene, Lane County, State of Oregon et al, Wells Fargo Bank NA          Page 3 of 26

EXHIBIT 8
Page 3 of 30

2. Martin Ogno, Corporate Security Agent of Wells Fargo Bank, NA in Portland Oregon did on and/or before July 18, 2011 contact City of Eugene Police and directed them to perform what was first said to be a well-being call at my home. Two large, armed police in uniform were sent to my home to interrogate me in behalf of Wells Fargo Bank. Police were provided content of a email (posted) I sent to a designated representative of Wells Fargo in Minneapolis as their next reason for that in-home detention and interrogation. Police then gave a third reason for their visit: a 'trespass warning'. Police are heard, in my home, advising/ordering me to not contact Wells Fargo and also being aware that I was planning to sue Wells Fargo. Police have no authority or right to issue such requests in my home. It is a most extreme, chilling violation of First Amendment. It was terrorizing and it appears police are aware that such visits are terrifying to the citizen unless wanted by the citizen. It appears they do their visits in the evening hours *with the result of* to maximum defaming and threat painting in the neighborhood. Novel claim: it represents deliberate, organized domestic terrorism and in this case it was corporate-directed.

3. Hear on Audio: Police coerced me to provide to them my birthplace and social security number. I see no reason for that bizarre removal of privacy and discovery will show exactly why police obtained that data and how it was used. I assert it was illegally collected and used.

4. Police are clearly heard violating my Second Amendment obligations regarding doing Right with firearms. They determined I did not own firearms and reported that back to Wells Fargo as heard on internal police audio. City of Eugene Police were sent to my home to silence my speech in behalf of Wells Fargo and to determine if I had firearms. Arguably, that combination of activity directed by a corporation based on a business email involving business facts as well as a real ethnic issue I experienced is the most chilling violation of the Constitution that is possible. They reported significant information back to Mr. Ogno. Novel claim: I assert that transfer of information represents knowing participation in corporate espionage activities: police were sent to my home by the Enterprise to collect information in behalf of the Enterprise:

5. The case was assigned to Eric Klinko of West Side SWAT. The use of SWAT to discourage and prevent me from communicating business facts to a corporation is far outside normal police policy and practice. It is far outside state and federal laws. Eric Klinko has been the target of several successful 'excessive force' lawsuits against City of Eugene Police and he is implicated in

EXHIBIT 8
Page 4 of 30

other cases. Discovery will show the exact communication channel and path that lead to the SWAT assignment of a fabricated municipal trespass telephoned in to 911 the day before.

6. The police action was directed by Wells Fargo Bank. That is clear from internal police headquarter audio (posted) from July 18, 2011 in which police call him and can be heard saying they were "directed" to perform the intimidating, defaming evening visit to my home against all normally practiced police policy and they reported back to Mr. Ogno with fealty.

7. Police were aware July 18, 2011 that a significant commercial dispute existed between myself and Wells Fargo Bank (et al). They choose to act in behalf of Mr. Ogno and do as he directed. That reflects lack of training and supervision and is also a waste of the public resources.

8. Police are heard on their headquarter audio promulgating Wells Fargo assertions that I lacked mental stability. Quoting a police officer seemingly in authority: "if you can wrap your head around it, Wells Fargo let him go because he was acting crazy......". Under the circumstances, that constitutes the practice of medicine (psychiatry) without qualification or license. Their prescription was increased police action, duress, jailing, defaming, and battery by legal process. Please go listen to the audio and compare the voice tone of the police when speaking with me, the Citizen while showing dripping fealty to the Wells Fargo Bank Security Worker in Portland, OR. It is a very noticeable difference. Click the 'Dog at Computer' Thumbnail on www.RisePatriot.com for that Audio, accompanied by emo-art. Note: the police on-audio urination event heard loud and clear is real. Their microphones were on their belts.

9. Police are heard actively discussing my banking information with Mr. Ogno of Wells Fargo Bank. Police are heard conspiring and pre-meditating further police response for Wells Fargo. Police are also heard asking Mr. Ogno about my claim of Federal Bureau-Investigation contact and accepted Mr. Ogno's statements with regard to FBI as evidenced. That represents Police Corruption of FBI Processes and is an aspect of my Racketeering claim against Defendants.

10. In writing I notified each of the Defendants of the dispute on a large number of occasions. Some of those notices were discovered in 'evidence' to be used against me. Nothing at all was done to prevent the next illegal police activity. That is complete dereliction of duty and lack of response

to the citizen and crime reporter based upon the public corruption by the corporate Enterprise.

11. On July 27, 2011 I re-filed with FBI and included a narrative of the police action of July 18. At that time, I did not have or know that I could obtain the police audio and reports. I never had a website prior to that. I reported it then as a situation of suspected corruption of police and FBI processes by Wells Fargo. I notified Defendants of that filing at various times.

12. On July 28, 2011 Wells Fargo, using a Securitas guard transmitted a falsified threat report to Eugene Police involving municipal trespass. Police acted aggressively upon that threat report without confirming its validity fully knowing it was related to a commercial (civil) dispute. That represents negligence, failure to train and supervise, dereliction of duty, and participation in the racketeering activity of a corporate enterprise. Discovery will show if the 911 dispatch operator was told by police to respond a certain way because in my opinion, she seems to be leading the call to a certain conclusion. It differs so much from my experience calling 911 or the police on other matters that it requires discovery to determine the extent of the corporate-police conspiracy.

13. On July 29, 2011 c. 6:00 pm SWAT arrived at my home to perform an "arrest" for 2nd degree municipal trespass. Two SUV's and two squad cars were used. I was force-marched barefoot in chains approximately one block to the waiting police vehicles. I was taken to jail and released 18 hours later. That act constitutes Kidnapping #1 by Wells Fargo et al using corrupted and lied to police who were fully aware of the possibility of a commercial dispute yet chose to take the side of the Enterprise. Police acted with undue force. No other 2nd degree trespass case known was prosecuted by SWAT and at-home arrest. A later review of police reports shows that police fabricated evidence and did not have correct in-advance legal authority for the arrest. It represents false arrest as it relates to police as well as complicity in Civil Racketeering charges. Legal Note: Kidnapping for Ransom generally requires 24 hours holding. Kidnapping to Terrorize for Political/Economic Motivations does not. The act itself is designed to meet the objective of the kidnappers. In context, it could be argued that the July 18, 2011 home detention and interrogation was a kidnapping event. It was very intimidating. I was detained AFTER inviting police into my home. I was clearly given a corporate-sponsored message by them by armed police in my home who were fully aware of what they were doing to me and my objections to it. All parts of the process were audio or video recorded (and posted

www.risepatriot.com) except the arrest event itself and the vehicles were within range to record but it is claimed they did not. That omission appears as manipulation of police technology to conceal actual police activity.

14. The charges were dismissed with no hearing. I wrote (and posted on www.risepatriot.com) many letters to many different offices of the Defendants, including Lane County District Attorney Alex Gardner to complain about my treatment. All were ignored and in fact later used as some form of evidence against me in kidnapping event #2. Defendants responded as a lynch mob against me when I went to them for help as a citizen. It is a horrific example against 42 USC 1983.

15. The page that follows this is from the police reports I obtained and posted. It is a small example. Police claimed and placed into affidavit that I had threatened to rape my bosses. They had no evidence of that and they failed to mention the only bosses for 100 miles are two males, neither of whom shared their fears (or hopes as the case could be) of homosexual rape by me. Those abject lies are representative of the type of extreme defaming and libel that police felt free to introduce into police reports but more importantly: an ARREST AFFIDAVIT, a sworn statement of truth that seemingly was not executed (signed or notarized) until after-fact.

16. The arrest affidavit and lack of a judge's signature for at-home arrest for second degree municipal trespass is a massive violation of Constitutional Rights under the circumstances of no physical threat. All appeared to be executed after-fact. Discovery will show that 2nd degree municipal trespass is never handled by SWAT and is dealt with at the scene (usually, unless a video exists or witnesses are willing to testify) via the issuance of a citation to appear. That type of analysis of departure for typical procedures and policies is one metric of 42 USC 1983/ 18 USC 241 and 242 violations. It establishes on a factual basis illegal activity perpetrated under color of law and excessive force that endangered me and the general public needlessly.

17. I obtained and posted the police audio/video and correlated it back to the written reports. That material is a major part of the evidence against the Defendants. It demonstrates their negligence, dereliction of duty, improper supervision, malice, and incorrect application of the law far outside what is provided for the Construct of Oregon Criminal Law. What you hear is police actively interpreting and rendering orders on the most fundamental constitutional issue: freedom to

**Case #11- 12399**
**Incident #11-60717**

Page 3 of 5

I responded to Wells Fargo Mortgage at 100 E Broadway regarding a trespass complaint.

I contacted Christiansen and Potter. Christiansen is a security guard hired by Wells Fargo because of safety concerns about a former employee, Clark. Potter is a mortgage consultant in the office. They told me that Clark had recently (weeks ago) been terminated from his position at the office and had been repeatedly trying to come back in and entering back onto the property.

Potter said that Clark has, for several months, been demonstrating increasingly bizarre behavior. He described behavior that can be generalized as conspiratorial, neurotic, and obsessive. He said that he is turning the organization into the FBI for prosecution under the RICO statute. He said that he will rape his bosses because they fired him. He has continually come back and tapped on the windows and opened the front doors of the business after being told not to enter the premises.

Both Potter and Christiansen told me that they have authority to trespass people from the premises and they have done so with Clark via police contact. (on 071811, Officer Esch contacted Clark and told him that he was not allowed on any Wells Fargo Property – this was documented in an FI)

Because of Clark's behavior which resembles psychosis, Wells Fargo hires Christiansen as a guard for the safety of the workers there. On the above date and time, Christiansen and Potter told me that they saw Clark ride up on his bike and approach the doors of the business to within one foot of the doors. The business is on a corner and this would clearly be on the business property. He left when he saw he was being observed. As they were relating this to me, we all observed Clark approach the same corner on his bike. He appeared to observe me inside and rode off eastbound. By the time I could get out of the building, he was gone.

Potter and Christiansen both told me that the manager, Martin, has formally trespassed him from the location. Martin did not answer his phone. They said that they wanted him arrested for trespass.

I attempted to call Clark but he would not answer his phone.

The employees whom I spoke to were very concerned for their safety. They asked if they should carry guns to protect themselves from Clark should he return. They describe him as very mentally unstable and unpredictable.

164

072911 @ 1200

Approved By:

**SCHULKE #164**
Patrol, DOWNTOWN

7 - A

EXHIBIT 8
Page 8 of 30

COMMON
TO BOTH
JUDICIAL COMPLAINTS

One Page of Police Evidence Report Dated 7.29.11 Follows This Page

MALE BOSS RAPE THREAT REPORT within their manufactured 2nd Degree Municipal Trespass.

It is just one of about 20 pages of police reports related to Kidnapping #1. Other pages are just as 'bad'. All that followed was the result of me refusing to allow the perpetrators and defendants to 'get away with what they did' because I realized they do it all the time to others for various reasons.

1. They claimed I threatened to rape my bosses. They failed to mention that the only bosses for 100 miles are two men. That allegation was placed on the seemingly-signed-after-fact arrest affidavit as well. Neither men (or anyone else) reported their homosexual rape fears or fantasies to police or anyone else. It is unacceptable to anyone that police should be placing that nonsense in a report about 2nd Degree Municipal Trespass except to facilitate guilty by proxy. Discovery will show exactly why that got in there and that could lead to some other rather shocking possible allegations in involving police activity.

Another page of the police reports (all posted) used that rape nonsense to "place me on a police-only list for potential violent offenders". That is illegal threat profiling and secret listing. Both are elements of almost all of the Claims against defendants.

2. Police repeatedly place their diagnosis of mental health issues into the report. They appears nearly obsessed with it at every stage of their persecution. They use mental health against the citizen as demonstrated in many areas of this case. It is akin to calling someone a 'witch' or a 'Jew' and then burning them. It might sound more scientific but the police are not trained to make or act upon such determinations.

3. Notice the last paragraph about employees asking if they should bring guns to work. I think it is obvious to most people on the face that the employees either never said that or, it was meant as a slur against the police and security guards for their intense and terrifying activity. Simply put: the presence of guards in a tiny MORTGAGE OFFICE NOT IN A BANK frightened many workers at many of their area locations. Discovery will show I was well like and a top producer just doing my job at the time.

Simply put: what the police did to me and the community is Terrorism. On an organized basis police go around town and cause trouble. What they did in my case is typical police behavior. They over-react and excuse it by claiming public safety. They are also rapacious. It is a national endemic.

Police are like any other workers. If they are not carefully managed they will find ways to circumvent processes and controls for all reasons they can. Police literally get away with murder all over America and claim not only public safety but their own safety as why they have to over react. Have they never considered just staying at their stationhouse until a citizen calls? They go around town doing this stuff to everyone and it really upsets the Citizen. Fire department does just fine without setting fires.

POLICE AS A GROUP APPEAR TO CONSIDER EUGENE OREGON TO BE FALLUJAH IRAQ AND THE CITIZEN IS THE ENEMY. THAT IS PRETTY CLEAR FROM THE IN-STATION POLICE AUDIO (POSTED) where they treat me like excrement while bowing to the Wells Fargo security agent in Portland. They trusted him WAY above their own citizen and homeowner.

The solution is technology but after this case police probably got rid of their a/v recorders :)



7 - B

EXHIBIT 8
Page 9 of 30

peacefully communicate from my Home.   It is a uniquely convincing presentation once understood.  It is forensic evidence above and beyond what is used in most criminal trials, let alone a civil Complaint.  I did not sue police at that time for a wide variety of reasons but I did complain a lot about it in various formats and forums.  It greatly enraged City of Eugene Prosecutor Daniel Barkovic (since fired for refusing a breath test while apparently driving intoxicated). He is shown on the posted 5-30-13 letter from Ogletree Deakins et al (agents of Wells Fargo et al) as being the one who involved City of Eugene Violent Crimes... Tony Veach due to a cartoon vampire picture in a Youtube video I created.  I assert that Mr. Barcovic's conduct shortly after that time speak to his potential lack of judgment in considering a cartoon vampire picture and Youtube video a matter that deserved the significant and limited resources of Tony Veach, City of Eugene Violent Crimes and his various partners. The Corporate Enterprise was allowed to utilize violent crime police to investigate and prosecute Art in violation of State and Federal Free Speech Rights and Obligations.

18. The commercial dispute continued for approximately two years. Per First Amendment obligations and as required under the provisions of the Dodd-Frank Act relating to financial professionals I continued filing very detailed and technical government reports to agencies such as FBI, SEC, Board of Governors of the Federal Reserve, and others. I also used automated FAX transmissions to publicize the business issues in order to obtain a resolution outside of the court system.  Some of the faxes contained a minor amount of language and concepts that are typical in today's culture and heard in nearly all media in order to grasp reader attention. There were absolutely no threats of physical violence. All were fully identified. All were faxed to law enforcement agencies as well as to the corporate offenders. Faxing is not a criminal act and remedy for fax issues is provided for by special and specific Federal legislation, not stalking law.

19. On July 18, 2014 Tony Veach of Eugene Violent Crimes Police came to my home with his partner. They issued an illegal order/request to stop communicating with the attorney for Wells Fargo (Ogletree Deakins in Portland OR).  I asked police if they were recording our conversation and they said they were not. A recording of the conversation would show subtle but important differences in what police actually said versus what they wrote in their written reports. That appears as deliberate manipulation of police technology to conceal their actual activity. Police do not have authority to go to Citizen's homes and issue orders to stop communicating.

That power resides with judges via restraining orders and due process. Due process did not occur, it was deliberately circumvented under Color of Law for the second time in two years upon direction of the same actors in order to silence and chill Free Speech Obligations.

20. I considered the visit by Eugene Violent Crimes to be a supreme insult, extremely coercive and intimidating. Discovery will reveal the extent to which police were aware their activity was LIKELY to precipitate more fax activity. Police have visited my home several times over the two years for no valid reason rooted in fact or law. Each time it prompted a flurry of communication in accordance with First Amendment Obligations to warn others of danger with evidence. That is generally known as "emotional pretexting" and is a widely reported, controversial police tactic. I considered the visit a serious waste of public resources in Lane County in behalf of a large, wealthy corporation and its bevies of attorneys and agents. I was terrorized by that visit and it was very clear to me that police had absolutely no idea of the details of the Oregon Stalking laws when they proposed that fax communication constituted stalking in absence of a stalking protective order which was not obtained. Police claimed but did not confirm a physical threat. Police also did not question that the complaint was provided by a corporation and there is no precedent under Oregon Law for corporations to be a stalking victim. Regardless of all else, there are clearly defined stalking protective order requirements and practices and they were massively circumvented by Defendants who were aiding and abetting Wells Fargo. It was above all else: a supreme insult to actual stalking victims and significant resources were diverted, thus endangering the general public.

21. Per First Amendment obligations, I redoubled my notification efforts and faxed by the hundreds using automated methods to warn others of what police, Wells Fargo, and Ogletree Deakins were perpetrating. I faxed to various law enforcement agencies and city/county offices. In addition, I accidentally sent ONE more fax to Ogletree Deakins in Portland Oregon c. July 22, 2013. Their fax number is a matter of record and is on a variety of other lists, such as the Oregon Bar Association's online material and I used automated extraction software to develop marketing lists. The single "error" was unintended and was the product of automation despite that I am just one human being lacking the office support enjoyed by the corporate Enterprise and its lawyers.

22. I was following the directives of the Police even though their request to stop communicating was

illegal. Faxing is not a crime and it is outrageous and reeks of police misconduct to charge 10 counts of stalking based upon one additional fax. One count of stalking would not have resulted in pre-trial duress and coercion. According to the RAT manual, I would have been released on recognition or just issued a citation to appear as is common in non-violent misdemeanors. That is further support for my claim the 10 charges were deliberately duplicated in order to mete out punishment regardless of trial results and to coerce some form of 'guilty' plea. Discovery will confirm the extent of that apparent truth.

23. I received a telephone call from Tony Veach, Eugene Violent Crime detective asking me if I had faxed to Ogletree Deakins. I told him that by error I had faxed one item to them. He did not advise me of my rights to remain silent at that time. 5th Amendment claims are extraordinarily complex and theoretical but I go on record as asserting that call was a violation of 5th Amendment protections against self-incrimination. Had I denied (lied) about sending the fax or been unaware that I sent it.... it is presumed that Police would have had to obtain a warrant to compel production of telephone records to confirm that a fax had indeed been transmitted. That one fax was used as the basis for 10 stalking charges so in context it may be considered after discovery and trial to be a violation of 5th Amendment protections. Had he warned me in advance that my answer to his question would result in my arrest I definitely would have contacted an attorney immediately and NOT answered his question. I assert that by then, I should have been advised of 'Miranda Rights' under these particular set of circumstances.

20. On July 25, 2013 c. 4:00 pm Tony Veach of Eugene Violent Crimes Police called me on the telephone and told me he needed to meet with me. He refused to say on the telephone that he intended to arrest me until I had repeatedly questioned him to that effect. I told him I needed to contact my attorney prior to meeting him. Tony Veach told me it was necessary to meet him right away to be charged for a crime. He did not mention that he had an arrest warrant for 10 stalking charges because if he had, I definitely would have taken a moment to at least notify my attorney. I contend that is a deliberate denial of a due process rights that had significant impact and damage to me and further removal of due process rights at the later in-jail preliminary hearing. Once in jail, it was not possible for me to notify my attorney and arrange his presence at the preliminary hearing which is a massive violation of due process and the Oregon Law. It converted the preliminary hearing into a meaningless 'show trial', coincidentally presided over by

the same Judge (Rooke-Ley) as signed the arrest and later search/seizure warrants.

21. The 10 charges were absolutely identical in time, place, and victim. I assert that it is not possible to simultaneously stalk the same entity 10 times in the exact same time frame and the Judge should not have signed that. They were based on a "Criminal Information" presented by a corporation with clear pecuniary motivations for making a falsified or exaggerated complaint. The facts were not presented to a grand jury for indictment even though the cumulative penalty of the charges was a much as 10 years in prison and $62,500 in fines I was only to receive a 6 person Jury. I contend that is also a violation of due process that had at least a slight affect on trial planning as that could have been contested resulting in yet further delays of trial and abusive coercive pre-trail treatment for misdemeanors.

22. The ten charges caused the Lane County Risk Assessment tool to consider me among the highest possible risks and nearly ineligible for release from jail pre-trial due to computer generated danger scores. That is exhaustively detailed in my evidence presentation on www.RisePatriot.com. That resulted in violations of Federal and State bail laws and violations of 8th Amendment protections against cruel and unusual punishment in context of pre-trial treatment for business communications with a corporate entity. It resulted in extreme coercion and life-threatening duress as carefully explained and documented. Our Chief Criminal Judge Vogt is heard on court audio blindly accepting the results of the Risk Assessment Tool without being able to define its inputs or the meaning of its outputs. Instead she relied on her 'trust in the system' as captured on court audio. Blind trust in science without factual basis is the "Religion of Science" and *arguably* violates separation of Church and State mandated by the Constitution.

23. The Risk Assessment Tool scores also determine security level in Lane County Jail. I was housed in a maximum security area and subjected to barbaric conditions and medical malpractice that are detailed in my evidence material. Conditions were so horrific that I signed under duress of my life a pre-release agreement (posted) that on a pre-trial basis makes a large number of legal activities to be illegal. The terms of the pre-release agreement constitute jailing and in fact is officially in lieu of jailing. I claim the pre-release contract is unconstitutional and was in this particular case obtained via massively undue, deliberately inflicted duress.

24. The pre-release conditions included the mandatory use of an electronic ankle bracelet monitor. I had to report to the jail facility each week and pay for it and it cost over \$2,000 in total which is an absurd burden on a citizen in such a case as this on top of the attorneys and all else. The ankle bracelet monitor had no relationship to the conduct (faxing). It represents a most cruel and unusual punishment in this case as I carefully detailed in my evidence. I included a comprehensive 2010 Register Guard article that detailed the abusive, coercive nature of the program as used in Lane County, OR.

The Risk Assessment Tool also includes a bail matrix that caused bail to be \$200,000, an amount higher than required of most felonies. It all was caused by use of 10 identical charges. Once 9 or more charges of any type are placed in Risk Assessment Tool, it causes the person to be considered an extreme danger. That in turn causes time spent in jail prior to trial and the bail to be higher due, all against the constructs of State and Federal Bail laws:

There is absolutely no basis for jailing or ankle braceleting of a citizen charged with non-violent misdemeanors that do not involve any known physical threat of any form. Oregon law is very clear that bail is designed to insure appearance at a trial. I own my home here free and clear and have significant ties to the community. Pre-trial release conditions are to be used to prevent danger to society of the alleged conduct of the criminal charges. It was unconstitutional to prohibit or specifically monitor any other of my activity and use it as a pretext to revoke bail and re-jail but that later happened.

25. I hired an attorney, Laura Fine Moro at significant expense. She refused to file a demurrer as I requested of her. She claimed it was unethical and there was no basis. I hired her to do what I wanted her to do, not what she considered 'ethical'. I later learned her flamboyant husband is affiliated in some meaningful way with the prosecutor's office suggesting yet another possible reason for her refusal to perform her job per the Law. I obtained through Ms. Moro the police evidence material. Ms. Moro's failure to file a demurrer as demanded in conjunction with the time spent in jail caused a statutory period for a particular type of demurrer to pass. That type of demurrer was referenced by Judge McAlpin in a later demurrer hearing of a different type submitted by my next attorney. I conclude the long-term fealty between Ms. Moro and the District Attorney's office caused further violation of due process rights and compromised rights to an attorney who was supposed to be acting in my behalf. The fact of the charges originating

EXHIBIT 8
Page 14 of 30

via an 'information' versus an 'indictment' also limited demurrer rights per related ORS. Any conflicts or obfuscation that limits the right to have evidence looked at early on is an obvious violation of due process. **Example:** Suppose I had been charged with Murder of Ogletree Deakins (the corporation)... as absurd as stalking Ogletree Deakins but more obviously so. There would be no release provision because it is impossible to 'produce the body' of the murdered corporation. In Lane County there is nothing that would prevent the prosecutor from claiming that until the evidence is looked at in trial it is not possible to conclude the corporation was not murdered. I realize murder and stalking are different, the point being both are **equally** absurd for a corporation to claim or prosecute but it was... with extreme prejudice and malice.

26. My review of the police evidence showed they manufactured a crime upon repeated written request and visits by the corporate accusers. Almost none of the material was sent to the corporate Enterprise or the human-proxy Leah Lively. The letters are all posted on www.RisePatriot.com. My review of the case law (State of Oregon v. Rangel and State of Oregon v. Ryan) showed very clearly that my conduct did not even come close to constituting stalking and that a stalking protective order was required in advance of arrest in a communication-only situation. That is NOT the way specified under Oregon Law that stalking arrests are initiated and it represents clear and outrageous willing, deliberate participation in public corruption initiated by and for the pecuniary motivations of corporate entities.

27. My review of the evidence turned up the actual conspiracy letters dated 5-30-13 and 6-21-13. Those letters are posted and the significance explained. Simply put: police and prosecutors conspired with Ogletree Deakins/Wells Fargo for two months, accepted without investigation written physical threat reports, all without telling me about it until they were ready to arrest me. It is a very blatant conspiracy against rights under color of the law. Police and prosecutor were fully aware of their corporate direction and were working directly and frequently with the corporate instigators. I accuse police of being knowing accomplices to "RICO" perpetrated by a corporation and the undue police response represents kidnapping by the corporations that ordered and directed it I also allege false arrest performed under color of the law using falsified evidence (false physical threat reports in the 6-21-13 letter and faxes NOT to the enterprise.)

28. I brought my evidence directly to the District Attorney's office. That was ignored and in fact

caused the District Attorney to heighten defaming activity and malicious prosecution. That is best encapsulated in the attached October 2, 2013 letter written by District Attorney Alex Gardner to Ms. Moro before she 'fired me'. It shows the District Attorney had no working knowledge of Oregon stalking case law and charged non-criminal conduct as a crime then maliciously prosecuted, fully aware of the duress I was subjected to, and branded me a threat.

29. The case was assigned to Erik Hasselman, who generally prosecutes the most serious, violent and lurid crimes. Discovery will show why a communication based misdemeanor case was so assigned, just as discovery will determine why Tony Veach of violent crimes was assigned to the case and why Erik Klinko of SWAT was assigned the 2011 case. The results of the combination of the two related police activities represents vastly excessive force against at-home peaceful communications that are fully protected by State and Federal Constitutions and case law.

30. Mr. Hasselman missed the "35-day call" hearing due to his schedule. I was there with attorney at great expense to me but he did not show up and the matter pended. All the while I was subjected to the ankle bracelet and pre-release conditions. Citizens and tax payers deserve better service.

31. The 35-day call hearing process is the result of inefficiencies and scheduling problems of Lane County. It caused me expense and discomfort (punishment) prior to trial. It is an unreasonable delay and added to duress and feelings of hopelessness. The citizen should not be responsible for the gross inefficiency of government. There is no reason the backlog cannot be whittled down so that justice is conducted in accordance with the Constructs of Oregon Criminal Law and on a timely basis. The backlog allows legal battery of misdemeanor criminal suspects awaiting trial in order to induce guilty pleas, which evidence shows is a common practice in Lane County due to its unique and highly controversial Pre-trial release process and total reliance on an easily 'gamed' (i.e. frauded) Risk Assessment Tool that metes out punishment pretrial based almost entirely on the NUMBER of charges without considering evidence or even reasonability. That results in a situation which has already been reported by local media as endangering the public: serious violent criminal suspects charged with a single crime are released from jail while minor non-violent misdemeanor suspects who were 'slap-sticked' with charges are subjected to higher bails, longer jailing pre-trial, and stringent pre-trial release conditions as has been documented.



**ALEX R. GARDNER**
LANE COUNTY DISTRICT ATTORNEY

 

LANE COUNTY DISTRICT ATTORNEY'S OFFICE
125 EAST 8TH AVENUE, ROOM 400
EUGENE, OREGON 97401-2926
FAX ONLY (541) 682-3890
(541) 682-4261

October 2, 2013

Sent via Facsimile and U.S. Mail

Laura Fine Moro
Law Office of Laura Fine Moro, P.C.
541 Willamette Street, Suite 403
Eugene, OR 97401

Re:    *State v. Andrew Glen Clark*
       Lane County Circuit Court case no. 21-13-14234
       DA Case no. 039-271301

Dear Laura:

Last week, your client filed a written complaint with our office alleging my misconduct.
Within that complaint, your client makes representations that indicate a clear disconnect
between you and your client, or at a minimum, apparent misunderstandings.

First, your client indicates that he did not commit the crime of Stalking, and that he
understands "a judge agreed it is not 'stalking'." He further represents, "A judge
concurred the faxes do not represent stalking as there was no physical or actionable
contact."

To my recollection, the only judicial conversation we have had regarding this matter is
the settlement conference we had before Judge McAlpin on September 16th. My
recollection of that discussion is that Judge McAlpin was aware of the *Rangel* case.
Judge McAlpin made no assertion that the case prevented this prosecution, nor did Judge
McAlpin in any way indicate he thought it absolved your client from any criminal
responsibility. Perhaps you can clear up with your client why he would conclude the
judge "agreed" your client's actions did not amount to Stalking.

Second, your client indicated in his complaint that I met with you on September 16, 2013,
and that I "will offer [your client] a deal of some form to plead guilty to unrelated
charges such as 'telephonic harassment' or 'disorderly conduct'." My recollection of our
conversation is that *you* suggested the State should settle this case for a Disorderly
Conduct, which you indicated was actually *your client's* idea.

You represented to me that your client suggested settling the matter for that charge in lieu
of Stalking charges, yet he claims that *I* am trying to "use the Ankle Bracelet and threat

1

14 - A

EXHIBIT 8
Page 17 of 30

of jail to extort beaten down human beings into pleading guilty." He continues, "I cannot speak for other cases. In my case, pleading guilty would be committing perjury. I committed no crimes."

Given your client's posture, I don't believe there is any settlement to be reached. We have a fundamental difference of opinion regarding his acts. Despite his protestations, I believe his behavior has been criminal, and prosecution will continue. My reading of *Rangel* does not comport with your client's interpretation. I believe his intent through his repeated, unwanted contacts was to put the victims in fear that violent crimes would be committed against them. His reliance on the geographical separation between Eugene and Portland is unpersuasive to the State.

Further, please advise your client I have no interest in receiving communications directly from him. Any communications should be made through his counsel. I consider Mr. Clark a threat to my safety and to public safety in general.

As always, thank you for your attention to this matter.

Sincerely,

ALEX GARDNER, District Attorney

Erik V. Hasselman
Assistant District Attorney
Major Crimes Division

EXHIBIT 8
Page 18 of 30

32. After Ms. Moro 'fired me' I sought other counsel. I also placed Motion into court to modify pre-release conditions. That motion was heard and denied by Judge Vogt, Chief Criminal Judge of Lane County. The hearing audio and transcript are posted. She acted against the Law but has immunity. The transcript is also very clear: Judge Vogt stated that she only had partial information about the case and 'wished she could ask the DA's office questions but could not'. That aspect will be further dissected in the section of this Claim regarding personal liability of the District Attorney and District Attorney's Office. They lost their immunity by directing the police activities per Buckley v. Fitzsimmons (91-7849), 509 U.S. 259 (1993).

33. In October 2013 I delivered formal Notice of Claim #1 in this case. That was necessary because it must be done within 180 days of when the offending activity occurred so I used the arrest date as the conservative basis. At that time, trial was scheduled for December 6, 2013 so I turned it in early in case I did not prevail at trial and got placed into prison where it would be more difficult.

34. Within a week of that, I was subjected to a "random" urine analysis by pre-trial services. That is one of the many agreements made under life-threatening duress by the pre-release "contract". I have been treated by a physician for Seizure Disorder for almost 40 years. That treatment includes the use of medical marijuana. I was not charged with any drug related offenses and my medical use of marijuana is unrelated to the charges or alleged conduct. I later learned that the Ankle Bracelet allowed Sheriff's office to know that I went to a medical marijuana dispensary. They knew I went yet did nothing to prevent it. It represents further conspiracy against rights and deliberate, cruel use of medical conditions as a coercive device on a pre-trial basis.

35. On November 5, 2013 I attended a demurrer hearing. I had retained Kevin Bons who promptly did what Ms. Moro would not: file a demurrer (the type of demurrer still available as the timeframe for the first type had long lapsed due to attorney neglect and fear of the DA). The prosecutor handed Mr. Bons his response. Mr. Bons said he would need time to review it and the hearing was rescheduled for the next day. At that time, I was informed in Court that I was being taken back into jail for failing the urine analysis due to use of medical marijuana for medically recognized seizure disorder. It is common knowledge that police are generally against marijuana use. As one example, police organizations are often in the Voter's Pamphlets publicly opposing medical or recreation use of marijuana. While they are entitled to their wrongful,

Complaint: Clark v. City of Eugene, Lane County, State of Oregon et al, Wells Fargo Bank NA        Page 15 of 26

EXHIBIT 8
Page 19 of 30

worthless, ignorant, bully opinions...they do not have the right to enforce their obsolete, disgraceful, cruel, inhuman opinions via pre-trial release agreements. That contributes to claims of practicing medicine without qualification or license in the State of Oregon as it relates to Seizure Disorder: A licensed physician has long treated me for Seizure Disorder. The Oregon Medical Marijuana Program is clear about parole and probation but pre-trial misdemeanor situations are vague at best and simply had no place in logic or law in my particular case.

36. Tony Veach, Eugene Violent Crimes Police was also at the otherwise unattended hearing. He got up and led me to the most public area of the Lane County Courthouse: the area right outside of Judge McAlpin's courtroom 205 in front of the public window where citizens line up to conduct business at the public window. I was dressed in suit and tie. I was handcuffed in front of everyone. Det. Veach presented me with a search and seizure warrant of my home. That warrant was the product of the same fabricated threats and fabricated evidence as the original arrest. The arrest act in court represents excessive force and deliberate defaming and violation of due process rights. There was no reason they could not have waited because I was due to report to the pre-trial office that week anyway. It is a barbaric practice to publicly arrest people in courts and it speaks of undue police control or influence over court processes, to be determined further via Discovery. Bail was doubled an additional $400,000 for a total of $600,000. The judge made it somewhat clear in the court that we had 30 days to request relief from the original $200,000 bail. That represents further due process violations and is not in accordance with the Construct of the Oregon Criminal law or the state/federal Constitutions.

37. I was taken back to jail and placed in an even more restrictive maximum security cell. The jail guard told me that Tony Veach has specifically told him that I was not allowed to communicate with the outside for 24 hours. The actual amount of time was more than that due to the 1 hour out of 24 hours allowed out of the maximum security cell.... all pre-trial for faxing, not a crime.

38. Police did a very thorough but gentle search of my home. I appreciate their restraint. I expected they would trash the place but instead, it was very clear they 'touched' every spot in that house but did not disrupt it much. All occupants of my home are appreciative but we all still feel terribly violated by the unreasonable search and seizure that was conducted under color of law per corporate direction. It was unconstitutional and there was no valid basis for the warrant. I

was 'robo-signed' by Judge Ilisa Rooke-Ley.

39. All my computer equipment was taken including the family computer that is never used for business. It contained irreplaceable family photos and other personal material. None of the equipment has been returned as of yet and part of the relief requested is immediate return of all items taken from my home. Police have no reason to keep it as they download the entire contents of them onto their computers for analysis. It is an element of malicious prosecution and coercion because I telephoned Erik Hasselman in January 2014 and he told me that if I wrote a letter promising not to appeal he would tell police to give me back my equipment. Opinion: they stole my equipment (warrant obtained with falsified or incomplete evidence) and held them for ransom of giving up appeal rights. It is additive of all the other malicious prosecution and prosecutor misconduct so rife in this case.

40. Computer equipment is akin to a person's brain. A computer stores thoughts. As police found out, my thoughts and activity with computers are beyond the highest standards of reproach and morality. They seized a total of 4 computers, one of them very broken as described by police in their reports. The three computers that have been used for the past several years were used to store family pictures, financial records, thoughts, exculpatory evidence, materials needed for trials, art, and paid software. All that was taken from me without any evidence that justified it. It appears that information about the findings were fed back to the corporate accusers. That will be fully discovered as will all that they did to analyze my equipment. Police also may have taken papers from my home that are not permitted by the warrant, which will also be discovered. As an anecdote, the news has since reported a case involving a local police employee found with child pornography on his computer. My computers were all devoid of a naked human images or any history of access to any form of pornography. Police must have been shocked and disappointed that my computer activity and morality far exceeds their own.

41. In their police reports, police referred to my home in very derogatory terms. They reported a moldy smell, sparse furniture, unclean conditions, and other very defaming content unrelated to their police fishing expedition four months after the original misdemeanor arrest. That represents further examples of malicious prosecution, police misconduct, robo-judging, and a massive violation of Constitutional protections of property and home. I exclaim with emotion:

Complaint: Clark v. City of Eugene, Lane County, State of Oregon et al, Wells Fargo Bank NA          Page 17 of 26

EXHIBIT 8
Page 21 of 30

you try cleaning or maintaining your home in an ankle bracelet while being financially and emotionally bled to death and then tell me about it. Let that stand as further evidence of the extreme battery and damage to me as a human being that will be recovered with this lawsuit. Let that stand as a measure of the cynical and cruel behavior tolerated by City of Eugene Police.

42. Judge Rooke-Ley also signed the original arrest warrant, presided over the in-jail preliminary "show trial" hearing, and signed the search/seizure warrant. Review of records shows that she most likely knows or has heard of Leah Lively...attorney for Ogletree Deakins used as a human-proxy for their corporate complaint and objectives. They share affiliations on the board of directors of close sister organizations. At the minimal I am asserting judicial misconduct that requires her removal from the bench unrelated to any possible affiliation with the 'victim': she 'robo-signed' warrants that affected constitutional rights in a non-violent misdemeanor case orchestrated by a corporation for pecuniary reasons. She had no basis to sign a warrant with 10 identical charges as she did. She did not act in accordance with Oregon Bail law at the in-jail show trial preliminary hearing. Worst case: if she was familiar with Leah Lively and signed the warrants based on that affiliation or even worse..contact... then Judge Rooke-Ley is a felon. Discovery will determine if she is merely a robo-judge or a major criminal.

43. I arrived in Court November 6, 2103 in jail clothing and jail chains on both and and foot. I managed to pour some water. I was allowed to drink the cup I poured but the pitcher was taken away from me. The demurrer hearing is posted. I ask people to listen to that and consider I was in jail clothing and chained hand and foot. After it was denied, I was placed in a courtroom jail cell (awaiting ride back to jail) that lacked water. Eventually I was compelled to drink from the toilet. That and much more systemic abusive treatment is posted www.RisePatriot.com.

44. The demurrer hearing was outside the constructs of Oregon's Criminal law. The judge was not allowed to have and/or consider any evidence despite four months of abusive pretrial treatment as described. The event represented violation of due process and yet another 'show trial' because Court Procedures in Lane County Oregon shield a judge from the evidence. Discovery will determine the extent, if any, that stems from the District Attorney's Office. The Court did not address whether Ogletree Deakins could be a victim but the District Attorney allowed them victim status. That will be further dissected in the section on Prosecutor Misconduct.

45. The hearing did not conclude that a corporation could be a stalking victim but accepted that Leah
Lively, an Ogletree Deakins attorney was. She did not follow the established procedure for a
stalking protective order. I found no evidence at all that she personally complained of stalking.
The formal request to District Attorney for a stalking protective order (6.21.13 correspondence,
posted) **specifically did NOT** include her as a co-complaintant. It is obvious on the face she was
added in by civil attorneys who were aware that stalking requires a natural born 'victim'. All fax
material in question was sent to thousands upon thousands of recipients. It represents legal
information marketing. Matters involving unwanted faxes are a very well defined area of
Federal Law does not include stalking charges or criminal charges as a consequence. There is
absolutely no evidence Leah Lively ever saw the material. It was sent to a large law office that
presumably has policy to dispose of unwanted fax material.

46. A review of the fax material will show that 95% of the words are communicating detailed
business and legal facts. 5% at best represents non-threatening but possibly vulgar inducements
to gain reader interest. Out of over 200 pages of police "evidence", there are c. 10
communications over a one year period with the Enterprise. It is a perfectly legal activity and no
word written was threatening in any way and no physical threat was ever confirmed. As
example, Ogletree Deakins is in a secure Portland office tower and I have not been to Portland in
four years now nor have I been alleged to have been anywhere near there. City of Eugene Police
did not, per evidence, confirm with Portland Police if any threat existed. Logically: if someone
is experiencing an "immediate or eminent fear of serious personal violence" they would first
seek protection by their police who in turn would work with Eugene Police after determining the
actual threat, if any. Police evidence (posted) did include reports from Multnomah Sheriff
showing they received the faxes but did not consider them 'stalking' or even a threat worthy of
continued investigation. They also failed to consider them Crime Reports. They were branded
'vulgar' and filed. While I disagree with that artistic interpretation, 'vulgar' is not stalking.

47. The cumulative effects of the duress and coercion were taking their toll upon me. Still, I was
determined to hold out for a trial. Mr. Kevin Bons (my attorney at the time) was very sure we
did not have to file for release from the $200,000 bail that was forfeited unless retrieved via court
order. The transcript of the hearing clearly shows the judge indicating we had 30 days but Mr.

Bons did not agree that was the case. Reluctantly, at the last moment, I was compelled to locate another attorney who could release me from the $200,000 judgment that was about to accrue against me. I retained John Halpern, a renowned trial attorney. I paid him a flat $15,000 because that is what he asked for. He was able to get the Motion in to avoid the judgment on the very last possible day and it was successful.

46. Trial was delayed by Mr. Bons from December 6, 2013 until January 14, 2014. Had Ms. Moro performed her job as I paid her to and not been cowed by the District Attorney's office that would not have been necessary. As noted previously, Ms. Moro refused to file a demurrer and fired me. It was not my choice and it cost me plenty to switch out of necessity, as it did the next time.

47. Over the Christmas Holidays, I was in ankle bracelet and subject to the unconstitutional, cruel, and medically dangerous pre-trial release conditions. I stumbled across a study published by the National Institutes of Health (Cancer Institute) advising against close exposure to cellular radiation for more than five hours per day. That study was formalized c. 6.24.13. Prior to that, it was not an official recommendation or warning by the Government. After that, it was reasonable to assert that it was potentially life threatening as there was no way for me to determine signal type or strength. Discovery will reveal all those details as well as the fact that worrying about unknown health risks can itself lead to terminal health conditions. At that point, I communicated my concern to my attorney Mr. Halpern and told him to pursue a negotiated agreement with District Attorney's office and he did so.

48. Still, I was determined to hold out for a trial scheduled for January 14. Mr. Halpern will confirm that I did not want to plead any form of guilt but was willing at that point to consider what the District Attorney would offer. Around that time I learned the following:

a. the January 14, 2014 trial was going to be postponed indefinitely. Prosecutor Hasselman is extremely busy and on any given day had more serious and pressing cases than a misdemeanor. As previously stated, discovery will determine how and why Erik Hasselman was assigned this case at that time. His wife was pregnant with twins then so his personal life may have also caused delays.

b. I learned that trial could and likely would be postponed for as long as two years and then ended with dismissal of charges, all the while with me subjected to ankle braceleting, etc.

49. During the time in ankle bracelet, I received several calls that will be a matter of record. They generally were very late at night and woke my household. It was the Sheriff's office claiming they could not pick up a signal and wanted to see if I was home. Those calls were intimidating, defaming in my household, and terrorizing to me and my household. The added to the cumulative duress and coercion. A fact finder could look at any single element of my pre-trial treatment and try to excuse it as within policy and do the same with the next. The cumulative effect cannot and will not be discounted as that represents the true effect upon the human organism. That will be backed up with professional testimony at Trial.

50. I met with Mr. Halpern and Erik Hasselman in Mr. Hasselman's conference room. I concluded that Erik Hasselman was an equal victim to myself (of a different kind). On one hand, I must vigorously pursue damage recovery as well as do all possible to expose the role of each person and to hold them personally accountable professionally and financially. On the other: Erik Hasselman was tricked and backed into continuing prosecution. He should have not. He should have moved to dismiss charges. The District Attorney is most responsible. This aspect will be dissected more in the section regarding prosecutor misconduct and malicious prosecution.

51. On January 9, 2014 I agreed in court to a set of stipulated facts. I agree that any fear of trial and sentencing is not coercive. The jailing, pre-release conditions, bail, indefinite trial, and ankle bracelet most certainly are as described. District Attorney wrote in his October 4, 2013 letter that I considered it perjury to plead guilty. I hereby invoke 5th Amendment protection if later needed for placing a statement into court that is sworn to that I openly lied in Court on January 9, 2014 but that it appears specifically allowed by Oregon Law per Mr. Halpern, my attorney. He will confirm that I expressed misgivings about lying in court about guilt, duress, etc. and he confirmed it is provided for in Oregon Law.

52. Prosecutor Erik Hasselman, after the judge had accepted Stipulated Facts, went on in Court to place on the record what I consider to be tantamount to a confession that I had not actually committed any crime. In my opinion, his testimony in court that day is the exact opposite of his previous posture towards me and is more or less what a defense attorney might argue. I am placing this as an opinion so others can listen or read it and see it is like a Confession of sorts.

Complaint: Clark v. City of Eugene, Lane County, State of Oregon et al, Wells Fargo Bank NA         Page 21 of 26

EXHIBIT 8
Page 25 of 30

53. The sentencing agreement was dictated by the corporate complaints despite it not having been confirmed by the Court at demurrer hearing that a corporation could be a victim of stalking. I assert what is obvious to anyone:

**a.** It is not in the public interest to allow corporations to claim they are being stalked by citizens peacefully in their home communicating via fax.

**b**. Corporations should first try simple solutions such as blocking my fully disclosed home telephone number if they do not want informational material. There are also clearly defined civil remedies provided for in Federal fax laws that were all bypassed by corporate civil attorneys.

**c.** Corporations cannot be stalked, murdered, raped, assaulted, strangled, or maimed. The stalking laws were not written as a vehicle to limit corporate communication as used in this case.

54. The sentencing agreement called for a cursory $200 mental health examination but specifically excluded the need to complete treatment. That is practice of medicine without license or qualification because the District Attorney decoupled evaluation and treatment. As far as I can ascertain, decoupling evaluation and treatment is not a permitted activity in the mental health industry. Dr. Miki Mace of Quality Research Associates had never seen that before. She did not provide her opinion of its propriety but she did help me address it with the Court. As an aside, I strongly recommend that instead of allowing police to handle imagined or real mental health issues....get the professionals such as Dr. Mace and Quality Research Associates in the loop from the get-go to avoid the illegal and immoral conduct described in this complaint along with other such conduct that arises from Discovery.

Cumulatively, there was significant 'second hand' involvement of the mental health industry. The use of psychiatric resources to affect political or economic outcomes is generally considered to be a crime against humanity but not currently a specific crime in the United States from what I can discern as Pro Se. There have been attempts at the national level to label it as such but last I knew, those were all derailed. It is instead practicing medicine without license or qualifications. I propose that use of psychiatric resources to conceal or to affect political outcomes provides a set of facts that provides a basis for civil relief. This is put on the record as contingency.

55. The agreement included verbiage that I was not allowed to contact Ogletree Deakins or their

Attorney Steven Seymour. The prosecutor was fully aware that I had filed a lawsuit against the accusers in District Court. I assert that action was clearly against the American Bar Association suggested rules of conduct of the Prosecutor and if reported to ABA could result in investigation. Please note: the ABA recognizes departure from its suggested rules when there is any form of valid reason involving public safety in major crime situations. This case should have had no departure at all from code of conduct. That caused a major denial of my ability to act as Pro Se in that case and I could not afford what civil attorneys were charging in light of all my other financial obligations without income or employment. That restraining order is prima facie, clear willful, knowing involvement of the prosecutors office in the racketeering activity of the corporate Enterprise and the product of conspiracy against rights: **Corruption of Court**. With that action, the Racketeers corrupted the Court itself. Non-victims cannot dictate such terms. My District Court complaint was postponed by the District Court specifically for the reason of concluding the criminal stalking charges. I hereby allege improper collusion and corruption of District Court processes. District Court used the 'no contact with Ogletree Deakins' as a basis to dismiss Ogletree Deakins from my District Court lawsuit. I am making a note of it here. That aspect will be addressed in the District Court and/or Appeals court of the related case. It potentially implicates the District Court in the racketeering activity of the corporate Enterprise. Discovery will determine the nature and extent of coordination between Lane County Criminal Justice System and United States District Court – Civil. It will be litigated and prosecuted (or not) based on the facts themselves, once discovered fully. On the face: it is smoking gun public corruption of the judiciary branch of the state and federal government by a corporate enterprise for clear pecuniary motivations. They deliberately manufactured a crime and then systematically used the results of their activity to further violate my due process rights and Defendants willingly participated and are thus fully liable and culpable.

56. I immediately appealed the conviction within the 30 day period. My legal research showed that appeal rights in stipulated facts trials were limited by ORS. Mr. Halpern, my attorney, suggested filing for Post Conviction Relief, so I did. That required me to withdraw the appeal so I did. I paid for and filed for Relief and it was twice denied for being in the wrong format. No guidance was provided as to correct format and I used a format accepted in Tillamook County, which should have sufficed a Pro Se in Lane County. The presiding judge ordered that I must use an attorney for the process despite my onerous financial obligations and costs to date. The effect

of the Court Actions coupled with the fine details of ORS have thus far resulted in denial or discouragement of due process- right to Appeal and well established right to act as Pro Se. I assert: an appeal is a fundamental right in all American legal proceedings and any obfuscation of that right via conflicting Oregon Revised Statutes is unconstitutional. So is acting as Pro Se and case law shows the Court is supposed to recognize and adapt reasonably to Pro Se limitations. Because this situation is still in process, I am just making a note of it here and it will be addressed in the Prayer for Relief at the conclusion of this Claim.

57. Since then, I have been most patient as I have attempted to work out grievances with Wells Fargo et al and their agents out-of-court in order to avoid this litigation against subject Defendants. As a citizen, I chose to do what I consider morally correct which means trying to work it out with the cause of the problem rather than involving my friends and neighbors in this small town via this Complaint. I have also presented significant evidence to our Presiding Judge and District Attorney, all of it was completely ignored and not even made a formal part of the record. Accordingly, that is why this lawsuit is made necessary at this time.

**Prosecutor Misconduct and Malicious Prosecution** - Several times within this Complaint I referenced Prosecutor Misconduct and Malicious Prosecution and provided specific, factual examples form part of the factual basis for my Claims of Relief. I am adding the District Attorney (Alex Gardner) as personally liable and lacking immunity from civil liability due to Buckley v. Fitzsimmons (91-7849), 509 U.S. 259 (1993). I am adding the District Attorney's Office as the public vessel of the DA, hence the notification to the Director of Administrative Services. They actively directed the police activity over time. They interpreted communications and related art content against the Constitution. They terribly misunderstood the Oregon Stalking case law. They availed themselves on an undue basis to the corporate accusers. They circumvented the Oregon Stalking Protection Order laws and policies, which are extremely clear and were not followed. They acted with extreme malice and against the evidence, the law, and common sense itself.

City of Eugene, Lane County, and the State of Oregon did waste enormous public resources on this case. They pulled MANY different violent crimes and financial detectives away from their work in attempts to frame me in behalf of and upon direction of a corporate Enterprise. There is no more clear sign that a Corporation is actually a mob enterprise necessitating RICO enforcement than having the structure and

practice of using police/prosecutors to enforce their business objectives. There is no worse or more damaging form of public corruption except influencing judges and court processes, which also clearly and obviously happened in this case as evidenced with the details of the judgment described herein.

**Courthouse Threat Profiling and Armed Guard Response**

This appears to be related to prosecutor misconduct and discovery will determine the source of this complaint aspect. I am reporting this as a form of Conspiracy Against Rights, coercion, duress, and further evidence of the terrorizing conduct of Defendants and/or their affiliates. It is being presented as Fact that can be confirmed via the Sheriff's office which ordered it. It extended across all courts via their security personnel. It is unclear with who and where this threat-painting started but it will be discovered. It also affected my deliveries to the FBI and to District Court until I was able to partially resolve the problem.

Starting around the same time I presented First Notice of Claim or the evidence material in advance of that I was followed everywhere I went in the Court by armed guards, agents of the sheriff's department. They attended hearings, including a divorce related matter. I saw one of them engaging in verbal intercourse with my ex-wife. I just stood there and watched. It is human to wonder how armed guards in a courtroom on a divorce matter or for non-violent misdemeanor charges affects the judges and the attorneys but my observation is that it certainly is not beneficial to my cause.

Mr. Halpern reported to me that my picture was posted on the wall between Judge Vogt and Judge Rasmussen's office as an extra-ordinary threat. That same threat profiling in complete absence of a reason is absolutely bizarre and childish. It reminds me of activity that was normally a feature in famous court events such as the Salem Witch Trials or the Soviet Gulag Processes.

It is a gross, horrific added element to the overall Conspiracy Against Rights under Color of Law.

Prayer for Relief

1. $4 million (four million dollars) representing economic/general damages to me. I was a high earning professional and my ability to earn was removed from me by what Defendants did under color of law. That figure represents approximate value of lost income and interests plus a small and arbitrary amount of general damages for emotional and physical harm.

2. Criminal Prosecution of Ogletree Deakins and Wells Fargo for filing falsified physical threat reports with our police, kidnapping using corrupted (tricked) police as agents, and racketeering in the State of Oregon, Lane County. I am a citizen presenting evidence and demanding they be prosecuted and District Attorney's office or the State's Attorney General is obligated to do that under the Law based on my evidence and my complaint. They should not need or want a court order to do their job. They should be eager for the opportunity. All actors are presented with amazing opportunity to do the right thing and prosper immensely. It defies my sensibilities they do not yet seem to conclude the same.

3. Return of all material taken from my home, including my computer equipment. Police can if they want retain copies but my property must be returned to me.

4. The District Attorney and/or Presiding Judge appear to be vested with power under ORS to vacate the criminal convictions, expunge and seal the records. They do not even have to provide a detailed reason to do that. It appears they can just... do it to cure a major violation of due process. That is also requested relief. It is also in the best interests of all parties.

Statement of Separability of Claims and Factual Allegations

All claims are alleged as a group and individually. They are stated as a group of facts and allegations as it relates to Racketeering and Conspiracy Against Rights under Color of Law. If any fact or claim is discovered inaccurate or invalid that item is edited or removed and the rest stand. Discovery can and likely will result in significantly more allegations and claims and those will be added in if and when appropriate. Other parties will be joined as defendants or allowed as interveners as facts are discovered.

Signed and Sworn to:

$\alpha \subset \cap$   7-11-14

Andrew (Andy) Clark 3270 Stoney Ridge Rd. Eugene, OR 97405   541.510.3915

Complaint: Clark v. City of Eugene, Lane County, State of Oregon et al, Wells Fargo Bank NA     Page 26 of 26

EXHIBIT 8
Page 30 of 30

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ANDREW G. CLARK,

     Plaintiff,     6:14-cv-01103-TC

      v.       ORDER

WELLS FARGO BANK, N.A.,
Et al.,

     Defendants.

Coffin, Magistrate Judge.

  Plaintiff *pro se* has filed what can only be characterized as a nuisance lawsuit against various defendants. Plaintiff's complaint does not comply with the minimal pleading requirements of Federal Rule of Civil Procedure 8(a) and plaintiff has alleged claims against defendants that are immune from liability or have other dispositive defenses. Moreover, the record before the court indicates that most if not all of plaintiff's claims are barred by *res judicata* or the doctrine of issue preclusion.

  Several defendants have filed motions to dismiss. (#7),

1 - ORDER

EXHIBIT 9
Page 1 of 3

(#10), (#43) and (#66). Plaintiff has filed a number of mostly improper motions, but has not responded in any meaningful way to defendants' dispositive motions.

Therefore, IT IS HEREBY ORDERED that plaintiff shall show cause in writing within 30 days of the date of this order why defendants' motions to dismiss (#7), (#10), (#43) and (#66) should not be allowed. No extensions of time to comply with this order will be allowed. Plaintiff is advised that failure to show cause as directed herein will result in the dismissal of this proceeding for failure to prosecute.

Defendant Alex Gardner and State of Oregon's Motion to Stay Discovery (#42) is allowed.

All other pending motions (#21), (#23), (26), (#36), (#38) (#41) (#45) (#46), (#48), (#49), (#50), (#51), (#52), (#53), (#55), and (#61) are denied without prejudice to request reconsideration after plaintiff has filed a response as directed herein.

Plaintiff is advised that litigation is not a game in which he can make up his own rules. *Pro se* litigants must follow the same rules of procedure that govern other litigants. Ovitsky v. Oregon, 2014 U.S. Dist. LEXIS 12892, *7-8 (D. Or. Feb. 3, 2014), *citing* King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), overruled on other grounds by Lacy v. Maricopa County, 693 F.2d 896 (9th Cir. 2012).

2 - ORDER

EXHIBIT 9
Page 2 of 3

Plaintiff is further advised that vexatious and abusive tactics will not be tolerated and may subject him to penalties for contempt of court.

IT IS SO ORDERED.


DATED this ___ day of November, 2014.

_____
Thomas M. Coffin
United States Magistrate  Judge

EXHIBIT 9
Page 3 of 3

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANDREW G. CLARK,

        Plaintiff,

        v.

ERIK HASSELMAN, District Attorney's
Office for Lane County, Oregon;
WELLS FARGO BANK, N.A.;
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C., a South Carolina Corporation;

        Defendants.

_____

Civ. No. 6:14-cv-01103-TC

FINDINGS AND
RECOMMENDATION

COFFIN, Magistrate Judge:

        Defendant Wells Fargo Bank, N.A., ("Wells Fargo") moves to dismiss plaintiff Andrew

Clark's claims against it with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) or in the alternative,

to strike plaintiff's First Amended Complaint ("FAC") pursuant to Fed. R. Civ. P. 12(f). (# 110).

Wells Fargo also filed a Request for Judicial Notice in Support of its Motion to Dismiss (# 112).

For the reasons set forth below, Wells Fargo's motion to dismiss plaintiff's claims against it with

prejudice (# 110) should be granted and Wells Fargo's Request for Judicial Notice of its Motion

to Dismiss for Failure to State a Claim (# 112) should be denied as moot.

1 – FINDINGS AND RECOMMENDATION

EXHIBIT 10
Page 1 of 11

## BACKGROUND

Plaintiff was employed by Wells Fargo as a mortgage originator from September 2009 until June 2011, when he was terminated for "repeatedly displaying unprofessional conduct." *Clark v. Wells Fargo Bank, N.A.* ("*Clark III*"), No. 3:13-cv-01546-AA, 2014 WL 2998600, *1 (D. Or. July 1, 2014). At some point during his tenure at Wells Fargo, plaintiff began compiling reports regarding the bank's alleged violations of the Sarbanes–Oxley and Frank–Dodd Acts, which he transmitted both internally and to various government agencies, including the Federal Bureau of Investigation and Central Intelligence Agency. *Id.* After being terminated from Wells Fargo in June 2011, plaintiff posted Wells Fargo's confidential and proprietary records, including private customer information, on his website. *Id.*

On July 18, 2011, the Eugene Police Department contacted plaintiff at his home because Wells Fargo reported that he was trespassing and had sent an email referencing genocide. *Id.* Police officers warned plaintiff to avoid Wells Fargo property in the future. On July 29, 2011, the police arrested plaintiff for second degree municipal trespass. *Id.* Plaintiff was held in the Lane County jail for 18 hours before being released and the trespass charge later being dismissed. *Id.*

In August 2011, Wells Fargo commenced a lawsuit seeking to enjoin plaintiff from publishing, controlling, disclosing, or retaining any of its equipment, confidential customer information, or trade secrets. *Id.* Plaintiff filed numerous motions, which, amongst other things, attacked Wells Fargo's counsel, Ogletree, Deakins, Nash, Smoak and Stewart, P.C. ("Ogletree"), and alleged that Wells Fargo was engaging in racketeering and retaliation; the court denied each of plaintiff's motions. *Id.* The court, however, permitted Wells Fargo to file documents reflecting plaintiff's inappropriate correspondences under seal. *Id.*

2 – FINDINGS AND RECOMMENDATION

EXHIBIT 10
Page 2 of 11

On October 5, 2012, after two hearings, the court granted summary judgment in favor of Wells Fargo and entered a permanent injunction. *See generally Wells Fargo Bank, N.A. v. Clark ("Clark I"),* 2012 WL 4794156 (D. Or. Oct. 5, 2012). At that time, the court held plaintiff in contempt for failing to "comply with standards of professionalism in all his communications with Wells Fargo and its counsel." *Id.* at 5–7. Plaintiff sent hundreds of emails and faxes to Ogletree, some of which were threatening and/or obscene, and all of which "had little to no bearing upon [any] legal issue between plaintiff and defendant," despite being repeatedly instructed by the court "to limit his communications to plaintiff's counsel's firm in Portland and to keep those to a strictly professional tone." *Id.* Thereafter, the court denied several motions for reconsideration filed by plaintiff. *See generally Wells Fargo Bank, N .A. v. Clark ("Clark II"),* 2013 WL 2038561 (D. Or. May 14, 2013).

On July 18, 2013, police officers arrived at plaintiff's home to interview him about certain faxes and emails he had sent Ogletree and one of its attorneys, Leah Lively. *Clark III,* 2014 WL 2998600, *1. Although plaintiff denied that the communications at issue were threatening, officers warned him if he continued to communicate inappropriately with Ogletree and Lively, he may be criminally charged with stalking. *Id.* On July 23, 2013, plaintiff sent another fax to Ogletree and Lively in contravention of police orders. *Id.* On July 25, 2013, plaintiff was arrested and charged with ten counts of stalking; he was jailed for six days and released with an electronic ankle bracelet after posting bail. *Id.*

On August 3, 2013, plaintiff initiated the *Clark III* lawsuit against Wells Fargo, Ogletree, and Securitas Corporation ("Securitas"), as well as certain individually named employees, alleging: (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) deprivation of his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights in violation of

3 – FINDINGS AND RECOMMENDATION

EXHIBIT 10
Page 3 of 11

42 U.S.C. § 1983; (3) defamation; (4) violations of the Occupational Safety and Health Act ("OSHA"); (5) gross negligence; and (6) a conspiracy against his constitutional rights in violation of 18 U.S.C. §§ 241, 242. *Id.*

On January 9, 2014, Plaintiff entered into a plea agreement, which, in relevant part, precludes him from contacting Ogletree or its attorneys, except through counsel, for ten years. *Id.* On July 1, 2014, Wells Fargo's motion to dismiss was granted in the *Clark III* suit and the case was dismissed. *Id.* at 9. On July 16, 2014, plaintiff filed a motion to set aside the *Clark III* judgment alleging fraud upon the court. Plaintiff's motion was denied and on July 22, 2014, plaintiff appealed the dismissal. Pl.'s Resp. to Mot. to Dismiss 4, 9. However, on July 11, 2014, eleven days prior to filing the aforementioned motion and appeal to the *Clark III* judgment, plaintiff filed the immediate action against Wells Fargo; the City of Eugene, Oregon; Lane County, Oregon; the State of Oregon; Alex Gardner of the District Attorney's Office for Lane County, Oregon; Ogletree; and Eric Hasselman, of the Lane County District Attorney's Office. Pl.'s Compl. 1.

On August 4, 2014, Wells Fargo filed a motion to dismiss plaintiff's claims against it (# 10) and on November 24, 2014, this court ordered plaintiff to show cause why Well's Fargo's motion to dismiss should not be granted. (# 70). On December 9, 2014, plaintiff filed a motion objecting to this court's order to show cause (# 75) and on April 9, 2015, District Judge Michael McShane adopted this court's order to show cause "in full" and agreed with this court's view that "plaintiff's action can only be characterized as a nuisance lawsuit" and that this court's warning that his actions could subject him to contempt of court was "entirely appropriate." (# 87).

On December 24, 2014, plaintiff filed a motion for leave to file a FAC (# 76), which this court denied without prejudice because plaintiff's motion failed to comply with Local Rules

4 – FINDINGS AND RECOMMENDATION

EXHIBIT 10
Page 4 of 11

("LR") 7-1(a) and 15-1(d)(1). (# 86). On May 1, 2015, plaintiff filed another motion for leave to file a FAC, this time including a copy of the proposed FAC, as well as all exhibits referenced by the FAC as LR 15(d)(1) requires. (# 92). On September 21, 2015, this court granted plaintiff's motion for leave to file a FAC (# 99) and on September 28, 2015, plaintiff filed the FAC (# 100) that is now before the court. Plaintiff's FAC asserts two causes of action against defendants, the first of which, implicates only defendant Eric Hasselman, and makes no allegations against Wells Fargo. FAC (# 100) at 9-10. Plaintiff's second cause of action alleges, in relevant part, that Wells Fargo violated the RICO Act, 18 U.S.C. § 1962(c), by: (a) "transmitting a threat report to the Eugene Police Department on July 28, 2011 with no factual basis to support probable cause for arrest"; (b) commencing the *Clark I* suit against him; (c) conspiring with defendants Ogletree and Hasselman to deprive him of his equal protection rights between June 14, 2013 and January 9, 2014;[1] and (d) "commit[ting] at least two predicate acts constituting a 'pattern' of 'racketeering.'" *Id.* at 10-12. On November 16, 2015, Wells Fargo submitted the Motion to Dismiss (# 110) and Request for Judicial Notice (# 112) that are presently before the court.

## STANDARD OF REVIEW

Where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). For purposes of a motion to dismiss, the complaint is liberally construed in favor of the plaintiff and its allegations are taken as true. *Rosen v.*

---

[1] Plaintiff's allegations in the FAC that correlate with the date range from June 14, 2013, to January 9, 2014, all relate to plaintiff's arrest, plea agreement, and conviction stemming from his stalking charges. Pl.'s FAC (# 100) ¶¶ 31-46.

5 – FINDINGS AND RECOMMENDATION

EXHIBIT 10
Page 5 of 11

*Walters,* 719 F.2d 1422, 1424 (9th Cir. 1983). Bare assertions, however, that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir.2011), *cert. denied,* 132 S.Ct. 2101 (2012).

## DISCUSSION

Wells Fargo moves the court for an order dismissing with prejudice plaintiff's claims against it under Fed. R. Civ. P. 12(b)(6) because: (1) plaintiff's claims against it are barred by the doctrine of *res judicata*; and (2) plaintiff cannot state a claim upon which relief can be granted. Wells Fargo's Mot. to Dismiss and Mot. to Strike 2. In the alternative, Wells Fargo moves the court to strike plaintiff's FAC pursuant to Fed. R. Civ. P. 12(f) because plaintiff's FAC is "materially different than the complaint the court granted plaintiff leave to file." *Id.*

### I. Res Judicata

Plaintiff argues that its claims against Wells Fargo are not barred by *res judicata* because: (1) Wells Fargo already presented a *res judicata* argument in its prior motion to dismiss and the court allowed repleading; (2) the FAC alleges actions that occurred after the complaint in the *Clark III* lawsuit was filed, specifically that "the plea deal that resulted in Ogletree's dismissal from the prior action was a product of defendant's racketeering activity"; and (3) "the prior case was not litigated on its merits," which "led to the RICO claim being dismissed without addressing the merits." Pl.'s Resp. to Wells Fargo's Mot. to Dismiss 4.

Claim preclusion, otherwise known as *res judicata*, "bars all grounds for recovery that could have been asserted, whether they were or not, in a prior lawsuit between the same parties

6 – FINDINGS AND RECOMMENDATION

EXHIBIT 10
Page 6 of 11

on the same cause of action." *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 528-29 (9th Cir. 1998). The doctrine "conserves judicial resources and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Tahoe-Sierra Preservation Council, Inc., v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003).

"*Res judicata* is applicable whenever there is (1) an identity of claims; (2) a final judgment on the merits; and (3) privity between parties." *Id.* (internal citation omitted). "Identity of claims exists when two suits arise from the same transactional nucleus of facts." *Id.* "'Unless the court in its order for dismissal otherwise specifies, a dismissal . . . other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.'" *Stewart v. U.S. Bancorp*, 297 F.3d 953, 957 (9th Cir. 2002) (quoting Fed. R. Civ. P. 41(b)). Finally, "a dismissal for failure to state a claim under Rule 12(b)(6) is a 'judgment on the merits' to which *res judicata* applies." *Communication Mgmt. Servs., LLC v. Qwest Corp.*, 67 F. Supp. 3d 1159, 1169 (D. Or. 2014) (quoting *Stewart*, 297 F.3d at 957).

Here, the court finds unpersuasive plaintiff's argument that his claims are not barred by *res judicata* simply because Wells Fargo already presented a *res judicata* argument in its prior motion to dismiss and the court allowed repleading. Plaintiff was allowed to replead in this case only after being ordered to show cause why defendants' motions to dismiss should not be granted because, as stated above, this court found that plaintiff's action can only be characterized as a nuisance lawsuit and warned that his actions could subject him to contempt of court. In so finding, this court noted that: (1) plaintiff's complaint did "not comply with the minimal pleading requirements of Federal Rules of Civil Procedure 8(a)"; (2) plaintiff had "not responded in any meaningful way to defendant's dispositive motions"; and (3) "the record before the court

7 – FINDINGS AND RECOMMENDATION

EXHIBIT 10
Page 7 of 11

indicates that most if not all of plaintiff's claims are barred by *res judicata*." (# 70) at 1. Consequently, Wells Fargo's motion was denied without prejudice, until such time that plaintiff complied with this court's order. Accordingly, because Wells Fargo's motion was denied without prejudice, it has appropriately reasserted a *res judicata* defense here.

Similarly unpersuasive is plaintiff's argument that *res judicata* does not apply here because the FAC alleges actions that occurred after the complaint in the prior *Clark III* lawsuit was filed, specifically that the plea deal from the prior action was a product of Wells Fargo's alleged racketeering activity. An inspection of the *Clark III* opinion reveals that plaintiff filed a motion to augment the record in that case, which caused the court to consider whether Wells Fargo was responsible for any wrongdoing relating to plaintiff's plea deal. *See Clark III*, 2014 WL 2998600, *3 ("Clark also filed a motion with this court impugning his plea deal and indicating that he would appeal that conviction. *See generally* Pl.'s Mot. to Augment the Record."). Specifically, the *Clark III* court found there was no "indicat[ion] that Wells Fargo was responsible or involved in the charges Ogletree and Lively filed against him" and thus, any allegations of any "wrongdoing relating to this event are not plausible." *Id.* Moreover, the court found that "Clark's plea agreement, wherein [he] stipulated to one count of stalking, establishes that Ogletree's and Lively's complaints, as wells as the actions of law enforcement in charging him and taking him into custody, were legally valid." *Id.* Finally, the court found that plaintiff's "claims that are premised on his July 2013 interactions with the police and subsequent arrest and criminal conviction fail." *Id.*

Accordingly, because the *Clark III* court squarely addressed plaintiff's accusations against Wells Fargo relating to any wrongdoing in connection with his arrest, plea deal, and conviction, and found that Wells Fargo was not responsible or involved, *res judicata* precludes

8 – FINDINGS AND RECOMMENDATION

EXHIBIT 10
Page 8 of 11

re-litigation of those issues here. *Siegel*, 143 F.3d at 528-29; *Tahoe-Sierra Preservation Council, Inc.*, 322 F.3d at 1077.

Finally, this court finds unpersuasive plaintiff's argument that *res judicata* does not apply here because his RICO claim against Wells Fargo in *Clark III* was dismissed without reaching the merits. In addition to the *Clark III* court's findings stated above, the *Clark III* court also considered plaintiff's accusations that Wells Fargo violated RICO by "intentionally harassing him by malicious prosecution of groundless civil and criminal offenses" and found that plaintiff's "RICO claims are defective in many respects." *Clark III*, 2014 WL 2998600, 4. The *Clark III* court found that "Clark's claims are based, in part, on the alleged injustices he suffered pursuant to his previous litigation with Wells Fargo" in the *Clark I* and *Clark II* suits, however, "because those issues were previously litigated between the same parties and resulted in a final judgment, they cannot form the basis of this action." *Id.* at 4-5 (internal quotations omitted). Moreover, the *Clark III* court found that plaintiff "fails to evince a pattern of racketeering activity" and, therefore, could not "conclude that there is any continuing threat of criminal activity." *Id.* The *Clark III* court, therefore, granted Wells Fargo's Rule 12(b)(6) motion to dismiss plaintiff's RICO claims against it. *Id.* at 5. Accordingly, this court finds that plaintiff's RICO claim against Wells Fargo in *Clark III* was decided on the merits. Fed. R. Civ. P. 41(b); *Stewart*, 297 F.3d at 957; *Communication Mgmt. Servs., LLC*, 67 F. Supp. 3d at 1169.

Because plaintiff's claims in Clark III were decided on the merits, the only remaining issues are whether there is privity between parties and an identity of claims. *Tahoe-Sierra Preservation Council, Inc.*, 322 F.3d at 1077. It is undisputed that this action involves the same parties as the prior *Clark III* action against Wells Fargo. *See* Pl.'s Opp'n to Wells Fargo's First Mot. to Dismiss (#77), 10 ("plaintiff concedes that Wells Fargo N.A. was a party to the prior

9 – FINDINGS AND RECOMMENDATION

EXHIBIT 10
Page 9 of 11

case 6:13-cv-01546-AA."). Accordingly, this court finds that there is privity between the parties. Moreover, plaintiff previously admitted that an identity of claims exists between the instant suit and the *Clark III* suit. *See Id.* ("Plaintiff concedes that the same facts and laws were at issue in the prior [*Clark III*] case."). However, to be sure, an inspection of the *Clark III* opinion and plaintiff's claims in the instant case confirms that an identity of claims exists.

As previously stated, in *Clark III* the court found that: (1) Wells Fargo is not responsible for any wrongdoing relating to plaintiff's arrests, plea deal, or conviction; (2) plaintiff's claims based on previous litigation with Wells Fargo could not form the basis of that action because those issues were previously litigated between the same parties and resulted in a final judgment; and (3) plaintiff failed to evince a pattern of racketeering activity. Similarly, plaintiff asserts here that Wells Fargo violated the RICO Act: (1) through alleged wrongdoing stemming from his arrests, plea deal, and conviction; (2) by commencing the *Clark I* suit against him; and (3) by committing at least two predicate acts constituting a pattern of racketeering.

Accordingly, because there is privity between the parties, an identity of claims, and a previous judgment on the merit of those claims, this court finds that *res judicata* precludes plaintiff's RICO claim against Wells Fargo here. As such, Wells Fargo's motion to dismiss plaintiff's claims against it with prejudice (# 110) should be granted and its motion to strike plaintiff's FAC should be dismissed as moot. Further, Wells Fargo's Request for Judicial Notice of its Motion to Dismiss for Failure to State a Claim (# 112) should also be dismissed as moot.

## CONCLUSION

For the reasons stated, Wells Fargo's motion to dismiss plaintiff's claims against it with prejudice (# 110) should be granted and its Request for Judicial Notice of its Motion to Dismiss for Failure to State a Claim (# 112) should be denied as moot.

10 – FINDINGS AND RECOMMENDATION

EXHIBIT 10
Page 10 of 11

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this ___ day of April, 2016.

THOMAS M. COFFIN
United States Magistrate Judge

11 – FINDINGS AND RECOMMENDATION

EXHIBIT 10
Page 11 of 11

Marianne Dugan, Attorney
OSB # 932563
259 E. 5th Ave., Suite 200-D
Eugene, OR  97401
(541) 338-7072
Fax 866-650-5213
mdugan@mdugan.com

      Attorney for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ANDREW G. CLARK,<br>    Plaintiff, | CASE NO. 6:14-cv-01103-TC |
|      v. | RESPONSE TO ORDER TO SHOW<br>CAUSE |
| WELLS FARGO BANK, N.A.; OGLETREE,<br>DEAKINS, NASH, SMOAK & STEWART,<br>P.C.; and ERIC HASSELMAN, | |
|     Defendants. | |

In response to the Order to Show Cause, upon review of the proceedings prior to

undersigned counsel appearing in this case, it appears that indeed Ogletree *et al*. was not served.

The court has already dismissed the claims against Wells Fargo (upon which the claims against

Ogletree are based).  Review of the record indicates that the two-year statute of limitations

against Ogletree expired before undersigned counsel was retained and substituted her appearance

in this case.  Therefore the time to serve Ogletree expired before undersigned counsel was

retained and substituted her appearance in this case, and service now would be futile.

    Therefore undersigned counsel submits that Ogletree must be dismissed from this case.

    Respectfully submitted February 23, 2017.

Page 1 - RESPONSE TO ORDER TO SHOW CAUSE

EXHIBIT 11
Page 1 of 2

  /s/  Marianne Dugan
Marianne Dugan, OSB # 932563
Attorney for Plaintiff
259 E. 5th Ave., Suite 200-D
Eugene, Oregon 97401
(541) 338-7072
mdugan@mdugan.com

Page 2 - RESPONSE TO ORDER TO SHOW CAUSE

EXHIBIT 11
Page 2 of 2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANDREW G. CLARK,

      Plaintiff,                       Civ. No. 6:14-cv-1103-JR

      v.                             ORDER

ERIK HASSELMAN, et al.,

      Defendants.

_____

MCSHANE, Judge:

    Based on counsel's response, ECF No. 131, to the order to show cause, the claims against

defendant Ogletree Deakins Nash Smoak and Stewart, P.C. are dismissed, with prejudice.

IT IS SO ORDERED.

    DATED this 24th day of February, 2017.


                       _____/s/ Michael J. McShane _____
                             Michael McShane
                         United States District Judge

1 – ORDER

EXHIBIT 12
Page 1 of 1

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

AUG 27 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| WELLS FARGO BANK, N.A., | No.    18-35887 |
| Plaintiff-Appellee, | D.C. No. 6:11-cv-06248-AA |
| v. | |
| ANDREW G. CLARK, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, District Judge, Presiding

Submitted on August 19, 2019[**]

Before:    SCHROEDER, PAEZ, and HURWITZ, Circuit Judges.

Andrew G. Clark appeals pro se from the district court's order denying his

motion to vacate the district court's judgment in Wells Fargo Bank, N.A.'s action

alleging violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and

state law.  We have jurisdiction under 28 U.S.C. § 1291.  We review for an abuse

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]    The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

EXHIBIT 13
Page 1 of 6

of discretion.  *United States v. Sierra Pac. Indus., Inc.*, 862 F.3d 1157, 1166 (9th Cir. 2017).  We affirm.

The district court did not abuse its discretion by denying Clark's motion to vacate judgment, which Clark brought nearly six years after the judgment was entered, because Clark failed to present any facts that were unknown to him at the time of the entry of judgment.  *See Sierra Pac. Indus., Inc.*, 862 F.3d at 1167-1168 (explaining that although a motion for relief for fraud on the court is not subject to a one-year time limit under Fed. R. Civ. P. 60(d)(3), "relief for fraud on the court is available only where the fraud was not known at the time of settlement or entry of judgment").  To the extent Clark's motion sought disqualification of the district judge, there was no error in denying the motion because it is untimely.  *See United States v. Rogers*, 119 F.3d 1377, 1382 (9th Cir. 1997) (failure to file a disqualification motion until more than one and one-half years after party became aware of the grounds for disqualification rendered his motion untimely).

We do not consider matters not specifically and distinctly raised and argued in the opening brief, or arguments and allegations raised for the first time on appeal.  *See Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009).

**AFFIRMED.**

EXHIBIT 13
Page 2 of 6

## United States Court of Appeals for the Ninth Circuit

**Office of the Clerk**
95 Seventh Street
San Francisco, CA 94103

**Information Regarding Judgment and Post-Judgment Proceedings**

**Judgment**
- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36.  Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise.  To file a motion to stay the mandate, file it electronically via the appellate ECF system or, if you are a pro se litigant or an attorney with an exemption from using appellate ECF, file one original motion on paper.

**Petition for Panel Rehearing  (Fed. R. App. P. 40; 9th Cir. R. 40-1)**
**Petition for Rehearing En Banc (Fed. R. App. P. 35; 9th Cir. R. 35-1 to -3)**

**(1)    A.    Purpose (Panel Rehearing):**
- A party should seek panel rehearing only if one or more of the following grounds exist:
  - ► A material point of fact or law was overlooked in the decision;
  - ► A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
  - ► An apparent conflict with another decision of the Court was not addressed in the opinion.
- Do not file a petition for panel rehearing merely to reargue the case.

**B.    Purpose (Rehearing En Banc)**
- A party should seek en banc rehearing only if one or more of the following grounds exist:

► Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or

► The proceeding involves a question of exceptional importance; or

► The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2)    Deadlines for Filing:**

- A petition for rehearing may be filed within 14 days after entry of judgment.  Fed. R. App. P. 40(a)(1).

- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment. Fed. R. App. P. 40(a)(1).

- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.

- *See* Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).

- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication.  9th Cir. R. 40-2.

**(3)    Statement of Counsel**

- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist.  The points to be raised must be stated clearly.

**(4)    Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**

- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.

- The petition must be accompanied by a copy of the panel's decision being challenged.

- An answer, when ordered by the Court, shall comply with the same length limitations as the petition.

- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

Case 6:20-cv-00253-AA    Document 64-1    Filed 04/09/20    Page 189 of 330

(5 of 6)

Case 6:11-cv-06248-AA    Document 160    Filed 08/27/19    Page 5 of 6
Case: 18-35887, 08/27/2019, ID: 11411907, DktEntry: 4-2, Page 3 of 4

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms*.
- You may file a petition electronically via the appellate ECF system. No paper copies are required unless the Court orders otherwise. If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper. No additional paper copies are required unless the Court orders otherwise.

## Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)
- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms*.

## Attorneys Fees
- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-7806.

## Petition for a Writ of Certiorari
- Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov

## Counsel Listing in Published Opinions
- Please check counsel listing on the attached decision.
- If there are any errors in a published opinion, please send a letter **in writing within 10 days** to:
  - ► Thomson Reuters; 610 Opperman Drive; PO Box 64526; Eagan, MN 55123 (Attn: Jean Green, Senior Publications Coordinator);
  - ► and electronically file a copy of the letter via the appellate ECF system by using "File Correspondence to Court," or if you are an attorney exempted from using the appellate ECF system, mail the Court one copy of the letter.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 10. Bill of Costs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form10instructions.pdf

**9th Cir. Case Number(s)**

**Case Name**

The Clerk is requested to award costs to (*party name(s)*):

I swear under penalty of perjury that the copies for which costs are requested were actually and necessarily produced, and that the requested costs were actually expended.

**Signature**              **Date**

*(use "s/[typed name]" to sign electronically-filed documents)*

| COST TAXABLE | REQUESTED *(each column must be completed)* | | | |
|---|---|---|---|---|
| DOCUMENTS / FEE PAID | No. of Copies | Pages per Copy | Cost per Page | TOTAL COST |
| Excerpts of Record* | | | $ | $ |
| Principal Brief(s) *(Opening Brief; Answering Brief; 1st, 2nd , and/or 3rd Brief on Cross-Appeal; Intervenor Brief)* | | | $ | $ |
| Reply Brief / Cross-Appeal Reply Brief | | | $ | $ |
| Supplemental Brief(s) | | | $ | $ |
| Petition for Review Docket Fee / Petition for Writ of Mandamus Docket Fee | | | $ | |
| | | | **TOTAL:** | $ |

***Example:** Calculate 4 copies of 3 volumes of excerpts of record that total 500 pages [Vol. 1 (10 pgs.) + Vol. 2 (250 pgs.) + Vol. 3 (240 pgs.)] as:*
*No. of Copies: 4; Pages per Copy: 500; Cost per Page: $.10 (or actual cost IF less than $.10);*
*TOTAL: 4 x 500 x $.10 = $200.*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 10**                                               *Rev. 12/01/2018*

EXHIBIT 13
Page 6 of 6

**Query**   **Reports**   **Utilities**   **Help**   **Log Out**

# U.S. District Court
## District of Oregon (Eugene (6))
## CIVIL DOCKET FOR CASE #: 6:11-cv-06248-AA

Wells Fargo Bank, N.A. v. Clark                           Date Filed: 08/05/2011
Assigned to: Judge Ann L. Aiken                          Date Terminated: 11/29/2012
Demand: $75,000                                          Jury Demand: None
Case in other court: Ninth Circuit, 18-35887            Nature of Suit: 890 Other Statutory Actions
Cause: 28:1331 Fed. Question: Breach of Contract        Jurisdiction: Federal Question

**Plaintiff**

**Wells Fargo Bank, N.A.**                represented by   **David P. R. Symes**
                                                          Littler Mendelson, PC
                                                          121 SW Morrison Street
                                                          Suite 900
                                                          Portland, OR 97204
                                                          503-221-0309
                                                          Fax: 503-961-8198
                                                          Email: dsymes@littler.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Leah C. Lively**
                                                          Davis Wright Tremaine, LLP
                                                          1300 SW Fifth Avenue
                                                          Suite 2400
                                                          Portland, OR 97201-5630
                                                          503-241-2300
                                                          Fax: 503-778-5299
                                                          Email: leahlively@dwt.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Amanda Bolliger Crespo**
                                                          Ogletree Deakins Nash Smoak & Stewart
                                                          P.C.
                                                          222 SW Columbia St.
                                                          Suite 1500
                                                          Portland, OR 97201
                                                          503-552-2140
                                                          Fax: 503-224-4518
                                                          Email:
                                                          amanda.crespo@ogletreedeakins.com
                                                          *TERMINATED: 02/17/2016*

                                                          **Elizabeth A. Falcone**
                                                          Ogletree Deakins Nash Smoak & Stewart

EXHIBIT 14
Page 1 of 13

P.C.
222 SW Columbia Street
Suite 1500
Portland, OR 97201
503-552-2140
Fax: 503-224-4518
Email:
elizabeth.falcone@ogletreedeakins.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Andrew G. Clark**                          represented by   **Andrew G. Clark**
                                                              3270 Storey Ridge Road
                                                              Eugene, OR 97405
                                                              (541) 510-3915
                                                              PRO SE

| Date Filed | # | Docket Text |
|---|---|---|
| 08/05/2011 | 1 | Complaint. Filing Fee in amount of $350 collected. Receipt No. 600006735. Summons issued as to Defendant Andrew G. Clark on 8/9/11. Filed by Wells Fargo Bank, N.A. against Andrew G. Clark. (Attachments: # 1 Civil Cover Sheet, # 2 Summons Issued) (ljb) (Entered: 08/09/2011) |
| 08/05/2011 | 2 | Motion for Temporary Restraining Order. Oral Argument requested. Filed by Wells Fargo Bank, N.A. (ljb). Added Motion for Preliminary Injunction on 8/12/2011 (jw). (Entered: 08/09/2011) |
| 08/05/2011 | 3 | Declaration of Leah C. Lively. Filed by Wells Fargo Bank, N.A. (Related document(s): Motion for Temporary Restraining Order 2 .) (ljb) (Entered: 08/09/2011) |
| 08/05/2011 | 4 | Declaration of Elsie Reiser. Filed by Wells Fargo Bank, N.A. (Related document(s): Motion for Temporary Restraining Order 2 .) (ljb) (Entered: 08/09/2011) |
| 08/05/2011 | 5 | Certificate of Compliance with Fed R Civ P 65(b)(1)(B). Filed by Wells Fargo Bank, N.A. (ljb) (Entered: 08/09/2011) |
| 08/08/2011 | 6 | Answer to 1 Complaint. Filed by pro se Andrew G. Clark. (ljb) (Entered: 08/09/2011) |
| 08/10/2011 | 7 | Scheduling Order by U.S. District Judge Michael R. Hogan regarding Motion for Temporary Restraining Order 2 . Oral Argument is set for 8/22/2011 at 11:00AM in Eugene Courtroom 1 before U.S. District Judge Michael R. Hogan. Ordered by U.S. District Judge Michael R. Hogan. (jw) (Entered: 08/10/2011) |
| 08/10/2011 | 8 | Discovery and Pretrial Scheduling Order and Notice of Case Assignment to Magistrate Judge Thomas M. Coffin. Discovery is to be completed by 12/8/2011. Joint Alternate Dispute Resolution Report is due by 1/9/2012. Pretrial Order is due by 1/9/2012. Ordered by Magistrate Judge Thomas M. Coffin. (ljb) (Entered: 08/10/2011) |
| 08/10/2011 | 9 | Clerk's Notice of Mailing to Defendant Andrew G. Clark regarding Discovery order 8 . (ljb) (Entered: 08/10/2011) |
| 08/10/2011 | 10 | **ORDER:** Granting Motion for a Temporary Restraining Order 2 . Defendant shall have 10 days from the date of this order to show cause in writing why a Preliminary Injunction |

EXHIBIT 14
Page 2 of 13

| | | |
|---|---|---|
| | | should not be issued. This order shall remain in full force and effect until oral argument is heard as to Preliminary Injunction on 8/22/2011 at 11:00AM in Eugene Courtroom 1 before U.S. District Judge Michael R. Hogan. Signed on 8/10/2011 by U.S. District Judge Michael R. Hogan. (jw) (Entered: 08/10/2011) |
| 08/10/2011 | 11 | Clerk's Notice of Mailing to Andrew Clark regarding Order on Motion for Temporary Restraining Order 10 . (jw) (Entered: 08/10/2011) |
| 08/15/2011 | 12 | Show Cause, Motion to Dismiss, Motion to Vacate Order on Motion for Temporary Restraining Order 10 . (Exhibits to plaintiff's document filed in hard copy in Clerk's Office). Filed by Andrew G. Clark. (ljb) (Entered: 08/17/2011) |
| 08/18/2011 | 13 | Notice of Appearance of Amanda A. Bolliger appearing on behalf of Wells Fargo Bank, N.A. *Notice of Appearance of Elizabeth A. Falcone and Amanda A. Bolliger* Filed by on behalf of Wells Fargo Bank, N.A. (Bolliger, Amanda) (Entered: 08/18/2011) |
| 08/18/2011 | 14 | Show Cause Motion to Dismiss Additional Evidence (8-19-2011). Filed by Andrew G. Clark. (ljb) (Entered: 08/18/2011) |
| 08/19/2011 | 15 | Declaration of Teresa White *in Support of Wells Fargo Bank, N.A.'s Motion for Preliminary Injunction*. Filed by Wells Fargo Bank, N.A.. (Related document(s): Motion for Temporary Restraining Order, Motion for Preliminary Injunction 2 .) (Falcone, Elizabeth) (Entered: 08/19/2011) |
| 08/19/2011 | 16 | Declaration of Douglas Grenz *in Support of Wells Fargo Bank, N.A.'s Motion for Preliminary Injunction*. Filed by Wells Fargo Bank, N.A.. (Related document(s): Motion for Temporary Restraining Order, Motion for Preliminary Injunction 2 .) (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit) (Falcone, Elizabeth) (Entered: 08/19/2011) |
| 08/19/2011 | 17 | Declaration of Christina Duea *in Support of Plaintiff Wells Fargo Bank, N.A.'s Motion for Preliminary Injunction*. Filed by Wells Fargo Bank, N.A.. (Related document(s): Motion for Temporary Restraining Order, Motion for Preliminary Injunction 2 .) (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (Falcone, Elizabeth) (Entered: 08/19/2011) |
| 08/19/2011 | 18 | Declaration of Leah C. Lively *in Support of Plaintiff Wells Fargo Bank N.A.'s Motion for Preliminary Injunction*. Filed by Wells Fargo Bank, N.A.. (Related document(s): Motion for Temporary Restraining Order, Motion for Preliminary Injunction 2 .) (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5) (Falcone, Elizabeth) (Entered: 08/19/2011) |
| 08/22/2011 | 19 | **MINUTES of Proceedings:** Motion Hearing Held regarding Motion for Preliminary Injunction 2 . Ordered Motion is taken under advisement. Leah Lively, Amanda Bolliger, and Elizabeth Falcone present as counsel for plaintiffs. Andrew Clark present as pro se defendant. Court Reporter: Deb Wilhelm. U.S. District Judge Michael R. Hogan presiding. (Related document: Motion for Preliminary Injunction 2 .) (jw) (Entered: 08/22/2011) |
| 08/22/2011 | 20 | Clerk's Notice of Mailing to Andrew Clark regarding Motion Hearing Held 19 . (jw) (Entered: 08/22/2011) |
| 08/22/2011 | 21 | Motion to Direct in Advance of Oral Arguments. Filed by Andrew G. Clark. (ljb) (Entered: 08/22/2011) |
| 08/22/2011 | 22 | "Defendant Challenge to Venue Defendant Challenge to Applicability of laws cited in Plaintiff Court filings subject case". Filed by Andrew G. Clark (Attachments: # 1 Part 2 of Oversized Document, # 2 Part 3 of Oversized Document) (ljb) (Entered: 08/22/2011) |
| 08/23/2011 | 23 | **ORDER:** Granting Motion for a Preliminary Injunction 2 . Signed on 8/22/2011 by U.S. |

EXHIBIT 14
Page 3 of 13

| | | District Judge Michael R. Hogan. (jw) (Entered: 08/23/2011) |
|---|---|---|
| 08/23/2011 | 24 | **ORDER:** Denying Motion to Dismiss, Motion to Vacate 12 ; Denying Motion to Dismiss 14 , and Granting Motion 21 . Ordered by U.S. District Judge Michael R. Hogan. (jw) (Entered: 08/23/2011) |
| 08/23/2011 | 25 | Clerk's Notice of Mailing to Andrew G. Clark regarding Order 23 and Order 24 . (jw) (Entered: 08/23/2011) |
| 10/28/2011 | 26 | Motion for Order *Motion for Leave to File Under Seal Exhibits to Wells Fargo's Motion for Contempt and Order Requiring Defendant to Comply With Standards of Professionalism in All Communications With Wells Fargo and Its Counsel*. Filed by Wells Fargo Bank, N.A.. (Attachments: # 1 Proposed Order Proposed Order) (Lively, Leah) (Entered: 10/28/2011) |
| 10/28/2011 | 27 | Memorandum in Support *of Motion for Leave to File Exhibits to Wells Fargo's Motion for Contempt and Order Requiring Defendant to Comply With Standards of Professionalism in All Communications With Wells Fargo and Its Counsel*. Filed by Wells Fargo Bank, N.A.. (Related document(s): Motion for Order, 26 .) (Lively, Leah) (Entered: 10/28/2011) |
| 10/31/2011 | 28 | Motion to Compel. Filed by Andrew G. Clark. (ljb) (Entered: 11/01/2011) |
| 10/31/2011 | 29 | Motion to Bifurcate. Filed by Andrew G. Clark. (Attachments: # 1 Part 2 of Oversized Document, # 2 Part 3 of Oversized Document, # 3 Part 4 of Oversized Document, # 4 Part 5 of Oversized Document) (ljb) (Entered: 11/02/2011) |
| 11/02/2011 | 30 | **ORDER:** Granting Motion for Order 26 . The Court grants leave for Wells Fargo to file under seal three exhibits to be attached to its anticipated motion. The Court also orders the clerk to seal any subsequently filed documents that repeat the statements contained in the proposed sealed communications. Ordered by U.S. District Judge Michael R. Hogan. (jw) (Entered: 11/02/2011) |
| 11/02/2011 | 31 | Clerk's Notice of Mailing to Andrew G. Clark regarding Order 30 . (jw) (Entered: 11/02/2011) |
| 11/03/2011 | 32 | Motion *for Contempt and Order Requiring Defendant to Comply With Standards of Professionalism in All Communications With Wells Fargo and Its Counsel*, Motion for Order . Filed by Wells Fargo Bank, N.A.. (Lively, Leah) (Entered: 11/03/2011) |
| 11/03/2011 | 33 | Memorandum in Support *of Plaintiff Wells Fargo's Motion for Contempt and Order Requiring Defendant to Comply With Standards of Professionalism in All Communications With Wells Fargo and Its Counsel*. Filed by Wells Fargo Bank, N.A.. (Related document(s): Motion - Miscellaneous, Motion for Order 32 .) (Lively, Leah) (Entered: 11/03/2011) |
| 11/03/2011 | 34 | Declaration of Leah C. Lively *in Support of Plaintiff Wells Fargo Bank, N.A.'s Motion for Contempt and Order Requiring Defendant to Comply With Standards of Professionalism in All Communications With Wells Fargo and Its Counsel*. Filed by Wells Fargo Bank, N.A.. (Related document(s): Motion - Miscellaneous, Motion for Order 32 .) (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9) (Lively, Leah) (Entered: 11/03/2011) |
| 11/03/2011 | 35 | Declaration of David P.R. Symes *in Support of Plaintiff Wells Fargo's Motion for Contempt and Order Requiring Defendant to Comply With Standards of Professionalism in All Communications With Wells Fargo and Its Counsel*. Filed by Wells Fargo Bank, N.A.. (Related document(s): Motion - Miscellaneous, Motion for Order 32 .) |

EXHIBIT 14
Page 4 of 13

|            |     |                                                                                                                                                                                                                                                      |
|------------|-----|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|            |     | (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4) (Lively, Leah) (Entered: 11/03/2011)                                                                                                                                        |
| 11/04/2011 | 36  | Certificate of Service by Wells Fargo Bank, N.A. *Certificate of Service re Exhibit 4 to Declaration of Leah C. Lively (filed under seal)* Filed by Wells Fargo Bank, N.A.. (Lively, Leah) (Entered: 11/04/2011)                                        |
| 11/04/2011 | 37  | Certificate of Service by Wells Fargo Bank, N.A. *Certificate of Service re Exhibit 4a to Declaration of Leah C. Lively (filed under seal)* Filed by Wells Fargo Bank, N.A.. (Lively, Leah) (Entered: 11/04/2011)                                       |
| 11/04/2011 | 43  | Motion to Supplement Record and Affidavit. Filed by Andrew G. Clark. (cp) (Entered: 11/09/2011)                                                                                                                                                       |
| 11/07/2011 | 38  | Notice of Case Reassignment: This case has been reassigned from Magistrate Judge Thomas M. Coffin to Judge Michael R. Hogan. (eo) (Entered: 11/07/2011)                                                                                                |
| 11/07/2011 | 39  | Scheduling Order by U.S. District Judge Michael R. Hogan. Joint Status Report is due by 12/8/2011. Ordered by U.S. District Judge Michael R. Hogan. (jw) (Entered: 11/07/2011)                                                                          |
| 11/07/2011 | 40  | Clerk's Notice of Mailing to Andrew G. Clark regarding Scheduling Order 39 . (jw) (Entered: 11/07/2011)                                                                                                                                                |
| 11/07/2011 | 41  | Motion for Judgment as a Matter of Law. Filed by Andrew G. Clark. (sln) (Entered: 11/08/2011)                                                                                                                                                         |
| 11/07/2011 | 42  | Exhibit 4A re Motion for Contempt and Order Requiring Defendant to Comply With Standards of Professionalism in All Communications With Wells Fargo and Its Counsel 32 . Filed by Wells Fargo Bank, N.A.. Filed Under Seal (sln) (Entered: 11/08/2011)    |
| 11/17/2011 | 44  | Response in Opposition *to Plaintiff's Motion to Compel Compensation* to Motion to Compel 28 . Filed by Wells Fargo Bank, N.A.. (Lively, Leah) (Entered: 11/17/2011)                                                                                    |
| 11/17/2011 | 45  | Response in Opposition *to Defendant's Motion to Bifurcate* to Motion to Bifurcate 29 . Filed by Wells Fargo Bank, N.A.. (Lively, Leah) (Entered: 11/17/2011)                                                                                          |
| 11/23/2011 | 46  | Response in Opposition *to Defendant's Motion for Judgment as a Matter of Law* to Motion for Judgment 41 . Filed by Wells Fargo Bank, N.A.. (Lively, Leah) (Entered: 11/23/2011)                                                                        |
| 11/23/2011 | 47  | Declaration of Leah C. Lively *in Support of Wells Fargo's Response in Opposition to Defendant's Motion for Judgment as a Matter of Law.* Filed by Wells Fargo Bank, N.A.. (Related document(s): Response in Opposition to Motion 46 .) (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (Lively, Leah) (Entered: 11/23/2011) |
| 11/28/2011 | 48  | Motion for Joinder. Filed by Andrew G. Clark. (ljb) (Entered: 11/28/2011)                                                                                                                                                                             |
| 11/28/2011 | 49  | Motion to Require Bond of Plaintiff; Motion of Contempt of Court of Plaintiff. Filed by Andrew G. Clark. (ljb) (Entered: 11/28/2011)                                                                                                                   |
| 11/28/2011 | 50  | Motion to Remove/Augment Counsel of Plaintiff; Motion to Sanction Counsel of Plaintiff. Filed by Andrew G. Clark. (ljb) (Entered: 11/28/2011)                                                                                                         |
| 11/28/2011 | 51  | Motion to Supplement Record; Response to Plaintiff's Response Re: Opposing of Defendant's Motion to Bifurcate. Filed by Andrew G. Clark. (ljb) (Entered: 11/28/2011)                                                                                    |
| 11/28/2011 | 52  | Motion to Supplement Record; Response to Plaintiff's Response; Re: Opposing Defendant's Motion to Compensate. Filed by Andrew G. Clark. (ljb) (Entered: 11/28/2011)                                                                                     |
| 11/28/2011 | 53  | Response in Opposition *to Defendant's Motion to Supplement Record* to Motion to                                                                                                                                                                       |

EXHIBIT 14
Page 5 of 13

|  |  | Supplement 43 . Filed by Wells Fargo Bank, N.A.. (Lively, Leah) (Entered: 11/28/2011) |
|---|---|---|
| 11/28/2011 | 54 | Declaration of Leah C. Lively *in Support of Wells Fargo's Response in Opposition to Defendant's Motion to Supplement Record*. Filed by Wells Fargo Bank, N.A.. (Related document(s): Response in Opposition to Motion 53 .) (Attachments: # 1 Exhibit 1) (Lively, Leah) (Entered: 11/28/2011) |
| 11/29/2011 | 55 | Motion to for Separate Trial; Application for Anti-Cartel; Application for RICO Regulations Against Plaintiff and/or Securitas, Inc.; Joindered. Filed by Andrew G. Clark. (ljb) (Entered: 11/29/2011) |
| 12/07/2011 | 56 | Plaintiff's Version of Joint Status Report. Filed by Andrew G. Clark. (ljb) (Entered: 12/08/2011) |
| 12/08/2011 | 57 | Joint Status Report . Filed by All Plaintiffs. (Lively, Leah) (Entered: 12/08/2011) |
| 12/08/2011 | 58 | Declaration of Leah C. Lively *in Support of Joint Status Report*. Filed by All Plaintiffs. (Related document(s): Joint Status Report 57 .) (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (Lively, Leah) (Entered: 12/08/2011) |
| 12/09/2011 | 59 | Scheduling Order by U.S. District Judge Michael R. Hogan regarding Motion to Compel 28 , Motion to Bifurcate 29 , Motion *for Contempt and Order Requiring Defendant to Comply With Standards of Professionalism in All Communications With Wells Fargo and Its Counsel* 32 , Motion for Judgment 41 , Motion to Supplement 43 , Motion for Joinder 48 , Motion for Bond 49 , Motion to Remove/Augment Counsel 50 , Motion to Supplement 51 , Motion to Supplement 52 , and Motion to Bifurcate 55 . Oral Argument is set for 12/21/2011 at 11:00AM in Eugene Courtroom 1 before U.S. District Judge Michael R. Hogan. Ordered by U.S. District Judge Michael R. Hogan. (jw) (Entered: 12/09/2011) |
| 12/09/2011 | 60 | Clerk's Notice of Mailing to Andrew G. Clark regarding Scheduling Order 59 . (jw) (Entered: 12/09/2011) |
| 12/15/2011 | 61 | Status Report re: Clarification of Motions Submitted by Defendant and Attorney Pro Se Andrew G. Clark. Filed by Andrew G. Clark. (ljb) (Entered: 12/15/2011) |
| 12/15/2011 | 62 | Response to Motion for Joinder 48 . Filed by Wells Fargo Bank, N.A. (Lively, Leah) Modified for clarity of the record on 12/16/2011 (ljb). (Entered: 12/15/2011) |
| 12/15/2011 | 63 | Declaration of *Leah C. Lively in Response to Defendant's Motion for Joinder*. Filed by Wells Fargo Bank, N.A.. (Related document(s): Response to Motion 62 .) (Attachments: # 1 Exhibit 1) (Lively, Leah) (Entered: 12/15/2011) |
| 12/15/2011 | 64 | Response to Motion for Bond 49 . Filed by Wells Fargo Bank, N.A.. (Lively, Leah) (Entered: 12/15/2011) |
| 12/15/2011 | 65 | Declaration of *Leah C. Lively in Well Fargo's Response to Require Bond of Plaintiff and Motion for Contempt of Court*. Filed by Wells Fargo Bank, N.A.. (Attachments: # 1 Exhibit 1) (Lively, Leah) (Entered: 12/15/2011) |
| 12/15/2011 | 66 | Response *to Defendant's Motions to Remove/Augment Counsel of Plaintiff and to Sanction Counsel of Plaintiff* to Motion 50 . Filed by Wells Fargo Bank, N.A.. (Lively, Leah) (Entered: 12/15/2011) |
| 12/15/2011 | 67 | Declaration of Leah C. Lively *in Well Fargo's Response to Defendant's Motions to Remove/Augment Counsel of Plaintiff and to Sanction Counsel of Plaintiff*. Filed by Wells Fargo Bank, N.A.. (Attachments: # 1 Exhibit 1) (Lively, Leah) (Entered: 12/15/2011) |
| 12/15/2011 | 68 | Response *to Defendant's Motion for Separate Trial* to Motion to Bifurcate 55 . Filed by Wells Fargo Bank, N.A.. (Lively, Leah) (Entered: 12/15/2011) |

EXHIBIT 14
Page 6 of 13

| 12/15/2011 | 69 | Declaration of Leah C. Lively *in Wells Fargo's Response to Defendant's Motion for Separate Trial*. Filed by Wells Fargo Bank, N.A.. (Attachments: # 1 Exhibit 1) (Lively, Leah) (Entered: 12/15/2011) |
|---|---|---|
| 12/21/2011 | 70 | **MINUTES of Proceedings:** Motion Hearing Held regarding Motion to Compel 28 , Motion to Bifurcate 29 , Motion for Contempt 32 , Motion for Judgment 41 ,Motion to Supplement 43 , Motion for Joinder 48 , Motion for Bond 49 , Motion to Remove/Augment Counsel 50 , Motion to Supplement 51 , Motion to Supplement 52 , and Motion to Bifurcate 55 . Ordered Motions are taken under advisement. Leah Lively present as counsel for plaintiff. Andrew Clark present as pro se defendant. Court Reporter: Sara Wilson. U.S. District Judge Michael R. Hogan presiding. (Related documents: Motion for Bond 49 , Motion to Supplement 51 , Motion to Supplement 43 , Motion to bifurcate 29 , Motion for Joinder 48 , Motion-Miscellaneous 32 , Motion to bifurcate 55 , Motion for judgment 41 , Motion to Supplement 52 , Motion-Miscellaneous 50 , Motion to compel 28 .) (jw) (Entered: 12/21/2011) |
| 12/21/2011 | 71 | Clerk's Notice of Mailing to Andrew G. Clark regarding Minutes of Proceedings 70 . (jw) (Entered: 12/21/2011) |
| 01/11/2012 | 72 | **ORDER:** Motion to Compel 28 ; Motion to Bifurcate 29 ; Motion to Supplement 43 ; Motion for Judgment as a Matter of Law 41 ; Motion for Joinder 48 ; Motion to Require Bond 49 ; Motion to Remove Counsel 50 ; Motions to Supplement Record 51 and 52 ; and Motion for Separate Trial 55 are DENIED. Plaintiff's Motion for Contempt and Order requiring Plaintiff to Comply with Standards of Professionalism in Communication with Wells Fargo and Its Counsel 32 is DENIED in part and GRANTED in part. Signed on 1/11/2012 by U.S. District Judge Michael R. Hogan. (jw) (Entered: 01/11/2012) |
| 01/11/2012 | 73 | Clerk's Notice of Mailing to Andrew G. Clark regarding Order 72 . (jw) (Entered: 01/11/2012) |
| 04/06/2012 | 74 | Scheduling Order by U.S. District Judge Michael R. Hogan. Status Conference is set for 5/8/2012 at 09:30AM by Telephone before U.S. District Judge Michael R. Hogan. The Court will initiate the call. Ordered by U.S. District Judge Michael R. Hogan. (jw) (Entered: 04/06/2012) |
| 04/06/2012 | 75 | Clerk's Notice of Mailing to Andrew G. Clark regarding Scheduling Order 74 . (jw) (Entered: 04/06/2012) |
| 04/25/2012 | 76 | Order Amending Order 72 . Order is amended as follows: Plaintiff's Motion for Contempt and Order requiring **Defendant** to Comply with Standards of Professionalism in Communication with Wells Fargo and Its Counsel 32 is DENIED in part and GRANTED in part. Ordered by U.S. District Judge Michael R. Hogan. (jw) (Entered: 04/25/2012) |
| 04/25/2012 | 77 | Clerk's Notice of Mailing to Andrew G. Clark regarding Order 76 . (jw) (Entered: 04/25/2012) |
| 04/26/2012 | 78 | Motion *for Relief from Joint Filing Requirements*. Filed by Wells Fargo Bank, N.A.. (Lively, Leah) (Entered: 04/26/2012) |
| 04/26/2012 | 79 | Declaration of Leah C. Lively *in Support of Motion for Relief From Joint Filing Requirements*. Filed by Wells Fargo Bank, N.A.. (Related document(s): Motion - Miscellaneous 78 .) (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11) (Lively, Leah) (Entered: 04/26/2012) |
| 04/27/2012 | 80 | Scheduling Order by U.S. District Judge Michael R. Hogan regarding Motion *for Relief from Joint Filing Requirements* 78 . Oral Argument is set for 5/8/2012 at 09:30AM by |

EXHIBIT 14
Page 7 of 13

| | | Telephone before U.S. District Judge Michael R. Hogan. The Court will initiate the call. Ordered by U.S. District Judge Michael R. Hogan. (jw) (Entered: 04/27/2012) |
|---|---|---|
| 04/27/2012 | 81 | Clerk's Notice of Mailing to Andrew G. Clark regarding Order 80 . (jw) (Entered: 04/27/2012) |
| 04/27/2012 | 82 | OFFICIAL COURT TRANSCRIPT OF PROCEEDINGS FILED Oral Argument held on 8/22/2011 before Judge Michael R. Hogan, Court Reporter Deborah Wilhelm, telephone number (541) 431-4113. <span style="color:red">Transcript may be viewed at Court's public terminal or purchased from the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. Afterwards it may be obtained through PACER-See Policy at ord.uscourts.gov.</span> Notice of Intent to Redact Transcript is due by 5/7/2012. Redaction Request due 5/21/2012. Redacted Transcript Deadline set for 6/1/2012. Release of Transcript Restriction set for 7/30/2012. (Wilhelm, Deb) (Entered: 04/27/2012) |
| 05/08/2012 | 83 | **MINUTES of Proceedings:** Telephone Status Conference and Motion Hearing Held regarding Motion for Relief from Joint Filing Requirements 78 . Ordered motion is granted. Parties are given 2 weeks to file in writing a proposed mediator. Leah Lively present as counsel for plaintiff. Andrew Clark present as pro se defendant. (Court Reporter Deb Wilhelm.) U.S. District Judge Michael R. Hogan presiding. (Related document: Motion for Relief from Joint Filing Requirements 78 ) (jw) (Entered: 05/08/2012) |
| 05/08/2012 | 84 | Clerk's Notice of Mailing to Andrew G. Clark regarding Minutes of Proceedings 83 . (jw) (Entered: 05/08/2012) |
| 06/06/2012 | 85 | Notice of Proposed Mediator re: 83 . (ljb) (Entered: 06/06/2012) |
| 06/12/2012 | 86 | Notice *of Plaintiff's Proposal Regarding Mediation* Filed by Wells Fargo Bank, N.A. (Lively, Leah) (Entered: 06/12/2012) |
| 07/03/2012 | 87 | Scheduling Order by U.S. District Judge Michael R. Hogan. Settlement Conference is set for 7/10/2012 at 01:30PM in Judge Hogan's 5th Floor Chambers at the Wayne L. Morse U.S. Courthouse in Eugene. Ordered by U.S. District Judge Michael R. Hogan. (jw) (Entered: 07/03/2012) |
| 07/03/2012 | 88 | Clerk's Notice of Mailing and telephone call to Andrew G. Clark regarding Scheduling Order 87 . (jw) (Entered: 07/03/2012) |
| 07/10/2012 | 89 | OFFICIAL COURT TRANSCRIPT OF PROCEEDINGS FILED Motion Hearing held on 12/21/2011 before Judge Michael R. Hogan, Court Reporter Sara Fahey Wilson, telephone number 541-485-0111. <span style="color:red">Transcript may be viewed at Court's public terminal or purchased from the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. Afterwards it may be obtained through PACER-See Policy at ord.uscourts.gov.</span> Notice of Intent to Redact Transcript is due by 5/10/2012. Redaction Request due 5/31/2012. Redacted Transcript Deadline set for 6/11/2012. Release of Transcript Restriction set for 8/3/2012. (Wilhelm, Deb) (Entered: 07/10/2012) |
| 07/10/2012 | 90 | **MINUTES of Proceedings:** Settlement Conference held 7/10/2012. Case does not settle. David Symes, Leah Lively present as counsel for plaintiff(s). Andrew Clark, Pro se present as defendant(s). U.S. District Judge Michael R. Hogan presiding. (cw) (Entered: 07/10/2012) |
| 07/10/2012 | 91 | Clerk's Notice of Mailing to Andrew Clark regarding Settlement Conference, 90 . (cw) (Entered: 07/10/2012) |
| 07/18/2012 | 92 | Scheduling Order by U.S. District Judge Michael R. Hogan. Dispositive Motions are due by 8/15/2012. The pretrial order shall be lodged 30 days following the Court's ruling on |

EXHIBIT 14
Page 8 of 13

| | | any dispositive motions. Ordered by U.S. District Judge Michael R. Hogan. A copy of this order was mailed to plaintiff on this date. (cw) (Entered: 07/18/2012) |
|---|---|---|
| 08/09/2012 | 93 | Motion for Temporary Injunction of Hearing and Process of Sheriff Sale of My Homestead - Emergency Basis. Filed by Andrew G. Clark. (ljb) (Entered: 08/09/2012) |
| 08/09/2012 | 94 | Motion to Move Trial: Original Case and Counterclaims. Filed by Andrew G. Clark. (ljb) (Entered: 08/09/2012) |
| 08/09/2012 | 95 | Motion to Find Attorney for Plaintiff in Contempt of Court. Filed by Andrew G. Clark. (ljb) (Entered: 08/09/2012) |
| 08/09/2012 | 96 | Motion to Compel Production of Evidence. Filed by Andrew G. Clark. (ljb) (Entered: 08/09/2012) |
| 08/09/2012 | 97 | Motion to Refer Plaintiff and Attorney to Department of Justice for Investigation of Racketeering and Anti-Trust Activity. Filed by Andrew G. Clark. (ljb) (Entered: 08/09/2012) |
| 08/09/2012 | 98 | Motion for Extension of Time *to File Motion for Summary Judgment*. Filed by Wells Fargo Bank, N.A.. (Lively, Leah) (Entered: 08/09/2012) |
| 08/09/2012 | 99 | Declaration of Leah C. Lively *in Support of Motion for Extension of Time to File Motion for Summary Judgment*. Filed by Wells Fargo Bank, N.A.. (Related document(s): Motion for Extension of Time 98 .) (Lively, Leah) (Entered: 08/09/2012) |
| 08/10/2012 | 100 | **ORDER:** Denying Motion or Temporary Injunction of Hearing and Process of Sheriff Sale of My Homestead 93 ; Denying Motion to Move Trial: Original Case and Counterclaims. 94 ; Denying Motion o Find Attorney for Plaintiff in Contempt of Court 95 ; Denying Motion to Compel 96 ; Denying Motion to Refer Plaintiff and Attorney to Department of Justice for Investigation of Racketeering and Anti-Trust Activit 97 . Ordered by U.S. District Judge Michael R. Hogan. (sln) (Entered: 08/10/2012) |
| 08/10/2012 | 101 | Clerk's Notice of Mailing to Andrew Clark regarding Order 100 . (sln) (Entered: 08/10/2012) |
| 08/10/2012 | 102 | Motion for Separate Trial Against Plaintiff Wells Fargo: Perjury in Court Affidavits and Motions. Filed by Andrew G. Clark. (ljb) (Entered: 08/13/2012) |
| 08/10/2012 | 103 | Motion to Refer Leah C. Lively to Oregon and California Bar Association for Disciplinary Action: Negligent Malpractice, Fee-Goughing. Filed by Andrew G. Clark. (ljb) (Entered: 08/13/2012) |
| 08/13/2012 | 104 | **ORDER:** Granting Motion for Extension of Time to File Motion for Summary Judgment 98 . Dispositive Motions are due by 8/22/2012. Ordered by U.S. District Judge Michael R. Hogan. (sln) (Entered: 08/13/2012) |
| 08/22/2012 | 105 | Motion for Summary Judgment and Motion for Entry of Permanent Injunction. Filed by Wells Fargo Bank, N.A.. (Lively, Leah). (Entered: 08/22/2012) |
| 08/22/2012 | 106 | Memorandum in Support *Motion for Summary Judgment and for Entry of Permanent Injunction*. Filed by Wells Fargo Bank, N.A.. (Related document(s): Motion for Summary Judgment 105 .) (Lively, Leah) (Entered: 08/22/2012) |
| 08/22/2012 | 107 | Declaration of Leah C. Lively *in Support of Plaintiff's Motion for Summary Judgment and for Entry of Permanent Injunction*. Filed by Wells Fargo Bank, N.A.. (Related document(s): Motion for Summary Judgment 105 .) (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10) (Lively, Leah) (Entered: 08/22/2012) |

EXHIBIT 14
Page 9 of 13

| 08/22/2012 | 108 | Declaration of Douglas Grenz *in Support of Wells Fargo's Motion for Summary Judgment and For Entry of Permanent Injunction*. Filed by Wells Fargo Bank, N.A.. (Related document(s): Motion for Summary Judgment 105 .) (Attachments: # 1 Exhibit 1) (Lively, Leah) (Entered: 08/22/2012) |
| 08/23/2012 | 109 | Motion for Order *Granting Leave to File Under Seal Exhibit One to Declaration of Douglas Grenz in Support of Wells Fargo's Motion for Summary Judgment and for Preliminary Injunction*. Filed by Wells Fargo Bank, N.A.. (Lively, Leah) (Entered: 08/23/2012) |
| 08/23/2012 | 110 | Memorandum in Support *of Motion for Leave to File Under Seal Exhibit One to Declaration of Douglas Grenz in Support of Wells Fargo's Motion for Summary Judgment and for Entry of Permanent Injunction*. Filed by Wells Fargo Bank, N.A.. (Related document(s): Motion for Order 109 .) (Lively, Leah) (Entered: 08/23/2012) |
| 08/24/2012 | 111 | **ORDER:** Granting Motion for Leave to File Under Seal Exhibit One to Declaration of Douglas Grenz in Support of Wells Fargo's Motion for Summary Judgment and for Preliminary Injunction 109 . Ordered by U.S. District Judge Michael R. Hogan. (sln) (Entered: 08/24/2012) |
| 08/27/2012 | 112 | FILED UNDER SEAL Exhibit One to Declaration of Douglas Grenz in Support of Plaintiff's Motion for Summary Judgment and for Entry of Permanent Injunction. Filed by Wells Fargo Bank, N.A.. (Related document(s): Declaration 108 .) (ljb) (Entered: 08/27/2012) |
| 08/28/2012 | 113 | Second Motion *for Contempt Order*. Filed by Wells Fargo Bank, N.A.. (Lively, Leah) (Entered: 08/28/2012) |
| 08/28/2012 | 114 | Memorandum in Support *of Plaintiff's Second Motion for Contempt Order*. Filed by Wells Fargo Bank, N.A.. (Related document(s): Motion - Miscellaneous 113 .) (Lively, Leah) (Entered: 08/28/2012) |
| 08/28/2012 | 115 | Declaration of Leah C. Lively *in Support of Plaintiff's Second Motion for Contempt Order*. Filed by Wells Fargo Bank, N.A.. (Related document(s): Motion - Miscellaneous 113 .) (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30) (Lively, Leah) (Entered: 08/28/2012) |
| 08/29/2012 | 116 | Motion/Affidavit to Enter Audio Recording of Lane County Circuit Court. Filed by Andrew G. Clark. (ljb) (Entered: 08/29/2012) |
| 08/29/2012 | 117 | Motion to Enter Correspondence. Filed by Andrew G. Clark. (ljb) (Entered: 08/29/2012) |
| 08/31/2012 | 118 | Motion to Compel Production. Filed by Andrew G. Clark. (ljb) (Entered: 08/31/2012) |
| 08/31/2012 | 119 | Motion to Compel Production. Filed by Andrew G. Clark. (ljb) (Entered: 08/31/2012) |
| 09/04/2012 | 120 | Response in Opposition *to Defendant Clark's Motion for Separate Trial* to Motion 102 . Filed by Wells Fargo Bank, N.A.. (Lively, Leah) (Entered: 09/04/2012) |
| 09/04/2012 | 121 | Response in Opposition *to Defendant Clark's Motion to Refer Leah C. Lively for Disciplinary Action* to Motion 103 . Filed by Wells Fargo Bank, N.A.. (Lively, Leah) (Entered: 09/04/2012) |
| 09/04/2012 | 122 | Declaration of Leah C. Lively *in Support of Plaintiff's Response to Defendant Clark's* |

EXHIBIT 14
Page 10 of 13

| | | |
|---|---|---|
| | | *Motion to Refer Leah C. Lively for Disciplinary Action*. Filed by Wells Fargo Bank, N.A.. (Related document(s): Response in Opposition to Motion 121 .) (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (Lively, Leah) (Entered: 09/04/2012) |
| 09/04/2012 | 123 | Amended Declaration of Leah C. Lively *in Support of Plaintiff's Response to Defendant Clark's Motion to Refer Leah C. Lively for Disciplinary Action*. Filed by Wells Fargo Bank, N.A.. (Related document(s): Response in Opposition to Motion 121 .) (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (Lively, Leah) (Entered: 09/04/2012) |
| 09/11/2012 | 124 | Motion to Unseal PACER Record. Filed by Andrew G. Clark. (ljb) (Entered: 09/11/2012) |
| 09/17/2012 | 125 | Response in Opposition *to Defendant's Motion to Enter Correspondence to Hon. Judge Michael Hogan and 8.28.12 Letter to Federal Bureau Investigation Demanding Investigation of Kidnapping and Conspiracy to Kidnap* to Motion 117 . Filed by Wells Fargo Bank, N.A.. (Lively, Leah) (Entered: 09/17/2012) |
| 09/17/2012 | 126 | Response in Opposition to Motion to Compel 119 . Filed by Wells Fargo Bank, N.A.. (Lively, Leah) (Entered: 09/17/2012) |
| 09/17/2012 | 127 | Response in Opposition *to Defendant's Motion to Enter Audio Record of Lane County Circuit Court Hearings* to Motion 116 . Filed by Wells Fargo Bank, N.A.. (Lively, Leah) (Entered: 09/17/2012) |
| 09/17/2012 | 128 | Declaration of Leah C. Lively *in Support of Plaintiff's Response to Defendant's Motion to Enter Audio Record of Lane County Circuit Court Hearings*. Filed by Wells Fargo Bank, N.A.. (Related document(s): Response in Opposition to Motion 127 .) (Lively, Leah) (Entered: 09/17/2012) |
| 09/17/2012 | 129 | Response in Opposition to Motion to Compel 118 . Filed by Wells Fargo Bank, N.A.. (Lively, Leah) (Entered: 09/17/2012) |
| 09/19/2012 | 130 | Motion to Compel Production. Filed by Andrew G. Clark. (ljb) (Entered: 09/19/2012) |
| 09/19/2012 | 131 | Motion to Suspend Practice of Law on National Basis. Filed by Andrew G. Clark. (ljb) (Entered: 09/19/2012) |
| 09/25/2012 | 132 | Response in Opposition *to Defendant's Motion to Unseal Pacer Record* to Motion 124 . Filed by Wells Fargo Bank, N.A.. (Lively, Leah) (Entered: 09/25/2012) |
| 10/03/2012 | 133 | Order advising pro se defendant of Federal Summary Judgment Standards. Signed on 10/3/12 by U.S. District Judge Michael R. Hogan. (sln) (Entered: 10/03/2012) |
| 10/03/2012 | 134 | Clerk's Notice of Mailing to Andrew Clark regarding Order 133 . (sln) (Entered: 10/03/2012) |
| 10/05/2012 | 135 | **ORDER:** Plaintiff's Motion for Summary Judgment and for Entry of Permanent Injunction 105 is granted to the extent detailed in the order; Plaintiff's Second Motion for Order of Contempt 113 is granted; All other pending motions are denied as moot. Signed on 10/5/12 by U.S. District Judge Michael R. Hogan. (sln) (Entered: 10/09/2012) |
| 10/09/2012 | 136 | Clerk's Notice of Mailing to Andrew Clark regarding Order 135 . (sln) (Entered: 10/09/2012) |
| 10/31/2012 | 137 | Motion for Attorney Fees . Filed by Wells Fargo Bank, N.A.. (Lively, Leah) (Entered: 10/31/2012) |
| 10/31/2012 | 138 | Memorandum in Support . Filed by Wells Fargo Bank, N.A.. (Related document(s): Motion for Attorney Fees 137 .) (Lively, Leah) (Entered: 10/31/2012) |
| 10/31/2012 | 139 | Declaration of Leah C. Lively *in Support of Plaintiff's Motion for Attorneys' Fees*. Filed by Wells Fargo Bank, N.A.. (Related document(s): Motion for Attorney Fees 137 .) |

EXHIBIT 14
Page 11 of 13

| | | (Attachments: # 1 Exhibit A) (Lively, Leah) (Entered: 10/31/2012) |
|---|---|---|
| 11/02/2012 | 140 | **ORDER:** Granting Plaintiff's Motion for Attorney Fees and Costs 137 .Plaintiff is hereby awarded attorney fees in the amount of $2,088.45. This action is dismissed. Signed on 11/2/2012 by Chief Judge Ann L. Aiken. (lg) (Entered: 11/05/2012) |
| 11/05/2012 | 141 | Clerk's Notice of Mailing copy of Order #140 to Andrew G. Clark. (lg) (Entered: 11/05/2012) |
| 11/06/2012 | 142 | Notice of Case Reassignment: This case has been reassigned from Judge Michael R. Hogan to Chief Judge Ann L. Aiken. (eo) (Entered: 11/06/2012) |
| 11/06/2012 | 143 | Clerk's Notice of Mailing to Andrew G. Clark regarding Case Reassignment Notice # 142 . (eo) (Entered: 11/06/2012) |
| 11/29/2012 | 144 | Judgment by clerk. (lg) (Entered: 11/29/2012) |
| 02/11/2013 | 145 | Motion for Declaration of Mistrial. Filed by Andrew G. Clark. (ljb) (Entered: 02/11/2013) |
| 02/28/2013 | 146 | Response in Opposition to Motion for Mistrial 145 . Filed by Wells Fargo Bank, N.A.. (Lively, Leah) (Entered: 02/28/2013) |
| 03/25/2013 | 147 | Motion for Declaration of Mistrial; Motion to Order Personal Remediation; Affidavit and motion to augment record. Filed on emergency basis. Filed by Andrew G. Clark. (ljb) (Entered: 03/25/2013) |
| 04/05/2013 | 148 | Motion to Unseal all PACER Records in Case and Affidavit and Motion to Augment Record. Filed by Andrew G. Clark. (ljb) (Entered: 04/08/2013) |
| 04/10/2013 | 149 | Motion to Remand to Congress for Hearing and to Dept. of Justice. Emergency Hearing and Action Necessary. Filed by Andrew G. Clark. (ljb) (Entered: 04/10/2013) |
| 05/14/2013 | 150 | **ORDER:** Denying Defendant's Motion for Declaration of Mistrial 145 ; Denying Defendant's Motion for Declaration of Mistrial 147 ; Denying Defendant's Motion for Order Personal Remediation 147 ; Denying Defendant's Motion to Unseal All Pacer Records 148 ; Denying Defendant's Motion to Remand 149 . Copy of this order mailed to Andrew G. Clark. Signed on 5/14/2013 by Chief Judge Ann L. Aiken. (lg) (Entered: 05/14/2013) |
| 02/17/2016 | 151 | OFFICIAL COURT TRANSCRIPT OF PROCEEDINGS FILED Telephone Oral Argument held on 5/8/2012 before Judge Michael R. Hogan, Court Reporter Deborah Wilhelm, telephone number 541-505-0760. Transcript may be viewed at Court's public terminal or purchased from the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. Afterwards it may be obtained through PACER-See Policy at ord.uscourts.gov. Notice of Intent to Redact Transcript is due by 2/29/2016. Redaction Request due 3/14/2016. Redacted Transcript Deadline set for 3/24/2016. Release of Transcript Restriction set for 5/20/2016. (cw) (Entered: 02/17/2016) |
| 01/12/2018 | 152 | Motion to Vacate Judgments. Filed by Andrew G. Clark. (Attachments: # 1 Memorandum) (jk) (Entered: 01/16/2018) |
| 01/12/2018 | 153 | Declaration of Andrew G. Clark. Filed by Andrew G. Clark. (Related document(s): Motion to Vacate 152 .) (Attachments: # 1 Exhibit) (jk) (Entered: 01/16/2018) |
| 09/28/2018 | 154 | **ORDER:** Denying Motion to Vacate 152 . See, formal Order. Signed on 9/28/2018 by Judge Ann L. Aiken. (rdr) (Entered: 09/28/2018) |
| 09/28/2018 | 155 | Clerk's Notice of Mailing to Andrew G. Clark on 9/28/2018. (rdr) (Entered: 09/28/2018) |
| 10/19/2018 | 156 | Notice of Appeal to the 9th Circuit regarding Order on motion to Vacate 154 ; Filing fee |

EXHIBIT 14
Page 12 of 13

| | | |
|---|---|---|
| | | in amount of $505 collected; Receipt No. 12562 issued. Filed by Andrew G. Clark. (kf) (Entered: 10/19/2018) |
| 10/22/2018 | | USCA Case Number and Notice confirming Docketing Record on Appeal re Notice of Appeal 156 . **Case Appealed to Ninth Circuit Case Number 18-35887** assigned. (kf) (Entered: 10/22/2018) |
| 11/07/2018 | 157 | Notice of Motion to Vacate 9/28/18 Order on Motion to Vacate 154 . Filed by Andrew G. Clark. (kf) (Entered: 11/07/2018) |
| 11/07/2018 | 158 | Declaration of Andrew G. Clark in Support of Motion to Vacate 9/28/18 Order denying Motion to Vacate 157 . Filed by Andrew G. Clark. (Attachments: # 1 Exhibits) (kf) (Entered: 11/07/2018) |
| 02/12/2019 | 159 | **ORDER:** The Court has considered defendant's motion to vacate 157 , and finds that it raises no new arguments or evidence which would merit vacating the Court's previous Order 154 denying plaintiff's previous motion to vacate 152 . Ordered by Judge Ann L. Aiken. A copy of this Order was mailed to pro se defendant Andrew G. Clark. (ck) (Entered: 02/12/2019) |
| 08/27/2019 | 160 | USCA Memorandum for the 9th Circuit, USCA #18-35887, re Notice of Appeal 156 . (kf) (Entered: 08/27/2019) |
| 09/18/2019 | 161 | MANDATE of USCA for the 9th Circuit, **USCA # 18-35887**, re Notice of Appeal 156 . The judgment of this Court, entered August 27, 2019, takes effect this date. (kf) (Entered: 09/18/2019) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/10/2020 13:59:24 | | |
| **PACER Login:** | Gs0075 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 6:11-cv-06248-AA Start date: 1/1/1971 End date: 3/10/2020 |
| **Billable Pages:** | 11 | **Cost:** | 1.10 |

EXHIBIT 14
Page 13 of 13

# REGISTER OF ACTIONS
## CASE NO. 211314234

| | | | |
|---|---|---|---|
| **State of Oregon VS. ANDREW GLEN CLARK** | § | Case Type: | **Offense Misdemeanor** |
| | § | Date Filed: | **07/25/2013** |
| | § | Location: | **Lane** |
| | § | District Attorney Number: | **039271301** |
| | § | | |

---

### PARTY INFORMATION

| | | | |
|---|---|---|---|
| **Defendant** | **CLARK, ANDREW GLEN** | | **Attorneys** |
| | | | ~~JOHN M HALPERN, Jr~~ |
| | | DOB: 1958 | *Retained* |
| | | | ~~541-484-4995(W)~~ |
| | 3270 STONEY RIDGE RD | | |
| | EUGENE , OR 97405 | | |
| | SID: OR20232782 | | ~~KEVIN W BONS~~ |
| | | | *Retained* |
| | | | ~~541-683-0888(W)~~ |
| | | | |
| | | | ~~Laura Fine Moro~~ |
| | | | *Retained* |
| | | | ~~541-341-4542(W)~~ |
| **Plaintiff** | **State of Oregon** | | **ERIK V HASSELMAN** |
| | | | 541 682-4261(W) |

---

### CHARGE INFORMATION

| Charges: CLARK, ANDREW GLEN | Statute | Level | Date |
|---|---|---|---|
| 1. Stalking | 163.732(2)(a) | Misdemeanor Class A | 08/01/2012 |
| 2. Stalking | 163.732(2)(a) | Misdemeanor Class A | 08/01/2012 |
| 3. Stalking | 163.732(2)(a) | Misdemeanor Class A | 08/01/2012 |
| 4. Stalking | 163.732(2)(a) | Misdemeanor Class A | 08/01/2012 |
| 5. Stalking | 163.732(2)(a) | Misdemeanor Class A | 08/01/2012 |
| 6. Stalking | 163.732(2)(a) | Misdemeanor Class A | 08/01/2012 |
| 7. Stalking | 163.732(2)(a) | Misdemeanor Class A | 08/01/2012 |
| 8. Stalking | 163.732(2)(a) | Misdemeanor Class A | 08/01/2012 |
| 9. Stalking | 163.732(2)(a) | Misdemeanor Class A | 08/01/2012 |
| 10.Stalking | 163.732(2)(a) | Misdemeanor Class A | 08/01/2012 |

---

### EVENTS & ORDERS OF THE COURT

**DISPOSITIONS**

07/26/2013 **Plea** (Judicial Officer: Unassigned, Judge)
  1. Stalking
    Not Guilty
  10. Stalking
    Not Guilty
  2. Stalking
    Not Guilty
  3. Stalking
    Not Guilty
  4. Stalking
    Not Guilty
  5. Stalking
    Not Guilty
  6. Stalking
    Not Guilty
  7. Stalking
    Not Guilty
  8. Stalking
    Not Guilty
  9. Stalking
    Not Guilty
  Created: 07/26/2013 12:00 AM

01/09/2014 **Disposition** (Judicial Officer: Unassigned, Judge)
  1. Stalking
    Convicted
  Created: 01/14/2014 12:00 AM

EXHIBIT 15
Page 1 of 6

| | |
|---|---|
| 01/09/2014 | **Disposition** (Judicial Officer: Unassigned, Judge) |
| | 10. Stalking |
| |     Dismissed |
| | 2. Stalking |
| |     Dismissed |
| | 3. Stalking |
| |     Dismissed |
| | 4. Stalking |
| |     Dismissed |
| | 5. Stalking |
| |     Dismissed |
| | 6. Stalking |
| |     Dismissed |
| | 7. Stalking |
| |     Dismissed |
| | 8. Stalking |
| |     Dismissed |
| | 9. Stalking |
| |     Dismissed |
| | Created: 01/14/2014 12:00 AM |
| 01/09/2014 | **Sentence** (Judicial Officer: Unassigned, Judge) |
| | 1. Stalking |
| |     Converted Disposition: |
| |         Status: Superseded on: May 16 2014 12:00AM Sentence Status:Superseded Sentence Date:05/16/2014 Jail - Day(s): |
| |         7.00 Probation to Court - Month(s): 24.00 01 Violate No Laws 02 Inf Crt/Change of Addr 20 No Contact Victim 12 |
| |         Comply with Treatment Credit for Time Served |
| | Created: 01/14/2014 12:00 AM |
| 01/09/2014 | **Amended Sentence** (Judicial Officer: Unassigned, Judge) Reason: Supersedes Previous Judgment |
| | 1. Stalking |
| |     Converted Disposition: |
| |         Jail - Day(s): 7.00 Probation to Court - Month(s): 24.00 01 Violate No Laws 02 Inf Crt/Change of Addr 20 No Contact |
| |         Victim Credit for Time Served |
| | Created: 05/16/2014 12:00 AM |
| | |
| | **OTHER EVENTS AND HEARINGS** |
| 07/25/2013 | **Information** |
| | Created: 07/25/2013 12:00 AM |
| 07/25/2013 | **Motion - Arrest Warrant** |
| | *Comment: to IRL; District Attorney: ERIK V HASSELMAN* |
| | Created: 07/25/2013 12:00 AM |
| 07/25/2013 | **Order - Arrest Warrant** (Judicial Officer: Rooke-Ley, Ilisa HR ) |
| | *Judge: Ilisa HR Rooke-Ley;* |
| | Created: 07/25/2013 12:00 AM |
| 07/25/2013 | **Warrant - Arrest** |
| | *Court Action: Signed; Court Action Date: 07/25/2013; Defendant: ANDREW GLEN CLARK* |
| | Signed:  07/25/2013 |
| | Created: 07/25/2013 12:00 AM |
| 07/26/2013 | **Arraignment** (Judicial Officer: Rooke-Ley, Ilisa HR ) |
| | *Comment: Deft will be retaining his own atty; Judge: Ilisa HR Rooke-Ley; Reporter: COURTROOM AUDIO/JAIL* |
| | Created: 07/26/2013 12:00 AM |
| 07/26/2013 | **Remove - Inactive Status** |
| | Created: 07/26/2013 12:00 AM |
| 07/26/2013 | **Warrant - Recall** |
| | *Comment: SERVED BY LCAC THIS DATE;* |
| | Created: 07/26/2013 12:00 AM |
| 07/26/2013 | **Return - Service Arrest Warrant** |
| | *Comment: served;* |
| | Created: 07/26/2013 12:00 AM |
| 07/26/2013 | **Plea - Not Guilty** |
| | Created: 07/26/2013 12:00 AM |
| 07/26/2013 | **Arraignment**  (1:30 PM) () |
| | Created: 07/26/2013 12:00 AM |
| 07/31/2013 | **Notice** |
| | *Comment: posted money for release;* |
| | Created: 07/31/2013 12:00 AM |
| 08/01/2013 | **Agreement - Security Release** |
| | *Comment: (ESP) Deft to appr 09/04/13 @ 2:30pm/$20,000 SEC posted; Court Action: Security posted; Court Action Date: 07/31/2013;* |
| | Created: 08/01/2013 12:00 AM |
| 08/07/2013 | **Agreement - Security Release** |
| | *Comment: **AMENDED** (ESP) Deft to appr 09/04/13 @ 2:30pm; Court Action: Security posted; Court Action Date: 07/31/2013;* |
| | Created: 08/07/2013 12:00 AM |
| 08/27/2013 | **Certificate - Victim Notification** |
| | Created: 08/27/2013 12:00 AM |
| 09/04/2013 | **Appearance** (Judicial Officer: Vogt, Debra K. ) |
| | *Comment: 35dc set over to 9/16/13; Judge: Debra Kay Vogt;* |
| | Created: 09/04/2013 12:00 AM |
| 09/04/2013 | **Hearing - Pre-Trial Conference**  (2:30 PM) () |
| | *Comment: $20,000 SEC posted* |
| | Created: 07/26/2013 12:00 AM |
| 09/16/2013 | **Appearance** (Judicial Officer: Rasmussen, Karsten H ) |
| | *Comment: Settlement sent JAM; Judge: KARSTEN H RASMUSSEN; Reporter: 201 AUDIO/COURTROOM* |

EXHIBIT 15
Page 2 of 6

|  |  |
|---|---|
| | Created: 09/16/2013 12:00 AM |
| 09/16/2013 | **Notice - Trial** |
| | Created: 09/16/2013 12:00 AM |
| 09/16/2013 | **Hearing - Settlement Conference** (Judicial Officer: McAlpin, Jay A ) |
| | *Comment: NO NEGOTIATIONS REACHED/CASE SET FOR TRL ON 11/06/13/DEF SIGNED FOR THIS DATE; Judge: Jay A McAlpin; Reporter: 204 AUDIO/COURTROOM* |
| | Created: 09/18/2013 12:00 AM |
| 09/16/2013 | **Hearing - Pre-Trial Conference**  (2:30 PM) () |
| | *Comment: s/o from 9/4/13;* |
| | Created: 09/04/2013 12:00 AM |
| 10/04/2013 | **Motion - Attorney Withdrawal** |
| | *Privately Retained: LAURA FINE MORO* |
| | Created: 10/08/2013 12:00 AM |
| 10/07/2013 | **Appearance** (Judicial Officer: Rasmussen, Karsten H ) |
| | *Comment: L Fine Moro allowed to withdraw/trial date of 11/6/13 remains; Judge: KARSTEN H RASMUSSEN; Reporter: 201 AUDIO/COURTROOM* |
| | Created: 10/07/2013 12:00 AM |
| 10/07/2013 | **Order - Withdrawal of Attorney** (Judicial Officer: Rasmussen, Karsten H ) |
| | *Judge: KARSTEN H RASMUSSEN; Privately Retained: LAURA FINE MORO* |
| | Created: 10/08/2013 12:00 AM |
| 10/07/2013 | **Motion** |
| | *Comment: to Dismiss Charges (TO DKV); Defendant: ANDREW GLEN CLARK* |
| | Created: 10/07/2013 12:00 AM |
| 10/07/2013 | **Hearing**  (2:35 PM) () |
| | *Comment: MOTION TO WITHDRAW ATTY;* |
| | Created: 10/04/2013 12:00 AM |
| 10/08/2013 | **Notice - Trial** |
| | Created: 10/08/2013 12:00 AM |
| 10/08/2013 | **Motion** |
| | *Comment: to Modify Pretrial Release Conditions by Merging Charges and Re-running Risk Assessment Tool-(RAT) Using Corrected Data; Defendant: ANDREW GLEN CLARK* |
| | Created: 10/08/2013 12:00 AM |
| 10/08/2013 | **Notice - Hearing** |
| | Created: 10/08/2013 12:00 AM |
| 10/10/2013 | **Motion** |
| | *Comment: for Demurrer; Defendant: ANDREW GLEN CLARK* |
| | Created: 10/11/2013 12:00 AM |
| 10/15/2013 | **Hearing - Oral Argument** (Judicial Officer: Vogt, Debra K. ) |
| | *Comment: (MOTION TO DISMISS/MOTION TO MODIFY RELEASE CONDITIONS) Crt notified deft of rights he gives up by representing himself/Motion to Dismiss and Motion to Modify both DENIED; Judge: Debra Kay Vogt; Reporter: 306 AUDIO/COURTROOM* |
| | Created: 10/31/2013 12:00 AM |
| 10/15/2013 | **Hearing - Oral Argument**  (8:30 AM) () |
| | *Comment: MOTION TO MODIFY PRETRIAL RELEASE CONDITIONS BY MERGING CHARGES AND RE-RUNNING RISK ASSESSMENT TOOL (RAT) USING CORRECTED DATA;* |
| | Created: 10/08/2013 12:00 AM |
| 10/17/2013 | **Order - Denial** (Judicial Officer: Vogt, Debra K. ) |
| | *Comment: Re: Deft's Motion to Modify Pretrial Release Conditions filed on 10/8/13; Judge: Debra Kay Vogt;* |
| | Created: 10/30/2013 12:00 AM |
| 10/17/2013 | **Notice - Representation** |
| | *Privately Retained: KEVIN W BONS* |
| | Created: 10/21/2013 12:00 AM |
| 10/17/2013 | **Demurrer** |
| | *Comment: ORAL ARGUMENT REQUESTED; Privately Retained: KEVIN W BONS* |
| | Created: 10/21/2013 12:00 AM |
| 10/21/2013 | **Notice - Hearing** |
| | Created: 10/21/2013 12:00 AM |
| 10/22/2013 | **Motion** |
| | *Comment: to modify RA (matter to be heard 11/5/13); Defendant: ANDREW GLEN CLARK* |
| | Created: 10/23/2013 12:00 AM |
| 10/28/2013 | **Motion - Postponement** |
| | *Comment: Re: Trial 11/6/13; Privately Retained: KEVIN W BONS* |
| | Created: 11/01/2013 12:00 AM |
| 10/30/2013 | **Order - Postponement** (Judicial Officer: Rasmussen, Karsten H ) |
| | *Comment: Re: Trial 11/6/13/resetting to 1/14/14; Judge: KARSTEN H RASMUSSEN;* |
| | Created: 11/01/2013 12:00 AM |
| 10/30/2013 | **Order - Denial** (Judicial Officer: Vogt, Debra K. ) |
| | *Comment: Second Motion to Modify Pre- Trial Release Conditions and Motion to Compel Production/ It is furthered ordered that any future mot's to be filed by aty of rec for either party; Judge: Debra Kay Vogt;* |
| | Created: 10/31/2013 12:00 AM |
| 10/31/2013 | **Notice - Trial** |
| | Created: 10/31/2013 12:00 AM |
| 11/04/2013 | **Order - Revoke Recognizance Release** (Judicial Officer: Rooke-Ley, Ilisa HR ) |
| | *Comment: and Affidavit/BW to issue/ and Order to Forfeit Security; Court Action: Signed; Court Action Date: 11/04/2013; Judge: Ilisa HR Rooke-Ley; Referee: PRETRIAL SERVICES* |
| | Signed:  11/04/2013 |
| | Created: 11/04/2013 12:00 AM |
| 11/04/2013 | **Order - Failure to Comply Warrant** (Judicial Officer: Rooke-Ley, Ilisa HR ) |
| | *Judge: Ilisa HR Rooke-Ley;* |
| | Created: 11/04/2013 12:00 AM |
| 11/04/2013 | **Warrant - Failure to Comply** |
| | *Defendant: ANDREW GLEN CLARK* |
| | Created: 11/04/2013 12:00 AM |
| 11/05/2013 | **Notice - Hearing** |
| | Created: 11/05/2013 12:00 AM |

EXHIBIT 15
Page 3 of 6

11/05/2013 **Response - State**
    *Comment: to deft's Motion for Demurrer; Plaintiff: State of Oregon*
    Created: 11/05/2013 12:00 AM
11/05/2013 **Hearing** (Judicial Officer: McAlpin, Jay A )
    *Comment: State files a reponse this morning/ Defense moves to strike/ Crt will allow a s/o to allow def time to review/ Oral argument set 11/6/13/*
    *deft taken into custody on FTC; Judge: Jay A McAlpin; Reporter: 204 AUDIO/COURTROOM*
    Created: 11/05/2013 12:00 AM
11/05/2013 **Hearing - Oral Argument** (8:30 AM) ()
    *Comment: RE: Demurrer also RE: Motion to Modify RA (Trial reset to 1/14/14);*
    Created: 10/21/2013 12:00 AM
11/06/2013 **Appearance** (Judicial Officer: McAlpin, Jay A )
    *Comment: Court heard arguments from both parties/Court finds first demurrer is timely however the demurrer to make definite is not/State to*
    *prepare written findings and submit to court; Judge: Jay A McAlpin; Reporter: 204 AUDIO/COURTROOM*
    Created: 11/06/2013 12:00 AM
11/06/2013 **Order** (Judicial Officer: Rasmussen, Karsten H )
    *Comment: Assigning Case to Judge Jay Mcalpin; Court Action: Signed; Court Action Date: 11/06/2013; Judge: KARSTEN H RASMUSSEN;*
    Signed:  11/06/2013
    Created: 11/06/2013 12:00 AM
11/06/2013 **Return - Service Arrest Warrant**
    *Comment: served;*
    Created: 11/06/2013 12:00 AM
11/06/2013 **Hearing - Oral Argument** (8:30 AM) ()
    *Comment: Re: Demurrer (Trial reset to 1/14/14);*
    Created: 11/05/2013 12:00 AM
11/06/2013 *CANCELED*  **Trial - Twelve Person Jury**  (9:30 AM) ()
    *Set-Over Def*
    *Comment: aty @ counter; Event Status: Set-Over Def;*
    Created: 09/16/2013 12:00 AM
11/07/2013 **Notice**
    *Comment: posted money for release;*
    Created: 11/07/2013 12:00 AM
11/08/2013 **Agreement - Security Release**
    *Comment: Deft to appr 1/14/14 @ 9:30am/ $40000 SEC posted/ ESP; Court Action: Security posted; Court Action Date: 11/07/2013;*
    Created: 11/08/2013 12:00 AM
11/08/2013 **Order - Forfeiting Security** (Judicial Officer: Vogt, Debra K. )
    *Comment: and Directing Mailing (Please Note: Deft has posted 2nd security amount separate from this posting); Judge: Debra Kay Vogt;*
    Created: 11/13/2013 12:00 AM
11/08/2013 **Certificate - Mailing**
    *Comment: Order Forfeiting Security and Directing Mailing;*
    Created: 11/13/2013 12:00 AM
12/09/2013 **Notice - Substitution of Attorney**
    *Comment: J.Halpern Retained; Privately Retained: KEVIN W BONS Privately Retained: JOHN M HALPERN*
    Created: 12/10/2013 12:00 AM
12/09/2013 **Motion**
    *Comment: for Remission of Security Forfeiture; Privately Retained: JOHN M HALPERN*
    Created: 12/11/2013 12:00 AM
12/16/2013 **Remove - Inactive Status**
    Created: 12/16/2013 12:00 AM
12/16/2013 **Notice - Hearing**
    Created: 12/16/2013 12:00 AM
12/19/2013 **Hearing** (Judicial Officer: Rasmussen, Karsten H )
    *Comment: Judge granted the deft's motion for remission of the Security forfeiture; Judge: KARSTEN H RASMUSSEN;*
    Created: 12/20/2013 12:00 AM
12/19/2013 **Order** (Judicial Officer: Rasmussen, Karsten H )
    *Comment: to remit security forfeiture; Court Action: Signed; Court Action Date: 12/19/2013; Judge: KARSTEN H RASMUSSEN;*
    Signed:  12/19/2013
    Created: 12/20/2013 12:00 AM
12/19/2013 **Hearing**  (8:30 AM) (Judicial Officer Vogt, Debra K.)
    *Comment: Defendant's motion for remission of security forfeiture;*
    Created: 12/16/2013 12:00 AM
01/06/2014 **Notice - Hearing**
    Created: 01/06/2014 12:00 AM
01/09/2014 **Convicted**
    Created: 01/14/2014 12:00 AM
01/09/2014 **Dismissed**
    Created: 01/14/2014 12:00 AM
01/09/2014 **Waiver - Jury Trial**
    *Defendant: ANDREW GLEN CLARK*
    Created: 01/14/2014 12:00 AM
01/09/2014 **Petition**
    *Comment: to consent to be found guilty by stip facts trial; District Attorney: ERIK V HASSELMAN Defendant: ANDREW GLEN CLARK Privately*
    *Retained: JOHN M HALPERN*
    Created: 01/14/2014 12:00 AM
01/09/2014 **Trial** (Judicial Officer: McAlpin, Jay A )
    *Comment: stip facts trial-defendant found guilty and was sentenced this date; Judge: Jay A McAlpin; District Attorney: ERIK V HASSELMAN*
    *Privately Retained: JOHN M HALPERN Reporter: 204 AUDIO/COURTROOM*
    Created: 01/14/2014 12:00 AM
01/09/2014 **Hearing - Change Plea**  (3:00 PM) ()
    *Comment: Change of Plea & Sentencing;*
    Created: 01/06/2014 12:00 AM
01/10/2014 **Trial - Stipulation**
    *Est Length of Time: 3 Minute(s);*
    Created: 01/13/2014 12:00 AM
01/13/2014 **Judgment - Sentence** (Judicial Officer: McAlpin, Jay A )

EXHIBIT 15
Page 4 of 6

|            |                                                                                                                                                                                                          |
|------------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|            | *Court Action: Signed; Court Action Date: 01/13/2014; Judge: Jay A McAlpin; Reporter: 204 AUDIO/COURTROOM*<br>Signed:  01/13/2014<br>Created: 01/14/2014 12:00 AM                                           |
| 01/13/2014 | **Sentence**<br>Created: 01/14/2014 12:00 AM                                                                                                                                                              |
| 01/14/2014 | **Closed**<br>Created: 01/14/2014 12:00 AM                                                                                                                                                                |
| 01/14/2014 | *CANCELED   Trial - Six Person Jury  (9:30 AM) ()*<br>*Cancelled*<br>*Comment: order/ JAM preassigned $40000 SEC posted; Event Status: Cancelled;*<br>Created: 10/31/2013 12:00 AM                          |
| 01/15/2014 | **Disposition - Reported**<br>*Defendant: ANDREW GLEN CLARK*<br>Created: 01/15/2014 12:00 AM                                                                                                               |
| 02/15/2014 | **Notice - Appeal**<br>*Comment: #A156218; Defendant: ANDREW GLEN CLARK*<br>Created: 03/07/2014 12:00 AM                                                                                                   |
| 03/07/2014 | **Order - Dismiss on Appeal**<br>*Comment: #A156218 Appellant's Motion;*<br>Created: 03/07/2014 12:00 AM                                                                                                   |
| 03/11/2014 | **Order - Denial** (Judicial Officer: Rasmussen, Karsten H )<br>*Comment: Defts Motion for Post Conviction Relief DENIED due to improper filing; Judge: KARSTEN H RASMUSSEN;*<br>Created: 03/13/2014 12:00 AM |
| 03/12/2014 | **Miscellaneous**<br>*Comment: Rec'd Document correcting; Defendant: ANDREW GLEN CLARK*<br>Created: 03/27/2014 12:00 AM                                                                                    |
| 03/19/2014 | **Order - Denial** (Judicial Officer: Rasmussen, Karsten H )<br>*Comment: Defts Motion for Post Conviction Relief DENIED due to improper filing; Judge: KARSTEN H RASMUSSEN;*<br>Created: 03/20/2014 12:00 AM |
| 03/21/2014 | **Petition**<br>*Comment: Amended for Post Conviction Relief; Defendant: ANDREW GLEN CLARK*<br>Created: 03/27/2014 12:00 AM                                                                                |
| 03/27/2014 | **Miscellaneous**<br>*Comment: Rec'd document titled Motion for Post Conviction Relief not filed-improper. Per order; Defendant: ANDREW GLEN CLARK*<br>Created: 03/27/2014 12:00 AM                         |
| 03/27/2014 | **Miscellaneous**<br>*Comment: Rec'd document titled Post-con viction relief initial submission of evidence. Not filed improper per order; Defendant: ANDREW GLEN CLARK*<br>Created: 03/27/2014 12:00 AM    |
| 03/31/2014 | **Order - Denial** (Judicial Officer: Rasmussen, Karsten H )<br>*Comment: Defts Amended Petition for Post Conviction Relief; Judge: KARSTEN H RASMUSSEN;*<br>Created: 04/01/2014 12:00 AM                   |
| 05/16/2014 | **Sentence - Clerical Revision**<br>*Comment: correct wording re QRA per JAM;*<br>Created: 05/16/2014 12:00 AM                                                                                             |
| 05/16/2014 | **Sentence**<br>*Comment: Def shall provide released from QRA per judgment;*<br>Created: 05/16/2014 12:00 AM                                                                                               |
| 07/16/2014 | **Assigned** (Judicial Officer: McAlpin, Jay A )<br>*Judge: Jay A McAlpin;*<br>Created: 07/16/2014 12:00 AM                                                                                                |
| 07/17/2014 | **Memorandum**<br>*Comment: and Motion to set aside judgment as a result of Fraud Upon the Court (to JAM); Defendant: ANDREW GLEN CLARK*<br>Created: 07/17/2014 12:00 AM                                    |
| 07/28/2014 | **Order** (Judicial Officer: McAlpin, Jay A )<br>*Comment: denying motion to set aside jgmt as a result of fraud; Court Action: Signed; Court Action Date: 07/28/2014; Judge: Jay A McAlpin;*<br>Signed:  07/28/2014<br>Created: 07/29/2014 12:00 AM |
| 08/26/2014 | **Memorandum**<br>*Comment: & Motion for Court or District Attorney to Motion to Dismiss Inherent Power of the Court (States Motion/Order Attached) *TO JAM*;*<br>*Defendant: ANDREW GLEN CLARK*<br>Created: 08/26/2014 12:00 AM |
| 08/27/2014 | **Memorandum**<br>*Comment: in further support of court use of inherent power to dismiss and vacate. Report of apparent misconduct or contempt (to JAM);*<br>*Defendant: ANDREW GLEN CLARK*<br>Created: 08/28/2014 12:00 AM |
| 08/27/2014 | **Memorandum**<br>*Comment: in support of 8.26.14 Motion to court of DA to Motion to dismiss Inherent power of the court act of correction of 8/26/14 motion (to JAM); Defendant: ANDREW GLEN CLARK*<br>Created: 08/28/2014 12:00 AM |
| 09/10/2014 | **Response - State**<br>*Comment: to deft's motion and order to dismiss charges and set aside conviction; District Attorney: ERIK V HASSELMAN*<br>Created: 09/17/2014 12:00 AM                             |
| 09/15/2014 | **Order - Denial** (Judicial Officer: McAlpin, Jay A )<br>*Comment: motion to dismiss charges and set aside coviction; Court Action: Signed; Court Action Date: 09/15/2014; Judge: Jay A McAlpin;*<br>Signed:  09/15/2014<br>Created: 09/17/2014 12:00 AM |
| 09/18/2014 | **Submitted**<br>*Comment: addendum responsive pleading to Erik Hasselman's 9/10/14 pleading clarification and declaration (to JAM); Defendant: ANDREW GLEN CLARK*<br>Created: 09/19/2014 12:00 AM |
| 09/25/2014 | **Order - Dismiss on Appeal**<br>*Comment: Courts own motion Notice of Appeal Untimely #A157239;*<br>Created: 09/29/2014 12:00 AM                                                                          |

EXHIBIT 15
Page 5 of 6

| | |
|---|---|
| 10/28/2014 | **Motion** |
| | *Comment: to Vacate Arrest Warrants, Motion to Vacate Search/ Seizure Warrant,Motion Submitted in Camera,Correction of Due Process Violations (TO JAM); Defendant: ANDREW GLEN CLARK* |
| | Created: 10/28/2014 12:00 AM |
| 10/30/2014 | **Order** (Judicial Officer: McAlpin, Jay A ) |
| | *Comment: denying defendant motion re: vacate arrest,search& seizure warrants:motion to submit in camera correction of due process violations; Court Action: Signed; Court Action Date: 10/30/2014; Judge: Jay A McAlpin;* |
| | Signed:  10/30/2014 |
| | Created: 10/30/2014 12:00 AM |
| 10/30/2015 | Letter |
| | Created: 10/30/2015 1:40 PM |
| 01/19/2016 | Letter |
| | Created: 01/28/2016 11:41 AM |
| 01/19/2016 | Letter |
| | Created: 02/03/2016 10:02 AM |

---

**FINANCIAL INFORMATION**

**Defendant** CLARK, ANDREW GLEN

| | | | | |
|---|---|---|---|---:|
| | Total Financial Assessment | | | 1,776.50 |
| | Total Payments and Credits | | | 1,776.50 |
| | **Balance Due as of 03/06/2020** | | | **0.00** |
| 01/14/2014 | Transaction Assessment | | | 750.00 |
| 01/14/2014 | Transaction Assessment | | | 750.00 |
| 02/11/2014 | Counter Payment | Receipt # 2759527 | UNKNOWN | (10.00) |
| 02/28/2014 | Transaction Assessment | | | 252.00 |
| 02/28/2014 | Counter Payment | Receipt # 2763460 | CLARK, ANDREW GLEN | (252.00) |
| 04/28/2014 | Counter Payment | Receipt # 2777917 | UNKNOWN | (2.25) |
| 07/30/2014 | Transaction Assessment | | | 12.25 |
| 07/30/2014 | Counter Payment | Receipt # 2798355 | CLARK, ANDREW GLEN | (12.25) |

EXHIBIT 15
Page 6 of 6

3/6/2020                                    CM/ECF

**Query**    **Reports**    **Utilities**    **Help**    **Log Out**

TERMINATED

# U.S. District Court
## District of Oregon (Eugene (6))
## CIVIL DOCKET FOR CASE #: 6:13-cv-01546-AA

Clark v. Wells Fargo Bank, N.A. et al          Date Filed: 09/03/2013
Assigned to: Judge Ann L. Aiken             Date Terminated: 07/01/2014
Case in other court: 9th Circuit, 14-35622      Jury Demand: Plaintiff
Cause: 42:1983 Civil Rights Act             Nature of Suit: 470 Civil (RICO)
                                            Racketeer/Corrupt Organization
                                            Jurisdiction: Federal Question

**Plaintiff**

**Andrew G. Clark**          represented by   **Andrew G. Clark**
                                            3270 Stoney Ridge Road
                                            Eugene, OR 97405
                                            541-510-3915 & 636-3662
                                            PRO SE

V.

**Defendant**

**Wells Fargo Bank, N.A.**      represented by   **Christian Rowley**
*WFB*                                         Seyfarth Shaw LLP
                                            560 Mission Street, Suite 3100
                                            San Francisco, CA 94105
                                            (415) 544-1001
                                            Fax: (415) 397-8549
                                            Email: crowley@seyfarth.com
                                            *LEAD ATTORNEY*
                                            *PRO HAC VICE*
                                            *ATTORNEY TO BE NOTICED*

                                            **Peter D. Urias**
                                            Seyfarth Shaw LLP
                                            560 Mission Street, Suite 3100
                                            San Francisco, CA 94105
                                            (415) 544-1026
                                            Fax: (415) 397-8549
                                            Email: purias@seyfarth.com
                                            *LEAD ATTORNEY*
                                            *PRO HAC VICE*
                                            *ATTORNEY TO BE NOTICED*

                                            **Sharon C. Peters**
                                            Lewis Brisbois Bisgaard & Smith LLP
                                            888 SW Fifth Avenue
                                            Suite 900

EXHIBIT 16
Page 1 of 10

Portland, OR 97204-2025
503-944-6913
Fax: 503-222-7261
Email: sharon.peters@lewisbrisbois.com
*ATTORNEY TO BE NOTICED*

**David C. Campbell**
Lewis Brisbois Bisgaard & Smith LLP
888 SW Fifth Avenue
Suite 900
Portland, OR 97204-2025
971-712-2800
Fax: 971-712-2801
Email: david.campbell@lewisbrisbois.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ogletree Deakins Nash Smoak and**          represented by  **Steven W. Seymour**
**Stewart**                                                   Samuels Yoelin Kantor Seymour & Spinrad,
*TERMINATED: 01/31/2014*                                      LLP
                                                             200 Willamette Wharf
                                                             4640 SW Macadam Avenue
                                                             Portland, OR 97239-4232
                                                             (503)226-2966
                                                             Fax: (503) 222-2937
                                                             Email: sws@samuelslaw.com
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Wells Fargo Home Mortgage**               represented by  **Christian Rowley**
*WFHM*                                                       (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Peter D. Urias**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Sharon C. Peters**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **David C. Campbell**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Wells Fargo and Company**                 represented by  **Christian Rowley**
*WFC*                                                        (See above for address)
                                                             *LEAD ATTORNEY*

EXHIBIT 16
Page 2 of 10

CM/ECF

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Peter D. Urias**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sharon C. Peters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David C. Campbell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Securitas Corp.**
*TERMINATED: 01/30/2014*

**Defendant**

**Franklin Codel**
*executive vice president*

**Defendant**

**Sr. James Strother**
*executive vice president general counsel-legal group*

**Defendant**

**Michael Heid**
*president of WEHM*

**Defendant**

**Elizabeth Falcone**                represented by  **Steven W. Seymour**
*TERMINATED: 03/03/2014*                              (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**David P.R. Symes**                 represented by  **Steven W. Seymour**
*TERMINATED: 03/03/2014*                              (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**Christopher Mixon**                represented by  **Steven W. Seymour**
*general counsel*                                     (See above for address)
*TERMINATED: 03/03/2014*                              *ATTORNEY TO BE NOTICED*

**Defendant**

**Kim Ebert**                        represented by  **Steven W. Seymour**
*managing partner*                                   (See above for address)
*TERMINATED: 03/03/2014*                              *ATTORNEY TO BE NOTICED*

EXHIBIT 16
Page 3 of 10

**Defendant**

**Leah Lively**                                    represented by **Steven W. Seymour**
*TERMINATED: 03/03/2014*                           (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

**Defendant**

**Donald Pearson**
*bank president*

**Defendant**

**Martin Ogno**
*security worker*

**Defendant**

**John Stumpf**
*chief executive officer*

**Defendant**

**Amanda Bollinger**                               represented by **Steven W. Seymour**
*TERMINATED: 03/03/2014*                           (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

**Defendant**

**Denis R. Brown**
*chief executive officer*
*TERMINATED: 01/30/2014*

**Defendant**

**William Hunnicutt**
*conflict resolution attorney*

**Counter Claimant**

**Leah Lively**                                    represented by **Steven W. Seymour**
*TERMINATED: 03/03/2014*                           (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Elizabeth Falcone**                              represented by **Steven W. Seymour**
*TERMINATED: 03/03/2014*                           (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**David P.R. Symes**                               represented by **Steven W. Seymour**
*TERMINATED: 03/03/2014*                           (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Amanda Bollinger**                               represented by **Steven W. Seymour**
*TERMINATED: 03/03/2014*                           (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

EXHIBIT 16
Page 4 of 10

**Counter Claimant**

**Ogletree Deakins Nash Smoak and**            represented by    **Steven W. Seymour**
**Stewart**                                                      (See above for address)
*TERMINATED: 01/31/2014*                                         *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Kim Ebert**                                   represented by    **Steven W. Seymour**
*managing partner*                                               (See above for address)
*TERMINATED: 03/03/2014*                                         *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Christopher Mixon**                           represented by    **Steven W. Seymour**
*general counsel*                                                (See above for address)
*TERMINATED: 03/03/2014*                                         *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Andrew G. Clark**

| Date Filed | # | Docket Text |
|---|---|---|
| 09/03/2013 | 1 | Complaint. Filing fee in the amount of $400 collected. Receipt No. ORX600008520. Jury Trial Requested: Yes. Filed by Andrew G. Clark against Ogletree Deakins Nash Smoak and Stewart, Securitas Corp., Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Wells Fargo and Company (Attachments: # 1 Civil Cover Sheet). (ljb) (Entered: 09/03/2013) |
| 09/03/2013 | 2 | Notice of Case Assignment to Chief Judge Ann L. Aiken and Discovery and Pretrial Scheduling Order. **NOTICE: Counsel shall print and serve the summonses and all documents issued by the Clerk at the time of filing upon all named parties in accordance with Local Rule 3-5.** Discovery is to be completed by 1/1/2014. Joint Alternate Dispute Resolution Report is due by 1/31/2014. Pretrial Order is due by 1/31/2014. Ordered by Chief Judge Ann L. Aiken. (ljb) (Entered: 09/03/2013) |
| 09/03/2013 | 3 | Clerk's Notice of Mailing Civil Case Assignment Order and Discovery and Pretrial Scheduling Order to Andrew G. Clark. (ljb) (Entered: 09/03/2013) |
| 09/03/2013 | 4 | Summons Issued as to All Defendants. (ljb) (Entered: 09/03/2013) |
| 09/26/2013 | 5 | Answer to 1 Complaint, *Affirmative Defenses*, Counterclaim Andrew G. Clark. Filed by Leah Lively, Elizabeth Falcone, David P.R. Symes, Amanda Bollinger, Ogletree Deakins Nash Smoak and Stewart, Kim Ebert, Christopher Mixon. (Seymour, Steven) (Entered: 09/26/2013) |
| 09/26/2013 | 6 | Motion *for Appointment of Guardian Ad Litem for Plaintiff, or in the Alternative, For Dismissal*. Oral Argument requested. Filed by Amanda Bollinger, Kim Ebert, Elizabeth Falcone, Leah Lively, Christopher Mixon, Ogletree Deakins Nash Smoak and Stewart, David P.R. Symes. (Seymour, Steven) (Entered: 09/26/2013) |
| 09/26/2013 | 7 | Declaration of Steven W. Seymour *in Support of Defendants' Motion for Appointment of Guardian Ad Litem for Plaintiff, or in the Alternative, For Dismissal*. Filed by Amanda Bollinger, Kim Ebert, Elizabeth Falcone, Leah Lively, Christopher Mixon, Ogletree Deakins Nash Smoak and Stewart, David P.R. Symes. (Related document(s): Motion - Miscellaneous, 6 .) (Seymour, Steven) (Entered: 09/26/2013) |

EXHIBIT 16
Page 5 of 10

| 09/26/2013 | 8 | Memorandum in Support *of Defendants' Motion for Appointment of Guardian Ad Litem for Plaintiff, or in the Alternative, for Dismissal*. Filed by Amanda Bollinger, Kim Ebert, Elizabeth Falcone, Leah Lively, Christopher Mixon, Ogletree Deakins Nash Smoak and Stewart, David P.R. Symes. (Related document(s): Motion - Miscellaneous, 6 .) (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit, # 21 Exhibit, # 22 Exhibit, # 23 Exhibit, # 24 Exhibit, # 25 Exhibit, # 26 Exhibit, # 27 Exhibit, # 28 Exhibit, # 29 Exhibit, # 30 Exhibit, # 31 Exhibit, # 32 Exhibit, # 33 Exhibit, # 34 Exhibit, # 35 Exhibit, # 36 Exhibit, # 37 Exhibit, # 38 Exhibit, # 39 Exhibit, # 40 Exhibit, # 41 Exhibit, # 42 Exhibit, # 43 Exhibit, # 44 Exhibit, # 45 Exhibit) (Seymour, Steven) (Entered: 09/26/2013) |
| --- | --- | --- |
| 09/26/2013 | 9 | Corporate Disclosure Statement . Filed by Amanda Bollinger, Kim Ebert, Elizabeth Falcone, Leah Lively, Christopher Mixon, Ogletree Deakins Nash Smoak and Stewart, David P.R. Symes. (Seymour, Steven) (Entered: 09/26/2013) |
| 09/26/2013 | 10 | Unopposed Motion for Extension of Time to Answer *to file first appearances*. Filed by Denis R. Brown, Securitas Corp.. (Berg, Paul) (Entered: 09/26/2013) |
| 09/26/2013 | 11 | Declaration of Paul A. C. Berg *in support of defendants Securitas Corp. and Denis R. Brown's motion for extension of time to file first appearances*. Filed by Denis R. Brown, Securitas Corp.. (Related document(s): Motion for Extension of Time to Answer a Complaint/Petition 10 .) (Berg, Paul) (Entered: 09/26/2013) |
| 09/27/2013 | 12 | **ORDER:** Granting Motion for Extension of Time to Answer 10 . Answer or other appearance by Brown and Securitas is due by 10/21/2013. Ordered by Chief Judge Ann L. Aiken. A copy of this order is mailed to Plaintiff on this date. (cw) (Entered: 09/27/2013) |
| 10/16/2013 | 13 | Motion to Order/Offer Mediation of Dispute - Affidavit and Motion to Admit Partial Evidence in Advance of Discovery. Filed by Andrew G. Clark. (ljb) (Entered: 10/21/2013) |
| 10/16/2013 | 14 | Response in Opposition to Motion *for Appointment of Guardian Ad Litem for Plaintiff, or in the Alternative, For Dismissal* 6 . Filed by Andrew G. Clark. (ljb) (Entered: 10/21/2013) |
| 10/16/2013 | 15 | Initial Disclosure. Filed by Andrew G. Clark (ljb) (Entered: 10/21/2013) |
| 10/16/2013 | 16 | Response in Opposition to Motion *for Appointment of Guardian Ad Litem for Plaintiff, or in the Alternative, For Dismissal* 6 . Filed by Andrew G. Clark. (ljb) (Entered: 10/21/2013) |
| 10/21/2013 | 17 | Motion to Dismiss *Fed. R. Civ. P. 12(b)(6) of Denis R. Brown*, Motion to Dismiss for Failure to State a Claim . Filed by Denis R. Brown. (Berg, Paul) (Entered: 10/21/2013) |
| 10/21/2013 | 18 | Memorandum in Support *of Defendant Denis R. Brown's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss*. Filed by Denis R. Brown. (Related document(s): Motion to Dismiss, Motion to Dismiss for Failure to State a Claim 17 .) (Berg, Paul) (Entered: 10/21/2013) |
| 10/21/2013 | 19 | Declaration of Josiah Rocha *in Support of Defendant Denis R. Brown's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss*. Filed by Denis R. Brown. (Related document(s): Motion to Dismiss, Motion to Dismiss for Failure to State a Claim 17 .) (Berg, Paul) (Entered: 10/21/2013) |
| 10/21/2013 | 20 | Motion to Dismiss for Failure to State a Claim *Fed. R. Civ. P. 12(b)(6)*. Filed by Securitas Corp.. (Berg, Paul) (Entered: 10/21/2013) |
| 10/21/2013 | 21 | Memorandum in Support *of Securitas's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss*. Filed by Securitas Corp.. (Related document(s): Motion to Dismiss for Failure to State a Claim 20 .) (Berg, Paul) (Entered: 10/21/2013) |

EXHIBIT 16
Page 6 of 10

| | | |
|---|---|---|
| 10/22/2013 | 22 | Motion for a More Definite Statement. Declaration of Claim for Relief. Filed by Andrew G. Clark. (ljb) (Entered: 10/22/2013) |
| 10/22/2013 | 23 | Notice of Correction to Motion for Order 13 . Filed by Andrew G. Clark (Related document(s): Motion for Order 13 .) (ljb) (Entered: 10/22/2013) |
| 10/24/2013 | 24 | **ORDER** Pursuant to notification by Lane County Circuit Court, this case is stayed until December 9, 2013, pending plaintiff's criminal charges scheduled for a hearing in Lane County Circuit Court on November 6, 2013. At that time, the parties are directed to submit a written status report to the court. (lg) (Entered: 10/24/2013) |
| 10/24/2013 | 25 | Scheduling Order by Chief Judge Ann L. Aiken. Written Status Report is due by 11/7/2013. Ordered by Chief Judge Ann L. Aiken. (lg) (Entered: 10/24/2013) |
| 11/07/2013 | 26 | Status Report by Amanda Bollinger, Kim Ebert, Elizabeth Falcone, Leah Lively, Christopher Mixon, Ogletree Deakins Nash Smoak and Stewart, David P.R. Symes. Filed by Amanda Bollinger, Kim Ebert, Elizabeth Falcone, Leah Lively, Christopher Mixon, Ogletree Deakins Nash Smoak and Stewart, David P.R. Symes. (Seymour, Steven) (Entered: 11/07/2013) |
| 11/08/2013 | 27 | Scheduling Order by Chief Judge Ann L. Aiken. The Court is in receipt of the Joint Status Report filed 11/7/2013. Ordered the stay in this matter is continued through January 24, 2014. Ordered further Joint Status Report is due by 1/24/2014. Ordered by Chief Judge Ann L. Aiken. A copy of this order is mailed to Andrew Clark. (cw) (Entered: 11/08/2013) |
| 11/18/2013 | 28 | Motion to Dismiss Complaint: Ogletree Deakins Attorneys but not Ogletree Deakins. Filed by Andrew G. Clark. (ljb) (Entered: 11/21/2013) |
| 11/18/2013 | 29 | Motion to Dismiss Parties Named. Filed by Andrew G. Clark. (ljb) (Entered: 11/21/2013) |
| 11/18/2013 | 30 | Declaration and Response to Motion to Dismiss *Fed. R. Civ. P. 12(b)(6) of Denis R. Brown* Motion to Dismiss for Failure to State a Claim 17 . Filed by Andrew G. Clark. (ljb) (Entered: 11/21/2013) |
| 11/18/2013 | 31 | Motion to Supplement/Augment Record. Alternative Dispute Resolution Proposal. Filed by Andrew G. Clark. (ljb) (Entered: 11/21/2013) |
| 11/25/2013 | 32 | **Order**.Based on the Status Report filed on November 7, 2013, with this court, this case was stayed until January 24, 2014. All motions filed by any party, including 6 , 13 , 17 , 20 , 22 , 28 , 29 and 31 , will also be stayed and not considered by the court until January 24, 2014. Ordered by Chief Judge Ann L. Aiken. (lg) (Entered: 11/25/2013) |
| 11/25/2013 | 33 | Clerk's Notice of Mailing copy of order #32 to Andrew G. Clark. (lg) (Entered: 11/25/2013) |
| 12/27/2013 | 34 | Stipulated Motion for Judgment *and Order of Dismissal of Defendant Denis R. Brown*. Filed by Denis R. Brown, Securitas Corp.. (Berg, Paul) (Entered: 12/27/2013) |
| 12/27/2013 | 35 | Stipulated Motion for Judgment *and Order of Dismissal of Defendant Securitas Corp.*. Filed by Denis R. Brown, Securitas Corp.. (Berg, Paul) (Entered: 12/27/2013) |
| 01/09/2014 | 36 | **ORDER:** Granting Motion for Stipulated Judgment of Dismissal of Defendant Securitas Corp. 35 . Plaintiff's claim against defendant Securitas Corp. is dismissed without prejudice and without costs or attorney fees to either party. See formal order. Signed on 1/9/2014 by Chief Judge Ann L. Aiken. (rh) (Entered: 01/15/2014) |
| 01/15/2014 | 37 | Clerk's Notice of Mailing copy of docket #36 and attached order to Andrew G. Clark, 3270 Stoney Ridge Road, Eugene, OR 97405. (rh) (Entered: 01/15/2014) |
| 01/15/2014 | 38 | **ORDER:** Granting Motion for Stipulated Judgment of Dismissal of Defendant Denis R. |

EXHIBIT 16
Page 7 of 10

| | | |
|---|---|---|
| | | Brown 34 . Plaintiff's claims against Denis R. Brown are dismissed without prejudice and without costs or attorney fees to either party. Signed on 1/15/2014 by Chief Judge Ann L. Aiken. (rh) (Entered: 01/16/2014) |
| 01/15/2014 | 39 | Clerk's Notice of Mailing Copy of docket #38 and attached order to Andrew G. Clark, 3270 Stoney Ridge Road, Eugene, OR 97405. (rh) (Entered: 01/16/2014) |
| 01/23/2014 | 40 | Status Report by Amanda Bollinger, Kim Ebert, Elizabeth Falcone, Leah Lively, Christopher Mixon, Ogletree Deakins Nash Smoak and Stewart, David P.R. Symes. Filed by Amanda Bollinger, Kim Ebert, Elizabeth Falcone, Leah Lively, Christopher Mixon, Ogletree Deakins Nash Smoak and Stewart, David P.R. Symes. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B) (Seymour, Steven) (Entered: 01/23/2014) |
| 01/24/2014 | 41 | Memorandum in Support. Filed by Andrew G. Clark. (Related document(s): Motion to Supplement 31 .) (ljb) (Entered: 01/24/2014) |
| 01/24/2014 | 42 | Memorandum in Support of Court Declaring Wells Fargo, et al "Served". Filed by Andrew G. Clark. (ljb) (Entered: 01/24/2014) |
| 01/31/2014 | 43 | **ORDER:** Plaintiff's motions for a court order requiring mediation of this case and for admission of certain documents "into discovery" 13 , 31 , as well as his motion for a more definite statement 22 are DENIED. Plaintiff's motions requesting dismissal of individuals or entities 28 , 29 are GRANTED. Based on the terms of the plea agreement entered into by plaintiff and the Lane County District Attorney's Office, unless and until plaintiff retains counsel, defendant Ogletree, Deakins, Nash, Smoak & Stewart P.C. is dismissed from this case and their motion to dismiss 6 is DENIED AS MOOT. Finally, Denis Brown 17 and Securitas Corp. 20 motions to dismiss are DENIED AS MOOT due to this court's orders granting the stipulated motions and orders to dismiss for both defendants. See Orders 36 and 38 . Ordered by Chief Judge Ann L. Aiken. Copy of this order sent to Pro Se Plaintiff. (rh) (Entered: 01/31/2014) |
| 04/17/2014 | 44 | **Order.** Plaintiff must serve remaining defendant Wells Fargo in compliance with both the Fed. R. Civ. P. and the District's Local Rules by 5/7/2014, or the Court will dismiss this case sua sponte for failure to prosecute. Copy of this order sent to Pro Se Plaintiff. Ordered by Chief Judge Ann L. Aiken. (rh) (Entered: 04/17/2014) |
| 05/05/2014 | 45 | Return of Service of Complaint, 1 and summons upon Wells Fargo Bank, N.A. served on 4/29/2014; Wells Fargo Home Mortgage served on 4/29/2014. Filed by Andrew G. Clark. (ljb) (Entered: 05/05/2014) |
| 05/05/2014 | 52 | Scheduling Order by Chief Judge Ann L. Aiken. Discovery is to be completed by 9/2/2014. Joint Alternate Dispute Resolution Report and Pretrial Order are due by 10/2/2014. Ordered by Chief Judge Ann L. Aiken. (rh) (Entered: 05/22/2014) |
| 05/20/2014 | 46 | Motion for Leave to Appear Pro Hac Vice *for Attorney Christian Rowley* . Filing fee in the amount of $100 collected; Receipt No.: 25FR3U2K. Filed by Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Wells Fargo and Company. (Peters, Sharon) (Entered: 05/20/2014) |
| 05/20/2014 | 47 | Motion for Leave to Appear Pro Hac Vice *for Attorney Peter D. Urias* . Filing fee in the amount of $100 collected; Agency Tracking ID: 0979-3687440. Filed by Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Wells Fargo and Company. (Peters, Sharon) (Entered: 05/20/2014) |
| 05/20/2014 | 48 | Motion to Dismiss for Failure to State a Claim , Alternative Motion for Joinder *in Defendant Ogletree, Deakins' Motion for Appointment of Guardian Ad Litem*. Filed by Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Wells Fargo and Company. (Campbell, David) (Entered: 05/20/2014) |

EXHIBIT 16
Page 8 of 10

| | | |
|---|---|---|
| 05/20/2014 | 49 | Memorandum in Support . Filed by Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Wells Fargo and Company. (Related document(s): Motion to Dismiss for Failure to State a Claim, Motion for Joinder,, 48 .) (Campbell, David) (Entered: 05/20/2014) |
| 05/20/2014 | 50 | Notice re Motion for Leave to Appear Pro Hac Vice, 46 , Motion for Leave to Appear Pro Hac Vice, 47 , Motion to Dismiss for Failure to State a Claim, Motion for Joinder,, 48 *CERTIFICATE OF SERVICE* Filed by Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Wells Fargo and Company (Related document(s): Motion for Leave to Appear Pro Hac Vice, 46 , Motion for Leave to Appear Pro Hac Vice, 47 , Motion to Dismiss for Failure to State a Claim, Motion for Joinder,, 48 .) (Campbell, David) (Entered: 05/20/2014) |
| 05/20/2014 | 51 | Corporate Disclosure Statement . Filed by Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Wells Fargo and Company. (Campbell, David) (Entered: 05/20/2014) |
| 05/21/2014 | 54 | **ORDER:** Granting Motion for Leave to Appear Pro Hac Vice of Christian Rowley for Wells Fargo Bank, N.A.,Christian Rowley for Wells Fargo Home Mortgage,Christian Rowley for Wells Fargo and Company. Application Fee in amount of $100 collected. Receipt No. 25FR3U2K issued. Signed on 5/21/14 by Chief Judge Ann L. Aiken. (ljb) (Entered: 05/22/2014) |
| 05/21/2014 | 55 | **ORDER:** Granting Motion for Leave to Appear Pro Hac Vice of Peter D. Urias for Wells Fargo Bank, N.A.,Peter D. Urias for Wells Fargo Home Mortgage,Peter D. Urias for Wells Fargo and Company. Application Fee in amount of $100 collected. Receipt No. 0979-3687440 issued. Signed on 5/21/14 by Chief Judge Ann L. Aiken. (ljb) (Entered: 05/22/2014) |
| 05/22/2014 | 53 | Clerk's Notice of Mailing copy of Scheduling Order 52 to Andrew G. Clark 3270 Stoney Ridge Road Eugene, OR 97405. (rh) (Entered: 05/22/2014) |
| 06/05/2014 | 56 | Motion and Memorandum to Deny - Response to Motion to Dismiss Pursuant to FRCP 12(B)(6) and Alternatively Motion to Join Motion for Appointment of Guardian. Filed by Andrew G. Clark. (Attachments: # 1 Part 2 of oversized document) (ljb) (Entered: 06/05/2014) |
| 06/11/2014 | 57 | Memorandum in Response to Defendant's Motion to Dismiss Pursuant to FRCP 12(B)(6) and Alternatively Motion to Join Defendant Ogletree Deakins Motion for Appointment of Guardian ad Litem. Filed by Andrew G. Clark. (ljb) (Entered: 06/12/2014) |
| 06/23/2014 | 58 | Reply *memorandum in support of Wells Fargo defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(B)(6), and, alternatively, motion to join defendant Olgletree Deakins' motion for appointment of guardian ad litem* to Motion to Dismiss for Failure to State a Claim Alternative Motion for Joinder *in Defendant Ogletree, Deakins Motion for Appointment of Guardian Ad Litem* 48 . Filed by Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Wells Fargo and Company. (Campbell, David) (Entered: 06/23/2014) |
| 06/23/2014 | 59 | Certificate of Service by Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Wells Fargo and Company of Reply to Motion,, 58 *Conventional service on pro se plaintiff Andrew Clark* Filed by Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Wells Fargo and Company. (Campbell, David) (Entered: 06/23/2014) |
| 06/24/2014 | 60 | *Amended* Certificate of Service by Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Wells Fargo and Company of Reply to Motion,, 58 (Attachments: # 1 Attachment Reply Memorandum) Filed by Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Wells Fargo and Company. (Campbell, David) (Entered: 06/24/2014) |
| 07/01/2014 | 61 | **OPINION AND ORDER:** Wells Fargo's motion to dismiss 48 is granted and this case is dismissed. Clark's request for oral argument is denied as unnecessary. See formal order. |

EXHIBIT 16
Page 9 of 10

| | | |
|---|---|---|
| | | Copy of this minute order and formal order sent to pro se plaintiff. Signed on 7/1/2014 by Chief Judge Ann L. Aiken. (rh) (Entered: 07/02/2014) |
| 07/01/2014 | 62 | **Judgment.** This action is dismissed. See formal judgment. Signed on by Clerk of Court. Copy of judgment sent to pro se plaintiff. (rh) (Entered: 07/02/2014) |
| 07/16/2014 | 63 | Motion and Memorandum to Set Aside Judgment Resulting from Fraud Upon the Court. Filed by Andrew G. Clark. (ljb) (Entered: 07/16/2014) |
| 07/18/2014 | 64 | **ORDER:** Denying Motion and Memorandum to Set Aside Judgment Resulting from Fraud Upon the Court 63 . Copy of this order sent to Pro Se Plaintiff. Ordered by Chief Judge Ann L. Aiken. (rh) (Entered: 07/18/2014) |
| 07/22/2014 | 65 | Notice of Appeal to the 9th Circuit from Order on Motion to Dismiss for Failure to State a Claim, 61 , Judgment 62 . (no filing fee of ifp) Filed by Andrew G. Clark. (ljb) (Entered: 07/23/2014) |
| 07/23/2014 | | USCA Case Number and Notice confirming Docketing Record on Appeal re Notice of Appeal 65 . **Case Appealed to 9th Circuit Case Number 14-35622** assigned. (ljb) (Entered: 07/23/2014) |
| 07/28/2014 | 66 | Fee Due Order to Show Cause from USCA for the 9th Circuit Case #14-35622 re Notice of Appeal 65 . (ljb) (Entered: 07/28/2014) |
| 08/18/2014 | 67 | Appeal Fee in amount of $505.00 collected; Receipt No. DORX600009180 issued. (jk) (Entered: 08/18/2014) |
| 09/03/2014 | 68 | ORDER/MANDATE of USCA for the 9th Circuit, **USCA # 14-35622**, re Notice of Appeal 65 . The appeal is dismissed for failure to pay the docketing/filing fees in this case. This order shall constitute the mandate of this Court. (ljb) (Entered: 09/04/2014) |
| 09/19/2014 | 69 | Order from USCA for the 9th Circuit, re Notice of Appeal 65 : The motion to reinstate is granted and the appeal is reinstated. Briefing schedule established on 7/23/14 shall continue to govern this appeal. (ljb) (Entered: 09/19/2014) |
| 02/02/2017 | 70 | Order from USCA for the 9th Circuit re Notice of Appeal 65 : The panel denies petition for panel rehearing. No further filings will be entertained in this closed case. (ljb) (Entered: 02/02/2017) |
| 02/10/2017 | 71 | MANDATE of USCA for the 9th Circuit, **USCA # 14-35622**, re Notice of Appeal 65 . The ruling of the district court is affirmed. The judgment of this Court, entered 9/21/16, takes effect this date. This constitutes the formal mandate of this Court issued pursuant to Rule 41(a) of FRAP. All pending motions are denied. (Attachments: # 1 Memorandum) (ljb) (Entered: 02/13/2017) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/06/2020 11:29:27 | | |
| **PACER Login:** | Gs0075 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 6:13-cv-01546-AA Start date: 1/1/1971 End date: 3/6/2020 |
| **Billable Pages:** | 9 | **Cost:** | 0.90 |

EXHIBIT 16
Page 10 of 10

3/2/2020           CM/ECF

PARTCONS,TERMINATED

# U.S. District Court
## District of Oregon (Eugene (6))
## CIVIL DOCKET FOR CASE #: 6:14-cv-01103-MK

Clark v. City of Eugene, Oregon et al                 Date Filed: 07/11/2014
Assigned to: Magistrate Judge Mustafa T. Kasubhai     Date Terminated: 02/24/2017
Demand: $4,000,000                         Jury Demand: Plaintiff
Case in other court: 9th Circuit, 17-35247         Nature of Suit: 440 Civil Rights: Other
Cause: 42:1983 Civil Rights Act                Jurisdiction: Federal Question

**Plaintiff**

**Andrew G. Clark**                represented by    **Andrew G. Clark**
                                             3270 Stoney Ridge Rd.
                                             Eugene, OR 97405
                                             (541) 510-3915
                                             PRO SE

                                             **John E. Haapala , Jr.**
                                             401 E. 10th Avenue
                                             Suite 240
                                             Eugene, OR 97401
                                             541-345-8474
                                             Fax: 541-345-3237
                                             Email: jeh@haapalaw.com
                                             *TERMINATED: 10/13/2015*

                                             **Marianne G. Dugan**
                                             Attorney at Law
                                             1430 Willamette St. # 359
                                             Eugene, OR 97401
                                             541-338-7072
                                             Fax: 866-650-5213
                                             Email: mdugan@mdugan.com
                                             *TERMINATED: 03/24/2017*

V.

**Defendant**

**City of Eugene, Oregon**             represented by    **Benjamin J. Miller**
*Police Department/Police Auditor*                       City of Eugene
*TERMINATED: 08/25/2015*                          125 E. 8th Avenue, 2nd Floor
                                             Eugene, OR 97401
                                             541-682-8447
                                             Fax: 541-682-5414
                                             Email: ben.j.miller@ci.eugene.or.us
                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Lane County, Oregon**

EXHIBIT 17
Page 1 of 13

*Sheriff's Department and Jail*
*TERMINATED: 09/28/2015*

**Defendant**

**State of Oregon**
*District Attorney's Office for Lane County*
*and Pre-Trial Release Office*
*TERMINATED: 09/28/2015*

**Defendant**

**Alex Gardner**
*District Attorney for Lane County*
*TERMINATED: 09/28/2015*

**Defendant**

**Wells Fargo Bank, NA**                    represented by   **Christian Rowley**
*TERMINATED: 06/22/2016*                                     Seyfarth Shaw LLP
                                                             560 Mission Street, Suite 3100
                                                             San Francisco, CA 94105
                                                             (415) 544-1001
                                                             Fax: (415) 397-8549
                                                             Email: crowley@seyfarth.com
                                                             *LEAD ATTORNEY*
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Sharon C. Peters**
                                                             Lewis Brisbois Bisgaard & Smith LLP
                                                             888 SW Fifth Avenue
                                                             Suite 900
                                                             Portland, OR 97204-2025
                                                             503-944-6913
                                                             Fax: 503-222-7261
                                                             Email: sharon.peters@lewisbrisbois.com
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **David C. Campbell**
                                                             Lewis Brisbois Bisgaard & Smith LLP
                                                             888 SW Fifth Avenue
                                                             Suite 900
                                                             Portland, OR 97204-2025
                                                             971-712-2800
                                                             Fax: 971-712-2801
                                                             Email: david.campbell@lewisbrisbois.com
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Peter D. Urias**
                                                             Seyfarth Shaw LLP
                                                             560 Mission Street, Suite 3100
                                                             San Francisco, CA 94105
                                                             (415) 544-1026
                                                             Fax: (415) 397-8549

EXHIBIT 17
Page 2 of 13

3/2/2020                                         CM/ECF

Email: purias@seyfarth.com
*TERMINATED: 03/30/2015*
*PRO HAC VICE*

**Defendant**

**Ogletree, Deakins, Nash, Smoak &
Stewart, P.C.**
*a South Carolina Corporation*
*TERMINATED: 02/24/2017*

**Defendant**

**Eric Hasselman**                    represented by **Vanessa A. Nordyke**
*District Attorney's Office for Lane County*                    Oregon Department of Justice
*Oregon, State of Oregon*                    Trial Division
*TERMINATED: 03/29/2016*                    1162 Court Street NE
                                         Salem, OR 97301
                                         503-947-4700
                                         Fax: 503-947-7494
                                         Email: vanessa.a.nordyke@doj.state.or.us
                                         *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/11/2014 | 1 | Complaint. Filing fee in the amount of $400 collected. Receipt No. ORX600009117. Jury Trial Requested: Yes. Filed by Andrew G. Clark against City of Eugene, Oregon, Alex Gardner, Lane County, Oregon, State of Oregon, Wells Fargo Bank, NA (Attachments: # 1 Civil Cover Sheet). (ljb) (Entered: 07/15/2014) |
| 07/11/2014 | 2 | Rule 26 Discovery Filing. Filed by Andrew G. Clark (ljb) (Entered: 07/15/2014) |
| 07/15/2014 | 3 | Notice of Case Assignment to Magistrate Judge Thomas M. Coffin and Discovery and Pretrial Scheduling Order. **NOTICE: Counsel shall print and serve the summonses and all documents issued by the Clerk at the time of filing upon all named parties in accordance with Local Rule 3-5**. Discovery is to be completed by 11/12/2014. Joint Alternate Dispute Resolution Report is due by 12/12/2014. Pretrial Order is due by 12/12/2014. Ordered by Magistrate Judge Thomas M. Coffin. (ljb) (Entered: 07/15/2014) |
| 07/15/2014 | 4 | Clerk's Notice of Mailing to Andrew G. Clark regarding Discovery order 3 . (ljb) (Entered: 07/15/2014) |
| 07/16/2014 | 5 | Notice of Appearance of Sebastian Tapia appearing on behalf of Lane County, Oregon Filed by on behalf of Lane County, Oregon (Tapia, Sebastian) (Entered: 07/16/2014) |
| 07/22/2014 | 6 | Return of Service by Andrew G. Clark of Complaint, 1 Return of Service Executed as to Wells Fargo Bank, NA served on 7/14/2014, answer due on 8/4/2014. Filed by Andrew G. Clark. (ljb) (Entered: 07/23/2014) |
| 07/25/2014 | 7 | Motion to Dismiss for Failure to State a Claim . Filed by City of Eugene, Oregon. (Miller, Benjamin) (Entered: 07/25/2014) |
| 08/01/2014 | 18 | Notice Required under Federal Rule 5.1 Challenge of Constitutionality of State Statutes and/or Application of Statutes to Create Unconstitutional Result. Notice for Court to Perform 28 USC 2403 Certification. Filed by Andrew G. Clark (ljb) Corrected typographical error on 8/8/2014 (plb). (Entered: 08/05/2014) |
| 08/04/2014 | 8 | Motion for Leave to Appear Pro Hac Vice *for Attorney Christian Rowley* . Filing fee in |

EXHIBIT 17
Page 3 of 13

|  |  | the amount of $100 collected; Agency Tracking ID: 0979-3782063. Filed by Wells Fargo Bank, NA. (Campbell, David) (Entered: 08/04/2014) |
|---|---|---|
| 08/04/2014 | 9 | Motion for Leave to Appear Pro Hac Vice *for Attorney Peter D. Urias* . Filing fee in the amount of $100 collected; Agency Tracking ID: 0979-3782084. Filed by Wells Fargo Bank, NA. (Campbell, David) (Entered: 08/04/2014) |
| 08/04/2014 | 10 | Motion to Dismiss for Failure to State a Claim . Filed by Wells Fargo Bank, NA. (Campbell, David) (Entered: 08/04/2014) |
| 08/04/2014 | 11 | Memorandum in Support *of Wells Fargo Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(B)(6)*. Filed by Wells Fargo Bank, NA. (Related document(s): Motion to Dismiss for Failure to State a Claim 10 .) (Campbell, David) (Entered: 08/04/2014) |
| 08/04/2014 | 12 | Request for Judicial Notice *in support of* Motion to Dismiss for Failure to State a Claim 10 . Filed by Wells Fargo Bank, NA. (Attachments: # 1 Exhibit A) (Campbell, David) (Entered: 08/04/2014) |
| 08/04/2014 | 13 | Corporate Disclosure Statement . Filed by Wells Fargo Bank, NA. (Campbell, David) (Entered: 08/04/2014) |
| 08/04/2014 | 14 | Motion for Extension of Time to Answer Complaint, 1 . Filed by State of Oregon. (Nordyke, Vanessa) (Entered: 08/04/2014) |
| 08/04/2014 | 15 | Declaration of Vanessa A. Nordyke . Filed by State of Oregon. (Related document(s): Motion for Extension of Time to Answer a Complaint/Petition 14 .) (Nordyke, Vanessa) (Entered: 08/04/2014) |
| 08/04/2014 | 19 | **ORDER:** Granting Motion for Leave to Appear Pro Hac Vice of Peter D. Urias for Wells Fargo Bank, NA. Application Fee in amount of $100 collected. Receipt No. 0979-3782084 issued. Signed on 8/6/14 by Magistrate Judge Thomas M. Coffin. (ljb) (Entered: 08/06/2014) |
| 08/05/2014 | 16 | **ORDER:** Granting Motion for Extension of Time to Answer 14 . Defendants State of Oregon and Alex Gardner's Answer is due by 10/6/2014. Ordered by Magistrate Judge Thomas M. Coffin. (plb) (Entered: 08/05/2014) |
| 08/05/2014 | 17 | Clerk's Notice of Mailing to Andrew G. Clark regarding Order on motion for extension of time to answer a Complaint/Petition 16 . (plb) (Entered: 08/05/2014) |
| 08/06/2014 | 20 | **ORDER:** Granting Motion for Leave to Appear Pro Hac Vice of Christian Rowley for Wells Fargo Bank, NA. Application Fee in amount of $100 collected. Receipt No. 0979-3782063 issued. Signed on 8/6/14 by Magistrate Judge Thomas M. Coffin. (ljb) (Entered: 08/06/2014) |
| 08/14/2014 | 21 | Motion to Assign Case to Mediation or Alternative Dispute Resolution. Filed by Andrew G. Clark. (ljb) (Entered: 08/15/2014) |
| 08/14/2014 | 22 | Memorandum in Support. Filed by Andrew G. Clark. (Related document(s): Motion to Assign Case to Mediation or Alternative Dispute Resolution 21 .) (ljb) (Entered: 08/15/2014) |
| 08/14/2014 | 23 | Request for Judicial Notice in Opposition to Motion to Dismiss for Failure to State a Claim 7 . Oral Hearing Requested Filed by Andrew G. Clark. (ljb) (Entered: 08/15/2014) |
| 08/14/2014 | 24 | Response in Opposition to Motion to Dismiss for Failure to State a Claim 7 . Filed by Andrew G. Clark. (ljb) (Entered: 08/15/2014) |
| 08/14/2014 | 25 | Declaration of More Definite Statement Requested by City of Eugene of Andrew G. Clark. Filed by Andrew G. Clark. (Related document(s): Motion to Dismiss for Failure to |

EXHIBIT 17
Page 4 of 13

| | | State a Claim 7 .) (ljb) (Entered: 08/15/2014) |
|---|---|---|
| 08/14/2014 | 26 | Motion/Declaration Allegation Added Against Defendants. Filed by Andrew G. Clark. (ljb) (Entered: 08/15/2014) |
| 08/14/2014 | 27 | Certificate of Service by Andrew G. Clark Filed by Andrew G. Clark. (ljb) (Entered: 08/15/2014) |
| 08/15/2014 | 28 | Minor Act of Correction to Response in Opposition to Motion to Dismiss for Failure to State a Claim 7 . Filed by Andrew G. Clark. (ljb) (Entered: 08/15/2014) |
| 08/15/2014 | 29 | First Responsive Pleading to Answer Filed 8/4/14 by Defendant Wells Fargo Bank First Addition to 8/14/14 Response to Defendant City of Eugene. Filed by Andrew G. Clark. (ljb) (Entered: 08/15/2014) |
| 08/18/2014 | 30 | Response in Opposition to Motion to Dismiss for Failure to State a Claim 7 . Filed by Andrew G. Clark. (Attachments: # 1 Part 2 of Oversized Document) (ljb) (Entered: 08/19/2014) |
| 08/19/2014 | 31 | Certificate of Service by Andrew G. Clark of Motion 26 , Response in Opposition to Motion 28 , Declaration 25 , Response in Opposition to Motion 30 , Certificate of Service 27 , Motion 21 , Memorandum in Support of Motion 22 , Request for Judicial Notice Motion to Dismiss for Failure to State a Claim 7 23 , Response in Opposition to Motion 24 Filed by Andrew G. Clark. (ljb) (Entered: 08/19/2014) |
| 08/25/2014 | 32 | Responsive Pleading Motion to Deny Wells Fargo Bank, NA 10 Motion to be Dismissed from Complaint 8.4.14 Request for Judicial Notice. Filed by Andrew G. Clark. (Related document(s): Motion to Dismiss for Failure to State a Claim 10 .) (ljb) (Entered: 08/25/2014) |
| 08/25/2014 | 33 | Reply to Motion to Dismiss for Failure to State a Claim 7 . Filed by City of Eugene, Oregon. (Miller, Benjamin) (Entered: 08/25/2014) |
| 08/25/2014 | 34 | Declaration of Ben Miller . Filed by City of Eugene, Oregon. (Related document(s): Motion to Dismiss for Failure to State a Claim 7 .) (Miller, Benjamin) (Entered: 08/25/2014) |
| 09/04/2014 | 35 | Responsive Pleading to Wells Fargo Bank Memorandum/Motion Wells Fargo and Company Intervention (voluntary or compulsory). Filed by Andrew G. Clark. (Attachments: # 1 Attachment, # 2 Certificate of Service) (ljb) (Entered: 09/05/2014) |
| 09/08/2014 | 36 | Motion for a More Definite Statement Purpose and Intent of Defendant's Declaration under Rule 12(e). Filed by Andrew G. Clark. (ljb) (Entered: 09/08/2014) |
| 09/08/2014 | 37 | Continued Rule 11 Violation by City of Eugene via Attorney 18 USC 1519 Violation Warning. Filed by Andrew G. Clark (ljb) (Entered: 09/08/2014) |
| 09/08/2014 | 38 | Motion to Compel, Memorandum and Declaration with attachment. Filed by Andrew G. Clark. (Attachments: # 1 Attachment) (ljb) (Entered: 09/08/2014) |
| 09/08/2014 | 39 | Declaration of Andrew G. Clark: Civil RICO Lawsuit Test a Modest Proposal. Filed by Andrew G. Clark. (ljb) (Entered: 09/08/2014) |
| 09/08/2014 | 40 | Certificate of Service by Andrew G. Clark of Declaration 39 , Notice 37 , Motion for a More Definite Statement 36 , Motion to Compel 38 . Filed by Andrew G. Clark. (ljb) (Entered: 09/08/2014) |
| 09/26/2014 | 41 | Motion to Augment Record. UNSIGNED Filed by Andrew G. Clark. (ljb) (Entered: 09/26/2014) |
| 10/06/2014 | 42 | Motion for Stay *Discovery*. Filed by Alex Gardner, State of Oregon. (Nordyke, Vanessa) |

EXHIBIT 17
Page 5 of 13

| | | |
|---|---|---|
| | | (Entered: 10/06/2014) |
| 10/06/2014 | 43 | Motion to Dismiss for Failure to State a Claim *Under FRCP Rule 12; Alternative Motion for a More Definite Statement*. Filed by State of Oregon, Alex Gardner. (Nordyke, Vanessa) Motion terminated on 3/27/2015 (plb). (Entered: 10/06/2014) |
| 10/06/2014 | 44 | Memorandum in Support . Filed by Alex Gardner, State of Oregon. (Related document(s): Motion to Dismiss for Failure to State a Claim 43 .) (Nordyke, Vanessa) (Entered: 10/06/2014) |
| 10/07/2014 | 45 | Motion for Emergency District Court Injunction Demanded in the Public Interests. Filed by Andrew G. Clark. (ljb) (Entered: 10/08/2014) |
| 10/08/2014 | 46 | Motion for Inclusion of Allegation of Corruption of District Court as Part of RICO. Filed by Andrew G. Clark. (Attachments: # 1 Part 2 of Oversized Document, # 2 Part 3 of oversized document) (ljb) (Entered: 10/08/2014) |
| 10/09/2014 | 47 | Response to Motion 41 . Filed by City of Eugene, Oregon. (Miller, Benjamin) (Entered: 10/09/2014) |
| 10/09/2014 | 48 | Motion to Compel. Filed by Andrew G. Clark. (# 1 Attachment) (ljb) (Entered: 10/10/2014) |
| 10/14/2014 | 49 | Motion to Compel Wells Fargo Bank to Answer Three Simple Factual Questions. Filed by Andrew G. Clark. (ljb) (Entered: 10/14/2014) |
| 10/15/2014 | 50 | Motion to Compel. Filed by Andrew G. Clark. (ljb) (Entered: 10/15/2014) |
| 10/15/2014 | 51 | Motion to Augment Record Lane County, OR as Defendant. Filed by Andrew G. Clark. (ljb) (Entered: 10/15/2014) |
| 10/15/2014 | 52 | Motion in Limine. Filed by Andrew G. Clark. (ljb) (Entered: 10/15/2014) |
| 10/15/2014 | 53 | Motion in Limine and In Camera Order of Motions in Court Systems Concerns About Attorney Conduct Hearing May be Necessary. Filed by Andrew G. Clark. (ljb) (Entered: 10/15/2014) |
| 10/23/2014 | 54 | Response in Opposition *(titled Defendants' State of Oregon and Gardner's Response to Plaintiff's Motion to Compel and Plaintiff's Motion to Compel)* to Motion to Compel 48 , Motion 41 . Filed by Alex Gardner, State of Oregon. (Nordyke, Vanessa) (Entered: 10/23/2014) |
| 10/28/2014 | 55 | Motion for Trial. Filed by Andrew G. Clark. (Attachment: # 1 Exhibit) (ljb) (Entered: 10/29/2014) |
| 11/03/2014 | 56 | Motion *FOR ORDER LIMITING CONTACT*. Filed by Wells Fargo Bank, NA. (Attachments: # 1 Attachment Memorandum of Points & Authorities, # 2 Attachment Urias Declaration, # 3 Exhibit A-J, # 4 Attachment Campbell Declaration, # 5 Exhibit A-C) (Urias, Peter) (Entered: 11/03/2014) |
| 11/04/2014 | 57 | Certificate of Service by Wells Fargo Bank, NA of Motion *FOR ORDER LIMITING CONTACT* 56 Filed by Wells Fargo Bank, NA. (Urias, Peter) (Entered: 11/04/2014) |
| 11/04/2014 | 58 | Supplemental Declaration of Peter D. Urias . Filed by Wells Fargo Bank, NA. (Related document(s): Motion - Miscellaneous, 56 .) (Attachments: # 1 Exhibit K, # 2 Attachment Certificate of Service) (Campbell, David) (Entered: 11/04/2014) |
| 11/12/2014 | 59 | Objection(s) to Consent to Jurisdiction by a US Magistrate Judge. Filed by Andrew G. Clark. (ljb) (Entered: 11/12/2014) |
| 11/12/2014 | 60 | Memorandum Declaration Attached as Defendant Admission of Need for Trial. Filed by |

EXHIBIT 17
Page 6 of 13

| | | |
|---|---|---|
| | | Andrew G. Clark (ljb) (Additional attachment(s) added on 11/13/2014: # 1 Attachment Introduction) (ljb). (Entered: 11/13/2014) |
| 11/12/2014 | 61 | Motion for Magistrate for 5 Minute Hearing to Christian Rowley of Seyfarth Shaw. Filed by Andrew G. Clark. (ljb) (Entered: 11/13/2014) |
| 11/12/2014 | 62 | Response in Opposition to Motion *FOR ORDER LIMITING CONTACT* 56 . Filed by Andrew G. Clark. (ljb) (Entered: 11/13/2014) |
| 11/12/2014 | 64 | Response in Opposition to Motion *FOR ORDER LIMITING CONTACT* 56 . Filed by Andrew G. Clark. (Attachments: # 1 Attachment) (ljb) (Entered: 11/14/2014) |
| 11/12/2014 | 65 | Memorandum Declaring Attached as Defaming Libel by Peter UriasFiled by Andrew G. Clark (ljb) (Entered: 11/14/2014) |
| 11/13/2014 | 63 | Response in Opposition to Motion *FOR ORDER LIMITING CONTACT* 56 . Filed by Andrew G. Clark. (ljb) (Entered: 11/13/2014) |
| 11/18/2014 | 66 | Motion to Dismiss . Filed by Lane County, Oregon. (Tapia, Sebastian) (Entered: 11/18/2014) |
| 11/18/2014 | 67 | Declaration of *Sebastian Tapia in Support of Defendant Lane County Oregon Sheriff's Department and Jail's Motion to Dismiss*. Filed by Lane County, Oregon. (Related document(s): Motion to Dismiss 66 .) (Tapia, Sebastian) (Entered: 11/18/2014) |
| 11/24/2014 | 68 | **ORDER:** Granting Motion for Order Limiting Contact 56 . It is hereby ordered that plaintiff shall not contact or communicate with any officer, director, employee or other person associated with defendant Wells Fargo concerning this litigation or any other matter, without authorization by specific order of this court. Signed on 11/24/2014 by Magistrate Judge Thomas M. Coffin. (plb) (Entered: 11/25/2014) |
| 11/24/2014 | 70 | **ORDER:** Granting Motion to Stay Discovery 42 pending resolution of defendants' motions to dismiss 7 , 10 , 43 and 66 . All pretrial deadlines are vacated and will be reset, if necessary, upon resolution of the pending motions to dismiss 7 , 10 , 43 and 66 . Plaintiff is ordered to show cause in writing within 30 days of the date of this order why defendants' motions to dismiss 7 , 10 , 43 and 66 should not be dismissed. No extensions of time to comply with this order will be allowed. Plaintiff is advised that failure to show cause as directed will result in the dismissal of this proceeding for failure to prosecute. All other pending motions 21 , 23 , 26 , 36 , 38 , 41 , 45 , 46 , 48 , 49 , 50 , 51 , 52 , 53 , 55 and 61 are denied without prejudice to request reconsideration after plaintiff has filed a response as directed herein. Signed on 11/24/2014 by Magistrate Judge Thomas M. Coffin. (plb) (Entered: 12/01/2014) |
| 11/25/2014 | 69 | Clerk's Notice of Mailing to Andrew G. Clark regarding Order on Motion - Miscellaneous 68 . (plb) (Entered: 11/25/2014) |
| 12/01/2014 | 71 | Clerk's Notice of Mailing to Andrew G. Clark regarding Order 70 . (plb) (Entered: 12/01/2014) |
| 12/01/2014 | 72 | Declaration of Self-Reporting Urgent Attention of the Court by Andrew G. Clark. Filed by Andrew G. Clark. (ljb) (Entered: 12/01/2014) |
| 12/02/2014 | 73 | Response in Opposition (Declaration Opposing Lane County et al Motion to Dismiss 66 Case Against Lane County Motion to Deny Lane County Motion). Filed by Andrew G. Clark. (Attachments: # 1 Exhibit) (ljb) (Entered: 12/03/2014) |
| 12/05/2014 | 74 | Responsive Pleading Augmentation Attached October 6, 2014 State's Motion to Deny Stay of Discovery. Filed by Andrew G. Clark. (Related document(s): Motion for Stay 42 .) (Attachments: # 1 Attachment) (ljb) (Entered: 12/08/2014) |

EXHIBIT 17
Page 7 of 13

| 12/09/2014 | 75 | Motion and Memorandum Objecting to 11/24/14 70 Order of Magistrate. Filed by Andrew G. Clark. (Attachments: # 1 Part 2 of Oversized Document) (ljb) (Entered: 12/09/2014) |
| --- | --- | --- |
| 12/24/2014 | 76 | Motion for Leave to File Amended Complaint/Petition . Filed by Andrew G. Clark. (Attachments: # 1 Attachment, # 2 Proposed Order, # 3 Attachment) (Haapala, John) (Entered: 12/24/2014) |
| 12/24/2014 | 77 | Response to Motion to Dismiss for Failure to State a Claim 10 , Motion to Dismiss for Failure to State a Claim 7 , Motion to Dismiss 66 , Motion to Dismiss for Failure to State a Claim *Under FRCP Rule 12; Alternative Motion for a More Definite Statement* 43 . Filed by Andrew G. Clark. (Haapala, John) (Entered: 12/24/2014) |
| 01/07/2015 | 78 | Reply *to Plaintiff's Response* to Motion to Dismiss for Failure to State a Claim *Under FRCP Rule 12; Alternative Motion for a More Definite Statement* 43 . Filed by Alex Gardner, State of Oregon. (Nordyke, Vanessa) (Entered: 01/07/2015) |
| 01/07/2015 | 79 | Second Request for Judicial Notice *in support of Wells Fargo Bank, N.A.'s motion to dismiss pursuant to Fed. R. Civ. P. 12(B)(6).* Filed by Wells Fargo Bank, NA. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Campbell, David) (Entered: 01/07/2015) |
| 01/07/2015 | 80 | Reply *in support of Wells Fargo Bank, N.A.'s motion to dismiss pursuant to Fed. R. Civ. P. 12(B)(6)* to Motion to Dismiss for Failure to State a Claim 10 . Filed by Wells Fargo Bank, NA. (Campbell, David) (Entered: 01/07/2015) |
| 01/07/2015 | 81 | Response in Opposition *Wells Fargo Bank, N.A.'s opposition to plaintiff's motion for leave to file amended complaint* to Motion for Leave to File Amended Complaint/Petition 76 . Filed by Wells Fargo Bank, NA. (Campbell, David) (Entered: 01/07/2015) |
| 01/08/2015 | 82 | Response in Opposition to Motion for Leave to File Amended Complaint/Petition 76 . Filed by City of Eugene, Oregon. (Miller, Benjamin) (Entered: 01/08/2015) |
| 01/08/2015 | 83 | Reply *to Plaintiff's Response* to Motion to Dismiss for Failure to State a Claim 7 . Filed by City of Eugene, Oregon. (Miller, Benjamin) (Entered: 01/08/2015) |
| 01/12/2015 | 84 | Response to Motion for Leave to File Amended Complaint/Petition 76 . Filed by Alex Gardner, State of Oregon. (Nordyke, Vanessa) (Entered: 01/12/2015) |
| 02/11/2015 | 85 | Notice of Appearance of John E. Haapala, Jr appearing on behalf of Andrew G. Clark Filed by on behalf of Andrew G. Clark (Haapala, John) (Entered: 02/11/2015) |
| 03/27/2015 | 86 | **ORDER:** Denying Motion for Leave to File Amended Complaint 76 without prejudice to refile the motion that complies with Local Rules 7-1(a) and 15-1(d)(1) not later than 4/17/2015. Denying as Moot Motion to Dismiss 7 , Motion to Dismiss 10 , Request for Judicial Notice 12 , Motion to Dismiss 43 , Motion to Dismiss 66 and Request for Judicial Notice 79 without prejudice to refile the motions after plaintiff has filed an amended complaint or in the event that a renewed motion for leave to file an amended complaint is not filed or denied, fourteen (14) days after the deadline to file the renewed motion for leave has expired or after the renewed motion for leave has been denied. Ordered by Magistrate Judge Thomas M. Coffin. (plb) (Entered: 03/27/2015) |
| 04/09/2015 | 87 | **ORDER:** I find Judge Coffins Order, 70 , to be neither clearly erroneous nor contrary to law and adopt it in full. I agree fullywith Judge Coffins view that Plaintiffs action can only be characterized as a nuisance lawsuit. Additionally, warning Plaintiff his actions could subject him to contempt of court was entirely appropriate in this instance. Signed on 4/9/2015 by Judge Michael J. McShane. (Copy of Order mailed to Plaintiff) (cp) (Entered: 04/09/2015) |
| 04/17/2015 | 88 | Unopposed Motion for Extension of Time . Filed by Andrew G. Clark. (Haapala, John) |

EXHIBIT 17
Page 8 of 13

|  |  | (Entered: 04/17/2015) |
|---|---|---|
| 04/17/2015 | 89 | Memorandum in Support . Filed by Andrew G. Clark. (Related document(s): Motion for Extension of Time 88 .) (Haapala, John) (Entered: 04/17/2015) |
| 04/17/2015 | 90 | Declaration of John E. Haapala, Jr . Filed by Andrew G. Clark. (Related document(s): Motion for Extension of Time 88 .) (Haapala, John) (Entered: 04/17/2015) |
| 04/22/2015 | 91 | **ORDER:** Granting Motion for Extension of Time 88 . Amended Complaint is due 5/1/2015. Ordered by Magistrate Judge Thomas M. Coffin. (plb) (Entered: 04/22/2015) |
| 05/01/2015 | 92 | Motion for Leave *to File First Amended Complaint*. Filed by Andrew G. Clark. (Attachments: # 1 Exhibit) (Haapala, John) (Entered: 05/01/2015) |
| 05/01/2015 | 93 | Memorandum in Support . Filed by Andrew G. Clark. (Related document(s): Motion for Leave 92 .) (Haapala, John) (Entered: 05/01/2015) |
| 05/11/2015 | 94 | Response to Motion for Leave *to File First Amended Complaint* 92 . Filed by City of Eugene, Oregon. (Miller, Benjamin) (Entered: 05/11/2015) |
| 05/18/2015 | 95 | Response in Opposition to Motion for Leave *to File First Amended Complaint* 92 . Filed by Wells Fargo Bank, NA. (Campbell, David) (Entered: 05/18/2015) |
| 06/01/2015 | 96 | Reply *to WF Opposition* to Motion for Leave *to File First Amended Complaint* 92 . Filed by Andrew G. Clark. (Haapala, John) (Entered: 06/01/2015) |
| 08/24/2015 | 97 | Motion to Dismiss . Filed by Andrew G. Clark. (Haapala, John) (Entered: 08/24/2015) |
| 08/25/2015 | 98 | **ORDER:** Granting Motion to Dismiss 97 . This action is dismissed with prejudice as to defendant City of Eugene. Ordered by Magistrate Judge Thomas M. Coffin. (plb) (Entered: 08/25/2015) |
| 09/21/2015 | 99 | **ORDER:** Granting Motion for Leave to File Amended Complaint 92 . Amended Complaint is due 9/28/2015. Ordered by Magistrate Judge Thomas M. Coffin. (plb) (Entered: 09/21/2015) |
| 09/28/2015 | 100 | First Amended Complaint . Filed by Andrew G. Clark against Wells Fargo Bank, NA, Ogletree Deakins Nash Smoak and Stewart, Erik V Hasselman. (Haapala, John) (Entered: 09/28/2015) |
| 09/30/2015 | 101 | Motion to Dismiss . Filed by Eric Hasselman. (Nordyke, Vanessa) (Entered: 09/30/2015) |
| 10/13/2015 | 102 | Notice of Attorney Substitution:Attorney Marianne Dugan is substituted as counsel of record in place of Attorney John E. Haapala, Jr Filed by All Plaintiffs (Dugan, Marianne) (Entered: 10/13/2015) |
| 10/15/2015 | 103 | Unopposed Motion for Extension of Time to File a Response/Reply to Motion to Dismiss 101 . Filed by All Plaintiffs. (Dugan, Marianne) (Entered: 10/15/2015) |
| 10/16/2015 | 104 | **ORDER:** Granting Motion for Extension of Time to File Response to Motion to Dismiss 101 filed by Eric Hasselman. Response is due by 11/9/2015. Motion is taken under advisement as of 11/30/2015. Ordered by Magistrate Judge Thomas M. Coffin. (plb) (Entered: 10/16/2015) |
| 10/16/2015 | 105 | Unopposed Motion for Extension of Time to Answer *First* Amended Complaint 100 . Filed by Wells Fargo Bank, NA. (Campbell, David) (Entered: 10/16/2015) |
| 10/19/2015 | 106 | **ORDER:** Granting Motion for Extension of Time to Answer 105 . Defendant Wells Fargo, NA's Answer is due by 11/16/2015. Ordered by Magistrate Judge Thomas M. Coffin. (plb) (Entered: 10/19/2015) |

EXHIBIT 17
Page 9 of 13

| | | |
|---|---|---|
| 11/09/2015 | 107 | Unopposed Motion for Extension of Time to File a Response/Reply *(three days requested)* to Motion to Dismiss 101 . Filed by All Plaintiffs. (Dugan, Marianne) (Entered: 11/09/2015) |
| 11/10/2015 | 108 | **ORDER:** Granting Motion for Extension of Time to File Response to Motion to Dismiss 101 filed by Eric Hasselman. Response is due by 11/12/2015. Motion is taken under advisement as of 12/7/2015. Ordered by Magistrate Judge Thomas M. Coffin. (plb) (Entered: 11/10/2015) |
| 11/12/2015 | 109 | Response to Motion to Dismiss 101 . Filed by All Plaintiffs. (Dugan, Marianne) (Entered: 11/12/2015) |
| 11/16/2015 | 110 | Motion to Dismiss for Failure to State a Claim , Motion to Strike . Filed by Wells Fargo Bank, NA. (Campbell, David) (Entered: 11/16/2015) |
| 11/16/2015 | 111 | Memorandum in Support . Filed by Wells Fargo Bank, NA. (Related document(s): Motion to Dismiss for Failure to State a Claim, Motion to Strike 110 .) (Campbell, David) (Entered: 11/16/2015) |
| 11/16/2015 | 112 | Request for Judicial Notice Motion to Dismiss for Failure to State a Claim, Motion to Strike 110 . Filed by Wells Fargo Bank, NA. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D) (Campbell, David) (Entered: 11/16/2015) |
| 11/24/2015 | 113 | Reply *(titled "Defendant Hasselman's Reply to Plaintiff's Response to Defendant Hasselman's Motion to Dismiss")*. Filed by Eric Hasselman. (Related document(s): Response to Motion 109 .) (Nordyke, Vanessa) (Entered: 11/24/2015) |
| 12/03/2015 | 114 | Unopposed Motion for Extension of Time to File a Response/Reply to Motion to Dismiss for Failure to State a Claim Motion to Strike 110 , Request for Judicial Notice Motion to Dismiss for Failure to State a Claim, Motion to Strike 110 112 . Filed by All Plaintiffs. (Dugan, Marianne) (Entered: 12/03/2015) |
| 12/04/2015 | 115 | **ORDER:** Granting Motion for Extension of Time to File Response to Motion to Dismiss for Failure to State a Claim and Motion to Strike 110 filed by Wells Fargo Bank, NA. Response is due by 12/7/2015. Motion is taken under advisement as of 12/28/2015. Ordered by Magistrate Judge Thomas M. Coffin. (plb) (Entered: 12/04/2015) |
| 12/07/2015 | 116 | Response to Motion to Dismiss for Failure to State a Claim Motion to Strike 110 . Filed by All Plaintiffs. (Dugan, Marianne) (Entered: 12/07/2015) |
| 12/07/2015 | 117 | Response to Motion to Dismiss for Failure to State a Claim Motion to Strike 110 . Filed by All Plaintiffs. (Dugan, Marianne) (Entered: 12/07/2015) |
| 12/07/2015 | 118 | Declaration of Dugan . Filed by All Plaintiffs. (Related document(s): Response to Motion 116 , Response to Motion 117 .) (Dugan, Marianne) (Entered: 12/07/2015) |
| 12/16/2015 | 119 | Unopposed Motion for Extension of Time to File a Response/Reply to Motion to Dismiss for Failure to State a Claim Motion to Strike 110 . Filed by Wells Fargo Bank, NA. (Campbell, David) (Entered: 12/16/2015) |
| 12/17/2015 | 120 | **ORDER:** Granting Motion for Extension of Time to File Reply to Motion to Dismiss for Failure to State a Claim; Motion to Strike 110 filed by Wells Fargo Bank, NA, Request for Judicial Notice re: Motion to Dismiss for Failure to State a Claim, Motion to Strike 110 112 filed by Wells Fargo Bank, NA. Reply is due by 1/7/2016. Motion is taken under advisement as of 1/11/2016. Ordered by Magistrate Judge Thomas M. Coffin. (plb) (Entered: 12/17/2015) |
| 01/07/2016 | 121 | Reply to Motion to Dismiss for Failure to State a Claim Motion to Strike 110 . Filed by Wells Fargo Bank, NA. (Campbell, David) (Entered: 01/07/2016) |

EXHIBIT 17
Page 10 of 13

| | | |
|---|---|---|
| 01/07/2016 | 122 | Declaration of Jason M. Allen *in Support of Motion to Dismiss and Motion to Strike*. Filed by Wells Fargo Bank, NA. (Related document(s): Reply to Motion 121 .) (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E) (Campbell, David) (Entered: 01/07/2016) |
| 02/08/2016 | 123 | Findings & Recommendation: Motion to Dismiss 101 should be granted. Objections to the Findings and Recommendation are due by 2/25/2016. Signed on 2/8/2016 by Magistrate Judge Thomas M. Coffin. (plb) (Entered: 02/10/2016) |
| 02/08/2016 | 124 | Order referring Findings & Recommendation: Motion to Dismiss 101 should be granted 123 , Motion to Dismiss 101 to Judge Michael J. McShane. Ordered by Magistrate Judge Thomas M. Coffin. (plb) (Entered: 02/10/2016) |
| 03/29/2016 | 125 | **ORDER:** Adopting Magistrate Judge Coffin's Findings and Recommendation 123 . Granting Erik Hasselman's Motion to Dismiss 101 . Signed on 3/29/2016 by Judge Michael J. McShane. (cp) (Entered: 03/29/2016) |
| 04/04/2016 | 126 | Findings & Recommendation: Motion to Dismiss for Failure to State a Claim 110 should be granted, Request for Judicial Notice 112 should be denied as moot. Objections to the Findings and Recommendation are due by 4/21/2016. Signed on 4/4/2016 by Magistrate Judge Thomas M. Coffin. (plb) (Entered: 04/05/2016) |
| 04/04/2016 | 127 | Order referring Motion to Dismiss for Failure to State a Claim 110 , Findings & Recommendation: Motion to Dismiss for Failure to State a Claim 110 should be granted, Request for Judicial Notice 112 should be denied as moot 126 , Request for Judicial Notice 112 to Judge Michael J. McShane. Ordered by Magistrate Judge Thomas M. Coffin. (plb) (Entered: 04/05/2016) |
| 06/22/2016 | 128 | **ORDER:** Magistrate Judge Thomas M. Coffin's Findings and Recommendation 126 is adopted. Wells Fargo Bank, N.A.'s Motion to Dismiss 110 is granted and the claims against it are dismissed with prejudice. Wells Fargo's request for judicial notice 112 is Denied as moot. Ordered by Judge Michael J. McShane. (cp) (Entered: 06/24/2016) |
| 01/18/2017 | 129 | Notice of Case Reassignment: This case has been reassigned from Magistrate Judge Thomas M. Coffin to Magistrate Judge Jolie A. Russo. (eo) (Entered: 01/18/2017) |
| 01/24/2017 | 130 | Order to Show Cause. On September 28, 2015, plaintiff filed an amended complaint 100 against Ogletree Deakins Nash Smoak and Stewart ("Ogletree") among other defendants. All other defendants in this matter have been dismissed. To date, plaintiff has neither requested that summons be issued by the court nor filed a return of service as to Ogletree. Accordingly, plaintiff is ordered to Show Cause in Writing by 2/23/2017 why this matter should not be dismissed for failure to prosecute. Failure to respond to this order may result in dismissal of this matter for failure to prosecute and to follow a court order. Ordered by Magistrate Judge Jolie A. Russo. (plb) (Entered: 01/24/2017) |
| 02/23/2017 | 131 | Notice re Order to Show Cause,, 130 *Response to Order* Filed by Andrew G. Clark (Related document(s): Order to Show Cause,, 130 .) (Dugan, Marianne) (Entered: 02/23/2017) |
| 02/24/2017 | 132 | Order of Dismissal as to Ogletree, Deakins, Nash, Smoak & Stewart, P.C. Signed on 2/24/2017 by Judge Michael J. McShane. (cp) (Entered: 02/27/2017) |
| 02/24/2017 | 133 | Judgment: Based on the record, judgment for defendants. Signed on 2/24/2017 by Judge Michael J. McShane. (cp) (Entered: 02/27/2017) |
| 03/20/2017 | 134 | Notice of Appeal to the 9th Circuit. Related Documents: Judgment 133 , Order of Dismissal 132 Filing fee in amount of $505 collected; Receipt No. 11302 issued. Filed by Andrew G. Clark. (ljb) (Entered: 03/21/2017) |

EXHIBIT 17
Page 11 of 13

| 03/22/2017 | | USCA Case Number and Notice confirming Docketing Record on Appeal re Notice of Appeal 134 . **Case Appealed to 9th Circuit Case Number 17-35247** assigned. (ljb) (Entered: 03/22/2017) |
|---|---|---|
| 03/24/2017 | 135 | Notice of Attorney Withdrawal: Filed by Andrew G. Clark (Dugan, Marianne) (Entered: 03/24/2017) |
| 12/29/2017 | 136 | Order from USCA for the 9th Circuit, USCA # 17-35247, re Notice of Appeal 134 . (kf) (Entered: 12/29/2017) |
| 01/02/2018 | 137 | Notice of Motion and Motion to Vacate Judgment 133 . Filed by Andrew G. Clark. (jk) (Entered: 01/02/2018) |
| 01/03/2018 | 138 | Certificate of Service by Andrew G. Clark of Motion to Vacate Judgment 137 . Filed by Andrew G. Clark. (jk) (Entered: 01/03/2018) |
| 01/04/2018 | 139 | Order from USCA for the 9th Circuit, USCA # 17-35247 re Notice of Appeal 134 . (jk) (Entered: 01/05/2018) |
| 01/05/2018 | 140 | **ORDER:** Denying Motion to Vacate 137 the Judgment 133 . Ordered by Judge Michael J. McShane. (cp) (Entered: 01/05/2018) |
| 01/05/2018 | 141 | Clerk's Notice of Mailing to Andrew G. Clark regarding Order on motion to Vacate 140 . (cp) (Entered: 01/05/2018) |
| 01/12/2018 | 142 | Augment 1-02-18. Filed by Andrew G. Clark. (Attachments: # 1 Attachment) (jk) (Entered: 01/16/2018) |
| 05/16/2018 | 143 | Order from USCA for the 9th Circuit, USCA # 17-35247 regarding Notice of Appeal 134 . (bd) (Entered: 05/17/2018) |
| 05/24/2018 | 144 | MANDATE of USCA for the 9th Circuit, **USCA # 17-35247**, regarding Notice of Appeal 134 . The decision of the District Court is AFFIRMED. (Attachments: # 1 Memorandum) (bd) (Entered: 05/25/2018) |
| 03/08/2019 | 145 | ***SEALED***Letter from Andrew Clark. Filed by Andrew G. Clark. (cp) (Entered: 03/08/2019) |
| 03/08/2019 | 146 | Notice of Motion and Motion to Vacate Judgment 133 . Oral Argument requested. Filed by Andrew G. Clark. (bd) (Entered: 03/08/2019) |
| 03/08/2019 | 147 | Declaration of Plaintiff Andrew Clark. Filed by Andrew G. Clark. (Related document(s): Motion to Vacate 146 .) (Attachments: # 1 Exhibit) (bd) (Entered: 03/08/2019) |
| 03/11/2019 | 148 | Notice of Case Reassignment: This case has been reassigned from Magistrate Judge Jolie A. Russo to Magistrate Judge Mustafa T. Kasubhai. (eo) (Entered: 03/11/2019) |
| 03/11/2019 | 149 | Clerk's Notice of Mailing to Andrew Clark regarding Case Reassignment Notice (# 148 ). (eo) (Entered: 03/11/2019) |
| 03/12/2019 | 150 | **ORDER:** The Court previously denied plaintiff's motion to vacate the judgment 133 . ECF No. 140 . Plaintiff's renewed motion to vacate the judgment, 146 , is denied. Ordered by Judge Michael J. McShane. (Copy mailed to plaintiff) (cp) (Entered: 03/12/2019) |
| 04/02/2019 | 151 | Rule 72 - Objection to Magistrate Judge's Non-Dispositive Order: Order on motion to Vacate 150 , and Memorandum. Filed by Andrew G. Clark. (Attachments: # 1 Memorandum) (kf) (Entered: 04/02/2019) |
| 04/02/2019 | 152 | Declaration of Andrew G. Clark regarding Rule 72 - Objection to Magistrate Judge's Non-Dispositive Order 151 . Filed by Andrew G. Clark. (kf) (Entered: 04/02/2019) |

EXHIBIT 17
Page 12 of 13

3/2/2020                                                CM/ECF

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/02/2020 14:13:55 | | | |
| **PACER Login:** | Gs0075 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 6:14-cv-01103-MK Start date: 1/1/1971 End date: 3/2/2020 |
| **Billable Pages:** | 10 | **Cost:** | 1.00 |

| | | |
|---|---|---|
| C. Matthew Keen | Ogletree-Raleigh | matt.keen@ogletree.com |
| Amber Hollister | Oregon State Bar | ahollister@osbar.org |
| Leah C. Lively | Davis Wright Tremaine LLP | leahlively@dwt.com |
| David P.R. Symes | Littler Mendelson | dsymes@littler.com |
| Christopher Mixon | Ogletree- Nashville | christopher.mixon@ogletree.com |
| Michael Hogan | Hogan Mediation | judge@hoganmediation.net |
| Alex Gardner | Oregon State Police | osp.forensics@state.or.us |
| Erik Hasselman | Lane County DA | Erik.Hasselman@lanecountyor.gov |
| Steven Seymour | Samuels Yoelin Kantor LLP | SWS@SamuelsLaw.com |
| Christian Rowley | Seyfarth Shaw | crowley@seyfarth.com |
| Benjamin Gutman | ODOJ-Appeal | benjamin.gutman@doj.state.or.us |
| Barry Davis | Eugene Attorney | barry@barrydavislaw.com |
| David Campbell | Lewis Brisboe | David.Campbell@lewisbrisbois.com |
| Bruce Newton | Eugene Attorney | info@bromleynewton.com |
| Peter Urias | Seyfarth Shaw | purias@seyfarth.com |
| Ellen Rosenblum | ODOJ-Attorney General | ellen.f.rosenblum@doj.state.or.us |
| Sabastian Newton Tapia | Lane County Counsel | sebastian.tapia@co.lane.or.us |
| Ben Miller | Attorney City of Eugene | ben.j.miller@ci.eugene.or.us |
| Vanessa Nordyke | DOJ Trial Division | vanessa.a.nordyke@doj.state.or.us |
| Board Communications | Wells Fargo and Co. | boardcommunications@wellsfargo.com |

March 5, 2020
Subject:  District Court Case 6.20.cv.253.aa   Andrew Clark vs. Wells Fargo et al
Case Scheduling Orders Enclosed.

This snippet of fine print in a Eugene, OR police report from July 19, 2011 (page 82 of complaint) is all
that any other attorney needs to instantly understand the infinite enormity of the legal exposure.
Officer Esch is a Eugene OR police officer documenting a conversation he had with Martin Ogno, a
Wells Fargo corporate security manager in Portland, OR who had police roust me the day before.

> "I told Ogno that Clark felt he was being retaliated upon for contacting the
> FBI and CIA with Wells Fargo's wrong doings.  Ogno said he had been in
> contact with FBI and they did not take Clark's reports seriously."

That absolutely proves Wells Fargo Bank was aware of FBI reporting and had taken steps to mitigate it
via corruption of FBI processes.  I also reported extensively to Central Intelligence Agency (CIA)
regarding the Wells Fargo operation in Hyderabad and Bangalore, India and included it in prior
complaints but not this one because nothing says crazy like "CIA"..

Your best strategy is to be completely honest with yourself and the Court.  Please read my Declaration
starting on Page 20.  I wrote it to be an engaging, easy-to-read account of what was inflicted upon me.
The entire factual basis and the evidence was obstructed from hearing by Defendants as described in
the complaint.  Let us join together to expose and end coercive or pretexted legal processes which will
result in higher-paid and happier attorneys all over America.  Take a ride on the New Wells Fargo
Stagecoach over at **www.TheEugeneBlairProject.com**.  Call / visit me anytime.  Let's work together
as Wells Fargo Agents.

Sincerely, Andy Clark 3270 Stoney Ridge Rd. Eugene OR 97405  541.510.3915

EXHIBIT 18
Page 1 of 72

March 2, 2020

Subject:  Court Scheduling & Management Orders: District Court Case 6.20.cv.000253.AA

Dear Defendants:

Enclosed with this letter are case management and scheduling orders.  Each of you should have received your Summons along with a copy of the subject civil complaint. I will email this correspondence so you have the information while the formal letter is in route via USPS.

My previous court actions occurred prior to all the news of various fraudulent practices at Wells Fargo.  I was among employees who reported it long before, only to be ignored and subjected to legal snuff jobs dished out by the likes of defendant Ogletree Deakins as part of a deadly generic legal response and then obstructed as described in the complaint.

The corporate entities named in the Clayton ATA phase of my complaint can benefit from Alternative Dispute Resolution while assuming responsibility for the wrongful activity of individuals.  "Discovery" under Clayton/Sherman Antitrust Act is 100% complete and in PACER as described on Page 16 of the complaint.   I will wait a few weeks for Wells Fargo and Company to intervene before I file under FRCP 24. That allows this lawsuit to be a positive career-enhancing experience for all involved.

Another rightful option would be to compensate my work and damages via the Wells Fargo settlement to the States that was widely reported in very recent news articles.  Defendant Ellen Rosenblum's office could take that initiative to resolve my complaint.

Otherwise, we will litigate the details which are shocking to the senses.  Major RICO crimes committed against me are listed on Page 5 of the complaint.  The facts and evidence were obstructed with yet more RICO violations as detailed.   I documented what is happening to citizens all the time, including corporate and government leaders.   Exhibit 11 starting on Page 107 was submitted just a few months ago to a Court in another jurisdiction. I also served the document to Secret Service Agency, DOJ, and FBI to report the clear and present danger of endemic manipulation of data in official systems that give the color of the law to simulated or pretexted legal processes.

The best way to contact me is via the telephone.  My number is 541.510.3915.  Text me if I do not answer so I may promptly return the call or contact Jackie on 541.513.6991 who can relay it to me.  I look forward to progress for all.  Thank you.

Sincerely,

/s

Andrew (Andy) Clark
3270 Stoney Ridge Rd.
Eugene, OR 97405    541.5103915      OperationSunriseLaw@gmail.com
www.RisePatriot.com (police/court audio and other evidence)
www.WellsFargoWitz.com (family court audio showing link to retaliation)

## www.TheEugeneBlairProject.com (Solution Metaphor)

EXHIBIT 18
Page 2 of 72

To: David P.R. Symes Littler Mendelson    Page 3 of 14    2020-03-05 17:33:34 (GMT)    13034846329  From: Andrew Clark

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION


ANDREW CLARK,

                 Case No.  6:20-cv-00253-AA

          Plaintiff,        **CASE MANAGEMENT ORDER**

WELLS FARGO BANK, et al.,

          Defendants,

AIKEN, Judge:


    **A.**    **General Directions**

    All documents described below shall be filed using the District Court's CM/ECF system.

    With questions, contact        Courtroom Deputy Cathy Kramer
                                   (541) 431-4102
                                   cathy_kramer@ord.uscourts.gov

    **B.**    **Scheduling**


Page 1 - ORDER


EXHIBIT 18
Page 3 of 72

Judge Aiken generally does not hold Rule 16 conferences. Soon after a case is filed, the Court will issue a scheduling order with deadlines for discovery, the Alternative Dispute Resolution report, and the Pretrial Order. If the parties wish to alter that schedule, they should confer and submit a joint proposed case schedule to the Court. If the parties cannot agree on a case schedule, they shall (1) request a telephonic status conference to settle the scheduling dispute and (2) submit a joint letter of no longer than three pages, filed at least two days before the telephonic status conference, setting out their respective positions.

Absent exigent circumstances, a motion to extend case deadlines, even when unopposed, should be received at least five days before the current deadline.

### C.    Discovery Disputes

Judge Aiken does not permit motions to compel without leave. If the parties need the Court's assistance resolving a discovery dispute, they should (1) request a telephonic status conference and (2) submit a joint letter of no longer than five pages, filed at least five days before the telephonic status conference, setting out their respective positions. Judge Aiken will order the filing a formal motion and briefs only if necessary following the telephonic status conference.

### D.    Trial

Absent unusual circumstances, Judge Aiken generally does not set dates for trial until discovery is complete and dispositive motions, if any, have been resolved. The parties are encouraged to contact the Court to schedule a telephonic scheduling conference either at the close of discovery (if no dispositive motions will be filed) or after a ruling on dispositive motions.

Page 2 - ORDER

EXHIBIT 18
Page 4 of 72

**E.    Settlement Conferences**

At any point in the litigation, Judge Aiken is ready to schedule a settlement conference before a District of Oregon judge.  The parties are encouraged to request such a conference as early in the process as they believe it would be helpful.

IT IS SO ORDERED.

DATED this 18th day of FEBRUARY, 2020

/s/ Ann Aiken
ANN AIKEN
United States District Judge

Page 3 - ORDER

EXHIBIT 18
Page 5 of 72

To: David P.R. Symes Littler Mendelson    Page 6 of 14    2020-03-05 17:33:34 (GMT)    13034846329  From: Andrew Clark

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

**ANDREW CLARK**
    Plaintiff,

v.

**WELLS FARGO BANK, et al.**
    Defendant.

Case No.: 6:20-cv-00253-AA

---

### Civil Case Assignment Order

**1.**    **Presiding Judge:** The above referenced case has been filed in the Eugene Division of the U.S. District Court for the District of Oregon and assigned to:

> Presiding Judge .............................. Hon. Ann Aiken
> Presiding Judge's Suffix Code* ............................... AA
>
> *These letters must follow the case number on all future filings.*

**2.**    **Courtroom Deputy Clerk:** Questions about the status or scheduling of this case should be directed to:

> Cathy Kramer
> Telephone: 541-431-4102
> Email: cathy_kramer@ord.uscourts.gov

**3.**    **Case Administrator/Docket Clerk:** Questions about filings or docket entries in this case should be directed to:

> Telephone: 541-431-4100

**4.**    **Place of Filing:** Any paper filings must be submitted to the Clerk of Court, Wayne L. Morse Courthouse, 405 East Eighth Ave., Eugene, OR, 97401. (*See* LR 3-1, LR 5-5.)

**5.**    **District Court Website:** Information about local rules of practice, CM/ECF electronic filing requirements, responsibility to redact personal identifiers from filings, and other related information can be found on the Court's website at ord.uscourts.gov.

**6.**    **Free Legal Assistance for Pro Se Litigants:** Litigants proceeding pro se (without a lawyer) may qualify for free legal assistance from the Oregon Chapter of the Federal Bar Association's Free Federal Law Clinic. To see if you qualify, apply at fedlawclinic.com.

**7.**    **Consent to a Magistrate Judge:** In accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all United States Magistrate Judges in the District of Oregon are certified to exercise civil jurisdiction in assigned cases and, with the consent of the parties, enter final orders on dispositive motions, conduct trial, and enter final judgment, which may be appealed directly to the Ninth Circuit Court of Appeals.

    Parties are encouraged to consent to the jurisdiction of a Magistrate Judge by signing and filing the (attached) Consent to Jurisdiction by a United States Magistrate Judge and Designation of the

EXHIBIT 18
Page 6 of 72

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

**ANDREW CLARK**                                    Case No.: 6:20−cv−00253−AA
    Plaintiff,

v.

**WELLS FARGO BANK, et al.**
    Defendant.

---

## Discovery and Pretrial Scheduling Order

To facilitate discovery and the effective management of this case, the Court orders that:

1.   **Discovery and Pretrial Deadlines:** Unless otherwise ordered by the Court, the parties shall,

    a.   within 120 days of this Order:
        i.    File all pleadings pursuant to Fed. R. Civ. P. 7(a) and 15;
        ii.   Join all claims, remedies, and parties pursuant to Fed. R. Civ. P. 18 and 19;
        iii.  File all pretrial, discovery, and dispositive motions;
        iv.  Complete all discovery; and
        v.   Confer as to Alternate Dispute Resolution pursuant to LR 16−4(c).

    b.   within 150 days of this Order:
        i.    File a Joint ADR Report pursuant to LR 16−4(d); and
        ii.   File a Proposed Pretrial Order pursuant to LR 16−5.

2.   **Corporate Disclosure Statement:** In accordance with Fed. R. Civ. P. 7.1 and LR 7.1−1, any non−governmental corporate party must file a corporate disclosure statement concurrently with its first appearance (*See also* LR 83−9).

3.   **Initial Conference of Counsel for Discovery Planning:**

    a.   Except in cases exempted under Fed. R. Civ. P. 26(a)(1)(B), upon learning the identity of counsel for Defendant(s), counsel for the Plaintiff(s) must initiate communications with counsel for Defendant(s).

    b.   All counsel must then confer as required by Fed. R. Civ. P. 26(f) within thirty (30) days after a defendant files a responsive pleading or a motion under Fed. R. Civ. P. 12. (*See* LR 26−1.)

    c.   Counsel should also discuss their client's positions regarding:

        i.    Consent to a Magistrate Judge; and
        ii.   Alternate Dispute Resolution options. ADR options include judicial settlement conferences or Court−sponsored mediation with highly qualified lawyer−mediators. Court−sponsored mediators agree to conduct mediation without cost to the Court or parties for four (4) hours, exclusive of preparation and travel time to and from the agreed location for mediation. Parties are encouraged to visit the Court's website for additional ADR information, including mediator biographies, subject−matter expertise, and contact information.

EXHIBIT 18
Page 7 of 72

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

**ANDREW CLARK**
    Plaintiff,

v.

**WELLS FARGO BANK, et al.**
    Defendant.

Case No.: 6:20–cv–00253–AA

---

### Fed. R. Civ. P. 26(a)(1) Discovery Agreement

    Pursuant to LR 26–2, I state that the parties who have been served and who are not in default have agreed to forgo the disclosures required by Fed. R. Civ. P. 26(a)(1).

**DATED:** _____

| | |
|---|---|
| **Signature:** | _____ |
| **Name and OSB ID:** | _____ |
| **E–mail Address:** | _____ |
| **Firm Name:** | _____ |
| **Mailing Address:** | _____ |
| **City, State, Zip:** | _____ |
| **Parties Represented:** | _____ |

EXHIBIT 18
Page 8 of 72

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

**ANDREW CLARK**
    Plaintiff,

                           Case No.: 6:20−cv−00253−AA

v.

**WELLS FARGO BANK, et al.**
    Defendant.

### Consent to Jurisdiction by a Magistrate Judge and Designation of the Normal Appeal Route

    Pursuant to Fed. R. Civ. P 73(b), as counsel for the party (parties) identified below, I consent to have a United States Magistrate Judge conduct any and all proceedings in this case, including entry of orders on dispositive motions, trial, and entry of final judgment. I understand that withholding consent will not result in any adverse consequences. Pursuant to Fed. R. Civ. P. 73(c), I agree that an appeal from a judgment entered at a Magistrate Judge's direction may be taken to the court of appeals as would any other appeal from a district court judgment.

**DATED:** _____

        **Signature:** _____

    **Name and OSB ID:** _____

       **E-mail Address:** _____

         **Firm Name:** _____

     **Mailing Address:** _____

       **City, State, Zip:** _____

   **Parties Represented:** _____

EXHIBIT 18
Page 9 of 72

**U.S. District Court – Oregon**
**Civil Case Management Time Schedules**

| Local Rule | Event or Requirement | Time Frame | Comment |
|---|---|---|---|
| LR 16–1(d) | Discovery and Pretrial Scheduling Order (with attachments) | Issued by the Clerk's Office at new civil case initiation, along with the summonses | Required to be served on all parties by the filing party (*See* LR 3–5) |
| LR 26–1 | Initial Conference for Discovery Planning | Within 30 days of a defendant filing a responsive pleading or a motion under Fed. R. Civ. P. 12 | Held between the parties |
| LR 16–2 | Rule 16 Conference | Scheduled by the assigned judge after the required LR 26–1 initial discovery planning conference | Affirmative duty on all counsel to contact the assigned judge's courtroom deputy (*See* LR 16–2(a)) |
| LR 16–4(c) | ADR Conference Requirements | Within 120 days from the date the Discovery and Pretrial Scheduling Order is issued | Parties must confer with other attorneys and unrepresented parties to discuss ADR options |
|  | Joint Status Report | Within 120 days from the date the Discovery and Pretrial Scheduling Order is issued | Required in cases assigned to Judge Jones |
| LR 16–2(e) | Completion of Discovery | Unless otherwise ordered by the Court, within 120 days from the date the Discovery and Pretrial Scheduling Order is issued | Discovery deadlines are set forth in the Discovery and Pretrial Scheduling Order |
| LR 16–4(d) | Joint ADR Report | Within 150 days from the date the Discovery and Pretrial Scheduling Order is issued | The parties must file a Joint ADR Report |
| LR 16–5 | Joint Proposed Pretrial Order | Unless otherwise modified pursuant to LR 16–5(a), within 150 days from the date the Discovery and Pretrial Scheduling Order is issued | The Joint Proposed Pretrial Order filing deadline is established in the Discovery and Pretrial Scheduling Order |
| LR 16–4(f)(2)(B) | Notice to the Court that the Parties Are Unable to Select a Court–sponsored Mediator from the Court's list of mediators | Within fourteen (14) days after entry of a court order referring a case for Court–sponsored mediation | Plaintiff's attorney (or the *pro se* plaintiff) is responsible for notifying the assigned judge who will then designate a mediator |
| LR 16–4(h)(1) | Notification of Private ADR Results | Not later than seven (7) days after the conclusion of private ADR proceedings | Plaintiff's attorney (or the *pro se* plaintiff) is responsible for notifying the court |
| LR 16–4(h)(2) | Report of Court–sponsored Mediator | Not later than seven (7) days following the conclusion of the mediation if no settlement is achieved | Court–sponsored mediator is responsible for notifying the court |

EXHIBIT 18
Page 10 of 72

    d.    If counsel for all of the parties agree to forgo the initial disclosures required by Fed. R. Civ. P. 26(a)(1), they shall file with the Court the Fed. R. Civ. P. 26(a) Discovery Agreement form issued with this order (*See* LR 26–2). Whether or not the parties agree to forgo the initial disclosures, they may seek discovery once the initial conference of counsel for discovery planning contemplated by Fed. R. Civ. P. 26(f) has occurred. (*See* LR 26–1.)

**4.**    **Rule 16 Court Conference for Scheduling and Planning:** Counsel for Plaintiff(s) and for Defendant(s) must, during or promptly after the conference of counsel referred to in section 3 above, contact the assigned judge's courtroom deputy clerk to schedule a Rule 16 Conference for scheduling and planning. (*See* LR 16–2.)

At the Rule 16 Conference, the parties must be prepared to discuss discovery, whether there is consent to a Magistrate Judge, and any scheduling or other issues, including any requested modifications to the initial scheduling order set forth in section 1 above, and possible submission of trial exhibits electronically (*See* LR 5–7(b)).

**5.**    **Service of this Order:** Counsel for the Plaintiff (the "filing party") must serve this order and all attachments upon all other parties to the action. (In cases removed to this Court, the removing defendant is considered the "filing party.") (*See* LR 3–5.) A *pro se* filing party is required to serve this order and all attachments upon all other parties to the action.

**DATED:  February 14, 2020**               **MARY L. MORAN**
                                       **Clerk of Court**

                             by:  /s/ B. Davies
                                   B. Davies, Deputy Clerk

EXHIBIT 18
Page 11 of 72

**U.S. District Court**

**District of Oregon**

**Notice of Electronic Filing**

The following transaction was entered on 2/14/2020 at 5:14 PM PST and filed on 2/14/2020

**Case Name:**     Clark v. Wells Fargo Bank et al

**Case Number:**     6:20-cv-00253-AA

**Filer:**

**Document Number:** 2

**Docket Text:**
**Notice of Case Assignment to Judge Ann L. Aiken and Discovery and Pretrial Scheduling Order. NOTICE: Counsel shall print and serve the summonses and all documents issued by the Clerk at the time of filing upon all named parties in accordance with Local Rule 3-5. Discovery is to be completed by 6/15/2020. Joint Alternate Dispute Resolution Report is due by 7/13/2020. Pretrial Order is due by 7/13/2020. Ordered by Judge Ann L. Aiken.*(Mailed to Pro Se party on 02/14/2020.)* (bd)**

**6:20-cv-00253-AA Notice has been electronically mailed to:**

**6:20-cv-00253-AA Notice will <u>not</u> be electronically mailed to:**
Andrew Clark
3270 Stoney Ridge Rd.
Eugene OR 97405
US

EXHIBIT 18
Page 12 of 72

## Scheduling Orders/Judgments/Other Orders

6:20-cv-00253-AA Clark v. Wells
Fargo Bank et al

PROSEFTY

### U.S. District Court

### District of Oregon

## Notice of Electronic Filing

The following transaction was entered on 2/18/2020 at 1:38 PM PST and filed on 2/18/2020

**Case Name:**     Clark v. Wells Fargo Bank et al
**Case Number:**   6:20-cv-00253-AA
**Filer:**
**Document Number:** 3

**Docket Text:**
**CASE MANAGEMENT ORDER. Signed on 2/18/2020 by Judge Ann L. Aiken.** *(Mailed to Pro Se party on 2/18/2020.)* **(ck)**

**6:20-cv-00253-AA Notice has been electronically mailed to:**

**6:20-cv-00253-AA Notice will <u>not</u> be electronically mailed to:**

Andrew Clark
3270 Stoney Ridge Rd.
Eugene, OR 97405

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** Not Available
**Electronic document Stamp:**
[STAMP ordStamp_ID=875559790 [Date=2/18/2020] [FileNumber=6899064-0] [
6180c5fe4bb4e3c4f51746d62a23c368e57cfa8c795096b51c7592964c082f09b52a9f
d3bb5910b4397230817ecb191a6dff684f7ee09deb5eeed64124984773]]

EXHIBIT 18
Page 13 of 72

Normal Appeal Route. There will be no adverse consequences if a party elects not to consent to a Magistrate Judge. A Magistrate Judge, however, may be able to resolve a case earlier as they are primarily assigned only to civil cases.

Additional information about United States Magistrate Judges in the District of Oregon is available on the Court's website.

DATED:  **February 14, 2020**                    **MARY L. MORAN**
                                                 **Clerk of Court**

                                       by:  _/s/ B. Davies_____
                                            B. Davies, Deputy Clerk

EXHIBIT 18
Page 14 of 72

March 6, 2020


Subject:  Clark vs. Wells Fargo et al  6.20.cv.253.aa

Dear Mr. Sime:


Thank you for your telephone call.  Your client **David Campbell** aided and abetted a physically violent Racketeering enterprise as documented.  He did it by filing obstructive pleadings that caused the court to bypass the existence of the factual basis and the evidence that I placed in the courts.

That is exactly what an attorney who is aiding and abetting RICO is known to do and that is exactly what your client did.  It is now what you are doing.  Each attorney… yourself included… has a greater obligation to the Court to "flag" that obstructive conduct as it happens...which is what I expect that you will do via your Bar Association.

PACER is the record.  It shows I submitted facts and evidence of major violent federal felonies that were committed against me.  It shows how the RICO-defendant attorneys individually and collectively filed pleadings such that the evidence was not formally discovered or adjudicated.  That is why I am compelled to file this new lawsuit: public corruption and misuse of official systems with the result being to bypass the factual basis in this banking employment retaliation case involving upfront FBI reporting.  As indicated in many contexts: I am open to alternative dispute resolution.

Now, to drill down to a particular detail Defendant Campbell will have trouble overcoming without excellent internal working papers demonstrating his basis.  It is the Declarations of Peter Urias and Mr. Campbell which constitute perjury that justified the forged (at least non-transparent) judges orders.  He deviously used a false and wrongful ad hominem attack to cause the court to bypass the factual basis.


**Mr. Sime:  your future depends upon you understanding post-Yates vs. United States "18 USC 1519".  PACER is a 'tangible object' that was manipulated by Defendants to impede/obstruct justice.  That is how the Supreme Court made his (and your) activity specifically illegal.  I realize it takes the industry some time to adjust its practices but you will need to on this case.  Please pass that legal update to OSB so they may be aware.**


Thank you from Andy Clark  541.510.3915


EXHIBIT 18
Page 15 of 72

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
### Eugene, Oregon Division

Andrew Clark, Plaintiff
3270 Stoney Ridge Rd.
Eugene, OR 97405   541.510.3915
OperationSunriseLaw@gmail.com

Wells Fargo and Company
420 Montgomery St. San Francisco, CA 94163
as Voluntary or Mandatory
Intervenor for Plaintiff

**vs.**  Defendants:

Wells Fargo Bank, Ogletree Deakins, Oregon State Bar Association
Leah C. Lively, David P.R. Symes, Christopher Mixon, Michael Hogan, Alex Gardner,
Erik Hasselman, Steven Seymour, Christian Rowley, Benjamin Gutman, Barry Davis,
David Campbell, Bruce Newton, Peter Urias, Ellen Rosenblum, Sabastian Tapia, Ben
Miller, Vanessa Nordyke

**Civil Complaint Case  6-20-cv-253-aa**

Motion for Wells Fargo and Company  to Join
Plaintiff as Intervenor.

Pleading per
Federal Rule of Civil Procedure (FRCP)  24

---

Motion for Wells  Fargo and Company to Intervene for Plaintiff Pursuant to FRCP 24.

The memorandum of support of this motion is the letter mailed to the Board of
Directors of Wells Fargo and Company in care of Charles Scharf, President and CEO of
Wells Fargo.  The letter follows without the enclosure, which is a copy of the complaint.

Certificate of Service

The Motion and the letter to the Wells Fargo Board of Directors along with a copy of the
complaint was served March 9, 2020 via  United States postal service to  Wells Fargo
and Company, Intervenor for Plaintiff.  A copy of the motion and letter were served to
all Defendants of record via United States postal service.

Signed,

/s  Andrew Clark
3270 Stoney Ridge Rd.
Eugene, OR  97405  541.510.3915                     March 9, 2020

EXHIBIT 18
Page 16 of 72

To: David P.R. Symes Littler Mendelson    Page 2 of 4    2020-03-09 14:18:47 (GMT)    14157043294  From: Andrew Clark

March 9, 2020

Board of Directors of Wells Fargo and Company (WFC)
in care of Charles W. Scharf, Chief Executive Officer
420 Montgomery Avenue
San Francisco, CA  94163

Subject:  Wells Fargo and Company (WFC) as Intervenor for Plaintiff: 6-20-cv-253-aa

Dear Mr. Scharf:

The attached civil complaint was recently filed in the Eugene, OR District Court.  It is in the best interests of WFC to have an agent call me to discuss the situation details and how the it can be turned around to exonerate WFC in this case and most others. WFC policy and training strictly prohibits the described conduct of its subsidiary Wells Fargo Bank and its attorney-agents who all violated the WFC Rules of Professional Engagement. Join me to see how bad it really is.

External attorneys (presumably working with WFC staff attorneys) used the same shoddy boilerplate legal forms to keep management completely in the dark while financially bleeding WFC and setting up future legal fee billings.  I was among the many lowest-level Wells Fargo employees who reported sales system abuse and other questionable activity long before it was made public.  WFC policy and training required me to report the highly illegal internal retaliation. I was admitted in to local Federal Bureau- Investigation (FBI) to file crime reports and evidence while employed and after.   See what that meant to the Wells Fargo corporate security manager as proven with the Eugene, OR police report on Page 82.

Wells Fargo Bank hired employment attorneys Ogletree Deakins to suppress my filings.  They twice had me falsely arrested and filed a SLAPP-suit against me.  Meet me in a Eugene OR police car posted on **www.TheEugeneBlairProject.com.** Hear police in my home and in their headquarters arranging it with the Wells Fargo security manager in Portland.  The article on the next page is one of many from Maricopa County AZ in the same timeframe.  It documents Ogletree Deakin's use of false arrest and system manipulation in the 'Sheriff Joe' case.

Please call me on the telephone to set up a meeting.   The best way to keep WFC, its Board of Directors, and all of corporate America out of courts and prisons is to join me as Plaintiff's intervenor.  I placed a metaphor of a corporate project on **www.TheEugeneBlairProject.com.** That type of solution allows everyone involved to prosper instead of suffer. Thank you.

Sincerely,

 /s

Andrew (Andy) Clark, Wells Fargo Agent
3270 Stoney Ridge Rd.
Eugene, OR  97405  541.510.3915

EXHIBIT 18
Page 17 of 72

10/18/13                                   Phoenix - News - Valley Fever - Print Version

## Exhibit 1                                                                [▷

# Sheriff Joe Arpaio's Favorite Law Firm, Ogletree Deakins, Cost Taxpayers $2.4 Million -- in Just Two Years

**By Sarah Fenske**
Published Wed., May 26 2010 at 8:00 AM



L. Eric Dowell, rainmaker

The battle for control of Maricopa County -- pitting Sheriff Joe Arpaio and County Attorney Andrew Thomas against the Board of Supervisors, judges, and county administrators -- has been costly to both taxpayers and the parties involved.

But it's been a major boon to one local law firm.

Ogletree Deakins, a relatively obscure firm specializing in employment law, became Arpaio and Thomas' go-to legal counsel just as the disputes were heating up. And, according to public records obtained by *New Times*, the firm has billed the county for a staggering $2.49 million since January 2009.

Most of the work had little to do with employment law -- and most of the firm's representation has been unsuccessful, legally speaking.

Ogletree Deakins has fought for the sheriff's right to take over the county's computer system. They tried to argue that the supervisors didn't have the right to sweep money from funds controlled by Thomas and Arpaio. They're currently pressing Arpaio's assertion that he shouldn't have to open his books to county auditors.

And, according to the billing records we looked at, it appears likely that Ogletree lawyers may have even been behind one of Arpaio/Thomas' biggest embarrassments: the criminal charges they filed against the county's presiding criminal court judge, Gary Donahoe.

As *New Times* first reported earlier this month, prosecutors filed criminal charges against Donahoe without bothering to seek a grand jury indictment. They simply filed a direct complaint, and attached a "probable cause" statement that, almost word for word, matched a complaint that the sheriff's office had filed with the Arizona Commission on Judicial Conduct one week before. That complaint, detailing a conspiracy theorist's view of Judge Donahoe's conduct, was signed by Arpaio's chief deputy, David Hendershott.

It now appears that Hendershott had some help penning the letter.                    2 -\

According to its billing statements, Ogletree charged the county $27,310 for something titled "MCSO State Bar/Judicial." The first two invoices with that notation were submitted on December 1, 2009 --

EXHIBIT 18
Page 18 of 72

10/18/13                                          Phoenix - News - Valley Fever - Print Version

just one day after Hendershott filed "his" complaint with the judicial conduct commission.

So did an employment law specialist draft the document that became the basis for the criminal charges against the county's presiding criminal court judge? If nothing else, it would explain why the document drew guffaws from seasoned prosecutors. Ogletree's lawyers were likely in way over their heads. (And really, what was prosecutor Lisa Aubuchon thinking, merely regurgitating Ogletree's letter as a criminal complaint?)

According to the billing statements examined by *New Times*, Ogletree also advised Andrew Thomas on matters involving the State Bar. (That cost the taxpayers $18,929). And, they advised either Arpaio or Thomas -- the billings aren't clear -- about issues relating to the selection of a new county attorney. (That cost us *another* $12,762.)

Finally, Ogletree billed the county a staggering $1.2 million for something described only as "contract compliance." County Spokeswoman Cari Gerchick told *New Times* that county administrators have no idea what that means.

We contacted L. Eric Dowell, a shareholder at Ogletree Deakins and the sheriff's lawyer of choice, to ask about the "contract compliance" payments, but we hadn't heard back by press time. We'll post an update if we get an answer.

In the mean time, looking at the wasted $2.4 million and the unexplained $1.2 million and the tens of thousands of dollars for failed legal adventures -- well, we never thought we'd say this, but we actually miss Dennis Wilenchik. Yes, *New Times* disagreed with Wilenchik on just about everything. But Wilenchik handled some pretty tough cases for Arpaio, not just political crap that should have never made its way to a docket.

And Wilenchik, unlike the sheriff's new $2-million-counsel, actually knew how to win.

2?

Civil Case 6-20-cv-000253  Complaint Filed February 14, 2020Clark vs. Wells Fargo et al  Page 59 of 131

httn s nhoenixnewtimes com/valleyfever/2010/05/sheriff_joe_arpaios_favorite_labo?pristetrue

EXHIBIT 18
Page 19 of 72

# FAX COVER SHEET

| TO | Christopher Mixon Ogletree- Nashville |
|---|---|
| COMPANY | |
| FAX NUMBER | 16152541908 |
| FROM | Andrew Clark |
| DATE | 2020-03-12 00:41:00 GMT |
| RE notes | Motion to Extend, Dire Warning, Legal Sales Tip, and LR7 |

### COVER MESSAGE

Filed today.  Please note that I reported concern for 'lack of response' in some cases which is why I allowed a full 45 days.  Please also notice the 'friendly dire warning' regarding the advance FBI reporting and banking.  I put the notice on the motion and then added an important aspect on page 3.

I also proposed a new kind of response that I am calling "pleading to rule 12-e" that you can actually use and sell. Nothing says "major opportunity" to a talented attorney more clearly than being personally sued along with large corporate entities.

EXHIBIT 18
Page 20 of 72

IN THE UNITED STATES DISTRICT COURT
**FOR THE DISTRICT OF OREGON**
**Eugene, Oregon Division**

Andrew Clark, Plaintiff
3270 Stoney Ridge Rd.
Eugene, OR 97405  541.510.3915
OperationSunriseLaw@gmail.com

**Wells Fargo and Company**
420 Montgomery St. San Francisco, CA 94163
as Voluntary or Mandatory
Intervenor for Plaintiff

**Civil Complaint Case  6-20-cv-253-aa**

Motion for Extension of Original Court Schedule

Preliminary Notes on Local Rule 7 Conferral

**vs.**  Defendants:

Wells Fargo Bank, Ogletree Deakins, Oregon State Bar Association
Leah C. Lively, David P.R. Symes, Christopher Mixon, Michael Hogan, Alex Gardner, Erik
Hasselman, Steven Seymour, Christian Rowley, Benjamin Gutman, Barry Davis, David
Campbell, Bruce Newton, Peter Urias, Ellen Rosenblum, Sabastian Tapia, Ben Miller, Vanessa
Nordyke

Plaintiff's Motion for 45 Day Extension to First Responses
and Preliminary Notes on Conferral

Plaintiff moves for a 45 day extension to the Court's original scheduling orders starting with
first response due dates as well as Plaintiff's reply to already-submitted first response.
Documents were served to all parties via 'paper' filings.  The scheduling orders were
separately served within a reasonable time.  All Defendants are (or are represented) by
licensed attorneys who are reasonably aware of the Complaint in PACER.

**Notice to Defendants**:    No corporate crime is more rare and serious than physically
tampering or intimidation of a federally-insured bank worker who had been admitted to local
FBI to deliver crime reports and evidence and had given a copy to his manager, as mandated
by policy and training.  Such cases get prosecuted similarly to a lurid case of aggravated
murder only with more vengeance and a much wider net.  The consequences to the involved
corporations, their workforce, and the public are so dire that civil litigation such as this
lawsuit is permitted under the law to avoid criminal prosecution.

When prosecuted,  "public corruption" becomes the primary focus of such investigations.
Tampering and concealment are prosecuted as an assault against the FBI itself regardless of
what the employee reported.  What exacerbates this situation is that all I reported in some
detail in 2011 became costly multi-billion dollar problems for Wells Fargo several years later.
In light of recent events and the FRCP 24 filing, pleading to FRCP 12-e may be optimal.

EXHIBIT 18
Page 21 of 72

<u>Preliminary Notes on Conference per Local Rule 7-1</u>

I will start with a constructive idea.  It is essentially 'new boilerplate' you may want to test out in this case.  You do not have to study the complaint any more or less than you did in order to respond in this fashion. Corporate clients are anxious to learn of new methods to control risk and public perception.  Imagine a legal services sales meeting in which you compare the typical "Brand X" obstructive and insulting 12(b)(6) pleading to the 12(e) option.  The strategy sets you apart from the rest of the crowd who is selling the same old thing.

The method allows you to collect the same (or more) fees for less work <u>and</u> less risk while putting you in the driver's seat of immediate-future legal work for the corporate entities in the ADR and problem remediation activity.    Best of all is that it is HONEST and RIGHTFUL, something along these lines.  If you think it may apply to you...call me so we can discuss it.

Plaintiff conferred with Defendant who concurs with this Motion to Continue at this time.

1.  FRCP-6(e) requires Defendant to interpret Plaintiff's pleadings such that justice is done.

2.  Defendant is not requesting a dismissal at this time.  Defendant has considered the facts and evidence of the complaint and is concerned that justice was not done in this complex case involving a federally-insured financial institution.  As a disclaimer, Defendant is not acknowledging or alleging any wrongdoing, involvement, or culpability of himself or others.  Defendant rendered his honest opinion and is not making a statement of fact.

3.  Plaintiff agreed that he holds Defendant harmless from damages of any type in exchange for possible future participation and cooperation that may be reasonably necessary to protect the integrity of the banking systems and to ensure justice to all parties.

<u>Preliminary Report of Conference Activity per Local Rule 7</u>

Conference is going very poorly so far in my opinion because Defendants do not recognize the existence of any possible factual basis or evidence of anything against anyone.  Many of the public Defendants have not returned my telephone calls and my concern is some may be "ducking service of legal documents" which is ordinarily viewed as an indication of guilt.  You can advise a client to 'refuse service' or pick at technical details of the service but as attorneys, it will eventually be viewed as a most unprofessional form of obstruction.

The telephone calls made so far follow the same pattern that is used to obtain a dismissal of almost all private civil lawsuits.  We briefly exchange pleasantries.  I am told that "I have no claim of relief" and they ask me to dismiss them (or their client).  I usually ask for an in-person meeting but so far it is all via telephone.  I attempt to discuss the factual basis and evidence and within a few minutes, I am told the person has nothing to do with whatever I am alleging and it goes downhill and hits rock bottom fast and hard.

EXHIBIT 18
Page 22 of 72

That is an insulting and disingenuous generic legal 'response'.  It can be used without even looking at the civil complaint. The telephone call results in a mostly-generic pleading to FRCP 12(b)(6).  The pleadings generally follow the exact same pattern and use the same set of case law that completely misrepresents the facts and evidence of the complaint.  They are boilerplate forms.  The corporate attorneys often access specialized software which pulls citations and writes the response.  The attorney edits it to make it appear case-specific.  Small town public attorneys apparently lack those tools so Defendant Tapia used a version easily obtained for free via internet and put no effort into attempting to customize it or relate the boilerplate to reality.

That dog-and-pony show is one of the ways corporate attorneys are able to swindle corporate clients out of large sums of money for little-to-no work.   It is NOT what Wells Fargo and Company wanted from its attorneys.  It is NOT what is in the best interests of the public.  But it is all I have seen so far.  Let us cut to the chase:  Ogletree Deakins et al activity was entirely to conceal what they did to me in Wells Fargo's name and expense, per the FRCP 24 filing.

Wells Fargo & Company (WFC) policy and training required me to report local sales system fraud and other major business issues in-person to local FBI due to perceived internal retaliation.  We were trained that such reports are essential to protect the Wells Fargo and Company corporate entity from possible effects of errors or fraud by its (human) workers and management.   A person who does that is a federal witness or informant, regardless of whether the FBI is investigating the report.

You are welcome to visit me in person here in Eugene, OR to make progress.  I reached out my hand many times with the proverbial 'olive branch' only to beaten senseless with it.   You would not want yourself or your family treated that way and now is a necessary time to do differently.

On a closing note, any Defendant may call me at any time and chat about facts and evidence or anything else that helps keep $2,500 per month of spousal support paid...15 years after divorce despite no income and dwindling assets.  This case gets ugly as it bled over to 'family court'.  (www.WellsFargoWitz.com ...hear holocaust as it happens. Legal  court audio.)

Signed,
/s
Andrew Clark
3270 Stoney Ridge Rd.
Eugene, OR  97405  541.510.3915                    March 11, 2020

EXHIBIT 18
Page 23 of 72

# FAX COVER SHEET

| TO | David P.R. Symes Littler Mendelson |
| --- | --- |
| COMPANY | |
| FAX NUMBER | 15039618198 |
| FROM | Andrew Clark |
| DATE | 2020-03-12 00:40:51 GMT |
| RE | Motion to Extend, Dire Warning, Legal Sales Tip, and LR7 |
| notes | |

## COVER MESSAGE

Filed today.  Please note that I reported concern for 'lack of response' in some cases which is why I allowed a full 45 days.  Please also notice the 'friendly dire warning' regarding the advance FBI reporting and banking.  I put the notice on the motion and then added an important aspect on page 3.

I also proposed a new kind of response that I am calling "pleading to rule 12-e" that you can actually use and sell.  Nothing says "major opportunity" to a talented attorney more clearly than being personally sued along with large corporate entities.

EXHIBIT 18
Page 24 of 72

IN THE UNITED STATES DISTRICT COURT
**FOR THE DISTRICT OF OREGON**
**Eugene, Oregon Division**

Andrew Clark, Plaintiff
3270 Stoney Ridge Rd.
Eugene, OR 97405   541.510.3915
OperationSunriseLaw@gmail.com

Wells Fargo and Company
420 Montgomery St. San Francisco, CA 94163
as Voluntary or Mandatory
Intervenor for Plaintiff

**Civil Complaint Case  6-20-cv-253-aa**

Motion for Extension of Original Court
Schedule

Preliminary Notes on Local Rule 7 Conferral

**vs.**  Defendants:

Wells Fargo Bank, Ogletree Deakins, Oregon State Bar Association
Leah C. Lively, David P.R. Symes, Christopher Mixon, Michael Hogan, Alex Gardner, Erik
Hasselman, Steven Seymour, Christian Rowley, Benjamin Gutman, Barry Davis, David
Campbell, Bruce Newton, Peter Urias, Ellen Rosenblum, Sabastian Tapia, Ben Miller, Vanessa
Nordyke

Plaintiff's Motion for 45 Day Extension to First Responses
and Preliminary Notes on Conferral

Plaintiff moves for a 45 day extension to the Court's original scheduling orders starting with
first response due dates as well as Plaintiff's reply to already-submitted first response.
Documents were served to all parties via 'paper' filings.  The scheduling orders were
separately served within a reasonable time.  All Defendants are (or are represented) by
licensed attorneys who are reasonably aware of the Complaint in PACER.

**Notice to Defendants**:   No corporate crime is more rare and serious than physically
tampering or intimidation of a federally-insured bank worker who had been admitted to local
FBI to deliver crime reports and evidence and had given a copy to his manager, as mandated
by policy and training.  Such cases get prosecuted similarly to a lurid case of aggravated
murder only with more vengeance and a much wider net.  The consequences to the involved
corporations, their workforce, and the public are so dire that civil litigation such as this
lawsuit is permitted under the law to avoid criminal prosecution.

When prosecuted,  "public corruption" becomes the primary focus of such investigations.
Tampering and concealment are prosecuted as an assault against the FBI itself regardless of
what the employee reported.  What exacerbates this situation is that all I reported in some
detail in 2011 became costly multi-billion dollar problems for Wells Fargo several years later.
In light of recent events and the FRCP 24 filing, pleading to FRCP 12-e may be optimal.

EXHIBIT 18
Page 25 of 72

<u>Preliminary Notes on Conference per Local Rule 7-1</u>

I will start with a constructive idea. It is essentially 'new boilerplate' you may want to test out in this case. You do not have to study the complaint any more or less than you did in order to respond in this fashion. Corporate clients are anxious to learn of new methods to control risk and public perception. Imagine a legal services sales meeting in which you compare the typical "Brand X" obstructive and insulting 12(b)(6) pleading to the 12(e) option. The strategy sets you apart from the rest of the crowd who is selling the same old thing.

The method allows you to collect the same (or more) fees for less work <u>and</u> less risk while putting you in the driver's seat of immediate-future legal work for the corporate entities in the ADR and problem remediation activity. Best of all is that it is HONEST and RIGHTFUL, something along these lines. If you think it may apply to you...call me so we can discuss it.

Plaintiff conferred with Defendant who concurs with this Motion to Continue at this time.

1. FRCP-6(e) requires Defendant to interpret Plaintiff's pleadings such that justice is done.

2. Defendant is not requesting a dismissal at this time. Defendant has considered the facts and evidence of the complaint and is concerned that justice was not done in this complex case involving a federally-insured financial institution. As a disclaimer, Defendant is not acknowledging or alleging any wrongdoing, involvement, or culpability of himself or others. Defendant rendered his honest opinion and is not making a statement of fact.

3. Plaintiff agreed that he holds Defendant harmless from damages of any type in exchange for possible future participation and cooperation that may be reasonably necessary to protect the integrity of the banking systems and to ensure justice to all parties.

<u>Preliminary Report of Conference Activity per Local Rule 7</u>

Conference is going very poorly so far in my opinion because Defendants do not recognize the existence of any possible factual basis or evidence of anything against anyone. Many of the public Defendants have not returned my telephone calls and my concern is some may be "ducking service of legal documents" which is ordinarily viewed as an indication of guilt. You can advise a client to 'refuse service' or pick at technical details of the service but as attorneys, it will eventually be viewed as a most unprofessional form of obstruction.

The telephone calls made so far follow the same pattern that is used to obtain a dismissal of almost all private civil lawsuits. We briefly exchange pleasantries. I am told that "I have no claim of relief" and they ask me to dismiss them (or their client). I usually ask for an in-person meeting but so far it is all via telephone. I attempt to discuss the factual basis and evidence and within a few minutes, I am told the person has nothing to do with whatever I am alleging and it goes downhill and hits rock bottom fast and hard.

EXHIBIT 18
Page 26 of 72

That is an insulting and disingenuous generic legal 'response'. It can be used without even looking at the civil complaint. The telephone call results in a mostly-generic pleading to FRCP 12(b)(6). The pleadings generally follow the exact same pattern and use the same set of case law that completely misrepresents the facts and evidence of the complaint. They are boilerplate forms. The corporate attorneys often access specialized software which pulls citations and writes the response. The attorney edits it to make it appear case-specific. Small town public attorneys apparently lack those tools so Defendant Tapia used a version easily obtained for free via internet and put no effort into attempting to customize it or relate the boilerplate to reality.

That dog-and-pony show is one of the ways corporate attorneys are able to swindle corporate clients out of large sums of money for little-to-no work.  It is NOT what Wells Fargo and Company wanted from its attorneys. It is NOT what is in the best interests of the public. But it is all I have seen so far. Let us cut to the chase: Ogletree Deakins et al activity was entirely to conceal what they did to me in Wells Fargo's name and expense, per the FRCP 24 filing.

Wells Fargo & Company (WFC) policy and training required me to report local sales system fraud and other major business issues in-person to local FBI due to perceived internal retaliation. We were trained that such reports are essential to protect the Wells Fargo and Company corporate entity from possible effects of errors or fraud by its (human) workers and management.  A person who does that is a federal witness or informant, regardless of whether the FBI is investigating the report.

You are welcome to visit me in person here in Eugene, OR to make progress. I reached out my hand many times with the proverbial 'olive branch' only to beaten senseless with it.  You would not want yourself or your family treated that way and now is a necessary time to do differently.

On a closing note, any Defendant may call me at any time and chat about facts and evidence or anything else that helps keep $2,500 per month of spousal support paid...15 years after divorce despite no income and dwindling assets. This case gets ugly as it bled over to 'family court'.  (www.WellsFargoWitz.com ...hear holocaust as it happens. Legal court audio.)


Signed,
/s
Andrew Clark
3270 Stoney Ridge Rd.
Eugene, OR  97405  541.510.3915          March 11, 2020

EXHIBIT 18
Page 27 of 72



**From:** Operation SunriseLAW [mailto:operationsunriselaw@gmail.com]
**Sent:** Monday, March 16, 2020 12:16 PM
**To:** matt.keen@ogletree.com; ahollister@osbar.org; leahlively@dwt.com; dsymes@littler.com; christopher.mixon@ogletree.com; judge@hoganmediation.net; osp.forensics@state.or.us; Erik.Hasselman@lanecountyor.gov; Steve Seymour (x102); Rowley, Christian; benjamin.gutman@doj.state.or.us; barry@barrydavislaw.com; David.Campbell@lewisbrisbois.com; info@bromleynewton.com; purias@seyfarth.com; ellen.f.rosenblum@doj.state.or.us; sebastian.tapia@co.lane.or.us; ben.j.miller@ci.eugene.or.us; vanessa.a.nordyke@doj.state.or.us;

EXHIBIT 18
Page 28 of 72

boardcommunications@wellsfargo.com
**Subject:** Crime Report to US Attorney for Oregon

I am hopeful this will allow Wells Fargo to settle my banking employment issues out of the courts but another purpose of it is to significantly bolster my "Claim for Relief" if needed.  I want to email it to Mr. Mitchell's office later today but I wanted to get Team Input, particularly State.

I am sorry I am bypassing communication protocol but I need to be sure each of you is directly aware.  My lawsuit can be a civil compromise of crimes against me.  I was wrong to state or imply I could engage in civil compromise of the root crime of the enterprise.

This short, simple document is shocking to the senses.  Many of you are forever altered.
Thank you from Andy Clark    3270 Stoney Ridge Rd. Eugene OR 97405   541.510.3915

EXHIBIT 18
Page 29 of 72

March 16, 2020

Dear Ms. Rosenblum, Mr. Hasselman, Mr. Gardiner, Mr. Gutman, Ms. Nordyke

c.c.    Billy Mitchell, United States Attorney for Oregon –
        Mandatory Report of Ongoing Major Federal Felonies

My complaint 6.20.cv.253.aa does a very good job of documenting actions against me and linking them to my employment at Wells Fargo. But it could leave a reader wondering "what crimes could possibly have been committed that are so extreme that a group of people would be used to conceal it by committing a series of RICO crimes including the use of courts to obstruct justice?  What evidence could a lowest-level worker possibly have that proves any of it?

As attorneys you are certain to know that a police report is a very special type of evidence.  Attached is a page from a Eugene, OR police report dated July 19, 2011.  It is Page 82 of the complaint.  It is from before all the RICO crimes against me (page 5 of complaint). It shows Wells Fargo corporate security agent Martin Ogno was aware I had filed reports with Federal Bureau-Investigation (FBI) in Eugene OR, therefore Wells Fargo was aware.  Most shocking, it captures Martin Ogno telling Eugene Police that he had contacted FBI and that FBI did not take my (just filed in-person and sworn-to well-evidenced, voluminous) reports seriously.  <u>Think of that horrific violation of City of Eugene Police.</u>

After that is a printout of Department of Justice publication "Criminal Resource Manual 1729".  It has a standard archive disclaimer but the content remains valid.  It clearly specifies that the act of reporting to a federal law enforcement agency such as FBI is what establishes the federal witness/informant status and relates it to 18 USC 1512.

<u>Stated as RICO</u>: Repeated physical tampering and legal battery of a Federal Witness/Informant in a Banking Employment Case with purpose and/or effect being to conceal the crime from the FBI and oversight agencies.  Obstruction of justice via corruption of FBI processes and other public corruption.

<u>Stated as Clayton/Sherman ATA</u> (corporate entities):   Corporate entities Wells Fargo, Ogletree Deakins, and Oregon State Bar have a nationwide business model that permitted the RICO violations to occur and continue and they still do as evidenced by their pleadings to date in 6.20.cv.253.aa.
………….
**Mr. Billy Mitchell , US Attorney for Oregon** : I would greatly appreciate it if you could contact WFC responsible corporate officers and authorize them to properly resolve this with me so that we can take the banking matters out of the courts. I put in a motion under FRCP 24 but my experience so far is that Wells Fargo management is kept in the dark on anything important.

Wells Fargo & Company (WFC) policy and training required me to report local sales system fraud and other major business issues in-person to local FBI due to perceived internal retaliation.  We were trained that such reports are essential to protect the Wells Fargo and Company corporate entity from possible effects of errors or fraud by its (human) workers and management.   The situation is aggravated by the fact my reports included details of sales system fraud including the 'bogus bank account scandal' which later became multi-billion dollar problems.  Wells Fargo and Company should be getting all that money back because  the attorneys caused and continued the problem and then " earned" money pretending to solve the problems.

Thank you from Andy Clark  3270 Stoney Ridge Rd. Eugene OR 97405 541.510.3915

EXHIBIT 18
Page 30 of 72

was Officer Pieske who was there with us during the contacts and told Clark that Officer Pieske concurred with my findings in the matters. I asked Clark if there was anything else I could do for him. Clark said there was nothing else I could do for him and he left city hall.

Also per Sergeant Klinko's request, I contacted Marty Ogno, head of security for Wells Fargo. I called Ogno and told him I had contacted Clark and that he had been advised he was trespassed from all Wells Fargo properties. I also told Ogno Clark was concerned he had $24,000 in an account at Wells Fargo. Ogno said he had looked it up and though Clark only had about $200 in an account, but that he would close Clark's account and mail him a check with the remaining balance. Ogno asked how the contact went. I told Ogno that Clark felt he was being retaliated upon for contacting the FBI and CIA with Wells Fargo's wrong doings. Ogno said that he had been in contact with the FBI and told me that the FBI did not take Clark's reports seriously.

>>>>> 
FBI would not say that.

At approximately 1900 hours, dispatch advised that Clark had left a phone number for me to call him back so he could further discuss his desire to press charges against Wells Fargo for filing a false police report. I requested Sergeant Magnuson respond to the report writing room where I was working on reports so I could discuss the situation with him before calling Clark back. While I was explaining the situation to Sergeant Magnuson, Dispatch advised that Clark had called back 3 more times requesting contact. I then asked Sergeant Magnuson if he would contact Clark in my behalf in that I was unable to effectively communicate to Clark that Wells Fargo had broken no laws and that they had the right to trespass Clark from their properties.

Notice no person at FBI is referenced.

It is corruption of FBI processes and obstruction.

Reviewed by FTO: **Pieske**          **112**
                   Name                Badge

BTW, I did report to CIA via nationwide fax# and consulate offices in Bangalore and Hyderabad India due to concerns related to system development work on the CORE/ELF system I had to use here that was being badly programmed in India.

Esch
#623

07-19-11 2330 Hours                    Approved By: Magnuson 122

Civil Case 6-20-cv-000253  Complaint Filed February 14, 2020 Clark vs. Wells Fargo et al    Page 82 of 131

EXHIBIT 18
Page 31 of 72



An official website of the United States government  Here's how you know

THE UNITED STATES
DEPARTMENT of JUSTICE
ARCHIVES

This is archived content from the U.S. Department of Justice website. The information here may be outdated and links may no longer function. Please contact webmaster@usdoj.gov if you have any questions about the archive site.

## 1729. PROTECTION OF GOVERNMENT PROCESSES -- TAMPERING WITH VICTIMS, WITNESSES, OR INFORMANTS -- 18 U.S.C. 1512

Section 1512 of Title 18 constitutes a broad prohibition against tampering with a witness, victim or informant. It proscribes conduct intended to illegitimately affect the presentation of evidence in Federal proceedings or the communication of information to Federal law enforcement officers. It applies to proceedings before Congress, executive departments, and administrative agencies, and to civil and criminal judicial proceedings, including grand jury proceedings. *See* 18 U.S.C. § 1515(a)(1). In addition, the section provides extraterritorial Federal jurisdiction over the offenses created therein. *See* 18 U.S.C. § 1512(g); 128 Cong. Rec. H8469 (daily ed. Oct. 1, 1980); H. R. Rep. No. 1369, 96th Cong., 2d Sess. 20-22 (1980).

The express prohibitions against tampering with witnesses and parties contained in former 18 U.S.C. §§ 1503 and 1505, are now in paragraphs (b)(1) and (2) of 18 U.S.C. § 1512. (As discussed in this Manual at 1724 and 1727, the omnibus clauses of these provisions still cover witnesses.) All forms of tampering with informants covered in former 18 U.S.C. § 1510, with the exception of tampering by means of bribery, are now proscribed by 18 U.S.C. § 1512(b)(3). Tampering with informants by means of bribery remains an 18 U.S.C. § 1510 offense.

Section 1512 augments the prohibitions of the former law in several important respects. First, section 1512(b)(3) sweeps more broadly than former 18 U.S.C. § 1510 and expands the class of informants protected by Federal law. For example, it protects individuals having information concerning a violation of a condition of probation, parole, or bail whether or not that violation constitutes a violation of any other Federal criminal statute. Second, it protects individuals seeking to provide information to Federal judges or Federal probation and pretrial services officers.

Section 1512 also includes attempts in its list of prohibited conduct. There is no requirement that the defendants actions have the intended obstructive effect. *See, e.g., United States v. Murray,* 751 F.2d 1528 (9th Cir.), *cert. denied,* 474 U.S. 979 (1985); *United States v. Wilson,* 796 F.2d 55 (4th Cir. 1986), *cert. denied,* 479 U.S. 1039 (1987). As amended by the Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. 99-646, it is clear that the killing of a witness or attempts to kill a witness in order to prevent his/her testimony constitutes an act of force intended to "influence the witness' testimony." *See* 18 U.S.C. § 1512(a). This change was necessitated by one court interpreting former § 1512 as not reaching an act of attempted murder that was intended to prevent a witness from testifying. *See United States v. Dawlett,* 787 F.2d 771 (1st Cir. 1986).

The section specifically abolishes the pending proceeding requirement of 18 U.S.C. §§ 1503 and 1505. The provision also eliminates ambiguity about the class of individuals protected. Although the former law protected witnesses, parties, and informants, it was unclear whether that law reached the intimidation of third parties (for example, the spouse of a witness) for the purpose of intimidating the principal party. Section § 1512 of Title 18 plainly covers such conduct, for it speaks of conduct directed toward "another person." *See* 128 Cong. Rec. H8203 (daily ed. Sept. 30, 1982).

Section 1512 protects potential as well as actual witnesses. With the addition of the words "any person," it is clear that a witness is "one who knew or was expected to know material facts and was expected to testify before them before pending judicial proceedings." *United States v. DiSalvo,* 631 F.Supp. 1398 (E.D. Pa. 1986), *aff'd,* 826 F.2d 1054 (3d Cir. 1987). Under § 1512, an individual retains his/her status as a witness even after testifying. *United States v. Wilson,* 796 F.2d 55 (4th Cir. 1986), *cert. denied,* 479 U.S. 1039 (1987) (protection of witness under § 1512 continues throughout the trial); *United States v. Patton,* 721 F.2d 159 (6th Cir. 1983) (witness retains status while defendant's motion for a new trial is pending); *United States v. Chandler,* 604 F.2d 972 (5th Cir. 1979) (witness retains status while case is pending on direct appeal). *Cf. United States v. Risken,* 788 F.2d 1361 (8th Cir.), *cert. denied,* 479 U.S. 923 (1986) (party was a witness after asserting his Fifth Amendment privilege and being dismissed from the stand since he could be recalled at any time).

Section 1512 of Title 18 contains two significant additions to the types of tampering barred by Federal law. First, it forbids "misleading conduct," as defined in 18 U.S.C. § 1515. Such conduct was not covered in those circuits that had narrowly construed the omnibus clauses of 18 U.S.C. §§ 1503 and 1505 under the rule of ejusdem generis. *See United States v. Metcalf,* 435 F.2d 754 (9th Cir. 1970); *United States v. Essex,* 407 F.2d 214 (6th Cir. 1969). *see generally,* 128 Cong. Rec. H8203 (daily ed. Sept. 30, 1982). Second, 18 U.S.C. § 1512 makes intentional harassment a misdemeanor. This offense is intended to reach conduct less egregious than the corrupt, threatening or forceful conduct required for a violation of former 18 U.S.C. §§ 1503 and 1505. Harassing conduct has been defined as that intended to badger, disturb or pester. *Wilson, supra.*

Despite its coverage, section 1512 was not intended to reach all forms of witness tampering. Its coverage is limited to tampering accomplished by the specific means enumerated in the provision. *United States v. King,* 762 F.2d 232 (2d Cir. 1985), *cert. denied,* 475 U.S. 1018 (1986). The more imaginative types of witness tampering as well as forms of tampering defying enumeration were still prohibited by the omnibus provision of § 1503. *United States v. Lester,* 749 F.2d 1288 (9th Cir. 1984).

It is unclear whether 18 U.S.C. § 1512(b)(3) was intended to widen the prohibition against obstructing investigations contained in former 18 U.S.C. § 1510 to include investigations that are not per se criminal in nature, such as an FAA investigation of an aircraft accident, or a Senate committee investigation of the trucking industry. A comparison of the difference in phraseology between 18 U.S.C. §§ 1510 and 1512(b)(3), however, indicates that those differences are differences of style, not substance, and that no such expansion was intended. Section 1510 proscribes interference with "the communication of information relating to a violation of any criminal statute of the United States . . ." to a (Federal) criminal investigator; 18 U.S.C. § 1512(b)(3) proscribes interference with "the communication to a (Federal) law enforcement officer . . . of information relating to the commission or possible commission of a Federal offense." There is nothing to indicate that Congress intended to depart from the generally accepted meaning of "law enforcement" as criminal law enforcement and of "offense" as criminal violation. *See* 18 U.S.C. § 1515(4); 128 Cong. Rec. H8203 (daily ed. Sept. 30,

EXHIBIT 18
Page 32 of 72

1982). Accordingly, prosecutions for interference with legislative or administrative investigations that have not taken on the character of a criminal investigation should be brought under the omnibus clause of 18 U.S.C. § 1505. *See* this Manual at 1726.

[cited in JM 9-69.100]

| ‹ 1728. Protection Of Government Processes -- Obstruction Of Federal Criminal Investigation -- 18 U.S.C. 1510 | up | 1730. Protection Of Government Processes -- "Official Proceeding" Requirement -- 18 U.S.C. 1512 › |
|---|---|---|

*Updated January 17, 2020*

EXHIBIT 18
Page 33 of 72

Phoenix - News - Valley Fever - Print Version

## Exhibit 1

# Sheriff Joe Arpaio's Favorite Law Firm, Ogletree Deakins, Cost Taxpayers $2.4 Million -- in Just Two Years

**By Sarah Fenske**
Published Wed., May 26 2010 at 8:00 AM



**L. Eric Dowell, rainmaker**

The battle for control of Maricopa County -- pitting Sheriff Joe Arpaio and County Attorney Andrew Thomas against the Board of Supervisors, judges, and county administrators -- has been costly to both taxpayers and the parties involved.

But it's been a major boon to one local law firm.

Ogletree Deakins, a relatively obscure firm specializing in employment law, became Arpaio and Thomas' go-to legal counsel just as the disputes were heating up. And, according to public records obtained by *New Times*, the firm has billed the county for a staggering $2.49 million since January 2009.

Most of the work had little to do with employment law -- and most of the firm's representation has been unsuccessful, legally speaking.

Ogletree Deakins has fought for the sheriff's right to take over the county's computer system. They tried to argue that the supervisors didn't have the right to sweep money from funds controlled by Thomas and Arpaio. They're currently pressing Arpaio's assertion that he shouldn't have to open his books to county auditors.

And, according to the billing records we looked at, it appears likely that Ogletree lawyers may have even been behind one of Arpaio/Thomas' biggest embarrassments: the criminal charges they filed against the county's presiding criminal court judge, Gary Donahoe.

As *New Times* first reported earlier this month, prosecutors filed criminal charges against Donahoe without bothering to seek a grand jury indictment. They simply filed a direct complaint, and attached a "probable cause" statement that, almost word for word, matched a complaint that the sheriff's office had filed with the Arizona Commission on Judicial Conduct one week before. That complaint, detailing a conspiracy theorist's view of Judge Donahoe's conduct, was signed by Arpaio's chief deputy, David Hendershott.

It now appears that Hendershott had some help penning the letter.

According to its billing statements, Ogletree charged the county $27,310 for something titled "MCSO State Bar/Judicial." The first two invoices with that notation were submitted on December 1, 2009 --

EXHIBIT 18
Page 34 of 72

just one day after Hendershott filed "his" complaint with the judicial conduct commission.

So did an employment law specialist draft the document that became the basis for the criminal charges against the county's presiding criminal court judge? If nothing else, it would explain why the document drew guffaws from seasoned prosecutors. Ogletree's lawyers were likely in way over their heads. (And really, what was prosecutor Lisa Aubuchon thinking, merely regurgitating Ogletree's letter as a criminal complaint?)

According to the billing statements examined by *New Times*, Ogletree also advised Andrew Thomas on matters involving the State Bar. (That cost the taxpayers $18,929). And, they advised either Arpaio or Thomas -- the billings aren't clear -- about issues relating to the selection of a new county attorney. (That cost us *another* $12,762.)

Finally, Ogletree billed the county a staggering $1.2 million for something described only as "contract compliance." County Spokeswoman Cari Gerchick told *New Times* that county administrators have no idea what that means.

We contacted L. Eric Dowell, a shareholder at Ogletree Deakins and the sheriff's lawyer of choice, to ask about the "contract compliance" payments, but we hadn't heard back by press time. We'll post an update if we get an answer.

In the mean time, looking at the wasted $2.4 million and the unexplained $1.2 million and the tens of thousands of dollars for failed legal adventures -- well, we never thought we'd say this, but we actually miss Dennis Wilenchik. Yes, *New Times* disagreed with Wilenchik on just about everything. But Wilenchik handled some pretty tough cases for Arpaio, not just political crap that should have never made its way to a docket.

And Wilenchik, unlike the sheriff's new $2-million-counsel, actually knew how to win.

2 7

blogs.phoenixnewtimes.com/valleyfever/2010/05/sheriff_joe_arpaios_favorite_labo?print=true

EXHIBIT 18
Page 35 of 72

March 17, 2020
Dear Ms. Rosenblum, Mr. Hasselman, Mr. Gardiner, Mr. Gutman, Ms. Nordyke
c.c.    Billy Williams, United States Attorney for Oregon –
        Mandatory Report of Ongoing Major Federal Felonies
        REVISED TO INCLUDE PROOF OF OSHA/SOX & OCC INVESTIGATIONS IN PROCESS

Earlier today I sent over the below, which I updated.  CRM 1729 et seq "gold standard" of witness tampering looks for a related federal investigation in process.  Enclosed is proof of a then-recently accepted OSHA/SOX investigation as well as an accepted Office of the Comptroller of the Currency investigation.  Ogletree Deakins was handling the case while I was still employed. It is "Labor Racketeering" with Ogletree Deakins using its client's workforces as a "chicken-ranching operation" They systematically created an expensive problem internally to justify endless later litigation by filing boilerplate District Court SLAPP suits against workers.  It is the fee-billing equivalent of fishing out of an aquarium using a Dupont Spinner.  They wanted to hide their national business model.

My complaint 6.20.cv.252.aa does a very good job of documenting actions against me and linking them to my employment at Wells Fargo.  But it could leave a reader wondering "what crimes could possibly have been committed so extreme that a group of people would be used to conceal it by committing a series of RICO crimes including the use of courts to obstruct justice?  What evidence could a lowest-level worker possibly have that proves any of it?"

As attorneys you are certain to know that a police report is a very special type of evidence.  Attached is a page from a Eugene, OR police report dated July 19, 2011.  It is Page 82 of the complaint.  It is from before all the RICO crimes against me (page 5 of complaint). It shows Wells Fargo corporate security agent Martin Ogno was aware I had filed reports with Federal Bureau-Investigation (FBI) in Eugene OR, therefore Wells Fargo was aware.  Most shocking, it captures Martin Ogno telling Eugene Police that he had contacted FBI and that FBI did not take my (just filed in-person and sworn-to well-evidenced, voluminous) reports seriously.  Think of that horrific violation of City of Eugene Police.

After that is a printout of Department of Justice publication "Criminal Resource Manual 1729".  It has a standard archive disclaimer but the content remains valid.  It clearly specifies that the act of reporting to a federal law enforcement agency such as FBI is what establishes the federal witness/informant status and relates it to 18 USC 1512 et seq.  Then comes proof of two accepted Federal investigations.  Stated as RICO: Repeated physical tampering and legal battery of a Federal Witness/Informant in a Banking Employment Case with purpose and/or effect being to conceal the crime from the FBI and oversight agencies.  Obstruction of justice via corruption of FBI processes and other public corruption.
Stated as Clayton/Sherman ATA (corporate entities):  Corporate entries Wells Fargo, Ogletree Deakins, and Oregon State Bar have a nationwide business model that permitted the RICO violations to occur and continue and they still do as evidenced by the pleadings to date in 6.20.cv.253.aa.  Labor racketeering by Ogletree Deakins.
.............
**Mr. Billy Williams, US Attorney for Oregon:**  This is a Crime Report.  In late 2013 Ken Jamison of FBI-Eugene spent an hour with me, declared suspicions existed, took it to Asst. US Atty. Chris Cardani who did not want to investigate and told me to sue instead.  They dumped barges of attorneys on me to hide the federal witness tampering in the court.  My complaint details likely fraud of NIBRS system.

Wells Fargo & Company (WFC) policy and training required me to report local sales system fraud and other major business issues in-person to local FBI due to perceived internal retaliation.  We were trained that such reports are essential to protect the Wells Fargo and Company corporate entity from possible effects of errors or fraud by its (human) workers and management.  The situation is aggravated by the fact my reports included details of sales system fraud including the 'bogus bank account scandal' which later became multi-billion dollar problems.  Wells Fargo and Company should be getting all that money back because if the attorneys caused and continued the problem and then "earned" money pretending to solve the problems.

Thank you from Andy Clark  3270 Stoney Ridge Rd. Eugene OR 97405 541.510.3915
see attached page from police report, CRM 1729, proof of investigation and evidence of
pattern/practice.

EXHIBIT 18
Page 36 of 72

4 of 4
11-11771

was Officer Pieske who was there with us during the contacts and told Clark that Officer Pieske concurred with my findings in the matters. I asked Clark if there was anything else I could do for him. Clark said there was nothing else I could do for him and he left city hall.

Also per Sergeant Klinko's request, I contacted Marty Ogno, head of security for Wells Fargo. I called Ogno and told him I had contacted Clark and that he had been advised he was trespassed from all Wells Fargo properties. I also told Ogno Clark was concerned he had $24,000 in an account at Wells Fargo. Ogno said he had looked it up and though Clark only had about $200 in an account, but that he would close Clark's account and mail him a check with the remaining balance. Ogno asked how the contact went. I told Ogno that Clark felt he was being retaliated upon for contacting the FBI and CIA with Wells Fargo's wrong doings. Ogno said that he had been in contact with the FBI and told me that the FBI did not take Clark's reports seriously.

>>>>>
FBI would
not say that.

Notice no
person at
FBI is
referenced.

At approximately 1900 hours, dispatch advised that Clark had left a phone number for me to call him back so he could further discuss his desire to press charges against Wells Fargo for filing a false police report. I requested Sergeant Magnuson respond to the report writing room where I was working on reports so I could discuss the situation with him before calling Clark back. While I was explaining the situation to Sergeant Magnuson, Dispatch advised that Clark had called back 3 more times requesting contact. I then asked Sergeant Magnuson if he would contact Clark in my behalf in that I was unable to effectively communicate to Clark that Wells Fargo had broken no laws and that they had the right to trespass Clark from their properties.

It is corruption
of FBI processes
and obstruction.

Reviewed by FTO:  **Pieske**        **112**
                        Name        Badge

BTW, I did
report to CIA via
nationwide fax#
and consulate
offices in
Bangalore and
Hyderabad India
due to concerns
related to
system
development
work on the
CORE/ELF
system I had to
use here that
was being badly
programmed in
India.

Esch
#623

07-19-11 2330 Hours                Approved By: Magnuson 122

Civil Case 6-20-cv-000253  Complaint Filed February 14, 2020 Clark vs. Wells Fargo et al    Page 82 of 131

EXHIBIT 18
Page 37 of 72

3/16/2020    1729. Protection Of Government Processes -- Tampering With Victims, Witnesses, Or Informants -- 18 U.S.C. 1512 | JM | Department of ...

 An official website of the United States government   Here's how you know

THE UNITED STATES
DEPARTMENT of JUSTICE   This is a archived page from the U.S. Department of Justice website. The information here may be outdated and links may no longer
ARCHIVES    function. Please contact webmaster@usdoj.gov if you have any questions about the archive site.

## 1729. PROTECTION OF GOVERNMENT PROCESSES -- TAMPERING WITH VICTIMS, WITNESSES, OR INFORMANTS -- 18 U.S.C. 1512

Section 1512 of Title 18 constitutes a broad prohibition against tampering with a witness, victim or informant. It proscribes conduct intended to illegitimately affect the presentation of evidence in Federal proceedings or the communication of information to Federal law enforcement officers. It applies to proceedings before Congress, executive departments, and administrative agencies, and to civil and criminal judicial proceedings, including grand jury proceedings. See 18 U.S.C. § 1515(a)(1). In addition, the section provides extraterritorial Federal jurisdiction over the offenses created therein. See 18 U.S.C. § 1512(g); 128 Cong. Rec. H8469 (daily ed. Oct. 1, 1980); H. R. Rep. No. 1369, 96th Cong., 2d Sess. 20-22 (1980).

The express prohibitions against tampering with witnesses and parties contained in former 18 U.S.C. §§ 1503 and 1505, are now in paragraphs (b)(1) and (2) of 18 U.S.C. § 1512. (As discussed in this Manual at 1724 and 1727, the omnibus clauses of these provisions still cover witnesses.) All forms of tampering with informants covered in former 18 U.S.C. § 1510, with the exception of tampering by means of bribery, are now proscribed by 18 U.S.C. § 1512(b)(3). Tampering with informants by means of bribery remains an 18 U.S.C. § 1510 offense.

Section 1512 augments the prohibitions of the former law in several important respects. First, section 1512(b)(3) sweeps more broadly than former 18 U.S.C. § 1510 and expands the class of informants protected by Federal law. For example, it protects individuals having information concerning a violation of a condition of probation, parole, or bail whether or not that violation constitutes a violation of any other Federal criminal statute. Second, it protects individuals seeking to provide information to Federal judges or Federal probation and pretrial services officers.

Section 1512 also includes attempts in its list of prohibited conduct. There is no requirement that the defendants actions have the intended obstructive effect. See, e.g., United States v. Murray, 751 F.2d 1528 (9th Cir.), cert. denied, 474 U.S. 979 (1985); United States v. Wilson, 796 F.2d 55 (4th Cir. 1986), cert. denied, 479 U.S. 1039 (1987). As amended by the Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. 99-646, it is clear that the killing of a witness or attempts to kill a witness in order to prevent his/her testimony constitutes an act of force intended to "influence the witness' testimony." See 18 U.S.C. § 1512(a). This change was necessitated by one court interpreting former § 1512 as not reaching an act of attempted murder that was intended to prevent a witness from testifying. See United States v. Dawlett, 787 F.2d 771 (1st Cir. 1986).

The section specifically abolishes the pending proceeding requirement of 18 U.S.C. §§ 1503 and 1505. The provision also eliminates ambiguity about the class of individuals protected. Although the former law protected witnesses, parties, and informants, it was unclear whether that law reached the intimidation of third parties (for example, the spouse of a witness) for the purpose of intimidating the principal party. Section § 1512 of Title 18 plainly covers such conduct, for it speaks of conduct directed toward "another person." See 128 Cong. Rec. H8203 (daily ed. Sept. 30, 1982).

Section 1512 protects potential as well as actual witnesses. With the addition of the words "any person," it is clear that a witness is "one who knew or was expected to know material facts and was expected to testify to them before pending judicial proceedings." United States v. DiSalvo, 631 F.Supp. 1398 (E.D. Pa. 1986), aff'd, 826 F.2d 1054 (3d Cir. 1987). Under § 1512, an individual retains his/her status as a witness even after testifying. United States v. Wilson, 796 F.2d 55 (4th Cir. 1986), cert. denied, 479 U.S. 1039 (1987) (protection of witness under § 1512 continues throughout the trial); United States v. Patton, 721 F.2d 159 (6th Cir. 1983) (witness retains status while defendant's motion for a new trial is pending); United States v. Chandler, 604 F.2d 972 (5th Cir. 1979) (witness retains status while case is pending on direct appeal). Cf. United States v. Risken, 788 F.2d 1361 (8th Cir.), cert. denied, 479 U.S. 923 (1986) (party was a witness after asserting his Fifth Amendment privilege and being dismissed from the stand since he could be recalled at any time).

Section 1512 of Title 18 contains two significant additions to the types of tampering barred by Federal law. First, it forbids "misleading conduct," as defined in 18 U.S.C. § 1515. Such conduct was not covered in those circuits that had narrowly construed the omnibus clauses of 18 U.S.C. §§ 1503 and 1505 under the rule of ejusdem generis. See United States v. Metcalf, 435 F.2d 754 (9th Cir. 1970); United States v. Essex, 407 F.2d 214 (6th Cir. 1969). see generally, 128 Cong. Rec. H8203 (daily ed. Sept. 30, 1982). Second, 18 U.S.C. § 1512 makes intentional harassment a misdemeanor. This offense is intended to reach conduct less egregious than the corrupt, threatening or forceful conduct required for a violation of former 18 U.S.C. §§ 1503 and 1505. Harassing conduct has been defined as that intended to badger, disturb or pester. Wilson, supra.

Despite its coverage, section 1512 was not intended to reach all forms of witness tampering. Its coverage is limited to tampering accomplished by the specific means enumerated in the provision. United States v. King, 762 F.2d 232 (2d Cir. 1985), cert. denied, 475 U.S. 1018 (1986). The more imaginative types of witness tampering as well as forms of tampering defying enumeration were still prohibited by the omnibus provision of § 1503. United States v. Lester, 749 F.2d 1288 (9th Cir. 1984).

It is unclear whether 18 U.S.C. § 1512(b)(3) was intended to widen the prohibition against obstructing investigations contained in former 18 U.S.C. § 1510 to include investigations that are not per se criminal in nature, such as an FAA investigation of an aircraft accident, or a Senate committee investigation of the trucking industry. A comparison of the difference in phraseology between 18 U.S.C. §§ 1510 and 1512(b)(3), however, indicates that those differences are differences of style, not substance, and that no such expansion was intended. Section 1510 proscribes interference with "the communication of information relating to a violation of any criminal statute of the United States . . ." to a (Federal) criminal investigator; 18 U.S.C. § 1512(b)(3) proscribes interference with "the communication to a (Federal) law enforcement officer . . . of information relating to the commission or possible commission of a Federal offense." There is nothing to indicate that Congress intended to depart from the generally accepted meaning of "law enforcement" as criminal law enforcement and of "offense" as criminal violation. See 18 U.S.C. § 1515(4); 128 Cong. Rec. H8203 (daily ed. Sept. 30,

EXHIBIT 18
Page 38 of 72

3/16/2020    1729. Protection Of Government Processes -- Tampering With Victims, Witnesses, Or Informants -- 18 U.S.C. 1512 | JM | Department of …

1982). Accordingly, prosecutions for interference with legislative or administrative investigations that have not taken on the character of a criminal investigation should be brought under the omnibus clause of 18 U.S.C. § 1505. *See* this Manual at 1726.

[cited in JM 9-69.100]

| ‹ 1728. Protection Of Government Processes -- Obstruction Of Federal Criminal Investigation -- 18 U.S.C. 1510 | up | 1730. Protection Of Government Processes -- "Official Proceeding" Requirement -- 18 U.S.C. 1512 › |
| --- | --- | --- |

*Updated January 17, 2020*

EXHIBIT 18
Page 39 of 72

**U.S. DEPARTMENT OF LABOR**

Occupational Safety & Health Administration
1111 Third Avenue, Suite 715
Seattle, Washington 98101 - 3212



July 11, 2011

Mr. Andrew Clark
3270 Soney Ridge Road
Eugene, OR 97405

Re: Consumer Financial Protection Act of 2010 Complaint Dated June 19, 2011

Dear Mr. Clark:

This is to acknowledge receipt of your complaint of retaliation under the whistleblower provision of the Consumer Financial Protection Act of 2010, Section 1057 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, 12 U.S.C.A. § 5567 (or, CFPA), which you filed on June 19, 2011. Please be advised that OSHA's jurisdiction to investigate such complaints does not become effective until the "designated transfer date," pursuant to Sections 1058 and 1062 of the Dodd-Frank Act, which the Secretary of the Treasury has set as *July 21, 2011*. The relevant sections of the statute can be found at www.whistleblowers.gov.

Should you wish to re-file a written CFPA whistleblower complaint on or after July 21st, you may send us another letter with this request. However, in order for OSHA to initiate an investigation, you must provide information that you were retaliated against on or after July 21, 2011.

In your complaint letter, you also requested to file it under Section 806 of the Sarbanes-Oxley Act ("SOX"). Please note that we have docketed that portion of your complaint as a SOX complaint. The SOX complaint has been assigned to OSHA Investigator, Patricia Brown who can be reached at 206-553-5930, and your employer has been notified about it.

Thank-you for your cooperation.

Sincerely,

Vicky Coleman
Regional Supervisory Investigator

*[handwritten: RECOGNIZED RETALIATION NOT MAY 25 DOL-PORTLAND REPORT]*

**OSHA** Occupational
Safety and Health
Administration
www.osha.gov

*[handwritten: $29]*

*[handwritten: NO PAGE 3a WHOOPS GOT LOST AT PAGE 1]*

EXHIBIT 18
Page 40 of 72

3/17/2020    Xfinity Connect OCC Case _ 01640244 has been created_ Printout

do_not_reply@occ.treas.gov <do_not_reply@occ.treas.gov>    6/29/2011 6:01 AM

# OCC Case # 01640244 has been created.

To mir99@comcast.net

---

6/29/2011

Re: Case# 01640244

Dear Andrew Clark:

This is an automatically generated message. Please do not reply to this email. We are unable to respond to messages sent to this address.

Please keep a copy of this email for your records!

This email acknowledges receipt of your Online Consumer Complaint form.  Based upon your correspondence we have opened a case in the OCC's Customer Assistance Group (CAG).  Please make note of the case number listed above, and provide the number on any future correspondence or contact with our office.

We are reviewing the information you provided, and will contact the bank requesting a response to your issues.  In most instances, the bank will respond directly to you and copy us in writing.  Once you receive the bank's response, it is very important that you carefully review their summary and actions taken, if any.

If the bank has satisfactorily addressed your issues and/or concerns no further action on your part is required.  If however, the bank failed to address your issues and/or concerns or you disagree with their response, please contact the CAG in writing within 30 days of receipt of the bank's letter.  Please include in your reply the specific issues that the bank failed to address or, if applicable, the reasons you disagree with the bank's assessment.  Also, please include any additional documentation that supports your position.

The OCC examines national banks to ensure their safe and sound financial condition and ensures compliance with applicable banking laws, rules and regulations.  The CAG was established to assist customers who have questions or complaints involving national banks.  For additional information on the OCC and CAG please visit our internet site www.helpwithmybank.gov.

The CAG offers guidance, and assists consumers in resolving complaints about national banks and their subsidiaries. The CAG is not a consumer advocacy or bank advocacy group.  The OCC is an administrative agency and we do not have jurisdiction to resolve contractual and factual issues.  We do not have judicial authority and cannot award damages in excess of a bank's error.

While complaint processing times may vary, on average you should receive a written response from CAG within 60 days after we have a complete file.

If you would like to check the status of your case online, please click on the following link:
https://appsec.helpwithmybank.gov/olcc_form/checkstatus.aspx  or visit www.helpwithmybank.gov and click on the Check Case Status page.

Should you have questions, please contact this office at the number listed below.

Sincerely,

Customer Assistance Group
1-800-613-6743

This message contains confidential information and is intended solely for the use of the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by sending an email to helpwithmybank.faq@occ.treas.gov  if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

EXHIBIT 18
Page 41 of 72

10/18/13                                                    Phoenix - News - Valley Fever - Print Version

## Exhibit 1                                                                    {>

# Sheriff Joe Arpaio's Favorite Law Firm, Ogletree Deakins, Cost Taxpayers $2.4 Million -- in Just Two Years

**By Sarah Fenske**
Published Wed., May 26 2010 at 8:00 AM



**L. Eric Dowell,
rainmaker**

The battle for control of Maricopa County -- pitting Sheriff Joe Arpaio and County Attorney Andrew Thomas against the Board of Supervisors, judges, and county administrators -- has been costly to both taxpayers and the parties involved.

But it's been a major boon to one local law firm.

Ogletree Deakins, a relatively obscure firm specializing in employment law, became Arpaio and Thomas' go-to legal counsel just as the disputes were heating up. And, according to public records obtained by *New Times*, the firm has billed the county for a staggering $2.49 million since January 2009.

Most of the work had little to do with employment law -- and most of the firm's representation has been unsuccessful, legally speaking.

Ogletree Deakins has fought for the sheriff's right to take over the county's computer system. They tried to argue that the supervisors didn't have the right to sweep money from funds controlled by Thomas and Arpaio. They're currently pressing Arpaio's assertion that he shouldn't have to open his books to county auditors.

And, according to the billing records we looked at, it appears likely that Ogletree lawyers may have even been behind one of Arpaio/Thomas' biggest embarrassments: the criminal charges they filed against the county's presiding criminal court judge, Gary Donahoe.

As *New Times* first reported earlier this month, prosecutors filed criminal charges against Donahoe without bothering to seek a grand jury indictment. They simply filed a direct complaint, and attached a "probable cause" statement that, almost word for word, matched a complaint that the sheriff's office had filed with the Arizona Commission on Judicial Conduct one week before. That complaint, detailing a conspiracy theorist's view of Judge Donahoe's conduct, was signed by Arpaio's chief deputy, David Hendershott.

It now appears that Hendershott had some help penning the letter.                    2-4

According to its billing statements, Ogletree charged the county $27,310 for something titled "MCSO State Bar/Judicial." The first two invoices with that notation were submitted on December 1, 2009 --

EXHIBIT 18
Page 42 of 72

10/18/13                                                Phoenix - News - Valley Fever - Print Version

just one day after Hendershott filed "his" complaint with the judicial conduct commission.

So did an employment law specialist draft the document that became the basis for the criminal charges against the county's presiding criminal court judge? If nothing else, it would explain why the document drew guffaws from seasoned prosecutors. Ogletree's lawyers were likely in way over their heads. (And really, what was prosecutor Lisa Aubuchon thinking, merely regurgitating Ogletree's letter as a criminal complaint?)

According to the billing statements examined by *New Times*, Ogletree also advised Andrew Thomas on matters involving the State Bar. (That cost the taxpayers $18,929). And, they advised either Arpaio or Thomas -- the billings aren't clear -- about issues relating to the selection of a new county attorney. (That cost us *another* $12,762.)

Finally, Ogletree billed the county a staggering $1.2 million for something described only as "contract compliance." County Spokeswoman Cari Gerchick told *New Times* that county administrators have no idea what that means.

We contacted L. Eric Dowell, a shareholder at Ogletree Deakins and the sheriff's lawyer of choice, to ask about the "contract compliance" payments, but we hadn't heard back by press time. We'll post an update if we get an answer.

In the mean time, looking at the wasted $2.4 million and the unexplained $1.2 million and the tens of thousands of dollars for failed legal adventures -- well, we never thought we'd say this, but we actually miss Dennis Wilenchik. Yes, *New Times* disagreed with Wilenchik on just about everything. But Wilenchik handled some pretty tough cases for Arpaio, not just political crap that should have never made its way to a docket.

And Wilenchik, unlike the sheriff's new $2-million-counsel, actually knew how to win.

2 }

Civil Case 6-20-cv-000253  Complaint Filed February 14, 2020 Clark vs. Wells Fargo et al  Page 59 of 131

EXHIBIT 18
Page 43 of 72

March 17, 2020
Dear Ms. Rosenblum, Mr. Hasselman, Mr. Gardiner, Mr. Gutman, Ms. Nordyke
c.c.    Billy Williams, United States Attorney for Oregon –
        Mandatory Report of Ongoing Major Federal Felonies
        REVISED TO INCLUDE PROOF OF OSHA/SOX & OCC INVESTIGATIONS IN PROCESS

Earlier today I sent over the below, which I updated.   CRM 1729 et seq "gold standard" of witness tampering looks for a related federal investigation in process.  Enclosed is proof of a then-recently accepted OSHA/SOX investigation as well as an accepted Office of the Comptroller of the Currency investigation.   Ogletree Deakins was handling the case while I was still employed. It is "Labor Racketeering" with Ogletree Deakins using its client's workforces as a "chicken-ranching operation" They systematically created an expensive problem internally to justify endless later litigation by filing boilerplate District Court SLAPP suits against workers.  It is the fee-billing equivalent of fishing out of an aquarium using a Dupont Spinner.  They wanted to hide their national business model.

My complaint 6.20.cv.252.aa does a very good job of documenting actions against me and linking them to my employment at Wells Fargo.  But it could leave a reader wondering "what crimes could possibly have been committed so extreme that a group of people would be used to conceal it by committing a series of RICO crimes including the use of courts to obstruct justice?  What evidence could a lowest-level worker possibly have that proves any of it?"

As attorneys you are certain to know that a police report is a very special type of evidence.  Attached is a page from a Eugene, OR police report dated July 19, 2011.  It is Page 82 of the complaint.  It is from before all the RICO crimes against me (page 5 of complaint). It shows Wells Fargo corporate security agent Martin Ogno was aware I had filed reports with Federal Bureau-Investigation (FBI) in Eugene OR, therefore Wells Fargo was aware.  Most shocking, it captures Martin Ogno telling Eugene Police that he had contacted FBI and that FBI did not take my (just filed in-person and sworn-to well-evidenced, voluminous) reports seriously.   Think of that horrific violation of City of Eugene Police.

After that is a printout of Department of Justice publication "Criminal Resource Manual 1729".  It has a standard archive disclaimer but the content remains valid.  It clearly specifies that the act of reporting to a federal law enforcement agency such as FBI is what establishes the federal witness/informant status and relates it to 18 USC 1512 et seq.  Then comes proof of two accepted Federal investigations. Stated as RICO: Repeated physical tampering and legal battery of a Federal Witness/Informant in a Banking Employment Case with purpose and/or effect being to conceal the crime from the FBI and oversight agencies.  Obstruction of justice via corruption of FBI processes and other public corruption.
Stated as Clayton/Sherman ATA (corporate entities):  Corporate entries Wells Fargo, Ogletree Deakins, and Oregon State Bar have a nationwide business model that permited the RICO violations to occur and continue and they still do as evidenced by the pleadings to date in 6.20.cv.253.aa.  Labor racketeering by Ogletree Deakins.
………….
**Mr. Billy Williams, US Attorney for Oregon:**  This is a Crime Report.  In late 2013 Ken Jamison of FBI-Eugene spent an hour with me, declared suspicions existed, took it to Asst. US Atty. Chris Cardani who did not want to investigate and told me to sue instead.  They dumped barges of attorneys on me to hide the federal witness tampering in the court.  My complaint details likely fraud of NIBRS system.

Wells Fargo & Company (WFC) policy and training required me to report local sales system fraud and other major business issues in-person to local FBI due to perceived internal retaliation.  We were trained that such reports are essential to protect the Wells Fargo and Company corporate entity from possible effects of errors or fraud by its (human) workers and management.  The situation is aggravated by the fact my reports included details of sales system fraud including the 'bogus bank account scandal' which later became multi-billion dollar problems.  Wells Fargo and Company should be getting all that money back because if the attorneys caused and continued the problem and then "earned" money pretending to solve the problems.

Thank you from Andy Clark  3270 Stoney Ridge Rd. Eugene OR 97405 541.510.3915
see attached page from police report, CRM 1729, proof of investigation and evidence of pattern/practice.

EXHIBIT 18
Page 44 of 72

4 of 4
11-11771

was Officer Pieske who was there with us during the contacts and told Clark that Officer Pieske concurred with my findings in the matters. I asked Clark if there was anything else I could do for him. Clark said there was nothing else I could do for him and he left city hall.

Also per Sergeant Klinko's request, I contacted Marty Ogno, head of security for Wells Fargo. I called Ogno and told him I had contacted Clark and that he had been advised he was trespassed from all Wells Fargo properties. I also told Ogno Clark was concerned he had $24,000 in an account at Wells Fargo. Ogno said he had looked it up and though Clark only had about $200 in an account, but that he would close Clark's account and mail him a check with the remaining balance. Ogno asked how the contact went. I told Ogno that Clark felt he was being retaliated upon for contacting the FBI and CIA with Wells Fargo's wrong doings. Ogno said that he had been in contact with the FBI and told me that the FBI did not take Clark's reports seriously.

>>>>>
FBI would
not say that.

Notice no
person at
FBI is
referenced.

At approximately 1900 hours, dispatch advised that Clark had left a phone number for me to call him back so he could further discuss his desire to press charges against Wells Fargo for filing a false police report. I requested Sergeant Magnuson respond to the report writing room where I was working on reports so I could discuss the situation with him before calling Clark back. While I was explaining the situation to Sergeant Magnuson, Dispatch advised that Clark had called back 3 more times requesting contact. I then asked Sergeant Magnuson if he would contact Clark in my behalf in that I was unable to effectively communicate to Clark that Wells Fargo had broken no laws and that they had the right to trespass Clark from their properties.

It is corruption
of FBI processes
and obstruction.

Reviewed by FTO:    **Pieske**            **112**
                      Name              Badge

BTW, I did
report to CIA via
nationwide fax#
and consulate
offices in
Bangalore and
Hyderabad India
due to concerns
related to
system
development
work on the
CORE/ELF
system I had to
use here that
was being badly
programmed in
India.

Esch
#623

07-19-11 2330 Hours                    Approved By: Magnuson 122

Civil Case 6-20-cv-000253  Complaint Filed February 14, 2020 Clark vs. Wells Fargo et al    Page 82 of 131

EXHIBIT 18
Page 45 of 72

Case 6:20-cv-00253-AA    Document 64-1    Filed 04/09/20    Page 278 of 330

To: Christopher Mixon Ogletree- Nashville    Page 3 of 8    2020-03-18 04:09:01 (GMT)    12023305326 From: Andrew Clark

3/16/2020    1729. Protection Of Government Processes -- Tampering With Victims, Witnesses, Or Informants -- 18 U.S.C. 1512 | JM | Department of ...



An official website of the United States government  Here's how you know

THE UNITED STATES
DEPARTMENT of JUSTICE  This is an archived page from the U.S. Department of Justice website. The information here may be outdated and links may no longer
ARCHIVES  function. Please contact webmaster@usdoj.gov if you have any questions about the archive site.

## 1729. PROTECTION OF GOVERNMENT PROCESSES -- TAMPERING WITH VICTIMS, WITNESSES, OR INFORMANTS -- 18 U.S.C. 1512

Section 1512 of Title 18 constitutes a broad prohibition against tampering with a witness, victim or informant. It proscribes conduct intended to illegitimately affect the presentation of evidence in Federal proceedings or the communication of information to Federal law enforcement officers. It applies to proceedings before Congress, executive departments, and administrative agencies, and to civil and criminal judicial proceedings, including grand jury proceedings. See 18 U.S.C. § 1515(a)(1). In addition, the section provides extraterritorial Federal jurisdiction over the offenses created therein. See 18 U.S.C. § 1512(g); 128 Cong. Rec. H8469 (daily ed. Oct. 1, 1980); H. R. Rep. No. 1369, 96th Cong., 2d Sess. 20-22 (1980).

The express prohibitions against tampering with witnesses and parties contained in former 18 U.S.C. §§ 1503 and 1505, are now in paragraphs (b)(1) and (2) of 18 U.S.C. § 1512. (As discussed in the Manual at 1724 and 1727, the omnibus clauses of these provisions still cover witnesses.) All forms of tampering with informants covered in former 18 U.S.C. § 1510, with the exception of tampering by means of bribery, are now proscribed by 18 U.S.C. § 1512(b)(3). Tampering with informants by means of bribery remains an 18 U.S.C. § 1510 offense.

Section 1512 augments the prohibitions of the former law in several important respects. First, section 1512(b)(3) sweeps more broadly than former 18 U.S.C. § 1510 and expands the class of informants protected by Federal law. For example, it protects individuals having information concerning a violation of a condition of probation, parole, or bail whether or not that violation constitutes a violation of any other Federal criminal statute. Second, it protects individuals seeking to provide information to Federal judges or Federal probation and pretrial services officers.

Section 1512 also includes attempts in its list of prohibited conduct. There is no requirement that the defendants actions have the intended obstructive effect. See, e.g., United States v. Murray, 751 F.2d 1528 (9th Cir.), cert. denied, 474 U.S. 979 (1985); United States v. Wilson, 796 F.2d 55 (4th Cir. 1986), cert. denied, 479 U.S. 1039 (1987). As amended by the Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. 99-646, it is clear that the killing of a witness or attempts to kill a witness in order to prevent his/her testimony constitutes an act of force intended to "influence the witness' testimony." See 18 U.S.C. § 1512(a). This change was necessitated by one court interpreting former § 1512 as not reaching an act of attempted murder that was intended to prevent a witness from testifying. See United States v. Dawlett, 787 F.2d 771 (1st Cir. 1986).

The section specifically abolishes the pending proceeding requirement of 18 U.S.C. §§ 1503 and 1505. The provision also eliminates ambiguity about the class of individuals protected. Although the former law protected witnesses, parties, and informants, it was unclear whether that law reached the intimidation of third parties (for example, the spouse of a witness) for the purpose of intimidating the principal party. Section § 1512 of Title 18 plainly covers such conduct, for it speaks of conduct directed toward "another person." See 128 Cong. Rec. H8203 (daily ed. Sept. 30, 1982).

Section 1512 protects potential as well as actual witnesses. With the addition of the words "any person," it is clear that a witness is "one who knew or was expected to know material facts and was expected to testify to them before pending judicial proceedings." United States v. DiSalvo, 631 F.Supp. 1398 (E.D. Pa. 1986), aff'd, 826 F.2d 1054 (3d Cir. 1987). Under § 1512, an individual retains his/her status as a witness even after testifying. United States v. Wilson, 796 F.2d 55 (4th Cir. 1986), cert. denied, 479 U.S. 1039 (1987) (protection of witness under § 1512 continues throughout the trial); United States v. Patton, 721 F.2d 159 (6th Cir. 1983) (witness retains status while defendant's motion for a new trial is pending); United States v. Chandler, 604 F.2d 972 (5th Cir. 1979) (witness retains status while case is pending on direct appeal). Cf. United States v. Risken, 788 F.2d 1361 (8th Cir.), cert. denied, 479 U.S. 923 (1986) (party was a witness after asserting his Fifth Amendment privilege and being dismissed from the stand since he could be recalled at any time).

Section 1512 of Title 18 contains two significant additions to the types of tampering barred by Federal law. First, it forbids "misleading conduct," as defined in 18 U.S.C. § 1515. Such conduct was not covered in those circuits that had narrowly construed the omnibus clauses of 18 U.S.C. §§ 1503 and 1505 under the rule of ejusdem generis. See United States v. Metcalf, 435 F.2d 754 (9th Cir. 1970); United States v. Essex, 407 F.2d 214 (6th Cir. 1969). see generally, 128 Cong. Rec. H8203 (daily ed. Sept. 30, 1982). Second, 18 U.S.C. § 1512 makes intentional harassment a misdemeanor. This offense is meant to reach conduct less egregious than the corrupt, threatening or forceful conduct required for a violation of former 18 U.S.C. §§ 1503 and 1505. Harassing conduct has been defined as that intended to badger, disturb or pester. Wilson, supra.

Despite its coverage, section 1512 was not intended to reach all forms of witness tampering. Its coverage is limited to tampering accomplished by the specific means enumerated in the provision. United States v. King, 762 F.2d 232 (2d Cir. 1985), cert. denied, 475 U.S. 1018 (1986). The more imaginative types of witness tampering as well as forms of tampering defying enumeration were still prohibited by the omnibus provision of § 1503. United States v. Lester, 749 F.2d 1288 (9th Cir. 1984).

It is unclear whether 18 U.S.C. § 1512(b)(3) was intended to widen the prohibition against obstructing investigations contained in former 18 U.S.C. § 1510 to include investigations that are not per se criminal in nature, such as an FAA investigation of an aircraft accident, or a Senate committee investigation of the trucking industry. A comparison of the difference in phraseology between 18 U.S.C. §§ 1510 and 1512(b)(3), however, indicates that those differences are differences of style, not substance, and that no such expansion was intended. Section 1510 proscribes interference with "the communication of information relating to a violation of any criminal statute of the United States . . ." to a (Federal) criminal investigator; 18 U.S.C. § 1512(b)(3) proscribes interference with "the communication to a (Federal) law enforcement officer . . . of information relating to the commission or possible commission of a Federal offense." There is nothing to indicate that Congress intended to depart from the generally accepted meaning of "law enforcement" as criminal law enforcement and of "offense" as criminal violation. See 18 U.S.C. § 1515(4); 128 Cong. Rec. H8203 (daily ed. Sept. 30,

EXHIBIT 18
Page 46 of 72

3/16/2020        1729. Protection Of Government Processes -- Tampering With Victims, Witnesses, Or Informants -- 18 U.S.C. 1512 | JM | Department of …

1982). Accordingly, prosecutions for interference with legislative or administrative investigations that have not taken on the character of a criminal investigation should be brought under the omnibus clause of 18 U.S.C. § 1505. *See* this Manual at 1726.

[cited in JM 9-69.100]

| ‹ 1728. Protection Of Government Processes -- Obstruction Of Federal Criminal Investigation -- 18 U.S.C. 1510 | up | 1730. Protection Of Government Processes -- "Official Proceeding" Requirement -- 18 U.S.C. 1512 › |
|---|---|---|

*Updated January 17, 2020*

EXHIBIT 18
Page 47 of 72

**U.S. DEPARTMENT OF LABOR**     Occupational Safety & Health Administration
1111 Third Avenue, Suite 715
Seattle, Washington 98101 - 3212



July 11, 2011

Mr. Andrew Clark
3270 Soney Ridge Road
Eugene, OR 97405

Re: Consumer Financial Protection Act of 2010 Complaint Dated June 19, 2011

Dear Mr. Clark:

This is to acknowledge receipt of your complaint of retaliation under the whistleblower provision of the Consumer Financial Protection Act of 2010, Section 1057 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, 12 U.S.C.A. § 5567 (or, CFPA), which you filed on June 19, 2011. Please be advised that OSHA's jurisdiction to investigate such complaints does not become effective until the "designated transfer date," pursuant to Sections 1058 and 1062 of the Dodd-Frank Act, which the Secretary of the Treasury has set as *July 21, 2011*. The relevant sections of the statute can be found at www.whistleblowers.gov.

Should you wish to re-file a written CFPA whistleblower complaint on or after July 21st, you may send us another letter with this request. However, in order for OSHA to initiate an investigation, you must provide information that you were retaliated against on or after July 21, 2011.

In your complaint letter, you also requested to file it under Section 806 of the Sarbanes-Oxley Act ("SOX"). Please note that we have docketed that portion of your complaint as a SOX complaint. The SOX complaint has been assigned to OSHA Investigator, Patricia Brown who can be reached at 206-553-5930, and your employer has been notified about it.

Thank-you for your cooperation.

Sincerely,

*Vicky Coleman*
Vicky Coleman
Regional Supervisory Investigator

*RECOGNIZED*
*RETALIATION*
*NOT MAY 25 DOL-*
*PORTLAND*

*REPORT*

**OSHA**  Occupational
Safety and Health
Administration
www.osha.gov

*NO PAGE  3a*

$29

*WHOOPS GOT*
*LOST APRIL*

EXHIBIT 18
Page 48 of 72

3/17/2020                          Xfinity Connect OCC Case _ 01640244 has been created_ Printout

do_not_reply@occ.treas.gov <do_not_reply@occ.treas.gov>                          6/29/2011 6:01 AM

# OCC Case # 01640244 has been created.

To mir99@comcast.net

------------------------------------------------------------------------------------------------

6/29/2011

Re: Case# 01640244

Dear Andrew Clark:

This is an automatically generated message. Please do not reply to this email. We are unable to respond to messages sent to this address.

Please keep a copy of this email for your records!

This email acknowledges receipt of your Online Consumer Complaint form.  Based upon your correspondence we have opened a case in the OCC's Customer Assistance Group (CAG).  Please make note of the case number listed above, and provide the number on any future correspondence or contact with our office.

We are reviewing the information you provided, and will contact the bank requesting a response to your issues.  In most instances, the bank will respond directly to you and copy us in writing. Once you receive the bank's response, it is very important that you carefully review their summary and actions taken, if any.

If the bank has satisfactorily addressed your issues and/or concerns no further action on your part is required.  If however, the bank failed to address your issues and/or concerns or you disagree with their response, please contact the CAG in writing within 30 days of receipt of the bank's letter.  Please include in your reply the specific issues that the bank failed to address or, if applicable, the reasons you disagree with the bank's assessment.  Also, please include any additional documentation that supports your position.

The OCC examines national banks to ensure their safe and sound financial condition and ensures compliance with applicable banking laws, rules and regulations.  The CAG was established to assist customers who have questions or complaints involving national banks.  For additional information on the OCC and CAG please visit our internet site www.helpwithmybank.gov.

The CAG offers guidance, and assists consumers in resolving complaints about national banks and their subsidiaries. The CAG is not a consumer advocacy or bank advocacy group.  The OCC is an administrative agency and we do not have jurisdiction to resolve contractual and factual issues.  We do not have judicial authority and cannot award damages in excess of a bank's error.

While complaint processing times may vary, on average you should receive a written response from CAG within 60 days after we have a complete file.

If you would like to check the status of your case online, please click on the following link: https://appsec.helpwithmybank.gov/olcc_form/checkstatus.aspx  or visit www.helpwithmybank.gov and click on the Check Case Status page.

Should you have questions, please contact this office at the number listed below.

Sincerely,

Customer Assistance Group
1-800-613-6743

This message contains confidential information and is intended solely for the use of the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by sending an email to helpwithmybank.faq@occ.treas.gov  if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

EXHIBIT 18
Page 49 of 72

10/18/13    Phoenix - News - Valley Fever - Print Version

## Exhibit 1

# Sheriff Joe Arpaio's Favorite Law Firm, Ogletree Deakins, Cost Taxpayers $2.4 Million -- in Just Two Years

**By Sarah Fenske**
Published Wed., May 26 2010 at 8:00 AM



**L. Eric Dowell, rainmaker**

The battle for control of Maricopa County -- pitting Sheriff Joe Arpaio and County Attorney Andrew Thomas against the Board of Supervisors, judges, and county administrators -- has been costly to both taxpayers and the parties involved.

But it's been a major boon to one local law firm.

Ogletree Deakins, a relatively obscure firm specializing in employment law, became Arpaio and Thomas' go-to legal counsel just as the disputes were heating up. And, according to public records obtained by *New Times*, the firm has billed the county for a staggering $2.49 million since January 2009.

Most of the work had little to do with employment law -- and most of the firm's representation has been unsuccessful, legally speaking.

Ogletree Deakins has fought for the sheriff's right to take over the county's computer system. They tried to argue that the supervisors didn't have the right to sweep money from funds controlled by Thomas and Arpaio. They're currently pressing Arpaio's assertion that he shouldn't have to open his books to county auditors.

And, according to the billing records we looked at, it appears likely that Ogletree lawyers may have even been behind one of Arpaio/Thomas' biggest embarassments: the criminal charges they filed against the county's presiding criminal court judge, Gary Donahoe.

As *New Times* first reported earlier this month, prosecutors filed criminal charges against Donahoe without bothering to seek a grand jury indictment. They simply filed a direct complaint, and attached a "probable cause" statement that, almost word for word, matched a complaint that the sheriff's office had filed with the Arizona Commission on Judicial Conduct one week before. That complaint, detailing a conspiracy theorist's view of Judge Donahoe's conduct, was signed by Arpaio's chief deputy, David Hendershott.

It now appears that Hendershott had some help penning the letter.

According to its billing statements, Ogletree charged the county $27,310 for something titled "MCSO State Bar/Judicial." The first two invoices with that notation were submitted on December 1, 2009 --

EXHIBIT 18
Page 50 of 72

just one day after Hendershott filed "his" complaint with the judicial conduct commission.

So did an employment law specialist draft the document that became the basis for the criminal charges against the county's presiding criminal court judge? If nothing else, it would explain why the document drew guffaws from seasoned prosecutors. Ogletree's lawyers were likely in way over their heads. (And really, what was prosecutor Lisa Aubuchon thinking, merely regurgitating Ogletree's letter as a criminal complaint?)

According to the billing statements examined by *New Times*, Ogletree also advised Andrew Thomas on matters involving the State Bar. (That cost the taxpayers $18,929). And, they advised either Arpaio or Thomas -- the billings aren't clear -- about issues relating to the selection of a new county attorney. (That cost us *another* $12,762.)

Finally, Ogletree billed the county a staggering $1.2 million for something described only as "contract compliance." County Spokeswoman Cari Gerchick told *New Times* that county administrators have no idea what that means.

We contacted L. Eric Dowell, a shareholder at Ogletree Deakins and the sheriff's lawyer of choice, to ask about the "contract compliance" payments, but we hadn't heard back by press time. We'll post an update if we get an answer.

In the mean time, looking at the wasted $2.4 million and the unexplained $1.2 million and the tens of thousands of dollars for failed legal adventures -- well, we never thought we'd say this, but we actually miss Dennis Wilenchik. Yes, *New Times* disagreed with Wilenchik on just about everything. But Wilenchik handled some pretty tough cases for Arpaio, not just political crap that should have never made its way to a docket.

And Wilenchik, unlike the sheriff's new $2-million-counsel, actually knew how to win.

27

EXHIBIT 18
Page 51 of 72

March 18, 2020
Billy Williams, United States Attorney for Oregon
1000 SW 3rd Ave Ste 600  Portland OR  97204
c/o Eugene OR Office in Wayne Morse Courthouse

David P.R. Symes   Littler Portland:
Are you ducking service?  This is what
you and Leah Lively did. You cannot
possibly deny it. Stop lying, stop
ducking service. Did you think you
would get away with it?

## FEDERAL MAJOR VIOLENT CRIME REPORT
Repeated,  Physical Tampering of a Federal Witness in Active
Department of Labor **and** Office of Comptroller of Currency Investigations.
Obstruction of Justice via Rampant Public Corruption Including Hobbs Act Violations.
Novel Crimes:  Deliberate, Knowing Use of Family Courts as a Means of Tampering,
Fraudulent and Coordinated Use of Local, State, and Federal Justice Systems to Obstruct.

My civil complaint 6.20.cv.253.aa does a very good job of documenting actions against me and linking them to my employment at Wells Fargo.  But unless it is read carefully, it could leave a reader wondering "what crimes could possibly have been committed so extreme that a group of people would be used to conceal it by committing a series of RICO crimes including the use of courts to obstruct justice?  What evidence could a lowest-level worker possibly have of it?"

1.  A police report is a very special and perfect type of evidence. Attached is a page from a Eugene, OR police report dated July 19, 2011.  It is Page 82 of the civil complaint.  It is from before all the RICO crimes were committed against me. It shows Wells Fargo corporate security agent Martin Ogno was aware I had filed reports with Federal Bureau-Investigation (FBI) in Eugene OR, therefore Wells Fargo was aware.  Most shocking: Eugene Police told Ogno I considered his "well-being visit at my home at night by uniformed SWAT police" to be retaliation.  Ogno told Eugene Police to 'fuhggedaboutit' and explains he had contacted FBI and that FBI did not take my (just filed in-person and sworn-to well-evidenced, voluminous) reports seriously.   <u>Think of that horrific violation of City of Eugene Police.</u>

2.  After that is a printout of Department of Justice publication "Criminal Resource Manual 1729".  It has a standard archive disclaimer but the content is valid,  last updated January 2020.  A person who reports to a federal law enforcement agency such as FBI is a Federal Witness.  Tampering with a Federal Witness is a violation of 18 USC 1512, particularly when Federal investigations are in process.

3.  Two different Federal Investigations were in process.  Next exhibits are proof from Department of Labor and Office of Comptroller of Currency of recently accepted Federal investigations.  The PACER system records for SLAPP-suit 6.11.cv.06248.ho and my subsequent civil actions show exactly how the courts were used to bypass discovery of the above crimes.

4.  My civil complaint enumerates and documents the RICO crimes committed against me.  Please note that I presented Tampering using false arrest and jail as violations of 18 USC 1201 by Wells Fargo/Ogletree Deakins:, armed kidnapping for political or economic motivations.  Use of police to tamper with a Federal Witness is absolutely gangland.  It is as bad it gets, other than the novel crimes listed above and detailed in the civil complaint.

5.  Related but not relevant to the crime report: I motioned for Wells Fargo and Company to intervene. It is in PACER.  It is possible that everything that happened was actually a Wells Fargo & Co. project. A metaphor for that is found on www.TheEugeneBlairProject.com.  I placed the Circuit Court and Police a/v on www.RisePatriot.com and www.WellsFargoWitz.com (family court).

Thank you from Andy Clark 3270 Stoney Ridge Rd. Eugene OR 97405 541.510.3915 (exhibits follow)

EXHIBIT 18
Page 52 of 72

4 of 4
11-11771

was Officer Pieske who was there with us during the contacts and told Clark that Officer Pieske concurred with my findings in the matters. I asked Clark if there was anything else I could do for him. Clark said there was nothing else I could do for him and he left city hall.

Also per Sergeant Klinko's request, I contacted Marty Ogno, head of security for Wells Fargo. I called Ogno and told him I had contacted Clark and that he had been advised he was trespassed from all Wells Fargo properties. I also told Ogno Clark was concerned he had $24,000 in an account at Wells Fargo. Ogno said he had looked it up and though Clark only had about $200 in an account, but that he would close Clark's account and mail him a check with the remaining balance. Ogno asked how the contact went. I told Ogno that Clark felt he was being retaliated upon for contacting the FBI and CIA with Wells Fargo's wrong doings. Ogno said that he had been in contact with the FBI and told me that the FBI did not take Clark's reports seriously.

**>>>>>**
**FBI would not say that.**

At approximately 1900 hours, dispatch advised that Clark had left a phone number for me to call him back so he could further discuss his desire to press charges against Wells Fargo for filing a false police report. I requested Sergeant Magnuson respond to the report writing room where I was working on reports so I could discuss the situation with him before calling Clark back. While I was explaining the situation to Sergeant Magnuson, Dispatch advised that Clark had called back 3 more times requesting contact. I then asked Sergeant Magnuson if he would contact Clark in my behalf in that I was unable to effectively communicate to Clark that Wells Fargo had broken no laws and that they had the right to trespass Clark from their properties.

**Notice no person at FBI is referenced.**

**It is corruption of FBI processes and obstruction.**

Reviewed by FTO:  **Pieske**          **112**
                          Name          Badge

**BTW, I did report to CIA via nationwide fax# and consulate offices in Bangalore and Hyderabad India due to concerns related to system development work on the CORE/ELF system I had to use here that was being badly programmed in India.**

Isch
#623

07-19-11 2330 Hours                    Approved By: Magnuson 122

Civil Case 6-20-cv-000253  Complaint Filed February 14, 2020 Clark vs. Wells Fargo et al    Page 82 of 131

EXHIBIT 18
Page 53 of 72

Case 6:20-cv-00253-AA    Document 64-1    Filed 04/09/20    Page 286 of 330

To: fax    Page 3 of 8                    2020-03-23 18:50:43 (GMT)                    12023305326 From: Andrew Clark

3/16/2020        1729. Protection Of Government Processes -- Tampering With Victims, Witnesses, Or Informants -- 18 U.S.C. 1512 | JM | Department of …

 An official website of the United States government  Here's how you know

THE UNITED STATES
DEPARTMENT of JUSTICE
This is archived content from the U.S. Department of Justice website. The information here may be outdated and links may no longer function. Please contact webmaster@usdoj.gov if you have any questions about the archive site.

## 1729. PROTECTION OF GOVERNMENT PROCESSES -- TAMPERING WITH VICTIMS, WITNESSES, OR INFORMANTS -- 18 U.S.C. 1512

Section 1512 of Title 18 constitutes a broad prohibition against tampering with a witness, victim or informant. It proscribes conduct intended to illegitimately affect the presentation of evidence in Federal proceedings or the communication of information to Federal law enforcement officers. It applies to proceedings before Congress, executive departments, and administrative agencies, and to civil and criminal judicial proceedings, including grand jury proceedings. *See* 18 U.S.C. § 1515(a)(1). In addition, the section provides extraterritorial Federal jurisdiction over the offenses created therein. *See* 18 U.S.C. § 1512(g); 128 Cong. Rec. H8469 (daily ed. Oct. 1, 1980); H. R. Rep. Nr. 1369, 96th Cong., 2d Sess. 20-22 (1980).

The express prohibitions against tampering with witnesses and parties contained in former 18 U.S.C. §§ 1503 and 1505, are now in paragraphs (b)(1) and (2) of 18 U.S.C. § 1512. (As discussed in this Manual at 1724 and 1727, the omnibus clauses of these provisions still cover witnesses.) All forms of tampering with informants covered in former 18 U.S.C. § 1510, with the exception of tampering by means of bribery, are now proscribed by 18 U.S.C. § 1512(b)(3). Tampering with informants by means of bribery remains an 18 U.S.C. § 1510 offense.

Section 1512 augments the prohibitions of the former law in several important respects. First, section 1512(b)(3) sweeps more broadly than former 18 U.S.C. § 1510 and expands the class of informants protected by Federal law. For example, it protects individuals having information concerning a violation of a condition of probation, parole, or bail whether or not that violation constitutes a violation of any other Federal criminal statute. Second, it protects individuals seeking to provide information to Federal judges or Federal probation and pretrial services officers.

Section 1512 also includes attempts in its list of prohibited conduct. There is no requirement that the defendants actions have the intended obstructive effect. *See, e.g., United States v. Murray,* 751 F.2d 1528 (9th Cir.), *cert. denied,* 474 U.S. 979 (1985); *United States v. Wilson,* 796 F.2d 55 (4th Cir. 1986), *cert. denied,* 479 U.S. 1039 (1987). As amended by the Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. 99-646, it is clear that the killing of a witness or attempts to kill a witness in order to prevent his/her testimony constitutes an act of force intended to "influence the witness' testimony." *See* 18 U.S.C. § 1512(a). This change was necessitated by one court interpreting former § 1512 as not reaching an act of attempted murder that was intended to prevent a witness from testifying. *See United States v. Dawlett,* 787 F.2d 771 (1st Cir. 1986).

The section specifically abolishes the pending proceeding requirement of 18 U.S.C. §§ 1503 and 1505. The provision also eliminates ambiguity about the class of individuals protected. Although the former law protected witnesses, parties, and informants, it was unclear whether that law reached the intimidation of third parties (for example, the spouse of a witness) for the purpose of intimidating the principal party. Section § 1512 of Title 18 plainly covers such conduct, for it speaks of conduct directed toward "another person." *See* 128 Cong. Rec. H8203 (daily ed. Sept. 30, 1982).

Section 1512 protects potential as well as actual witnesses. With the addition of the words "any person," it is clear that a witness is "one who knew or was expected to know material facts and was expected to testify to them before pending judicial proceedings." *United States v. DiSalvo,* 631 F.Supp. 1398 (E.D. Pa. 1986), *aff'd,* 826 F.2d 1054 (3d Cir. 1987). Under § 1512, an individual retains his/her status as a witness even after testifying. *United States v. Wilson,* 796 F.2d 55 (4th Cir. 1986), *cert. denied,* 479 U.S. 1039 (1987) (protection of witness under § 1512 continues throughout the trial); *United States v. Patton,* 721 F.2d 159 (6th Cir. 1983) (witness retains status while defendant's motion for a new trial is pending); *United States v. Chandler,* 604 F.2d 972 (5th Cir. 1979) (witness retains status while case is pending on direct appeal). *Cf. United States v. Risken,* 788 F.2d 1361 (8th Cir.), *cert. denied,* 479 U.S. 923 (1986) (party was a witness after asserting his Fifth Amendment privilege and being dismissed from the stand since he could be recalled at any time).

Section 1512 of Title 18 contains two significant additions to the types of tampering barred by Federal law. First, it forbids "misleading conduct," as defined in 18 U.S.C. § 1515. Such conduct was not covered in those circuits that had narrowly construed the omnibus clauses of 18 U.S.C. §§ 1503 and 1505 under the rule of ejusdem generis. *See United States v. Metcalf,* 435 F.2d 754 (9th Cir. 1970); *United States v. Essex,* 407 F.2d 214 (6th Cir. 1969). *see generally,* 128 Cong. Rec. H8203 (daily ed. Sept. 30, 1982). Second, 18 U.S.C. § 1512 makes intentional harassment a misdemeanor. This offense is intended to reach conduct less egregious than the corrupt, threatening or forceful conduct required for a violation of former 18 U.S.C. §§ 1503 and 1505. Harassing conduct has been defined as that intended to badger, disturb or pester. *Wilson, supra.*

Despite its coverage, section 1512 was not intended to reach all forms of witness tampering. Its coverage is limited to tampering accomplished by the specific means enumerated in the provision. *United States v. King,* 762 F.2d 232 (2d Cir. 1985), *cert. denied,* 475 U.S. 1018 (1986). The more imaginative types of witness tampering as well as forms of tampering defying enumeration were still prohibited by the omnibus provision of § 1503. *United States v. Lester,* 749 F.2d 1288 (9th Cir. 1984).

It is unclear whether 18 U.S.C. § 1512(b)(3) was intended to widen the prohibition against obstructing investigations contained in former 18 U.S.C. § 1510 to include investigations that are not per se criminal in nature, such as an FAA investigation of an aircraft accident, or a Senate committee investigation of the trucking industry. A comparison of the difference in phraseology between 18 U.S.C. §§ 1510 and 1512(b)(3), however, indicates that those differences are differences of style, not substance, and that no such expansion was intended. Section 1510 proscribes interference with "the communication of information relating to a violation of any criminal statute of the United States . . ." to a (Federal) criminal investigator; 18 U.S.C. § 1512(b)(3) proscribes interference with "the communication to a (Federal) law enforcement officer . . . of information relating to the commission or possible commission of a Federal offense." There is nothing to indicate that Congress intended to depart from the generally accepted meaning of "law enforcement" as criminal law enforcement and of "offense" as criminal violation. *See* 18 U.S.C. § 1515(4); 128 Cong. Rec. H8203 (daily ed. Sept. 30,

EXHIBIT 18
Page 54 of 72

3/16/2020        1729. Protection Of Government Processes -- Tampering With Victims, Witnesses, Or Informants -- 18 U.S.C. 1512 | JM | Department of ...

1982). Accordingly, prosecutions for interference with legislative or administrative investigations that have not taken on the character of a criminal investigation should be brought under the omnibus clause of 18 U.S.C. § 1505. *See* this Manual at 1726.

[cited in JM 9-69.100]

| ‹ 1728. Protection Of Government Processes -- Obstruction Of Federal Criminal Investigation -- 18 U.S.C. 1510 | up | 1730. Protection Of Government Processes -- "Official Proceeding" Requirement -- 18 U.S.C. 1512 › |
|---|---|---|

*Updated January 17, 2020*

EXHIBIT 18
Page 55 of 72

**U.S. DEPARTMENT OF LABOR**      Occupational Safety & Health Administration
                                 1111 Third Avenue, Suite 715
                                 Seattle, Washington 98101 - 3212



July 11, 2011

Mr. Andrew Clark
3270 Soney Ridge Road
Eugene, OR 97405

Re: Consumer Financial Protection Act of 2010 Complaint Dated June 19, 2011

Dear Mr. Clark:

This is to acknowledge receipt of your complaint of retaliation under the whistleblower
provision of the Consumer Financial Protection Act of 2010, Section 1057 of the Dodd-
Frank Wall Street Reform and Consumer Protection Act of 2010, 12 U.S.C.A. § 5567 (or,
CFPA), which you filed on June 19, 2011. Please be advised that OSHA's jurisdiction to
investigate such complaints does not become effective until the "designated transfer
date," pursuant to Sections 1058 and 1062 of the Dodd-Frank Act, which the Secretary of
the Treasury has set as *July 21, 2011*. The relevant sections of the statute can be found at
www.whistleblowers.gov.

Should you wish to re-file a written CFPA whistleblower complaint on or after July 21st,
you may send us another letter with this request. However, in order for OSHA to initiate
an investigation, you must provide information that you were retaliated against on or after
July 21, 2011.

In your complaint letter, you also requested to file it under Section 806 of the Sarbanes-
Oxley Act ("SOX"). Please note that we have docketed that portion of your complaint as
a SOX complaint. The SOX complaint has been assigned to OSHA Investigator, Patricia
Brown who can be reached at 206-553-5930, and your employer has been notified about
it.

Thank-you for your cooperation.

Sincerely,

Vicky Coleman
Regional Supervisory Investigator

*RECOGNIZED*
*RETALIATION*
*NOT   MAY 25 DOL-*
*PORTLAND*
*REPORT*
*3a*

**OSHA**  Occupational
          Safety and Health
          Administration
          www.osha.gov

$29

EXHIBIT 18
Page 56 of 72

To: fax    Page 6 of 8                          2020-03-23 18:50:43 (GMT)                          12023305326  From: Andrew Clark

3/17/2020                          Xfinity Connect OCC Case _ 01640244 has been created_ Printout

do_not_reply@occ.treas.gov <do_not_reply@occ.treas.gov>                                    6/29/2011 6:01 AM

# OCC Case # 01640244 has been created.

To mir99@comcast.net

---

6/29/2011

Re: Case# 01640244

Dear Andrew Clark:

This is an automatically generated message. Please do not reply to this email. We are unable to respond to messages sent to this address.

Please keep a copy of this email for your records!

This email acknowledges receipt of your Online Consumer Complaint form.  Based upon your correspondence we have opened a case in the OCC's Customer Assistance Group (CAG).  Please make note of the case number listed above, and provide the number on any future correspondence or contact with our office.

We are reviewing the information you provided, and will contact the bank requesting a response to your issues.  In most instances, the bank will respond directly to you and copy us in writing.  Once you receive the bank's response, it is very important that you carefully review their summary and actions taken, if any.

If the bank has satisfactorily addressed your issues and/or concerns no further action on your part is required.  If however, the bank failed to address your issues and/or concerns or you disagree with their response, please contact the CAG in writing within 30 days of receipt of the bank's letter.  Please include in your reply the specific issues that the bank failed to address or, if applicable, the reasons you disagree with the bank's assessment.  Also, please include any additional documentation that supports your position.

The OCC examines national banks to ensure their safe and sound financial condition and ensures compliance with applicable banking laws, rules and regulations.  The CAG was established to assist customers who have questions or complaints involving national banks.  For additional information on the OCC and CAG please visit our internet site www.helpwithmybank.gov.

The CAG offers guidance, and assists consumers in resolving complaints about national banks and their subsidiaries.  The CAG is not a consumer advocacy or bank advocacy group.  The OCC is an administrative agency and we do not have jurisdiction to resolve contractual and factual issues.  We do not have judicial authority and cannot award damages in excess of a bank's error.

While complaint processing times may vary, on average you should receive a written response from CAG within 60 days after we have a complete file.

If you would like to check the status of your case online, please click on the following link: https://appsec.helpwithmybank.gov/olcc_form/checkstatus.aspx  or visit www.helpwithmybank.gov and click on the Check Case Status page.

Should you have questions, please contact this office at the number listed below.

Sincerely,

Customer Assistance Group
1-800-613-6743

This message contains confidential information and is intended solely for the use of the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by sending an email to helpwithmybank.faq@occ.treas.gov  if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

## Exhibit 1

# Sheriff Joe Arpaio's Favorite Law Firm, Ogletree Deakins, Cost Taxpayers $2.4 Million -- in Just Two Years

**By Sarah Fenske**
Published Wed., May 26 2010 at 8:00 AM



**L. Eric Dowell, rainmaker**

The battle for control of Maricopa County -- pitting Sheriff Joe Arpaio and County Attorney Andrew Thomas against the Board of Supervisors, judges, and county administrators -- has been costly to both taxpayers and the parties involved.

But it's been a major boon to one local law firm.

Ogletree Deakins, a relatively obscure firm specializing in employment law, became Arpaio and Thomas' go-to legal counsel just as the disputes were heating up. And, according to public records obtained by *New Times*, the firm has billed the county for a staggering $2.49 million since January 2009.

Most of the work had little to do with employment law -- and most of the firm's representation has been unsuccessful, legally speaking.

Ogletree Deakins has fought for the sheriff's right to take over the county's computer system. They tried to argue that the supervisors didn't have the right to sweep money from funds controlled by Thomas and Arpaio. They're currently pressing Arpaio's assertion that he shouldn't have to open his books to county auditors.

And, according to the billing records we looked at, it appears likely that Ogletree lawyers may have even been behind one of Arpaio/Thomas' biggest embarassments: the criminal charges they filed against the county's presiding criminal court judge, Gary Donahoe.

As *New Times* first reported earlier this month, prosecutors filed criminal charges against Donahoe without bothering to seek a grand jury indictment. They simply filed a direct complaint, and attached a "probable cause" statement that, almost word for word, matched a complaint that the sheriff's office had filed with the Arizona Commission on Judicial Conduct one week before. That complaint, detailing a conspiracy theorist's view of Judge Donahoe's conduct, was signed by Arpaio's chief deputy, David Hendershott.

It now appears that Hendershott had some help penning the letter.                        2 ⊰

According to its billing statements, Ogletree charged the county $27,310 for something titled "MCSO State Bar/Judicial." The first two invoices with that notation were submitted on December 1, 2009 --

EXHIBIT 18
Page 58 of 72

10/18/13                                              Phoenix - News - Valley Fever - Print Version

just one day after Hendershott filed "his" complaint with the judicial conduct commission.

So did an employment law specialist draft the document that became the basis for the criminal charges against the county's presiding criminal court judge? If nothing else, it would explain why the document drew guffaws from seasoned prosecutors. Ogletree's lawyers were likely in way over their heads. (And really, what was prosecutor Lisa Aubuchon thinking, merely regurgitating Ogletree's letter as a criminal complaint?)

According to the billing statements examined by *New Times*, Ogletree also advised Andrew Thomas on matters involving the State Bar. (That cost the taxpayers $18,929). And, they advised either Arpaio or Thomas -- the billings aren't clear -- about issues relating to the selection of a new county attorney. (That cost us *another* $12,762.)

Finally, Ogletree billed the county a staggering $1.2 million for something described only as "contract compliance." County Spokeswoman Cari Gerchick told *New Times* that county administrators have no idea what that means.

We contacted L. Eric Dowell, a shareholder at Ogletree Deakins and the sheriff's lawyer of choice, to ask about the "contract compliance" payments, but we hadn't heard back by press time. We'll post an update if we get an answer.

In the mean time, looking at the wasted $2.4 million and the unexplained $1.2 million and the tens of thousands of dollars for failed legal adventures -- well, we never thought we'd say this, but we actually miss Dennis Wilenchik. Yes, *New Times* disagreed with Wilenchik on just about everything. But Wilenchik handled some pretty tough cases for Arpaio, not just political crap that should have never made its way to a docket.

And Wilenchik, unlike the sheriff's new $2-million-counsel, actually knew how to win.

2 }

EXHIBIT 18
Page 59 of 72

March 18, 2020
Billy Williams, United States Attorney for Oregon
1000 SW 3rd Ave Ste 600  Portland OR  97204
c/o Eugene OR Office in Wayne Morse Courthouse

David P.R. Symes   Littler Portland:
Are you ducking service?  This is what
you and Leah Lively did. You cannot
possibly deny it. Stop lying, stop
ducking serive. Did you think you
would get away with it?

### FEDERAL MAJOR VIOLENT CRIME REPORT
Repeated,  Physical Tampering of a Federal Witness in Active
Department of Labor **and** Office of Comptroller of Currency Investigations.
Obstruction of Justice via Rampant Public Corruption Including Hobbs Act Violations.
Novel Crimes:  Deliberate, Knowing Use of Family Courts as a Means of Tampering,
Fraudulent and Coordinated Use of Local, State, and Federal Justice Systems to Obstruct.

My civil complaint 6.20.cv.253.aa does a very good job of documenting actions against me and linking them to my employment at Wells Fargo.  But unless it is read carefully, it could leave a reader wondering "what crimes could possibly have been committed so extreme that a group of people would be used to conceal it by committing a series of RICO crimes including the use of courts to obstruct justice?   What evidence could a lowest-level worker possibly have of it?"

1.  A police report is a very special and perfect type of evidence. Attached is a page from a Eugene, OR police report dated July 19, 2011.  It is Page 82 of the civil complaint.  It is from before all the RICO crimes were committed against me. It shows Wells Fargo corporate security agent Martin Ogno was aware I had filed reports with Federal Bureau-Investigation (FBI) in Eugene OR, therefore Wells Fargo was aware.  Most shocking: Eugene Police told Ogno I considered his "well-being visit at my home at night by uniformed SWAT police" to be retaliation.  Ogno told Eugene Police to 'fuhggedaboutit' and explains he had contacted FBI and that FBI did not take my (just filed in-person and sworn-to well-evidenced, voluminous) reports seriously.   Think of that horrific violation of City of Eugene Police.

2.  After that is a printout of Department of Justice publication "Criminal Resource Manual 1729".  It has a standard archive disclaimer but the content is valid,  last updated January 2020.  A person who reports to a federal law enforcement agency such as FBI is a Federal Witness. Tampering with a Federal Witness is a violation of 18 USC 1512, particularly when Federal investigations are in process.

3.  Two different Federal Investigations were in process.  Next exhibits are proof from Department of Labor and Office of Comptroller of Currency of recently accepted Federal investigations.   The PACER system records for SLAPP-suit 6.11.cv.06248.ho and my subsequent civil actions show exactly how the courts were used to bypass discovery of the above crimes.

4.  My civil complaint enumerates and documents the RICO crimes committed against me.  Please note that I presented Tampering using false arrest and jail as violations of 18 USC 1201 by Wells Fargo/ Ogletree Deakins:, armed kidnapping for political or economic motivations.  Use of police to tamper with a Federal Witness is absolutely gangland.  It is as bad it gets, other than the novel crimes listed above and detailed in the civil complaint.

5.  Related but not relevant to the crime report: I motioned for Wells Fargo and Company to intervene. It is in PACER.  It is possible that everything that happened was actually a Wells Fargo & Co. project. A metaphor for that is found on www.TheEugeneBlairProject.com.  I placed the Circuit Court and Police a/v on www.RisePatriot.com and www.WellsFargoWitz.com (family court).

Thank you from Andy Clark 3270 Stoney Ridge Rd. Eugene OR 97405 541.510.3915 (exhibits follow)

EXHIBIT 18
Page 60 of 72

4 of 4
11-11771

was Officer Pieske who was there with us during the contacts and told Clark that Officer Pieske concurred with my findings in the matters. I asked Clark if there was anything else I could do for him. Clark said there was nothing else I could do for him and he left city hall.

Also per Sergeant Klinko's request, I contacted Marty Ogno, head of security for Wells Fargo. I called Ogno and told him I had contacted Clark and that he had been advised he was trespassed from all Wells Fargo properties. I also told Ogno Clark was concerned he had $24,000 in an account at Wells Fargo. Ogno said he had looked it up and though Clark only had about $200 in an account, but that he would close Clark's account and mail him a check with the remaining balance. Ogno asked how the contact went. I told Ogno that Clark felt he was being retaliated upon for contacting the FBI and CIA with Wells Fargo's wrong doings. Ogno said that he had been in contact with the FBI and told me that the FBI did not take Clark's reports seriously.

**>>>>>**
**FBI would**
**not say that.**

**Notice no**
**person at**
**FBI is**
**referenced.**

At approximately 1900 hours, dispatch advised that Clark had left a phone number for me to call him back so he could further discuss his desire to press charges against Wells Fargo for filing a false police report. I requested Sergeant Magnuson respond to the report writing room where I was working on reports so I could discuss the situation with him before calling Clark back. While I was explaining the situation to Sergeant Magnuson, Dispatch advised that Clark had called back 3 more times requesting contact. I then asked Sergeant Magnuson if he would contact Clark in my behalf in that I was unable to effectively communicate to Clark that Wells Fargo had broken no laws and that they had the right to trespass Clark from their properties.

**It is corruption**
**of FBI processes**
**and obstruction.**

Reviewed by FTO:  **Pieske**          **112**
                        Name            Badge

**BTW, I did**
**report to CIA via**
**nationwide fax#**
**and consulate**
**offices in**
**Bangalore and**
**Hyderabad India**
**due to concerns**
**related to**
**system**
**development**
**work on the**
**CORE/ELF**
**system I had to**
**use here that**
**was being badly**
**programmed in**
**India.**

Isch
#623

07-19-11 2330 Hours          Approved By: Magnuson 122

Civil Case 6-20-cv-000253  Complaint Filed February 14, 2020 Clark vs. Wells Fargo et al    Page 82 of 131

EXHIBIT 18
Page 61 of 72

3/16/2020        1729. Protection Of Government Processes -- Tampering With Victims, Witnesses, Or Informants -- 18 U.S.C. 1512 | JM | Department of ...

 An official website of the United States government  Here's how you know

THE UNITED STATES
DEPARTMENT of JUSTICE  This is archived content from the U.S. Department of Justice website. The information here may be outdated and links may no longer
ARCHIVES  function. Please contact webmaster@usdoj.gov if you have any questions about the archive site.

## 1729. PROTECTION OF GOVERNMENT PROCESSES -- TAMPERING WITH VICTIMS, WITNESSES, OR INFORMANTS -- 18 U.S.C. 1512

Section 1512 of Title 18 constitutes a broad prohibition against tampering with a witness, victim or informant. It proscribes conduct intended to illegitimately affect the presentation of evidence in Federal proceedings or the communication of information to Federal law enforcement officers. It applies to proceedings before Congress, executive departments, and administrative agencies, and to civil and criminal judicial proceedings, including grand jury proceedings. See 18 U.S.C. § 1515(a)(1). In addition, the section provides extraterritorial Federal jurisdiction over the offenses created therein. See 18 U.S.C. § 1512(g); 128 Cong. Rec. H8469 (daily ed. Oct. 1, 1980); H. R. Rep. Nr. 1369, 96th Cong., 2d Sess. 20-22 (1980).

The express prohibitions against tampering with witnesses and parties contained in former 18 U.S.C. §§ 1503 and 1505, are now in paragraphs (b)(1) and (2) of 18 U.S.C. § 1512. (As discussed in this Manual at 1724 and 1727, the omnibus clauses of these provisions still cover witnesses.) All forms of tampering with informants covered in former 18 U.S.C. § 1510, with the exception of tampering by means of bribery, are now proscribed by 18 U.S.C. § 1512(b)(3). Tampering with informants by means of bribery remains an 18 U.S.C. § 1510 offense.

Section 1512 augments the prohibitions of the former law in several important respects. First, section 1512(b)(3) sweeps more broadly than former 18 U.S.C. § 1510 and expands the class of informants protected by Federal law. For example, it protects individuals having information concerning a violation of a condition of probation, parole, or bail whether or not that violation constitutes a violation of any other Federal criminal statute. Second, it protects individuals seeking to provide information to Federal judges or Federal probation and pretrial services officers.

Section 1512 also includes attempts in its list of prohibited conduct. There is no requirement that the defendants actions have the intended obstructive effect. See, e.g., United States v. Murray, 751 F.2d 1528 (9th Cir.), cert. denied, 474 U.S. 979 (1985); United States v. Wilson, 796 F.2d 55 (4th Cir. 1986), cert. denied, 479 U.S. 1039 (1987). As amended by the Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. 99-646, it is clear that the killing of a witness or attempts to kill a witness in order to prevent his/her testimony constitutes an act of force intended to "influence the witness' testimony." See 18 U.S.C. § 1512(a). This change was necessitated by one court interpreting former § 1512 as not reaching an act of attempted murder that was intended to prevent a witness from testifying. See United States v. Dawlett, 787 F.2d 771 (1st Cir. 1986).

The section specifically abolishes the pending proceeding requirement of 18 U.S.C. §§ 1503 and 1505. The provision also eliminates ambiguity about the class of individuals protected. Although the former law protected witnesses, parties, and informants, it was unclear whether that law reached the intimidation of third parties (for example, the spouse of a witness) for the purpose of intimidating the principal party. Section § 1512 of Title 18 plainly covers such conduct, for it speaks of conduct directed toward "another person." See 128 Cong. Rec. H8203 (daily ed. Sept. 30, 1982).

Section 1512 protects potential as well as actual witnesses. With the addition of the words "any person," it is clear that a witness is "one who knew or was expected to know material facts and was expected to testify to them before pending judicial proceedings." United States v. DiSalvo, 631 F.Supp. 1398 (E.D. Pa. 1986), aff'd, 826 F.2d 1054 (3d Cir. 1987). Under § 1512, an individual retains his/her status as a witness even after testifying. United States v. Wilson, 796 F.2d 55 (4th Cir. 1986), cert. denied, 479 U.S. 1039 (1987) (protection of witness under § 1512 continues throughout the trial); United States v. Patton, 721 F.2d 159 (6th Cir. 1983) (witness retains status while defendant's motion for a new trial is pending); United States v. Chandler, 604 F.2d 972 (5th Cir. 1979) (witness retains status while case is pending on direct appeal). Cf. United States v. Risken, 788 F.2d 1361 (8th Cir.), cert. denied, 479 U.S. 923 (1986) (party was a witness after asserting his Fifth Amendment privilege and being dismissed from the stand since he could be recalled at any time).

Section 1512 of Title 18 contains two significant additions to the types of tampering barred by Federal law. First, it forbids "misleading conduct," as defined in 18 U.S.C. § 1515. Such conduct was not covered in those circuits that had narrowly construed the omnibus clauses of 18 U.S.C. §§ 1503 and 1505 under the rule of ejusdem generis. See United States v. Metcalf, 435 F.2d 754 (9th Cir. 1970); United States v. Essex, 407 F.2d 214 (6th Cir. 1969). see generally, 128 Cong. Rec. H8203 (daily ed. Sept. 30, 1982). Second, 18 U.S.C. § 1512 makes intentional harassment a misdemeanor. This offense is intended to reach conduct less egregious than the corrupt, threatening or forceful conduct required for a violation of former 18 U.S.C. §§ 1503 and 1505. Harassing conduct has been defined as that intended to badger, disturb or pester. Wilson, supra.

Despite its coverage, section 1512 was not intended to reach all forms of witness tampering. Its coverage is limited to tampering accomplished by the specific means enumerated in the provision. United States v. King, 762 F.2d 232 (2d Cir. 1985), cert. denied, 475 U.S. 1018 (1986). The more imaginative types of witness tampering as well as forms of tampering defying enumeration were still prohibited by the omnibus provision of § 1503. United States v. Lester, 749 F.2d 1288 (9th Cir. 1984).

It is unclear whether 18 U.S.C. § 1512(b)(3) was intended to widen the prohibition against obstructing investigations contained in former 18 U.S.C. § 1510 to include investigations that are not per se criminal in nature, such as an FAA investigation of an aircraft accident, or a Senate committee investigation of the trucking industry. A comparison of the difference in phraseology between 18 U.S.C. §§ 1510 and 1512(b)(3), however, indicates that those differences are differences of style, not substance, and that no such expansion was intended. Section 1510 proscribes interference with "the communication of information relating to a violation of any criminal statute of the United States . . ." to a (Federal) criminal investigator; 18 U.S.C. § 1512(b)(3) proscribes interference with "the communication to a (Federal) law enforcement officer . . . of information relating to the commission or possible commission of a Federal offense." There is nothing to indicate that Congress intended to depart from the generally accepted meaning of "law enforcement" as criminal law enforcement and of "offense" as criminal violation. See 18 U.S.C. § 1515(4); 128 Cong. Rec. H8203 (daily ed. Sept. 30,

EXHIBIT 18
Page 62 of 72

3/16/2020        1729. Protection Of Government Processes -- Tampering With Victims, Witnesses, Or Informants -- 18 U.S.C. 1512 | JM | Department of ...

1982). Accordingly, prosecutions for interference with legislative or administrative investigations that have not taken on the character of a criminal investigation should be brought under the omnibus clause of 18 U.S.C. § 1505. *See* this Manual at 1726.

[cited in JM 9-69.100]

| ‹ 1728. Protection Of Government Processes -- Obstruction Of Federal Criminal Investigation -- 18 U.S.C. 1510 | up | 1730. Protection Of Government Processes -- "Official Proceeding" Requirement -- 18 U.S.C. 1512 › |
| --- | --- | --- |

*Updated January 17, 2020*

EXHIBIT 18
Page 63 of 72

**U.S. DEPARTMENT OF LABOR**

Occupational Safety & Health Administration
1111 Third Avenue, Suite 715
Seattle, Washington 98101 - 3212



July 11, 2011

Mr. Andrew Clark
3270 Soney Ridge Road
Eugene, OR 97405

Re: Consumer Financial Protection Act of 2010 Complaint Dated June 19, 2011

Dear Mr. Clark:

This is to acknowledge receipt of your complaint of retaliation under the whistleblower
provision of the Consumer Financial Protection Act of 2010, Section 1057 of the Dodd-
Frank Wall Street Reform and Consumer Protection Act of 2010, 12 U.S.C.A. § 5567 (or,
CFPA), which you filed on June 19, 2011. Please be advised that OSHA's jurisdiction to
investigate such complaints does not become effective until the "designated transfer
date," pursuant to Sections 1058 and 1062 of the Dodd-Frank Act, which the Secretary of
the Treasury has set as *July 21, 2011*. The relevant sections of the statute can be found at
www.whistleblowers.gov.

Should you wish to re-file a written CFPA whistleblower complaint on or after July 21st,
you may send us another letter with this request. However, in order for OSHA to initiate
an investigation, you must provide information that you were retaliated against on or after
July 21, 2011.

In your complaint letter, you also requested to file it under Section 806 of the Sarbanes-
Oxley Act ("SOX"). Please note that we have docketed that portion of your complaint as
a SOX complaint. The SOX complaint has been assigned to OSHA Investigator, Patricia
Brown who can be reached at 206-553-5930, and your employer has been notified about
it.

Thank-you for your cooperation.

Sincerely,

Vicky Coleman
Regional Supervisory Investigator

*[handwritten notes:]* RECOGNIZED RETALIATION NOT MAY 25 DOL PORTLAND REPORT 3a

**OSHA** Occupational
Safety and Health
Administration
www.osha.gov

$29

Case 17-35247    Clark vs. Wells Fargo et al Exhibits    Page 38

EXHIBIT 18
Page 64 of 72

To: fax    Page 6 of 8                2020-03-23 18:55:37 (GMT)              12023305326  From: Andrew Clark

3/17/2020                         Xfinity Connect OCC Case _ 01640244 has been created_ Printout

---

do_not_reply@occ.treas.gov <do_not_reply@occ.treas.gov>                    6/29/2011 6:01 AM

## OCC Case # 01640244 has been created.

To mir99@comcast.net

---

6/29/2011

Re: Case# 01640244

Dear Andrew Clark:

This is an automatically generated message. Please do not reply to this email. We are unable to respond to messages sent to this address.

Please keep a copy of this email for your records!

This email acknowledges receipt of your Online Consumer Complaint form.  Based upon your correspondence we have opened a case in the OCC's Customer Assistance Group (CAG).  Please make note of the case number listed above, and provide the number on any future correspondence or contact with our office.

We are reviewing the information you provided, and will contact the bank requesting a response to your issues.  In most instances, the bank will respond directly to you and copy us in writing.  Once you receive the bank's response, it is very important that you carefully review their summary and actions taken, if any.

If the bank has satisfactorily addressed your issues and/or concerns no further action on your part is required.  If however, the bank failed to address your issues and/or concerns or you disagree with their response, please contact the CAG in writing within 30 days of receipt of the bank's letter.  Please include in your reply the specific issues that the bank failed to address or, if applicable, the reasons you disagree with the bank's assessment.  Also, please include any additional documentation that supports your position.

The OCC examines national banks to ensure their safe and sound financial condition and ensures compliance with applicable banking laws, rules and regulations.  The CAG was established to assist customers who have questions or complaints involving national banks.  For additional information on the OCC and CAG please visit our internet site www.helpwithmybank.gov.

The CAG offers guidance, and assists consumers in resolving complaints about national banks and their subsidiaries.  The CAG is not a consumer advocacy or bank advocacy group.  The OCC is an administrative agency and we do not have jurisdiction to resolve contractual and factual issues.  We do not have judicial authority and cannot award damages in excess of a bank's error.

While complaint processing times may vary, on average you should receive a written response from CAG within 60 days after we have a complete file.

If you would like to check the status of your case online, please click on the following link: https://appsec.helpwithmybank.gov/olcc_form/checkstatus.aspx  or visit www.helpwithmybank.gov and click on the Check Case Status page.

Should you have questions, please contact this office at the number listed below.

Sincerely,

Customer Assistance Group
1-800-613-6743

This message contains confidential information and is intended solely for the use of the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by sending an email to helpwithmybank.faq@occ.treas.gov  if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

EXHIBIT 18
Page 65 of 72

We're sorry, but your incoming fax may be incomplete.  Please call the sender to verify your fax or to request a re-send.

Your fax may be incomplete because one or more of the following has occurred:

1. Fax transmission was interrupted.

2. "End fax" signal not received.

3. Unable to convert to desired file format.

We apologize for any inconvenience.

You will not be charged for this additional page.

EXHIBIT 18
Page 66 of 72

March 18, 2020
Billy Williams, United States Attorney for Oregon
1000 SW 3rd Ave Ste 600  Portland OR  97204
c/o Eugene OR Office in Wayne Morse Courthouse

David P.R. Symes   Littler Portland:
Are you ducking service?  This is what
you and Leah Lively did. You cannot
possibly deny it. Stop lying, stop
ducking serive. Did you think you
would get away with it?

## FEDERAL MAJOR VIOLENT CRIME REPORT
Repeated,  Physical Tampering of a Federal Witness in Active
Department of Labor **and** Office of Comptroller of Currency Investigations.
Obstruction of Justice via Rampant Public Corruption Including Hobbs Act Violations.
Novel Crimes:  Deliberate, Knowing Use of Family Courts as a Means of Tampering,
Fraudulent and Coordinated Use of Local, State, and Federal Justice Systems to Obstruct.

My civil complaint 6.20.cv.253.aa does a very good job of documenting actions against me and linking them to my employment at Wells Fargo.  But unless it is read carefully, it could leave a reader wondering "what crimes could possibly have been committed so extreme that a group of people would be used to conceal it by committing a series of RICO crimes including the use of courts to obstruct justice?  What evidence could a lowest-level worker possibly have of it?"

1.  A police report is a very special and perfect type of evidence. Attached is a page from a Eugene, OR police report dated July 19, 2011.  It is Page 82 of the civil complaint.  It is from before all the RICO crimes were committed against me. It shows Wells Fargo corporate security agent Martin Ogno was aware I had filed reports with Federal Bureau-Investigation (FBI) in Eugene OR, therefore Wells Fargo was aware.  Most shocking: Eugene Police told Ogno I considered his "well-being visit at my home at night by uniformed SWAT police" to be retaliation. Ogno told Eugene Police to 'fuhggedaboutit' and explains he had contacted FBI and that FBI did not take my (just filed in-person and sworn-to well-evidenced, voluminous) reports seriously.   Think of that horrific violation of City of Eugene Police.

2.  After that is a printout of Department of Justice publication "Criminal Resource Manual 1729".  It has a standard archive disclaimer but the content is valid,  last updated January 2020.  A person who reports to a federal law enforcement agency such as FBI is a Federal Witness.  Tampering with a Federal Witness is a violation of 18 USC 1512, particularly when Federal investigations are in process.

3.  Two different Federal Investigations were in process.  Next exhibits are proof from Department of Labor and Office of Comptroller of Currency of recently accepted Federal investigations.  The PACER system records for SLAPP-suit 6.11.cv.06248.ho and my subsequent civil actions show exactly how the courts were used to bypass discovery of the above crimes.

4.  My civil complaint enumerates and documents the RICO crimes committed against me.  Please note that I presented Tampering using false arrest and jail as violations of 18 USC 1201 by Wells Fargo/ Ogletree Deakins:, armed kidnapping for political or economic motivations.  Use of police to tamper with a Federal Witness is absolutely gangland.  It is as bad it gets, other than the novel crimes listed above and detailed in the civil complaint.

5.  Related but not relevant to the crime report: I motioned for Wells Fargo and Company to intervene. It is in PACER.  It is possible that everything that happened was actually a Wells Fargo & Co. project. A metaphor for that is found on www.TheEugeneBlairProject.com.  I placed the Circuit Court and Police a/v on www.RisePatriot.com and www.WellsFargoWitz.com (family court).

Thank you from Andy Clark 3270 Stoney Ridge Rd. Eugene OR 97405 541.510.3915 (exhibits follow)

EXHIBIT 18
Page 67 of 72

To: fax    Page 7 of 8                          2020-03-23 19:08:17 (GMT)                          12023305326  From: Andrew Clark

10/18/13                                      Phoenix - News - Valley Fever - Print Version

## Exhibit 1

# Sheriff Joe Arpaio's Favorite Law Firm, Ogletree Deakins, Cost Taxpayers $2.4 Million -- in Just Two Years

**By Sarah Fenske**
Published Wed., May 26 2010 at 8:00 AM



**L. Eric Dowell, rainmaker**

The battle for control of Maricopa County -- pitting Sheriff Joe Arpaio and County Attorney Andrew Thomas against the Board of Supervisors, judges, and county administrators -- has been costly to both taxpayers and the parties involved.

But it's been a major boon to one local law firm.

Ogletree Deakins, a relatively obscure firm specializing in employment law, became Arpaio and Thomas' go-to legal counsel just as the disputes were heating up. And, according to public records obtained by *New Times*, the firm has billed the county for a staggering $2.49 million since January 2009.

Most of the work had little to do with employment law -- and most of the firm's representation has been unsuccessful, legally speaking.

Ogletree Deakins has fought for the sheriff's right to take over the county's computer system. They tried to argue that the supervisors didn't have the right to sweep money from funds controlled by Thomas and Arpaio. They're currently pressing Arpaio's assertion that he shouldn't have to open his books to county auditors.

And, according to the billing records we looked at, it appears likely that Ogletree lawyers may have even been behind one of Arpaio/Thomas' biggest embarrassments: the criminal charges they filed against the county's presiding criminal court judge, Gary Donahoe.

As *New Times* first reported earlier this month, prosecutors filed criminal charges against Donahoe without bothering to seek a grand jury indictment. They simply filed a direct complaint, and attached a "probable cause" statement that, almost word for word, matched a complaint that the sheriff's office had filed with the Arizona Commission on Judicial Conduct one week before. That complaint, detailing a conspiracy theorist's view of Judge Donahoe's conduct, was signed by Arpaio's chief deputy, David Hendershott.

It now appears that Hendershott had some help penning the letter.

According to its billing statements, Ogletree charged the county $27,310 for something titled "MCSO State Bar/Judicial." The first two invoices with that notation were submitted on December 1, 2009 --

To: fax    Page 8 of 8                    2020-03-23 19:08:17 (GMT)                    12023305326  From: Andrew Clark

10/18/13                                    Phoenix - News - Valley Fever - Print Version

just one day after Hendershott filed "his" complaint with the judicial conduct commission.

So did an employment law specialist draft the document that became the basis for the criminal charges against the county's presiding criminal court judge? If nothing else, it would explain why the document drew guffaws from seasoned prosecutors. Ogletree's lawyers were likely in way over their heads. (And really, what was prosecutor Lisa Aubuchon thinking, merely regurgitating Ogletree's letter as a criminal complaint?)

According to the billing statements examined by *New Times*, Ogletree also advised Andrew Thomas on matters involving the State Bar. (That cost the taxpayers $18,929). And, they advised either Arpaio or Thomas -- the billings aren't clear -- about issues relating to the selection of a new county attorney. (That cost us *another* $12,762.)

Finally, Ogletree billed the county a staggering $1.2 million for something described only as "contract compliance." County Spokeswoman Cari Gerchick told *New Times* that county administrators have no idea what that means.

We contacted L. Eric Dowell, a shareholder at Ogletree Deakins and the sheriff's lawyer of choice, to ask about the "contract compliance" payments, but we hadn't heard back by press time. We'll post an update if we get an answer.

In the mean time, looking at the wasted $2.4 million and the unexplained $1.2 million and the tens of thousands of dollars for failed legal adventures -- well, we never thought we'd say this, but we actually miss Dennis Wilenchik. Yes, *New Times* disagreed with Wilenchik on just about everything. But Wilenchik handled some pretty tough cases for Arpaio, not just political crap that should have never made its way to a docket.

And Wilenchik, unlike the sheriff's new $2-million-counsel, actually knew how to win.

2?

EXHIBIT 18
Page 69 of 72

March 18, 2020                                          Re: Wells Fargo &
Billy Williams, United States Attorney for Oregon        Ogletree Deakins
1000 SW 3rd Ave Ste 600  Portland OR  97204
c/o Eugene OR Office in Wayne Morse Courthouse

### FEDERAL MAJOR VIOLENT CRIME REPORT
Repeated,  Physical Tampering of a Federal Witness in Active
Department of Labor **and** Office of Comptroller of Currency Investigations.
Obstruction of Justice via Rampant Public Corruption Including Hobbs Act Violations.
Novel Crimes:  Deliberate, Knowing Use of Family Courts as a Means of Tampering,
Fraudulent and Coordinated Use of Local, State, and Federal Justice Systems to Obstruct.

My civil complaint 6.20.cv.253.aa does a very good job of documenting actions against me and linking them to my employment at Wells Fargo. But unless it is read carefully, it could leave a reader wondering "what crimes could possibly have been committed so extreme that a group of people would be used to conceal it by committing a series of RICO crimes including the use of courts to obstruct justice?  What evidence could a lowest-level worker possibly have of it?"

1. A police report is a very special and perfect type of evidence. Attached is a page from a Eugene, OR police report dated July 19, 2011.  It is Page 82 of the civil complaint.  It is from before all the RICO crimes were committed against me. It shows Wells Fargo corporate security agent Martin Ogno was aware I had filed reports with Federal Bureau-Investigation (FBI) in Eugene OR, therefore Wells Fargo was aware. Most shocking: Eugene Police told Ogno I considered his "well-being visit at my home at night by uniformed SWAT police" to be retaliation. Ogno told Eugene Police to 'fuhggedaboutit' and explains he had contacted FBI and that FBI did not take my (just filed in-person and sworn-to well-evidenced, voluminous) reports seriously.   <u>Think of that horrific violation of City of Eugene Police.</u>

2. After that is a printout of Department of Justice publication "Criminal Resource Manual 1729".  It has a standard archive disclaimer but the content is valid,  last updated January 2020.  A person who reports to a federal law enforcement agency such as FBI is a Federal Witness. Tampering with a Federal Witness is a violation of 18 USC 1512, particularly when Federal investigations are in process.

3. Two different Federal Investigations were in process. Next exhibits are proof from Department of Labor and Office of Comptroller of Currency of recently accepted Federal investigations.  The PACER system records for SLAPP-suit 6.11.cv.06248.ho and my subsequent civil actions show exactly how the courts were used to bypass discovery of the above crimes.

4. My civil complaint enumerates and documents the RICO crimes committed against me.  Please note that I presented Tampering using false arrest and jail as violations of 18 USC 1201 by Wells Fargo/ Ogletree Deakins:, armed kidnapping for political or economic motivations.  Use of police to tamper with a Federal Witness is absolutely gangland.  It is as bad it gets, other than the novel crimes listed above and detailed in the civil complaint.

5. Related but not relevant to the crime report: I motioned for Wells Fargo and Company to intervene. It is in PACER.  It is possible that everything that happened was actually a Wells Fargo & Co. project. A metaphor for that is found on www.TheEugeneBlairProject.com.  I placed the Circuit Court and Police a/v on www.RisePatriot.com and www.WellsFargoWitz.com (family court).

Thank you from Andy Clark 3270 Stoney Ridge Rd. Eugene OR 97405 541.510.3915 (exhibits follow)

EXHIBIT 18
Page 70 of 72

## Exhibit 1

# Sheriff Joe Arpaio's Favorite Law Firm, Ogletree Deakins, Cost Taxpayers $2.4 Million -- in Just Two Years

**By Sarah Fenske**
Published Wed., May 26 2010 at 8:00 AM



**L. Eric Dowell, rainmaker**

The battle for control of Maricopa County -- pitting Sheriff Joe Arpaio and County Attorney Andrew Thomas against the Board of Supervisors, judges, and county administrators -- has been costly to both taxpayers and the parties involved.

But it's been a major boon to one local law firm.

Ogletree Deakins, a relatively obscure firm specializing in employment law, became Arpaio and Thomas' go-to legal counsel just as the disputes were heating up. And, according to public records obtained by *New Times*, the firm has billed the county for a staggering $2.49 million since January 2009.

Most of the work had little to do with employment law -- and most of the firm's representation has been unsuccessful, legally speaking.

Ogletree Deakins has fought for the sheriff's right to take over the county's computer system. They tried to argue that the supervisors didn't have the right to sweep money from funds controlled by Thomas and Arpaio. They're currently pressing Arpaio's assertion that he shouldn't have to open his books to county auditors.

And, according to the billing records we looked at, it appears likely that Ogletree lawyers may have even been behind one of Arpaio/Thomas' biggest embarassments: the criminal charges they filed against the county's presiding criminal court judge, Gary Donahoe.

As *New Times* first reported earlier this month, prosecutors filed criminal charges against Donahoe without bothering to seek a grand jury indictment. They simply filed a direct complaint, and attached a "probable cause" statement that, almost word for word, matched a complaint that the sheriff's office had filed with the Arizona Commission on Judicial Conduct one week before. That complaint, detailing a conspiracy theorist's view of Judge Donahoe's conduct, was signed by Arpaio's chief deputy, David Hendershott.

It now appears that Hendershott had some help penning the letter.

According to its billing statements, Ogletree charged the county $27,310 for something titled "MCSO State Bar/Judicial." The first 26 invoices for that representation were submitted on December 1, 2009 --

EXHIBIT 18
Page 71 of 72

10/18/13                                   Phoenix - News - Valley Fever - Print Version

just one day after Hendershott filed "his" complaint with the judicial conduct commission.

So did an employment law specialist draft the document that became the basis for the criminal charges against the county's presiding criminal court judge? If nothing else, it would explain why the document drew guffaws from seasoned prosecutors. Ogletree's lawyers were likely in way over their heads. (And really, what was prosecutor Lisa Aubuchon thinking, merely regurgitating Ogletree's letter as a criminal complaint?)

According to the billing statements examined by *New Times*, Ogletree also advised Andrew Thomas on matters involving the State Bar. (That cost the taxpayers $18,929). And, they advised either Arpaio or Thomas -- the billings aren't clear -- about issues relating to the selection of a new county attorney. (That cost us *another* $12,762.)

Finally, Ogletree billed the county a staggering $1.2 million for something described only as "contract compliance." County Spokeswoman Cari Gerchick told *New Times* that county administrators have no idea what that means.

We contacted L. Eric Dowell, a shareholder at Ogletree Deakins and the sheriff's lawyer of choice, to ask about the "contract compliance" payments, but we hadn't heard back by press time. We'll post an update if we get an answer.

In the mean time, looking at the wasted $2.4 million and the unexplained $1.2 million and the tens of thousands of dollars for failed legal adventures -- well, we never thought we'd say this, but we actually miss Dennis Wilenchik. Yes, *New Times* disagreed with Wilenchik on just about everything. But Wilenchik handled some pretty tough cases for Arpaio, not just political crap that should have never made its way to a docket.

And Wilenchik, unlike the sheriff's new $2-million-counsel, actually knew how to win.

2 }

EXHIBIT 18
Page 72 of 72

**Subject:** FW: Faxes from Andrew Clark
**Date:** Thursday, April 2, 2020 2:40:34 PM
**Attachments:** Greenville 04-02-20 Fax.PDF
Houston 04-02-20 Fax.PDF
Portland 04-02-20 Fax.PDF
Costa Mesa 04-02-20 Fax.PDF
Los Angeles 04-02-20 Fax.PDF
St. Louis 04-02-20 Fax.PDF
Tucson 04-02-20 Fax.PDF
New Orleans 04-02-20 Fax.PDF
Birmingham 04-02-20 Fax.PDF
Phoenix 04-02-20 Fax.PDF
Kansas City 04-02-20 Fax.PDF
Chicago 04-02-20 Fax.PDF
Columbia 04-02-20 Fax.PDF
Memphis 04-02-20 Fax.PDF
Tampa 04-02-20 Fax.PDF
Morristown 04-02-20 Fax.PDF
Nashville 04-02-20 Fax.PDF
San Antonio 04-02-20 Fax.PDF
Atlanta 04-02-20 Fax.PDF
Charlotte 04-02-20 Fax.PDF

EXHIBIT 19
Page 1 of 3

**From:** Carcione, Amanda B.
**Sent:** Thursday, April 02, 2020 12:16 PM
**To:** 'sws@samuelslaw.com' <sws@samuelslaw.com>; ██████████████████
██████████████████
**Cc:** Mixon, Christopher A. <Christopher.Mixon@ogletreedeakins.com>
**Subject:** Faxes from Andrew Clark

Good afternoon.

Attached please find several faxes received this morning from several of our offices.  As they continue to come in, I will send them to your attention.

EXHIBIT 19
Page 2 of 3

Please let me know if you have any questions.

Thank you,
Amanda

**Amanda B. Carcione, LTC4 Technology Certified | Practice Assistant | Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
SunTrust Plaza, 401 Commerce Street, Suite 1200 | Nashville, TN 37219-2446 | Telephone: 615-932-6631 | Fax: 615-254-1908
amanda.carcione@ogletree.com | www.ogletree.com

*This transmission is intended only for the proper recipient(s). It is confidential and may contain attorney-client privileged information. If you are not the proper recipient, please notify the sender immediately and delete this message. Any unauthorized review, copying, or use of this message is prohibited.*

*This transmission is intended only for the proper recipient(s). It is confidential and may contain attorney-client privileged information. If you are not the proper recipient, please notify the sender immediately and delete this message. Any unauthorized review, copying, or use of this message is prohibited.*

EXHIBIT 19
Page 3 of 3

| From: | Operation SunriseLAW |
|---|---|
| To: | John E. Pollino; OSB CAO Intake; bill.williams@usdoj.gov |
| Subject: | Re: Conferral on Case No. 6:20-cv-00253-AA |
| Date: | Wednesday, April 8, 2020 9:38:30 AM |
| Attachments: | billywellsogle_optimize.pdf |
| | tencharges.pdf |

 Please see attached Federal Major Crime Report.  It was filed March 26 and provided to Mr. Billy Williams (USAG for Oregon).  I assert that any filing you make that does not specifically address the root crime is 'obstructive'.  A key activity of an attorney who is participating in a RICO enterprise (or any crime) is filing obstructive pleadings devoid of consideration of the facts and evidence.  I refer to that as 'boilerplate'.   I would like to meet with you or spend some time on the telephone to ensure you understand the attached BEFORE you file.   <u>I am cc'ing your Bar for transparency as well as Mr. Williams.</u>

Obstruction and concealment of that simple root crime of the enterprise is ongoing so the Statute of Limitations is not tolling.  Plus, all activity fits within the 10/4 year RICO timeframe (given obstruction).  The 'stalking conviction' you reference is the result of a Hobbs Act Violation as detailed in the Complaint. There was no stalking as I proved and I pleaded guilty to one count because system fraud of Risk Assessment Tool caused intolerable suffering as described in my complaint.   Among the items in "Prayer for Relief" is correction of the obviously-bogus public records that resulted from your client's repeated and ongoing criminal activity.

Mr. Pollino:  Your clients have absolutely no valid defense to the attached Crime Report.  Please take a few moments to understand it and correctly advise your clients given that information they tried so hard to obstruct and conceal.   Thank you, from Andy Clark
 541.510.3915

---

 Virus-free. www.avast.com

On Wed, Apr 8, 2020 at 9:17 AM John E. Pollino <jpollino@ghrlawyers.com> wrote:

> Dear Mr. Clark,
>
>
> I'm am emailing to confer with you prior to filing several motions in Case No. 6:20-cv-00253-AA that you filed in the United States District Court for the District of Oregon, Eugene Division, on February 14, 2020. Of the defendants you named in that case, I represent Ogletree Deakins, Leah Lively, David Symes, Christopher Mixon, and Steven Seymour.
>
>
> I plan to file the following motions on Thursday, April 9, 2020:

EXHIBIT 20
Page 1 of 23

1. A Motion to Dismiss;
2. A Motion for a Protective Order; and
3. A Motion Declaring Plaintiff a Vexatious Litigant.

The Motion to Dismiss will be based on four grounds:

1. All claims listed in your complaint are time-barred;
2. All claims in your complaint are barred by the doctrine of *res judicata*, or claim preclusion;
3. Failure to state a claim under Federal Rule of Civil Procedure ("FRCP") 12(b)(6); and
4. Your inability to sue under FRCP 9(a)(2) based on the plea agreement in your criminal stalking conviction.

Regarding the first argument in the Motion to Dismiss, the statute of limitations has run for all potential claims listed in your complaint. The events described in your complaint occurred in 2011 or 2013 and are related to your termination from Wells Fargo employment and subsequent lawsuits brought either by Wells Fargo or by you. The most recent allegations in your complaint relate to the plea agreement you entered in January 2014 during your criminal stalking case. The longest period under any of the statutes of limitations for alleged claims in your complaint is five years. Because you filed this lawsuit on February 14, 2020, any alleged violations that occurred before February 14, 2015, are outside any statute of limitations. Also, none of the statutes of limitations have been tolled based on the legal conclusions contained in your complaint.

Regarding the second argument, all your claims are barred by the doctrine of *res judicata* because they have been or could have been raised in one of your previous lawsuits against the same parties or parties in privity. Subsequent and repeat litigation is barred even if it is based on a different legal theory. The gravamen of your complaint in this matter is the same as complaints you have made in previous suits against the same defendants, or against parties in privity with the defendants I represent. All your previous claims have been adjudicated on the merits under the meaning of FRCP 41(b).

Regarding the third argument, none of your claims in this matter meet the pleading standard required in federal courts to survive dismissal under FRCP 12(b)(6). The racketeering claims fail because you did not distinguish between an alleged criminal enterprise and its alleged participants and you did not allege adequate predicate acts of racketeering activity. Your constitutional claims under 42 USC § 1983 fail because you have not adequately pled that the defendants I represent were involved in a public function. Claims regarding employment retaliation fail under both discrimination because you have not adequately pled your membership in a protected class and whistleblower laws because you have not adequately pled that you engaged in a protected activity. Any antitrust claims also fail because the

EXHIBIT 20
Page 2 of 23

complaint alleges that Wells Fargo conspired with and against itself through its agents, which necessarily causes antitrust claims to fail. Any claims of fraud do not meet the heightened pleading requirements of FRCP 9(b). Finally, any false arrest claims related to your criminal conviction fail because those actions are legally valid based on the plea agreement in that case.

I also intend to move the court for dismissal based on your lack of authority to sue under FRCP 9(a)(2) without represented counsel. In previous cases, both criminal and civil, you have been ordered to have no contact with the defendants I represent except through represented counsel. Because you do not have counsel in this case, I will ask the court to dismiss this case unless and until you retain counsel, as has been done in previous matters.

Regarding the Motion for a Protective Order and Motion to Declare Plaintiff a Vexatious Litigant, based on your previous litigation history with my clients, I will be asking the judge for a protective order to limit all communications in this matter. I will request that any communications you wish to have with my clients go through me and that you be prohibited from communicating with my clients directly.

In addition, because of the history regarding the parties in this case, and the barrage of communications sent to my clients in this and previous matters, I will be asking the court to declare you a vexatious litigant. Prior to declaring a litigant vexatious, a court must: (1) provide the litigant notice and a chance to be heard; (2) create an adequate record for review; (3) make substantive findings as to the frivolous or harassing nature of the litigant's actions; and (4) ensure any pre-filing order is narrowly tailored to closely fit the specific conduct involved. I intend to ask the court for an order prohibiting you from filing any pleadings, motions, or other materials against my clients, or any lawyers retained to represent them, without first obtaining leave from the presiding judge of the court.

We ask that you agree to dismiss your claims against my clients and stipulate to a requirement of court review prior to any further filings in this or any other matter involving my clients or their retained counsel.

Do not contact my clients directly.  Any correspondence regarding this case and my clients should be directed to me.  Please respond with your position regarding these motions and if you will agree to dismiss your claims.

Sincerely,

EXHIBIT 20
Page 3 of 23

**John Pollino**
**Garrett Hemann Robertson P.C.**
Willamette Professional Center ▪ 1011 Commercial St. NE
Salem, Oregon 97301-1049
(503) 581-1501 ▪ 1-800-581-1501 ▪ Fax (503) 581-5891 ▪ www.ghrlawyers.com

**Confidentiality Notice**: This email and any attachments contain attorney privilege and confidential information
intended only for the use of the individual or entity named above.  Any dissemination, distribution, and copying of
this email to unintended parties are strictly prohibited.  If you have received this email in error, please immediately
notify us by email or telephone.

 Virus-free. www.avast.com

EXHIBIT 20
Page 4 of 23

March 18, 2020
Billy Williams, United States Attorney for Oregon
1000 SW 3rd Ave Ste 600  Portland OR  97204
c/o Eugene OR Office in Wayne Morse Courthouse

Re: Wells Fargo &
Ogletree Deakins

## FEDERAL MAJOR VIOLENT CRIME REPORT
Repeated,  Physical Tampering of a Federal Witness in Active
Department of Labor **and** Office of Comptroller of Currency Investigations.
Obstruction of Justice via Rampant Public Corruption Including Hobbs Act Violations.
Novel Crimes:  Deliberate, Knowing Use of Family Courts as a Means of Tampering,
Fraudulent and Coordinated Use of Local, State, and Federal Justice Systems to Obstruct.

My civil complaint 6.20.cv.253.aa does a very good job of documenting actions against me and linking them to my employment at Wells Fargo.  But unless it is read carefully, it could leave a reader wondering "what crimes could possibly have been committed so extreme that a group of people would be used to conceal it by committing a series of RICO crimes including the use of courts to obstruct justice?   What evidence could a lowest-level worker possibly have of it?"

1.  A police report is a very special and perfect type of evidence. Attached is a page from a Eugene, OR police report dated July 19, 2011.  It is Page 82 of the civil complaint.  It is from before all the RICO crimes were committed against me. It shows Wells Fargo corporate security agent Martin Ogno was aware I had filed reports with Federal Bureau-Investigation (FBI) in Eugene OR, therefore Wells Fargo was aware.  Most shocking: Eugene Police told Ogno I considered his "well-being visit at my home at night by uniformed SWAT police" to be retaliation.  Ogno told Eugene Police to 'fuhggedaboutit' and explains he had contacted FBI and that FBI did not take my (just filed in-person and sworn-to well-evidenced, voluminous) reports seriously.   Think of that horrific violation of City of Eugene Police.

2.  After that is a printout of Department of Justice publication "Criminal Resource Manual 1729".   It has a standard archive disclaimer but the content is valid,  last updated January 2020.  A person who reports to a federal law enforcement agency such as FBI is a Federal Witness.  Tampering with a Federal Witness is a violation of 18 USC 1512, particularly when Federal investigations are in process.

3.  Two different Federal Investigations were in process.  Next exhibits are proof from Department of Labor and Office of Comptroller of Currency of recently accepted Federal investigations.   The PACER system records for SLAPP-suit 6.11.cv.06248.ho and my subsequent civil actions show exactly how the courts were used to bypass discovery of the above crimes.

4.  My civil complaint enumerates and documents the RICO crimes committed against me.  Please note that I presented Tampering using false arrest and jail as violations of 18 USC 1201 by Wells Fargo/ Ogletree Deakins:, armed kidnapping for political or economic motivations.  Use of police to tamper with a Federal Witness is absolutely gangland.  It is as bad it gets, other than the novel crimes listed above and detailed in the civil complaint.

5.  Related but not relevant to the crime report: I motioned for Wells Fargo and Company to intervene. It is in PACER.  It is possible that everything that happened was actually a Wells Fargo & Co. project. A metaphor for that is found on www.TheEugeneBlairProject.com.  I placed the Circuit Court and Police a/v on www.RisePatriot.com and www.WellsFargoWitz.com (family court).

Thank you from Andy Clark 3270 Stoney Ridge Rd. Eugene OR 97405 541.510.3915 (exhibits follow)

EXHIBIT 20
Page 5 of 23

4 of 4
11-11771

was Officer Pieske who was there with us during the contacts and told Clark that Officer Pieske concurred with my findings in the matters. I asked Clark if there was anything else I could do for him. Clark said there was nothing else I could do for him and he left city hall.

Also per Sergeant Klinko's request, I contacted Marty Ogno, head of security for Wells Fargo. I called Ogno and told him I had contacted Clark and that he had been advised he was trespassed from all Wells Fargo properties. I also told Ogno Clark was concerned he had $24,000 in an account at Wells Fargo. Ogno said he had looked it up and though Clark only had about $200 in an account, but that he would close Clark's account and mail him a check with the remaining balance. Ogno asked how the contact went. I told Ogno that Clark felt he was being retaliated upon for contacting the FBI and CIA with Wells Fargo's wrong doings. Ogno said that he had been in contact with the FBI and told me that the FBI did not take Clark's reports seriously.

**>>>>>**
**FBI would not say that.**

At approximately 1900 hours, dispatch advised that Clark had left a phone number for me to call him back so he could further discuss his desire to press charges against Wells Fargo for filing a false police report. I requested Sergeant Magnuson respond to the report writing room where I was working on reports so I could discuss the situation with him before calling Clark back. While I was explaining the situation to Sergeant Magnuson, Dispatch advised that Clark had called back 3 more times requesting contact. I then asked Sergeant Magnuson if he would contact Clark in my behalf in that I was unable to effectively communicate to Clark that Wells Fargo had broken no laws and that they had the right to trespass Clark from their properties.

**Notice no person at FBI is referenced.**

**It is corruption of FBI processes and obstruction.**

Reviewed by FTO: **Pieske**        **112**
                    Name           Badge

**BTW, I did report to CIA via nationwide fax# and consulate offices in Bangalore and Hyderabad India due to concerns related to system development work on the CORE/ELF system I had to use here that was being badly programmed in India.**

Esch
#623                           07-19-11 2330 Hours              Approved By: Magnuson 122

Civil Case 6-20-cv-000253  Complaint Filed February 14, 2020 Clark vs. Wells Fargo et al    Page 82 of 131

EXHIBIT 20
Page 6 of 23



An official website of the United States government  Here's how you know

THE UNITED STATES
DEPARTMENT OF JUSTICE    This is archived content from the U.S. Department of Justice website. The information here may be outdated and links may no longer
ARCHIVES          function. Please contact webmaster@usdoj.gov if you have any questions about the archive site.

## 1729. PROTECTION OF GOVERNMENT PROCESSES -- TAMPERING WITH VICTIMS, WITNESSES, OR INFORMANTS -- 18 U.S.C. 1512

Section 1512 of Title 18 constitutes a broad prohibition against tampering with a witness, victim or informant. It proscribes conduct intended to illegitimately affect the presentation of evidence in Federal proceedings or the communication of information to Federal law enforcement officers. It applies to proceedings before Congress, executive departments, and administrative agencies, and to civil and criminal judicial proceedings, including grand jury proceedings. *See* 18 U.S.C. § 1515(a)(1). In addition, the section provides extraterritorial Federal jurisdiction over the offenses created therein. *See* 18 U.S.C. § 1512(g); 128 Cong. Rec. H8469 (daily ed. Oct. 1, 1980); H. R. Rep. No. 1369, 96th Cong., 2d Sess. 20-22 (1980).

The express prohibitions against tampering with witnesses and parties contained in former 18 U.S.C. §§ 1503 and 1505, are now in paragraphs (b)(1) and (2) of 18 U.S.C. § 1512. (As discussed in this Manual at 1724 and 1727, the omnibus clauses of these provisions still cover witnesses.) All forms of tampering with informants covered in former 18 U.S.C. § 1510, with the exception of tampering by means of bribery, are now proscribed by 18 U.S.C. § 1512(b)(3). Tampering with informants by means of bribery remains an 18 U.S.C. § 1510 offense.

Section 1512 augments the prohibitions of the former law in several important respects. First, section 1512(b)(3) sweeps more broadly than former 18 U.S.C. § 1510 and expands the class of informants protected by Federal law. For example, it protects individuals having information concerning a violation of a condition of probation, parole, or bail whether or not that violation constitutes a violation of any other Federal criminal statute. Second, it protects individuals seeking to provide information to Federal judges or Federal probation and pretrial services officers.

Section 1512 also includes attempts in its list of prohibited conduct. There is no requirement that the defendants actions have the intended obstructive effect. *See, e.g., United States v. Murray*, 751 F.2d 1528 (9th Cir.), *cert. denied*, 474 U.S. 979 (1985); *United States v. Wilson*, 796 F.2d 55 (4th Cir. 1986), *cert. denied*, 479 U.S. 1039 (1987). As amended by the Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. 99-646, it is clear that the killing of a witness or attempts to kill a witness in order to prevent his/her testimony constitutes an act of force intended to "influence the witness' testimony." *See* 18 U.S.C. § 1512(a). This change was necessitated by one court interpreting former § 1512 as not reaching an act of attempted murder that was intended to prevent a witness from testifying. *See United States v. Dawlett*, 787 F.2d 771 (1st Cir. 1986).

The section specifically abolishes the pending proceeding requirement of 18 U.S.C. §§ 1503 and 1505. The provision also eliminates ambiguity about the class of individuals protected. Although the former law protected witnesses, parties, and informants, it was unclear whether that law reached the intimidation of third parties (for example, the spouse of a witness) for the purpose of intimidating the principal party. Section § 1512 of Title 18 plainly covers such conduct, for it speaks of conduct directed toward "another person." *See* 128 Cong. Rec. H8203 (daily ed. Sept. 30, 1982).

Section 1512 protects potential as well as actual witnesses. With the addition of the words "any person," it is clear that a witness is "one who knew or was expected to know material facts and was expected to testify to them before pending judicial proceedings." *United States v. DiSalvo*, 631 F.Supp. 1398 (E.D. Pa. 1986), *aff'd*, 826 F.2d 1054 (3d Cir. 1987). Under § 1512, an individual retains his/her status as a witness even after testifying. *United States v. Wilson*, 796 F.2d 55 (4th Cir. 1986), *cert. denied*, 479 U.S. 1039 (1987) (protection of witness under § 1512 continues throughout the trial); *United States v. Patton*, 721 F.2d 159 (6th Cir. 1983) (witness retains status while defendant's motion for a new trial is pending); *United States v. Chandler*, 604 F.2d 972 (5th Cir. 1979) (witness retains status while case is pending on direct appeal). *Cf. United States v. Risken*, 788 F.2d 1361 (8th Cir.), *cert. denied*, 479 U.S. 923 (1986) (party was a witness after asserting his Fifth Amendment privilege and being dismissed from the stand since he could be recalled at any time).

Section 1512 of Title 18 contains two significant additions to the types of tampering barred by Federal law. First, it forbids "misleading conduct," as defined in 18 U.S.C. § 1515. Such conduct was not covered in those circuits that had narrowly construed the omnibus clauses of 18 U.S.C. §§ 1503 and 1505 under the rule of ejusdem generis. *See United States v. Metcalf*, 435 F.2d 754 (9th Cir. 1970); *United States v. Essex*, 407 F.2d 214 (6th Cir. 1969). *see generally*, 128 Cong. Rec. H8203 (daily ed. Sept. 30, 1982). Second, 18 U.S.C. § 1512 makes intentional harassment a misdemeanor. This offense is intended to reach conduct less egregious than the corrupt, threatening or forceful conduct required for a violation of former 18 U.S.C. §§ 1503 and 1505. Harassing conduct has been defined as that intended to badger, disturb or pester. *Wilson, supra*.

Despite its coverage, section 1512 was not intended to reach all forms of witness tampering. Its coverage is limited to tampering accomplished by the specific means enumerated in the provision. *United States v. King*, 762 F.2d 232 (2d Cir. 1985), *cert. denied*, 475 U.S. 1018 (1986). The more imaginative types of witness tampering as well as forms of tampering defying enumeration were still prohibited by the omnibus provision of § 1503. *United States v. Lester*, 749 F.2d 1288 (9th Cir. 1984).

It is unclear whether 18 U.S.C. § 1512(b)(3) was intended to widen the prohibition against obstructing investigations contained in former 18 U.S.C. § 1510 to include investigations that are not per se criminal in nature, such as an FAA investigation of an aircraft accident, or a Senate committee investigation of the trucking industry. A comparison of the difference in phraseology between 18 U.S.C. §§ 1510 and 1512(b)(3), however, indicates that those differences are differences of style, not substance, and that no such expansion was intended. Section 1510 proscribes interference with "the communication of information relating to a violation of any criminal statute of the United States . . ." to a (Federal) criminal investigator; 18 U.S.C. § 1512(b)(3) proscribes interference with "the communication to a (Federal) law enforcement officer . . . of information relating to the commission or possible commission of a Federal offense." There is nothing to indicate that Congress intended to depart from the generally accepted meaning of "law enforcement" as criminal law enforcement and of "offense" as criminal violation. *See* 18 U.S.C. § 1515(4); 128 Cong. Rec. H8203 (daily ed. Sept. 30,

EXHIBIT 20
Page 7 of 23

1982). Accordingly, prosecutions for interference with legislative or administrative investigations that have not taken on the character of a criminal investigation should be brought under the omnibus clause of 18 U.S.C. § 1505. *See* this Manual at 1726.

[cited in JM 9-69.100]

| ‹ 1728. Protection Of Government Processes -- Obstruction Of Federal Criminal Investigation -- 18 U.S.C. 1510 | up | 1730. Protection Of Government Processes -- "Official Proceeding" Requirement -- 18 U.S.C. 1512 › |
|---|---|---|

*Updated January 17, 2020*

EXHIBIT 20
Page 8 of 23

**U.S. DEPARTMENT OF LABOR**     Occupational Safety & Health Administration
                                 1111 Third Avenue, Suite 715
                                 Seattle, Washington 98101 - 3212



July 11, 2011

Mr. Andrew Clark
3270 Soney Ridge Road
Eugene, OR 97405

Re: Consumer Financial Protection Act of 2010 Complaint Dated June 19, 2011

Dear Mr. Clark:

This is to acknowledge receipt of your complaint of retaliation under the whistleblower
provision of the Consumer Financial Protection Act of 2010, Section 1057 of the Dodd-
Frank Wall Street Reform and Consumer Protection Act of 2010, 12 U.S.C.A. § 5567 (or,
CFPA), which you filed on June 19, 2011. Please be advised that OSHA's jurisdiction to
investigate such complaints does not become effective until the "designated transfer
date," pursuant to Sections 1058 and 1062 of the Dodd-Frank Act, which the Secretary of
the Treasury has set as *July 21, 2011*. The relevant sections of the statute can be found at
www.whistleblowers.gov.

Should you wish to re-file a written CFPA whistleblower complaint on or after July 21st,
you may send us another letter with this request. However, in order for OSHA to initiate
an investigation, you must provide information that you were retaliated against on or after
July 21, 2011.

In your complaint letter, you also requested to file it under Section 806 of the Sarbanes-
Oxley Act ("SOX"). Please note that we have docketed that portion of your complaint as
a SOX complaint. The SOX complaint has been assigned to OSHA Investigator, Patricia
Brown who can be reached at 206-553-5930, and your employer has been notified about
it.

Thank-you for your cooperation.

Sincerely,

*Vicky Coleman*
Vicky Coleman
Regional Supervisory Investigator

*RECOGNIZED
RETALIATION
NOT  MAY 25 DOL
         PORTLAND
REPORT*

**OSHA** Occupational
        Safety and Health
        Administration
        www.osha.gov

*$29*

*3a*

*NO PAGE
WHO PT GOT
        LOST ATTOR*

EXHIBIT 20
Page 9 of 23

3/17/2020                                     Xfinity Connect OCC Case _ 01640244 has been created_ Printout

do_not_reply@occ.treas.gov <do_not_reply@occ.treas.gov>                                    6/29/2011 6:01 AM

## OCC Case # 01640244 has been created.

To mir99@comcast.net

---

6/29/2011

Re: Case# 01640244

Dear Andrew Clark:

This is an automatically generated message. Please do not reply to this email. We are unable to respond to messages sent to this address.

Please keep a copy of this email for your records!

This email acknowledges receipt of your Online Consumer Complaint form.  Based upon your correspondence we have opened a case in the OCC's Customer Assistance Group (CAG).  Please make note of the case number listed above, and provide the number on any future correspondence or contact with our office.

We are reviewing the information you provided, and will contact the bank requesting a response to your issues.  In most instances, the bank will respond directly to you and copy us in writing.  Once you receive the bank's response, it is very important that you carefully review their summary and actions taken, if any.

If the bank has satisfactorily addressed your issues and/or concerns no further action on your part is required.  If however, the bank failed to address your issues and/or concerns or you disagree with their response, please contact the CAG in writing within 30 days of receipt of the bank's letter.  Please include in your reply the specific issues that the bank failed to address or, if applicable, the reasons you disagree with the bank's assessment.  Also, please include any additional documentation that supports your position.

The OCC examines national banks to ensure their safe and sound financial condition and ensures compliance with applicable banking laws, rules and regulations.  The CAG was established to assist customers who have questions or complaints involving national banks.  For additional information on the OCC and CAG please visit our internet site www.helpwithmybank.gov.

The CAG offers guidance, and assists consumers in resolving complaints about national banks and their subsidiaries.  The CAG is not a consumer advocacy or bank advocacy group.  The OCC is an administrative agency and we do not have jurisdiction to resolve contractual and factual issues.  We do not have judicial authority and cannot award damages in excess of a bank's error.

While complaint processing times may vary, on average you should receive a written response from CAG within 60 days after we have a complete file.

If you would like to check the status of your case online, please click on the following link: https://appsec.helpwithmybank.gov/olcc_form/checkstatus.aspx  or visit www.helpwithmybank.gov and click on the Check Case Status page.

Should you have questions, please contact this office at the number listed below.

Sincerely,

Customer Assistance Group
1-800-613-6743

This message contains confidential information and is intended solely for the use of the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by sending an email to helpwithmybank.fag@occ.treas.gov  if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

EXHIBIT 20
Page 10 of 23

Phoenix - News - Valley Fever - Print Version

## Exhibit 1

# Sheriff Joe Arpaio's Favorite Law Firm, Ogletree Deakins, Cost Taxpayers $2.4 Million -- in Just Two Years

**By Sarah Fenske**
Published Wed., May 26 2010 at 8:00 AM



**L. Eric Dowell, rainmaker**

The battle for control of Maricopa County -- pitting Sheriff Joe Arpaio and County Attorney Andrew Thomas against the Board of Supervisors, judges, and county administrators -- has been costly to both taxpayers and the parties involved.

But it's been a major boon to one local law firm.

Ogletree Deakins, a relatively obscure firm specializing in employment law, became Arpaio and Thomas' go-to legal counsel just as the disputes were heating up. And, according to public records obtained by *New Times*, the firm has billed the county for a staggering $2.49 million since January 2009.

Most of the work had little to do with employment law -- and most of the firm's representation has been unsuccessful, legally speaking.

Ogletree Deakins has fought for the sheriff's right to take over the county's computer system. They tried to argue that the supervisors didn't have the right to sweep money from funds controlled by Thomas and Arpaio. They're currently pressing Arpaio's assertion that he shouldn't have to open his books to county auditors.

And, according to the billing records we looked at, it appears likely that Ogletree lawyers may have even been behind one of Arpaio/Thomas' biggest embarrassments: the criminal charges they filed against the county's presiding criminal court judge, Gary Donahoe.

As *New Times* first reported earlier this month, prosecutors filed criminal charges against Donahoe without bothering to seek a grand jury indictment. They simply filed a direct complaint, and attached a "probable cause" statement that, almost word for word, matched a complaint that the sheriff's office had filed with the Arizona Commission on Judicial Conduct one week before. That complaint, detailing a conspiracy theorist's view of Judge Donahoe's conduct, was signed by Arpaio's chief deputy, David Hendershott.

It now appears that Hendershott had some help penning the letter.

According to its billing statements, Ogletree charged the county $27,310 for something titled "MCSO State Bar/Judicial." The first two invoices with that notation were submitted on December 1, 2009 --

EXHIBIT 20
Page 11 of 23

just one day after Hendershott filed "his" complaint with the judicial conduct commission.

So did an employment law specialist draft the document that became the basis for the criminal charges against the county's presiding criminal court judge? If nothing else, it would explain why the document drew guffaws from seasoned prosecutors. Ogletree's lawyers were likely in way over their heads. (And really, what was prosecutor Lisa Aubuchon thinking, merely regurgitating Ogletree's letter as a criminal complaint?)

According to the billing statements examined by *New Times*, Ogletree also advised Andrew Thomas on matters involving the State Bar. (That cost the taxpayers $18,929). And, they advised either Arpaio or Thomas -- the billings aren't clear -- about issues relating to the selection of a new county attorney. (That cost us *another* $12,762.)

Finally, Ogletree billed the county a staggering $1.2 million for something described only as "contract compliance." County Spokeswoman Cari Gerchick told *New Times* that county administrators have no idea what that means.

We contacted L. Eric Dowell, a shareholder at Ogletree Deakins and the sheriff's lawyer of choice, to ask about the "contract compliance" payments, but we hadn't heard back by press time. We'll post an update if we get an answer.

In the mean time, looking at the wasted $2.4 million and the unexplained $1.2 million and the tens of thousands of dollars for failed legal adventures -- well, we never thought we'd say this, but we actually miss Dennis Wilenchik. Yes, *New Times* disagreed with Wilenchik on just about everything. But Wilenchik handled some pretty tough cases for Arpaio, not just political crap that should have never made its way to a docket.

And Wilenchik, unlike the sheriff's new $2-million-counsel, actually knew how to win.

2}

EXHIBIT 20
Page 12 of 23

ALEX GARDNER
Lane County District Attorney
[ ]  8th Avenue
E[ ]e, OR  97401
(541) 682-4261 (541) 682-3890 (fax)

FILED

18 JUL 25 PM 2: 41

CIRCUIT COURT OF OREGON
FOR LANE COUNTY

## In the Circuit Court of the State of Oregon for Lane County

THE STATE OF OREGON
        Plaintiff,

vs.

**ANDREW GLEN CLARK,**
        Defendant.

**INFORMATION**

211314234

The above-named defendant is accused on oath by the Lane County District Attorney as follows:

   1. STALKING
   2. STALKING
   3. STALKING
   4. STALKING
   5. STALKING
   6. STALKING
   7. STALKING
   8. STALKING
   9. STALKING
 10. STALKING

IDENTICAL

committed as follows:

COUNT 1

The defendant, on or between August 1, 2012, and July 23, 2013, in Lane County, Oregon, in an act and transaction separate and distinct from all others alleged in this Information, did unlawfully and knowingly alarm and coerce the law firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., and staff attorney Leah Lively, by engaging in repeated and unwanted contact with the said victims, this contact causing Ogletree, Deakins, Nash, Smoak & Stewart, P.C. and Leah Lively reasonable apprehension regarding their personal safety, and it being objectively reasonable for a person in the situation of Ogletree, Deakins, Nash, Smoak & Stewart, P.C. and Leah Lively to be alarmed and coerced by the contact; contrary to statute and against the peace and dignity of the State of Oregon;

COUNT 2

The defendant, on or between August 1, 2012, and July 23, 2013, in Lane County, Oregon, in an act and transaction separate and distinct from all others alleged in this Information, did unlawfully and knowingly alarm and coerce the law firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., and staff attorney Leah Lively, by engaging in repeated and unwanted contact with the said victims, this contact causing Ogletree, Deakins, Nash, Smoak & Stewart, P.C. and Leah Lively reasonable apprehension regarding their personal safety, and it being objectively reasonable for a person in the situation of Ogletree, Deakins, Nash, Smoak & Stewart, P.C. and Leah Lively to be alar[ ] and coerced by the contact; contrary to statute and against the peace and dignity of the State of Oregon;

NFORMATION  (ANDREW GLEN CLARK)

EXHIBIT 20
Page 13 of 23

## COUNT 3

The defendant, on or between August 1, 2012, and July 23, 2013, in Lane County, Oregon, in an act and transaction separate and distinct from all others alleged in this Information, did unlawfully and knowingly alarm and coerce the law firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., and staff attorney Leah Lively, by engaging in repeated and unwanted contact with the said victims, this contact causing Ogletree, Deakins, Nash, Smoak & Stewart, P.C. and Leah Lively reasonable apprehension regarding their personal safety, and it being objectively reasonable for a person in the situation of Ogletree, Deakins, Nash, Smoak & Stewart, P.C. and Leah Lively to be alarmed and coerced by the contact; contrary to statute and against the peace and dignity of the State of Oregon;

## COUNT 4

The defendant, on or between August 1, 2012, and July 23, 2013, in Lane County, Oregon, in an act and transaction separate and distinct from all others alleged in this Information, did unlawfully and knowingly alarm and coerce the law firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., and staff attorney Leah Lively, by engaging in repeated and unwanted contact with the said victims, this contact causing Ogletree, Deakins, Nash, Smoak & Stewart, P.C. and Leah Lively reasonable apprehension regarding their personal safety, and it being objectively reasonable for a person in the situation of Ogletree, Deakins, Nash, Smoak & Stewart, P.C. and Leah Lively to be alarmed and coerced by the contact; contrary to statute and against the peace and dignity of the State of Oregon;

## COUNT 5

The defendant, on or between August 1, 2012, and July 23, 2013, in Lane County, Oregon, in an act and transaction separate and distinct from all others alleged in this Information, did unlawfully and knowingly alarm and coerce the law firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., and staff attorney Leah Lively, by engaging in repeated and unwanted contact with the said victims, this contact causing Ogletree, Deakins, Nash, Smoak & Stewart, P.C. and Leah Lively reasonable apprehension regarding their personal safety, and it being objectively reasonable for a person in the situation of Ogletree, Deakins, Nash, Smoak & Stewart, P.C. and Leah Lively to be alarmed and coerced by the contact; contrary to statute and against the peace and dignity of the State of Oregon;

## COUNT 6

The defendant, on or between August 1, 2012, and July 23, 2013, in Lane County, Oregon, in an act and transaction separate and distinct from all others alleged in this Information, did unlawfully and knowingly alarm and coerce the law firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., and staff attorney Leah Lively, by engaging in repeated and unwanted contact with the said victims, this contact causing Ogletree, Deakins, Nash, Smoak & Stewart, P.C. and Leah Lively reasonable apprehension regarding their personal safety, and it being objectively reasonable for a person in the situation of Ogletree, Deakins, Nash, Smoak & Stewart, P.C. and Leah Lively to be alarmed and coerced by the contact; contrary to statute and against the peace and dignity of the State of Oregon;

## COUNT 7

The defendant, on or between August 1, 2012, and July 23, 2013, in Lane County, Oregon, in an act and transaction separate and distinct from all others alleged in this Information, did unlawfully and knowingly alarm and coerce the law firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., and staff attorney Leah Lively, by engaging in repeated and unwanted contact with the said victims, this contact causing Ogletree, Deakins, Nash, Smoak & Stewart, P.C. and Leah Lively reasonable apprehension regarding their personal safety, and it being objectively reasonable for a person in the situation of Ogletree, Deakins, Nash, Smoak & Stewart, P.C. and Leah Lively to be alarmed and coerced by the contact; contrary to statute and against the peace and dignity of the State of Oregon;

//

INFORMATION  (ANDREW GLEN CLARK)

EXHIBIT 20
Page 14 of 23

## COUNT 8

The defendant, on or between August 1, 2012, and July 23, 2013, in Lane County, Oregon, in an act and transaction separate and distinct from all others alleged in this Information, did unlawfully and knowingly alarm and coerce the law firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., and staff attorney Leah Lively, by engaging in repeated and unwanted contact with the said victims, this contact causing Ogletree, Deakins, Nash, Smoak & Stewart, P.C. and Leah Lively reasonable apprehension regarding their personal safety, and it being objectively reasonable for a person in the situation of Ogletree, Deakins, Nash, Smoak & Stewart, P.C. and Leah Lively to be alarmed and coerced by the contact; contrary to statute and against the peace and dignity of the State of Oregon;

## COUNT 9

The defendant, on or between August 1, 2012, and July 23, 2013, in Lane County, Oregon, in an act and transaction separate and distinct from all others alleged in this Information, did unlawfully and knowingly alarm and coerce the law firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., and staff attorney Leah Lively, by engaging in repeated and unwanted contact with the said victims, this contact causing Ogletree, Deakins, Nash, Smoak & Stewart, P.C. and Leah Lively reasonable apprehension regarding their personal safety, and it being objectively reasonable for a person in the situation of Ogletree, Deakins, Nash, Smoak & Stewart, P.C. and Leah Lively to be alarmed and coerced by the contact; contrary to statute and against the peace and dignity of the State of Oregon; and

## COUNT 10

The defendant, on or between August 1, 2012, and July 23, 2013, in Lane County, Oregon, in an act and transaction separate and distinct from all others alleged in this Information, did unlawfully and knowingly alarm and coerce the law firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., and staff attorney Leah Lively, by engaging in re    ed and unwanted contact with the said victims, this contact causing Ogletree, Deakins, Nash, Smoak & Stewart, P.C. and Leah Lively reasonable apprehension regarding their personal safety, and it being objectively reasonable for a person in the situation of Ogletree, Deakins, Nash, Smoak & Stewart, P.C. and Leah Lively to be alarmed and coerced by the contact; contrary to statute and against the peace and dignity of the State of Oregon.

DATED this 25th day of July, 2013 at Eugene, Lane County, Oregon.

1.  ORS 163.732/Class A Misdemeanor
2.  ORS 163.732/Class A Misdemeanor
3.  ORS 163.732/Class A Misdemeanor
4.  ORS 163.732/Class A Misdemeanor
5.  ORS 163.732/Class A Misdemeanor
6.  ORS 163.732/Class A Misdemeanor
7.  ORS 163.732/Class A Misdemeanor
8.  ORS 163.732/Class A Misdemeanor
9.  ORS 163.732/Class A Misdemeanor
10. ORS 163.732/Class A Misdemeanor

ALEX GARDNER, District Attorney

By: _____

Erik V. Hasselman, OSB 94510
Assistant District Attorney
Erik.Hasselman@co.lane.or.us

Agency:   EGP 13-10194
DOB:      8/8/1958
DA No.:   039271301
FPN:
SII       5971848
FBI:      23042X9

NFORMATION   (ANDREW GLEN CLARK)

| | |
|---|---|
| **From:** | Operation SunriseLAW |
| **To:** | John E. Pollino; OSB CAO Intake; bill.williams@usdoj.gov |
| **Subject:** | Re: Conferral on Case No. 6:20-cv-00253-AA |
| **Date:** | Wednesday, April 8, 2020 10:31:12 AM |
| **Attachments:** | stipulatedjudgement.pdf<br>mcalpin.pdf |

Added note:  the attached 'stipulated agreement' was the result of a perfectly-evidenced "Hobbs Act Violation" 18 USC 1951 including  the illegal third party benefits under color of official rights within a very obvious manufactured 'crime'.  Also attached is a letter I mailed and provided in other manners to local judge Jay McAlpin notifying the local Court of my obligations under Federal law.  All that evidence and far more is COMPLETELY BYPASSED (I.E. OBSTRUCTED IN THE COURTS), WHICH IS WHY 6:20-cv-253.aa INCLUDES THE CLAYTON/SHERMAN ATA COMPONENT.

Clayton/Sherman is appropriate for public corporations (and entities such as OSB) who are allowing, paying for, or using the fruits of what can only be described as "thinly veiled organized crime". The proven, repeated use of POLICE AND OTHER OFFICIAL ORGANS to Tamper is generally the defining feature of organized crime, particularly in the USA as I read the literature.   Using the courts and exploiting weaknesses in the case management system to continue the obstruction of fairly simple facts and evidence is another metric of "organized crime".

<u>Do you THINK Wells Fargo responsible corporate officers would condone what was inflicted upon me in their name by **YOUR CLIENTS**</u>?  Keep in mind that my FBI / DOL  filing on 5-25-11 coupled with significant internal reporting and retaliation ( in theory) subjected Wells Fargo executives to criminal prosecution under Sarbanes-Oxley.  5-25-11 SEC  changed the "whistleblower rules" to NOT require internal reporting under Dodd-Frank but my case totally comports to the "old rules" which were scary to bank management at the time.  I also made sure Wells Fargo management was aware while still employed there but I later learned Ogletree Deakins was brought in around May 1, 2011 and routed all my reporting to themselves using the Wells Fargo email system.  Ogletree Deakins was known to do all that and more (example: Sheriff Joe, Maricopa County AZ as shown in complaint).

Thank you from Andy Clark    541.510.3915

 Virus-free. www.avast.com

On Wed, Apr 8, 2020 at 9:38 AM Operation SunriseLAW <operationsunriselaw@gmail.com> wrote:

> Please see attached Federal Major Crime Report.  It was filed March 26 and provided to Mr. Billy Williams (USAG for Oregon).  I assert that any filing you make that does not specifically address the root crime is 'obstructive'.  A key activity of an attorney who is participating in a RICO enterprise (or any crime) is filing obstructive pleadings devoid of consideration of the facts and evidence.  I refer to that as 'boilerplate'.  I would like to meet with you or spend some time on the telephone to ensure you understand the attached BEFORE you file.   <u>I am cc'ing your Bar for transparency as well as Mr. Williams.</u>

EXHIBIT 20
Page 16 of 23

Obstruction and concealment of that simple root crime of the enterprise is ongoing so the Statute of Limitations is not tolling.  Plus, all activity fits within the 10/4 year RICO timeframe (given obstruction).  The 'stalking conviction' you reference is the result of a Hobbs Act Violation as detailed in the Complaint. There was no stalking as I proved and I pleaded guilty to one count because system fraud of Risk Assessment Tool caused intolerable suffering as described in my complaint.   Among the items in "Prayer for Relief" is correction of the obviously-bogus public records that resulted from your client's repeated and ongoing criminal activity.

Mr. Pollino:  Your clients have absolutely no valid defense to the attached Crime Report.  Please take a few moments to understand it and correctly advise your clients given that information they tried so hard to obstruct and conceal.   Thank you, from Andy Clark
 541.510.3915

 Virus-free. www.avast.com

On Wed, Apr 8, 2020 at 9:17 AM John E. Pollino <jpollino@ghrlawyers.com> wrote:

> Dear Mr. Clark,
>
>
> I'm am emailing to confer with you prior to filing several motions in Case No. 6:20-cv-00253-AA that you filed in the United States District Court for the District of Oregon, Eugene Division, on February 14, 2020. Of the defendants you named in that case, I represent Ogletree Deakins, Leah Lively, David Symes, Christopher Mixon, and Steven Seymour.
>
>
> I plan to file the following motions on Thursday, April 9, 2020:
>
>
> 1. A Motion to Dismiss;
> 2. A Motion for a Protective Order; and
> 3. A Motion Declaring Plaintiff a Vexatious Litigant.
>
>
> The Motion to Dismiss will be based on four grounds:
>
>
> 1. All claims listed in your complaint are time-barred;
> 2. All claims in your complaint are barred by the doctrine of *res judicata*, or claim preclusion;
> 3. Failure to state a claim under Federal Rule of Civil Procedure ("FRCP") 12(b)(6);

EXHIBIT 20
Page 17 of 23

and

4. Your inability to sue under FRCP 9(a)(2) based on the plea agreement in your criminal stalking conviction.

Regarding the first argument in the Motion to Dismiss, the statute of limitations has run for all potential claims listed in your complaint. The events described in your complaint occurred in 2011 or 2013 and are related to your termination from Wells Fargo employment and subsequent lawsuits brought either by Wells Fargo or by you. The most recent allegations in your complaint relate to the plea agreement you entered in January 2014 during your criminal stalking case. The longest period under any of the statutes of limitations for alleged claims in your complaint is five years. Because you filed this lawsuit on February 14, 2020, any alleged violations that occurred before February 14, 2015, are outside any statute of limitations. Also, none of the statutes of limitations have been tolled based on the legal conclusions contained in your complaint.

Regarding the second argument, all your claims are barred by the doctrine of *res judicata* because they have been or could have been raised in one of your previous lawsuits against the same parties or parties in privity. Subsequent and repeat litigation is barred even if it is based on a different legal theory. The gravamen of your complaint in this matter is the same as complaints you have made in previous suits against the same defendants, or against parties in privity with the defendants I represent. All your previous claims have been adjudicated on the merits under the meaning of FRCP 41(b).

Regarding the third argument, none of your claims in this matter meet the pleading standard required in federal courts to survive dismissal under FRCP 12(b)(6). The racketeering claims fail because you did not distinguish between an alleged criminal enterprise and its alleged participants and you did not allege adequate predicate acts of racketeering activity. Your constitutional claims under 42 USC § 1983 fail because you have not adequately pled that the defendants I represent were involved in a public function. Claims regarding employment retaliation fail under both discrimination because you have not adequately pled your membership in a protected class and whistleblower laws because you have not adequately pled that you engaged in a protected activity. Any antitrust claims also fail because the complaint alleges that Wells Fargo conspired with and against itself through its agents, which necessarily causes antitrust claims to fail. Any claims of fraud do not meet the heightened pleading requirements of FRCP 9(b). Finally, any false arrest claims related to your criminal conviction fail because those actions are legally valid based on the plea agreement in that case.

I also intend to move the court for dismissal based on your lack of authority to sue under FRCP 9(a)(2) without represented counsel. In previous cases, both criminal and civil, you have been ordered to have no contact with the defendants I represent except through represented counsel. Because you do not have counsel in this case, I will ask the court to dismiss this case unless and until you retain counsel, as has been done in previous matters.

EXHIBIT 20
Page 18 of 23

Regarding the Motion for a Protective Order and Motion to Declare Plaintiff a Vexatious Litigant, based on your previous litigation history with my clients, I will be asking the judge for a protective order to limit all communications in this matter. I will request that any communications you wish to have with my clients go through me and that you be prohibited from communicating with my clients directly.

In addition, because of the history regarding the parties in this case, and the barrage of communications sent to my clients in this and previous matters, I will be asking the court to declare you a vexatious litigant. Prior to declaring a litigant vexatious, a court must: (1) provide the litigant notice and a chance to be heard; (2) create an adequate record for review; (3) make substantive findings as to the frivolous or harassing nature of the litigant's actions; and (4) ensure any pre-filing order is narrowly tailored to closely fit the specific conduct involved. I intend to ask the court for an order prohibiting you from filing any pleadings, motions, or other materials against my clients, or any lawyers retained to represent them, without first obtaining leave from the presiding judge of the court.

We ask that you agree to dismiss your claims against my clients and stipulate to a requirement of court review prior to any further filings in this or any other matter involving my clients or their retained counsel.

Do not contact my clients directly.  Any correspondence regarding this case and my clients should be directed to me.  Please respond with your position regarding these motions and if you will agree to dismiss your claims.

Sincerely,

**John Pollino**
**Garrett Hemann Robertson P.C.**
Willamette Professional Center ▪ 1011 Commercial St. NE
Salem, Oregon 97301-1049
(503) 581-1501 ▪ 1-800-581-1501 ▪ Fax (503) 581-5891 ▪ www.ghrlawyers.com

**Confidentiality Notice**: This email and any attachments contain attorney privilege and confidential information intended only for the use of the individual or entity named above.  Any dissemination, distribution, and copying of this email to unintended parties are strictly prohibited.  If you have received this email in error, please immediately notify us by email or telephone.

EXHIBIT 20
Page 19 of 23

 Virus-free. www.avast.com

EXHIBIT 20
Page 20 of 23

March 11, 2020

Hon. Judge Jay McAlpin  Lane County Circuit Court
125 East Broadway  Eugene, OR 97401

Subject: 21.13.14234 Self-Reporting of Necessary Contact
Request for Assistance to Ensure Service of Federal Documents

Dear Judge McAlpin:

This letter is to self-report contact that could be alleged to conflict with the court order in the case.  I consider the order a product of an obvious and well-documented violation of the Hobbs Act (18 USC 1951), one of the predicate acts of RICO as alleged and evidenced in Federal Case 6.20.cv.253.aa **but I fully realize my obligation to abide by it**.  I also have an obligation to honestly balance it against Federal Banking laws that relate to while-employed FBI evidence-parking that is later subjected to physical tampering.  I am not aware of any problem but want to head them off.

Judge McAlpin:  No corporate crime is more rare and serious than physically tampering or intimidation of a federally-insured bank worker who had been admitted to local FBI to deliver crime reports and evidence and had given a copy to his manager, as mandated by policy and training.  Such cases get prosecuted similarly to a lurid case of aggravated murder only with more vengeance and a much wider net.  The consequences to the involved corporations, their workforce, and the public are so dire that civil litigation such as the lawsuit is permitted under the law to avoid criminal prosecution.

I feel that it is rightful for you to make contact with Mr. Hasselman, Leah Lively, Steven Seymour, and Christopher Mixon of Ogletree Deakins and advise them of their legal and ethical obligation to not "duck service" and cooperate with federal processes.  I am sure you can appreciate that eventually I have to followup with them should they not respond and they could portray that wrongly as they did in subject case.  Hasselman committed his major violent federal felonies using his 20 years experience against the trusting judges via flagrant system fraud.  <u>Part of the systemic manipulation in my case and others was totally distorting the facts in systems the judges use to make decisions.  It was what Judge Mooney appears to have objected to.</u>   They do that in the "family court" as well, hear holocaust in process...legal court audio recordings of our hearings are posted on **www.WellsFargoWitz.com**

I pleaded to one count after SIX MONTHS in Erik's ankle bracelet when I found out he could (and would) keep me in it another year and a half.  Judge McAlpin: try an ankle bracelet for a month or so then issue an injunction against them.  They are a silly, destructive abomination; as is Erik Hasselman.  What makes Hasselman's crime spree so severe was the sheer number of other people he involved, the number of controls he violated, and the physical nature of his actions against me to conceal several major violent federal felonies.

You were among the most deeply involved people and I feel it is essential for you to privately cut through his abject lies and use your bench to resolve the circuit court records against me based upon obvious evidence… **www.RisePatriot.com/ErikHasselman.html** .  I feel Judge Vogt should "retire" pronto: **www.RisePatriot.com/JudgeVogt.html** .

Thank you, from Andrew (Andy) Clark
3270 Stoney Ridge Rd.
Eugene OR  97405   541.510.3915

EXHIBIT 20
Page 21 of 23

F I L E D

AT .....11:55..... O'CLOCK ...A..... M

JAN 13 2014

Circuit Court For Lane County, Oregon
BY _____Sakurai_____

IN THE CIRCUIT COURT OF THE STATE OF OREGON FOR LANE COUNTY

STATE OF OREGON,

                          Plaintiff,

    v.

ANDREW GLEN CLARK,

                          Defendant.

Case No. 21-13-14234

JUDGMENT
(Bench Probation)

THIS MATTER came before the Court for sentencing on January 9, 2014, the defendant having previously been charged with the crimes of Stalking (Count 1), Stalking (Count 2), Stalking (Count 3), Stalking (Count 4), Stalking (Count 5), Stalking (Count 6), Stalking (Count 7), Stalking (Count 8), Stalking (Count 9), and Stalking (Count 10). The defendant has been found guilty of the crime of **Stalking (Count 1)** by plea on January 9, 2014, and the Court has accepted such plea.

IT IS HEREBY ADJUDGED and entered that the defendant, Andrew Glen Clark, whose date of birth is August 8, 1958, is convicted of **Stalking (Count 1)**. The defendant waived passage of two days before sentencing. This being the time fixed for sentencing, the State appeared through **Erik V. Hasselman**, Assistant District Attorney, and the defendant appeared personally and through counsel **John M. Halpern**. Each party having been given the right to be heard, these proceedings having been reported by FTR Digital Recorder, Courtroom 204, Official Court Reporter, and the Court being fully advised;

IT IS HEREBY ORDERED that any fee, fine, assessment or statutorily required filing fee that may have been imposed in this judgment are waived.

### Count 1 -- Stalking

IT IS FURTHER ORDERED that the defendant is sentenced to probation to the Court for the crime of Stalking for a period of **24 months** subject to the terms and conditions set forth below and hereby made a part of this Judgment:

Case No.: 21-13-14234
JAN 14 2014
FTR 4 33384 -85
VBC 27.5 2c28-29

EXHIBIT 20
Page 22 of 23

1.      Defendant shall violate no law and shall report to the court **in writing** every citation or arrest on any new crime or major traffic offense within five days after citation or arrest. Correspondence should be mailed to: Lane County Circuit Court, 125 East 8th Avenue, Eugene, Oregon, 97401, and all correspondence should include the case number 21-13-14234.

2.      Defendant shall keep the Court informed at all times **in writing** of any changes in name or residence address within five days. Correspondence should be mailed to: Lane County Circuit Court, 125 East 8th Avenue, Eugene, Oregon, 97401, and all correspondence should include the case number 21-13-14234.

3.       Defendant shall serve a period of **7 days** in the custody of the Lane County Supervisory Authority, with credit for time served, considered served.

4.      Defendant shall comply with the limited duration Stalking Order in Case Number 18-14-00649 and all of its provisions.

5.      Defendant shall have no contact of any kind with Leah C. Lively, with any employee or staff member of the law firms of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., or Samuels Yoelin Kantor, LLP, except by or with represented counsel.

5.      Defendant shall, by no later than February 28, 2014, provide releases from Quality Research Associates (QRA) to the Court and the District Attorney's office so that all parties may kept apprised of Defendant's status with QRA as outlined in the limited duration Stalking Order in Case Number 18-14-00649.

        IT IS FURTHER ORDERED AND ADJUDGED that the following counts are dismissed as to the Defendant pursuant to negotiations: **Stalking (Count 2), Stalking (Count 3), Stalking (Count 4), Stalking (Count 5), Stalking (Count 6), Stalking (Count 7), Stalking (Count 8), Stalking (Count 9)**, and **Stalking (Count 10)**.

        Thereupon the Court advised the defendant of the rights of appeal.

Dated this __13__ day of January, 2014.

                                                        _____
                                                        Jay A. McAlpin, Circuit Court Judge

Prepared by: E. Sakurai

Judgment – Page 2                                        Case No.: 21-13-14234

EXHIBIT 20
Page 23 of 23