**Helen M. McFarland** OSB# 013176
hmcfarland@seyfarth.com
SEYFARTH SHAW LLP
800 5th Avenue, Ste. 4100
Seattle, WA 98104
Telephone: (206) 946-4923
Facsimile: (206) 260-8839

**Christian J. Rowley** (*Pro Hac Vice*)
Crowley@seyfarth.com
SEYFARTH SHAW LLP
560 Mission Street, 31st Floor
San Francisco, California  94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

*Attorneys for Wells Fargo Bank, N.A., Christian Rowley,
and Peter Urias*

Hon. Ann Aiken

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **ANDREW G. CLARK,**<br><br>Plaintiff Pro Se,<br><br>v.<br><br>**WELLS FARGO BANK, N.A.**, *et al.*<br>Defendants. | Case No. **6:20-cv-253-AA**<br><br>DECLARATION OF CHRISTIAN J. ROWLEY IN SUPPORT OF DEFENDANT WELLS FARGO BANK, N.A.'S EX PARTE APPLICATION TO LIMIT PLAINTIFF'S CONTACT WITH WELLS FARGO AND DIRECT COMMUNICATIONS TO ITS COUNSEL OF RECORD ONLY, AND FOR SANCTIONS |

I, Christian Rowley, hereby declare as follows:

1.      I am a partner with the law firm Seyfarth Shaw LLP ("Seyfarth"), which is counsel of record for defendant Wells Fargo Bank, N.A ("Wells Fargo").  I am an attorney licensed to practice law in the state and federal courts of California, Utah and Massachusetts. I have applied for, and was granted, admission *pro hac vice* to the United States District Court for the District of Oregon in connection with the above-captioned lawsuit. The following is based upon my own personal knowledge, and if called upon to testify thereto, I could accurately do so.

2.      Seyfarth was retained to represent Wells Fargo, Wells Fargo & Company, Inc., and Wells Fargo Home Mortgage in the matter of *Clark v. Wells Fargo Bank, N.A., et al*. ("*Clark III*"), No. 6:13-cv-01546-AA, 2014 WL 2998600 (D. Or. July 1, 2014). I was lead counsel in *Clark III*.

3.      Seyfarth also represented Wells Fargo in the matter of *Clark v. Hasselman et al.* ("*Clark IV*"), No. 6:14-cv-01103-TC, 2016 WL 3474178 (D. Or. Apr. 4, 2016). I was lead counsel in *Clark IV*.

4.      In *Clark IV*, Clark sent dozens of unsolicited faxes to numerous other attorneys at both Seyfarth, including myself and my former colleague, Peter Urias, and Williams Kastner co-counsel of record for Wells Fargo. To prevent further unsolicited communications, Seyfarth asked Clark to direct all communications to counsel of record, but Clark ignored Seyfarth's request and continued to contact Wells Fargo directly, including members of Wells Fargo's Board of Directors. Seyfarth sent a cease and desist letter to Clark, but Clark did not stop his communications and, instead, his communications became increasingly inappropriate and

unprofessional. Wells Fargo sought judicial intervention, and the Court ordered Clark to refrain from contacting or communicating with any officer, director, employee, branch or office, or other person affiliated with Wells Fargo concerning this litigation <u>or any other matter</u> unless authorized by the Court, and to direct any such communications to me. Even after *Clark IV* was dismissed with prejudice, Clark continued to send many unsolicited communications to me, numerous attorneys at Seyfarth who have no involvement in Plaintiff's lawsuits, as well as various completely unrelated third parties. Because of Plaintiff's past behavior, I hold a good faith belief that a meet and confer effort with Plaintiff regarding this ex parte application would be futile.

5. On March 25, 2020, Clark faxed what appears to be a letter addressed to "Billy Williams, United States Attorney for Oregon" to a Wells Fargo Branch. On information and belief, this fax was sent to a branch in Colorado. None of the Wells Fargo branches, including the branches in Colorado, has any involvement in this lawsuit on any of the allegations or events underlying Plaintiff's claims. This communication had to be transmitted from the Wells Fargo Branch to the appropriate individual at Wells Fargo's Legal Department, which was then transmitted to me. Exhibit A attached hereto is a true and correct copy of Plaintiff's March 25, 2020 facsimile.

6. On April 9, 2020, Clark faxed a document entitled "Motion for Judicial Notice of Adjudicative Facts and Clarification of Claim for Relief" to three separate Wells Fargo Branches, in New York, New Jersey, and Oregon. Plaintiff sent these faxes at different times that day. On information and belief, the Wells Fargo's legal department located in Los Angeles already received copies of this document. These communications had to be transmitted from

the respective Wells Fargo Branch to the appropriate individual at Wells Fargo's Legal Department, which was then transmitted to me. Exhibit B attached hereto is a true and correct copy of Plaintiff's April 9, 2020 facsimile to a New York Branch. Exhibit C attached hereto is a true and correct copy of Plaintiff's April 9, 2020 facsimile to a New Jersey Branch. Exhibit D attached hereto is a true and correct copy of Plaintiff's April 9, 2020 facsimile to an Oregon Branch. The Wells Fargo branches in New York, New Jersey, and Oregon to which Plaintiff faxed his "Motion" have no involvement in this lawsuit or any of the allegations or events underlying Plaintiff's claims.

7.      On April 13, 2020, Plaintiff sent the Wells Fargo's Board of Directors a correspondence through the Board of Directors' email address, with the subject line of "Bar Complaint - 18 USC 1621 violation." This correspondence was also emailed to John Pollino, counsel of record for the Ogleree defendants, and individuals who appear to be part of the American Bar Association and the Oregon State Bar. This correspondence was also served through Wells Fargo's service of process agent in Delaware, Corporate Service Company. These communications had to be transmitted from the Board of Directors to the appropriate individual at Wells Fargo's Legal Department, which was then transmitted to me. Exhibit E attached hereto is a true and correct copy of Plaintiff's April 13 email that was sent to the Board of Directors and to Corporate Service Company. None of the individuals on Wells Fargo's Board of Directors has any involvement in this lawsuit or any of the allegations or events underlying Plaintiff's claims.

8.      On information and belief, employees at these various Wells Fargo branches and the Board of Directors who received Plaintiff's communications had to disrupt their duties,

including helping clients deal with the COVID-19 crisis, and expend time and effort to review and identify these communications and ensure that the communications were transmitted to the appropriate individuals in Wells Fargo's legal department.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the State of Oregon and the United States that the foregoing is true and correct.

Executed on April 16, 2020 in San Francisco, California.


_____s/ Christian Rowley_____
CHRISTIAN ROWLEY

# EXHIBIT A

March 18, 2020
Billy Williams, United States Attorney for Oregon
1000 SW 3rd Ave Ste 600  Portland OR  97204
c/o Eugene OR Office in Wayne Morse Courthouse

Re: Wells Fargo &
Ogletree Deakins

## FEDERAL MAJOR VIOLENT CRIME REPORT
Repeated,  Physical Tampering of a Federal Witness in Active
Department of Labor **and** Office of Comptroller of Currency Investigations.
Obstruction of Justice via Rampant Public Corruption Including Hobbs Act Violations.
Novel Crimes:  Deliberate, Knowing Use of Family Courts as a Means of Tampering,
Fraudulent and Coordinated Use of Local, State, and Federal Justice Systems to Obstruct.

My civil complaint 6.20.cv.253.aa does a very good job of documenting actions against me and linking them to my employment at Wells Fargo.  But unless it is read carefully, it could leave a reader wondering "what crimes could possibly have been committed so extreme that a group of people would be used to conceal it by committing a series of RICO crimes including the use of courts to obstruct justice?   What evidence could a lowest-level worker possibly have of it?"

1.  A police report is a very special and perfect type of evidence. Attached is a page from a Eugene, OR police report dated July 19, 2011.  It is Page 82 of the civil complaint.  It is from before all the RICO crimes were committed against me.  It shows Wells Fargo corporate security agent Martin Ogno was aware I had filed reports with Federal Bureau-Investigation (FBI) in Eugene OR, therefore Wells Fargo was aware.  Most shocking: Eugene Police told Ogno I considered his "well-being visit at my home at night by uniformed SWAT police" to be retaliation. Ogno told Eugene Police to 'fuhggedaboutit' and explains he had contacted FBI and that FBI did not take my (just filed in-person and sworn-to well-evidenced, voluminous) reports seriously.   Think of that horrific violation of City of Eugene Police.

2.  After that is a printout of Department of Justice publication "Criminal Resource Manual 1729".  It has a standard archive disclaimer but the content is valid, last updated January 2020.  A person who reports to a federal law enforcement agency such as FBI is a Federal Witness.  Tampering with a Federal Witness is a violation of 18 USC 1512, particularly when Federal investigations are in process.

3.  Two different Federal Investigations were in process.  Next exhibits are proof from Department of Labor and Office of Comptroller of Currency of recently accepted Federal investigations.  The PACER system records for SLAPP-suit 6.11.cv.06248.ho and my subsequent civil actions show exactly how the courts were used to bypass discovery of the above crimes.

4.  My civil complaint enumerates and documents the RICO crimes committed against me.  Please note that I presented Tampering using false arrest and jail as violations of 18 USC 1201 by Wells Fargo/ Ogletree Deakins:, armed kidnapping for political or economic motivations.  Use of police to tamper with a Federal Witness is absolutely gangland.  It is as bad it gets, other than the novel crimes listed above and detailed in the civil complaint.

5.  Related but not relevant to the crime report: I motioned for Wells Fargo and Company to intervene. It is in PACER.  It is possible that everything that happened was actually a Wells Fargo & Co. project. A metaphor for that is found on www.TheEugeneBlairProject.com.  I placed the Circuit Court and Police a/v on www.RisePatriot.com and www.WellsFargoWitz.com (family court).

Thank you from Andy Clark 3270 Stoney Ridge Rd. Eugene OR 97405 541.510.3915 (exhibits follow)

was Officer Pieske who was there with us during the contacts and told Clark that Officer Pieske concurred with my findings in the matters. I asked Clark if there was anything else I could do for him. Clark said there was nothing else I could do for him and he left city hall.

Also per Sergeant Klinko's request, I contacted Marty Ogno, head of security for Wells Fargo. I called Ogno and told him I had contacted Clark and that he had been advised he was trespassed from all Wells Fargo properties. I also told Ogno Clark was concerned he had $24,000 in an account at Wells Fargo. Ogno said he had looked it up and though Clark only had about $200 in an account, but that he would close Clark's account and mail him a check with the remaining balance. Ogno asked how the contact went. I told Ogno that Clark felt he was being retaliated upon for contacting the FBI and CIA with Wells Fargo's wrong doings. Ogno said that he had been in contact with the FBI and told me that the FBI did not take Clark's reports seriously.

**>>>>>**

**FBI would
not say that.**

At approximately 1900 hours, dispatch advised that Clark had left a phone number for me to call him back so he could further discuss his desire to press charges against Wells Fargo for filing a false police report. I requested Sergeant Magnuson respond to the report writing room where I was working on reports so I could discuss the situation with him before calling Clark back. While I was explaining the situation to Sergeant Magnuson, Dispatch advised that Clark had called back 3 more times requesting contact. I then asked Sergeant Magnuson if he would contact Clark in my behalf in that I was unable to effectively communicate to Clark that Wells Fargo had broken no laws and that they had the right to trespass Clark from their properties.

**Notice no
person at
FBI is
referenced.**

**It is corruption
of FBI processes**   Reviewed by FTO: **Pieske**          **112**
**and obstruction.**                    Name              Badge

**BTW, I did
report to CIA via
nationwide fax#
and consulate
offices in
Bangalore and
Hyderabad India
due to concerns
related to
system
development
work on the
CORE/ELF
system I had to
use here that
was being badly
programmed in
India.**

Esch
6623                           07-19-11 2330 Hours               Approved By: Magnuson 122

To: fax    Page 3 of 8                          2020-03-25 13:31:26 (GMT)                          13034846329 From: Andrew Clark

3/16/2020        1729. Protection Of Government Processes -- Tampering With Victims, Witnesses, Or Informants -- 18 U.S.C. 1512 | JM | Department of ...



An official website of the United States government  Here's how you know

THE UNITED STATES
DEPARTMENT This archived content from the U.S. Department of Justice website. The information here may be outdated and links may no longer
function. Please contact webmaster@usdoj.gov if you have any questions about the archive site.

## 1729. PROTECTION OF GOVERNMENT PROCESSES -- TAMPERING WITH VICTIMS, WITNESSES, OR INFORMANTS -- 18 U.S.C. 1512

Section 1512 of Title 18 constitutes a broad prohibition against tampering with a witness, victim or informant. It proscribes conduct intended to illegitimately affect the presentation of evidence in Federal proceedings or the communication of information to Federal law enforcement officers. It applies to proceedings before Congress, executive departments, and administrative agencies, and to civil and criminal judicial proceedings, including grand jury proceedings. See 18 U.S.C. § 1515(a)(1). In addition, the section provides extraterritorial Federal jurisdiction over the offenses created therein. See 18 U.S.C. § 1512(g); 128 Cong. Rec. H8469 (daily ed. Oct. 1, 1980); H. R. Rep. No. 1369, 96th Cong., 2d Sess. 20-22 (1980).

The express prohibitions against tampering with witnesses and parties contained in former 18 U.S.C. §§ 1503 and 1505, are now in paragraphs (b)(1) and (2) of 18 U.S.C. § 1512. (As discussed in this Manual at 1724 and 1727, the omnibus clauses of these provisions still cover witnesses.) All forms of tampering with informants covered in former 18 U.S.C. § 1510, with the exception of tampering by means of bribery, are now proscribed by 18 U.S.C. § 1512(b)(3). Tampering with informants by means of bribery remains an 18 U.S.C. § 1510 offense.

Section 1512 augments the prohibitions of the former law in several important respects. First, section 1512(b)(3) sweeps more broadly than former 18 U.S.C. § 1510 and expands the class of informants protected by Federal law. For example, it protects individuals having information concerning a violation of a condition of probation, parole, or bail whether or not that violation constitutes a violation of any other Federal criminal statute. Second, it protects individuals seeking to provide information to Federal judges or Federal probation and pretrial services officers.

Section 1512 also includes attempts in its list of prohibited conduct. There is no requirement that the defendants actions have the intended obstructive effect. See, e.g., United States v. Murray, 751 F.2d 1528 (9th Cir.), cert. denied, 474 U.S. 979 (1985); United States v. Wilson, 796 F.2d 55 (4th Cir. 1986), cert. denied, 479 U.S. 1039 (1987). As amended by the Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. 99-646, it is clear that the killing of a witness or attempts to kill a witness in order to prevent his/her testimony constitutes an act of force intended to "influence the witness' testimony." See 18 U.S.C. § 1512(a). This change was necessitated by one court interpreting former § 1512 as not reaching an act of attempted murder that was intended to prevent a witness from testifying. See United States v. Dawlett, 787 F.2d 771 (1st Cir. 1986).

The section specifically abolishes the pending proceeding requirement of 18 U.S.C. §§ 1503 and 1505. The provision also eliminates ambiguity about the class of individuals protected. Although the former law protected witnesses, parties, and informants, it was unclear whether that law reached the intimidation of third parties (for example, the spouse of a witness) for the purpose of intimidating the principal party. Section § 1512 of Title 18 plainly covers such conduct, for it speaks of conduct directed toward "another person." See 128 Cong. Rec. H8203 (daily ed. Sept. 30, 1982).

