IN THE UNITED STATES DISTRICT COURT
**FOR THE DISTRICT OF OREGON**
**Eugene, Oregon Division**

Wells Fargo:  external attorneys
lied, cheated and stole from us
and tried to hide it.  They failed.

Andrew Clark, Plaintiff
3270 Stoney Ridge Rd.
Eugene, OR 97405   541.510.3915
OperationSunriseLaw@gmail.com

**Wells Fargo and Company**
420 Montgomery St. San Francisco, CA 94163
**as Voluntary or Mandatory**
**Intervenor for Plaintiff**
(Subject to FRCP 24)

**Civil Complaint Case: 6.cv-20-253-aa**

Motion for Judicial Notice of Adjudicative Facts
Per Federal Rules of Evidence 201(b)(2)
and Clarification of "Claim for Relief"

March 18, 2020 Crime Report to Billy Williams,
U.S. Attorney for Oregon.  (8 Page Exhibit)
Hand-Delivered at Eugene Office and filed with
Court as Correspondence.

**vs.** Defendants:

Wells Fargo Bank et al

This Motion Filed March 26, 2020

## Motion for Judicial Notice of Adjudicative Facts
## and Clarification of Claim for Relief

My complaint  accurately summarized what each Defendant did (or failed to do) that caused and concealed the root crime of the enterprise.   No corporate crime is more rare and serious than physically tampering with a  federally-insured bank worker with two active federal investigations in process  who had also been admitted to local FBI to deliver crime reports due to indications of retaliation.  The nature of the tampering is violent and ghastly as I describe.

Such cases get prosecuted similarly to a lurid case of aggravated murder only with more vengeance and a much wider net, which is why so many Defendants are listed. Most of you helped conceal it because you were lied to by the perpetrators (or by others they coerced or influenced.)  In my case, special attention should be given to complete role of Defendant Erik Hasselman.  Special attention must be given to what motivated him or coerced him because his personal involvement and subsequent  corruption of all controls is absolutely epic for a Major Violent Crimes Prosecutor.

An employee in our local 'pre-trail services' office named "Brian Snazo" supervises the Risk Assessment Tool (RAT)  in Lane County.  He and the RAT system electronic archives will most likely reveal my case "it is not their first rodeo."   Mr. Snazo is not currently a Defendant.

Signed and Sworn to as Fact:  Andrew Clark, Plaintiff
3270 Stoney Ridge Rd. Eugene OR 97405  541.510.3915 OperationSunriseLaw@gmail.com

EXHIBIT 1 Page 1 of 90

March 18, 2020
Billy Williams, United States Attorney for Oregon
1000 SW 3rd Ave Ste 600  Portland OR  97204
c/o Eugene OR Office in Wayne Morse Courthouse

Filed as Exhibit-Motion to Take
Judicial Notice
6.20.cv.253.aa
March 26, 2020

## FEDERAL MAJOR VIOLENT CRIME REPORT
Repeated,  Physical Tampering of a Federal Witness in Active
Department of Labor **and** Office of Comptroller of Currency Investigations.
Obstruction of Justice via Rampant Public Corruption Including Hobbs Act Violations.
Novel Crimes:  Deliberate, Knowing Use of Family Courts as a Means of Tampering,
Fraudulent and Coordinated Use of Local, State, and Federal Justice Systems to Obstruct.

My civil complaint 6.20.cv.253.aa does a very good job of documenting actions against me and linking them to my employment at Wells Fargo.  But unless it is read carefully, it could leave a reader wondering "what crimes could possibly have been committed so extreme that a group of people would be used to conceal it by committing a series of RICO crimes including the use of courts to obstruct justice?   What evidence could a lowest-level worker possibly have of it?"

1.  A police report is a very special and perfect type of evidence. Attached is a page from a Eugene, OR police report dated July 19, 2011.  It is Page 82 of the civil complaint.  It is from before all the RICO crimes were committed against me. It shows Wells Fargo corporate security agent Martin Ogno was aware I had filed reports with Federal Bureau-Investigation (FBI) in Eugene OR, therefore Wells Fargo was aware.  Most shocking: Eugene Police told Ogno I considered his "well-being visit at my home at night by uniformed SWAT police" to be retaliation.  Ogno told Eugene Police to 'fuhggedaboutit' and explains he had contacted FBI and that FBI did not take my (just filed in-person and sworn-to well-evidenced, voluminous) reports seriously.   Think of that horrific violation of City of Eugene Police.

2.  After that is a printout of Department of Justice publication "Criminal Resource Manual 1729".  It has a standard archive disclaimer but the content is valid,  last updated January 2020.  A person who reports to a federal law enforcement agency such as FBI is a Federal Witness.  Tampering with a Federal Witness is a violation of 18 USC 1512, particularly when Federal investigations are in process.

3.  Two different Federal Investigations were in process.  Next exhibits are proof from Department of Labor and Office of Comptroller of Currency of recently accepted Federal investigations.   The PACER system records for SLAPP-suit 6.11.cv.06248.ho and my subsequent civil actions show exactly how the courts were used to bypass discovery of the above crimes.

4.  My civil complaint enumerates and documents the RICO crimes committed against me.  Please note that I presented Tampering using false arrest and jail as violations of 18 USC 1201 by Wells Fargo/ Ogletree Deakins: armed kidnapping for political or economic motivations.  Use of police to tamper with a Federal Witness is absolutely gangland.  It is as bad it gets, other than the novel crimes listed above and detailed in the civil complaint.

5.  Related but not relevant to the crime report: I motioned for Wells Fargo and Company to intervene. It is in PACER.  It is possible that everything that happened was actually a Wells Fargo & Co. project. A metaphor for that is found on www.TheEugeneBlairProject.com.  I placed the Circuit Court and Police a/v on www.RisePatriot.com and www.WellsFargoWitz.com (family court).

Thank you from Andy Clark 3270 Stoney Ridge Rd. Eugene OR 97405 541.510.3915 (exhibits follow)

EXHIBIT 1 Page 2 of 90

4 of 4
11-11771

was Officer Pieske who was there with us during the contacts and told Clark that Officer Pieske concurred with my findings in the matters. I asked Clark if there was anything else I could do for him. Clark said there was nothing else I could do for him and he left city hall.

Also per Sergeant Klinko's request, I contacted Marty Ogno, head of security for Wells Fargo. I called Ogno and told him I had contacted Clark and that he had been advised he was trespassed from all Wells Fargo properties. I also told Ogno Clark was concerned he had $24,000 in an account at Wells Fargo. Ogno said he had looked it up and though Clark only had about $200 in an account, but that he would close Clark's account and mail him a check with the remaining balance. Ogno asked how the contact went. I told Ogno that Clark felt he was being retaliated upon for contacting the FBI and CIA with Wells Fargo's wrong doings. Ogno said that he had been in contact with the FBI and told me that the FBI did not take Clark's reports seriously.

**>>>>>**
FBI would not say that.

Notice no person at FBI is referenced.

At approximately 1900 hours, dispatch advised that Clark had left a phone number for me to call him back so he could further discuss his desire to press charges against Wells Fargo for filing a false police report. I requested Sergeant Magnuson respond to the report writing room where I was working on reports so I could discuss the situation with him before calling Clark back. While I was explaining the situation to Sergeant Magnuson, Dispatch advised that Clark had called back 3 more times requesting contact. I then asked Sergeant Magnuson if he would contact Clark in my behalf in that I was unable to effectively communicate to Clark that Wells Fargo had broken no laws and that they had the right to trespass Clark from their properties.

It is corruption of FBI processes and obstruction.

Reviewed by FTO: **Pieske**    **112**
Name    Badge

BTW, I did report to CIA via nationwide fax# and consulate offices in Bangalore and Hyderabad India due to concerns related to system development work on the CORE/ELF system I had to use here that was being badly programmed in India.

Esch
#523

07-19-11 2330 Hours        Approved By: Magnuson 122

Civil Case 6-20-cv-000253  Complaint Filed February 14, 2020 Clark vs. Wells Fargo et al    Page 82 of 131

EXHIBIT 1 Page 3 of 90

Case 6:20-cv-00253-AA    Document 78-1    Filed 05/04/20    Page 4 of 90

To: David P.R. Symes Littler Mendelson    Page 4 of 9    2020-04-08 20:08:14 (GMT)    14157043294 From: Andrew Clark

3/16/2020    1729. Protection Of Government Processes -- Tampering With Victims, Witnesses, Or Informants -- 18 U.S.C. 1512 | JM | Department of …

 An official website of the United States government  Here's how you know

THE UNITED STATES
DEPARTMENT of JUSTICE    This is archived content from the U.S. Department of Justice website. The information here may be outdated and links may no longer function. Please contact webmaster@usdoj.gov if you have any questions about the archive site.

## 1729. PROTECTION OF GOVERNMENT PROCESSES -- TAMPERING WITH VICTIMS, WITNESSES, OR INFORMANTS -- 18 U.S.C. 1512

Section 1512 of Title 18 constitutes a broad prohibition against tampering with a witness, victim or informant. It proscribes conduct intended to illegitimately affect the presentation of evidence in Federal proceedings or the communication of information to Federal law enforcement officers. It applies to proceedings before Congress, executive departments, and administrative agencies, and to civil and criminal judicial proceedings, including grand jury proceedings. See 18 U.S.C. § 1515(a)(1). In addition, the section provides extraterritorial Federal jurisdiction over the offenses created therein. See 18 U.S.C. § 1512(g); 128 Cong. Rec. H8469 (daily ed. Oct. 1, 1980); H. R. Rep. No. 1369, 96th Cong., 2d Sess. 20-22 (1980).

The express prohibitions against tampering with witnesses and parties contained in former 18 U.S.C. §§ 1503 and 1505, are now in paragraphs (b)(1) and (2) of 18 U.S.C. § 1512. (As discussed in this Manual at 1724 and 1727, the omnibus clauses of these provisions still cover witnesses.) All forms of tampering with informants covered in former 18 U.S.C. § 1510, with the exception of tampering by means of bribery, are now proscribed by 18 U.S.C. § 1512(b)(3). Tampering with informants by means of bribery remains an 18 U.S.C. § 1510 offense.

Section 1512 augments the prohibitions of the former law in several important respects. First, section 1512(b)(3) sweeps more broadly than former 18 U.S.C. § 1510 and expands the class of informants protected by Federal law. For example, it protects individuals having information concerning a violation of a condition of probation, parole, or bail whether or not that violation constitutes a violation of any other Federal criminal statute. Second, it protects individuals seeking to provide information to Federal judges or Federal probation and pretrial services officers.

Section 1512 also includes attempts in its list of prohibited conduct. There is no requirement that the defendants actions have the intended obstructive effect. See, e.g., United States v. Murray, 751 F.2d 1528 (9th Cir.), cert. denied, 474 U.S. 979 (1985); United States v. Wilson, 796 F.2d 55 (4th Cir. 1986), cert. denied, 479 U.S. 1039 (1987). As amended by the Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. 99-646, it is clear that the killing of a witness or attempts to kill a witness in order to prevent his/her testimony constitutes an act of force intended to "influence the witness' testimony." See 18 U.S.C. § 1512(a). This change was necessitated by one court interpreting former § 1512 as not reaching an act of attempted murder that was intended to prevent a witness from testifying. See United States v. Dawlett, 787 F.2d 771 (1st Cir. 1986).

The section specifically abolishes the pending proceeding requirement of 18 U.S.C. §§ 1503 and 1505. The provision also eliminates ambiguity about the class of individuals protected. Although the former law protected witnesses, parties, and informants, it was unclear whether that law reached the intimidation of third parties (for example, the spouse of a witness) for the purpose of intimidating the principal party. Section § 1512 of Title 18 plainly covers such conduct, for it speaks of conduct directed toward "another person." See 128 Cong. Rec. H8203 (daily ed. Sept. 30, 1982).

Section 1512 protects potential as well as actual witnesses. With the addition of the words "any person," it is clear that a witness is "one who knew or was expected to know material facts and was expected to testify to them before pending judicial proceedings." United States v. DiSalvo, 631 F.Supp. 1398 (E.D. Pa. 1986), aff'd, 826 F.2d 1054 (3d Cir. 1987). Under § 1512, an individual retains his/her status as a witness even after testifying. United States v. Wilson, 796 F.2d 55 (4th Cir. 1986), cert. denied, 479 U.S. 1039 (1987) (protection of witness under § 1512 continues throughout the trial); United States v. Patton, 721 F.2d 159 (6th Cir. 1983) (witness retains status while defendant's motion for a new trial is pending); United States v. Chandler, 604 F.2d 972 (5th Cir. 1979) (witness retains status while case is pending on direct appeal). Cf. United States v. Risken, 788 F.2d 1361 (8th Cir.), cert. denied, 479 U.S. 923 (1986) (party was a witness after asserting his Fifth Amendment privilege and being dismissed from the stand since he could be recalled at any time).

Section 1512 of Title 18 contains two significant additions to the types of tampering barred by Federal law. First, it forbids "misleading conduct," as defined in 18 U.S.C. § 1515. Such conduct was not covered in those circuits that had narrowly construed the omnibus clauses of 18 U.S.C. §§ 1503 and 1505 under the rule of ejusdem generis. See United States v. Metcalf, 435 F.2d 754 (9th Cir. 1970); United States v. Essex, 407 F.2d 214 (6th Cir. 1969). see generally, 128 Cong. Rec. H8203 (daily ed. Sept. 30, 1982). Second, 18 U.S.C. § 1512 makes intentional harassment a misdemeanor. This offense is intended to reach conduct less egregious than the corrupt, threatening or forceful conduct required for a violation of former 18 U.S.C. §§ 1503 and 1505. Harassing conduct has been defined as that intended to badger, disturb or pester. Wilson, supra.

Despite its coverage, section 1512 was not intended to reach all forms of witness tampering. Its coverage is limited to tampering accomplished by the specific means enumerated in the provision. United States v. King, 762 F.2d 232 (2d Cir. 1985), cert. denied, 475 U.S. 1018 (1986). The more imaginative types of witness tampering as well as forms of tampering defying enumeration were still prohibited by the omnibus provision of § 1503. United States v. Lester, 749 F.2d 1288 (9th Cir. 1984).

It is unclear whether 18 U.S.C. § 1512(b)(3) was intended to widen the prohibition against obstructing investigations contained in former 18 U.S.C. § 1510 to include investigations that are not per se criminal in nature, such as an FAA investigation of an aircraft accident, or a Senate committee investigation of the trucking industry. A comparison of the difference in phraseology between 18 U.S.C. §§ 1510 and 1512(b)(3), however, indicates that those differences are differences of style, not substance, and that no such expansion was intended. Section 1510 proscribes interference with "the communication of information relating to a violation of any criminal statute of the United States . . ." to a (Federal) criminal investigator; 18 U.S.C. § 1512(b)(3) proscribes interference with "the communication to a (Federal) law enforcement officer . . . of information relating to the commission or possible commission of a Federal offense." There is nothing to indicate that Congress intended to depart from the generally accepted meaning of "law enforcement" as criminal law enforcement and of "offense" as criminal violation. See 18 U.S.C. § 1515(4); 128 Cong. Rec. H8203 (daily ed. Sept. 30,

EXHIBIT 1 Page 4 of 90

3/16/2020          1729. Protection Of Government Processes -- Tampering With Victims, Witnesses, Or Informants -- 18 U.S.C. 1512 | JM | Department of …

1982). Accordingly, prosecutions for interference with legislative or administrative investigations that have not taken on the character of a criminal investigation should be brought under the omnibus clause of 18 U.S.C. § 1505. *See* this Manual at 1726.

[cited in JM 9-69.100]

| ‹ 1728. Protection Of Government Processes -- Obstruction Of Federal Criminal Investigation -- 18 U.S.C. 1510 | up | 1730. Protection Of Government Processes -- "Official Proceeding" Requirement -- 18 U.S.C. 1512 › |

*Updated January 17, 2020*

EXHIBIT 1 Page 5 of 90

**U.S. DEPARTMENT OF LABOR**     Occupational Safety & Health Administration
1111 Third Avenue, Suite 715
Seattle, Washington 98101 - 3212



July 11, 2011

Mr. Andrew Clark
3270 Soncy Ridge Road
Eugene, OR 97405

Re: Consumer Financial Protection Act of 2010 Complaint Dated June 19, 2011

Dear Mr. Clark:

This is to acknowledge receipt of your complaint of retaliation under the whistleblower provision of the Consumer Financial Protection Act of 2010, Section 1057 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, 12 U.S.C.A. § 5567 (or, CFPA), which you filed on June 19, 2011. Please be advised that OSHA's jurisdiction to investigate such complaints does not become effective until the "designated transfer date," pursuant to Sections 1058 and 1062 of the Dodd-Frank Act, which the Secretary of the Treasury has set as *July 21, 2011*. The relevant sections of the statute can be found at www.whistleblowers.gov.

Should you wish to re-file a written CFPA whistleblower complaint on or after July 21st, you may send us another letter with this request. However, in order for OSHA to initiate an investigation, you must provide information that you were retaliated against on or after July 21, 2011.

In your complaint letter, you also requested to file it under Section 806 of the Sarbanes-Oxley Act ("SOX"). Please note that we have docketed that portion of your complaint as a SOX complaint. The SOX complaint has been assigned to OSHA Investigator, Patricia Brown who can be reached at 206-553-5930, and your employer has been notified about it.

Thank-you for your cooperation.

Sincerely,

*Vicky Coleman*
Vicky Coleman
Regional Supervisory Investigator

RECOGNIZED
RETALIATION
NOT MAY 25 DOL—
PORTLAND
REPORT

**OSHA** Occupational
Safety and Health
Administration
www.osha.gov

$29

NO PAGE 3a
Case 17-35247    Clark vs. Wells Fargo et al Exhibits    Page 38
WHO PET GOT
LOST A PAGE

EXHIBIT 1 Page 6 of 90

To: David P.R. Symes Littler Mendelson    Page 7 of 9    2020-04-08 20:08:14 (GMT)    14157043294  From: Andrew Clark

3/17/2020    Xfinity Connect OCC Case _ 01640244 has been created_ Printout

do_not_reply@occ.treas.gov <do_not_reply@occ.treas.gov>    6/29/2011 6:01 AM

## OCC Case # 01640244 has been created.

To mir99@comcast.net

6/29/2011

Re: Case# 01640244

Dear Andrew Clark:

This is an automatically generated message. Please do not reply to this email. We are unable to respond to messages sent to this address.

Please keep a copy of this email for your records!

This email acknowledges receipt of your Online Consumer Complaint form.  Based upon your correspondence we have opened a case in the OCC's Customer Assistance Group (CAG).  Please make note of the case number listed above, and provide the number on any future correspondence or contact with our office.

We are reviewing the information you provided, and will contact the bank requesting a response to your issues.  In most instances, the bank will respond directly to you and copy us in writing.  Once you receive the bank's response, it is very important that you carefully review their summary and actions taken, if any.

If the bank has satisfactorily addressed your issues and/or concerns no further action on your part is required.  If however, the bank failed to address your issues and/or concerns or you disagree with their response, please contact the CAG in writing within 30 days of receipt of the bank's letter.  Please include in your reply the specific issues that the bank failed to address or, if applicable, the reasons you disagree with the bank's assessment.  Also, please include any additional documentation that supports your position.

The OCC examines national banks to ensure their safe and sound financial condition and ensures compliance with applicable banking laws, rules and regulations.  The CAG was established to assist customers who have questions or complaints involving national banks.  For additional information on the OCC and CAG please visit our internet site www.helpwithmybank.gov.

The CAG offers guidance, and assists consumers in resolving complaints about national banks and their subsidiaries. The CAG is not a consumer advocacy or bank advocacy group.  The OCC is an administrative agency and we do not have jurisdiction to resolve contractual and factual issues.  We do not have judicial authority and cannot award damages in excess of a bank's error.

While complaint processing times may vary, on average you should receive a written response from CAG within 60 days after we have a complete file.

If you would like to check the status of your case online, please click on the following link:
https://appsec.helpwithmybank.gov/olcc_form/checkstatus.aspx  or visit www.helpwithmybank.gov and click on the Check Case Status page.

Should you have questions, please contact this office at the number listed below.

Sincerely,

Customer Assistance Group
1-800-613-6743

This message contains confidential information and is intended solely for the use of the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by sending an email to helpwithmybank.faq@occ.treas.gov  if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

EXHIBIT 1 Page 7 of 90

To: David P.R. Symes Littler Mendelson    Page 8 of 9    2020-04-08 20:08:14 (GMT)    14157043294 From: Andrew Clark

10/18/13    Phoenix - News - Valley Fever - Print Version

## Exhibit 1

# Sheriff Joe Arpaio's Favorite Law Firm, Ogletree Deakins, Cost Taxpayers $2.4 Million -- in Just Two Years

**By Sarah Fenske**
Published Wed., May 26 2010 at 8:00 AM



**L. Eric Dowell, rainmaker**

The battle for control of Maricopa County -- pitting Sheriff Joe Arpaio and County Attorney Andrew Thomas against the Board of Supervisors, judges, and county administrators -- has been costly to both taxpayers and the parties involved.

