IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

ANDREW CLARK,

           Plaintiff,

    vs.

WELLS FARGO BANK; et al.,

           Defendants.

Case No. 6:20-cv-00253-AA
**OPINION AND ORDER**

AIKEN, District Judge:

Plaintiff Andrew Clark brings this action *pro se* asserting claims against 20 defendants. Defendants have filed dispositive motions (docs. 33, 42, 52, 58, 59, 81, 95) and requests for the Court to declare plaintiff a vexatious litigant and enter a pre-filing order against him (docs. 42, 58, 62). For the reasons below, defendants' motions to dismiss (docs. 33, 42, 52, 58, 59, 81) are GRANTED. State defendants' Motion for Summary Judgment (doc. 95) and the requests for a pre-filing order (docs. 42, 58, 62) will be addressed in separate opinions.

## BACKGROUND[1]

Plaintiff worked as a mortgage originator for Wells Fargo Home Mortgage in Eugene, Oregon from 2009 to 2011. While working for Wells Fargo, plaintiff began compiling reports of alleged violations of the Sarbanes-Oxley and Dodd-Frank Acts and transmitted his reports internally and to several government agencies. After his termination, plaintiff published Wells Fargo's records, including private customer information, on his website. This resulted in over a decade of litigation, involving now four federal court lawsuits between plaintiff and Wells Fargo. The latter three suits, including this one, were filed *pro se* by plaintiff and alleged that Wells Fargo and an ever-increasing cast of attorneys have been involved in a scheme to cover up Wells Fargo's wrongdoing and to silence plaintiff for his attempts to bring the violations to light.

## I.    *Clark I and Clark II*

In August 2011, Wells Fargo filed a lawsuit in this Court seeking to enjoin Clark from publishing, controlling, disclosing, or retaining any of its equipment, confidential customer information, or trade secrets. *See Wells Fargo Bank, N.A. v. Clark* ("*Clark I*"), 6:11-cv-06248-HO, Compl. (doc. 1). Plaintiff defended himself in the action. On October 5, 2011, the Court granted summary judgment in Wells Fargo's favor and entered a permanent injunction. *Id.*, doc. 135. The judgment was entered in November 2012. *Id.*, doc. 144. In early 2013, plaintiff filed several motions

---

[1] The following facts are taken from the Complaint and records from this Court and the Ninth Circuit in prior litigation involving plaintiff, of which this Court takes judicial notice as described later in this Opinion.

for reconsideration, which the Court denied in May 2013. *Wells Fargo Bank N.A. v. Clark* ("*Clark II*"), 6:11-cv-06248-AA, docs. 145, 148, 149, 150.

## II.    *Plaintiff's Stalking Prosecution and Clark III*

In July 2013, plaintiff was arrested and charged with 10 counts of misdemeanor stalking in Lane County Circuit Court, based on faxes and emails he had sent to Ogletree, Deakins, Nash, Smoak, Stewart, P.C. ("Ogletree Deakins"), the law firm that had represented Wells Fargo in *Clark I*, and one of its attorneys, Leah Lively, in particular. About a week later, plaintiff was released from jail on bail.

On August 3, 2013, plaintiff filed a lawsuit against Wells Fargo, Ogletree Deakins, Securitas Corporation ("Securitas"), and several individually named employees of those organizations. *Clark v. Wells Fargo Bank, N.A.* ("*Clark III*"), 6:13-cv-01546-AA, Compl. (doc. 1). He alleged claims for (1) violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961–1968; (2) deprivations of his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983; (3) violations of the Occupational Safety and Health Act, 29 U.S.C. § 651 *et seq.*; (4) a conspiracy against his constitutional rights in violation of 18 U.S.C. §§ 241–242; and state law claims for (5) defamation and (6) gross negligence. *Id.*

In January 2014, plaintiff pleaded guilty to one count of stalking in his Lane County criminal case and, in *Clark III*, the Court dismissed plaintiff's claims against Ogletree Deakins and its attorneys based on the terms of plaintiff's plea agreement. *Id.*, doc. 43. Then, on July 1, 2014, the Court dismissed the claims against Wells

Fargo's on a motion to dismiss and dismissed the case. *Id.*, docs. 61, 62. On July 16, 2014, plaintiff filed a motion to set aside the judgment. *Id.*, doc. 63. The Court denied the motion and plaintiff appealed the dismissal. *Id.*, doc. 64. The Ninth Circuit affirmed in February 2017. *Id.* doc. 71.

## III.    *Clark IV*

Before filing the motion to set aside and appeal from the *Clark III* judgment, plaintiff filed another action in this Court against Wells Fargo; Ogletree Deakins; the City of Eugene, Oregon; Lane County, Oregon; Alex Gardner, the District Attorney for Lane County; and Eric Hasselman, the Deputy District Attorney who prosecuted the stalking case against plaintiff. *Clark v. City of Eugene, Oregon* ("*Clark IV*"), 6:14-cv-01103-TC. In August 2014, the Court granted plaintiff's motion to voluntarily dismiss the City of Eugene, which plaintiff filed through counsel. *Id.*, docs. 97, 98.

In September 2015, the Court granted plaintiff's Motion for Leave to File a First Amended Complaint, and plaintiff filed an amended complaint, also through counsel. *Id.*, docs. 99, 100. The amended complaint alleged a § 1983 claim against Hasselman for the deprivation of plaintiff's First, Fourth, Sixth, and Fourteenth Amendment rights and a RICO claim against Wells Fargo, Ogletree Deakins, and Hasselman.

The Court dismissed the claims against Hasselman on a motion to dismiss in March 2016; against Wells Fargo on a motion to dismiss in June 2016; and against Ogletree Deakins in February 2017, based on plaintiff's counsel's concession that Ogletree Deakins had not been served, the statute of limitations for claims against

the firm had expired, and service at that time would be futile. *Id.* docs. 123, 125, 126, 128, 131, 132. Plaintiff appealed *pro se* and, in December 2017, the Ninth Circuit affirmed this Court's orders dismissing the defendants. *Id.* docs. 134, 144.