Section 1512 protects potential as well as actual witnesses. With the addition of the words "any person," it is clear that a witness is "one who knew or was expected to know material facts and was expected to testify to them before pending judicial proceedings." United States v. DiSalvo, 631 F.Supp. 1398 (E.D. Pa. 1986), aff'd, 826 F.2d 1054 (3d Cir. 1987). Under § 1512, an individual retains his/her status as a witness even after testifying. United States v. Wilson, 796 F.2d 55 (4th Cir. 1986), cert. denied, 479 U.S. 1039 (1987) (protection of witness under § 1512 continues throughout the trial); United States v. Patton, 721 F.2d 159 (6th Cir. 1983) (witness retains status while defendant's motion for a new trial is pending); United States v. Chandler, 604 F.2d 972 (5th Cir. 1979) (witness retains status while case is pending on direct appeal). Cf. United States v. Risken, 788 F.2d 1361 (8th Cir.), cert. denied, 479 U.S. 923 (1986) (party was a witness after asserting his Fifth Amendment privilege and being dismissed from the stand since he could be recalled at any time).

Section 1512 of Title 18 contains two significant additions to the types of tampering barred by Federal law. First, it forbids "misleading conduct," as defined in 18 U.S.C. § 1515. Such conduct was not covered in those circuits that had narrowly construed the omnibus clauses of 18 U.S.C. §§ 1503 and 1505 under the rule of ejusdem generis. See United States v. Metcalf, 435 F.2d 754 (9th Cir. 1970); United States v. Essex, 407 F.2d 214 (6th Cir. 1969). see generally, 128 Cong. Rec. H8203 (daily ed. Sept. 30, 1982). Second, 18 U.S.C. § 1512 makes intentional harassment a misdemeanor. This offense is intended to reach conduct less egregious than the corrupt, threatening or forceful conduct required for a violation of former 18 U.S.C. §§ 1503 and 1505. Harassing conduct has been defined as that intended to badger, disturb or pester. Wilson, supra.

Despite its coverage, section 1512 was not intended to reach all forms of witness tampering. Its coverage is limited to tampering accomplished by the specific means enumerated in the provision. United States v. King, 762 F.2d 232 (2d Cir. 1985), cert. denied, 475 U.S. 1018 (1986). The more imaginative types of witness tampering as well as forms of tampering defying enumeration were still prohibited by the omnibus provision of § 1503. United States v. Lester, 749 F.2d 1288 (9th Cir. 1984).

It is unclear whether 18 U.S.C. § 1512(b)(3) was intended to widen the prohibition against obstructing investigations contained in former 18 U.S.C. § 1510 to include investigations that are not per se criminal in nature, such as an FAA investigation of an aircraft accident, or a Senate committee investigation of the trucking industry. A comparison of the difference in phraseology between 18 U.S.C. §§ 1510 and 1512(b)(3), however, indicates that those differences are differences of style, not substance, and that no such expansion was intended. Section 1510 proscribes interference with "the communication of information relating to a violation of any criminal statute of the United States . . ." to a (Federal) criminal investigator; 18 U.S.C. § 1512(b)(3) proscribes interference with "the communication to a (Federal) law enforcement officer . . . of information relating to the commission or possible commission of a Federal offense." There is nothing to indicate that Congress intended to depart from the generally accepted meaning of "law enforcement" as criminal law enforcement and of "offense" as criminal violation. See 18 U.S.C. § 1515(4); 128 Cong. Rec. H8203 (daily ed. Sept. 30,

03/25/2020    8:38AM (GMT-05:00)

1982). Accordingly, prosecutions for interference with legislative or administrative investigations that have not taken on the character of a criminal investigation should be brought under the omnibus clause of 18 U.S.C. § 1505. *See* this Manual at 1726.

[cited in JM 9-69.100]

| ‹ 1728. Protection Of Government Processes – Obstruction Of Federal Criminal Investigation – 18 U.S.C. 1510 | up | 1730. Protection Of Government Processes – "Official Proceeding" Requirement -- 18 U.S.C. 1512 › |
|---|---|---|

*Updated January 17, 2020*

**U.S. DEPARTMENT OF LABOR**    Occupational Safety & Health Administration
1111 Third Avenue, Suite 715
Seattle, Washington 98101 - 3212



July 11, 2011

Mr. Andrew Clark
3270 Soncy Ridge Road
Eugene, OR 97405

Re: Consumer Financial Protection Act of 2010 Complaint Dated June 19, 2011

Dear Mr. Clark:

This is to acknowledge receipt of your complaint of retaliation under the whistleblower provision of the Consumer Financial Protection Act of 2010, Section 1057 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, 12 U.S.C.A. § 5567 (or, CFPA), which you filed on June 19, 2011. Please be advised that OSHA's jurisdiction to investigate such complaints does not become effective until the "designated transfer date," pursuant to Sections 1058 and 1062 of the Dodd-Frank Act, which the Secretary of the Treasury has set as *July 21, 2011*. The relevant sections of the statute can be found at www.whistleblowers.gov.

Should you wish to re-file a written CFPA whistleblower complaint on or after July 21st, you may send us another letter with this request. However, in order for OSHA to initiate an investigation, you must provide information that you were retaliated against on or after July 21, 2011.

In your complaint letter, you also requested to file it under Section 806 of the Sarbanes-Oxley Act ("SOX"). Please note that we have docketed that portion of your complaint as a SOX complaint. The SOX complaint has been assigned to OSHA Investigator, Patricia Brown who can be reached at 206-553-5930, and your employer has been notified about it.

Thank-you for your cooperation.

Sincerely,

*Vicky Coleman*

Vicky Coleman
Regional Supervisory Investigator

*RECOGNIZED*
*RETALIATION*

*NOT   MAY 25 DOL-*
*PORTLAND*

**OSHA** Occupational
Safety and Health
Administration
www.osha.gov

*REPORT*

*NO PAGE  3 a*

$29

*GOT LOST AT*

03/25/2020  8:38AM (GMT-05:00)

3/17/2020                                Xfinity Connect OCC Case _ 01640244 has been created_ Printout

**do_not_reply@occ.treas.gov <do_not_reply@occ.treas.gov>**                                                    6/29/2011 6:01 AM

# OCC Case # 01640244 has been created.

To mir99@comcast.net

6/29/2011

Re: Case# 01640244

Dear Andrew Clark:

This is an automatically generated message. Please do not reply to this email. We are unable to respond to messages sent to this address.

Please keep a copy of this email for your records!

This email acknowledges receipt of your Online Consumer Complaint form. Based upon your correspondence we have opened a case in the OCC's Customer Assistance Group (CAG). Please make note of the case number listed above, and provide the number on any future correspondence or contact with our office.

We are reviewing the information you provided, and will contact the bank requesting a response to your issues. In most instances, the bank will respond directly to you and copy us in writing. Once you receive the bank's response, it is very important that you carefully review their summary and actions taken, if any.

If the bank has satisfactorily addressed your issues and/or concerns no further action on your part is required. If however, the bank failed to address your issues and/or concerns or you disagree with their response, please contact the CAG in writing within 30 days of receipt of the bank's letter. Please include in your reply the specific issues that the bank failed to address or, if applicable, the reasons you disagree with the bank's assessment. Also, please include any additional documentation that supports your position.

The OCC examines national banks to ensure their safe and sound financial condition and ensures compliance with applicable banking laws, rules and regulations. The CAG was established to assist customers who have questions or complaints involving national banks. For additional information on the OCC and CAG please visit our internet site www.helpwithmybank.gov.

The CAG offers guidance, and assists consumers in resolving complaints about national banks and their subsidiaries. The CAG is not a consumer advocacy or bank advocacy group. The OCC is an administrative agency and we do not have jurisdiction to resolve contractual and factual issues. We do not have judicial authority and cannot award damages in excess of a bank's error.

While complaint processing times may vary, on average you should receive a written response from CAG within 60 days after we have a complete file.

If you would like to check the status of your case online, please click on the following link: https://appsec.helpwithmybank.gov/olcc_form/checkstatus.aspx or visit www.helpwithmybank.gov and click on the Check Case Status page.

Should you have questions, please contact this office at the number listed below.

Sincerely,

Customer Assistance Group
1-800-613-6743

This message contains confidential information and is intended solely for the use of the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by sending an email to helpwithmybank.faq@occ.treas.gov if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

03/25/2020  8:38AM (GMT-05:00)

## Exhibit 1

# Sheriff Joe Arpaio's Favorite Law Firm, Ogletree Deakins, Cost Taxpayers $2.4 Million -- in Just Two Years

**By Sarah Fenske**
Published Wed., May 26 2010 at 8:00 AM



L. Eric Dowell,
rainmaker

The battle for control of Maricopa County -- pitting Sheriff Joe Arpaio and County Attorney Andrew Thomas against the Board of Supervisors, judges, and county administrators -- has been costly to both taxpayers and the parties involved.

But it's been a major boon to one local law firm.

Ogletree Deakins, a relatively obscure firm specializing in employment law, became Arpaio and Thomas' go-to legal counsel just as the disputes were heating up. And, according to public records obtained by *New Times*, the firm has billed the county for a staggering $2.49 million since January 2009.

Most of the work had little to do with employment law -- and most of the firm's representation has been unsuccessful, legally speaking.

Ogletree Deakins has fought for the sheriff's right to take over the county's computer system. They tried to argue that the supervisors didn't have the right to sweep money from funds controlled by Thomas and Arpaio. They're currently pressing Arpaio's assertion that he shouldn't have to open his books to county auditors.

And, according to the billing records we looked at, it appears likely that Ogletree lawyers may have even been behind one of Arpaio/Thomas' biggest embarrassments: the criminal charges they filed against the county's presiding criminal court judge, Gary Donahoe.

As *New Times* first reported earlier this month, prosecutors filed criminal charges against Donahoe without bothering to seek a grand jury indictment. They simply filed a direct complaint, and attached a "probable cause" statement that, almost word for word, matched a complaint that the sheriff's office had filed with the Arizona Commission on Judicial Conduct one week before. That complaint, detailing a conspiracy theorist's view of Judge Donahoe's conduct, was signed by Arpaio's chief deputy, David Hendershott.

It now appears that Hendershott had some help penning the letter.

According to its billing statements, Ogletree charged the county $27,310 for something titled "MCSO State Bar/Judicial." The first two invoices with that notation were submitted on December 1, 2009 --

just one day after Hendershott filed "his" complaint with the judicial conduct commission.

So did an employment law specialist draft the document that became the basis for the criminal charges against the county's presiding criminal court judge? If nothing else, it would explain why the document drew guffaws from seasoned prosecutors. Ogletree's lawyers were likely in way over their heads. (And really, what was prosecutor Lisa Aubuchon thinking, merely regurgitating Ogletree's letter as a criminal complaint?)

According to the billing statements examined by *New Times*, Ogletree also advised Andrew Thomas on matters involving the State Bar. (That cost the taxpayers $18,929). And, they advised either Arpaio or Thomas -- the billings aren't clear -- about issues relating to the selection of a new county attorney. (That cost us *another* $12,762.)

Finally, Ogletree billed the county a staggering $1.2 million for something described only as "contract compliance." County Spokeswoman Cari Gerchick told *New Times* that county administrators have no idea what that means.

We contacted L. Eric Dowell, a shareholder at Ogletree Deakins and the sheriff's lawyer of choice, to ask about the "contract compliance" payments, but we hadn't heard back by press time. We'll post an update if we get an answer.

In the mean time, looking at the wasted $2.4 million and the unexplained $1.2 million and the tens of thousands of dollars for failed legal adventures -- well, we never thought we'd say this, but we actually miss Dennis Wilenchik. Yes, *New Times* disagreed with Wilenchik on just about everything. But Wilenchik handled some pretty tough cases for Arpaio, not just political crap that should have never made its way to a docket.

And Wilenchik, unlike the sheriff's new $2-million-counsel, actually knew how to win.

2}

Civil Case 6-20-cv-000253  Complaint Filed February 14, 2020 Clark vs. Wells Fargo et al   Page 59 of 131

blogs phoenixnewtimes.com/valleyfever/2010/05/sheriff_joe_arpaios_favorite_lahe?aviatatrue

03/25/2020   8:38AM (GMT-05:00)

**EXHIBIT B**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
### Eugene, Oregon Division

*Wells Fargo: attorneys lied, cheated and stole from us and tried to hide it by VIOLENT REPEATED FEDERAL WITNESS TAMPERING.*

Andrew Clark, Plaintiff
3270 Stoney Ridge Rd.
Eugene, OR 97405 541.510.3915
OperationSunriseLaw@gmail.com

Wells Fargo and Company
420 Montgomery St. San Francisco, CA 94163
as Voluntary or Mandatory
Intervenor for Plaintiff
(Subject to FRCP 24)

### Civil Complaint Case: 6.cv-20-253-aa

Motion for Judicial Notice of Adjudicative Facts
Per Federal Rules of Evidence 201(b)(2)
and Clarification of "Claim for Relief"

March 18, 2020 Crime Report to Billy Williams,
U.S. Attorney for Oregon. (8 Page Exhibit)
Hand-Delivered at Eugene Office and filed with
Court as Correspondence.

**vs.** Defendants:

Wells Fargo Bank et al

This Motion Filed March 26, 2020

## Motion for Judicial Notice of Adjudicative Facts
## and Clarification of Claim for Relief

My complaint accurately summarized what each Defendant did (or failed to do) that caused and concealed the root crime of the enterprise. No corporate crime is more rare and serious than physically tampering with a federally-insured bank worker with two active federal investigations in process who had also been admitted to local FBI to deliver crime reports due to indications of retaliation. The nature of the tampering is violent and ghastly as I describe.

Such cases get prosecuted similarly to a lurid case of aggravated murder only with more vengeance and a much wider net, which is why so many Defendants are listed. Most of you helped conceal it because you were lied to by the perpetrators (or by others they coerced or influenced.) In my case, special attention should be given to complete role of Defendant Erik Hasselman. Special attention must be given to what motivated him or coerced him because his personal involvement and subsequent corruption of all controls is absolutely epic for a Major Violent Crimes Prosecutor.

An employee in our local 'pre-trail services' office named "Brian Snazo" supervises the Risk Assessment Tool (RAT) in Lane County. He and the RAT system electronic archives will most likely reveal my case "it is not their first rodeo." Mr. Snazo is not currently a Defendant.

Signed and Sworn to as Fact: Andrew Clark, Plaintiff
3270 Stoney Ridge Rd. Eugene OR 97405 541.510.3915 OperationSunriseLaw@gmail.com

04/09/2020    11:39AM (GMT-05:00)

Apr/9/2020 12:35:43 PM    Wells Fargo 2129475621    3/10
    Apr/9/2020 11:29:23 AM  14157043294->2129470299   2/9
To: Important  Page 2 of 9    2020-04-09 15:20:31 (GMT)    14157043294 From: Andrew Clark

March 18, 2020
Billy Williams, United States Attorney for Oregon
1000 SW 3rd Ave Ste 600 Portland OR 97204
c/o Eugene OR Office in Wayne Morse Courthouse

Filed as Exhibit-Motion to Take
Judicial Notice
6.20.cv.253.aa
March 26, 2020

### FEDERAL MAJOR VIOLENT CRIME REPORT
Repeated, Physical Tampering of a Federal Witness in Active
Department of Labor **and** Office of Comptroller of Currency Investigations.
Obstruction of Justice via Rampant Public Corruption Including Hobbs Act Violations.
Novel Crimes: Deliberate, Knowing Use of Family Courts as a Means of Tampering,
Fraudulent and Coordinated Use of Local, State, and Federal Justice Systems to Obstruct.

My civil complaint 6.20.cv.253.aa does a very good job of documenting actions against me and linking them to my employment at Wells Fargo. But unless it is read carefully, it could leave a reader wondering "what crimes could possibly have been committed so extreme that a group of people would be used to conceal it by committing a series of RICO crimes including the use of courts to obstruct justice? What evidence could a lowest-level worker possibly have of it?"