But it's been a major boon to one local law firm.

Ogletree Deakins, a relatively obscure firm specializing in employment law, became Arpaio and Thomas' go-to legal counsel just as the disputes were heating up. And, according to public records obtained by *New Times*, the firm has billed the county for a staggering $2.49 million since January 2009.

Most of the work had little to do with employment law -- and most of the firm's representation has been unsuccessful, legally speaking.

Ogletree Deakins has fought for the sheriff's right to take over the county's computer system. They tried to argue that the supervisors didn't have the right to sweep money from funds controlled by Thomas and Arpaio. They're currently pressing Arpaio's assertion that he shouldn't have to open his books to county auditors.

And, according to the billing records we looked at, it appears likely that Ogletree lawyers may have even been behind one of Arpaio/Thomas' biggest embarrassments: the criminal charges they filed against the county's presiding criminal court judge, Gary Donahoe.

As *New Times* first reported earlier this month, prosecutors filed criminal charges against Donahoe without bothering to seek a grand jury indictment. They simply filed a direct complaint, and attached a "probable cause" statement that, almost word for word, matched a complaint that the sheriff's office had filed with the Arizona Commission on Judicial Conduct one week before. That complaint, detailing a conspiracy theorist's view of Judge Donahoe's conduct, was signed by Arpaio's chief deputy, David Hendershott.

It now appears that Hendershott had some help penning the letter.

According to its billing statements, Ogletree charged the county $27,310 for something titled "MCSO State Bar/Judicial." The first two invoices with that notation were submitted on December 1, 2009 --

EXHIBIT 1 Page 8 of 90

To: David P.R. Symes Littler Mendelson    Page 9 of 9    2020-04-08 20:08:14 (GMT)    14157043294  From: Andrew Clark

10/18/13                                           Phoenix - News - Valley Fever - Print Version

just one day after Hendershott filed "his" complaint with the judicial conduct commission.

So did an employment law specialist draft the document that became the basis for the criminal charges against the county's presiding criminal court judge? If nothing else, it would explain why the document drew guffaws from seasoned prosecutors. Ogletree's lawyers were likely in way over their heads. (And really, what was prosecutor Lisa Aubuchon thinking, merely regurgitating Ogletree's letter as a criminal complaint?)

According to the billing statements examined by *New Times*, Ogletree also advised Andrew Thomas on matters involving the State Bar. (That cost the taxpayers $18,929). And, they advised either Arpaio or Thomas -- the billings aren't clear -- about issues relating to the selection of a new county attorney. (That cost us *another* $12,762.)

Finally, Ogletree billed the county a staggering $1.2 million for something described only as "contract compliance." County Spokeswoman Cari Gerchick told *New Times* that county administrators have no idea what that means.

We contacted L. Eric Dowell, a shareholder at Ogletree Deakins and the sheriff's lawyer of choice, to ask about the "contract compliance" payments, but we hadn't heard back by press time. We'll post an update if we get an answer.

In the mean time, looking at the wasted $2.4 million and the unexplained $1.2 million and the tens of thousands of dollars for failed legal adventures -- well, we never thought we'd say this, but we actually miss Dennis Wilenchik. Yes, *New Times* disagreed with Wilenchik on just about everything. But Wilenchik handled some pretty tough cases for Arpaio, not just political crap that should have never made its way to a docket.

And Wilenchik, unlike the sheriff's new $2-million-counsel, actually knew how to win.

27

EXHIBIT 1 Page 9 of 90

IN THE UNITED STATES DISTRICT COURT
**FOR THE DISTRICT OF OREGON**
**Eugene, Oregon Division**

> Wells Fargo:  external attorneys
> lied, cheated and stole from us
> and tried to hide it.  They failed.

Andrew Clark, Plaintiff
3270 Stoney Ridge Rd.
Eugene, OR 97405   541.510.3915
OperationSunriseLaw@gmail.com

**Civil Complaint Case: 6.cv-20-253-aa**

Motion for Judicial Notice of Adjudicative Facts
Per Federal Rules of Evidence 201(b)(2)
and Clarification of "Claim for Relief"

**Wells Fargo and Company**
420 Montgomery St. San Francisco, CA 94163
**as Voluntary or Mandatory
Intervenor for Plaintiff**
(Subject to FRCP 24)

March 18, 2020 Crime Report to Billy Williams,
U.S. Attorney for Oregon.  (8 Page Exhibit)
Hand-Delivered at Eugene Office and filed with
Court as Correspondence.

**vs.**  Defendants:

Wells Fargo Bank et al

This Motion Filed March 26, 2020

## Motion for Judicial Notice of Adjudicative Facts
## and Clarification of Claim for Relief

My complaint  accurately summarized what each Defendant did (or failed to do) that caused
and concealed the root crime of the enterprise.   No corporate crime is more rare and serious
than physically tampering with a  federally-insured bank worker with two active federal
investigations in process  who had also been admitted to local FBI to deliver crime reports due
to indications of retaliation.  The nature of the tampering is violent and ghastly as I describe.

Such cases get prosecuted similarly to a lurid case of aggravated murder only with more
vengeance and a much wider net, which is why so many Defendants are listed. Most of you
helped conceal it because you were lied to by the perpetrators (or by others they coerced or
influenced.)  In my case, special attention should be given to complete role of Defendant Erik
Hasselman.  Special attention must be given to what motivated him or coerced him because
his personal involvement and subsequent  corruption of all controls is absolutely epic for a
Major Violent Crimes Prosecutor.

An employee in our local 'pre-trail services' office named "Brian Snazo" supervises the Risk
Assessment Tool (RAT)  in Lane County. He and the RAT system electronic archives will most
likely reveal my case "it is not their first rodeo."    Mr. Snazo is not currently a Defendant.

Signed and Sworn to as Fact:  Andrew Clark, Plaintiff
3270 Stoney Ridge Rd. Eugene OR 97405  541.510.3915 OperationSunriseLaw@gmail.com

EXHIBIT 1 Page 10 of 90

To: Steven Seymour Samuels Yoelin Kantor    Page 2 of 9  2020-04-08 20:08:16 (GMT)                    14157043294  From: Andrew Clark

March 18, 2020
Billy Williams, United States Attorney for Oregon
1000 SW 3rd Ave Ste 600  Portland OR  97204
c/o Eugene OR Office in Wayne Morse Courthouse

Filed as Exhibit-Motion to Take
Judicial Notice
6.20.cv.253.aa
March 26, 2020

## FEDERAL MAJOR VIOLENT CRIME REPORT
Repeated, Physical Tampering of a Federal Witness in Active
Department of Labor **and** Office of Comptroller of Currency Investigations.
Obstruction of Justice via Rampant Public Corruption Including Hobbs Act Violations.
Novel Crimes: Deliberate, Knowing Use of Family Courts as a Means of Tampering,
Fraudulent and Coordinated Use of Local, State, and Federal Justice Systems to Obstruct.

My civil complaint 6.20.cv.253.aa does a very good job of documenting actions against me and linking them to my employment at Wells Fargo. But unless it is read carefully, it could leave a reader wondering "what crimes could possibly have been committed so extreme that a group of people would be used to conceal it by committing a series of RICO crimes including the use of courts to obstruct justice? What evidence could a lowest-level worker possibly have of it?"

1. A police report is a very special and perfect type of evidence. Attached is a page from a Eugene, OR police report dated July 19, 2011. It is Page 82 of the civil complaint. It is from before all the RICO crimes were committed against me. It shows Wells Fargo corporate security agent Martin Ogno was aware I had filed reports with Federal Bureau-Investigation (FBI) in Eugene OR, therefore Wells Fargo was aware. Most shocking: Eugene Police told Ogno I considered his "well-being visit at my home at night by uniformed SWAT police" to be retaliation. Ogno told Eugene Police to 'fuhggedaboutit' and explains he had contacted FBI and that FBI did not take my (just filed in-person and sworn-to well-evidenced, voluminous) reports seriously.  Think of that horrific violation of City of Eugene Police.

2. After that is a printout of Department of Justice publication "Criminal Resource Manual 1729". It has a standard archive disclaimer but the content is valid, last updated January 2020. A person who reports to a federal law enforcement agency such as FBI is a Federal Witness. Tampering with a Federal Witness is a violation of 18 USC 1512, particularly when Federal investigations are in process.

3. Two different Federal Investigations were in process. Next exhibits are proof from Department of Labor and Office of Comptroller of Currency of recently accepted Federal investigations. THE PACER system records for SLAPP-suit 6.11.cv.06248.ho and my subsequent civil actions show exactly how the courts were used to bypass discovery of the above crimes.

4. My civil complaint enumerates and documents the RICO crimes committed against me. Please note that I presented Tampering using false arrest and jail as violations of 18 USC 1201 by Wells Fargo/Ogletree Deakins: armed kidnapping for political or economic motivations. Use of police to tamper with a Federal Witness is absolutely gangland. It is as bad it gets, other than the novel crimes listed above and detailed in the civil complaint.

5. Related but not relevant to the crime report: I motioned for Wells Fargo and Company to intervene. It is in PACER. It is possible that everything that happened was actually a Wells Fargo & Co. project. A metaphor for that is found on www.TheEugeneBlairProject.com. I placed the Circuit Court and Police a/v on www.RisePatriot.com and www.WellsFargoWitz.com (family court).

Thank you from Andy Clark 3270 Stoney Ridge Rd. Eugene OR 97405 541.510.3915 (exhibits follow)

EXHIBIT 1 Page 11 of 90

4 of 4
11-11771

was Officer Pieske who was there with us during the contacts and told Clark that Officer Pieske concurred with my findings in the matters. I asked Clark if there was anything else I could do for him. Clark said there was nothing else I could do for him and he left city hall.

Also per Sergeant Klinko's request, I contacted Marty Ogno, head of security for Wells Fargo. I called Ogno and told him I had contacted Clark and that he had been advised he was trespassed from all Wells Fargo properties. I also told Ogno Clark was concerned he had $24,000 in an account at Wells Fargo. Ogno said he had looked it up and though Clark only had about $200 in an account, but that he would close Clark's account and mail him a check with the remaining balance. Ogno asked how the contact went. I told Ogno that Clark felt he was being retaliated upon for contacting the FBI and CIA with Wells Fargo's wrong doings. Ogno said that he had been in contact with the FBI and told me that the FBI did not take Clark's reports seriously.

**>>>>>**
FBI would
not say that.

Notice no
person at
FBI is
referenced.

At approximately 1900 hours, dispatch advised that Clark had left a phone number for me to call him back so he could further discuss his desire to press charges against Wells Fargo for filing a false police report. I requested Sergeant Magnuson respond to the report writing room where I was working on reports so I could discuss the situation with him before calling Clark back. While I was explaining the situation to Sergeant Magnuson, Dispatch advised that Clark had called back 3 more times requesting contact. I then asked Sergeant Magnuson if he would contact Clark in my behalf in that I was unable to effectively communicate to Clark that Wells Fargo had broken no laws and that they had the right to trespass Clark from their properties.

It is corruption
of FBI processes   Reviewed by FTO:  **Pieske**          **112**
and obstruction.                     Name            Badge

BTW, I did
report to CIA via
nationwide fax#
and consulate
offices in
Bangalore and
Hyderabad India
due to concerns
related to
system
development
work on the
CORE/ELF
system I had to
use here that
was being badly
programmed in
India.

isch
#623                        07-19-11 2330 Hours                Approved By: Magnuson 122

Civil Case 6-20-cv-000253 Complaint Filed February 14, 2020 Clark vs. Wells Fargo et al    Page 82 of 131

EXHIBIT 1 Page 12 of 90

To: Steven Seymour Samuels Yoelin Kantor    Page 4 of 9  2020-04-08 20:08:16 (GMT)    14157043294  From: Andrew Clark

3/16/2020    1729. Protection Of Government Processes -- Tampering With Victims, Witnesses, Or Informants -- 18 U.S.C. 1512 | JM | Department of …

 An official website of the United States government  Here's how you know

THE UNITED STATES
DEPARTMENT of JUSTICE  This is archived content from the U.S. Department of Justice website. The information here may be outdated and links may no longer
function. Please contact webmaster@usdoj.gov if you have any questions about the archive site.

## 1729. PROTECTION OF GOVERNMENT PROCESSES -- TAMPERING WITH VICTIMS, WITNESSES, OR INFORMANTS -- 18 U.S.C. 1512

Section 1512 of Title 18 constitutes a broad prohibition against tampering with a witness, victim or informant. It proscribes conduct intended to illegitimately affect the presentation of evidence in Federal proceedings or the communication of information to Federal law enforcement officers. It applies to proceedings before Congress, executive departments, and administrative agencies, and to civil and criminal judicial proceedings, including grand jury proceedings. See 18 U.S.C. § 1512(g); 128 Cong. Rec. H8469 (daily ed. Oct. 1, 1980); H. R. Rep. No. 1369, 96th Cong., 2d Sess. 20-22 (1980).

The express prohibitions against tampering with witnesses and parties contained in former 18 U.S.C. §§ 1503 and 1505, are now in paragraphs (b)(1) and (2) of 18 U.S.C. § 1512. (As discussed in this Manual at 1724 and 1727, the omnibus clauses of these provisions still cover witnesses.) All forms of tampering with informants covered in former 18 U.S.C. § 1510, with the exception of tampering by means of bribery, are now proscribed by 18 U.S.C. § 1512(b)(3). Tampering with informants by means of bribery remains an 18 U.S.C. § 1510 offense.

Section 1512 augments the prohibitions of the former law in several important respects. First, section 1512(b)(3) sweeps more broadly than former 18 U.S.C. § 1510 and expands the class of informants protected by Federal law. For example, it protects individuals having information concerning a violation of a condition of probation, parole, or bail whether or not that violation constitutes a violation of any other Federal criminal statute. Second, it protects individuals seeking to provide information to Federal judges or Federal probation and pretrial services officers.

Section 1512 also includes attempts in its list of prohibited conduct. There is no requirement that the defendants actions have the intended obstructive effect. See, e.g., United States v. Murray, 751 F.2d 1528 (9th Cir.), cert. denied, 474 U.S. 979 (1985); United States v. Wilson, 796 F.2d 55 (4th Cir. 1986), cert. denied, 479 U.S. 1039 (1987). As amended by the Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. 99-646, it is clear that the killing of a witness or attempts to kill a witness in order to prevent his/her testimony constitutes an act of force intended to "influence the witness' testimony." See 18 U.S.C. § 1512(a). This change was necessitated by one court interpreting former § 1512 as not reaching an act of attempted murder that was intended to prevent a witness from testifying. See United States v. Dawlett, 787 F.2d 771 (1st Cir. 1986).

The section specifically abolishes the pending proceeding requirement of 18 U.S.C. §§ 1503 and 1505. The provision also eliminates ambiguity about the class of individuals protected. Although the former law protected witnesses, parties, and informants, it was unclear whether that law reached the intimidation of third parties (for example, the spouse of a witness) for the purpose of intimidating the principal party. Section § 1512 of Title 18 plainly covers such conduct, for it speaks of conduct directed toward "another person." See 128 Cong. Rec. H8203 (daily ed. Sept. 30, 1982).

Section 1512 protects potential as well as actual witnesses. With the addition of the words "any person," it is clear that a witness is "one who knew or was expected to know material facts and was expected to testify to them before pending judicial proceedings." United States v. DiSalvo, 631 F.Supp. 1398 (E.D. Pa. 1986), aff'd, 826 F.2d 1054 (3d Cir. 1987). Under § 1512, an individual retains his/her status as a witness even after testifying. United States v. Wilson, 796 F.2d 55 (4th Cir. 1986), cert. denied, 479 U.S. 1039 (1987) (protection of witness under § 1512 continues throughout the trial); United States v. Patton, 721 F.2d 159 (6th Cir. 1983) (witness retains status while defendant's motion for a new trial is pending); United States v. Chandler, 604 F.2d 972 (5th Cir. 1979) (witness retains status while case is pending on direct appeal). Cf. United States v. Risken, 788 F.2d 1361 (8th Cir.), cert. denied, 479 U.S. 923 (1986) (party was a witness after asserting his Fifth Amendment privilege and being dismissed from the stand since he could be recalled at any time).

Section 1512 of Title 18 contains two significant additions to the types of tampering barred by Federal law. First, it forbids "misleading conduct," as defined in 18 U.S.C. § 1515. Such conduct was not covered in those circuits that had narrowly construed the omnibus clauses of 18 U.S.C. §§ 1503 and 1505 under the rule of ejusdem generis. See United States v. Metcalf, 435 F.2d 754 (9th Cir. 1970); United States v. Essex, 407 F.2d 214 (6th Cir. 1969). see generally, 128 Cong. Rec. H8203 (daily ed. Sept. 30, 1982). Second, 18 U.S.C. § 1512 makes intentional harassment a misdemeanor. This offense is intended to reach conduct less egregious than the corrupt, threatening or forceful conduct required for a violation of former 18 U.S.C. §§ 1503 and 1505. Harassing conduct has been defined as that intended to badger, disturb or pester. Wilson, supra.

Despite its coverage, section 1512 was not intended to reach all forms of witness tampering. Its coverage is limited to tampering accomplished by the specific means enumerated in the provision. United States v. King, 762 F.2d 232 (2d Cir. 1985), cert. denied, 475 U.S. 1018 (1986). The more imaginative types of witness tampering as well as forms of tampering defying enumeration were still prohibited by the omnibus provision of § 1503. United States v. Lester, 749 F.2d 1288 (9th Cir. 1984).

It is unclear whether 18 U.S.C. § 1512(b)(3) was intended to widen the prohibition against obstructing investigations contained in former 18 U.S.C. § 1510 to include investigations that are not per se criminal in nature, such as an FAA investigation of an aircraft accident, or a Senate committee investigation of the trucking industry. A comparison of the difference in phraseology between 18 U.S.C. §§ 1510 and 1512(b)(3), however, indicates that those differences are differences of style, not substance, and that no such expansion was intended. Section 1510 proscribes interference with "the communication of information relating to a violation of any criminal statute of the United States . . ." to a (Federal) criminal investigator; 18 U.S.C. § 1512(b)(3) proscribes interference with "the communication to a (Federal) law enforcement officer . . . of information relating to the commission or possible commission of a Federal offense." There is nothing to indicate that Congress intended to depart from the generally accepted meaning of "law enforcement" as criminal law enforcement and of "offense" as criminal violation. See 18 U.S.C. § 1515(4); 128 Cong. Rec. H8203 (daily ed. Sept. 30,

EXHIBIT 1 Page 13 of 90

3/16/2020          1729. Protection Of Government Processes -- Tampering With Victims, Witnesses, Or Informants -- 18 U.S.C. 1512 | JM | Department of …

1982). Accordingly, prosecutions for interference with legislative or administrative investigations that have not taken on the character of a criminal investigation should be brought under the omnibus clause of 18 U.S.C. § 1505. *See* this Manual at 1726.

[cited in JM 9-69.100]

| ‹ 1728. Protection Of Government Processes -- Obstruction Of Federal Criminal Investigation -- 18 U.S.C. 1510 | up | 1730. Protection Of Government Processes -- "Official Proceeding" Requirement -- 18 U.S.C. 1512 › |

*Updated January 17, 2020*

EXHIBIT 1 Page 14 of 90

Case 6:20-cv-00253-AA   Document 78-1   Filed 05/04/20   Page 15 of 90

To: Steven Seymour Samuels Yoelin Kantor   Page 6 of 9   2020-04-08 20:08:16 (GMT)   14157043294 From: Andrew Clark
(94 of 334)

Case: 17-35247, 06/21/2017, ID: 10482013, DktEntry: 6-1, Page 94 of 295

**U.S. DEPARTMENT OF LABOR**     Occupational Safety & Health Administration
1111 Third Avenue, Suite 715
Seattle, Washington 98101 - 3212



July 11, 2011

Mr. Andrew Clark
3270 Soney Ridge Road
Eugene, OR 97405

Re: Consumer Financial Protection Act of 2010 Complaint Dated June 19, 2011

Dear Mr. Clark:

This is to acknowledge receipt of your complaint of retaliation under the whistleblower provision of the Consumer Financial Protection Act of 2010, Section 1057 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, 12 U.S.C.A. § 5567 (or, CFPA), which you filed on June 19, 2011. Please be advised that OSHA's jurisdiction to investigate such complaints does not become effective until the "designated transfer date," pursuant to Sections 1058 and 1062 of the Dodd-Frank Act, which the Secretary of the Treasury has set as *July 21, 2011.* The relevant sections of the statute can be found at www.whistleblowers.gov.

Should you wish to re-file a written CFPA whistleblower complaint on or after July 21st, you may send us another letter with this request. However, in order for OSHA to initiate an investigation, you must provide information that you were retaliated against on or after July 21, 2011.