## IV.    *This Action*

In February 2020, plaintiff initiated this action against 20 defendants. Doc. 1. The Complaint alleges antitrust and RICO claims against defendants Wells Fargo, Ogletree Deakins, and the Oregon State Bar ("OSB"). It also alleges claims under § 1983 against these three organizational defendants and 17 individually named defendants, including attorneys involved in plaintiff's past federal court actions, stalking prosecution, and divorce, and Judge Michael Hogan, who presided over *Clark I.*

Defendants responded by filing dispositive motions. Docs. 25, 31, 33, 42, 52, 58, 81, 85, 95. But, in June 2020, the Court dismissed the claims against defendants Sebastian Tapia, Ben Miller, Judge Hogan, Peter Urias, Attorney General Ellen Rosenblum, Solicitor General Benjamin Gutman, and Senior Assistant Attorney General Vanessa Nordyke without prejudice pursuant to plaintiff's Motion to Dismiss and certain parties' stipulations. Docs. 112, 114, 115, 116, 117. Shortly thereafter, plaintiff filed a Motion for Summary Judgment (doc. 120), which the Court stayed pending resolution of the other dispositive motions. Doc. 122.

The Court held oral argument on all pending motions, save plaintiff's stayed summary judgment motion, on March 2, 2021. Doc. 125. In this Opinion, the Court will address the motions to dismiss filed by defendants David Campbell; Wells Fargo

and Christian Rowley; Barry Davis; Bruce Newton; Ogletree Deakins, Leah Lively, Christopher Mixon, David P.R. Symes, and Steven Seymour ("the Ogletree defendants and Seymour"); and OSB, as well as related Requests for Judicial Notice made by David Campbell, Wells Fargo and Christian Rowley, and plaintiff.

## STANDARDS

David Campbell, Barry Davis, Bruce Newton, Wells Fargo and Christian Rowley, the Ogletree defendants and Seymour, and OSB move to dismiss the claims against them pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). They assert several grounds for dismissal, including assertions that plaintiff lacks standing to bring certain claims, the claims are time barred or precluded, and that the Complaint fails to state a claim for which relief can be granted. Accordingly, the following standards govern the motions.

## I.    *Dismissal for Lack of Standing under Rule 12(b)(1)*

When a court lacks subject matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(b)(1). A challenge to standing is appropriately raised under Rule 12(b)(1). *Chandler v. State Farm Mutual Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Plaintiff, as the party seeking to invoke subject matter jurisdiction of the Court, has the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). A facial attack disputes whether the allegations contained in a complaint

are sufficient to invoke federal jurisdiction. *Id*. By contrast, a factual attack disputes the truth of those allegations. *Id*.

## II.    *Dismissal for Failure to State a Claim under Rule 12(b)(6)*

Where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under federal pleading standards, the complaint must include a short and plain statement of the claim and "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. The court is not required to accept legal conclusions, unsupported by alleged facts, as true. *Id*.

"Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint[.]" *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). But courts may also consider exhibits attached to the Complaint, under certain circumstances, and matters properly subject to judicial notice. *Id*.; *United States v. Richie*, 342 F.3d 903, 908–09 (9th Cir. 2003).

*Pro se* pleadings are held to less stringent standards than pleadings by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). That is, courts should construe pleadings by *pro se* plaintiffs liberally and afford the plaintiffs the benefit of

any doubt. *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). Additionally, a *pro se* litigant is entitled to notice of the deficiencies in the complaint and the opportunity to amend unless the complaint's deficiencies cannot be cured by amendment. *Id.*

The following standards govern certain grounds for dismissal under Rule 12(b)(6).

### A.    *Failing to state a cognizable claim*

Dismissal for failure to state a claim "under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013).

### B.    *Statute of Limitations*

A statute of limitations defense may be raised in a Rule 12(b)(6) motion if "the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010). "[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir.1995).

### C.    *Preclusion*

The preclusive effect of a prior proceeding is referred to as "*res judicata*." *Robi v. Five Platters, Inc.*, 838 F.2d 318, 321 (9th Cir. 1988). The doctrine of *res judicata* includes two distinct types of preclusion: claim preclusion and issue preclusion. *Id.*

Claim preclusion bars relitigation of "any claims that were raised *or could have been raised* in a prior action." *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) (internal quotation marks omitted) (emphasis in original). "In order for [claim preclusion] to apply there must be: 1) an identity of claims, 2) a final judgment on the merits, and 3) identity or privity between parties." *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1193 (9th Cir. 1997) (internal citations omitted).

To determine whether successive lawsuits involve the same claims, courts consider:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992). "[W]hether two suits arise out of the same transactional nucleus of facts" is "[t]he central criterion in determining whether there is an identity of claims." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001).

By contrast, issue preclusion prevents relitigation of all "issues of law or fact that were actually litigated and necessarily decided" in a prior proceeding. *Segal v. American Tel. & Tel. Co.*, 606 F.2d 842, 845 (9th Cir. 1979). The issue must have been "actually decided" after a "full and fair opportunity for litigation[,]" and "the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." *Clark*, 966 F.2d at 1320–21.

## LEGAL FRAMEWORK

As mentioned, plaintiff asserts federal antitrust, RICO, and § 1983 claims. The following standards govern and statutes of limitations apply to those claims.

## I.    *Antitrust Claims*

Plaintiff asserts claims pursuant to the Clayton Antitrust Act, 15 U.S.C. § 15, for violations of the Sherman Antitrust Act, 15 U.S.C. § 1–7. Compl. at 7 ("A Clayton Act Action for Relief from Sherman Act Violations"). The Clayton Act provides a private right of action for persons injured by violations of the "Antitrust laws," including the Sherman Act. The Complaint does not specify which provision of the Sherman Act defendants are alleged to have violated, but does quote from *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447 (1993), which concerned private claims alleging violations of § 2 of the Sherman Act, which prohibits monopolization. *Id.* at 448–49; 15 U.S.C. § 2 (making it an offense for any person to "monopolize, or attempt to monopolize, or combine or conspire with any other persons, to monopolize any part of the trade or commerce among the several State . . ."").