1. A police report is a very special and perfect type of evidence. Attached is a page from a Eugene, OR police report dated July 19, 2011. It is Page 82 of the civil complaint. It is from before all the RICO crimes were committed against me. It shows Wells Fargo corporate security agent Martin Ogno was aware I had filed reports with Federal Bureau-Investigation (FBI) in Eugene OR, therefore Wells Fargo was aware. Most shocking: Eugene Police told Ogno I considered his "well-being visit at my home at night by uniformed SWAT police" to be retaliation. Ogno told Eugene Police to 'fuhggedaboutit' and explains he had contacted FBI and that FBI did not take my (just filed in-person and sworn-to well-evidenced, voluminous) reports seriously. Think of that horrific violation of City of Eugene Police.

2. After that is a printout of Department of Justice publication "Criminal Resource Manual 1729". It has a standard archive disclaimer but the content is valid, last updated January 2020. A person who reports to a federal law enforcement agency such as FBI is a Federal Witness. Tampering with a Federal Witness is a violation of 18 USC 1512, particularly when Federal Investigations are in process.

3. Two different Federal Investigations were in process. Next exhibits are proof from Department of Labor and Office of Comptroller of Currency of recently accepted Federal investigations. The PACER system records for SLAPP-suit 6.11.cv.06248.ho and my subsequent civil actions show exactly how the courts were used to bypass discovery of the above crimes.

4. My civil complaint enumerates and documents the RICO crimes committed against me. Please note that I presented Tampering using false arrest and jail as violations of 18 USC 1201 by Wells Fargo/ Ogletree Deakins: armed kidnapping for political or economic motivations. Use of police to tamper with a Federal Witness is absolutely gangland. It is as bad it gets, other than the novel crimes listed above and detailed in the civil complaint.

5. Related but not relevant to the crime report: I motioned for Wells Fargo and Company to intervene. It is in PACER. It is possible that everything that happened was actually a Wells Fargo & Co. project. A metaphor for that is found on www.TheEugeneBlairProject.com. I placed the Circuit Court and Police a/v on www.RisePatriot.com and www.WellsFargoWitz.com (family court).

Thank you from Andy Clark 3270 Stoney Ridge Rd. Eugene OR 97405 541.510.3915 (exhibits follow)

APR 9 2020 PM12:08
4/9/2020

4 of 4
11-11771

was Officer Pieske who was there with us during the contacts and told Clark that Officer Pieske concurred with my findings in the matters. I asked Clark if there was anything else I could do for him. Clark said there was nothing else I could do for him and he left city hall.

Also per Sergeant Klinko's request, I contacted Marty Ogno, head of security for Wells Fargo. I called Ogno and told him I had contacted Clark and that he had been advised he was trespassed from all Wells Fargo properties. I also told Ogno Clark was concerned he had $24,000 in an account at Wells Fargo. Ogno said he had looked it up and though Clark only had about $200 in an account, but that he would close Clark's account and mail him a check with the remaining balance. Ogno asked how the contact went. I told Ogno that Clark felt he was being retaliated upon for contacting the FBI and CIA with Wells Fargo's wrong doings. Ogno said that he had been in contact with the FBI and told me that the FBI did not take Clark's reports seriously.

**>>>>>**

**FBI would**
**not say that.**

At approximately 1900 hours, dispatch advised that Clark had left a phone number for me to call him back so he could further discuss his desire to press charges against Wells Fargo for filing a false police report. I requested Sergeant Magnuson respond to the report writing room where I was working on reports so I could discuss the situation with him before calling Clark back. While I was explaining the situation to Sergeant Magnuson, Dispatch advised that Clark had called back 3 more times requesting contact. I then asked Sergeant Magnuson if he would contact Clark in my behalf in that I was unable to effectively communicate to Clark that Wells Fargo had broken no laws and that they had the right to trespass Clark from their properties.

**Notice no**
**person at**
**FBI is**
**referenced.**

**It is corruption**
**of FBI processes**
**and obstruction.**

Reviewed by FTO: **Pieske**      **112**
     · Name        Badge

**BTW, I did**
**report to CIA via**
**nationwide fax#**
**and consulate**
**offices in**
**Bangalore and**
**Hyderabad India**
**due to concerns**
**related to**
**system**
**development**
**work on the**
**CORE/ELF**
**system I had to**
**use here that**
**was being badly**
**programmed in**
**India.**

Tech                07-19-11 2330 Hours        Approved By: Magnuson 122
#523

APR 9 2020 PM 2:08
04/09/2020    11:39AM (GMT-05:00)

3/16/2020     1729. Protection Of Government Processes — Tampering With Victims, Witnesses, Or Informants -- 18 U.S.C. 1512 | JM | Department of ...

 An official website of the United States government. Here's how you know

THE UNITED STATES ...

DEPARTMENT OF JUSTICE Archived from the U.S. Department of Justice website. The information here may be outdated and links may no longer function. Please contact webmaster@usdoj.gov if you have any questions about the archive site.

## 1729. PROTECTION OF GOVERNMENT PROCESSES -- TAMPERING WITH VICTIMS, WITNESSES, OR INFORMANTS -- 18 U.S.C. 1512

Section 1512 of Title 18 constitutes a broad prohibition against tampering with a witness, victim or informant. It proscribes conduct intended to illegitimately affect the presentation of evidence in Federal proceedings or the communication of information to Federal law enforcement officers. It applies to proceedings before Congress, executive departments, and administrative agencies, and to civil and criminal judicial proceedings, including grand jury proceedings. See 18 U.S.C. § 1515(a)(1). In addition, the section provides extraterritorial Federal jurisdiction over the offenses created therein. See 18 U.S.C. § 1512(g); 126 Cong. Rec. H8469 (daily ed. Oct. 1, 1980); H. R. Rep. No. 1369, 96th Cong., 2d Sess. 20-22 (1980).

The express prohibitions against tampering with witnesses and parties contained in former 18 U.S.C. §§ 1503 and 1505, are now in paragraphs (b)(1) and (2) of 18 U.S.C. § 1512. (As discussed in this Manual at 1724 and 1727, the omnibus clauses of these provisions still cover witnesses.) All forms of tampering with informants covered in former 18 U.S.C. § 1510, with the exception of tampering by means of bribery, are now proscribed by 18 U.S.C. § 1512(b)(3). Tampering with informants by means of bribery remains an 18 U.S.C. § 1510 offense.

Section 1512 augments the prohibitions of the former law in several important respects. First, section 1512(b)(3) sweeps more broadly than former 18 U.S.C. § 1510 and expands the class of informants protected by Federal law. For example, it protects individuals having information concerning a violation of a condition of probation, parole, or bail whether or not that violation constitutes a violation of any other Federal criminal statute. Second, it protects individuals seeking to provide information to Federal judges or Federal probation and pretrial services officers.

Section 1512 also includes attempts in its list of prohibited conduct. There is no requirement that the defendants actions have the intended obstructive effect. See, e.g., United States v. Murray, 751 F.2d 1528 (9th Cir.), cert. denied, 474 U.S. 979 (1985); United States v. Wilson, 796 F.2d 55 (4th Cir. 1986), cert. denied, 479 U.S. 1039 (1987). As amended by the Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. 99-646, it is clear that the killing of a witness or attempts to kill a witness in order to prevent his/her testimony constitutes an act of force intended to "influence the witness' testimony." See 18 U.S.C. § 1512(a). This change was necessitated by one court interpreting former § 1512 as not reaching an act of attempted murder that was intended to prevent a witness from testifying. See United States v. Dawlett, 787 F.2d 771 (1st Cir. 1986).

The section specifically abolishes the pending proceeding requirement of 18 U.S.C. §§ 1503 and 1505. The provision also eliminates ambiguity about the class of individuals protected. Although the former law protected witnesses, parties, and informants, it was unclear whether that law reached the intimidation of third parties (for example, the spouse of a witness) for the purpose of intimidating the principal party. Section § 1512 of Title 18 plainly covers such conduct, for it speaks of conduct directed toward "another person." See 128 Cong. Rec. H8203 (daily ed. Sept. 30, 1982).

Section 1512 protects potential as well as actual witnesses. With the addition of the words "any person," it is clear that a witness is "one who knew or was expected to know material facts and was expected to testify to them before pending judicial proceedings." United States v. DiSalvo, 631 F.Supp. 1398 (E.D. Pa. 1986), aff'd, 826 F.2d 1054 (3d Cir. 1987). Under § 1512, an individual retains his/her status as a witness even after testifying. United States v. Wilson, 796 F.2d 55 (4th Cir. 1986), cert. denied, 479 U.S. 1039 (1987) (protection of witness under § 1512 continues throughout the trial); United States v. Petton, 721 F.2d 159 (6th Cir. 1983) (witness retains status while defendant's motion for a new trial is pending); United States v. Chandler, 604 F.2d 972 (5th Cir. 1979) (witness retains status while case is pending on direct appeal). Cf. United States v. Risken, 788 F.2d 1361 (8th Cir.), cert. denied, 479 U.S. 923 (1986) (party was a witness after asserting his Fifth Amendment privilege and being dismissed from the stand since he could be recalled at any time).

Section 1512 of Title 18 contains two significant additions to the types of tampering barred by Federal law. First, it forbids "misleading conduct," as defined in 18 U.S.C. § 1515. Such conduct was not covered in those circuits that had narrowly construed the omnibus clauses of 18 U.S.C. §§ 1503 and 1505 under the rule of ejusdem generis. See United States v. Metcalf, 435 F.2d 754 (9th Cir. 1970); United States v. Essex, 407 F.2d 214 (6th Cir. 1969). see generally, 128 Cong. Rec. H8203 (daily ed. Sept. 30, 1982). Second, 18 U.S.C. § 1512 makes intentional harassment a misdemeanor. This offense is intended to reach conduct less egregious than the corrupt, threatening or forceful conduct required for a violation of former 18 U.S.C. §§ 1503 and 1505. Harassing conduct has been defined as that intended to badger, disturb or pester. Wilson, supra.

Despite its coverage, section 1512 was not intended to reach all forms of witness tampering. Its coverage is limited to tampering accomplished by the specific means enumerated in the provision. United States v. King, 762 F.2d 232 (2d Cir. 1985), cert. denied, 475 U.S. 1018 (1986). The more imaginative types of witness tampering as well as forms of tampering defying enumeration were still prohibited by the omnibus provision of § 1503. United States v. Lester, 749 F.2d 1288 (9th Cir. 1984).

It is unclear whether 18 U.S.C. § 1512(b)(3) was intended to widen the prohibition against obstructing investigations contained in former 18 U.S.C. § 1510 to include investigations that are not per se criminal in nature, such as an FAA investigation of an aircraft accident, or a Senate committee investigation of the trucking industry. A comparison of the difference in phraseology between 18 U.S.C. §§ 1510 and 1512(b)(3), however, indicates that those differences are differences of style, not substance, and that no such expansion was intended. Section 1510 proscribes interference with "the communication of information relating to a violation of any criminal statute of the United States . . ." to a (Federal criminal investigator; 18 U.S.C. § 1512(b)(3) proscribes interference with "the communication to a (Federal) law enforcement officer . . . of information relating to the commission or possible commission of a Federal offense." There is nothing to indicate that Congress intended to depart from the generally accepted meaning of "law enforcement" as criminal law enforcement and of "offense" as criminal violation. See 18 U.S.C. § 1515(4); 128 Cong. Rec. H8203 (daily ed. Sept. 30,

APR 9 2020 PM 12:08

04/09/2020   11:39AM   (GMT-05:00)

3/16/2020      1729. Protection Of Government Processes -- Tampering With Victims, Witnesses, Or Informants -- 18 U.S.C. 1512 | JM | Department of ...

1982). Accordingly, prosecutions for interference with legislative or administrative investigations that have not taken on the character of a criminal investigation should be brought under the omnibus clause of 18 U.S.C. § 1505. *See* this *Manual at 1726*.

[cited in JM 9-69.100]

‹ 1728. Protection Of Government Processes -- Obstruction Of Federal Criminal Investigation -- 18 U.S.C. 1510

up

1730. Protection Of Government Processes -- "Official Proceeding" Requirement -- 18 U.S.C. 1512 ›

*Updated January 17, 2020*

APR 9 2020 PM 12:08
@ 4/9/2020

04/09/2020   11:39AM (GMT-05:00)

**U.S. DEPARTMENT OF LABOR**

Occupational Safety & Health Administration
1111 Third Avenue, Suite 715
Seattle, Washington 98101 - 3212



July 11, 2011

Mr. Andrew Clark
3270 Soncy Ridge Road
Eugene, OR 97405

Re: Consumer Financial Protection Act of 2010 Complaint Dated June 19, 2011

Dear Mr. Clark:

This is to acknowledge receipt of your complaint of retaliation under the whistleblower provision of the Consumer Financial Protection Act of 2010, Section 1057 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, 12 U.S.C.A. § 5567 (or, CFPA), which you filed on June 19, 2011. Please be advised that OSHA's jurisdiction to investigate such complaints does not become effective until the "designated transfer date," pursuant to Sections 1058 and 1062 of the Dodd-Frank Act; which the Secretary of the Treasury has set as *July 21, 2011.* The relevant sections of the statute can be found at www.whistleblowers.gov.

Should you wish to re-file a written CFPA whistleblower complaint on or after July 21st, you may send us another letter with this request. However, in order for OSHA to initiate an investigation, you must provide information that you were retaliated against on or after July 21, 2011.

In your complaint letter, you also requested to file it under Section 806 of the Sarbanes-Oxley Act ("SOX"). Please note that we have docketed that portion of your complaint as a SOX complaint. The SOX complaint has been assigned to OSHA Investigator, Patricia Brown who can be reached at 206-553-5930, and your employer has been notified about it.

Thank-you for your cooperation.

Sincerely,

*Vicky Coleman*
Vicky Coleman
Regional Supervisory Investigator

*RECOGNIZED*
*RETALIATION*

*NOT MAY 25 DOL-*
*PORTLAND*
*REPORT*

**OSHA** Occupational
Safety and Health
Administration
www.osha.gov

*NO RASE 3 a*

‡29

Case 17-35247     Clark vs. Wells Fargo et al Exhibits   *GET LOST AT Page 38 l*

Apr/9/2020 12:35:43 PM

Apr/9/2020 11:29:23 AM

To: Important    Page 7 of 9

Wells Fargo 2129475621
14157043294->2129470299
2020-04-09 15:20:31 (GMT)

8/10
119

14157043294 From: Andrew Clark

3/17/2020                                Xfinity Connect OCC Case _ 01640244 has been created_ Printout

do_not_reply@occ.treas.gov <do_not_reply@occ.treas.gov>                                    6/29/2011 6:01 AM

# OCC Case # 01640244 has been created.

To mir99@comcast.net

6/29/2011

Re: Case# 01640244

Dear Andrew Clark:

This is an automatically generated message. Please do not reply to this email. We are unable to respond to messages sent to this address.

Please keep a copy of this email for your records!

This email acknowledges receipt of your Online Consumer Complaint form. Based upon your correspondence we have opened a case in the OCC's Customer Assistance Group (CAG). Please make note of the case number listed above, and provide the number on any future correspondence or contact with our office.

We are reviewing the information you provided, and will contact the bank requesting a response to your issues. In most instances, the bank will respond directly to you and copy us in writing. Once you receive the bank's response, it is very important that you carefully review their summary and actions taken, if any.

If the bank has satisfactorily addressed your issues and/or concerns no further action on your part is required. If however, the bank failed to address your issues and/or concerns or you disagree with their response, please contact the CAG in writing within 30 days of receipt of the bank's letter. Please include in your reply the specific issues that the bank failed to address or, if applicable, the reasons you disagree with the bank's assessment. Also, please include any additional documentation that supports your position.

The OCC examines national banks to ensure their safe and sound financial condition and ensures compliance with applicable banking laws, rules and regulations. The CAG was established to assist customers who have questions or complaints involving national banks. For additional information on the OCC and CAG please visit our internet site www.helpwithmybank.gov.