In your complaint letter, you also requested to file it under Section 806 of the Sarbanes-Oxley Act ("SOX"). Please note that we have docketed that portion of your complaint as a SOX complaint. The SOX complaint has been assigned to OSHA Investigator, Patricia Brown who can be reached at 206-553-5930, and your employer has been notified about it.

Thank-you for your cooperation.

Sincerely,

*Vicky Coleman*
Vicky Coleman
Regional Supervisory Investigator

**OSHA** Occupational
Safety and Health
Administration
www.osha.gov

*handwritten:* RECOGNIZED RETALIATION
NOT MAY 25 DOL PORTLAND
REPORT
NO PAGE 3a

$29
Case 17-35247   Clark vs. Wells Fargo et al Exhibits   Page 38   *handwritten:* WHOOPS GOT LOST AGAIN

EXHIBIT 1 Page 15 of 90

3/17/2020                              Xfinity Connect OCC Case _ 01640244 has been created_ Printout

---

**do_not_reply@occ.treas.gov <do_not_reply@occ.treas.gov>**                              6/29/2011 6:01 AM

# OCC Case # 01640244 has been created.

To mir99@comcast.net

---

6/29/2011

Re: Case# 01640244

Dear Andrew Clark:

This is an automatically generated message. Please do not reply to this email. We are unable to respond to messages sent to this address.

Please keep a copy of this email for your records!

This email acknowledges receipt of your Online Consumer Complaint form.  Based upon your correspondence we have opened a case in the OCC's Customer Assistance Group (CAG).  Please make note of the case number listed above, and provide the number on any future correspondence or contact with our office.

We are reviewing the information you provided, and will contact the bank requesting a response to your issues.  In most instances, the bank will respond directly to you and copy us in writing.  Once you receive the bank's response, it is very important that you carefully review their summary and actions taken, if any.

If the bank has satisfactorily addressed your issues and/or concerns no further action on your part is required.  If however, the bank failed to address your issues and/or concerns or you disagree with their response, please contact the CAG in writing within 30 days of receipt of the bank's letter.  Please include in your reply the specific issues that the bank failed to address or, if applicable, the reasons you disagree with the bank's assessment.  Also, please include any additional documentation that supports your position.

The OCC examines national banks to ensure their safe and sound financial condition and ensures compliance with applicable banking laws, rules and regulations.  The CAG was established to assist customers who have questions or complaints involving national banks.  For additional information on the OCC and CAG please visit our internet site www.helpwithmybank.gov.

The CAG offers guidance, and assists consumers in resolving complaints about national banks and their subsidiaries.  The CAG is not a consumer advocacy or bank advocacy group.  The OCC is an administrative agency and we do not have jurisdiction to resolve contractual and factual issues.  We do not have judicial authority and cannot award damages in excess of a bank's error.

While complaint processing times may vary, on average you should receive a written response from CAG within 60 days after we have a complete file.

If you would like to check the status of your case online, please click on the following link:
https://appsec.helpwithmybank.gov/olcc_form/checkstatus.aspx  or visit www.helpwithmybank.gov and click on the Check Case Status page.

Should you have questions, please contact this office at the number listed below.


Sincerely,

Customer Assistance Group
1-800-613-6743


This message contains confidential information and is intended solely for the use of the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by sending an email to helpwithmybank.faq@occ.treas.gov  if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

EXHIBIT 1 Page 16 of 90

10/18/13                                    Phoenix - News - Valley Fever - Print Version

## Exhibit 1                                                                [>

# Sheriff Joe Arpaio's Favorite Law Firm, Ogletree Deakins, Cost Taxpayers $2.4 Million -- in Just Two Years

**By Sarah Fenske**
Published Wed., May 26 2010 at 8:00 AM



**L. Eric Dowell, rainmaker**

The battle for control of Maricopa County -- pitting Sheriff Joe Arpaio and County Attorney Andrew Thomas against the Board of Supervisors, judges, and county administrators -- has been costly to both taxpayers and the parties involved.

But it's been a major boon to one local law firm.

Ogletree Deakins, a relatively obscure firm specializing in employment law, became Arpaio and Thomas' go-to legal counsel just as the disputes were heating up. And, according to public records obtained by *New Times*, the firm has billed the county for a staggering $2.49 million since January 2009.

Most of the work had little to do with employment law -- and most of the firm's representation has been unsuccessful, legally speaking.

Ogletree Deakins has fought for the sheriff's right to take over the county's computer system. They tried to argue that the supervisors didn't have the right to sweep money from funds controlled by Thomas and Arpaio. They're currently pressing Arpaio's assertion that he shouldn't have to open his books to county auditors.

And, according to the billing records we looked at, it appears likely that Ogletree lawyers may have even been behind one of Arpaio/Thomas' biggest embarrassments: the criminal charges they filed against the county's presiding criminal court judge, Gary Donahoe.

As *New Times* first reported earlier this month, prosecutors filed criminal charges against Donahoe without bothering to seek a grand jury indictment. They simply filed a direct complaint, and attached a "probable cause" statement that, almost word for word, matched a complaint that the sheriff's office had filed with the Arizona Commission on Judicial Conduct one week before. That complaint, detailing a conspiracy theorist's view of Judge Donahoe's conduct, was signed by Arpaio's chief deputy, David Hendershott.

It now appears that Hendershott had some help penning the letter.                    2 -(

According to its billing statements, Ogletree charged the county $27,310 for something titled "MCSO State Bar Judicial." The first two invoices with that notation were submitted on December 1, 2009 --

http://www.phoenixnewtimes.com/valleyfever/2010/05/sheriff_joe_arpaios_favorite_l.php?print=true                                    1/2

EXHIBIT 1 Page 17 of 90

10/18/13                                    Phoenix - News - Valley Fever - Print Version

just one day after Hendershott filed "his" complaint with the judicial conduct commission.

So did an employment law specialist draft the document that became the basis for the criminal charges against the county's presiding criminal court judge? If nothing else, it would explain why the document drew guffaws from seasoned prosecutors. Ogletree's lawyers were likely in way over their heads. (And really, what was prosecutor Lisa Aubuchon thinking, merely regurgitating Ogletree's letter as a criminal complaint?)

According to the billing statements examined by *New Times*, Ogletree also advised Andrew Thomas on matters involving the State Bar. (That cost the taxpayers $18,929). And, they advised either Arpaio or Thomas -- the billings aren't clear -- about issues relating to the selection of a new county attorney. (That cost us *another* $12,762.)

Finally, Ogletree billed the county a staggering $1.2 million for something described only as "contract compliance." County Spokeswoman Cari Gerchick told *New Times* that county administrators have no idea what that means.

We contacted L. Eric Dowell, a shareholder at Ogletree Deakins and the sheriff's lawyer of choice, to ask about the "contract compliance" payments, but we hadn't heard back by press time. We'll post an update if we get an answer.

In the mean time, looking at the wasted $2.4 million and the unexplained $1.2 million and the tens of thousands of dollars for failed legal adventures -- well, we never thought we'd say this, but we actually miss Dennis Wilenchik. Yes, *New Times* disagreed with Wilenchik on just about everything. But Wilenchik handled some pretty tough cases for Arpaio, not just political crap that should have never made its way to a docket.

And Wilenchik, unlike the sheriff's new $2-million-counsel, actually knew how to win.

27

Civil Case 6-20-cv-000253  Complaint Filed February 14, 2020Clark vs. Wells Fargo et al  Page 59 of 131

EXHIBIT 1 Page 18 of 90

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
### Eugene, Oregon Division

Andrew Clark, Plaintiff
3270 Stoney Ridge Rd.
Eugene, OR 97405   541.510.3915
OperationSunriseLaw@gmail.com

**Civil Complaint Case: 6: cv 20-00253-aa**

Wells Fargo and Company
420 Montgomery St. San Francisco, CA 94163
as Voluntary or Mandatory
Intervenor for Plaintiff
(Subject to FRCP 24)

Partial Reply to Responses
Filed April 20, 2020

**vs.** Defendants:

Wells Fargo Bank et al

### Reply to Responses (partial)

Thank you very much for your responses to Civil Case 20-00253. Before getting into that I want to share some exciting news I learned last week:   Honorable Judge Michael Hogan (ret.) is joining our Team!  He is bringing with him Jared Hager, Assistant United States Attorney (AUSA)- Civil Division. I also made good contact with Pam Holister  AUSA – Criminal Division.

Docket 56 'federal witness tampering' contains a police report page dated July 19, 2011. Judge Michael Hogan accepted Wells Fargo's Emergency SLAPP Suit 11-06248 filed on "emergency basis" in early August 2011 by Ogletree Deakins.  The attachment is a transcript of the third hearing in that court. It was by telephone on May 8, 2012. It was not in PACER until I paid to have it transcribed in early 2016. It is 'absolutely must read'.

Most of you are named in this lawsuit as Defendants so you can be absolved and held harmless by acting as 'witness'.  You based your actions (described in complaint) upon elaborate lies of Wells Fargo/Ogletree Deakins, just as did Judge Hogan. I urge each of you to withdraw or modify your response to conform to the new information.  Pleading to FRCP 8-E is one method as I describe within this document.

April 20, 2020 Reply to Responses  Case 6.20.cv.00253.aa  Clark vs. Wells Fargo et al   Page 1 of 5

EXHIBIT 1 Page 19 of 90

My complaint is based on facts and already-discovered evidence that would fully support criminal indictments for RICO and/or the underlying RICO Crimes.   The public corruption includes text-book examples Hobbs Act violations,  18 USC  1951 which was expanded to include  'third party benefits awarded under color of official rights'.   <u>But this case went</u> <u>further.</u>  Use of false arrest and jailing by armed police against a Federal Witness is a primary metric of "organized crime".

I urge each of you to reference these two DOJ manuals.  My complaint, its factual basis, and the supporting evidence fully conforms to the Criminal RICO manual.  It along with the referenced PACER records are a ready-to-go criminal complaint.
Criminal RICO Manual https://www.justice.gov/archives/usam/file/870856/download
Civil RICO Manual: https://www.justice.gov/sites/default/files/usam/legacy/2014/10/17/civrico.pdf

This reply covers most of my objections to responses but it was rushed.   The responses are voluminous and I am not through them yet   I motioned for extra time and was granted a partial extension that did not fulfill the objective.  I also noticed that my Motion submitted under FRCP 24 for Wells Fargo and Company as Intervenor was denied.  Denial is not the problem: it is the total lack of discussion with no reason being provided.

<u>The way the COURT STAFF  handled both of those motions under the circumstances</u> <u>prompted me to file Docket 56, report the situation to all of the DOJ Offices of Inspector</u> <u>General,  and make telephone contact with Ms. Holister.  That is exactly how the enterprise</u> <u>used the courts to bypass evidence in past proceedings.   I am not replying to Ogletree</u> <u>Deakins' April 9, 2020 response with this document as it is not due yet.  And I believe that</u> <u>Judge Hogan and Oregon's AG (Defendant Rosenblum et al) will want "first crack" at Wells</u> <u>Fargo/Ogletree Deakins which just might prompt speedy resolution.</u>

### <u>Docket 56 –  Federal Witness Tampering, RICO, and You</u>
RICO Makes You Culpable for the Results of the Enterprise
Clayton/Sherman ATA Makes the Corporate Entities Culpable for RICO by it's Agents

**Defendant-Attorneys**:  Federal Witness Tampering occurred.  Docket 56 is a Federal Crime Report.  It is one page of a police report, two federal investigation acceptance letters, and a printout of Criminal Resource Manual 1729.  Federal Witness Tampering occurred by definition and without regard to  any other facts. Wells Fargo brought in Ogletree Deakins against me while still employed. Ex. 56 contains a two-page news article from Maricopa County, AZ in the same general timeframe demonstrating that Ogletree Deakins (a national

EXHIBIT 1 Page 20 of 90

firm) has a history of using the same tactics elsewhere, another metric of Racketeering and Organized Crime as well as the need for Clayton/Sherman ATA.

The Tampering events described in my complaint include physically violent federal felonies that constitute RICO. <u>RICO makes YOU culpable for the results of the Enterprise</u>. The Hobbs Act violations involved rampant, systemic public corruption. A complete evidence base was repeatedly submitted to the court and was obstructed with pleadings much like the ones Defendants used in this proceeding coupled with fraudulent use of official systems along with legal battery of me.

### Criminal Violation of Sarbanes-Oxley (SOX) Legislation and 18 USC 1519
Attention Wells Fargo Responsible Corporate Officers and
Ogletree Deakins / Seyfarth Shaw Partners and/or Shareholders

As disclosed in Docket 56, a SOX investigation (not Dodd-Frank) that included internal reporting was in process at Department of Labor/OSHA when the witness tampering started. "Yates" is a 2015 Supreme Court case that clarified "tangible object" as it relates to 18 USC 1519 that rose from SOX. The court is intangible. The court systems and PACER are tangible objects into which I submitted facts/evidence. Any pleading or action that had the effect of obstructing and bypassing adjudication of facts/evidence violated 18 USC 1519. The SOX legislation extends criminal culpability to the Wells Fargo RCO's along with Partners and/or Shareholders of Ogletree Deakins and Seyfarth Shaw.

It is beneficial to accept the above as generally true unless you can point out anything that meaningfully contradicts it. Attorney-Defendants, please take a look and I am hopeful you will agree the Ginsburg Court mused that nothing in the law prevents a criminal situation from having no penalty or even rewards if the social benefit justifies it. The factual basis and evidence supports Alternative Dispute Resolution in which ALL OF US can make shameless-but-righteous Progress.

### Defenses Based on Res Judicata and Statutes of Limitations
Tolling Begins When Obstruction of Evidence Placed Into the Court Ends

A claim of Res Judicata in this situation represents perjury and continued obstruction of justice that gravely endangered Wells Fargo and the general public. The PACER records of

EXHIBIT 1 Page 21 of 90

the prior cases stands as timeless, unequivocal proof that all facts and evidence I placed into the court in any conceivable format were all bypassed and were not adjudicated.

Many Defendants incorrectly claimed the matter was outside of statutes of limitations and time bars. All facts and evidence were placed into the court systems and bypassed via obstructive pleadings as demonstrated in PACER. Each defendant is subject to the 10 year RICO window. The predicate acts occurred within a four year period. A convincing body of evidence supporting the facts was repeatedly placed into the court and then bypassed completely. _All case law involving major obstructed evidence says what common sense confirms: tolling begins when obstruction ends._

### Defenses Based on FRCP 12(b)(6) vs. FRCP 8-E

Motions to dismiss based upon FRCP 12(b)(6) are clearly not appropriate to the factual basis and evidence in this case. It will take you less than 10 minutes absorbing Docket 56 and you will instinctively feel you may have acted upon false and wrongful information that had the result of tampering with a federal witness. Most of you were used by Attorney Pollino's clients as agents of their tampering and obstruction of justice (bypassing the factual basis and evidence). Think back, check records and try to remember what information you were provided and by who that caused you to do as I allege in the FRCP 9 pleading. Read up on "vicarious vs. active participation" and your duties as attorneys to have done differently in retrospect. Then consider pleading to FRCP 8-E as I use in an example below.

### Defenses Based on Immunity

First and foremost: The primary reason to include an "immune person" such as Oregon's Attorney General Rosenblum in a lawsuit is to demonstrate to them how the government agency was wrongly influenced by Wells Fargo/Ogletree Deakins. It is the best and only way for a citizen to formally provide them a good reason to FOLLOW THE LAW AND CORRECT THE DAMAGE THEY DID. No person enjoys complete immunity if they commit a crime. Also, I included Exhibit 11, an Amicus Curiae in a recent New York case in which a judge concluded President Trump does not have complete immunity. If he doesn't...none of us should. To be honest, I have not read State's response yet due to being rushed as described in the introduction.

EXHIBIT 1 Page 22 of 90

## Defendant Attorneys:  Opportunity is Knocking Hard

Defendant Bruce Newton is my ex-wife's divorce attorney.  I accused him in the complaint in some detail.  Without any regard to that: Docket 56  (CRM 1729) specifies HIS CLIENT is entitled to relief of damages caused by federal witness tampering.  I am hopeful Defendant Newton joins me because that is what is both right and righteous and I would like to discuss it with him privately.  I await his call so we can talk about real progress for all.

I will use Defendant Barry Davis as an example that in one way or another applies to all or most Defendants. It is  legally and ethically correct  to plead to FRCP 8-e "Pleadings must be construed so as to do justice."  I paid Defendant Davis a  lot of money to file an appeal for 11-06248 which was never filed despite assurances otherwise.  On several occasions he mentioned to me that Defendant Lively called him.  My impression was that she applied a lot of pressure upon him and certainly did not mention that Federal Witness Tampering she was trying to conceal.  I personally heard how she pressured Judge Hogan and you can read the attached tele-hearing transcript where she is badgering the judge about her burning need for "Motion 78" to be approved.  The transcript does not reflect the shrill urgency in her voice that a recording would as she openly treated Judge Hogan as a child-lackey.   Have tissue on hand as that "absolutely must read" transcript will likely cause you to shed tear for the Court, Judge Hogan, my family, and myself... and yourself.

So I can only imagine what she was saying to Attorney Barry Davis that paralyzed him. I think Mr. Davis (et al) would rather summarize it briefly in this court and be absolved and held harmless rather than explaining  it in infinite detail to a team of state and federal investigators and having to provide all the telephone and income tax records related to the very significant amount of money involved, etc.  Similar could be said for all Defendants.  Please feel free to contact me any time.  I do not record calls and you are also welcome to visit.  Thank you all.

Signed and Sworn to as Truth on April 20, 2020.
    /s Andrew Clark

Andrew (Andy) Clark, Plaintiff  3270 Stoney Ridge Rd.  Eugene, OR 97405  541.510.3915
OperationSunriseLaw@gmail.com   www.RisePatriot.com   www.WellsFargoWitz.com

 www.WellsFargoRICO.com  www.DoggyMcStyleLaw.com www.DistrictCourtOregon.com
Solution Metaphor: www.TheEugeneBlairProject.com.

EXHIBIT 1 Page 23 of 90

Exhibit for Reply to Responses as described in the reply document    4-20-20

1

```
 1                UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF OREGON

 3   WELLS FARGO BANK, N.A.,          )
                                      )
 4                  Plaintiff,        ) No. 6:11-cv-06248-AA
                                      )
 5    v.                              ) May 8, 2012
                                      )
 6   ANDREW G. CLARK,                 ) Eugene, Oregon
                                      )
 7                  Defendant.        )

 8

 9         TRANSCRIPT OF TELEPHONE ORAL ARGUMENT

10        BEFORE THE HONORABLE MICHAEL R. HOGAN

11          UNITED STATES DISTRICT COURT JUDGE

12

13

14                        - : -

15

          APPEARANCES OF COUNSEL VIA TELEPHONE
16
     FOR THE PLAINTIFF:    LEAH C. LIVELY
17                         Ogletree Deakins Nash Smoak &
                             Stewart
18                         222 SW Columbia Street
                           Suite 1500
19                         Portland, OR   97201
                           (503) 552-2140
20                         leah.lively@ogletreedeakins.com

21   FOR THE DEFENDANT:    ANDREW G. CLARK, pro se
                           3270 Stoney Ridge Road
22                         Eugene, OR   97405
                           (541) 510-3915
23
     Court Reporter:       Deborah Wilhelm, CSR, RPR
24                         Court Reporter
                           P.O. Box 1504
25                         Eugene, OR   97440
                           (541) 505-0760
```

EXHIBIT 1 Page 24 of 90

2

```
 1              (Tuesday, May 8, 2012; 9:36 a.m.)

 2        (The following proceedings were had in chambers.)

 3              P R O C E E D I N G S

 4        THE CLERK:  This is the time set for Case

 5  11-6248, Wells Fargo Bank versus Clark, time set for

 6  status conference and oral argument on motion for relief

 7  from joint filing requirements, Number 78.

 8        MR. CLARK:  Okay.

 9        THE COURT:  Thank you.  I'm familiar with the

10  papers that have been filed.  Is there anything you wish

11  to add?

12        MR. CLARK:  I -- to be honest with you.  This

13  is Andy Clark over here at 3270 Stoney Ridge Road, and

14  I'm just a little bit confused as to the overall status

15  and what this particular matter is about.

16        I haven't filed anything with the court since,

17  I think, December, if I'm not mistaken.  And I'm trying

18  to figure out what this Number 78 is.  I'm not an

19  attorney.

20        And so my feeling is, again, there was an

21  overall wrong that has kind of gone on here.  I've put

22  that in the local SWAT, they are doing an investigation

23  as of last week.  They are finally taking a look at

24  those events back in July.  And the way I see it, what

25  happened back in July, which I got on their own audio
```

EXHIBIT 1 Page 25 of 90

3

1   and you can talk to them about it, it's pretty clear.  I

2   mean, on July 18th before this all started, they had

3   already posted guards, you know, to -- for no reason.