To state a claim for violations of § 2 of the Sherman Act, plaintiff must allege that (1) defendants possessed "monopoly power in the relevant market"; (2) defendants willfully acquired or maintained that power; and (3) an antitrust injury was caused. *Name.Space, Inc. v. Internet Corp. of Assigned Names and Numbers*, 795 F.3d 1124, 1131 (9th Cir. 2015). To establish that defendant possessed "monopoly power in the relevant market," plaintiff must "allege both that a 'relevant market'

exists and that the defendant has power within that market." *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1044 (9th Cir. 2008).

Sherman and Clayton Antitrust Act claims must be initiated "within four years after the cause of action accrued" or they "shall be forever barred." 15 U.S.C. § 15b. "Generally, [an antitrust cause] of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business. . . . [E]ach time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and that, as to those damages, the statute of limitations runs from the commission of the act." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971); *see also AMF, Inc. v. Gen. Motors Corp.*, 591 F.2d 68, 70 (9th Cir. 1979) (noting that the statute begins to run each time plaintiff's interests are damaged under the antitrust laws). "[T]he limitations period may start to run *after* the defendant's initial violation of the antitrust law, if it is 'uncertain' or 'speculative' whether the defendants' antitrust violation has injured the plaintiff at the time of the violation." *Oliver v. SD-3 LLC*, 751 F.3d 1081, 1086 (9th Cir. 2014) (emphasis added) (quoting *AMF*, 591 F.2d at 72). In such cases, the limitations period begins on the date that the plaintiff's damages first "accrued and became ascertainable." *AMF*, 591 F.2d at 73.

## II.   *RICO Claims*

The RICO Act, 18 U.S.C. §§ 1961–1968, provides a civil cause of action for "[a]ny person injured in his business or property by reason of a violation of section

1962" of the Act.  18 U.S.C. § 1964.  Section 1962 prohibits various aspects of

"racketeering activity," including:

- Investing "any income derived, . . . from a pattern of racketeering activity" in "any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."  18 U.S.C. § 1962(a).

- Acquiring or maintaining "through a pattern of racketeering activity . . . any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."  *Id.* § 1962(b).

- Participating in the conduct of the affairs of any enterprise engaged in or which affects interstate commerce "through a pattern of racketeering activity" if that person is "employed by or associated with" the enterprise.  *Id.* § 1962(c).

- Conspiring to engage in any of the conduct listed above.  *Id.* § 1962(d).

The Complaint does not specify which provision of § 1962 defendants allegedly

violated but, in alleging that the individual defendants were involved in a "RICO

Enterprise," appears to assert a claim under § 1962(c).  Compl. at 9.  To state a claim

under § 1962(c), a plaintiff must allege facts showing "(1) conduct (2) of an enterprise

(3) through a pattern (4) of racketeering activity . . . (5) causing injury to plaintiff."

*Life Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005).

"To establish liability under § 1962(c) one must allege and prove the existence

of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the

same 'person' referred to by a different name."  *Id.* (alterations normalized).  An

enterprise is "any individual, partnership, corporation, association, or other legal

entity, and any union or group of individuals associated in fact although not a legal

entity[.]"  18 U.S.C. § 1961(4).  Additionally, the person must "participate in the

operation or management of the enterprise through a pattern of racketeering activity." *Reves v. Ernst & Young*, 507 US 170, 184 (1993).

"Racketeering activity" is any one of the "predicate acts" listed in 18 U.S.C. § 1961(1). *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010). To establish a "pattern" of racketeering activity, plaintiff must allege at least two separate predicate acts, must show that the predicate acts are related, and that they amount to or pose a threat of continued criminal activity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

The statute of limitations for civil RICO actions is four years. *Pincay v. Andrews*, 238 F.3d 1106, 1108 (9th Cir. 2001). Courts in the Ninth Circuit follow the "injury discovery" rule for civil RICO claims, where the "limitation period begins to run when a plaintiff knows or should know of the injury that underlies his cause of action." *Id.* at 1109. Thus, the statute begins running when the plaintiff has either actual or constructive notice of the injury. *Id.*

## III. *Section 1983 Claims*

42 U.S.C. § 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. To state a claim under § 1983, plaintiff must allege: (1) the conduct complained of deprived him of an existing federal constitutional or statutory right; and (2) the conduct was committed by a state actor or a person acting under color of state law." *L.W. v. Grubbs*, 974 F.2d 119, 120 (9th Cir. 1992). Thus, § 1983 is "generally not applicable to private parties," *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003),

unless the plaintiff shows that the defendants challenged acts or omissions were taken while acting under color of state law, *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020).

The Ninth Circuit has "recognized at least four different general tests" to determine whether a defendant acted under color of state law: "(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Id.*

> The public function test is satisfied only on a showing that the function at issue is both traditionally and exclusively governmental. The [government] nexus and join actions tests may be satisfied where the court finds a sufficiently close nexus between the state and the private actor so that the action of the latter may be fairly treated as that of the State itself, or where the State has so far insinuated into a position of interdependence with the private party that it was a joint participant in the enterprise. Governmental compulsion or coercion may exist where the State has exercised coercive power or has provided such significant encouragement, either overt or cover, that the choice must in law be deemed to be that of the State.

> At bottom, the inquiry is always whether the defendant has exercised power possessed by virtue of state law and made possible only because the wrongdoer is closed with the authority of the state.

*Id.* at 747–48 (internal quotations and citations omitted). Additionally, "[l]iability under section 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

There is no specified statute of limitations for an action under § 1983. *Wilson v. Garcia*, 471 U.S. 261, 266 (1985); *Pouncil v. Tilton*, 704 F.3d 568, 573 (9th Cir. 2012). "[F]ederal courts [therefore] look to the law of the state in which the cause of action arose and apply the state law of limitations governing [the] analogous cause of

action." *Pouncil*, 704 F.3d at 573.  In this District, § 1983 actions are "governed by Oregon's two-year statute of limitations for personal injury actions" under ORS 12.110.  *Bailey v. Hanson*, 247 F. App'x 889, 889 (9th Cir. 2007).  Although state law determines the length of the statute of limitations, federal law determines when the statute of limitations begins to run for a § 1983 claim.  *Pouncil*, 704 F.3d at 573. Under federal law, the statute of limitations for a § 1983 claim begins to run on the date on which the plaintiff's claim accrues.  *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Pouncil*, 704 F.3d at 573.  A cause of action for a § 1983 claim accrues "when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Pouncil*, 704 F.3d at 574.