The CAG offers guidance, and assists consumers in resolving complaints about national banks and their subsidiaries. The CAG is not a consumer advocacy or bank advocacy group. The OCC is an administrative agency and we do not have jurisdiction to resolve contractual and factual issues. We do not have judicial authority and cannot award damages in excess of a bank's error.

While complaint processing times may vary, on average you should receive a written response from CAG within 60 days after we have a complete file.

If you would like to check the status of your case online, please click on the following link: https://appsec.helpwithmybank.gov/olcc_form/checkstatus.aspx or visit www.helpwithmybank.gov and click on the Check Case Status page.

Should you have questions, please contact this office at the number listed below.

Sincerely,

Customer Assistance Group
1-800-613-6743

This message contains confidential information and is intended solely for the use of the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by sending an email to helpwithmybank.fag@occ.treas.gov if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

APR 9 2020 PM12:09

04/09/2020   11:39AM (GMT-05:00)

Apr/9/2020 12:35:43 PM  Apr/9/2020 11:29:23 AM  Wells Fargo 2129475621  9/10
To: Important  Page 8 of 9  14157043294->2129470299  o/9
2020-04-09 15:20:31 (GMT)  14157043284 From: Andrew Clark

10/18/13  Phoenix - News - Valley Fever - Print Version

## Exhibit 1

# Sheriff Joe Arpaio's Favorite Law Firm, Ogletree Deakins, Cost Taxpayers $2.4 Million -- in Just Two Years

**By Sarah Fenske**
Published Wed., May 26 2010 at 8:00 AM



L. Eric Dowell, rainmaker

The battle for control of Maricopa County -- pitting Sheriff Joe Arpaio and County Attorney Andrew Thomas against the Board of Supervisors, judges, and county administrators -- has been costly to both taxpayers and the parties involved.

But it's been a major boon to one local law firm.

Ogletree Deakins, a relatively obscure firm specializing in employment law, became Arpaio and Thomas' go-to legal counsel just as the disputes were heating up. And, according to public records obtained by *New Times*, the firm has billed the county for a staggering $2.49 million since January 2009.

Most of the work had little to do with employment law -- and most of the firm's representation has been unsuccessful, legally speaking.

Ogletree Deakins has fought for the sheriff's right to take over the county's computer system. They tried to argue that the supervisors didn't have the right to sweep money from funds controlled by Thomas and Arpaio. They're currently pressing Arpaio's assertion that he shouldn't have to open his books to county auditors.

And, according to the billing records we looked at, it appears likely that Ogletree lawyers may have even been behind one of Arpaio/Thomas' biggest embarrassments: the criminal charges they filed against the county's presiding criminal court judge, Gary Donahoe.

As *New Times* first reported earlier this month, prosecutors filed criminal charges against Donahoe without bothering to seek a grand jury indictment. They simply filed a direct complaint, and attached a "probable cause" statement that, almost word for word, matched a complaint that the sheriff's office had filed with the Arizona Commission on Judicial Conduct one week before. That complaint, detailing a conspiracy theorist's view of Judge Donahoe's conduct, was signed by Arpaio's chief deputy, David Hendershott.

It now appears that Hendershott had some help penning the letter.

According to its billing statements, Ogletree charged the county $27,310 for something titled "MCSO State Bar/Judicial." The first two invoices filed charges that were submitted in December of 2009 --

10/18/13                  Phoenix - News - Valley Fever - Print Version

just one day after Hendershott filed "his" complaint with the judicial conduct commission.

So did an employment law specialist draft the document that became the basis for the criminal charges against the county's presiding criminal court judge? If nothing else, it would explain why the document drew guffaws from seasoned prosecutors. Ogletree's lawyers were likely in way over their heads. (And really, what was prosecutor Lisa Aubuchon thinking, merely regurgitating Ogletree's letter as a criminal complaint?)

According to the billing statements examined by *New Times*, Ogletree also advised Andrew Thomas on matters involving the State Bar. (That cost the taxpayers $18,929). And, they advised either Arpaio or Thomas -- the billings aren't clear -- about issues relating to the selection of a new county attorney. (That cost us *another* $12,762.)

Finally, Ogletree billed the county a staggering $1.2 million for something described only as "contract compliance." County Spokeswoman Cari Gerchick told *New Times* that county administrators have no idea what that means.

We contacted L. Eric Dowell, a shareholder at Ogletree Deakins and the sheriff's lawyer of choice, to ask about the "contract compliance" payments, but we hadn't heard back by press time. We'll post an update if we get an answer.

In the mean time, looking at the wasted $2.4 million and the unexplained $1.2 million and the tens of thousands of dollars for failed legal adventures -- well, we never thought we'd say this, but we actually miss Dennis Wilenchik. Yes, *New Times* disagreed with Wilenchik on just about everything. But Wilenchik handled some pretty tough cases for Arpaio, not just political crap that should have never made its way to a docket.

And Wilenchik, unlike the sheriff's new $2-million-counsel, actually knew how to win.

APR 9 2020 PM12:09

4/9/2020   27

Civil Case 6-20-cv-000253 Complaint Filed February 14, 2020Clark vs. Wells Fargo et al   Page 59 of 131

**EXHIBIT C**

RECEIVED
ORIGINAL

APR - 9 2020

WELLS FARGO ADVISORS
LINWOOD, NJ _____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
### Eugene, Oregon Division

*Wells Fargo: attorneys lied, cheated and stole from us and tried to hide it by VIOLENT REPEATED FEDERAL WITNESS TAMPERING.*

**Andrew Clark, Plaintiff**
3270 Stoney Ridge Rd.
Eugene, OR 97405  541.510.3915
OperationSunriseLaw@gmail.com

**Wells Fargo and Company**
420 Montgomery St. San Francisco, CA 94163
as Voluntary or Mandatory
Intervenor for Plaintiff
(Subject to FRCP 24)

**Civil Complaint Case: 6.cv-20-253-aa**

Motion for Judicial Notice of Adjudicative Facts
Per Federal Rules of Evidence 201(b)(2)
and Clarification of "Claim for Relief"

March 18, 2020 Crime Report to Billy Williams,
U.S. Attorney for Oregon.  (8 Page Exhibit)
Hand-Delivered at Eugene Office and filed with
Court as Correspondence.

**vs.** Defendants:

Wells Fargo Bank et al

This Motion Filed March 26, 2020

## Motion for Judicial Notice of Adjudicative Facts
## and Clarification of Claim for Relief

My complaint accurately summarized what each Defendant did (or failed to do) that caused and concealed the root crime of the enterprise. No corporate crime is more rare and serious than physically tampering with a federally-insured bank worker with two active federal investigations in process who had also been admitted to local FBI to deliver crime reports due to indications of retaliation. The nature of the tampering is violent and ghastly as I describe.

Such cases get prosecuted similarly to a lurid case of aggravated murder only with more vengeance and a much wider net, which is why so many Defendants are listed. Most of you helped conceal it because you were lied to by the perpetrators (or by others they coerced or influenced.) In my case, special attention should be given to complete role of Defendant Erik Hasselman. Special attention must be given to what motivated him or coerced him because his personal involvement and subsequent corruption of all controls is absolutely epic for a Major Violent Crimes Prosecutor.

An employee in our local 'pre-trail services' office named "Brian Snazo" supervises the Risk Assessment Tool (RAT) in Lane County. He and the RAT system electronic archives will most likely reveal my case "it is not their first rodeo." Mr. Snazo is not currently a Defendant.

Signed and Sworn to as Fact: Andrew Clark, Plaintiff
3270 Stoney Ridge Rd. Eugene OR 97405  541.510.3915  OperationSunriseLaw@gmail.com

March 18, 2020
Billy Williams, United States Attorney for Oregon
1000 SW 3rd Ave Ste 600  Portland OR  97204
c/o Eugene OR Office in Wayne Morse Courthouse

Filed as Exhibit-Motion to Take
Judicial Notice
6.20.cv.253.aa
March 26, 2020

# FEDERAL MAJOR VIOLENT CRIME REPORT
Repeated,  Physical Tampering of a Federal Witness in Active
Department of Labor **and** Office of Comptroller of Currency Investigations.
Obstruction of Justice via Rampant Public Corruption Including Hobbs Act Violations.
Novel Crimes:  Deliberate, Knowing Use of Family Courts as a Means of Tampering,
Fraudulent and Coordinated Use of Local, State, and Federal Justice Systems to Obstruct.

My civil complaint 6.20.cv.253.aa does a very good job of documenting actions against me and linking them to my employment at Wells Fargo. But unless it is read carefully, it could leave a reader wondering "what crimes could possibly have been committed so extreme that a group of people would be used to conceal it by committing a series of RICO crimes including the use of courts to obstruct justice?  What evidence could a lowest-level worker possibly have of it?"

1.  A police report is a very special and perfect type of evidence. Attached is a page from a Eugene, OR police report dated July 19, 2011. It is Page 82 of the civil complaint. It is from before all the RICO crimes were committed against me. It shows Wells Fargo corporate security agent Martin Ogno was aware I had filed reports with Federal Bureau-Investigation (FBI) in Eugene OR, therefore Wells Fargo was aware. Most shocking: Eugene Police told Ogno I considered his "well-being visit at my home at night by uniformed SWAT police" to be retaliation. Ogno told Eugene Police to 'fuhggedaboutit' and explains he had contacted FBI and that FBI did not take my (just filed in-person and sworn-to well-evidenced, voluminous) reports seriously.  <u>Think of that horrific violation of City of Eugene Police.</u>

2.  After that is a printout of Department of Justice publication "Criminal Resource Manual 1729".  It has a standard archive disclaimer but the content is valid,  last updated January 2020. A person who reports to a federal law enforcement agency such as FBI is a Federal Witness. Tampering with a Federal Witness is a violation of 18 USC 1512, particularly when Federal investigations are in process.

3.  Two different Federal Investigations were in process. Next exhibits are proof from Department of Labor and Office of Comptroller of Currency of recently accepted Federal investigations.  The PACER system records for SLAPP-suit 6.11.cv.06248.ho and my subsequent civil actions show exactly how the courts were used to bypass discovery of the above crimes.

4.  My civil complaint enumerates and documents the RICO crimes committed against me.  Please note that I presented Tampering using false arrest and jail as violations of 18 USC 1201 by Wells Fargo/ Ogletree Deakins: armed kidnapping for political or economic motivations.  Use of police to tamper with a Federal Witness is absolutely gangland.  It is as bad it gets, other than the novel crimes listed above and detailed in the civil complaint.

5.  Related but not relevant to the crime report: I motioned for Wells Fargo and Company to intervene. It is in PACER.  It is possible that everything that happened was actually a Wells Fargo & Co. project. A metaphor for that is found on www.TheEugeneBlairProject.com.  I placed the Circuit Court and Police a/v on www.RisePatriot.com and www.WellsFargoWitz.com (family court).

Thank you from Andy Clark 3270 Stoney Ridge Rd. Eugene OR 97405 541.510.3915 (exhibits follow)

was Officer Pieske who was there with us during the contacts and told Clark that Officer Pieske concurred with my findings in the matters. I asked Clark if there was anything else I could do for him. Clark said there was nothing else I could do for him and he left city hall.

Also per Sergeant Klinko's request, I contacted Marty Ogno, head of security for Wells Fargo. I called Ogno and told him I had contacted Clark and that he had been advised he was trespassed from all Wells Fargo properties. I also told Ogno Clark was concerned he had $24,000 in an account at Wells Fargo. Ogno said he had looked it up and though Clark only had about $200 in an account, but that he would close Clark's account and mail him a check with the remaining balance. Ogno asked how the contact went. I told Ogno that Clark felt he was being retaliated upon for contacting the FBI and CIA with Wells Fargo's wrong doings. Ogno said that he had been in contact with the FBI and told me that the FBI did not take Clark's reports seriously.

>>>>>
FBI would
not say that.

At approximately 1900 hours, dispatch advised that Clark had left a phone number for me to call him back so he could further discuss his desire to press charges against Wells Fargo for filing a false police report. I requested Sergeant Magnuson respond to the report writing room where I was working on reports so I could discuss the situation with him before calling Clark back. While I was explaining the situation to Sergeant Magnuson, Dispatch advised that Clark had called back 3 more times requesting contact. I then asked Sergeant Magnuson if he would contact Clark in my behalf in that I was unable to effectively communicate to Clark that Wells Fargo had broken no laws and that they had the right to trespass Clark from their properties.

Notice no
person at
FBI is
referenced.

It is corruption
of FBI processes
and obstruction.

Reviewed by FTO: Pieske          112
                 Name            Badge

BTW, I did
report to CIA via
nationwide fax#
and consulate
offices in
Bangalore and
Hyderabad India
due to concerns
related to
system
development
work on the
CORE/ELF
system I had to
use here that
was being badly
programmed in
India.

Esch
6523                        07-19-11 2330 Hours              Approved By: Magnuson 122

To: important    Page 4 of 9      2020-04-09 15:20:27 (GMT)      14157043294 From: Andrew Clark

3/16/2020     1729. Protection Of Government Processes -- Tampering With Victims, Witnesses, Or Informants -- 18 U.S.C. 1512 | JM | Department of ...



An official website of the United States government   Here's how you know

THE UNITED STATES
DEPARTMENT OF JUSTICE
ARCHIVES

This is archived content from the U.S. Department of Justice website. The information here may be outdated and links may no longer function. Please contact webmaster@usdoj.gov if you have any questions about the archive site.

## 1729. PROTECTION OF GOVERNMENT PROCESSES -- TAMPERING WITH VICTIMS, WITNESSES, OR INFORMANTS -- 18 U.S.C. 1512

Section 1512 of Title 18 constitutes a broad prohibition against tampering with a witness, victim or informant. It proscribes conduct intended to illegitimately affect the presentation of evidence in Federal proceedings or the communication of information to Federal law enforcement officers. It applies to proceedings before Congress, executive departments, and administrative agencies, and to civil and criminal judicial proceedings, including grand jury proceedings. See 18 U.S.C. § 1515(a)(1). In addition, the section provides extraterritorial Federal jurisdiction over the offenses created therein. See 18 U.S.C. § 1512(g); 128 Cong. Rec. H8469 (daily ed. Oct. 1, 1980); H. R. Rep. No. 1369, 96th Cong., 2d Sess. 20-22 (1980).

The express prohibitions against tampering with witnesses and parties contained in former 18 U.S.C. §§ 1503 and 1505, are now in paragraphs (b)(1) and (2) of 18 U.S.C. § 1512. (As discussed in this Manual at 1724 and 1727, the omnibus clauses of these provisions still cover witnesses.) All forms of tampering with informants covered in former 18 U.S.C. § 1510, with the exception of tampering by means of bribery, are now proscribed by 18 U.S.C. § 1512(b)(3). Tampering with informants by means of bribery remains an 18 U.S.C. § 1510 offense.

Section 1512 augments the prohibitions of the former law in several important respects. First, section 1512(b)(3) sweeps more broadly than former 18 U.S.C. § 1510 and expands the class of informants protected by Federal law. For example, it protects individuals having information concerning a violation of a condition of probation, parole, or bail whether or not that violation constitutes a violation of any other Federal criminal statute. Second, it protects individuals seeking to provide information to Federal judges or Federal probation and pretrial services officers.

Section 1512 also includes attempts in its list of prohibited conduct. There is no requirement that the defendants actions have the intended obstructive effect. See, e.g., United States v. Murray, 751 F.2d 1528 (9th Cir.), cert. denied, 474 U.S. 979 (1985); United States v. Wilson, 796 F.2d 55 (4th Cir. 1986), cert. denied, 479 U.S. 1039 (1987). As amended by the Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. 99-646, it is clear that the killing of a witness or attempts to kill a witness in order to prevent his/her testimony constitutes an act of force intended to "influence the witness' testimony." See 18 U.S.C. § 1512(a). This change was necessitated by one court interpreting former § 1512 as not reaching an act of attempted murder that was intended to prevent a witness from testifying. See United States v. Dawlett, 787 F.2d 771 (1st Cir. 1986).