4   And then they have arranged to have a fake 911 call and

5   I put it all online.  And then they came at night to my

6   house and they did not have a warrant at the time they

7   came to my house.  And you can clearly -- very clearly

8   on their internal audio hear them call on July 18th

9   before any of that arrest stuff started, you know, they

10  talked to Wells Fargo.

11         And so I've been of the opinion that -- you

12  know, I have been in contact with the FBI in real -- it

13  was financial -- you know, there was banking, it's

14  required as a mandatory reporter in banking to report

15  financial system fraud that you are involved in or see.

16  And whatever else you had on, that's your business, but

17  that's what I did.  And, you know, they had a fraud and

18  everybody knew it.  And so eventually when you get these

19  new requirements, they came a year ago, I just couldn't

20  do it anymore.  I wouldn't do it anymore.  And they

21  asked about it and they pushed back.

22         And the way I look at it, this whole thing

23  hasn't been looked at right and I've tried to be patient

24  and you understand that I have been getting every one of

25  these reports on this.  I've made reference to my

EXHIBIT 1 Page 26 of 90

4

1   opinion that they even influenced the family court, just

2   due to timing.  And I'm just trying to get this all

3   shoveled under the rug for everybody.  All I want to do

4   is get Wells Fargo up here, and go, look, you guys,

5   this -- you got -- all I wanted to do is follow the law

6   and the policy.  So let's get this out of the courts,

7   you know, let's get this back to a nice friendly thing

8   where we're all working on a team for progress of the

9   bank and progress of the world and we're not dragging

10  dirt through civil courts and through all these

11  litigations.

12          It's just -- it just don't seem to me to be

13  very productive when it's just a matter of getting them

14  up here to settle it.  And to settle with me, you know,

15  I haven't been very specific about that, you know.  You

16  know, what I mean?  I don't know.  Don't you get it?  I

17  just need it resolved.  My life is short.  I don't have

18  ten years or whatever corporations do.  See, I've been

19  subjected to a corporate process, something that lawyers

20  spend 10 years, 20 years, they don't care.  I'm just me.

21  I'm 53.  This is killing me, you know, faster than I

22  thought it might, okay?  And so I really don't know what

23  to do.  I honestly don't.

24          Last time I was there, I was told not to file

25  motions except through the federal system, well, I feel

EXHIBIT 1 Page 27 of 90

5

1    a little nervous about filing motions through the

2    federal systems.  I'm pretty handy with systems.  I

3    don't want to get in any trouble with the system guys.

4    So I don't know what to tell you.

5          Whatever it is we need to do, you know, I

6    didn't appeal this, had a judgment back in January.  The

7    way I see it, there wasn't a grain of truth in it, but,

8    again, I don't want to be contentious with anybody, you

9    understand?  I'm right here in my house.  You know, I

10   ain't hiding from anybody.  And I just need some relief

11   from the court in a different way.  I'm just a human.  I

12   don't have the knowledge and I don't have the time and I

13   don't think it's right in this small community to be

14   dragging all the little people through this.

15         I wrote a letter to my congressman on April

16   10th and he says, well, we suggest you talk to Kitty

17   Piercy on the town city council.  You know, it's really

18   infuriating to me, because I've been trying -- I've got

19   letters after letters after letters.  And, you know, I

20   posted it all on my Web site and I tried to make it so

21   people wouldn't see it fast.  You know, I tried to make

22   it so it was hard to get to.  And then I kind of moved

23   it around a little bit, but I just want to get on with

24   my life.  Don't you understand?

25         I've got people who Google me and look what

EXHIBIT 1 Page 28 of 90

6

1   they see, they see these federal actions, right?  You

2   know, so I don't know what to do.  If it's -- Judge, if

3   you're there, or Your Honor, anybody in the FBI,

4   whatever you all need, but I need you to all look at

5   what I've put into that court and the fact that I don't

6   want to be dragging it through the mud.  That's my only

7   objective.  I go into court and I just shut my mouth,

8   because it's me, and I can deal with it, and I don't

9   want to be dragging through the courts, it's not right.

10          THE COURT:  Well, Mr. Clark -- okay, Mr. Clark.

11          Ms. Lively, do you have anything on the motion

12   for relief from joint filing requirements?

13          MR. CLARK:  What is it?  I don't know what the

14   joint filing requirement is.

15          THE COURT:  Well, our rules require some things

16   to be signed by both parties.  And according to

17   Ms. Lively, it's been more difficult to get your

18   cooperation on that.  Just --

19          MR. CLARK:  Well --

20          THE COURT:  Just a moment, Mr. Clark.

21          Ms. Lively, do you have anything more on that?

22          MS. LIVELY:  Not on that specific motion, no,

23   Your Honor.

24          MR. CLARK:  What is it that -- what is this

25   that I'm supposed -- my feeling is that I've got a

EXHIBIT 1 Page 29 of 90

7

1  certain legal position based in evidence.  Okay.  The

2  evidence --

3        THE COURT:  Hang on, Mr. Clark, okay.  The

4  motion is granted.

5        Now, what exactly -- what relief or what are

6  the plaintiff's plans for this case?  This does not

7  appear to be a matter that's well suited to a trial.

8  What do you hope to achieve?

9        MR. CLARK:  Well --

10        THE COURT:  No, no, Mr. Clark, I'm asking

11  Ms. Lively this.

12        MR. CLARK:  I'm sorry, I apologize.

13        THE COURT:  What are the bank's plans for the

14  case?

15        MS. LIVELY:  Your Honor, we'd like two things.

16  One, we have broached the subject of mediation with

17  Mr. Clark.  And, in fact, have -- if he will -- if he

18  finds a mediator, we've agreed to pay all costs for a

19  third-party mediator, whether that be a private mediator

20  that is somebody suitable for mediation or whether it's

21  something that the court does in order to try and

22  resolve that.  And my understanding is Mr. Clark doesn't

23  think a third party is something he needs.  So we

24  would -- you know, we would be willing to talk to

25  Mr. Clark about that, but we do feel that a third party

EXHIBIT 1 Page 30 of 90

8

1    would be necessary in order to do that.

2         Beyond that, we'd like to move for a permanent

3    injunction.  However, we need a judgment on the merits

4    to do that, so we'd like a summary judgment deadline so

5    that we can file for summary judgment and then move --

6    you know, if that were to be granted, then move for a

7    permanent injunction.

8         THE COURT:  I'll give the parties 30 days to

9    file dispositive motions.

10         MR. CLARK:  Okay.  And so what I need to do is

11   get the motions to you.  My motion, you know, would be,

12   number one, to resurrect my other motions, which I don't

13   think were really heard, and start going through the

14   evidence that I submitted to the court that was sealed.

15   In other words, I do believe that there is trial

16   because -- I'm going to put it all in a motion form, but

17   a lot of it's already in there, don't you guys see?  A

18   lot of it's already been submitted, okay?

19         Now, Ms. Lively, with regard to mediation, my

20   understanding of mediation, that as soon as I agree to

21   that, then I give up all these rights.  In other words,

22   well, it's like you kind of don't have any rights,

23   otherwise once you sign up for the mediation.

24   Furthermore, the way I look at it, a lot of this

25   material is sort of banking -- you know, it's

EXHIBIT 1 Page 31 of 90

9

1   proprietary.

2           THE COURT:  Let me --

3           MR. CLARK:  So I can't go over that --

4           THE COURT:  Mr. Clark, let me help you on

5   mediation, all right?  Mediation is something that

6   people come together and someone helps them try to find

7   a solution they all can agree on.  It's not that it is

8   imposed on them.  They agree to meet.  And the third

9   party tries to help find common ground.  And so it's a

10  way of settling a matter.  You don't give up other

11  rights by going to mediation.  It's a way of trying to

12  resolve something short of the courtroom where everyone

13  agrees on the end result.  I think that's what's being

14  proposed here.

15          MS. LIVELY:  That is correct, Your Honor.  We

16  wouldn't expect Mr. Clark to give up any rights unless

17  during the mediation there was, you know, a settlement

18  reached, and certainly not by going to the mediation

19  itself.

20          MR. CLARK:  Okay.  I need to -- see, here's the

21  thing, okay, I need everybody to understand that, you

22  know, that as hard as I try to act brave, I'm not that

23  brave.  Okay?  You know, as hard as I try to act mean,

24  I'm not mean.  Okay?  I try hard to withstand it, and I

25  can't stand it.  I mean, they've hit me so hard, and the

EXHIBIT 1 Page 32 of 90

10

```
 1    family court is what kills me.  I can't deal with that.
 2    That's bizarre.  And I just twist in the wind.  It's
 3    something that you guys don't understand, the emotional
 4    and the physical effects of.
 5            THE COURT:  All right.  What I'm going --
 6            MR. CLARK:  And it's caused a great
 7    defensibility, it's caused --
 8            THE COURT:  Mr. Clark?
 9            MR. CLARK:  -- a lack of ability to deal with
10    this correctly.
11            THE COURT:  Mr. Clark?
12            MR. CLARK:  Yes, sir.  Yes, Your Honor.
13            THE COURT:  I'm going to give each of you two
14    weeks to suggest a mediator to me in writing.
15            MR. CLARK:  Okay.
16            THE COURT:  And I'll take a look at that and
17    I'll decide on our future situation of this case, all
18    right?
19            MR. CLARK:  Yeah.  That's what I'm thinking, if
20    you are the judge, right, are you Judge Hogan on the
21    phone with me here?
22            THE COURT:  Yes, sir.  And there is a chance --
23            MR. CLARK:  I want to put it in your hands.
24    Whatever, Judge, it's like I told you, you tell me to go
25    into the third and I'll go into the third.  You
```

EXHIBIT 1 Page 33 of 90

11

1    understand?  Whatever you tell me, I do.  It's in your

2    hands.

3             THE COURT:  Well --

4             MR. CLARK:  That's what I'm saying, it's in

5    your hands.  You're like my father and my mother in that

6    way, it's in your hands.  I can't deal with it.  You got

7    it all.  I don't believe in having stuff spewed all over

8    and everything.  I just want things done whatever,

9    fastest way.  If you know a good mediator, just maybe

10   recommend, I'll look in the phone book, how about that?

11   I'll want it to be okay with Ms. Lively, too, okay?

12            THE COURT:  All right.  And by the way I'm --

13            MR. CLARK:  I don't want no problems.

14            THE COURT:  I'm going to take a look at who you

15   suggest.  I might do it myself.  I'm a pretty good

16   mediator myself.

17            MR. CLARK:  Yes, sir.  And, again, I am the

18   nicest person but I kind of got tweaked, you understand?

19   And other people do weird things and I try to just show

20   people in this very private but sort of not private way,

21   we can't have a society like this.  We have to --

22            THE COURT:  Mr. Clark.

23            MR. CLARK:  -- let -- okay, yes, Your Honor,

24   I'm going to shut up, okay.

25            THE COURT:  I've got a really busy calendar.  I

April 20, 2020 Reply to Responses  Case 6.20.cv.00253.aa  Clark vs. Wells Fargo et al  Page 16 of 5

EXHIBIT 1 Page 34 of 90

12

```
 1    don't have any more today, but we'll talk after --
 2           MS. LIVELY:  Your Honor, I'm sorry, I
 3    understand you have to go.  Would it be possible to get
 4    a dispositive motion deadline after the mediation, like
 5    30 days following the mediation?   .
 6           THE COURT:  Yes, but let's go ahead right --
 7    yeah, okay --
 8           MR. CLARK:  Do I have to respond to the
 9    motion --
10           THE COURT:  Actually, I'll do that.  I'll take
11    off the 30-day situation.  That's fine with me.  We'll
12    do a mediation first, and either with someone you
13    suggest or I will do it.  I haven't decided.  All right?
14           MS. LIVELY:  Thank you, Your Honor.
15           MR. CLARK:  Yeah, whatever is good, Your Honor.
16    I just want it resolved.
17           THE COURT:  All right.  Thank you very much.
18    We're in recess.
19           (The proceedings were concluded at 9:47 a.m.)
20
21
22
23
24
25
```

April 20, 2020 Reply to Responses  Case 6.20.cv.00253.aa  Clark vs. Wells Fargo et al   Page 17 of 5

EXHIBIT 1 Page 35 of 90

13

CERTIFICATE

1

2      I, Deborah Wilhelm, Certified Shorthand Reporter

3  for the State of Oregon, do hereby certify that I was

4  present at and reported in machine shorthand the oral

5  proceedings had in the above-entitled matter.  I hereby

6  certify that the foregoing is a true and correct

7  transcript, to the best of my skill and ability, dated

8  this 8th day of February, 2016.

9

10

11

12                          /s/ Deborah Wilhelm
                            _____
13                          Deborah Wilhelm, RPR
                            Certified Shorthand Reporter
14                          Certificate No. 00-0363

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT 1 Page 36 of 90

To: Steven Seymour Samuels Yoelin Kanto    Page 1 of 18    2020-04-20 16:13:04 (GMT)          14157043294  From: Andrew Clark

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
### Eugene, Oregon Division

Andrew Clark, Plaintiff
3270 Stoney Ridge Rd.
Eugene, OR 97405   541.510.3915
OperationSunriseLaw@gmail.com                    **Civil Complaint Case: 6: cv 20-00253-aa**

Wells Fargo and Company                         Partial Reply to Responses
420 Montgomery St. San Francisco, CA 94163      Filed April 20, 2020
as Voluntary or Mandatory
Intervenor for Plaintiff
(Subject to FRCP 24)

**vs.** Defendants:

Wells Fargo Bank et al

## Reply to Responses (partial)

Thank you very much for your responses to Civil Case 20-00253.   Before getting into that I want to share some exciting news I learned last week:    Honorable Judge Michael Hogan (ret.) is joining our Team!   He is bringing with him Jared Hager, Assistant United States Attorney (AUSA)- Civil Division.  I also made good contact with Pam Holister  AUSA – Criminal Division.

Docket 56 'federal witness tampering' contains a police report page dated July 19, 2011. Judge Michael Hogan accepted Wells Fargo's Emergency SLAPP Suit 11-06248 filed on "emergency basis" in early August 2011 by Ogletree Deakins.   The attachment is a transcript of the third hearing in that court.  It was by telephone on May 8, 2012.  It was not in PACER until I paid to have it transcribed in early 2016.  It is 'absolutely must read'.

Most of you are named in this lawsuit as Defendants so you can be absolved and held harmless by acting as 'witness'.  You based your actions (described in complaint) upon elaborate lies of Wells Fargo/Ogletree Deakins, just as did Judge Hogan.  I urge each of you to withdraw or modify your response to conform to the new information.   Pleading to FRCP 8-E is one method as I describe within this document.

EXHIBIT 1 Page 37 of 90

My complaint is based on facts and already-discovered evidence that would fully support criminal indictments for RICO and/or the underlying RICO Crimes.  The public corruption includes text-book examples Hobbs Act violations,  18 USC  1951 which was expanded to include 'third party benefits awarded under color of official rights'.  <u>But this case went further</u>.  Use of false arrest and jailing by armed police against a Federal Witness is a primary metric of "organized crime".

I urge each of you to reference these two DOJ manuals. My complaint, its factual basis, and the supporting evidence fully conforms to the Criminal RICO manual.  It along with the referenced PACER records are a ready-to-go criminal complaint.
Criminal RICO Manual https://www.justice.gov/archives/usam/file/870856/download
Civil RICO Manual: https://www.justice.gov/sites/default/files/usam/legacy/2014/10/17/civrico.pdf

This reply covers most of my objections to responses but it was rushed.   The responses are voluminous and I am not through them yet   I motioned for extra time and was granted a partial extension that did not fulfill the objective.  I also noticed that my Motion submitted under FRCP 24 for Wells Fargo and Company as Intervenor was denied.  Denial is not the problem: it is the total lack of discussion with no reason being provided.

<u>The way the COURT STAFF  handled both of those motions under the circumstances prompted me to file Docket 56, report the situation to all of the DOJ Offices of Inspector General,  and make telephone contact with Ms. Holister.  That is exactly how the enterprise used the courts to bypass evidence in past proceedings.   I am not replying to Ogletree Deakins' April 9, 2020 response with this document as it is not due yet.  And I believe that Judge Hogan and Oregon's AG (Defendant Rosenblum et al) will want "first crack" at Wells Fargo/Ogletree Deakins which just might prompt speedy resolution.</u>

### <u>Docket 56 –  Federal Witness Tampering, RICO, and You</u>
RICO Makes You Culpable for the Results of the Enterprise
Clayton/Sherman ATA Makes the Corporate Entities Culpable for RICO by it's Agents

**Defendant-Attorneys**:  Federal Witness Tampering occurred.   Docket 56 is a Federal Crime Report.   It is one page of a police report, two federal investigation acceptance letters, and a printout of Criminal Resource Manual 1729.  Federal Witness Tampering occurred by definition and without regard to  any other facts.  Wells Fargo brought in Ogletree Deakins against me while still employed. Ex. 56 contains a two-page news article from Maricopa County, AZ in the same general timeframe demonstrating that Ogletree Deakins (a national

EXHIBIT 1 Page 38 of 90

firm) has a history of using the same tactics elsewhere, another metric of Racketeering and Organized Crime as well as the need for Clayton/Sherman ATA.

The Tampering events described in my complaint include physically violent federal felonies that constitute RICO.  <u>RICO makes YOU culpable for the results of the Enterprise</u>.  The Hobbs Act violations involved rampant, systemic public corruption.  A complete evidence base was repeatedly submitted to the court and was obstructed with pleadings much like the ones Defendants used in this proceeding coupled with fraudulent use of official systems along with legal battery of me.

### Criminal Violation of Sarbanes-Oxley (SOX) Legislation and 18 USC 1519
Attention Wells Fargo Responsible Corporate Officers and
Ogletree Deakins / Seyfarth Shaw Partners and/or Shareholders

As disclosed in Docket 56, a SOX investigation (not Dodd-Frank)  that included internal reporting was in process at Department of Labor/OSHA when the witness tampering started. "Yates" is  a 2015 Supreme Court case that clarified "tangible object" as it relates to 18 USC 1519 that rose from SOX.  The court is intangible.  The court systems and PACER are tangible objects into which I submitted facts/evidence.  Any pleading or action that had the effect of obstructing and bypassing adjudication of facts/evidence violated 18 USC 1519.   The SOX legislation extends criminal  culpability to the Wells Fargo RCO's along with  Partners and/or Shareholders of Ogletree Deakins and Seyfarth Shaw.

It is beneficial to accept the above as generally true unless you can point out anything that meaningfully contradicts it.   Attorney-Defendants, please take a look and I am hopeful you will agree the Ginsburg Court mused that nothing in the law prevents a criminal situation from having no penalty or even rewards if the social benefit justifies it.  The factual basis and evidence supports Alternative Dispute Resolution in which ALL OF US can make shameless-but-righteous Progress.

### Defenses Based on Res Judicata and Statutes of Limitations
Tolling Begins When Obstruction of Evidence Placed Into the Court Ends

A claim of Res Judicata in this situation represents perjury and continued obstruction of justice that gravely endangered Wells Fargo and the general public.  The PACER records of

EXHIBIT 1 Page 39 of 90

the prior cases stands as timeless, unequivocal proof that all facts and evidence I placed into the court in any conceivable format were all bypassed and were not adjudicated.

Many Defendants incorrectly claimed the matter was outside of statutes of limitations and time bars. All facts and evidence were placed into the court systems and bypassed via obstructive pleadings as demonstrated in PACER. Each defendant is subject to the 10 year RICO window. The predicate acts occurred within a four year period. A convincing body of evidence supporting the facts was repeatedly placed into the court and then bypassed completely. _All case law involving major obstructed evidence says what common sense confirms: tolling begins when obstruction ends._

### Defenses Based on FRCP 12(b)(6) vs. FRCP 8-E

Motions to dismiss based upon FRCP 12(b)(6) are clearly not appropriate to the factual basis and evidence in this case. It will take you less than 10 minutes absorbing Docket 56 and you will instinctively feel you may have acted upon false and wrongful information that had the result of tampering with a federal witness. Most of you were used by Attorney Pollino's clients as agents of their tampering and obstruction of justice (bypassing the factual basis and evidence). Think back, check records and try to remember what information you were provided and by who that caused you to do as I allege in the FRCP 9 pleading. Read up on "vicarious vs. active participation" and your duties as attorneys to have done differently in retrospect. Then consider pleading to FRCP 8-E as I use in an example below.

### Defenses Based on Immunity

First and foremost: The primary reason to include an "immune person" such as Oregon's Attorney General Rosenblum in a lawsuit is to demonstrate to them how the government agency was wrongly influenced by Wells Fargo/Ogletree Deakins. It is the best and only way for a citizen to formally provide them a good reason to FOLLOW THE LAW AND CORRECT THE DAMAGE THEY DID. No person enjoys complete immunity if they commit a crime. Also, I included Exhibit 11, an Amicus Curiae in a recent New York case in which a judge concluded President Trump does not have complete immunity. If he doesn't...none of us should. To be honest, I have not read State's response yet due to being rushed as described in the introduction.