## JUDICIAL NOTICE

David Campbell, Wells Fargo, Christian Rowley, and plaintiff all made unopposed requests for the Court to take judicial notice of certain facts.  Under Rule 201 of the Federal Rules of Evidence, the Court "may judicially notice a fact that is not subject to reasonable dispute because it" either "is generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  The Court may take judicial notice on its own or on a party's motion if "the court is supplied with the necessary information."  Fed. R. Evid. 201(c).

Campbell, Wells Fargo, and Rowley ask the Court to take judicial notice of certain documents in this Court's dockets for *Clark I*, *Clark II*, *Clark III*, and *Clark IV*, as well as documents from plaintiff's appeals of *Clark III* and *Clark IV*.  Courts

may take judicial notice of their own records and records in other cases. *See Chandler v. United States*, 378 F.3d 206, 900 (9th Cir. 1967) (noting that a court "may take judicial notice of its own records"); *United States v. Howard*, 381 F.3d 873, 876, n.1 (9th Cir. 2004) (noting that courts may also "take judicial notice of court records in another case"). Accordingly, Campbell and Wells Fargo and Rowley's requests (docs. 34, 45) are GRANTED. And the Court takes judicial notice of all other documents contained in those court records that are referenced in this Opinion but were not specifically requested by these defendants. The Court takes notice of these documents, "not for the truth of the facts recited therein, but for the existence of the [documents], which is not subject to reasonable dispute over its authenticity." *Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001).

Plaintiff's Motion for Judicial Notice of Adjudicative Facts and Clarification of Claim for Relief (doc. 56) does not, itself, describe the documents or facts that are the subject of his request. However, the "Federal Major Violent Crime Report" attached as an exhibit to the motion appears to describe five areas that plaintiff would like the Court to take judicial notice of: (1) a police report from the Eugene Police Department, doc. 56, ex. 1 at 2; (2) a printout from the U.S. Department of Justice website titled "1729. Protection of Government Processes – Tampering with Victims, Witnesses, or Informants – 18 U.S.C. 1512," *id.* at 3–4; (3) communications from two federal agencies: the Department of Labor's Occupational Safety & Health Administration and the Department of Treasury Office of the Comptroller of Currency acknowledging plaintiff's reports and stating that they had been assigned to staff, *id.* at 5–6; (4) three

of plaintiff's websites: "www.TheEugeneBlairProject.com," "www.RisePatriot.com," and "www.WellsFargoWitz.com," *id.* at 1; and (5) an article titled "Sheriff Joe Arpaio's Favorite Law Firm, Ogletree Deakins, Cost Taxpayers $2.4 Million—in Just Two Years," *id.* at 7–8.

Plaintiff appears to ask the Court to take judicial notice of the contents of these materials, that is, of the truth of the facts asserted in them. However, some of the materials, like plaintiff's websites and the Department of Justice webpage, are not proper subjects of judicial notice. The matters posted to plaintiff's websites are not "generally known within the trial court's territorial jurisdiction" nor are these websites "sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1030 (C.D. Cal. 2015) (observing that "[f]ederal courts considering the issue have expressed skepticism as to whether it is appropriate to take judicial notice of information or documents appearing on websites that are created and maintained by a party to the litigation" and collecting cases). The Department of Justice webpage discusses the scope of 18 U.S.C. § 1512, a federal criminal law that prohibits tampering with witnesses, victims, and informants. These are legislative facts, not adjudicative ones, and judicial notice of them is unnecessary. *See Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002) ("[J]udicial notice is generally not the appropriate means to establish the legal principles governing the case.").

Although the remaining materials, the police report, federal agency response letters, and news article, may be judicially noticeable for some purposes, the matters

asserted within them are not of the "high degree of indisputability" that the Advisory Committee Notes to Rule 201 indicates "is an essential prerequisite for a court to take judicial notice of a particular fact." *See also Von Saher*, 592 F.3d at 960 (a court can take judicial notice of new articles only to "indicate what was in the public realm at the time, not whether the contents of those articles were in fact true").

Finally, although the facts in these materials may have some bearing on the merits of plaintiff's claims, none are relevant to the issues raised by the defendant's motions for summary judgment. Accordingly, the Court declines to take judicial notice of any of these materials and plaintiff's request is DENIED.

## DISCUSSION

Plaintiff asserts Antitrust, RICO, and § 1983 claims against defendants. The Complaint alleges

> Wells Fargo Bank, Ogletree Deakins, and Oregon State Bar Association are being sued under relief provisions of the Clayton Antitrust Act: violations of the Sherman Antitrust Act for creating, permitting, or using a business model that includes physically, financially, and emotionally ruining lowest level workers and then obstructing evidence along with justice in all courts.

Compl. at 8. It also alleges that "[a]ll defendants are being sued under RICO statutes" because the attorney defendants "abused court systems and processes in attempts to cover up what their fellow Bar members perpetrated against me" and "[i]t appears that Defendants Wells Fargo Bank sponsored the activity and paid for it." *Id*. Finally, the Complaint asserts that "[a]ll Defendants are being sued for ongoing civil rights violations[,]" including violations of plaintiff's rights under the First

Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. *Id.* at 8–9.

David Campbell, Barry Davis, Bruce Newton, Wells Fargo and Christian Rowley, the Ogletree defendants and Seymour, OSB seek dismissal of these claims with prejudice based on lack of standing, claim and issue preclusion, statutes of limitations, and failure to state a claim. Plaintiff filed a partial response to some of these defendants' motions, generally opposing their preclusion, statute of limitations, and failure to state a claim arguments.