The section specifically abolishes the pending proceeding requirement of 18 U.S.C. §§ 1503 and 1505. The provision also eliminates ambiguity about the class of individuals protected. Although the former law protected witnesses, parties, and informants, it was unclear whether that law reached the intimidation of third parties (for example, the spouse of a witness) for the purpose of intimidating the principal party. Section § 1512 of Title 18 plainly covers such conduct, for it speaks of conduct directed toward "another person." See 128 Cong. Rec. H8203 (daily ed. Sept. 30, 1982).

Section 1512 protects potential as well as actual witnesses. With the addition of the words "any person," it is clear that a witness is "one who knew or was expected to know material facts and was expected to testify to them before pending judicial proceedings." United States v. DiSalvo, 631 F.Supp. 1398 (E.D. Pa. 1986), aff'd, 826 F.2d 1054 (3d Cir. 1987). Under § 1512, an individual retains his/her status as a witness even after testifying. United States v. Wilson, 796 F.2d 55 (4th Cir. 1986), cert. denied, 479 U.S. 1039 (1987) (protection of witness under § 1512 continues throughout the trial); United States v. Patton, 721 F.2d 159 (6th Cir. 1983) (witness retains status while defendant's motion for a new trial is pending); United States v. Chandler, 604 F.2d 972 (5th Cir. 1979) (witness retains status while case is pending on direct appeal). Cf. United States v. Risken, 788 F.2d 1361 (8th Cir.), cert. denied, 479 U.S. 923 (1986) (party was a witness after asserting his Fifth Amendment privilege and being dismissed from the stand since he could be recalled at any time).

Section 1512 of Title 18 contains two significant additions to the types of tampering barred by Federal law. First, it forbids "misleading conduct," as defined in 18 U.S.C. § 1515. Such conduct was not covered in those circuits that had narrowly construed the omnibus clauses of 18 U.S.C. §§ 1503 and 1505 under the rule of ejusdem generis. See United States v. Metcalf, 435 F.2d 754 (9th Cir. 1970); United States v. Essex, 407 F.2d 214 (6th Cir. 1969). see generally, 128 Cong. Rec. H8203 (daily ed. Sept. 30, 1982). Second, 18 U.S.C. § 1512 makes intentional harassment a misdemeanor. This offense is intended to reach conduct less egregious than the corrupt, threatening or forceful conduct required for a violation of former 18 U.S.C. §§ 1503 and 1505. Harassing conduct has been defined as that intended to badger, disturb or pester. Wilson, supra.

Despite its coverage, section 1512 was not intended to reach all forms of witness tampering. Its coverage is limited to tampering accomplished by the specific means enumerated in the provision. United States v. King, 762 F.2d 232 (2d Cir. 1985), cert. denied, 475 U.S. 1018 (1986). The more imaginative types of witness tampering as well as forms of tampering defying enumeration were still prohibited by the omnibus provision of § 1503. United States v. Lester, 749 F.2d 1288 (9th Cir. 1984).

It is unclear whether 18 U.S.C. § 1512(b)(3) was intended to widen the prohibition against obstructing investigations contained in former 18 U.S.C. § 1510 to include investigations that are not per se criminal in nature, such as an FAA investigation of an aircraft accident, or a Senate committee investigation of the trucking industry. A comparison of the difference in phraseology between 18 U.S.C. §§ 1510 and 1512(b)(3), however, indicates that those differences are differences of style, not substance, and that no such expansion was intended. Section 1510 proscribes interference with "the communication of information relating to a violation of any criminal statute of the United States . . ." to a (Federal) criminal investigator; 18 U.S.C. § 1512(b)(3) proscribes interference with "the communication to a (Federal) law enforcement officer . . . of information relating to the commission or possible commission of a Federal offense." There is nothing to indicate that Congress intended to depart from the generally accepted meaning of "law enforcement" as criminal law enforcement and of "offense" as criminal violation. See 18 U.S.C. § 1515(4); 128 Cong. Rec. H8203 (daily ed. Sept. 30,

1982). Accordingly, prosecutions for interference with legislative or administrative investigations that have not taken on the character of a criminal investigation should be brought under the omnibus clause of 18 U.S.C. § 1505. *See* this Manual at 1726.

[cited in JM 9-69.100]

‹ 1728. Protection Of Government Processes -- Obstruction Of Federal Criminal Investigation -- 18 U.S.C. 1510

up

1730. Protection Of Government Processes -- "Official Proceeding" Requirement -- 18 U.S.C. 1512 ›

*Updated January 17, 2020*

**U.S. DEPARTMENT OF LABOR**          Occupational Safety & Health Administration
1111 Third Avenue, Suite 715
Seattle, Washington 98101 - 3212



July 11, 2011

Mr. Andrew Clark
3270 Soney Ridge Road
Eugene, OR 97405

Re: Consumer Financial Protection Act of 2010 Complaint Dated June 19, 2011

Dear Mr. Clark:

This is to acknowledge receipt of your complaint of retaliation under the whistleblower
provision of the Consumer Financial Protection Act of 2010, Section 1057 of the Dodd-
Frank Wall Street Reform and Consumer Protection Act of 2010, 12 U.S.C.A. § 5567 (or,
CFPA), which you filed on June 19, 2011. Please be advised that OSHA's jurisdiction to
investigate such complaints does not become effective until the "designated transfer
date," pursuant to Sections 1058 and 1062 of the Dodd-Frank Act, which the Secretary of
the Treasury has set as *July 21, 2011*. The relevant sections of the statute can be found at
www.whistleblowers.gov.

Should you wish to re-file a written CFPA whistleblower complaint on or after July 21st,
you may send us another letter with this request. However, in order for OSHA to initiate
an investigation, you must provide information that you were retaliated against on or after
July 21, 2011.

In your complaint letter, you also requested to file it under Section 806 of the Sarbanes-
Oxley Act ("SOX"). Please note that we have docketed that portion of your complaint as
a SOX complaint. The SOX complaint has been assigned to OSHA Investigator, Patricia
Brown who can be reached at 206-553-5930, and your employer has been notified about
it.

Thank-you for your cooperation.

Sincerely,

Vicky Coleman
Regional Supervisory Investigator

*RECOGNIZED*
*RETALIATION*

*NOT  MAY 25 DOC*
*PORTION*

*REPORT*

**OSHA**  Occupational
Safety and Health
Administration
www.osha.gov

*NO PAGE  GOT*  *3 a*

$29

Case 17-35247      Clark vs. Wells Fargo et al Exhibits    Page 39

*WELL HOPE Exhibits*  *LOST AT 2 & 2 L*

do_not_reply@occ.treas.gov <do_not_reply@occ.treas.gov>    6/29/2011 6:01 AM

# OCC Case # 01640244 has been created.

To mir99@comcast.net

6/29/2011

Re: Case# 01640244

Dear Andrew Clark:

This is an automatically generated message. Please do not reply to this email. We are unable to respond to messages sent to this address.

Please keep a copy of this email for your records!

This email acknowledges receipt of your Online Consumer Complaint form. Based upon your correspondence we have opened a case in the OCC's Customer Assistance Group (CAG). Please make note of the case number listed above, and provide the number on any future correspondence or contact with our office.

We are reviewing the information you provided, and will contact the bank requesting a response to your issues. In most instances, the bank will respond directly to you and copy us in writing. Once you receive the bank's response, it is very important that you carefully review their summary and actions taken, if any.

If the bank has satisfactorily addressed your issues and/or concerns no further action on your part is required. If however, the bank failed to address your issues and/or concerns or you disagree with their response, please contact the CAG in writing within 30 days of receipt of the bank's letter. Please include in your reply the specific issues that the bank failed to address or, if applicable, the reasons you disagree with the bank's assessment. Also, please include any additional documentation that supports your position.

The OCC examines national banks to ensure their safe and sound financial condition and ensures compliance with applicable banking laws, rules and regulations. The CAG was established to assist customers who have questions or complaints involving national banks. For additional information on the OCC and CAG please visit our internet site www.helpwithmybank.gov.

The CAG offers guidance, and assists consumers in resolving complaints about national banks and their subsidiaries. The CAG is not a consumer advocacy or bank advocacy group. The OCC is an administrative agency and we do not have jurisdiction to resolve contractual and factual issues. We do not have judicial authority and cannot award damages in excess of a bank's error.

While complaint processing times may vary, on average you should receive a written response from CAG within 60 days after we have a complete file.

If you would like to check the status of your case online, please click on the following link: https://appsec.helpwithmybank.gov/occ_form/checkstatus.aspx  or visit www.helpwithmybank.gov and click on the Check Case Status page.

Should you have questions, please contact this office at the number listed below.

Sincerely,

Customer Assistance Group
1-800-613-6743

This message contains confidential information and is intended solely for the use of the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by sending an email to helpwithmybank.faq@occ.treas.gov if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

## Exhibit 1

# Sheriff Joe Arpaio's Favorite Law Firm, Ogletree Deakins, Cost Taxpayers $2.4 Million -- in Just Two Years

**By Sarah Fenske**
Published Wed., May 26 2010 at 8:00 AM



**L. Eric Dowell, rainmaker**

The battle for control of Maricopa County -- pitting Sheriff Joe Arpaio and County Attorney Andrew Thomas against the Board of Supervisors, judges, and county administrators -- has been costly to both taxpayers and the parties involved.

But it's been a major boon to one local law firm.

Ogletree Deakins, a relatively obscure firm specializing in employment law, became Arpaio and Thomas' go-to legal counsel just as the disputes were heating up. And, according to public records obtained by *New Times*, the firm has billed the county for a staggering $2.49 million since January 2009.

Most of the work had little to do with employment law -- and most of the firm's representation has been unsuccessful, legally speaking.

Ogletree Deakins has fought for the sheriff's right to take over the county's computer system. They tried to argue that the supervisors didn't have the right to sweep money from funds controlled by Thomas and Arpaio. They're currently pressing Arpaio's assertion that he shouldn't have to open his books to county auditors.

And, according to the billing records we looked at, it appears likely that Ogletree lawyers may have even been behind one of Arpaio/Thomas' biggest embarassments: the criminal charges they filed against the county's presiding criminal court judge, Gary Donahoe.

As *New Times* first reported earlier this month, prosecutors filed criminal charges against Donahoe without bothering to seek a grand jury indictment. They simply filed a direct complaint, and attached a "probable cause" statement that, almost word for word, matched a complaint that the sheriff's office had filed with the Arizona Commission on Judicial Conduct one week before. That complaint, detailing a conspiracy theorist's view of Judge Donahoe's conduct, was signed by Arpaio's chief deputy, David Hendershott.

It now appears that Hendershott had some help penning the letter.                    2 d

According to its billing statements, Ogletree charged the county $27,310 for something titled "MCSO State Bar/Judicial." The first two invoices with that notation were submitted on December 9, 2009 --

Mac phoenixnewtimes.com/valley/fuer/2010/05/sheriff_joe_arpaios_favorite_John2printids/up    1/2

just one day after Hendershott filed "his" complaint with the judicial conduct commission.

So did an employment law specialist draft the document that became the basis for the criminal charges against the county's presiding criminal court judge? If nothing else, it would explain why the document drew guffaws from seasoned prosecutors. Ogletree's lawyers were likely in way over their heads. (And really, what was prosecutor Lisa Aubuchon thinking, merely regurgitating Ogletree's letter as a criminal complaint?)

According to the billing statements examined by *New Times*, Ogletree also advised Andrew Thomas on matters involving the State Bar. (That cost the taxpayers $18,929.) And, they advised either Arpaio or Thomas -- the billings aren't clear -- about issues relating to the selection of a new county attorney. (That cost us *another* $12,762.)

Finally, Ogletree billed the county a staggering $1.2 million for something described only as "contract compliance." County Spokeswoman Cari Gerchick told *New Times* that county administrators have no idea what that means.

We contacted L. Eric Dowell, a shareholder at Ogletree Deakins and the sheriff's lawyer of choice, to ask about the "contract compliance" payments, but we hadn't heard back by press time. We'll post an update if we get an answer.

In the mean time, looking at the wasted $2.4 million and the unexplained $1.2 million and the tens of thousands of dollars for failed legal adventures -- well, we never thought we'd say this, but we actually miss Dennis Wilenchik. Yes, *New Times* disagreed with Wilenchik on just about everything. But Wilenchik handled some pretty tough cases for Arpaio, not just political crap that should have never made its way to a docket.

And Wilenchik, unlike the sheriff's new $2-million-counsel, actually knew how to win.

2 7

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
### Eugene, Oregon Division

*Wells Fargo: attorneys lied, cheated and stole from us and tried to hide it by VIOLENT REPEATED FEDERAL WITNESS TAMPERING.*

Andrew Clark, Plaintiff
3270 Stoney Ridge Rd.
Eugene, OR 97405  541.510.3915
OperationSunriseLaw@gmail.com

**Civil Complaint Case: 6.cv-20-253-aa**

Wells Fargo and Company
420 Montgomery St. San Francisco, CA 94163
as Voluntary or Mandatory
Intervenor for Plaintiff
(Subject to FRCP 24)

Motion for Judicial Notice of Adjudicative Facts
Per Federal Rules of Evidence 201(b)(2)
and Clarification of "Claim for Relief"

March 18, 2020 Crime Report to Billy Williams,
U.S. Attorney for Oregon.  (8 Page Exhibit)
Hand-Delivered at Eugene Office and filed with
Court as Correspondence.

**vs.** Defendants:

Wells Fargo Bank et al

This Motion Filed March 26, 2020

## Motion for Judicial Notice of Adjudicative Facts and Clarification of Claim for Relief

My complaint  accurately summarized what each Defendant did (or failed to do) that caused and concealed the root crime of the enterprise.   No corporate crime is more rare and serious than physically tampering with a  federally-insured bank worker with two active federal investigations in process  who had also been admitted to local FBI to deliver crime reports due to indications of retaliation. The nature of the tampering is violent and ghastly as I describe.

Such cases get prosecuted similarly to a lurid case of aggravated murder only with more vengeance and a much wider net, which is why so many Defendants are listed. Most of you helped conceal it because you were lied to by the perpetrators (or by others they coerced or influenced.) In my case, special attention should be given to complete role of Defendant Erik Hasselman.  Special attention must be given to what motivated him or coerced him because his personal involvement and subsequent  corruption of all controls is absolutely epic for a Major Violent Crimes Prosecutor.

An employee in our local 'pre-trail services' office named "Brian Snazo" supervises the Risk Assessment Tool (RAT)  in Lane County.  He and the RAT system electronic archives will most likely reveal my case "it is not their first rodeo."   Mr. Snazo is not currently a Defendant.

Signed and Sworn to as Fact:  Andrew Clark, Plaintiff
3270 Stoney Ridge Rd. Eugene OR 97405  541.510.3915 OperationSunriseLaw@gmail.com

March 18, 2020
Billy Williams, United States Attorney for Oregon
1000 SW 3rd Ave Ste 600  Portland OR  97204
c/o Eugene OR Office in Wayne Morse Courthouse

Filed as Exhibit-Motion to Take
Judicial Notice
6.20.cv.253.aa
March 26, 2020

## FEDERAL MAJOR VIOLENT CRIME REPORT
Repeated, Physical Tampering of a Federal Witness in Active
Department of Labor **and** Office of Comptroller of Currency Investigations.
Obstruction of Justice via Rampant Public Corruption Including Hobbs Act Violations.
Novel Crimes: Deliberate, Knowing Use of Family Courts as a Means of Tampering,
Fraudulent and Coordinated Use of Local, State, and Federal Justice Systems to Obstruct.