EXHIBIT 1 Page 40 of 90

### Defendant Attorneys:  Opportunity is Knocking Hard

Defendant Bruce Newton is my ex-wife's divorce attorney.  I accused him in the complaint in some detail.  Without any regard to that: Docket 56  (CRM 1729) specifies HIS CLIENT is entitled to relief of damages caused by federal witness tampering.  I am hopeful Defendant Newton joins me because that is what is both right and righteous and I would like to discuss it with him privately.  I await his call so we can talk about real progress for all.

I will use Defendant Barry Davis as an example that in one way or another applies to all or most Defendants. It is  legally and ethically correct  to plead to FRCP 8-e "Pleadings must be construed so as to do justice."  I paid Defendant Davis a  lot of money to file an appeal for 11-06248 which was never filed despite assurances otherwise.  On several occasions he mentioned to me that Defendant Lively called him.  My impression was that she applied a lot of pressure upon him and certainly did not mention that Federal Witness Tampering she was trying to conceal.  I personally heard how she pressured Judge Hogan and you can read the attached tele-hearing transcript where she is badgering the judge about her burning need for "Motion 78" to be approved.  The transcript does not reflect the shrill urgency in her voice that a recording would as she openly treated Judge Hogan as a child-lackey.   Have tissue on hand as that "absolutely must read" transcript will likely cause you to shed tear for the Court, Judge Hogan, my family, and myself... and yourself.

So I can only imagine what she was saying to Attorney Barry Davis that paralyzed him. I think Mr. Davis (et al) would rather summarize it briefly in this court and be absolved and held harmless rather than explaining  it in infinite detail to a team of state and federal investigators and having to provide all the telephone and income tax records related to the very significant amount of money involved, etc.  Similar could be said for all Defendants.  Please feel free to contact me any time.  I do not record calls and you are also welcome to visit.  Thank you all.

Signed and Sworn to as Truth on April 20, 2020.
    /s Andrew Clark
Andrew (Andy) Clark, Plaintiff  3270 Stoney Ridge Rd.  Eugene, OR 97405  541.510.3915
OperationSunriseLaw@gmail.com   www.RisePatriot.com   www.WellsFargoWitz.com

 www.WellsFargoRICO.com  www.DoggyMcStyleLaw.com  www.DistrictCourtOregon.com
Solution Metaphor: www.TheEugeneBlairProject.com.

EXHIBIT 1 Page 41 of 90

Exhibit for Reply to Responses as described in the reply document    4-20-20

1

1    UNITED STATES DISTRICT COURT

2    FOR THE DISTRICT OF OREGON

3    WELLS FARGO BANK, N.A.,                )
                                            )
4                   Plaintiff,              )  No. 6:11-cv-06248-AA
                                            )
5      v.                                   )  May 8, 2012
                                            )
6    ANDREW G. CLARK,                       )  Eugene, Oregon
                                            )
7                   Defendant.              )

8

9         TRANSCRIPT OF TELEPHONE ORAL ARGUMENT

10        BEFORE THE HONORABLE MICHAEL R. HOGAN

11           UNITED STATES DISTRICT COURT JUDGE

12

13

14                        - : -

15

16        APPEARANCES OF COUNSEL VIA TELEPHONE

16    FOR THE PLAINTIFF:      LEAH C. LIVELY
17                            Ogletree Deakins Nash Smoak &
                                Stewart
18                            222 SW Columbia Street
                              Suite 1500
19                            Portland, OR   97201
                              (503) 552-2140
20                            leah.lively@ogletreedeakins.com

21    FOR THE DEFENDANT:      ANDREW G. CLARK, pro se
                              3270 Stoney Ridge Road
22                            Eugene, OR   97405
                              (541) 510-3915

23
      Court Reporter:        Deborah Wilhelm, CSR, RPR
24                            Court Reporter
                              P.O. Box 1504
25                            Eugene, OR   97440
                              (541) 505-0760

April 20, 2020 Reply to Responses  Case 6.20.cv.00253.aa  Clark vs. Wells Fargo et al   Page 6 of 5

EXHIBIT 1 Page 42 of 90

To: Steven Seymour Samuels Yoelin Kanto    Page 7 of 18    2020-04-20 16:13:04 (GMT)    14157043294 From: Andrew Clark

2

```
 1              (Tuesday, May 8, 2012; 9:36 a.m.)

 2         (The following proceedings were had in chambers.)

 3                 P R O C E E D I N G S

 4         THE CLERK:  This is the time set for Case

 5   11-6248, Wells Fargo Bank versus Clark, time set for

 6   status conference and oral argument on motion for relief

 7   from joint filing requirements, Number 78.

 8         MR. CLARK:  Okay.

 9         THE COURT:  Thank you.  I'm familiar with the

10   papers that have been filed.  Is there anything you wish

11   to add?

12         MR. CLARK:  I -- to be honest with you.  This

13   is Andy Clark over here at 3270 Stoney Ridge Road, and

14   I'm just a little bit confused as to the overall status

15   and what this particular matter is about.

16         I haven't filed anything with the court since,

17   I think, December, if I'm not mistaken.  And I'm trying

18   to figure out what this Number 78 is.  I'm not an

19   attorney.

20         And so my feeling is, again, there was an

21   overall wrong that has kind of gone on here.  I've put

22   that in the local SWAT, they are doing an investigation

23   as of last week.  They are finally taking a look at

24   those events back in July.  And the way I see it, what

25   happened back in July, which I got on their own audio
```

April 20, 2020 Reply to Responses  Case 6.20.cv.00253.aa  Clark vs. Wells Fargo et al  Page 7 of 5

EXHIBIT 1 Page 43 of 90

3

1   and you can talk to them about it, it's pretty clear.  I

2   mean, on July 18th before this all started, they had

3   already posted guards, you know, to -- for no reason.

4   And then they have arranged to have a fake 911 call and

5   I put it all online.  And then they came at night to my

6   house and they did not have a warrant at the time they

7   came to my house.  And you can clearly -- very clearly

8   on their internal audio hear them call on July 18th

9   before any of that arrest stuff started, you know, they

10  talked to Wells Fargo.

11          And so I've been of the opinion that -- you

12  know, I have been in contact with the FBI in real -- it

13  was financial -- you know, there was banking, it's

14  required as a mandatory reporter in banking to report

15  financial system fraud that you are involved in or see.

16  And whatever else you had on, that's your business, but

17  that's what I did.  And, you know, they had a fraud and

18  everybody knew it.  And so eventually when you get these

19  new requirements, they came a year ago, I just couldn't

20  do it anymore.  I wouldn't do it anymore.  And they

21  asked about it and they pushed back.

22          And the way I look at it, this whole thing

23  hasn't been looked at right and I've tried to be patient

24  and you understand that I have been getting every one of

25  these reports on this.  I've made reference to my

EXHIBIT 1 Page 44 of 90

4

 1   opinion that they even influenced the family court, just

 2   due to timing.  And I'm just trying to get this all

 3   shoveled under the rug for everybody.  All I want to do

 4   is get Wells Fargo up here, and go, look, you guys,

 5   this -- you got -- all I wanted to do is follow the law

 6   and the policy.  So let's get this out of the courts,

 7   you know, let's get this back to a nice friendly thing

 8   where we're all working on a team for progress of the

 9   bank and progress of the world and we're not dragging

10   dirt through civil courts and through all these

11   litigations.

12          It's just -- it just don't seem to me to be

13   very productive when it's just a matter of getting them

14   up here to settle it.  And to settle with me, you know,

15   I haven't been very specific about that, you know.  You

16   know, what I mean?  I don't know.  Don't you get it?  I

17   just need it resolved.  My life is short.  I don't have

18   ten years or whatever corporations do.  See, I've been

19   subjected to a corporate process, something that lawyers

20   spend 10 years, 20 years, they don't care.  I'm just me.

21   I'm 53.  This is killing me, you know, faster than I

22   thought it might, okay?  And so I really don't know what

23   to do.  I honestly don't.

24          Last time I was there, I was told not to file

25   motions except through the federal system, well, I feel

EXHIBIT 1 Page 45 of 90

5

1   a little nervous about filing motions through the

2   federal systems.  I'm pretty handy with systems.  I

3   don't want to get in any trouble with the system guys.

4   So I don't know what to tell you.

5           Whatever it is we need to do, you know, I

6   didn't appeal this, had a judgment back in January.  The

7   way I see it, there wasn't a grain of truth in it, but,

8   again, I don't want to be contentious with anybody, you

9   understand?  I'm right here in my house.  You know, I

10  ain't hiding from anybody.  And I just need some relief

11  from the court in a different way.  I'm just a human.  I

12  don't have the knowledge and I don't have the time and I

13  don't think it's right in this small community to be

14  dragging all the little people through this.

15          I wrote a letter to my congressman on April

16  10th and he says, well, we suggest you talk to Kitty

17  Piercy on the town city council.  You know, it's really

18  infuriating to me, because I've been trying -- I've got

19  letters after letters after letters.  And, you know, I

20  posted it all on my Web site and I tried to make it so

21  people wouldn't see it fast.  You know, I tried to make

22  it so it was hard to get to.  And then I kind of moved

23  it around a little bit, but I just want to get on with

24  my life.  Don't you understand?

25          I've got people who Google me and look what

EXHIBIT 1 Page 46 of 90

6

```
 1    they see, they see these federal actions, right?  You
 2    know, so I don't know what to do.  If it's -- Judge, if
 3    you're there, or Your Honor, anybody in the FBI,
 4    whatever you all need, but I need you to all look at
 5    what I've put into that court and the fact that I don't
 6    want to be dragging it through the mud.  That's my only
 7    objective.  I go into court and I just shut my mouth,
 8    because it's me, and I can deal with it, and I don't
 9    want to be dragging through the courts, it's not right.
10             THE COURT:  Well, Mr. Clark -- okay, Mr. Clark.
11             Ms. Lively, do you have anything on the motion
12    for relief from joint filing requirements?
13             MR. CLARK:  What is it?  I don't know what the
14    joint filing requirement is.
15             THE COURT:  Well, our rules require some things
16    to be signed by both parties.  And according to
17    Ms. Lively, it's been more difficult to get your
18    cooperation on that.  Just --
19             MR. CLARK:  Well --
20             THE COURT:  Just a moment, Mr. Clark.
21             Ms. Lively, do you have anything more on that?
22             MS. LIVELY:  Not on that specific motion, no,
23    Your Honor.
24             MR. CLARK:  What is it that -- what is this
25    that I'm supposed -- my feeling is that I've got a
```

EXHIBIT 1 Page 47 of 90

7

1  certain legal position based in evidence.  Okay.  The

2  evidence --

3         THE COURT:  Hang on, Mr. Clark, okay.  The

4  motion is granted.

5         Now, what exactly -- what relief or what are

6  the plaintiff's plans for this case?  This does not

7  appear to be a matter that's well suited to a trial.

8  What do you hope to achieve?

9         MR. CLARK:  Well --

10        THE COURT:  No, no, Mr. Clark, I'm asking

11  Ms. Lively this.

12        MR. CLARK:  I'm sorry, I apologize.

13        THE COURT:  What are the bank's plans for the

14  case?

15        MS. LIVELY:  Your Honor, we'd like two things.

16  One, we have broached the subject of mediation with

17  Mr. Clark.  And, in fact, have -- if he will -- if he

18  finds a mediator, we've agreed to pay all costs for a

19  third-party mediator, whether that be a private mediator

20  that is somebody suitable for mediation or whether it's

21  something that the court does in order to try and

22  resolve that.  And my understanding is Mr. Clark doesn't

23  think a third party is something he needs.  So we

24  would -- you know, we would be willing to talk to

25  Mr. Clark about that, but we do feel that a third party

EXHIBIT 1 Page 48 of 90

8

```
 1   would be necessary in order to do that.

 2          Beyond that, we'd like to move for a permanent

 3   injunction.  However, we need a judgment on the merits

 4   to do that, so we'd like a summary judgment deadline so

 5   that we can file for summary judgment and then move --

 6   you know, if that were to be granted, then move for a

 7   permanent injunction.

 8          THE COURT:  I'll give the parties 30 days to

 9   file dispositive motions.

10          MR. CLARK:  Okay.  And so what I need to do is

11   get the motions to you.  My motion, you know, would be,

12   number one, to resurrect my other motions, which I don't

13   think were really heard, and start going through the

14   evidence that I submitted to the court that was sealed.

15   In other words, I do believe that there is trial

16   because -- I'm going to put it all in a motion form, but

17   a lot of it's already in there, don't you guys see?  A

18   lot of it's already been submitted, okay?

19          Now, Ms. Lively, with regard to mediation, my

20   understanding of mediation, that as soon as I agree to

21   that, then I give up all these rights.  In other words,

22   well, it's like you kind of don't have any rights,

23   otherwise once you sign up for the mediation.

24   Furthermore, the way I look at it, a lot of this

25   material is sort of banking -- you know, it's
```

EXHIBIT 1 Page 49 of 90

9

1    proprietary.

2           THE COURT:  Let me --

3           MR. CLARK:  So I can't go over that --

4           THE COURT:  Mr. Clark, let me help you on

5    mediation, all right?  Mediation is something that

6    people come together and someone helps them try to find

7    a solution they all can agree on.  It's not that it is

8    imposed on them.  They agree to meet.  And the third

9    party tries to help find common ground.  And so it's a

10   way of settling a matter.  You don't give up other

11   rights by going to mediation.  It's a way of trying to

12   resolve something short of the courtroom where everyone

13   agrees on the end result.  I think that's what's being

14   proposed here.

15          MS. LIVELY:  That is correct, Your Honor.  We

16   wouldn't expect Mr. Clark to give up any rights unless

17   during the mediation there was, you know, a settlement

18   reached, and certainly not by going to the mediation

19   itself.

20          MR. CLARK:  Okay.  I need to -- see, here's the

21   thing, okay, I need everybody to understand that, you

22   know, that as hard as I try to act brave, I'm not that

23   brave.  Okay?  You know, as hard as I try to act mean,

24   I'm not mean.  Okay?  I try hard to withstand it, and I

25   can't stand it.  I mean, they've hit me so hard, and the

EXHIBIT 1 Page 50 of 90

10

```
 1  family court is what kills me.  I can't deal with that.
 2  That's bizarre.  And I just twist in the wind.  It's
 3  something that you guys don't understand, the emotional
 4  and the physical effects of.
 5          THE COURT:  All right.  What I'm going --
 6          MR. CLARK:  And it's caused a great
 7  defensibility, it's caused --
 8          THE COURT:  Mr. Clark?
 9          MR. CLARK:  -- a lack of ability to deal with
10  this correctly.
11          THE COURT:  Mr. Clark?
12          MR. CLARK:  Yes, sir.  Yes, Your Honor.
13          THE COURT:  I'm going to give each of you two
14  weeks to suggest a mediator to me in writing.
15          MR. CLARK:  Okay.
16          THE COURT:  And I'll take a look at that and
17  I'll decide on our future situation of this case, all
18  right?
19          MR. CLARK:  Yeah.  That's what I'm thinking, if
20  you are the judge, right, are you Judge Hogan on the
21  phone with me here?
22          THE COURT:  Yes, sir.  And there is a chance --
23          MR. CLARK:  I want to put it in your hands.
24  Whatever, Judge, it's like I told you, you tell me to go
25  into the third and I'll go into the third.  You
```

EXHIBIT 1 Page 51 of 90

11

```
 1   understand?  Whatever you tell me, I do.  It's in your

 2   hands.

 3          THE COURT:  Well --

 4          MR. CLARK:  That's what I'm saying, it's in

 5   your hands.  You're like my father and my mother in that

 6   way, it's in your hands.  I can't deal with it.  You got

 7   it all.  I don't believe in having stuff spewed all over

 8   and everything.  I just want things done whatever,

 9   fastest way.  If you know a good mediator, just maybe

10   recommend, I'll look in the phone book, how about that?

11   I'll want it to be okay with Ms. Lively, too, okay?

12          THE COURT:  All right.  And by the way I'm --

13          MR. CLARK:  I don't want no problems.

14          THE COURT:  I'm going to take a look at who you

15   suggest.  I might do it myself.  I'm a pretty good

16   mediator myself.

17          MR. CLARK:  Yes, sir.  And, again, I am the

18   nicest person but I kind of got tweaked, you understand?

19   And other people do weird things and I try to just show

20   people in this very private but sort of not private way,

21   we can't have a society like this.  We have to --

22          THE COURT:  Mr. Clark.

23          MR. CLARK:  -- let -- okay, yes, Your Honor,

24   I'm going to shut up, okay.

25          THE COURT:  I've got a really busy calendar.  I
```

EXHIBIT 1 Page 52 of 90

12

```
 1   don't have any more today, but we'll talk after --
 2          MS. LIVELY:  Your Honor, I'm sorry, I
 3   understand you have to go.  Would it be possible to get
 4   a dispositive motion deadline after the mediation, like
 5   30 days following the mediation?
 6          THE COURT:  Yes, but let's go ahead right --
 7   yeah, okay --
 8          MR. CLARK:  Do I have to respond to the
 9   motion --
10          THE COURT:  Actually, I'll do that.  I'll take
11   off the 30-day situation.  That's fine with me.  We'll
12   do a mediation first, and either with someone you
13   suggest or I will do it.  I haven't decided.  All right?
14          MS. LIVELY:  Thank you, Your Honor.
15          MR. CLARK:  Yeah, whatever is good, Your Honor.
16   I just want it resolved.
17          THE COURT:  All right.  Thank you very much.
18   We're in recess.
19          (The proceedings were concluded at 9:47 a.m.)
20
21
22
23
24
25
```