Plaintiff contends that "[m]otions to dismiss based on FRCP 12(b)(6) are clearly not appropriate to the factual basis and evidence in this case[,]" especially after reviewing "Docket 56," plaintiff's request for judicial notice. Doc. 73 at 4. But, as the Court explained at the hearing, there are rules and procedures that govern the litigation process in federal court. Rule 12(b)(6) is one of those rules and, as explained above in the standards section, motions brought under that rule do not turn on evidence, but rather, the facts alleged in a Complaint. And, although the Court can take judicial notice of certain facts not alleged in the Complaint when ruling on a Rule 12(b)(6) motion, the materials in Docket 56 are not proper subjects of judicial notice.

Plaintiff also contends that defendants claims "of Res Judicata in this situation represents perjury and continued obstruction of justice" because the records in his prior cases provide "unequivocal proof that all facts and evidence [that plaintiff] placed into the court in any conceivable format were all bypassed and were not

adjudicated." Doc. 73 at 3–4. However, as noted below in the discussion of Wells Fargo's Motion to Dismiss, claims can be "adjudicated" to a final judgment on the merits on a motion to dismiss under Rule 12(b)(6). In other words, to have a preclusive effect, a final judgment does not have to be based on the review of any evidence.

Finally, plaintiff claims that the statutes of limitations in this matter have not run due to "criminal activity and obstruction [that] occurred within the last 10 years and continues." Compl. at 15. He argues that the statutes of limitations arguments are "incorrect[]" because "[a]ll facts and evidence were placed into the court systems and bypassed via obstructive pleadings as demonstrated in PACER." Doc. 73 at 4. But plaintiff's allegations of any obstruction of justice, let alone continuing obstruction, are bare legal assertions unsupported by factual allegations. Thus, they fail to demonstrate that plaintiff's claims accrued any later than the latest complained-of conduct for each defendant or the statutes of limitations should be tolled. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

And, although plaintiff asserts that the obstruction is clear from the court records in his prior federal cases, the Court has reviewed those records and disagrees. The motions filed by the defendants in those cases were far from boilerplate, obstructionist, or inappropriate. Instead, like the dispositive motions in this case, those motions addressed deficiencies in plaintiff's complaints as permitted by the Federal Rules of Civil Procedure. Each case was dismissed before the case reached

the discovery phase, or any phase where it would have been appropriate for the court to consider plaintiff's evidence.

Now, the Court will turn to the motions to dismiss, beginning with the motions brought by the three organizational defendants and followed by those brought by individual defendants in the order in which they were filed.

## I.   *Wells Fargo and Christian Rowley (doc. 42)*

As mentioned, Wells Fargo is plaintiff's former employer, sued plaintiff in *Clark I*, and was sued by plaintiff in *Clark III* and *Clark IV*.  Plaintiff asserts antitrust, RICO, and § 1983 claims against Wells Fargo.  He alleges that Wells Fargo violated the Sherman Antitrust Act by "creating, permitting, or using a business model that includes physically, financially, and emotionally ruining lowest level workers and then obstructing evidence along with justice in all courts[,]" Compl. at 8, because "[t]here is no actual competition when a corporation has a proven ability to hire attorneys who inflict false arrest and various other acts of violent tampering to achieve monetary or political objectives[,]" *id.* at 7.  He also alleges that Wells Fargo is liable under the RICO Act for "sponsor[ing]" Ogletree Deakins' "RICO crimes" and "pa[ying] for it."  *Id.* at 8.  Finally, plaintiff alleges that Wells Fargo violated his constitutional rights by filing *Clark I* against him and through its participation in his arrests, the stalking prosecution, *Clark III,* and *Clark IV*.

Christian Rowley defended Wells Fargo in *Clark III* and *Clark IV*.  Plaintiff asserts RICO and § 1983 claims against Rowley.  He alleges that Rowley "repeatedly refused to confer on evidence" and "[i]nstead filed boilerplate pleadings completely

devoid of a factual basis[,]" which resulted in "facts and evidence [being] systematically obstructed and [plaintiff being] denied any form of due process in the primary or appeals court." *Id.* at 12.  Plaintiff also alleges that Rowley is "primarily responsible for the illegal, unethical activity of his assistant (Peter Urias) and his pro hac vice[,]" David Campbell, who, as discussed below, plaintiff alleges entered a forged Order into the court record in *Clark IV*. *Id.*; *see also id.* at 55, 57.

Wells Fargo argues that the claims against it are barred by claim and issue preclusion, that the Complaint fails to state an Antitrust claim against it, and that any Antitrust claim is time barred.  Rowley argues that the claims against him are time barred and that the Complaint fails to state a RICO or § 1983 claim against him. Plaintiff filed a partial response, which generally opposed "[m]any [d]efendants[']" statute of limitations and res judicata defenses.  Doc. 73 at 4.

The Court agrees that the RICO and § 1983 claims against Wells Fargo are precluded by the final judgments in *Clark III* and *Clark IV*.  As mentioned, claim preclusion, or *res judicata*, precludes a party from relitigating previously litigated claims when there is (1) an identity of claims, (2) an identity of or privity between the parties, and (3) a final judgment on the merits.  The second and third requirements are easily met: both plaintiff and Wells Fargo were parties in *Clark III* and *Clark IV* and, in each case, the claims against Wells Fargo were dismissed under Rule 12(b)(6). *See Commc'n Mgmt. Servs., LLC v. Qwest Corp.*, 67 F. Supp. 3d 1159, 1169 (D. Or. 2014) ("A dismissal for failure to state a claim under Rule 12(b)(6) is a 'judgment on the merits' to which *res judicata* applies.") (quoting *Stewart*, 297 F.3d at 957).

The first requirement, an identity of claims, is also met because, in both prior cases and this case, plaintiff asserted RICO and § 1983 claims against Wells Fargo for Wells Fargo's alleged involvement in plaintiff's arrests, plea deal, conviction, and previous litigation. Thus, the claims not only arise from the same transactional nucleus of facts, but they are also literally identical. And, to the extent that these claims are also based on plaintiff's allegation of "continuing obstruction" by all defendants, the Court is not required to accept that legal conclusion, which is not supported by any factual allegations, as true.