My civil complaint 6.20.cv.253.aa does a very good job of documenting actions against me and linking them to my employment at Wells Fargo. But unless it is read carefully, it could leave a reader wondering "what crimes could possibly have been committed so extreme that a group of people would be used to conceal it by committing a series of RICO crimes including the use of courts to obstruct justice?  What evidence could a lowest-level worker possibly have of it?"

1. A police report is a very special and perfect type of evidence. Attached is a page from a Eugene, OR police report dated July 19, 2011. It is Page 82 of the civil complaint. It is from before all the RICO crimes were committed against me. It shows Wells Fargo corporate security agent Martin Ogno was aware I had filed reports with Federal Bureau-Investigation (FBI) in Eugene OR, therefore Wells Fargo was aware. Most shocking: Eugene Police told Ogno I considered his "well-being visit at my home at night by uniformed SWAT police" to be retaliation. Ogno told Eugene Police to 'fuhggedaboutit' and explains he had contacted FBI and that FBI did not take my (just filed in-person and sworn-to well-evidenced, voluminous) reports seriously.  Think of that horrific violation of City of Eugene Police.

2. After that is a printout of Department of Justice publication "Criminal Resource Manual 1729". It has a standard archive disclaimer but the content is valid, last updated January 2020. A person who reports to a federal law enforcement agency such as FBI is a Federal Witness. Tampering with a Federal Witness is a violation of 18 USC 1512, particularly when Federal investigations are in process.

3. Two different Federal Investigations were in process. Next exhibits are proof from Department of Labor and Office of Comptroller of Currency of recently accepted Federal investigations. The PACER system records for SLAPP-suit 6.11.cv.06248.ho and my subsequent civil actions show exactly how the courts were used to bypass discovery of the above crimes.

4. My civil complaint enumerates and documents the RICO crimes committed against me. Please note that I presented Tampering using false arrest and jail as violations of 18 USC 1201 by Wells Fargo/ Ogletree Deakins: armed kidnapping for political or economic motivations. Use of police to tamper with a Federal Witness is absolutely gangland. It is as bad it gets, other than the novel crimes listed above and detailed in the civil complaint.

5. Related but not relevant to the crime report: I motioned for Wells Fargo and Company to intervene. It is in PACER. It is possible that everything that happened was actually a Wells Fargo & Co. project. A metaphor for that is found on www.TheEugeneBlairProject.com.  I placed the Circuit Court and Police a/v on www.RisePatriot.com and www.WellsFargoWitz.com (family court).

Thank you from Andy Clark 3270 Stoney Ridge Rd. Eugene OR 97405 541.510.3915 (exhibits follow)

:4 of 4
11-11771

was Officer Pieske who was there with us during the contacts and told Clark that Officer Pieske concurred with my findings in the matters. I asked Clark if there was anything else I could do for him. Clark said there was nothing else I could do for him and he left city hall.

Also per Sergeant Klinko's request, I contacted Marty Ogno, head of security for Wells Fargo. I called Ogno and told him I had contacted Clark and that he had been advised he was trespassed from all Wells Fargo properties. I also told Ogno Clark was concerned he had $24,000 in an account at Wells Fargo. Ogno said he had looked it up and though Clark only had about $200 in an account, but that he would close Clark's account and mail him a check with the remaining balance. Ogno asked how the contact went. I told Ogno that Clark felt he was being retaliated upon for contacting the FBI and CIA with Wells Fargo's wrong doings. Ogno said that he had been in contact with the FBI and told me that the FBI did not take Clark's reports seriously.

>>>>>
FBI would
not say that.

Notice no
person at
FBI is
referenced.

At approximately 1900 hours, dispatch advised that Clark had left a phone number for me to call him back so he could further discuss his desire to press charges against Wells Fargo for filing a false police report. I requested Sergeant Magnuson respond to the report writing room where I was working on reports so I could discuss the situation with him before calling Clark back. While I was explaining the situation to Sergeant Magnuson, Dispatch advised that Clark had called back 3 more times requesting contact. I then asked Sergeant Magnuson if he would contact Clark in my behalf in that I was unable to effectively communicate to Clark that Wells Fargo had broken no laws and that they had the right to trespass Clark from their properties.

It is corruption
of FBI processes
and obstruction.

Reviewed by FTO: **Pieske**    **112**
              Name        Badge

BTW, I did
report to CIA via
nationwide fax#
and consulate
offices in
Bangalore and
Hyderabad India
due to concerns
related to
system
development
work on the
CORE/ELF
system I had to
use here that
was being badly
programmed in
India.

2sch
#623

07-19-11 2330 Hours

Approved By: Magnuson 122

To: fax    Page 4 of 9    Apr/9/2020 8:00:36 AM    13034846329->503-223-2827    4/9
2020-04-09 14:51:44 (GMT)    13034846329 From: Andrew Clark

3/16/2020    1729. Protection Of Government Processes -- Tampering With Victims, Witnesses, Or Informants -- 18 U.S.C. 1512 | JM | Department of ...

An official website of the United States government. Here's how you know

THE UNITED STATES
DEPARTMENT of JUSTICE This page is available from the U.S. Department of Justice website. The information here may be outdated and links may no longer
ARCHIVES function. Please contact webmaster@usdoj.gov if you have any questions about the archive site.

## 1729. PROTECTION OF GOVERNMENT PROCESSES — TAMPERING WITH VICTIMS, WITNESSES, OR INFORMANTS — 18 U.S.C. 1512

Section 1512 of Title 18 constitutes a broad prohibition against tampering with a witness, victim or informant. It proscribes conduct intended to illegitimately affect the presentation of evidence in Federal proceedings or the communication of information to Federal law enforcement officers. It applies to proceedings before Congress, executive departments, and administrative agencies, and to civil and criminal judicial proceedings, including grand jury proceedings. See 18 U.S.C. § 1515(a)(1). In addition, the section provides extraterritorial Federal jurisdiction over the offenses created therein. See 18 U.S.C. § 1512(g); 128 Cong. Rec. H8469 (daily ed. Oct. 1, 1980); H. R. Rep. No. 1369, 96th Cong., 2d Sess. 20-22 (1980).

The express prohibitions against tampering with witnesses and parties contained in former 18 U.S.C. §§ 1503 and 1505, are now in paragraphs (b)(1) and (2) of 18 U.S.C. § 1512. (As discussed in this Manual at 1724 and 1727, the omnibus clauses of these provisions still cover witnesses.) All forms of tampering with informants covered in former 18 U.S.C. § 1510, with the exception of tampering by means of bribery, are now proscribed by 18 U.S.C. § 1512(b)(3). Tampering with informants by means of bribery remains an 18 U.S.C. § 1510 offense.

Section 1512 augments the prohibitions of the former law in several important respects. First, section 1512(b)(3) sweeps more broadly than former 18 U.S.C. § 1510 and expands the class of informants protected by Federal law. For example, it protects individuals having information concerning a violation of a condition of probation, parole, or bail whether or not that violation constitutes a violation of any other Federal criminal statute. Second, it protects individuals seeking to provide information to Federal judges or Federal probation and pretrial services officers.

Section 1512 also includes attempts in its list of prohibited conduct. There is no requirement that the defendants actions have the intended obstructive effect. See, e.g., United States v. Murray, 751 F.2d 1528 (9th Cir.), cert. denied, 474 U.S. 979 (1985); United States v. Wilson, 796 F.2d 55 (4th Cir. 1986), cert. denied, 479 U.S. 1039 (1987). As amended by the Criminal Law and Procedure Technical Amendments Act of 1988, Pub. L. 99-646, it is clear that the killing of a witness or attempts to kill a witness in order to prevent his/her testimony constitutes an act of force intended to "influence the witness' testimony." See 18 U.S.C. § 1512(a). This change was necessitated by one court interpreting former § 1512 as not reaching an act of attempted murder that was intended to prevent a witness from testifying. See United States v. Dawlett, 787 F.2d 771 (1st Cir. 1986).

The section specifically abolishes the pending corroboration requirement of 18 U.S.C. §§ 1503 and 1505. The provision also eliminates ambiguity about the class of individuals protected. Although the former law protected witnesses, parties, and informants, it was unclear whether that law reached the intimidation of third parties (for example, the spouse of a witness) for the purpose of intimidating the principal party. Section 1512 of Title 18 plainly covers such conduct, for it speaks of conduct directed toward "another person." See 128 Cong. Rec. H8203 (daily ed. Sept. 30, 1982).

Section 1512 protects potential as well as actual witnesses. With the addition of the words "any person," it is clear that a witness is "one who knew or was expected to know material facts and was expected to testify to them before pending judicial proceedings." United States v. DiSalvo, 631 F.Supp. 1398 (E.D. Pa. 1986), aff'd, 826 F.2d 1054 (3d Cir. 1987). Under § 1512, an individual retains his/her status as a witness even after testifying. United States v. Wilson, 796 F.2d 55 (4th Cir. 1986), cert. denied, 479 U.S. 1039 (1987) (protection of witness under § 1512 continues throughout the trial); United States v. Patton, 721 F.2d 159 (6th Cir. 1983) (witness retains status while defendant's motion for a new trial is pending); United States v. Chandler, 604 F.2d 972 (5th Cir. 1979) (witness retains status while case is pending on direct appeal). Cf. United States v. Risken, 788 F.2d 1361 (8th Cir.), cert. denied, 479 U.S. 923 (1986) (party was a witness after asserting his Fifth Amendment privilege and being dismissed from the stand since he could be recalled at any time).

Section 1512 of Title 18 contains two significant additions to the types of tampering barred by Federal law. First, it forbids "misleading conduct," as defined in 18 U.S.C. § 1515. Such conduct was not covered in those circuits that had narrowly construed the omnibus clauses of 18 U.S.C. §§ 1503 and 1505 under the rule of ejusdem generis. See United States v. Metcalf, 435 F.2d 754 (9th Cir. 1970); United States v. Essex, 407 F.2d 214 (6th Cir. 1969). see generally, 128 Cong. Rec. H8203 (daily ed. Sept. 30, 1982). Second, 18 U.S.C. § 1512 makes intentional harassment a misdemeanor. This offense is intended to reach conduct less egregious than the corrupt, threatening or forceful conduct required for a violation of former 18 U.S.C. §§ 1503 and 1505. Harassing conduct has been defined as that intended to badger, disturb or pester. Wilson, supra.

Despite its coverage, section 1512 was not intended to reach all forms of witness tampering. Its coverage is limited to tampering accomplished by the specific means enumerated in the provision. United States v. King, 762 F.2d 232 (2d Cir. 1985), cert. denied, 475 U.S. 1018 (1986). The more imaginative types of witness tampering as well as forms of tampering defying enumeration were still prohibited by the omnibus provision of § 1503. United States v. Lester, 749 F.2d 1288 (9th Cir. 1984).

It is unclear whether 18 U.S.C. § 1512(b)(3) was intended to widen the prohibition against obstructing investigations contained in former 18 U.S.C. § 1510 to include investigations that are not per se criminal in nature, such as an FAA investigation of an aircraft accident, or a Senate committee investigation of the trucking industry. A comparison of the difference in phraseology between 18 U.S.C. §§ 1510 and 1512(b)(3), however, indicates that those differences are differences of style, not substance, and that no such expansion was intended. Section 1510 proscribes interference with "the communication of information relating to a violation of any criminal statute of the United States . . ." to a (Federal) criminal investigator; 18 U.S.C. § 1512(b)(3) proscribes interference with "the communication to a (Federal) law enforcement officer . . . information relating to the commission or possible commission of a Federal offense." There is nothing to indicate that Congress intended to depart from the generally accepted meaning of "law enforcement" as criminal law enforcement and of "offense" as criminal violation. See 18 U.S.C. § 1515(4); 128 Cong. Rec. H8203 (daily ed. Sept. 30,

3/16/2020      1729. Protection Of Government Processes -- Tampering With Victims, Witnesses, Or Informants -- 18 U.S.C. 1512 | JM | Department of ...

1982). Accordingly, prosecutions for interference with legislative or administrative investigations that have not taken on the character of a criminal investigation should be brought under the omnibus clause of 18 U.S.C. § 1505. See this Manual at 1726.

[cited in JM 9-69.100]

| ‹ 1728. Protection Of Government Processes -- Obstruction Of Federal Criminal Investigation -- 18 U.S.C. 1510 | up | 1730. Protection Of Government Processes -- "Official Proceeding" Requirement -- 18 U.S.C. 1512 › |
|---|---|---|

*Updated January 17, 2020*

To: fax   Page 6 of 9

Apr/9/2020 8:00:36 AM    13034846329->503-223-2827                          6/9
2020-04-09 14:51:44 (GMT)                          13034846329 From: Andrew Clark
                                                                              (94 of 334)

Case: 17-35247, 06/21/2017, ID: 10482013, DktEntry: 6-1, Page 94 of 295

**U.S. DEPARTMENT OF LABOR**          Occupational Safety & Health Administration
                                      1111 Third Avenue, Suite 715
                                      Seattle, Washington 98101 - 3212



July 11, 2011

Mr. Andrew Clark
3270 Soncy Ridge Road
Eugene, OR 97405

Re: Consumer Financial Protection Act of 2010 Complaint Dated June 19, 2011

Dear Mr. Clark:

This is to acknowledge receipt of your complaint of retaliation under the whistleblower
provision of the Consumer Financial Protection Act of 2010, Section 1057 of the Dodd-
Frank Wall Street Reform and Consumer Protection Act of 2010, 12 U.S.C.A. § 5567 (or,
CFPA), which you filed on June 19, 2011. Please be advised that OSHA's jurisdiction to
investigate such complaints does not become effective until the "designated transfer
date," pursuant to Sections 1058 and 1062 of the Dodd-Frank Act, which the Secretary of
the Treasury has set as *July 21, 2011*. The relevant sections of the statute can be found at
www.whistleblowers.gov.

Should you wish to re-file a written CFPA whistleblower complaint on or after July 21st,
you may send us another letter with this request. However, in order for OSHA to initiate
an investigation, you must provide information that you were retaliated against on or after
July 21, 2011.

In your complaint letter, you also requested to file it under Section 806 of the Sarbanes-
Oxley Act ("SOX"). Please note that we have docketed that portion of your complaint as
a SOX complaint. The SOX complaint has been assigned to OSHA Investigator, Patricia
Brown who can be reached at 206-553-5930, and your employer has been notified about
it.

Thank-you for your cooperation.

Sincerely,

*Vicky Coleman*
Vicky Coleman
Regional Supervisory Investigator

RECOGNIZED
RETALIATION

NOT   MAY 25  DOL
                PORTLAND

**OSHA**   Occupational
           Safety and Health
           Administration
           www.osha.gov                 REPORT

$29                                                    3a

Case 17-35247       Clark vs. Wells Fargo et al Exhibits          Page 39

3/17/2020                          Xfinity Connect OCC Case _ 01640244 has been created_ Printout

do_not_reply@occ.treas.gov <do_not_reply@occ.treas.gov>                          6/29/2011 6:01 AM

# OCC Case # 01640244 has been created.

To mir99@comcast.net

6/29/2011

Re: Case# 01640244

Dear Andrew Clark:

This is an automatically generated message. Please do not reply to this email. We are unable to respond to messages sent to this address.

Please keep a copy of this email for your records!

This email acknowledges receipt of your Online Consumer Complaint form. Based upon your correspondence we have opened a case in the OCC's Customer Assistance Group (CAG). Please make note of the case number listed above, and provide the number on any future correspondence or contact with our office.

We are reviewing the information you provided, and will contact the bank requesting a response to your issues. In most instances, the bank will respond directly to you and copy us in writing. Once you receive the bank's response, it is very important that you carefully review their summary and actions taken, if any.

If the bank has satisfactorily addressed your issues and/or concerns no further action on your part is required. If however, the bank failed to address your issues and/or concerns or you disagree with their response, please contact the CAG in writing within 30 days of receipt of the bank's letter. Please include in your reply the specific issues that the bank failed to address or, if applicable, the reasons you disagree with the bank's assessment. Also, please include any additional documentation that supports your position.