EXHIBIT 1 Page 53 of 90

13

```
 1                        CERTIFICATE

 2          I, Deborah Wilhelm, Certified Shorthand Reporter

 3    for the State of Oregon, do hereby certify that I was

 4    present at and reported in machine shorthand the oral

 5    proceedings had in the above-entitled matter.  I hereby

 6    certify that the foregoing is a true and correct

 7    transcript, to the best of my skill and ability, dated

 8    this 8th day of February, 2016.

 9

10

11

12                          /s/ Deborah Wilhelm
                            _____
13                          Deborah Wilhelm, RPR
                            Certified Shorthand Reporter
14                          Certificate No. 00-0363

15

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT 1 Page 54 of 90

# FAX COVER SHEET

| | |
|---|---|
| TO | Christopher Mixon Ogletree- Nashville |
| COMPANY | |
| FAX NUMBER | 16152541908 |
| FROM | Andrew Clark |
| DATE | 2020-04-27 19:05:30 GMT |
| RE | 20-00253  Filed 4.27.20 |

## COVER MESSAGE

David Campbell, Ellen Rosenblum, Alex Gardner, Amber Hollister, Barry Davis, Ben Miller, Ben Gutman, Bruce Newton, C. Matthew Keen, Christian Rowley, Christopher Mixon, David P.R. Symes, Erik Hasselman, Leah Lively, Peter Urias

From Andy Clark  541.510.3915

EXHIBIT 1 Page 55 of 90

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
### Eugene, Oregon Division

Andrew Clark, Plaintiff
3270 Stoney Ridge Rd.
Eugene, OR 97405   541.510.3915
OperationSunriseLaw@gmail.com

Wells Fargo and Company
420 Montgomery St. San Francisco, CA 94163
as Voluntary or Mandatory
Intervenor for Plaintiff

**vs.** Defendants:

Wells Fargo Bank, et al

**Civil Complaint Case: 6.cv-20-253-aa**

Reply to April 9, 2020 Response by Mr. Pollino

Objection to Mr. Pollino's Motion for Protective Order.

April 27, 2020

### Objection to Motion for Protective Order and
### Reply to Mr. Pollino and Client's April 9, 2020 Response
#### This Part of the Reply Applies to All/Most Defendants

Attached is an email to Pam Holsinger, AUSA-DOJ Portland dated April 23, 2020. It summarizes now-obvious truth about Ogletree Deakins, Leah Lively, David PR Symes, and Steven Seymour et al. Their 'Motion for Protective Order' is totally disingenuous and must be denied by the Court. It represents perjury and further "intimidation of a Federal Witness" typical of their past obstructive conduct in this court and elsewhere. Their response only acts to strengthen the case against them.

Defendants: the reason for bringing DOJ (etc.) in on this is two-fold:

1) As described in my complaint - in late-2013 local FBI agent Ken Jamison told me to use the courts for a "civil compromise" of crimes I alleged were committed against me. About a month ago, I was informed that "federal witness tampering" is a crime against the legal system and I lack legal right to engage in "civil compromise" around it. I corrected that oversight using Docket 56 and by bringing United States attorneys in to "sprinkle holy water" on our upcoming ADR activities (gentle hint :)

Case 20-00253  Clark vs. Wells Fargo et al  Reply to Mr. Pollino's Clients  1 of 5

EXHIBIT 1 Page 56 of 90

2) I suspected a problem <u>within the court</u> in the way my motions were denied causing all the facts and evidence to be totally bypassed without adjudication. That is best seen in the PACER record of case 13-01103. A dozen or so Motions of Adjudicative Fact were placed into the court along with reasonable evidence. The PACER record of the case and the appeal shows how all of them were bypassed as a batch without even referencing their title or purpose in all the courts. When I saw indications of it happening here… I reported it.

I see no evidence that anyone at Wells Fargo is aware of the actual details of this situation. That only makes it worse; it does not excuse them. All indications are that the involved attorneys do whatever they want in the name of Wells Fargo...which pays the bill endlessly without ever being aware of why they are in court. As necessary, I will input another motion later for Wells Fargo and Company to intervene on mandatory basis.

### This Part of the Reply Applies Mostly to the April 9, 2020 Pleadings of Mr. Pollino et al.

My complaint accurately describes and documents every issue that Attorney Pollino raises in defense of his clients in his April 9 filing.. I was compelled to report an ethics violation against Mr. Pollino with the State Bar and other authorities. He lied to the court with his LR-7 filing claiming we conferred when in fact we did not as demonstrated with his email. Docket 56 is a formal Federal Crime Report proving Federal Witness Tampering by Wells Fargo/Ogletree Deakins. It is now obvious to all why Ogletree Deakins et al committed the series of RICO crimes against me and did so much to make it difficult to detect and report to others.

Mr. Pollino is incorrect regarding Wells Fargo and Company (WFC) as intervenor in this case involving its Bank. My complaint explains how the proven violent tampering concurrent with the Department of Labor Sarbanes-Oxley Investigation (Docket 56) criminally implicates WFC management in violations of 18 USC 1519. They would want to avoid that. My complaint frequently accuses Ogletree Deakins and Seyfarth Shaw of violating the WFC external attorney engagement policy. My complaint frequently references how my 'reporting' is per WFC training and policy. They would want to correct deficiencies and shortcomings in relationships with their agents.

This lawsuit gives WFC the opportunity to investigate and correct the situation to avoid criminal culpability and avoid being joined as a defendant (or separately sued). Anti-trust laws give a parent company an obligation to control actions of their subsidiaries. That is why I expect (demand) a response regarding intervenor from WFC personnel. <u>Failure to respond proves the 18 USC 1519</u>

EXHIBIT 1 Page 57 of 90

criminal violation against their Responsible Corporate Officers. It proves that WFC has a retaliatory and non-working internal reporting system in criminal violation of Sarbanes-Oxley and subjects their responsible corporate officers to federal criminal charges.

My April 20 (partial) reply to Defendants addressed many of their concerns such as FRCP 12(b)(6) and statute of limitations. What I wrote is Truth. What they wrote is lies to conceal their crime. It is perjury and just more obstruction of justice...which is the ongoing RICO crime. No court has looked at any facts or evidence in this case. Tolling begins when obstruction ends.

A special note regarding Mr. Pollino's attempted use of FRCP 26(c) as a basis for action by the court. FRCP are "rules". You don't reference "rules" as a reason to continue committing and concealing major federal felonies such as the underlying Hobbs Act violation. The stalking conviction to which Mr. Pollino refers is fully evidenced in my complaint as false arrest and entirely manufactured crime...a particularly odious RICO crime. that constitutes a violation of the Hobbs Act, 18 USC 1951. There was no stalking and there was no stalking protection order. It was the result of defendants such as then-prosecutor Erik Hasselman being unduly influenced as their own letters in the exhibits show and inputting fraudulent data into local justice systems. The stipulated agreement is an exhibit in my complaint which explains it is ar Hobbs Act Violation as it awards third party benefits under color of official right and under life-threatening duress.

Ogletree Deakins started their work against me while I was still employed. They were the ones doing the May 2011 "special investigation" of me. I discovered a records request made almost two months before terminations. It was from a staff member of Ogletree Deakins in Portland, OR almost two months prior to termination. I assert that is possible evidence of an unusual form of labor racketeering: using their client's workforce as a Chicken-Ranching Operation to set up future legal "work" aka more ways to bill out big fees. I have not even touched upon the SOX investigation results and how Docket 78 in 11-06248 was used to gain summary judgment.

### Outside my Scope Due to Lack of Clear Standing

Ogletree Deakins is almost certainly not the only ones using illegal and coercive means to accomplish pecuniary objectives. It appears the much of the profession called "Employment Law" is designed install policy in the workplace that results in later legal fee opportunities for themselves or others. Whatever they claim their intentions are, it goes without saying that "getting paid" is at the top of their

Case 20-00253  Clark vs. Wells Fargo et al  Reply to Mr. Pollino's Clients  3 of 5

EXHIBIT 1 Page 58 of 90

list.  It appears that much of the entire legal industry is designed to install gigantic laws such as Family Act, Sarbanes-Oxley, Obamacare, or Dodd-Frank which  primarily pay hoards of attorneys; any person can download the .pdf of those laws and see that the TITLE has little-to-nothing to do with the content.  Among the most odd is the endless, massive spending in the medical industry on "patient privacy" as again demonstrated in the actual title of Obamacare.

Nobody seems to actually care about  "patient privacy".  Almost nobody reads the forms and they have to be signed in order to get service.  Most people either can't or don't hide extreme details of each and every possible medical problem  from others.  Among the many violations I reported at Lane County Jail was how, on a pre-trial basis, I was forced to provide the Lane County Jail with a complete record of my prescriptions.  That is one small detail in an ocean of bigger fish to fry in my case involving Federal Witness Tampering and a major federally-insured bank.


Signed and Sworn to as Truth

   /s Andrew Clark

Plaintiff Pro Se Andrew Clark  3270 Stoney Ridge Rd.  Eugene, Oregon 97405

541.510.3915  www.RisePatriot.com (police/court av)  www.WellsFargoWitz.com (family court av)

Case 20-00253  Clark vs. Wells Fargo et al  Reply to Mr. Pollino's Clients  4 of 5

EXHIBIT 1 Page 59 of 90

4/26/2020                                    Gmail - Let's Talk Progress. We are VICTIMS. Bar Association and the Courts was

 Gmail

Operation SunriseLAW <operationsunriselaw@gmail.com>

## Let's Talk Progress. We are VICTIMS. Bar Association and the Courts was
1 message

**Operation SunriseLAW** <operationsunriselaw@gmail.com>                                    Thu, Apr 23, 2020 at 12:21 PM
To: Nik Chourey <nchourey@osbar.org>, pamala.holsinger@usdoj.gov

Nik.... I am sending this only to you and Pamala Holsinger, AUSA. Bar Association and the Courts were 'punked' by Wells Fargo/Ogletree Deakins elaborately constructed lies that represent their nationwide business model. I am pretty sure you (and everyone else) is suddenly horrified when you saw that simple proof of federal witness tampering (docket 56). That is why I think we should find some way to settle our situation in ADR... I am certain my case is both right and righteous. I have been at this way longer than any citizen should have to. I am a victim in need of relief. I honestly think you folks should reach out with healing hands.

Here is the problem and it even affects my response due them pursuant to their April 9 response filing. All my obligations continue as this drags on. Also.... Judge Michael Hogan will most likely show absolutely no mercy for Leah Lively, Ogletree Deakins, and Steven Seymour. He trusted her as you can see in the other attachment (the motion 78 transcript). Think of that crime:  lying to a federal judge about a bank emergency in order to use the court as a method of concealing their highly physical federal witness tampering....and then billing it out to the bank.

The police report in Docket 56 is dated July 11, 2011 and it clearly implicates Wells Fargo and Ogletree in:

1. Corruption of our local police in a very demeaning, insulting way
2. Corruption of FBI Processes
3. Systematically lying to Judge Hogan to get him to accept the SLAPP on emergency basis.
4. Use of official system to self-generate a large cost bill against me (dkt 137 in 11.06248)
5. The worst possible RICO crimes against me. They are actually worse than simple murder in this corporate case. That is why we do Clayton/Sherman.
6. Lying to Eric Hasselman, our then-major violent crimes prosecutor to the extent it constitutes a Hobbs Act violation. Steven Seymour knew exactly what he was doing...he may not have been told WHY..
7. Viciously concealing it in all courts including this one with obvious lies and perjury that represent just another act of RICO in their continuing crime spree.
8. Fraudulently using (or causing others to use) official systems against the law and the evidence. Worst is the possible fraudulent use of NIBRS detailed in my complaint due to infinite downstream effects of entry into that database...they would have told Judge Hogan I was considered a violent threat and the judge would have trusted the NCIC-Nibrs record. Who could imagine Wells Fargo and Ogletree Deakins doing stuff like that?

The flagrant, devious nature of the crimes by Leah Lively, David PR Symes, Ogletree Deakins, and Steven Seymour are the worst crimes ever committed by a group of attorneys... ever. Nothing like it has ever been seen in a federally insured banking situation. It is the very pinnacle of crime. It is just like Murdering the Justice System. And...they do it in a fashion to make it all sound CRAZY.

Anyway.... imagine it was YOU they did all that really nasty to you.... you would want to put it in Higher Hands because the situation is worser than worst, settle, and move on. I should not have to worry about this every day. Thanks from Andy Clark 541.510.3915

---

**2 attachments**

📄 **Case 20-000253 Reply-Copy.pdf**
    319K

📄 **motionfact1_optimize.pdf**
    2202K

Case 20-00253   Clark vs. Wells Fargo et al   Reply to Mr. Pollino's Clients    5 of 5

https://mail.google.com/mail/u/0?ik=3e05261087&view=pt&search=all&permthid=thread-a%3Ar1057693125301905327&simpl=msg-a%3Ar105273567...    1/1

EXHIBIT 1 Page 60 of 90

# FAX COVER SHEET

| | |
|---|---|
| TO | C. Matthew Keen Ogletree-Raleigh |
| COMPANY | |
| FAX NUMBER | 19197839412 |
| FROM | Andrew Clark |
| DATE | 2020-04-27 19:05:27 GMT |
| RE | 20-00253  Filed 4.27.20 |

## COVER MESSAGE

David Campbell, Ellen Rosenblum, Alex Gardner, Amber Hollister, Barry Davis, Ben Miller, Ben Gutman, Bruce Newton, C. Matthew Keen, Christian Rowley, Christopher Mixon, David P.R. Symes, Erik Hasselman, Leah Lively, Peter Urias

From Andy Clark  541.510.3915

EXHIBIT 1 Page 61 of 90

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
### Eugene, Oregon Division

Andrew Clark, Plaintiff
3270 Stoney Ridge Rd.
Eugene, OR 97405   541.510.3915
OperationSunriseLaw@gmail.com

**Civil Complaint Case: 6.cv-20-253-aa**

Wells Fargo and Company
420 Montgomery St. San Francisco, CA 94163
**as Voluntary or Mandatory
Intervenor for Plaintiff**

| |
|---|
| Reply to April 9, 2020 Response by Mr. Pollino |
| Objection to Mr. Pollino's Motion for Protective Order. |
| April 27, 2020 |

**vs.** Defendants:

Wells Fargo Bank, et al

### Objection to Motion for Protective Order and
### Reply to Mr. Pollino and Client's April 9, 2020 Response
#### This Part of the Reply Applies to All/Most Defendants

Attached is an email to Pam Holsinger, AUSA-DOJ Portland dated April 23, 2020. It summarizes now-obvious truth about Ogletree Deakins, Leah Lively, David PR Symes, and Steven Seymour et al. Their 'Motion for Protective Order' is totally disingenuous and must be denied by the Court. It represents perjury and further "intimidation of a Federal Witness" typical of their past obstructive conduct in this court and elsewhere. Their response only acts to strengthen the case against them.

Defendants: the reason for bringing DOJ (etc.) in on this is two-fold:

1) As described in my complaint - in late-2013 local FBI agent Ken Jamison told me to use the courts for a "civil compromise" of crimes I alleged were committed against me. About a month ago, I was informed that "federal witness tampering" is a crime against the legal system and I lack legal right to engage in "civil compromise" around it. I corrected that oversight using Docket 56 and by bringing United States attorneys in to "sprinkle holy water" on our upcoming ADR activities (gentle hint :)

EXHIBIT 1 Page 62 of 90

2) I suspected a problem <u>within the court</u> in the way my motions were denied causing all the facts and evidence to be totally bypassed without adjudication.  That is best seen in the PACER record of case 13-01103.  A dozen or so Motions of Adjudicative Fact  were placed into the court along with reasonable evidence.  The PACER record of the case and the appeal shows how all of them were bypassed as a batch without even referencing their title or purpose in all the courts.    When I saw indications of it happening here… I reported it.

I see no evidence that anyone at Wells Fargo is aware of the actual details of this situation.  That only makes it worse;  it does not excuse them.  All indications are that the involved attorneys do whatever they want in the name of Wells Fargo...which pays the bill endlessly without ever being aware of why they are in court.  As necessary, I will input another motion  later for Wells Fargo and Company to intervene on mandatory basis.

### This Part of the Reply Applies Mostly to the April 9, 2020 Pleadings of Mr. Pollino et al.

My complaint accurately describes and documents every issue that Attorney Pollino raises in defense of his clients in his April 9 filing..  I was compelled to report an ethics violation against Mr. Pollino with the State Bar and other authorities.  He lied to the court with his LR-7 filing claiming we conferred when in fact we did not as demonstrated with his email.    Docket 56 is a formal Federal Crime Report proving Federal Witness Tampering by Wells Fargo/Ogletree Deakins.  It is now obvious to all why Ogletree Deakins et al committed the series of RICO crimes against me and did so much to make it difficult to detect and report to others.

Mr. Pollino is incorrect regarding Wells Fargo and Company (WFC) as intervenor in this case involving its Bank.   My complaint  explains how the proven violent tampering concurrent with the Department of Labor Sarbanes-Oxley Investigation (Docket 56) criminally implicates WFC management  in violations of 18 USC 1519.  They would want to avoid that.   My complaint frequently accuses Ogletree Deakins and Seyfarth Shaw of violating the WFC external attorney engagement policy.  My complaint frequently references how my 'reporting' is per WFC training and policy.  They would want to correct  deficiencies and shortcomings in relationships with their agents.

This lawsuit gives WFC the opportunity to investigate and correct the situation to avoid criminal culpability and avoid being joined as a defendant (or separately sued).  Anti-trust laws  give a parent company an obligation to control actions of their subsidiaries.  That is why I expect (demand) a response regarding intervenor from WFC personnel.  <u>Failure to respond proves the 18 USC 1519</u>

Case 20-00253  Clark vs. Wells Fargo et al  Reply to Mr. Pollino's Clients  2 of 5

EXHIBIT 1 Page 63 of 90

criminal violation against their Responsible Corporate Officers. It proves that WFC has a retaliatory and non-working internal reporting system in criminal violation of Sarbanes-Oxley and subjects their responsible corporate officers to federal criminal charges.

My April 20 (partial) reply to Defendants addressed many of their concerns such as FRCP 12(b)(6) and statute of limitations. What I wrote is Truth. What they wrote is lies to conceal their crime. It is perjury and just more obstruction of justice...which is the ongoing RICO crime. No court has looked at any facts or evidence in this case. Tolling begins when obstruction ends.

A special note regarding Mr. Pollino's attempted use of FRCP 26(c) as a basis for action by the court. FRCP are "rules". You don't reference "rules" as a reason to continue committing and concealing major federal felonies such as the underlying Hobbs Act violation. The stalking conviction to which Mr. Pollino refers is fully evidenced in my complaint as false arrest and entirely manufactured crime...a particularly odious RICO crime. that constitutes a violation of the Hobbs Act, 18 USC 1951. There was no stalking and there was no stalking protection order. It was the result of defendants such as then-prosecutor Erik Hasselman being unduly influenced as their own letters in the exhibits show and inputting fraudulent data into local justice systems. The stipulated agreement is an exhibit in my complaint which explains it is an Hobbs Act Violation as it awards third party benefits under color of official right and under life-threatening duress.

Ogletree Deakins started their work against me while I was still employed. They were the ones doing the May 2011 "special investigation" of me. I discovered a records request made almost two months before terminations. It was from a staff member of Ogletree Deakins in Portland, OR almost two months prior to termination. I assert that is possible evidence of an unusual form of labor racketeering: using their client's workforce as a Chicken-Ranching Operation to set up future legal "work" aka more ways to bill out big fees. I have not even touched upon the SOX investigation results and how Docket 78 in 11-06248 was used to gain summary judgment.

### Outside my Scope Due to Lack of Clear Standing

Ogletree Deakins is almost certainly not the only ones using illegal and coercive means to accomplish pecuniary objectives. It appears the much of the profession called "Employment Law" is designed install policy in the workplace that results in later legal fee opportunities for themselves or others. Whatever they claim their intentions are, it goes without saying that "getting paid" is at the top of their

EXHIBIT 1 Page 64 of 90

list.   It appears that much of the entire legal industry is designed to install gigantic laws such as Family Act, Sarbanes-Oxley, Obamacare, or Dodd-Frank which  primarily pay hoards of attorneys; any person can download the .pdf of those laws and see that the TITLE has little-to-nothing to do with the content.  Among the most odd is the endless, massive spending in the medical industry on "patient privacy" as again demonstrated in the actual title of Obamacare.

Nobody seems to actually care about  "patient privacy".  Almost nobody reads the forms and they have to be signed in order to get service.  Most people either can't or don't hide extreme details of each and every possible medical problem  from others.  Among the many violations I reported at Lane County Jail was how, on a pre-trial basis, I was forced to provide the Lane County Jail with a complete record of my prescriptions.  That is one small detail in an ocean of bigger fish to fry in my case involving Federal Witness Tampering and a major federally-insured bank.


Signed and Sworn to as Truth

   /s Andrew Clark

Plaintiff Pro Se Andrew Clark  3270 Stoney Ridge Rd.  Eugene, Oregon 97405

541.510.3915   www.RisePatriot.com (police/court av)  www.WellsFargoWitz.com (family court av)

EXHIBIT 1 Page 65 of 90

4/26/2020    Gmail - Let's Talk Progress. We are VICTIMS. Bar Association and the Courts was

 Gmail

Operation SunriseLAW <operationsunriselaw@gmail.com>

## Let's Talk Progress. We are VICTIMS. Bar Association and the Courts was
1 message

**Operation SunriseLAW** <operationsunriselaw@gmail.com>    Thu, Apr 23, 2020 at 12:21 PM
To: Nik Chourey <nchourey@osbar.org>, pamala.holsinger@usdoj.gov

Nik.... I am sending this only to you and Pamala Holsinger, AUSA. Bar Association and the Courts were 'punked' by Wells Fargo/Ogletree Deakins elaborately constructed lies that represent their nationwide business model. I am pretty sure you (and everyone else) is suddenly horrified when they saw that simple proof of federal witness tampering (docket 56). That is why I think we should find some way to settle our situation in ADR... I am certain my case is both right and righteous. I have been at this way longer than any citizen should have to. I am a victim in need of relief. I honestly think you folks should reach out with healing hands.