The Court also agrees that the Sherman Antitrust claim against Wells Fargo and the RICO and § 1983 claims against Rowley must be dismissed as time barred. Plaintiff complains of conduct by Wells Fargo that took place from 2011 to early 2014 and conduct by Rowley that took place from 2013 to November 2014, when plaintiff alleges that Rowley forged a court order. Plaintiff filed this action six years later, two years after the statute of limitations for Antitrust and RICO claims expired and four years after the statute of limitations for § 1983 claims expired. Although these claims can be dismissed on this basis alone, failure to state a claim provides additional grounds to dismiss them. The Court agrees that the Complaint lacks any factual allegations showing that Wells Fargo possessed "monopoly power" in any market as required to state an Antitrust claim; that Rowley engaged in one predicate act, let alone a pattern of racketeering activity, as required to state a RICO claim; or that any of Rowley's conduct violated plaintiff's constitutional rights or was taken "under color of state law," as required to state a § 1983 claim.

Because claim arising from Wells Fargo and Rowley's involvement in plaintiff's arrest, prosecution, plea deal, and prior litigation have long been time-barred and the claims against Wells Fargo are precluded by final judgments in two prior actions, amendment of these claims would be futile. *See Hernandez v. Fed. Home Loan Mortg. Corp*, 663 F. App'x 518, 519 (9th Cir. 2016) (affirming district court's dismissal with prejudice of plaintiff's claims on claim preclusion grounds because "amendment would have been futile"); *Platt Elec. Supply Inc. v. EOFF Elec. Inc.*, 522 F.3d 1049, 1060 (9th Cir. 2008) (affirming district court's dismissal of *pro se* plaintiff's claims without leave to amend on statute of limitations grounds because "any amendments would have been futile"). Accordingly, the claims against Wells Fargo and Rowley are DISMISSED with prejudice.

## II. *Ogletree Defendants and Steven Seymour*

As noted, Ogletree Deakins is the law firm that represented Wells Fargo in *Clark I* and was a defendant in *Clark III* and *Clark IV*. Plaintiff asserts Antritrust, RICO, and § 1983 claims against Ogletree Deakins. Plaintiff also alleges RICO and § 1983 claims against the following individuals associated with Ogletree Deakins:

- Leah Lively, who was counsel of record for Wells Fargo in *Clark I*, and obtained a stalking protective order against plaintiff as part of the plea agreement in the Lane County stalking case. Plaintiff alleges that Lively "may not be aware" of the stalking order. Compl. at 9–10.

- David Symes, who was also counsel of record for Wells Fargo in *Clark I*, and who plaintiff alleges "was responsible for the activity of the Portland office at that time." *Id.* at 10.

- Christopher Mixon, general counsel for Ogletree Deakins, who plaintiff alleges "arranged for and/or is responsible for the 2013 false arrest and Hobbs Act

violation (18 U.S.C. 1951)" by signing the stalking complaint for Ogletree Deakins. *Id.* at 10, 93–101.

- Steven Seymour, who represented Ogletree Deakins and five individually named defendants associated with the firm in *Clark III*. Plaintiff alleges that Ogletree Deakins hired Seymour "to arrange the 2013 false arrest" and that he "fabricat[ed] a threat used to false-arrest" plaintiff in letters to the Eugene Police Department and Lane County District Attorney. *Id.* at 12, 93–101.

Lively, Simes, and Mixon were also defendants in *Clark III*.

The Ogletree defendants and Seymour assert that the claims against them should be dismissed because they are barred by the statute of limitations and *res judicata*, the Complaint fails to state a claim against them, and the stalking protective order prohibits plaintiff from suing them without counsel.

The Court agrees that these claims are time barred. Most of the allegations involving these defendants relate to events in 2011 and 2013, surrounding plaintiff's termination from Wells Fargo and the *Clark I* and *Clark III* lawsuits. The most recent allegations in the Complaint concern plaintiff's January 2014 plea agreement in the stalking case. Plaintiff filed this action over six years later, over two years after the longest limitations period (the 4-year limitations period for Antitrust and RICO claims) had expired. Although the claims could be dismissed on this ground alone, the Court will briefly address one alternative argument.

The claims against these defendants are precluded by the judgments in *Clark III* and *Clark IV*. As noted, claim preclusion bars all causes of action that were or could have been brought in prior litigation if the three requirements are met. Most of these defendants were parties to *Clark III* or *Clark IV* and the individual attorney defendants are in privity with Wells Fargo and Ogletree Deakins. *See Henley v. U.S.*

*Bancorp*, 3:19-cv-00985-AC, 2020 WL 1038086, at *10 (D. Or. Jan. 17, 2020) (holding that "when a law firm defendant appears in a subsequent action 'by virtue of their activities as representatives' of a party in a prior action, privity exists"); *Hansen v. U.S. Bank Nat'l Ass'n*, No. 4:15-cv-00085-BLW, 2015 WL 5190749, at *6 (D. Id. Sept. 4, 2015) (holding that law firm was in privity with U.S. Bank where law firm represented bank in eviction action). As discussed above, the claims against Wells Fargo reached a judgment on the merits in both *Clark III* and *Clark IV*. And, finally, the claims against the Ogletree defendants here and the claims asserted in *Clark III* and *Clark IV* all related to the litigation of *Clark I* and plaintiff's arrest, prosecution, plea deal, and conviction for stalking. Thus, the claims arise from the same transactional nucleus of facts and there is an identity of claims between this action and the prior actions.

Because the claims against the Ogletree defendants and Seymour are barred by claim preclusion and the statute of limitations, amendment would be futile, and these claims are DISMISSED with prejudice. *Hernandez*, 663 F. App'x at 519; *Platt*, 522 F.3d at 1060.