The OCC examines national banks to ensure their safe and sound financial condition and ensures compliance with applicable banking laws, rules and regulations. The CAG was established to assist customers who have questions or complaints involving national banks. For additional information on the OCC and CAG please visit our internet site www.helpwithmybank.gov.

The CAG offers guidance, and assists consumers in resolving complaints about national banks and their subsidiaries. The CAG is not a consumer advocacy or bank advocacy group. The OCC is an administrative agency and we do not have jurisdiction to resolve contractual and factual issues. We do not have judicial authority and cannot award damages in excess of a bank's error.

While complaint processing times may vary, on average you should receive a written response from CAG within 60 days after we have a complete file.

If you would like to check the status of your case online, please click on the following link:
https://appsec.helpwithmybank.gov/olcc_form/checkstatus.aspx or visit www.helpwithmybank.gov and click on the Check Case Status page.

Should you have questions, please contact this office at the number listed below.

Sincerely,

Customer Assistance Group
1-800-613-6743

This message contains confidential information and is intended solely for the use of the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by sending an email to helpwithmybank.faq@occ.treas.gov If you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

## Exhibit 1

# Sheriff Joe Arpaio's Favorite Law Firm, Ogletree Deakins, Cost Taxpayers $2.4 Million -- in Just Two Years

**By Sarah Fenske**
Published Wed., May 26 2010 at 8:00 AM



L. Eric Dowell, rainmaker

The battle for control of Maricopa County -- pitting Sheriff Joe Arpaio and County Attorney Andrew Thomas against the Board of Supervisors, judges, and county administrators -- has been costly to both taxpayers and the parties involved.

But it's been a major boon to one local law firm.

Ogletree Deakins, a relatively obscure firm specializing in employment law, became Arpaio and Thomas' go-to legal counsel just as the disputes were heating up. And, according to public records obtained by *New Times*, the firm has billed the county for a staggering $2.49 million since January 2009.

Most of the work had little to do with employment law -- and most of the firm's representation has been unsuccessful, legally speaking.

Ogletree Deakins has fought for the sheriff's right to take over the county's computer system. They tried to argue that the supervisors didn't have the right to sweep money from funds controlled by Thomas and Arpaio. They're currently pressing Arpaio's assertion that he shouldn't have to open his books to county auditors.

And, according to the billing records we looked at, it appears likely that Ogletree lawyers may have even been behind one of Arpaio/Thomas' biggest embarrassments: the criminal charges they filed against the county's presiding criminal court judge, Gary Donahoe.

As *New Times* first reported earlier this month, prosecutors filed criminal charges against Donahoe without bothering to seek a grand jury indictment. They simply filed a direct complaint, and attached a "probable cause" statement that, almost word for word, matched a complaint that the sheriff's office had filed with the Arizona Commission on Judicial Conduct one week before. That complaint, detailing a conspiracy theorist's view of Judge Donahoe's conduct, was signed by Arpaio's chief deputy, David Hendershott.

It now appears that Hendershott had some help penning the letter.

According to its billing statements, Ogletree charged the county $27,310 for something titled "MCSO State Bar/Judicial." The first two invoices with that notation were submitted on December 1, 2009 --

just one day after Hendershott filed "his" complaint with the judicial conduct commission.

So did an employment law specialist draft the document that became the basis for the criminal charges against the county's presiding criminal court judge? If nothing else, it would explain why the document drew guffaws from seasoned prosecutors. Ogletree's lawyers were likely in way over their heads. (And really, what was prosecutor <u>Lisa Aubuchon</u> thinking, merely regurgitating Ogletree's letter as a criminal complaint?)

According to the billing statements examined by *New Times*, Ogletree also advised Andrew Thomas on matters involving the State Bar. (That cost the taxpayers $18,929). And, they advised either Arpaio or Thomas -- the billings aren't clear -- about issues relating to the selection of a new county attorney. (That cost us *another* $12,762.)

Finally, Ogletree billed the county a staggering $1.2 million for something described only as "contract compliance." County Spokeswoman Cari Gerchick told *New Times* that county administrators have no idea what that means.

We contacted L. Eric Dowell, a shareholder at Ogletree Deakins and the sheriff's lawyer of choice, to ask about the "contract compliance" payments, but we hadn't heard back by press time. We'll post an update if we get an answer.

In the mean time, looking at the wasted $2.4 million and the unexplained $1.2 million and the tens of thousands of dollars for failed legal adventures -- well, we never thought we'd say this, but we actually miss Dennis Wilenchik. Yes, *New Times* disagreed with Wilenchik on <u>just about everything</u>. But Wilenchik handled some pretty tough cases for Arpaio, not just political crap that should have never made its way to a docket.

And Wilenchik, unlike the sheriff's new $2-million-counsel, actually knew how to win.

27

# EXHIBIT E



# Notice of Service of Process

| Primary Contact: | WF West - WF Bank<br>Corporation Service Company- Wilmington, DELAWARE<br>251 Little Falls Dr<br>Wilmington, DE 19808-1674 |
|---|---|

| | |
|---|---|
| **Entity:** | Wells Fargo & Company<br>Entity ID Number 1915501 |
| **Entity Served:** | Wells Fargo and Company |
| **Title of Action:** | Andrew Clark vs. Wells Fargo and Company |
| **Matter Name/ID:** | Andrew Clark vs. Wells Fargo Bank (10039276) |
| **Document(s) Type:** | Motion |
| **Nature of Action:** | Labor / Employment |
| **Court/Agency:** | U.S. District Court, OR |
| **Case/Reference No:** | 2.cv-20-253-aa |
| **Jurisdiction Served:** | Oregon |
| **Date Served on CSC:** | 04/13/2020 |
| **Answer or Appearance Due:** | Other/NA |
| **Originally Served On:** | Wells Fargo Board Communications |
| **How Served:** | Client Direct |
| Sender Information: | Andrew Clark<br>541-510-3915 |
| **Client Requested Information:** | Matter Management User Groups: [DNA AM]<br>Routing Rules (CSC): R1652<br>Classification: Standard |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674 (888) 690-2882 | sop@cscglobal.com

| | |
|---|---|
| **From:** | operationsunriselaw@gmail.com |
| **To:** | jpollino@ghrlawyers.com; cao@osbar.org; gc@osbar.org; andre.burke@americanbar.org; BoardCommunications@wellsfargo.com |
| **Subject:** | [attachment stripped] Bar Complaint - 18 USC 1621 violation |
| **Date:** | Monday, April 13, 2020 1:44:22 PM |
| **Attachments:** | Bar Complaint - 18 USC 1621 violation.msg |

Some parts of this message were removed because they violated your mail server's policies.

Conferral on Case No. 6_20-cv-00253-AA.eml was removed from the message because it violates your mail server's policy.

| From: | Operation SunriseLAW |
| --- | --- |
| To: | John E. Pollino; OSB CAO Intake; OSB General Counsel; andre.burke@americanbar.org; Board Communications |
| Subject: | Bar Complaint - 18 USC 1621 violation |
| Date: | Monday, April 13, 2020 1:42:48 PM |
| Attachments: | 56.pdf |
| | 56-1.pdf |

Evidence is attached. Relates to LR-1 certification of Mr. Pollino Case 20-00253

On April 9, 2020 Mr. Pollino filed a LR-1 certification claiming that we conferred and he went into some detail regarding the nature of conference. Fact is, I received an email last week (attached) with his April 9 filings telling me he considers the email to be conference. I do not recall any other discussion with him and definitely none of substance.

The difference between his LR-1 Certification is so removed from facts and evidence (attached) that it represents yet another RICO Violation on the part of his Clients in this case: Obstruction of Justice-Perjury and implicates him in the concealment of massive and perfectly evidenced Federal Witness Tampering (see attached Motion filed April 26). Obviously they want to continue concealing hard, cold organized crime and proven Federal Witness Tampering. But why would you help them? Did they coerce you to lie to the court as they did Erik Hasselman ?

Thank you very much. Please call me any time in case I missed something here. I just don't recall ever speaking with you. So if your records indicate otherwise, please give me a call. Otherwise I will be compelled to report you and your obstructive LR-1 Certification which is an- act -of -perjury- by -you as appropriate.

Mr. Pollino: your first duty is to the law and to the court.... not your clients frantically working to conceal well-proven facts and evidence in yet more innuendo and ad hominem attacks against me..... especially in this case involving attorneys as defendants.

Thank you from Andy Clark 541.510.3915

Virus-free. www.avast.com

FILED 26 MAR '20 13:28 USDC-ORE

IN THE UNITED STATES DISTRICT COURT
**FOR THE DISTRICT OF OREGON**
**Eugene, Oregon Division**

Andrew Clark, Plaintiff
3270 Stoney Ridge Rd.
Eugene, OR 97405   541.510.3915
OperationSunriseLaw@gmail.com

Wells Fargo and Company
420 Montgomery St. San Francisco, CA 94163
as Voluntary or Mandatory
Intervenor for Plaintiff
(Subject to FRCP 24)

**Civil Complaint Case: 6.cv-20-253-aa**

Motion for Judicial Notice of Adjudicative Facts
Per Federal Rules of Evidence 201(b)(2)
and Clarification of "Claim for Relief"

March 18, 2020 Crime Report to Billy Williams,
U.S. Attorney for Oregon.  (8 Page Exhibit)
Hand-Delivered at Eugene Office and filed with
Court as Correspondence.

**vs.** Defendants:

Wells Fargo Bank et al

This Motion Filed March 26, 2020

### Motion for Judicial Notice of Adjudicative Facts
### and Clarification of Claim for Relief

My complaint accurately summarized what each Defendant did (or failed to do) that caused
and concealed the root crime of the enterprise.   No corporate crime is more rare and serious
than physically tampering with a  federally-insured bank worker with two active federal
investigations in process  who had also been admitted to local FBI to deliver crime reports due
to indications of retaliation.  The nature of the tampering is violent and ghastly as I describe.

Such cases get prosecuted similarly to a lurid case of aggravated murder only with more
vengeance and a much wider net, which is why so many Defendants are listed. Most of you
helped conceal it because you were lied to by the perpetrators (or by others they coerced or
influenced.)  In my case, special attention should be given to complete role of Defendant Erik
Hasselman.  Special attention must be given to what motivated him or coerced him because
his personal involvement and subsequent  corruption of all controls is absolutely epic for a
Major Violent Crimes Prosecutor.

An employee in our local 'pre-trail services' office named "Brian Snazo" supervises the Risk
Assessment Tool (RAT)  in Lane County.  He and the RAT system electronic archives will most
likely reveal my case "it is not their first rodeo."   Mr. Snazo is not currently a Defendant.

Signed and Sworn to as Fact: Andrew Clark, Plaintiff
3270 Stoney Ridge Rd. Eugene OR 97405   541.510.3915  OperationSunriseLaw@gmail.com

March 18, 2020
Billy Williams, United States Attorney for Oregon
1000 SW 3rd Ave Ste 600  Portland OR  97204
c/o Eugene OR Office in Wayne Morse Courthouse

Filed as Exhibit-Motion to Take
Judicial Notice
6.20.cv.253.aa
March 26, 2020

## FEDERAL MAJOR VIOLENT CRIME REPORT
Repeated,  Physical Tampering of a Federal Witness in Active
Department of Labor **and** Office of Comptroller of Currency Investigations.
Obstruction of Justice via Rampant Public Corruption Including Hobbs Act Violations.
Novel Crimes:  Deliberate, Knowing Use of Family Courts as a Means of Tampering,
Fraudulent and Coordinated Use of Local, State, and Federal Justice Systems to Obstruct.

My civil complaint 6.20.cv.253.aa does a very good job of documenting actions against me and linking them to my employment at Wells Fargo.  But unless it is read carefully, it could leave a reader wondering "what crimes could possibly have been committed so extreme that a group of people would be used to conceal it by committing a series of RICO crimes including the use of courts to obstruct justice?  What evidence could a lowest-level worker possibly have of it?"

1.  A police report is a very special and perfect type of evidence. Attached is a page from a Eugene, OR police report dated July 19, 2011.  It is Page 82 of the civil complaint.  It is from before all the RICO crimes were committed against me.  It shows Wells Fargo corporate security agent Martin Ogno was aware I had filed reports with Federal Bureau-Investigation (FBI) in Eugene OR, therefore Wells Fargo was aware.  Most shocking: Eugene Police told Ogno I considered his "well-being visit at my home at night by uniformed SWAT police" to be retaliation.  Ogno told Eugene Police to 'fuhggedaboutit' and explains he had contacted FBI and that FBI did not take my (just filed in-person and sworn-to well-evidenced, voluminous) reports seriously.  <u>Think of that horrific violation of City of Eugene Police.</u>

2.  After that is a printout of Department of Justice publication "Criminal Resource Manual 1729".  It has a standard archive disclaimer but the content is valid, last updated January 2020.  A person who reports to a federal law enforcement agency such as FBI is a Federal Witness.  Tampering with a Federal Witness is a violation of 18 USC 1512, particularly when Federal investigations are in process.

3.  Two different Federal Investigations were in process.  Next exhibits are proof from Department of Labor and Office of Comptroller of Currency of recently accepted Federal investigations.  The PACER system records for SLAPP-suit 6.11.cv.06248.ho and my subsequent civil actions show exactly how the courts were used to bypass discovery of the above crimes.

4.  My civil complaint enumerates and documents the RICO crimes committed against me.  Please note that I presented Tampering using false arrest and jail as violations of 18 USC 1201 by Wells Fargo/ Ogletree Deakins:, armed kidnapping for political or economic motivations.  Use of police to tamper with a Federal Witness is absolutely gangland.  It is as bad it gets, other than the novel crimes listed above and detailed in the civil complaint.

5.  Related but not relevant to the crime report: I motioned for Wells Fargo and Company to intervene. It is in PACER.  It is possible that everything that happened was actually a Wells Fargo & Co. project. A metaphor for that is found on www.TheEugeneBlairProject.com.  I placed the Circuit Court and Police a/v on www.RisePatriot.com and www.WellsFargoWitz.com (family court).

Thank you from Andy Clark 3270 Stoney Ridge Rd. Eugene OR 97405 541.510.3915 (exhibits follow)

was Officer Pieske who was there with us during the contacts and told Clark that Officer Pieske concurred with my findings in the matters. I asked Clark if there was anything else I could do for him. Clark said there was nothing else I could do for him and he left city hall.

Also per Sergeant Klinko's request, I contacted Marty Ogno, head of security for Wells Fargo. I called Ogno and told him I had contacted Clark and that he had been advised he was trespassed from all Wells Fargo properties. I also told Ogno Clark was concerned he had $24,000 in an account at Wells Fargo. Ogno said he had looked it up and though Clark only had about $200 in an account, but that he would close Clark's account and mail him a check with the remaining balance. Ogno asked how the contact went. I told Ogno that Clark felt he was being retaliated upon for contacting the FBI and CIA with Wells Fargo's wrong doings. Ogno said that he had been in contact with the FBI and told me that the FBI did not take Clark's reports seriously.

>>>>>

FBI would
not say that.

At approximately 1900 hours, dispatch advised that Clark had left a phone number for me to call him back so he could further discuss his desire to press charges against Wells Fargo for filing a false police report. I requested Sergeant Magnuson respond to the report writing room where I was working on reports so I could discuss the situation with him before calling Clark back. While I was explaining the situation to Sergeant Magnuson, Dispatch advised that Clark had called back 3 more times requesting contact. I then asked Sergeant Magnuson if he would contact Clark in my behalf in that I was unable to effectively communicate to Clark that Wells Fargo had broken no laws and that they had the right to trespass Clark from their properties.

Notice no
person at
FBI is
referenced.