Here is the problem and it even affects my response due them pursuant to their April 9 response filing. All my obligations continue as this drags on. Also.... Judge Michael Hogan will most likely show absolutely no mercy for Leah Lively, Ogletree Deakins, and Steven Seymour. He trusted her as you can see in the other attachment (the motion 78 transcript). Think of that crime: lying to a federal judge about a bank emergency in order to use the court as a method of concealing their highly physical federal witness tampering....and then billing it out to the bank.

The police report in Docket 56 is dated July 11, 2011 and it clearly implicates Wells Fargo and Ogletree in:

1. Corruption of our local police in a very demeaning, insulting way
2. Corruption of FBI Processes
3. Systematically lying to Judge Hogan to get him to accept the SLAPP on emergency basis.
4. Use of official system to self-generate a large cost bill against me (dkt 137 in 11.06248)
5. The worst possible RICO crimes against me. They are actually worse than simple murder in this corporate case. That is why we do Clayton/Sherman.
6. Lying to Eric Hasselman, our then-major violent crimes prosecutor to the extent it constitutes a Hobbs Act violation. Steven Seymour knew exactly what he was doing...he may not have been told WHY..
7. Viciously concealing it in all courts including this one with obvious lies and perjury that represent just another act of RICO in their continuing crime spree.
8. Fraudulently using (or causing others to use) official systems against the law and the evidence. Worst is the possible fraudulent use of NIBRS detailed in my complaint due to infinite downstream effects of entry into that database...they would have told Judge Hogan I was considered a violent threat and the judge would have trusted the NCIC-Nibrs record. Who could imagine Wells Fargo and Ogletree Deakins doing stuff like that?

The flagrant, devious nature of the crimes by Leah Lively, David PR Symes, Ogletree Deakins, and Steven Seymour are the worst crimes ever committed by a group of attorneys... ever. Nothing like it has ever been seen in a federally insured banking situation. It is the very pinnacle of crime. It is just like Murdering the Justice System. And...they do it in a fashion to make it all sound CRAZY.

Anyway.... imagine it was YOU they did all that really nasty to you.... you would want to put it in Higher Hands because the situation is worser than worst, settle, and move on. I should not have to worry about this every day. Thanks from Andy Clark 541.510.3915

2 attachments

📄 **Case 20-000253 Reply-Copy.pdf**
319K

📄 **motionfact1_optimize.pdf**
2202K

Case 20-00253  Clark vs. Wells Fargo et al  Reply to Mr. Pollino's Clients  5 of 5

| | |
|---|---|
| **From:** | John E. Pollino |
| **To:** | Elizabeth L. Polay; Kim E. Hoyt; Jade M. Bostwick |
| **Subject:** | FW: Reply filed yesterday to Mr. Pollino"s clients. It relates to all Defendants |
| **Date:** | Tuesday, April 28, 2020 8:43:28 AM |
| **Attachments:** | 2020oglereply.pdf |

**From:** Operation SunriseLAW <operationsunriselaw@gmail.com>
**Sent:** Tuesday, April 28, 2020 8:34 AM
**To:** John E. Pollino <jpollino@ghrlawyers.com>
**Subject:** Fwd: Reply filed yesterday to Mr. Pollino's clients. It relates to all Defendants

---------- Forwarded message ---------
From: **Operation SunriseLAW** <operationsunriselaw@gmail.com>
Date: Tue, Apr 28, 2020 at 8:33 AM
Subject: Reply filed yesterday to Mr. Pollino's clients. It relates to all Defendants
To: <bsime@pbswlaw.com>, Rowley, Christian <crowley@seyfarth.com>, David Jacobs <djacobs@luvaascobb.com>, <hgo@eugene-or.gov>, Spooner Jessica <Jessica.Spooner@doj.state.or.us>, <sebastian.tapia@co.lane.or.us>, Tom Spooner <tspooner@smapc.com>

We are all VICTIMS of what Wells Fargo and Mr. Pollino's clients perpetrated upon our community. They are a bad case of Anal Worms who bleed their clients from the bottom up.  They are also the ACTIVE RICO participants.

You (or your clients) are being sued for vicarious participation in a RICO enterprise that engaged in violent tampering of a federal witness.  For most Defendants, all you need do is "the right thing" now because you now reasonably know you acted against me based on LIES of your fellow attorneys. *So.... let's talk ADR !!!*

**Time to 'Stop Their Concealing and Start Our Healing  !!!**

_____

EXHIBIT 1 Page 67 of 90



**Attachments:**    theybbad.pdf
image001.jpg
image002.png

**From:** ANDY CLARK [mailto:mir99@comcast.net]
**Sent:** Wednesday, April 29, 2020 6:51 AM
**To:** matt.keen@ogletree.com; leahlively@dwt.com; dsymes@littler.com;
christopher.mixon@ogletree.com; judge@hoganmediation.net; osp.forensics@state.or.us;
Erik.Hasselman@lanecountyor.gov; Steve Seymour (x102); benjamin.gutman@doj.state.or.us;
barry@barrydavislaw.com; David.Campbell@lewisbrisbois.com; info@bromleynewton.com;

EXHIBIT 1 Page 68 of 90

ellen.f.rosenblum@doj.state.or.us; sebastian.tapia@co.lane.or.us; ben.j.miller@ci.eugene.or.us; vanessa.a.nordyke@doj.state.or.us; boardcommunications@wellsfargo.com
**Subject:** Public would Panic

Attached is a cornucopia of news articles and even a very unusual lawsuit filed by Ogletree Deakins in Maricopa County, AZ in the "Sheriff Joe" case. Look what they do to people and government agencies, it is beyond the pale.  Imagine the public panic when they learn employment attorneys can have them taken in chains from their homes without valid warrants by simply calling in bogus police reports.  They got caught in AZ, time to catch them here. This was in the same general trimeframe as when they had me first false-arrested as described in detail in my Complaint 20-000253.   Mr. Pollino and his clients are covering up hard, cold CRIME.  Let's stop them.

False arrest, AKA "SWATTING" is a large problem because it is so easy to "SWAT" someone and as you can see, it is nearly impossible to unwind the effects of being SWATTED.

As attorneys, you need to STOP supporting Ogletree Deakins here in Oregon.  They are a ship of THIEVES (eg Docket 137 in 11-06248...I will not pay that as it is the result of CRIME... I will sue endlessly until they correct their damage to us all.  We need to 'out' them and MAKE THEM PAY FOR WHAT THEY ARE DOING TO US.  STOP CONCEALING FOR OGLETREE DEAKINS.  START HEALING ME.. THEIR VICTIM.

Thank you from Andy Clark   541.510.3915

EXHIBIT 1 Page 69 of 90



**From:** ANDY CLARK <mir99@comcast.net>

EXHIBIT 1 Page 70 of 90

**Sent:** Wednesday, April 29, 2020 6:51 AM
**To:** matt.keen@ogletree.com; leahlively@dwt.com; Symes, David P.R.
<dsymes@littler.com>; christopher.mixon@ogletree.com; judge@hoganmediation.net;
osp.forensics@state.or.us; Erik.Hasselman@lanecountyor.gov;
SWS@SamuelsLaw.com; benjamin.gutman@doj.state.or.us; barry@barrydavislaw.com;
David.Campbell@lewisbrisbois.com; info@bromleynewton.com;
ellen.f.rosenblum@doj.state.or.us; sebastian.tapia@co.lane.or.us;
ben.j.miller@ci.eugene.or.us; vanessa.a.nordyke@doj.state.or.us;
boardcommunications@wellsfargo.com
**Subject:** Public would Panic

**[EXTERNAL E-MAIL]**


Attached is a cornucopia of news articles and even a very unusual lawsuit filed by
Ogletree Deakins in Maricopa County, AZ in the "Sheriff Joe" case. Look what
they do to people and government agencies, it is beyond the pale.  Imagine the
public panic when they learn employment attorneys can have them taken in chains
from their homes without valid warrants by simply calling in bogus police
reports.  They got caught in AZ, time to catch them here.  This was in the same
general trimeframe as when they had me first false-arrested as described in detail
in my Complaint 20-000253.    Mr. Pollino and his clients are covering up hard,
cold CRIME.  Let's stop them.

False arrest, AKA "SWATTING" is a large problem because it is so easy to
"SWAT" someone and as you can see, it is nearly impossible to unwind the
effects of being SWATTED.

As attorneys, you need to STOP supporting Ogletree Deakins here in Oregon.
They are a ship of THIEVES (eg Docket 137 in 11-06248...I will not pay that as it
is the result of CRIME... I will sue endlessly until they correct their damage to us
all.  We need to 'out' them and MAKE THEM PAY FOR WHAT THEY ARE
DOING TO US.  STOP CONCEALING FOR OGLETREE DEAKINS.  START
HEALING ME.. THEIR VICTIM.

Thank you from Andy Clark   541.510.3915

--------------------------
This email may contain confidential and privileged material for the sole use of the
intended recipient(s). Any review, use, distribution or disclosure by others is
strictly prohibited. If you are not the intended recipient (or authorized to receive
for the recipient), please contact the sender by reply email and delete all copies of
this message.

Littler Mendelson, P.C. is part of the international legal practice Littler Global,
which operates worldwide through a number of separate legal entities. Please visit
www.littler.com for more information.

EXHIBIT 1 Page 71 of 90

--------------------------

This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

Littler Mendelson, P.C. is part of the international legal practice Littler Global, which operates worldwide through a number of separate legal entities. Please visit www.littler.com for more information.

EXHIBIT 1 Page 72 of 90

**Date:**          Wednesday, April 29, 2020 8:55:39 AM
**Attachments:**   theybbad.pdf

**From:** ANDY CLARK <mir99@comcast.net>
**Sent:** Wednesday, April 29, 2020 6:47 AM
**To:** John E. Pollino <jpollino@ghrlawyers.com>; bsime@pbswlaw.com; crowley@seyfarth.com; djacobs@luvaascobb.com; hgo@eugene-or.gov; Jessica.Spooner@doj.state.or.us; sebastian.tapia@co.lane.or.us; tspooner@smapc.com; ahollister@osbar.org; nchourey@osbar.org; pamala.darnell@co.lane.or.us; Jared.Hager@usdoj.gov; pamala.holsinger@usdoj.gov; bill.williams@usdoj.gov
**Subject:** Public Would Panic

Attached is a cornucopia of news articles and even a very unusual lawsuit filed by Ogletree Deakins in Maricopa County, AZ in the "Sheriff Joe" case. Look what they do to people and government agencies, it is beyond the pale.  Imagine the public panic when they learn employment attorneys can have them taken in chains from their homes without valid warrants by simply calling in bogus police reports.  They got caught in AZ, time to catch them here.  This was in the same general trimeframe as when they had me first false-arrested as described in detail in my Complaint 20-000253.   Mr. Pollino and his clients are covering up hard, cold CRIME.  Let's stop them.

False arrest, AKA "SWATTING" is a large problem because it is so easy to "SWAT" someone and as you can see, it is nearly impossible to unwind the effects of being SWATTED.

As attorneys, you need to STOP supporting Ogletree Deakins here in Oregon.  They are a ship of THIEVES (eg Docket 137 in 11-06248...I will not pay that as it is the result of CRIME.  We need to 'out' them and MAKE THEM PAY FOR WHAT THEY ARE DOING TO US, THE ABJECT CRIMINAL LIES THEY TELL IN COURTS.

Thank you from Andy Clark   541.510.3915

EXHIBIT 1 Page 73 of 90

# Sheriff Joe Arpaio's Favorite Law Firm, Ogletree Deakins, Cost Taxpayers $2.4 Million -- in Just Two Years

**By Sarah Fenske**
Published Wed., May 26 2010 at 8:00 AM



**L. Eric Dowell, rainmaker**

The battle for control of Maricopa County -- pitting Sheriff Joe Arpaio and County Attorney Andrew Thomas against the Board of Supervisors, judges, and county administrators -- has been costly to both taxpayers and the parties involved.

But it's been a major boon to one local law firm.

Ogletree Deakins, a relatively obscure firm specializing in employment law, became Arpaio and Thomas' go-to legal counsel just as the disputes were heating up. And, according to public records obtained by *New Times*, the firm has billed the county for a staggering $2.49 million since January 2009.

Most of the work had little to do with employment law -- and most of the firm's representation has been unsuccessful, legally speaking.

Ogletree Deakins has fought for the sheriff's right to take over the county's computer system. They tried to argue that the supervisors didn't have the right to sweep money from funds controlled by Thomas and Arpaio. They're currently pressing Arpaio's assertion that he shouldn't have to open his books to county auditors.

And, according to the billing records we looked at, it appears likely that Ogletree lawyers may have even been behind one of Arpaio/Thomas' biggest embarassments: the criminal charges they filed against the county's presiding criminal court judge, Gary Donahoe.

As *New Times* first reported earlier this month, prosecutors filed criminal charges against Donahoe without bothering to seek a grand jury indictment. They simply filed a direct complaint, and attached a "probable cause" statement that, almost word for word, matched a complaint that the sheriff's office had filed with the Arizona Commission on Judicial Conduct one week before. That complaint, detailing a conspiracy theorist's view of Judge Donahoe's conduct, was signed by Arpaio's chief deputy, David Hendershott.

It now appears that Hendershott had some help penning the letter.

According to its billing statements, Ogletree charged the county $27,310 for something titled "MCSO State Bar/Judicial." The first two invoices with that notation were submitted on December 1, 2009 --

EXHIBIT 1 Page 74 of 90

just one day after Hendershott filed "his" complaint with the judicial conduct commission.

So did an employment law specialist draft the document that became the basis for the criminal charges against the county's presiding criminal court judge? If nothing else, it would explain why the document drew guffaws from seasoned prosecutors. Ogletree's lawyers were likely in way over their heads. (And really, what was prosecutor Lisa Aubuchon thinking, merely regurgitating Ogletree's letter as a criminal complaint?)

According to the billing statements examined by *New Times*, Ogletree also advised Andrew Thomas on matters involving the State Bar. (That cost the taxpayers $18,929). And, they advised either Arpaio or Thomas -- the billings aren't clear -- about issues relating to the selection of a new county attorney. (That cost us *another* $12,762.)

Finally, Ogletree billed the county a staggering $1.2 million for something described only as "contract compliance." County Spokeswoman Cari Gerchick told *New Times* that county administrators have no idea what that means.

We contacted L. Eric Dowell, a shareholder at Ogletree Deakins and the sheriff's lawyer of choice, to ask about the "contract compliance" payments, but we hadn't heard back by press time. We'll post an update if we get an answer.

In the mean time, looking at the wasted $2.4 million and the unexplained $1.2 million and the tens of thousands of dollars for failed legal adventures -- well, we never thought we'd say this, but we actually miss Dennis Wilenchik. Yes, *New Times* disagreed with Wilenchik on just about everything. But Wilenchik handled some pretty tough cases for Arpaio, not just political crap that should have never made its way to a docket.

And Wilenchik, unlike the sheriff's new $2-million-counsel, actually knew how to win.

27

EXHIBIT 1 Page 75 of 90

# Andrew Thomas Hired Ogletree Deakins for Racketeering Suit, Grand Jury Investigation into Sheriff Joe Arpaio

**By Sarah Fenske**
Published Fri., May 28 2010 at 11:44 AM



As county attorney, Andrew Thomas hired Ogletree Deakins to defend the sheriff's office from a grand jury investigation.

You can file this one under "WTF??!?!"

Turns out Maricopa County Sheriff Joe Arpaio's favorite law firm, which specializes in employment law, was brought in to help with both the crappy racketeering lawsuit Arpaio and then-County Attorney Andrew Thomas filed against county officials last year -- and the federal grand jury now looking into Arpaio and Thomas as well.

And the taxpayers are footing the bill for Ogletree Deakins' involvement in both cases, records show.

Here's the deal.

In December 2009, County Attorney Thomas filed a racketeering lawsuit, accusing county officials, judges, and their lawyers of being part of a broadly defined "criminal enterprise." The suit drew consternation -- and even laughter -- from experienced lawyers, and Thomas withdrew it a few

*2 8*

months later, without proving a single one of its allegations.

Records obtained by *New Times* on Wednesday show that Thomas's office had a bit of help with the suit.

On December 21, three weeks after the suit was filed, Thomas hired the law firm <u>Ogletree Deakins</u> to assist with the lawsuit, records show.

And while that firm had become the favored private counselors of both Thomas and Sheriff Joe Arpaio, it specializes in employment law -- not rackeeteering statutes, which are incredibly complex.

The firm assisted with the racketeering suit from December 21 to January 6, according to records. That period coincides with a period of intense activity on the matter in question. After Thomas filed the initial lawsuit December 1, defense attorneys for the dozen named county officials quickly struck back with detailed -- and compelling -- arguments for its dismissal. Thomas' office ultimately filed an amended complaint January 14, attempting to restate its original claims and buy time.

But even that didn't do much to help the county attorney's case. Judge Murray Snow <u>rejected the amended complaint</u>, saying Thomas' office had missed a procedural deadline. Forced to defend the initial claim, and facing a strong possibility of outright dismissal, Thomas withdrew the suit.

In its letter confirming Ogletree's hire, the county attorney's office asked the firm to report to Rachel Alexander, the <u>deputy county attorney assigned to the case after the initial filing</u>. Which leaves us wondering: Is Alexander to blame for missing the deadline for the amended complaint? Or was it the fault of the handsomely paid lawyers at Ogletree?

One thing is clear: The firm wasn't taken off the case due to any unhappiness on the county attorney's part.

Just two days after the firm was taken off the RICO case, Thomas' office assigned it to help the sheriff's office deal with a potentially more explosive matter -- the grand jury investigation focused on Sheriff Joe Arpaio's abuse of power.

"As part of this advisory representation, your firm or any other advisory counsel you retain may be expected to accompany witnesses to the grand jury, handle requests for records, file pleadings, or participate in any other matter that represents the organizational interests of the MCSO," wrote Chief Assistant County Attorney Sally Wells.

Naturally, we find it funny that the sheriff/county attorney would retain an *employment law firm* for a criminal matter. But, more importantly, we have to wonder if the hiring was proper. After all, county policy says that the taxpayers will only hire legal counsel for employees who are witnesses to a grand jury -- not targets.

The sheriff's office is indisputably a target in this grand jury investigation.

Furthermore, in her letter, Wells told Ogletree to report to the sheriff's chief deputy, David Hendershott. Hendershott is believed to also be a person of interest or target of the investigation, not merely a "witness."

29

EXHIBIT 1 Page 77 of 90

So is the county paying for lawyers to advise Hendershott? What about Arpaio?

We simply don't know. But records show that Ogletree Deakins has been paid $2.4 million to represent Arpaio and Thomas from January 2009 to date.

We asked the spokesman for the new county attorney, Bill Fitzgerald, about all this. We asked if County Attorney Rick Romley -- an Arpaio opponent who's now replaced Thomas -- had concerns about these contracts, which his office is tasked with supervising.

Fitzgerald said the office had no comment at this time.

A spokeswoman for the sheriff's office, Lisa Allen, didn't return our call for comment.

EXHIBIT 1 Page 78 of 90



Goldman Sachs is committed to helping 10,000 Small Businesses create jobs and drive economic growth.

▶ LEARN MORE

💲 PROGRESS IS EVERYONE'S BUSINESS

October 29, 2013

# HUFF POST  POLITICS

---

Elise Foley
elise@huffingtonpost.com

# Sheriff Joe Arpaio Loses Appeals Court Ruling Allowing False Arrest Lawsuit

Posted: 08/29/2012 6:36 pm Updated: 08/29/2012 6:51 pm



Maricopa County Sheriff Joe Arpaio faces a false arrest lawsuit as a result of a federal appeals court ruling. (AP Photo/Ross D. Franklin)

Arizona Sheriff Joe Arpaio might want to get ready to spend more time in court defending himself.

The U.S. 9th Circuit Court of Appeals ruled Wednesday that two news executives for the *Phoenix New Times* can sue the Maricopa County sheriff's office for their 2007 arrests.

The men, newspaper co-owners Michael Lacey and Jim Larkin, were arrested at their homes in the middle of the night after their publication reported the sheriff's office planned to use a subpoena to figure out who was talking to journalists about Arpaio. Arpaio's allies drafted subpoenas that "demanded that the paper reveal its confidential sources as well as produce reporters' and editors' notebooks, memoranda, and documents" related to stories about Arpaio, according to the court ruling. The *New Times* refused, leading to misdemeanor charges against Lacey and Larkin of disclosing grand jury inner workings. The charges were dropped the next day.

The two executives attempted to sue Arpaio for $15 million in 2008, alleging that the sheriff's office falsely arrested them, violated their right to due process and targeted them for selective prosecution. A lower court dismissed that lawsuit, a ruling overturned by the federal appeals court.

"Sheriff Arpaio should have known that arresting someone at his home requires a warrant, unless there are exigent circumstances," the appeals court opinion said. "We cannot fathom what exigent circumstances compelled either arrest."

Arpaio spokeswoman Lisa Allen told Bloomberg that Arpaio is unable to comment because he is in Tampa for the Republican National Convention. "Upon his return, I'm certain he will review the court's decision," she said.

*New Times* editor-in-chief Rick Barrs applauded the court decision, telling HuffPost that Arpaio will now "have to answer for it in court."

"What Joe Arpaio spearheaded, in cahoots with since-disbarred, ex-County Attorney Andrew Thomas, was a travesty of justice," Barrs said.

The weekly paper, part of the Village Voice network, has reported extensively on Arpaio since the mid-1990s.

Arpaio already faces a lawsuit alleging racial profiling in his department by civil rights groups. The Department of Justice sued Arpaio's office in May, also based on claims of racial profiling.

**UPDATE: 6:45 p.m. --** Lacey, the newspaper co-owner, responded to the ruling with this statement:

*Sheriff Joe Arpaio's arrest and jailing of journalists is part of a pattern of trying to silence critics. It is an outrageous abuse of power. But he loves the publicity, even when it backfires. Arpaio relishes law enforcement by headline. Today he rounds up Mexicans. Tomorrow's target is anybody's guess.*

3 /

www.huffingtonpost.com/2012/08/29/sheriff-joe-arpaio-lawsuit_n_1841181.html?...

EXHIBIT 1 Page 79 of 90

October 18, 2013 |                                                                11:33 pm | 68°

## Valley & State

- Type Size: A A A
- Print

## Stapley files a claim vs. Arpaio, Thomas, alleging false arrest

- Most Popular

*by Yvonne Wingett - Mar. 20, 2010 12:00 AM*
*The Arizona Republic*

Recommend )    Be the first of your friends to recommend this.

Tweet · 0

An attorney representing Maricopa County Supervisor Don Stapley filed a notice of claim against county officials Friday.

The claim alleges false arrest and malicious prosecution, among other accusations. The claim names Sheriff Joe Arpaio, Chief Deputy Dave Hendershott and County Attorney Andrew Thomas.

A notice of claim is the first step toward filing a lawsuit against a government entity.

Stapley, who is chairman of the Board of Supervisors, referred calls to attorney Merwin Grant.

"It's a protective filing," Grant said. "We anticipate that other facts will be put forward in the near future. And so, we may amend the notice."