## III.    *OSB (docs. 81, 82)*

Clark complains of OSB's failure to adequately respond to his bar complaints against some of the attorney defendants in this case. Plaintiff alleges that defendants "concealed in courts via pervasive public corruption, both perpetrated almost entirely by Oregon State Bar Association member attorneys who established rules over time that allow them to do whatever they want and conceal it in simulated, color-of-law

legal processes." Compl. at 6. He also alleges that "the Oregon State Bar Association ignored and obfuscated my complaints and there is no apparent way to enforce Oregon's laws governing attorney conduct" and that OSB conspired with defendant Barry Davis to "steal . . . money by endlessly obfuscating my formal complaints." *Id.* at 8, 14, 17. OSB argues that the claims should be dismissed for lack of standing and failure to state a claim.[2] Plaintiff did not file a response to this Motion.

As the complainant in a disciplinary matter, plaintiff lacks standing to sue those charged with investigating and resolving complaints concerning attorney conduct. "A threshold question in every federal case is . . . whether at least one plaintiff has standing." *Thomas v. Mundell*, 572 F.3d 756, 760 (9th Cir. 2009) (citation and quotation marks omitted). "For standing to exist, the plaintiff must 'allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Doyle v. Oklahoma Bar Ass'n*, 998 F.2d 1559, 1566 (10th Cir. 1993) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). "Thus, one does not have standing to assert a violation of rights belonging to another, since the person entitled to a right is the only one who can be *directly* injured by its deprivation." *Id.* (citations omitted) (emphasis in original). Here, as in *Doyle*, "the only one who stands to suffer direct injury in a disciplinary proceeding is the lawyer

---

[2] Initially, OSB also argued that it was entitled to Eleventh Amendment immunity as an arm of the state, doc. 82 at 2–4, but withdrew the argument after the Ninth Circuit held that it was not in *Crowe v. Oregon State Bar*, ___ F.3d ___, 2021 WL 748511, * 11–14 (9th Cir. 2021). Doc. 124.

involved." *Id.* at 1567.[3]  Accordingly, plaintiff, as a complainant, lacks standing to sue OSB.

Although the claims against OSB must be dismissed for lack of standing alone, the Court will briefly address OSB's alternative merits argument.  The Court agrees with OSB that plaintiff's conclusory allegations against OSB fail to demonstrate (1) that OSB caused an antitrust, or any, injury to plaintiff as required to state a claim under § 2 of the Sherman Act; (2) that OSB engaged in any criminal activity, let alone two or more of the predicate offenses required to state a RICO violation; or (3) that OSB personally participated in conduct that violated plaintiff's federal rights, as to state a claim required under § 1983.  Thus, even if plaintiff could plead facts showing that he suffered a personal injury from OSB's actions, amendment would be futile because his claims would fail on the merits.  Accordingly, the claims against OSB are DISMISSED with prejudice.

---

[3]  Although the Ninth Circuit does not appear to have addressed this issue, courts including the Second, Third, Sixth, and Eleventh Circuits have followed *Doyle* to hold that private citizen complainants lack standing to challenge a state bar's handling of a complaint against an attorney.  *See Osborn v. Miller*, No. 97-5470, 1998 WL 57286 (6th Cir. Feb. 2, 1998) (Kentucky); *Cotton v. Steele*, 255 Neb. 892, 587 N.W.2d 693 (1999) (Nebraska); *Akinaka v. Disc. Bd. of Hawai'i Supreme Court*, 91 Haw. 51 (1999), *abrogated on other grounds by Tax Found. of Hawai'i v. State*, 144 Haw. 175 (2019) (Hawai'i); *Koukios v. Ganson*, No. 99-4060, 2000 WL 1175499 (6th Cir. Aug. 11, 2000) (Ohio); *Smith v. Shook*, 237 F.3d 1322 (11th Cir. 2001) (Georgia); *Harrington v. Wilson*, No. 05-cv-01858-EWN-MJW, 2006 WL 2724094 (D. Colo. Sept. 21, 2006), *aff'd* 242 F. App'x 514 (10th Cir. 2007) (Colorado); *McCain v. Hermann Law Office*, No. 5:09-cv-165-cr, 2010 WL 3322708 (D. Vt. July 7, 2010) (Vermont); *Collura v. Disc. Bd. of Supreme Court of Penn.*, No. 11-5637, 2013 WL 4479141 (E.D. Pa. Aug. 22, 2013), *aff'd* 569 F. App'x 114 (3d Cir. 2014) (Pennsylvania); *Omran v. U.S.*, No. 1:14-cv-505-DBH, 2015 WL 5703723 (D. N.H. Feb. 10, 2015) (New Hampshire).  This Court finds the analysis in *Doyle* and those cases persuasive and adopts it here.

IV.    *David Campbell (doc. 33)*

David Campbell defended Wells Fargo in *Clark IV* and argues that the Complaint fails to state a claim against him.  Plaintiff did not respond directly to Campbell's arguments.

Plaintiff alleges that Campbell "file[d] obstructive pleadings devoid of [a] relationship to reality."  Compl. at 55, ¶ 122.  This bare allegation fails to demonstrate that Campbell personally participated in the operation or management of any enterprise, let alone that a RICO "enterprise" existed.  Even assuming that Wells Fargo was engaged in a RICO enterprise, courts have found

> Congress did not mean for § 1962(c) to penalize all who are employed by or associated with a RICO enterprise, but only those who, by virtue of their association or employment, play a part in directing the enterprise's affairs.  Furnishing a client with ordinary professional assistance, even when the client appears to be a RICO enterprise, will not normally rise to the level of participation sufficient to [impose RICO liability on an individual.]

*Handeen v. LaMaire*, 112 F.3d 1339, 1348 (8th Cir. 1997).  The allegations in the Complaint, and the pleadings filed by Wells Fargo in *Clark IV*, which are subject to judicial notice, fail to show that Campbell's role in the lawsuit amounted to anything other than ordinary professional assistance.  Similarly, they fail to show that any of Campbell's actions violated plaintiff's rights.  Although Campbell does not seek dismissal on statute of limitations grounds, a review of the docket in *Clark IV* shows that Campbell last filed a document in that action on January 7, 2016, over four years before plaintiff filed this action.  Thus, any claims based on Campbell's involvement in *Clark IV* are time barred and amendment would be futile.  *Platt*, 522 F.3d at 1060.