It is corruption
of FBI processes
and obstruction.

Reviewed by FTO: **Pieske**        **112**
                        Name                Badge

BTW, I did
report to CIA via
nationwide fax#
and consulate
offices in
Bangalore and
Hyderabad India
due to concerns
related to
system
development
work on the
CORE/ELF
system I had to
use here that
was being badly
programmed in
India.

Esch
#623

07-19-11 2330 Hours                Approved By: Magnuson 122

Case 6:20-cv-00253-AA   Document 56-1   Filed 03/26/20   Page 3 of 8

3/16/2020          1729. Protection Of Government Processes -- Tampering With Victims, Witnesses, Or Informants -- 18 U.S.C. 1512 | JM | Department of ...



📧 An official website of the United States government  Here's how you know

THE UNITED STATES
DEPARTMENT OF JUSTICE
ARCHIVES

This is archived content from the U.S. Department of Justice website. The information here may be outdated and links may no longer function. Please contact webmaster@usdoj.gov if you have any questions about the archive site.

## 1729. PROTECTION OF GOVERNMENT PROCESSES -- TAMPERING WITH VICTIMS, WITNESSES, OR INFORMANTS -- 18 U.S.C. 1512

Section 1512 of Title 18 constitutes a broad prohibition against tampering with a witness, victim or informant. It proscribes conduct intended to illegitimately affect the presentation of evidence in Federal proceedings or the communication of information to Federal law enforcement officers. It applies to proceedings before Congress, executive departments, and administrative agencies, and to civil and criminal judicial proceedings, including grand jury proceedings. See 18 U.S.C. § 1515(a)(1). In addition, the section provides extraterritorial Federal jurisdiction over the offenses created therein. See 18 U.S.C. § 1512(g); 128 Cong. Rec. H8469 (daily ed. Oct. 1, 1980); H. R. Rep. No. 1369, 96th Cong., 2d Sess. 20-22 (1980).

The express prohibitions against tampering with witnesses and parties contained in former 18 U.S.C. §§ 1503 and 1505, are now in paragraphs (b)(1) and (2) of 18 U.S.C. § 1512. (As discussed in this Manual at 1724 and 1727, the omnibus clauses of these provisions still cover witnesses.) All forms of tampering with informants covered in former 18 U.S.C. § 1510, with the exception of tampering by means of bribery, are now proscribed by 18 U.S.C. § 1512(b)(3). Tampering with informants by means of bribery remains an 18 U.S.C. § 1510 offense.

Section 1512 augments the prohibitions of the former law in several important respects. First, section 1512(b)(3) sweeps more broadly than former 18 U.S.C. § 1510 and expands the class of informants protected by Federal law. For example, it protects individuals having information concerning a violation of a condition of probation, parole, or bail whether or not that violation constitutes a violation of any other Federal criminal statute. Second, it protects individuals seeking to provide information to Federal judges or Federal probation and pretrial services officers.

Section 1512 also includes attempts in its list of prohibited conduct. There is no requirement that the defendants actions have the intended obstructive effect. See, e.g., United States v. Murray, 751 F.2d 1528 (9th Cir.), cert. denied, 474 U.S. 979 (1985); United States v. Wilson, 796 F.2d 55 (4th Cir. 1986), cert. denied, 479 U.S. 1039 (1987). As amended by the Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. 99-646, it is clear that the killing of a witness or attempts to kill a witness in order to prevent his/her testimony constitutes an act of force intended to "influence the witness' testimony." See 18 U.S.C. § 1512(a). This change was necessitated by one court interpreting former § 1512 as not reaching an act of attempted murder that was intended to prevent a witness from testifying. See United States v. Dawlett, 787 F.2d 771 (1st Cir. 1986).

The section specifically abolishes the pending proceeding requirement of 18 U.S.C. §§ 1503 and 1505. The provision also eliminates ambiguity about the class of individuals protected. Although the former law protected witnesses, parties, and informants, it was unclear whether that law reached the intimidation of third parties (for example, the spouse of a witness) for the purpose of intimidating the principal party. Section 1512 of Title 18 plainly covers such conduct, for it speaks of conduct directed toward "another person." See 128 Cong. Rec. H8203 (daily ed. Sept. 30, 1982).

Section 1512 protects potential as well as actual witnesses. With the addition of the words "any person," it is clear that a witness is "one who knew or was expected to know material facts and was expected to testify to them before pending judicial proceedings." United States v. DiSalvo, 631 F.Supp. 1398 (E.D. Pa. 1986), aff'd, 826 F.2d 1054 (3d Cir. 1987). Under § 1512, an individual retains his/her status as a witness even after testifying. United States v. Wilson, 796 F.2d 55 (4th Cir. 1986), cert. denied, 479 U.S. 1039 (1987) (protection of witness under § 1512 continues throughout the trial); United States v. Patton, 721 F.2d 159 (6th Cir. 1983) (witness retains status while defendant's motion for a new trial is pending); United States v. Chandler, 604 F.2d 972 (5th Cir. 1979) (witness retains status while case is pending on direct appeal). Cf. United States v. Risken, 788 F.2d 1361 (8th Cir.), cert. denied, 479 U.S. 923 (1986) (party was a witness after asserting his Fifth Amendment privilege and being dismissed from the stand since he could be recalled at any time).

Section 1512 of Title 18 contains two significant additions to the types of tampering barred by Federal law. First, it forbids "misleading conduct," as defined in 18 U.S.C. § 1515. Such conduct was not covered in those circuits that had narrowly construed the omnibus clauses of 18 U.S.C. §§ 1503 and 1505 under the rule of ejusdem generis. See United States v. Metcalf, 435 F.2d 754 (9th Cir. 1970); United States v. Essex, 407 F.2d 214 (6th Cir. 1969). see generally, 128 Cong. Rec. H8203 (daily ed. Sept. 30, 1982). Second, 18 U.S.C. § 1512 makes intentional harassment a misdemeanor. This offense is intended to reach conduct less egregious than the corrupt, threatening or forceful conduct required for a violation of former 18 U.S.C. §§ 1503 and 1505. Harassing conduct has been defined as that intended to badger, disturb or pester. Wilson, supra.

Despite its coverage, section 1512 was not intended to reach all forms of witness tampering. Its coverage is limited to tampering accomplished by the specific means enumerated in the provision. United States v. King, 762 F.2d 232 (2d Cir. 1985), cert. denied, 475 U.S. 1018 (1986). The more imaginative forms of witness tampering as well as forms of tampering defying enumeration were still prohibited by the omnibus provision of § 1503. United States v. Lester, 749 F.2d 1288 (9th Cir. 1984).

It is unclear whether 18 U.S.C. § 1512(b)(3) was intended to widen the prohibition against obstructing investigations contained in former 18 U.S.C. § 1510 to include investigations that are not per se criminal in nature, such as an FAA investigation of an aircraft accident, or a Senate committee investigation of the trucking industry. A comparison of the difference in phraseology between 18 U.S.C. §§ 1510 and 1512(b)(3), however, indicates that those differences are differences of style, not substance, and that no such expansion was intended. Section 1510 proscribes interference with "the communication of information relating to a violation of any criminal statute of the United States . . ." to a (Federal) criminal investigator; 18 U.S.C. § 1512(b)(3) proscribes interference with "the communication to a (Federal) law enforcement officer . . . of information relating to the commission or possible commission of a Federal offense." There is nothing to indicate that Congress intended to depart from the generally accepted meaning of "law enforcement" as criminal law enforcement and of "offense" as criminal violation. See 18 U.S.C. § 1515(4); 128 Cong. Rec. H8203 (daily ed. Sept. 30,

1982). Accordingly, prosecutions for interference with legislative or administrative investigations that have not taken on the character of a criminal investigation should be brought under the omnibus clause of 18 U.S.C. § 1505. *See* this Manual at 1726.

[cited in JM 9-69.100]

| ‹ 1728. Protection Of Government Processes -- Obstruction Of Federal Criminal Investigation -- 18 U.S.C. 1510 | up | 1730. Protection Of Government Processes -- "Official Proceeding" Requirement -- 18 U.S.C. 1512 › |
|---|---|---|

*Updated January 17, 2020*

**U.S. DEPARTMENT OF LABOR**          Occupational Safety & Health Administration
1111 Third Avenue, Suite 715
Seattle, Washington 98101 - 3212



July 11, 2011

Mr. Andrew Clark
3270 Soney Ridge Road
Eugene, OR 97405

Re: Consumer Financial Protection Act of 2010 Complaint Dated June 19, 2011

Dear Mr. Clark:

This is to acknowledge receipt of your complaint of retaliation under the whistleblower
provision of the Consumer Financial Protection Act of 2010, Section 1057 of the Dodd-
Frank Wall Street Reform and Consumer Protection Act of 2010, 12 U.S.C.A. § 5567 (or,
CFPA), which you filed on June 19, 2011. Please be advised that OSHA's jurisdiction to
investigate such complaints does not become effective until the "designated transfer
date," pursuant to Sections 1058 and 1062 of the Dodd-Frank Act, which the Secretary of
the Treasury has set as *July 21, 2011.* The relevant sections of the statute can be found at
www.whistleblowers.gov.

Should you wish to re-file a written CFPA whistleblower complaint on or after July 21st,
you may send us another letter with this request. However, in order for OSHA to initiate
an investigation, you must provide information that you were retaliated against on or after
July 21, 2011.

In your complaint letter, you also requested to file it under Section 806 of the Sarbanes-
Oxley Act ("SOX"). Please note that we have docketed that portion of your complaint as
a SOX complaint. The SOX complaint has been assigned to OSHA Investigator, Patricia
Brown who can be reached at 206-553-5930, and your employer has been notified about
it.

Thank-you for your cooperation.

Sincerely,

*RECOGNIZED*
*RETALIATION*

*Vicky Coleman*
Vicky Coleman
Regional Supervisory Investigator

*NOT  MAY 25 DOL PORTLAND*

**OSHA**  Occupational
Safety and Health
Administration
www.osha.gov

*REPORT*

*ADD PAGE*   *3a*

do_not_reply@occ.treas.gov <do_not_reply@occ.treas.gov>                          6/29/2011 6:01 AM

# OCC Case # 01640244 has been created.

To mir99@comcast.net

---

6/29/2011

Re: Case# 01640244

Dear Andrew Clark:

This is an automatically generated message. Please do not reply to this email. We are unable to respond to messages sent to this address.

Please keep a copy of this email for your records!

This email acknowledges receipt of your Online Consumer Complaint form. Based upon your correspondence we have opened a case in the OCC's Customer Assistance Group (CAG). Please make note of the case number listed above, and provide the number on any future correspondence or contact with our office.

We are reviewing the information you provided, and will contact the bank requesting a response to your issues. In most instances, the bank will respond directly to you and copy us in writing. Once you receive the bank's response, it is very important that you carefully review their summary and actions taken, if any.

If the bank has satisfactorily addressed your issues and/or concerns no further action on your part is required. If however, the bank failed to address your issues and/or concerns or you disagree with their response, please contact the CAG in writing within 30 days of receipt of the bank's letter. Please include in your reply the specific issues that the bank failed to address or, if applicable, the reasons you disagree with the bank's assessment. Also, please include any additional documentation that supports your position.

The OCC examines national banks to ensure their safe and sound financial condition and ensures compliance with applicable banking laws, rules and regulations. The CAG was established to assist customers who have questions or complaints involving national banks. For additional information on the OCC and CAG please visit our internet site www.helpwithmybank.gov.

The CAG offers guidance, and assists consumers in resolving complaints about national banks and their subsidiaries. The CAG is not a consumer advocacy or bank advocacy group. The OCC is an administrative agency and we do not have jurisdiction to resolve contractual and factual issues. We do not have judicial authority and cannot award damages in excess of a bank's error.

While complaint processing times may vary, on average you should receive a written response from CAG within 60 days after we have a complete file.

If you would like to check the status of your case online, please click on the following link:
https://appsec.helpwithmybank.gov/olcc_form/checkstatus.aspx  or visit www.helpwithmybank.gov and click on the Check Case Status page.

Should you have questions, please contact this office at the number listed below.

Sincerely,

Customer Assistance Group
1-800-613-6743

This message contains confidential information and is intended solely for the use of the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by sending an email to helpwithmybank.fag@occ.treas.gov if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

## Exhibit 1

[>

# Sheriff Joe Arpaio's Favorite Law Firm, Ogletree Deakins, Cost Taxpayers $2.4 Million -- in Just Two Years

**By Sarah Fenske**
Published Wed., May 26 2010 at 8:00 AM



L. Eric Dowell, rainmaker

The battle for control of Maricopa County -- pitting Sheriff Joe Arpaio and County Attorney Andrew Thomas against the Board of Supervisors, judges, and county administrators -- has been costly to both taxpayers and the parties involved.

But it's been a major boon to one local law firm.

Ogletree Deakins, a relatively obscure firm specializing in employment law, became Arpaio and Thomas' go-to legal counsel just as the disputes were heating up. And, according to public records obtained by *New Times*, the firm has billed the county for a staggering $2.49 million since January 2009.

Most of the work had little to do with employment law -- and most of the firm's representation has been unsuccessful, legally speaking.

Ogletree Deakins has fought for the sheriff's right to take over the county's computer system. They tried to argue that the supervisors didn't have the right to sweep money from funds controlled by Thomas and Arpaio. They're currently pressing Arpaio's assertion that he shouldn't have to open his books to county auditors.

And, according to the billing records we looked at, it appears likely that Ogletree lawyers may have even been behind one of Arpaio/Thomas' biggest embarrassments: the criminal charges they filed against the county's presiding criminal court judge, Gary Donahoe.

As *New Times* first reported earlier this month, prosecutors filed criminal charges against Donahoe without bothering to seek a grand jury indictment. They simply filed a direct complaint, and attached a "probable cause" statement that, almost word for word, matched a complaint that the sheriff's office had filed with the Arizona Commission on Judicial Conduct one week before. That complaint, detailing a conspiracy theorist's view of Judge Donahoe's conduct, was signed by Arpaio's chief deputy, David Hendershott.

It now appears that Hendershott had some help penning the letter.  2 4

According to its billing statements, Ogletree charged the county $27,310 for something titled "MCSO State Bar/Judicial." The first few invoices with that notation were submitted on December 1, 2009 --

10/18/13

just one day after Hendershott filed "his" complaint with the judicial conduct commission.

So did an employment law specialist draft the document that became the basis for the criminal charges against the county's presiding criminal court judge? If nothing else, it would explain why the document drew guffaws from seasoned prosecutors. Ogletree's lawyers were likely in way over their heads. (And really, what was prosecutor Lisa Aubuchon thinking, merely regurgitating Ogletree's letter as a criminal complaint?)

According to the billing statements examined by *New Times*, Ogletree also advised Andrew Thomas on matters involving the State Bar. (That cost the taxpayers $18,929). And, they advised either Arpaio or Thomas -- the billings aren't clear -- about issues relating to the selection of a new county attorney. (That cost us *another* $12,762.)

Finally, Ogletree billed the county a staggering $1.2 million for something described only as "contract compliance." County Spokeswoman Cari Gerchick told *New Times* that county administrators have no idea what that means.

We contacted L. Eric Dowell, a shareholder at Ogletree Deakins and the sheriff's lawyer of choice, to ask about the "contract compliance" payments, but we hadn't heard back by press time. We'll post an update if we get an answer.

In the mean time, looking at the wasted $2.4 million and the unexplained $1.2 million and the tens of thousands of dollars for failed legal adventures -- well, we never thought we'd say this, but we actually miss Dennis Wilenchik. Yes, *New Times* disagreed with Wilenchik on just about everything. But Wilenchik handled some pretty tough cases for Arpaio, not just political crap that should have never made its way to a docket.

And Wilenchik, unlike the sheriff's new $2-million-counsel, actually knew how to win.

27