Stapley and his wife, Kathy, will settle for $5 million, according to the claim. According to the document, the events over the last year and a half have caused the Stapleys humiliation, emotional distress, health issues and "loss of consortium," referring to loss of spousal relationship.

Maricopa County spokeswoman Cari Gerchick said the claim will be handled just like "any other person who would file a claim. However that impacts Mr. Stapley as chairman, we'll deal with it appropriately and ethically."

Arpaio wouldn't comment on the specifics of the claim, but allegations that the Sheriff's Office abuses its power, which are included in the claim, have become a familiar refrain, he said.

"It's like 'boots on the ground,' just another buzz word," he said. "It doesn't concern me, because I know my office runs a very professional operation."

Barnett Lotstein, a spokesman for Thomas, would not comment on the substance of the claim, but said, "Two grand juries made up of citizens of Maricopa County did return indictments finding probable cause against Mr. Stapley in the criminal matters."

He noted that Yavapai County Attorney Sheila Polk, who prosecuted the first case against Stapley and was overseeing the investigation of the second case against him, said under oath that both cases had merit.

In November 2008, a grand jury indicted Stapley on 118 counts related to his personal financial-disclosure forms. In August 2009, a judge dismissed many of the counts, and prosecutors later dismissed the rest in mid-September. Stapley thought his legal battles were over.

But three days later, deputies took Stapley into custody in the county parking garage on

$3^{2}$

EXHIBIT 1 Page 80 of 90

10/18/13                          Stapley files a claim vs. Arpaio, Thomas, alleging false arrest

counts of fraud and theft related to his campaign for a leadership position with the
National Association of Counties.

"They put me in a patrol car," Stapley told *The Republic* last month. "(They) took me to
the First Avenue Jail, booked me in, took photos, fingerprinting, the whole thing a second
time, and put me in an isolation cell."

No prosecutor filed charges.

Then, last December, a grand jury indicted Stapley on 22 felony charges including theft,
fraud, perjury and forgery, all largely related to his fundraising efforts for the national
organization.

Last month, a judge threw out an unrelated case against fellow Supervisor Mary Rose
Wilcox. Hours later, Thomas filed a motion to dismiss the Stapley indictment because of
similar underlying legal problems.

Stapley told *The Republic* the legal fights have cost his family $1.25 million. Under the
statute, Stapley had to file notice of claim within 180 days of the alleged wrongful event,
in this case, wrongful arrest. The deadline to file is next week.

Typically, the supervisors must approve settlement agreements.

Given Stapley's position, however, Gerchick said officials will take extra care to maintain
neutrality: "This is a unique situation, which we have never faced before - it's
unprecedented," she said.

**Reporters JJ Hensley and Michael Kiefer contributed to this article.**

- Type Size: A A A
- 🖨 Print

**az central.com**



- 🖂 SHARE
- Ex-head of Med Board shocked by her firing
- Mug shots in the news: Oct. 6 - 12
- Arizona made the list!
- Government re-opens; Obama blasts opponents, says U.S. credibility damaged
- Rare whale found dead in Southern California
- Obama signs bill averting default on debt, ending shutdown n
- Guilty plea in Las Vegas to having sex on airplane
- Today in U.S. history: October
- House worker yells during vote, escorted away
- Bishop buys $42 million home, stirs uproar

33



News, cases, companies, firms

Search   Advanced Search   

Platform Tools   Subscribe | Sign In

News | Rankings | Jobs    Cases | Tracking

## Ariz. County Seeks To Debar Ogletree Deakins

By Lana Birbrair                    0 Comments    Share us on:

Law360, New York (July 05, 2012, 8:51 PM ET) -- Arizona's Maricopa County has sought to prevent Ogletree Deakins Nash Smoak & Stewart PC from serving as a contractor for the county and has amended class claims that accuse the firm of 300 billing errors, including billing clients associate attorney rates for the work of recent law school graduates, the county confirmed Thursday.

### Sign up for our free daily newsletters.

Email (professional email required)

Primary area of interest

☐ Class Action            ☐ Government Contracts

More [+]

Sign up now

In a notice sent to Ogletree on Monday, the county informed the employment boutique that it had filed a debarment action to prohibit the firm from doing business with the county, even as a subcontractor, for three years. It was the first time in the county's history that it had moved to debar a vendor, according to the county.

Ogletree responded Thursday that it no longer wanted to do any business with the county and noted that it had already sent refund checks to the county in response to claims that it had overbilled the county by charging attorney rates for the work of law school graduates who had not yet passed the bar, including a check sent in late June for almost $28,000.

"Ogletree made clear in October 2010 that it has no intention to do business with Maricopa County in the future," said John Doran of Sherman & Howard LLC, an attorney for the firm. "Nevertheless, Ogletree continues to look for common ground on which to resolve its long-standing issues with the county. The county has previously identified two instances where employee time was supposedly billed incorrectly, and Ogletree has issued refunds even though it disagrees with the county's position."

In its notice, Maricopa County referred to its long-running battle with Ogletree over $1.1 million in disputed charges, during which Ogletree has allegedly refused to participate in an audit of the firm's legal services.

The county has accused the firm of listing nonattorneys in its personnel database as associates when they begin working at the firm after law school but before they have been admitted to the bar, leading to $170,000 in charges on the services of employees who were fraudulently represented to be attorneys.

In an amended class counter-claim filed last week, Maricopa County also increased the

Related

Sections
    Class Action
    Government Contracts
Legal Industry
Law Firms
    Cavanagh Law Firm
    Ogletree Deakins
    Sherman & Howard

3Y

EXHIBIT 1 Page 82 of 90

number of such alleged billing errors from nearly 40 to about 300, with additional errors including billing associates at the rate of senior partners.

Maricopa County claims taxpayers spent more than $170,000 on the services of nonlawyers who were fraudulently represented to be attorneys, $197,000 on attorneys who were charged at higher categories than deserved and $20,000 for librarians, office assistants and other employees whose time was added to billings in violation of the county's contract. The county says Ogletree's behavior violates its contract and constitutes fraud.

"The number of errors contained in the incomplete bills that we have received from Ogletree is rather stunning and it adds extra urgency for the need for a comprehensive audit of all of Ogletree billings," Maricopa County spokeswoman Cari Gerchick said. "In addition, the fact that Maricopa County has sent a 'notice of intent to debar' this vendor ... from doing business with the county for a period of time shows our commitment to having accountability and transparency in the procurement process."

The instant suit reasserts the county's claim that Ogletree should be subject to an extensive audit in a dispute stemming from the county's allegations that Ogletree violated both the legal services provider contract and procurement code by improperly expanding the scope of assignments and representation and overcharging for services it did not request or approve.

When the county's board of supervisors voted unanimously to terminate its legal services contract with Ogletree in September 2010, it had $1.1 million in outstanding charges, according to the complaint.

In a series of claims and counterclaims that have traveled between state court, alternative dispute resolution and attempts at nonbinding arbitration, Ogletree allegedly sought to recover the outstanding charges while the county tried to audit the firm's legal records in an attempt to show that Ogletree had racked up $5 million in billings while improperly subcontracting out legal work to firms that did not appear on a list of vendors the county had approved, in violation of the contract with Ogletree.

Maricopa County is represented by Julie Pace and David Selden of The Cavanagh Law Firm PA.

Ogletree is represented by John Doran of Sherman & Howard LLC.

The case is Maricopa County v. Ogletree Deakins Nash Smoak & Stewart PC, case number CV2011-002493, in the Superior Court of Arizona, Maricopa County.

--Editing by Katherine Rautenberg.

**Related Articles**

Ogletree Settles Billing Dispute With Ariz. County
Ariz. County Says Ogletree Billed Atty Hours For Grads
Ogletree Must Turn Over Billing Docs In Ariz. County Suit
Ogletree Can't Escape Ariz. County's Billing Records Suit
Ogletree Deakins Boosts Calif. Employment Group

0 Comments                              Sign in to comment

Terms of Service

EXHIBIT 1 Page 83 of 90

10/19/13                              Ogletree Deakins loses another group of lawyers

# InsideCounsel

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your
colleagues, clients or customers, click the "Reprints" link at the top of any article.

# Ogletree Deakins loses another group of lawyers

Firm has seen the departure of 12 lawyers in two weeks

BY CATHLEEN FLAHARDY
May 3, 2013 • Reprints



Anyone who didn't know any better may wonder if a mass exodus was afoot at Atlanta-based law firm Ogletree Deakins Nash Smoak & Stewart.

This week, the firm accepted the resignation of six lawyers —all of whom are expected to head over to competing labor and employment firm Littler Mendelson. Last week, the firm lost another six lawyers. And all of them also jumped ship for Littler.

The 12-lawyer exodus is all happening in the wake of the departure of Ogletree's former vice president and shareholder Don Prophete. Amid what seems to have been some major in-house drama, Prophete tendered his resignation in March, claiming the firm had mistreated a fellow Ogletree colleague. Last week, Prophete announced he was going to Littler … and he was taking six Ogletree lawyers with him.

One of the lawyers who left with Phophete told Thomson Reuters the weeks leading up to his resignation were "chaotic" and everyone was "waiting to see what would happen next."

Above the Law has a detailed story about the events leading up to Prophete's departure, including excerpts from his scathing resignation letter.

Ogletree Deakins Managing Shareholder Kim Ebert said the firm is disappointed the lawyers are leaving, but their departure will not impact Ogletree's commitment to its clients or its growth model, pointing out that the firm has opened two offices and added 15 lateral shareholders this year.

"While we hate to see these 12 attorneys leave, we have more than 650 lawyers who successfully practice with us in 44 offices, and our focus is on them and our outstanding clients," he says.

Ebert also said that the 12 lawyers to leave with Prophete are far fewer than the former Ogletree shareholder claimed would follow him. "Only four of the 20 lawyers in Kansas City (where Prophete was based) have chosen to join him, and those lawyers who had worked with him the longest have chosen to stay with our firm," Ebert adds.

3

www.insidecounsel.com/2013/05/03/ogletree-deakins-loses-another-group-of-lawyers

EXHIBIT 1 Page 84 of 90

**Attorney Fees**

# Ogletree Deakins Made 299 Billing Errors, Maricopa County Alleges; Firm Disputes Error Claims

Posted Jul 11, 2012 5:29 AM CDT
By Debra Cassens Weiss

**Updated:** Arizona's Maricopa County says it has identified 299 billing errors by its former law firm Ogletree, Deakins, Nash, Smoak and Stewart—and they may be "only the tip of the iceberg."

In a proposed second amended complaint filed on Monday, the county detailed the alleged 299 billing errors by the law firm, up from 36 errors alleged in an earlier version of the suit. The county also complains that Ogletree failed to cooperate in an audit, used subcontractor law firms that didn't conform to the county contract, and billed for unapproved services such as issuing media statements.

The largest number of alleged billing errors—227 in all—were due to Ogletree misclassifying 11 lawyers at higher experience levels than authorized by the contract, the proposed amended complaint says.

A June 2010 contract specified rates for associates, senior associates, partners and senior partners, and set the minimum years of experience necessary for each category, the county says. Permitted rates ranged from $125 an hour for associates with a minimum of one year of experience to $250 an hour for senior partners with at least 12 years of experience. A prior contract allowed the law firm to charge $275 an hour for all attorney services.

In some instances, Ogletree billed associates as partners and even senior partners, the proposed complaint says. The mistakes were "so extensive, so frequent, and so systemic that the conclusion is inescapable that when the county implemented lower billing rates for attorneys on June 1, 2010, Ogletree's Phoenix and national management made the decision to overcharge the county and thereby to lessen the effects upon Ogletree of the county's new, reduced billing rate structure," the county alleges.

The proposed complaint claims breach of contract, breach of fiduciary duty and fraud. It seeks class action status based on the claim that Ogletree improperly bills other public sector clients by classifying law graduates as associates even though they have have not yet passed the bar.

The court document alleges 37 instances of billing two nonattorney law grads as associates, despite a contract ban on such a practice. The suit also claims 35 instances of billing for 11 specialists such as librarians and information technology specialists. The firm is allowed to bill only for lawyers and paralegals, the county says.

The county claims the errors involve excessive charges of more than $300,000. Ogletree, on the other hand, claims the county owes nearly $1 million dollars in unpaid legal bills.

So far, Ogletree has agreed to refund $78,000 for billing errors, according to Maricopa County communications director Cari Gerchick. The county is seeking to debar the firm from contracting work with the county for three years.

A lawyer representing Ogletree in the litigation, John Doran of Sherman & Howard in Phoenix, says the dispute is over the contract interpretation. "There are not 299 billing errors or anything close to that number," he tells the ABA Journal in an email.

Doran says there were a few instances where it was debatable whether Ogletree could bill law grads as associates under the contract, and Ogletree reimbursed the county for those time entries. "The vast majority of the remaining time entries alluded to by the county consist of contract interpretation questions, not demonstrated billing errors," Doran says.

He points to one example involving billing entries for an of counsel lawyer who had enough years of experience to qualify for the billing rate charged. "But the county is improperly and semantically focusing on his title as 'of counsel' rather than his years of service to argue that Ogletree could not bill his time at all, let alone bill at the contractual rate," Doran says. "Virtually all of the challenged time entries are of this ilk. It is also important to note that all of the work Ogletree billed for was performed at the highest level, and nobody has ever suggested otherwise. We would also be remiss were we not to mention the fact that the county has not even paid Ogletree for virtually all of these time entries, so their claim is difficult to understand in any event."

www.abajournal.com/news/article/ogletree_deakins_made_299_billing_errors_maricopa_county_amended_complaint/

EXHIBIT 1 Page 85 of 90

## Ogletree Deakins Sues Client Entity, Maricopa County, for Defamation

By Martha Neil
Sep 22, 2011, 07:24 pm CDT

A well-known labor and employment law firm has filed suit against Maricopa County, Ariz., seeking damages for claimed defamatory statements made in a letter from county officials terminating its services.

It "contained false and defamatory statements including, among other things, accusing Ogletree of unethical and possibly criminal conduct and of acting in an unreasonable manner," contends Ogletree Deakins Nash Smoak & Stewart in the complaint (PDF) the law firm filed yesterday in Maricopa County District Court.

The suit also alleges, on information and belief, that the county republished the termination letter to a broader circle than those who needed to see it and "intentionally leak[ed] misstatements and half-truths to the media for the purpose of impugning the integrity and business practices of Ogletree."

Among other relief, the complaint seeks damages for alleged defamation per se which, if proven, would entitle the law firm to compensation for injury to its professional reputation without showing actual out-of-pocket loss in the same amount.

As an Arizona Republic article notes, the lawsuit follows a hard-fought political battle between county's board of supervisors and the county sheriff and county attorney's office.

Former County Attorney Andrew Thomas is currently facing a legal ethics trial, and ethics complaints have also been made against others, including a couple of Ogletree lawyers.

The county, which has been arguing with the law firm about Ogletree's unpaid bills, declined the Republic's request for comment on the defamation suit.

**Related coverage:**

EXHIBIT 1 Page 86 of 90



MICHAEL K. JEANES
Clerk of the Superior Court
By Kristy Kee, Deputy
Date 09/21/2011 Time 16:28:08
Description                   Amount
------- CASE# CV2011-017664 ---------
CIVIL NEW COMPLAINT          301.00

TOTAL AMOUNT                  301.00
         Receipt# 21651368

LAW OFFICES
SHERMAN & HOWARD L.L.C.
201 EAST WASHINGTON STREET, SUITE 800
PHOENIX, ARIZONA 85004-2327
TELEPHONE (602) 240-3000
FAX (602) 240-6600
(AZ BAR FIRM NO. 00441000)
John Alan Doran (AZ Bar No. 012112)
(JDoran@ShermanHoward.com)
Jamey G. Anderson (AZ Bar 024920)
(JAnderson@ShermanHoward.com)
Attorneys for Plaintiff Ogletree, Deakins, Nash,
Smoak & Stewart, P.C.

*[handwritten: EXAMPLE OF LEGAL BATTERY AGAINST ANY & ALL]*

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C., a South
Carolina professional corporation,

                Plaintiff,

v.

MARICOPA COUNTY, a political
subdivision of the State of Arizona,

                Defendant.

Case No.   **CV2011-017664**

**COMPLAINT**

*[handwritten: The People of Maricopa County AZ]*

Plaintiff Ogletree, Deakins, Nash, Smoak & Stewart, P.C. ("Ogletree"), a South Carolina professional corporation, by and through its undersigned counsel, respectfully submits its Complaint and affirmatively alleges as follows:

1.    Ogletree is a national labor and employment law firm with an office located in and doing business in Maricopa County, Arizona.

2.    Defendant Maricopa County (the "County") is a political subdivision of the State of Arizona.

3.    This Court has jurisdiction pursuant to A.R.S. § 12-321 and venue is proper in this Court.

4.    Prior to September 2010, Ogletree was an approved vendor on the County's list of outside counsel and was awarded several contracts for legal services.

PHOENIX\1109243.1

*[handwritten: 39]*

EXHIBIT 1 Page 87 of 90

5.    Pursuant to a letter dated September 22, 2010, and signed by David R. Smith, County Manager, (the "Termination Letter") the County terminated Ogletree and removed Ogletree from the County's approved list of outside counsel.

6.    David R. Smith was acting in his official capacity, for and on behalf of the County when he drafted and published the Termination Letter.

7.    The Termination Letter contained false and defamatory statements including, among other things, accusing Ogletree of unethical and possibly criminal conduct and of acting in an unreasonable manner.

8.    The defamatory statements contained in the Termination Letter are false.

9.    Upon information and belief, the County made unprivileged publications and republications of the Termination Letter and the defamatory statements therein, including causing the defamatory statements to be published by reporters and intentionally leaking misstatements and half-truths to the media for the purpose of impugning the integrity and business practices of Ogletree.

10.    The County, through its agents David Smith, Julie Pace, David Selden, and Cari Gerchick, repeatedly published the defamatory statements beginning in January 2011, and continuing to the present, and said publications were not privileged in any manner.

11.    Ogletree has met the jurisdictional prerequisites for suit with respect to the defamatory conduct alleged herein by filing a timely Notice of Claim in accordance with A.R.S. § 12-821.01(A).

12.    At the time the defamatory statements were published, the County knew the defamatory statements were false.

13.    At the time the defamatory statements were published, the County acted with reckless disregard for the strong likelihood that the statements were false.

14.    The defamatory statements were part of a baseless campaign to smear the reputation of Ogletree, one of the nation's largest and most respected labor and

PHOENIX\1109243.1

2

EXHIBIT 1 Page 88 of 90

1    employment law firms.

2      15.    The County published, or caused to be published, the defamatory

3    statements with the intent to damage Ogletree's reputation and acted with actual malice

4    when publishing the defamatory statements.

5      16.    The defamatory statements tended to impeach the honesty, integrity and

6    reputation of Ogletree and injured Ogletree in its trade and/or profession and are

7    defamatory *per se*.

8      17.    As a direct and proximate result of the County's acts, Ogletree has

9    suffered, and will continue to suffer, damages in an amount to be proven at trial.

10     18.    The County's conduct was intentional and was outrageous, such that a

11   trier of fact can infer the intent to injure Ogletree. Therefore, Ogletree is entitled to

12   recover punitive damages in an amount to be proven at trial.

13     19.    In light of the foregoing, Defendants should be enjoined from making

14   additional defamatory statements regarding Ogletree and/or from further circulating the

15   defamatory statements.

16     WHEREFORE, Ogletree prays that this Court enter judgment as follows:

17     a.    Granting preliminary injunctive relief ordering that the County

18   immediately cease and desist publishing the defamatory statements or similar or other

19   defamatory statements;

20     b.    Awarding Ogletree, Deakins, Nash, Smoak & Stewart, P.C. compensatory

21   damages in an amount to be proven at trial, plus post-judgment interest thereon, at the

22   legal rate, until paid in full;

23     c.    Awarding Ogletree, Deakins, Nash, Smoak & Stewart, P.C. punitive

24   damages in an amount necessary to deter the County and others from engaging in such

25   tortious conduct, plus post-judgment interest thereon, at the legal rate, until paid in full;

26     d.    Awarding Ogletree, Deakins, Nash, Smoak & Stewart, P.C. its taxable

27   costs pursuant to A.R.S. § 12-341, plus interest thereon, at the legal rate, until paid in

28

4)

EXHIBIT 1 Page 89 of 90

full; and

    e.    Awarding Ogletree, Deakins, Nash, Smoak & Stewart, P.C. such other and further relief as the Court deems just and proper.

DATED this 21st day of September, 2011

              **SHERMAN & HOWARD L.L.C.**

By:
    John Alan Doran
    Jamey G. Anderson
    201 East Washington Street, Suite 800
    Phoenix, Arizona 85004-2327
    Attorneys for Plaintiff
    Ogletree, Deakins, Nash, Smoak &
    Stewart, P.C.

PHOENIX\1109243.1

4

42

EXHIBIT 1 Page 90 of 90