Plaintiff also claims that Docket Number 68 on the docket of *Clark IV* "appears to be [*sic*] a completely forged highly prejudicial local 'Order' that was used to dismiss my prior damage recovery lawsuit (and the facts/evidence) with no discussion or hearings" and that Campbell was "apparently" among the "RICO Actors who perpetrated that forgery[.]" *Id.* at 57, ¶ 126 (citing *id.* at 118); *see also id.* at 117 ("I discovered Docket 68[4] (enclosed) after the appeal. . . . My suspicion based on what I see is that David C. Campbell of Lewis Brisbois and Peter Urias of Seyfarth Shaw were the people who created the document and got it into the system."). Plaintiff's explicitly speculative forgery allegations cannot sustain a plausible claim for relief. *See Twombly*, 550 U.S. at 555–56. Moreover, the docket in *Clark IV*, which is subject to this court's judicial notice, shows that the Order at Docket Number 68 was entered by court staff, and not Campbell, so plaintiff cannot plausibly allege that Campbell was responsible for the Order, and any attempts to amend claims based on the Order would be futile.

In sum, the claims against Campbell are DISMISSED with prejudice.

## V.    *Barry Davis (docs. 52, 53)*

Barry Davis is an attorney who represented plaintiff in 2012. Plaintiff alleges that he hired and paid Davis $10,000 to file an appeal in *Clark I*, but that Davis "did next-to-nothing and did not file a 'Notice of Appeal.'" Compl. at 14. He also alleges

---

[4] Docket Number 68 in *Clark IV*, also excerpted on page 118 of the Complaint in this case, is a protective order limiting plaintiff's communications with Wells Fargo and people associated with it. Though the order also states that failure to comply with its requirements "will result in sanctions for contempt of court, which may include dismissal of this proceeding[,]" doc. 68 at 2, the claims against Wells Fargo were dismissed on a motion to dismiss, doc. 128 (granting Wells Fargo's Motion to Dismiss, and dismissing claims with prejudice).

that he gave Davis "more money for handling a very small 'family court' matter" but that Davis "essentially stole that money as well." *Id.* Finally, plaintiff alleges that OSB "helped [Davis] steal the money." *Id.* Davis argues that plaintiff fails to state any claim against him except a legal malpractice claim, which is barred by the statute of limitations. Plaintiff did not respond directly to this motion.

Davis denies that plaintiff retained him to appeal *Clark I*, but even taking the facts alleged in the Complaint as true, claims arising from Davis' alleged failure to file a Notice of Appeal would have begun to accrue in March 2013, when plaintiff alleges he learned of Davis' "[d]uplicity" and failure, and fired him. Compl. at 41–42. This action was filed in February 2020, nearly seven years later. Therefore, whether plaintiff asserts RICO, § 1983, or, as Davis suggests, legal malpractice,[5] claims against Davis, they are time barred and are DISMISSED with prejudice. *Platt*, 522 F.3d at 1060.

## VI.    *Bruce Newton (doc. 58)*

Bruce Newton is an attorney who represented plaintiff's ex-wife in their divorce. Plaintiff complains that Newton's actions in that divorce proceeding resulted in a $20,000 writ of garnishment for spousal support in August 2011 and the denial of plaintiff's request for a spousal support modification and $9,800 in attorneys' fees in February 2012. Compl. at 15, 31, 38–39. Those expenses and that time in court "diminished [plaintiff's] ability to" participate in the *Clark I* litigation. *Id.* at 15.

---

[5] Under Oregon law, a claim for legal malpractice "must be commenced within two years of the date on which the claim accrues." *Stevens v. Bispham*, 316 Or. 221, 227 (1993). And Oregon courts use the "discovery rule" to determine when a claim for legal malpractice accrues. *Kaseberg v. Davis Wright Tremaine, LLP*, 351 Or. 270, 277 (2011).

Because these proceedings were "times to create maximum harm to me," plaintiff alleges "I feel Bruce Newton was an *active, knowing participant* in the RICO enterprise but do not have evidence, which would likely have been a phone call." *Id.* (emphasis in original).

Newton moves to dismiss the claims against him, arguing that they are barred by Oregon's absolute litigation privilege, the statute of limitations, and that the complaint fails to state a claim against him.  In the alternative, Newton seeks an order for plaintiff to replead his claims to be more definite and certain.  Plaintiff filed an untimely response to this motion, making the generalized arguments discussed above, and commenting that he had "accused [Newton] in the complaint in some detail" and that Newton's "CLIENT is entitled to relief of damages caused by federal witness tampering" and suggesting that Newton "joins" him in pursuing this action. Doc. 73 at 5.

Although Oregon's absolute litigation privilege does not apply to bar these federal civil rights claims, *Martinez v. California*, 444 U.S. 277, 284, n.8 (1980), they are barred by the statute of limitations.  The latest actions by Newton alleged in the Complaint took place in February 2012, eight years before this action was filed.  As discussed above, plaintiff fails to demonstrate a later accrual date for any of his claims or that any statute of limitations should be tolled.  The Court also agrees that plaintiff's speculative allegations attempting to connect Newton's actions to Wells Fargo's are not sufficient to state a RICO or § 1983 claim against Newton. Accordingly, these claims are DISMISSED with prejudice.  *Platt*, 522 F.3d at 1060.

## CONCLUSION

For the reasons above, David Campbell, Wells Fargo, and Christian Rowley's requests for judicial notice (docs. 34, 45) are GRANTED; plaintiff's request for judicial notice (doc. 56) is DENIED; and defendants' motions to dismiss (docs. 33, 42, 52, 58, 59, 81) are GRANTED and the claims against them are dismissed with prejudice.

IT IS SO ORDERED.

Dated this  31st  day of March 2021.


_____/s/Ann Aiken_____

Ann Aiken
United States District Judge